# EXHIBIT 1

# EXHIBIT 1

06 CV 1202

JUDGE JONES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____X

DOC # ___1___

AMY R. GURVEY,

               Plaintiff Pro Se,

    -against-

COWAN, LIEBOWITZ & LATMAN, PC
CLEAR CHANNEL COMMUNICATIONS,
INC., LIVE NATION, INC., INSTANT LIVE
CONCERTS, LLC and
DOES 1-X, INCLUSIVE,

               Defendants.

_____X

CASE NO.

JURY TRIAL REQUESTED

COMPLAINT

The Plaintiff *Pro Se*, Amy R. Gurvey, for her complaint against defendants alleges as follows:

## I. PARTIES

1.     Plaintiff Amy R. Gurvey is a resident of the State of New Jersey. Between January, 2002 and May, 2003, Plaintiff was a client of defendant New York law firm, Cowan, Liebowitz and Latman, PC (herein "CLL"). At times relevant herein, CLL was serving as Plaintiff's exclusive attorneys including before the United States Patent and Trademark Office ("USPTO").

2.     Defendant CLL is a New York law firm and professional corporation with primary expertise in trademark and intellectual property law. Its address is 1133 Avenue of the Americas, New York, NY 10036.

3.     Defendant Clear Channel Communications, Inc. ("CCC") is a resident corporation of Texas, and at all times relevant including while defendant CLL was

EXHIBIT 1
Page 8 of 808

representing Plaintiff, CLL was also serving as attorney for CCC, and upon information and belief, also for the rock band, *Phish*.

    4.    Defendant LIVE NATION is a Delaware corporation or limited liability company, with its principal place of business in Beverly Hills, California. Defendant LIVE NATION is a resident of Delaware and California.

    5.    Defendant InstantLive Concerts, LLC ("InstantLive") is a Massachusetts limited liability company, formed in March, 2003 by principals of defendant CCC. In 2005, defendant InstantLive was acquired by defendant LIVE NATION.

## II. JURISDICTION AND VENUE

    6.  Jurisdiction of the Federal Courts is based on diversity of citizenship pursuant to 28 USC Section 1332 and the amount in controversy exceeds $75,000.

    7.  Pursuant to 28 USC Section 1391, venue is proper in the Southern District of New York where the cause of action arose, and where a contract between Plaintiff and CLL that is the subject of this action, was entered into.

## IV. FACTS IN SUPPORT OF ACTION

    8.    In February, 2002, Plaintiff commenced services under a guaranteed one-(1)- year Of Counsel contract with defendant CLL. That contract dated January 15, 2002 included grandfather clauses reserving to Plaintiff all rights in and to Plaintiff's confidential proprietary inventions, properties, business plans and projects.

    9.    CLL represented to Plaintiff when negotiating her contract in 2001 it had "missed out on the Internet bubble" and wanted a right to invest in Plaintiff's proprietary

2

EXHIBIT 1
Page 9 of 808

properties and technologies as well as in new business opportunities presented from her "start-up" business clients that might include possible strategic ventures with its roster of trademark clients.   CLL further represented to Plaintiff, who has a Masters in Public Health from Harvard as well as JD from the UCLA School of Law, that she would also receive legal work from its partners who had clients in the medical field.

10.     Plaintiff accepted an offer from CLL and turned down a competing offer with the firm of Moses & Singer LLP.  Two days after Plaintiff commenced services for CLL, partners of CLL ordered Plaintiff to present her confidential proprietary projects and inventions to them at the firm's monthly partners' conference, the next day.  The partners represented that the purpose of Plaintiff's presentation was to familiarize members of the firm with the nature of Plaintiff's practice to see if there was a "good fit" for strategic partnerships between their clients and her confidential proprietary projects, inventions and start-up clients.  CLL further represented that a main objective was to see if the firm wanted to invest in Plaintiff's confidential plans for new businesses and novel technologies.

11.     Plaintiff received a standing ovation from 40+ attorneys and Of Counsels to CLL after her presentations.  All her distributions were marked as "confidential".  Plaintiff was told by partner, William Borchard, that her business plans for a new company describing methods for the management and distribution of live concert recordings on and off site at concerts including novel ticketing methods created "quite a buzz".  Borchard also represented that they would be of significant interest to the firm's major client, CCC, that owned 130 US concert venues and 30+ abroad, and might be a perfect strategic partner

EXHIBIT 1
Page 10 of 808

12.     Immediately after the conference, CLL's associate Susan Schick, who was then living with Mike Gordon, guitarist in the rock band "*Phish*" advised CLL managing partners of the huge market value of Plaintiff's inventions and associated confidential business models including their value to unsigned bands and new talent.

13.     At no time did Plaintiff authorize dissemination of any her confidential materials, invention descriptions and trade secrets to any third person party or entity.

14.     In April, 2002 Plaintiff's one-year guaranteed salary of $150,000 was confirmed by CLL in writing to the mortgage company that financed Plaintiff's home in New Jersey.

15.     At about the same time, the two medical rainmaking partners at CLL, William Dippert, Esq. and Michael Wolfson, Esq., announced they were leaving the firm to join Reid and Priest and taking their clients, including Medtronics.  Plaintiff discovered afterward that CLL knew these partners were leaving when they made their offer to her in December 2001.

16.     The next month, in May, 2002, Plaintiff was called into a meeting with Mr. Borchard and two other partners Peter Porcino, Esq., and Simon Gerson, Esq., at which time she was advised that CLL was repudiating her contract for no reason other than "it changed its mind".  Plaintiff responded that her contract stated that she had a guaranteed salary and office for one year.  She also informed these partners that she had relied on the guaranteed salary and office in turning down the competing offer from Moses & Singer and in purchasing her home.

17.     Plaintiff attempted to reinstate the offer from Moses & Singer, to no avail.

EXHIBIT 1
Page 11 of 808

18.     Immediately thereafter, CLL partner J. Christopher Jensen, Esq., admitted and stated in e-mails to Plaintiff and co-partner Mark Montague, Esq., one of the two remaining patent partners, that CLL was filing Plaintiff's PPA's before the USPTO.

19.     On May 22, 2002 and May 24, 2004, CLL partners, Montague, and R. Lewis Gable, Esq. filed Plaintiff's two Provisional Patent Applications ("PPA") before the USPTO naming Plaintiff as sole inventor and CLL as attorneys of record. The PPA #s assigned by the USPTO for Plaintiff's inventions were 60, 382,710 and 60, 382,949, respectively.

20.     The PPA's covered certain inventions related to the packaging, editing, management and distribution of live recordings emanating from events at concert, sports and gaming venues. The PPA's filed by CLL on Plaintiff's behalf were based on Plaintiff's confidential inventions, trade secrets and business plans.

21.     CLL partners Jensen, Borchard and Midge Hyman, Esq. thereafter attempted to get Plaintiff to sign a release concerning her salary. She refused to do so. CLL then requested that Plaintiff continue billing already started matters.

22.     In August, 2002, CLL sent Plaintiff on, and paid for, a business trip to California to work with Legend Films on its patents with and her main prospective client, uWink, a new venture of "Pong"/Atari/Chuck E. Cheese videogame mastermind, Nolan Bushnell. Mr. Bushnell has been a consultant to Plaintiff's new company, LIVE-FI Technologies, that developed and markets the systems and designs described in her PPA's filed by CLL. uWink was taken public in 2003-4.

23.     When Plaintiff returned to New York after two weeks in California, she learned that CLL had locked her out of the building and her office. CLL refused Plaintiff

EXHIBIT 1
Page 12 of 808

access to her files including computer directories, and she was never again allowed access to the office to retrieve and pack up her belongings.

24.     CLL told Plaintiff that it was mailing her files but many items and proprietary confidential materials were never received, including the disc directory of Plaintiff's computer directories, her Rolodex, confidential personal notes on the business plans related to the patent filings and the handouts at the first conference.

25.     CLL paid Plaintiff $71,000 under the contract which is less than ½ her contracted guaranteed salary of $150,000.

26.     Or about February 16, 2003, Plaintiff received notification from the USPTO that CLL had withdrawn as Plaintiff's attorney on PPA # 60,382,710 based on a "conflict of interest" not described or explained.  USPTO's certified dockets reveal that it mailed to Plaintiff CLL's notice on February 13, 2003.  CLL never withdrew as Plaintiff's attorney as to PPA #60,382,949.

27.     Never once at that time or prior while serving as Plaintiff's attorneys, did any member of CLL reveal to Plaintiff what the existence of any "conflict of interest" was.

28.     On May 5, 2003, *The New York Times* Business Section published an article over 2 pages and 6 columns announcing defendant CCC's new venture, InstantLive, and setting out Plaintiff's entire confidential business model for the onsite distribution of live recordings at concerts including for unsigned bands

29.     Early March, 2003 pages from the website of InstantLive contained ads/statements that it was offering a new added service allowing audience members to

6

EXHIBIT 1
Page 13 of 808

purchase live recordings at the time they bought their tickets. <u>This is one major operating system claimed in both of Plaintiff's PPA's filed by CLL.</u>

30.     Plaintiff advised InstantLive's executives of Plaintiff's patents pending and the joint representation by CLL of Plaintiff and CCC. Virtually immediately, the ticket association offer was deleted from InstantLive's Web site.

31.     Upon information and belief, defendant CCC never invested in any research and development for its own patents for the distribution of live recordings on site.

32.     In fact, the press revealed that in or about September, 2004, defendant CCC back purchased a patent issued in July, 2004 to a third party named *Griner* which it has claimed gives it a monopoly on distributing live recordings at concerts.

33.     In 2004, in response to defendant CCC's misleading press releases and being excluded from CCC's venues, other companies including DiscLive, now ImmediaTek, and Hyburn, upon information and belief, filed antitrust grievances with the Electronic Frontier Foundation ("EFF") against InstantLive and defendant CCC that has resulted in EFF's releases that it will attempt to invalidate the *Griner* patent.

34.     These false and misleading press releases issued by defendants CCC, InstantLive and LIVE NATION have also interfered with Plaintiff's ability to get additional venture capital giving defendants unfair lead time in the marketplace to reverse engineer her systems and steal her clients, including record labels and artists.

35.     Plaintiff is entitled to equitable relief and damages against LIVE NATION as the new parent of InstantLive.

7

EXHIBIT 1
Page 14 of 808

### AS AND FOR A FIRST CAUSE OF ACTION

Restating her allegations in paragraphs 1-35 , Plaintiff seeks damages against defendant CLL for anticipatory repudiation and breach of Plaintiff's contract.

### AS AND FOR A SECOND CAUSE OF ACTION

Reinstating her allegations in paragraphs 1-35, Plaintiff seeks damages against defendant CLL for fraud in the inducement of Plaintiff's contract.

### AS AND FOR A THIRD CAUSE OF ACTION

Restating her allegations in paragraphs 1-35, Plaintiff seeks damages and equitable relief against defendant CLL including disgorgement for breach of the attorney-client relationship, intentional or negligent breach of the associated fiduciary duties of confidentiality and loyalty and failure to disclose conflicts of interest.

### AS AND FOR A FOURTH CAUSE OF ACTION

Restating her allegations in paragraphs 1-35, Plaintiff seeks damages and equitable disgorgement against all defendants for intentional or negligent misappropriation of Plaintiff's trade secrets including by defendant CCC as principal for its attorney/agent CLL.

### AS AND FOR A FIFTH CAUSE OF ACTION

Restating her allegations in paragraphs 1-35,  Plaintiff seeks an injunction against defendants CCC, InstantLive and LIVE NATION  to enjoin its production of ticketing

EXHIBIT 1
Page 15 of 808

software and systems containing any information in Plaintiff's trade secrets or PPA's as
continued.

### AS AND FOR A SIXTH CAUSE OF ACTION

Restating her allegations in paragraphs 1-35, Plaintiff seeks a restraining order
against defendants CCC, InstantLive and LIVE NATION to cease and desist in issuing
misleading press releases related to the Griner patent.

### AS AND FOR A SEVENTH CAUSE OF ACTION

Restating her allegations in paragraphs 1-35, Plaintiff seeks a restraining order
against defendants CCC, InstantLive and LIVE NATION to cease and desist from
offering products or services to third persons, parties and entities that include Plaintiff's
trade secrets or information in her PPA's as continued.

### AS AND FOR AN EIGHTH CAUSE OF ACTION

Restating paras. 1-35,  as against defendants CCC, InstantLive and LIVE
NATION or any of their affiliates, subsidiaries and assigns for disgorgement of profits.

### AS AND FOR A NINTH CAUSE OF ACTION

Restating paras. 1-35,  against defendants CCC, InstantLive and LIVE NATION
damages for unfair competition.

### AS AND FOR A TENTH CAUSE OF ACTION

Restating paras. 1-38, against all defendants for damages for breach of
prospective business advantage.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION

Restating paras. 1-35, against all defendants for Plaintiff's attorneys' fees and
costs.

EXHIBIT 1
Page 16 of 808

WHEREFORE, Plaintiff prays judgment against defendants as stated, for an award for her attorneys' fees and costs and such other and further relief in this Court's discretion as it deems just and proper.

Dated:  February 12, 2006            Respectfully submitted,
Essex County, NJ

_____
Amy R. Gurvey
Plaintiff *Pro Se*
315 Highland Avenue
Upper Montclair, NJ  07043
(917) 733-9981

10

EXHIBIT 1
Page 17 of 808

EXHIBIT 2

EXHIBIT 2





Home / Browse Decisions / NY / 2011 NY / 2011 NY Slip Op 33058(U)

# IN THE MATTER OF WEISSBROD v. DOPICO

110774/11.                                                    Email | Print | Comments (0)

**View Case**    Cited Cases

2011 NY Slip Op 33058(U)

*In the Matter of the Writ of AMY WEISSBROD, Petitioner Pro Se, v. JORGE DOPICO, Esq., Senior Counsel of the First Departmental Disciplinary Committee ("FDDC"), HON. FERN FISHER, Chief Administrative Judge, NYC Civil Court, HON. JEAN SCHNEIDER, Supervising Judge, NYC Housing Part, THOMAS CAHILL, Esq., JAMES SHED, Esq., PAUL CURRAN, Esq., NAOMI GOLDSTEIN, Esq., And Orlando Reyes, Esq., Harold McGuire, Esq., Chair Hearing Panel IV, Respondents. For a Judgment Pursuant to Article 78 of the CPLR*

Supreme Court, New York County.

November 17, 2011.

CYNTHIA S. KERN, Judge.

Petitioner brings the instant petition seeking various relief related to an attorney disciplinary hearing held against her before the First Departmental Disciplinary Committee ("FDCC") on June 22, 2011 and related to an eviction proceeding conducted against her. Petitioner seeks the audio recording of the disciplinary hearing. She also alleges that during both proceedings her civil rights were violated and she was discriminated against on the basis of disability. In addition, she alleges that various attorneys and judges violated disciplinary rules during the eviction proceeding and she seeks damages and to have various judicial personnel disciplined for their role during that proceeding. Her claims will be considered in turn.

As an initial matter, all parties have agreed that claims 2 and 7 should be referred to the Appellate Division. Claim 2 involves the disciplinary hearing against petitioner and claim 7 is petitioner's assertion that various lawyers who appeared before the court in her eviction proceeding committed disciplinary infractions. Because the Appellate Division is charged with exclusive jurisdiction to discipline attorneys practicing in each respective department *(see Matter of Hyatt Legal Services,* 97 A.D.2d 983 (4th Dept. 1983)), these claims are transferred to the Appellate Division.

This court finds that claim 11, in which petitioner seeks to have the Hon. Fern Fisher discipline one administrative clerk and two NYC Housing Judges for alleged breaches of duty, alleged destruction of records and transcripts, alleged denial of petitioner's right to trial by jury and other violations, should also be transferred to the Appellate Division. Petitioner argues that this is "not a matter of attorney discipline" but does not elaborate. However, petitioner seeks, in her own words, to have judicial personnel "disciplined." This court does not have the power or jurisdiction to discipline attorneys or other court personnel. Therefore, this claim should be transferred to the Appellate Division.

With respect to petitioner's first claim, seeking the original audiotape recording, petitioner may contact the stenographer directly and request it. Respondents have provided petitioner with the stenographer's name and contact information in their papers. If the court reporter is unwilling or unable to turn over the original audiotape recording, this court holds that a copy of the audiotape is sufficient. In *Feltington v Moving picture Machine Operators Union Local 306 of I.A.T.S.E.,* 605 F.2d 1251 (S.D.N.Y. 1979), the court specifically stated that the recording and transcript made by an independent reporter hired by the respondent was, in the absence of any evidence to the contrary, reliable and that petitioner had no right to make his own recording of the proceedings. Therefore, this court finds that a copy of the audio recording will, if necessary, satisfy petitioner's demands.

The court now turns to petitioner's claims under 42 USC §1983. Respondents are entitled to dismissal of petitioner's claim of civil rights violations as petitioner did not plead the violations with sufficient specificity and the claims, to the extent that they are brought against state officials in their official capacities, are barred by the doctrine of sovereign immunity. "Section 1983 proscribes conduct under color of state law which deprives a plaintiff of a right . . . guaranteed by the federal constitution or federal law... Sovereign immunity bars section 1983 claims, whether rooted in alleged violations of constitutional or statutory law, against New York State or its officers in their official capacities." *Goonewardena v State of New York,* 475 F.Supp.2d 310, 329 (S.D.N.Y. 2007) (citations omitted). To the extent that petitioner's claims 3 and 8 are brought against state officers in their official capacities, those claims are barred. To the extent that those claims are brought against state officers in their personal capacities, petitioner has failed to state a claim. Petitioner does not give sufficient information about the underlying facts and does not allege with specificity what federal constitutional or statutory laws she alleges were violated. Claims 3 and 8 are therefore dismissed. To the extent claim 10 seeks attorneys' fees and damages pursuant to section 1983, it is also dismissed. Similarly, to the extent claim 13 seeks damages pursuant to section 1983, it is dismissed as the underlying section 1983 claims have been dismissed.

Petitioner fails to state a claim with regard to the remaining claims. Specifically, as to claim number 4, alleging violation of petitioner's rights under the NYS Constitution, petitioner fails to plead exactly how her rights were violated and which rights were violated. Petitioner similarly fails to state a claim regarding her allegation that her equal protection rights under New York State Judiciary Law Section 90(2) and 487 and the Fourteenth Amendment of the United States Constitution were violated (claim number 5). She does not plead with specificity how respondents violated her rights under the Americans with Disabilities Act (claim number 6). She does not specify her disability other than a vague, passing reference to a "permanent and severe pulmonary and immunologic disease," nor does she submit any evidence tending to prove that she was discriminated against on that basis. Petitioner also fails to state a claim for respondents' violations of her First Amendment rights (claim number 9). She does not provide any information about an incident or incidents when her right to free speech was quashed. Finally, she is not entitled to a damages award against Housing Part judicial officers for abuse of process (claim number 12) as she also fails to plead this claim adequately. Since these claims have all been dismissed, to the extent claim 10 seeks damages pursuant to any of these underlying claims, it is therefore also dismissed.

Accordingly, all of petitioner's claims are dismissed except number 2, 7 and 11. The clerk is hereby directed to transfer claims 2, 7 and 11 to the Appellate Division. This is the decision, order and judgment of the court.

---

**Comment**

Your Name

Your Email

Comments

EXHIBIT 2
Page 20 of 808

2/3

Submit

**1000** Characters Remaining

*Leagle.com reserves the right to edit or remove comments but is under no obligation to do so, or to explain individual moderation decisions.*

Copyright © 2019, Leagle, Inc.

Disclaimer | Terms of Use | Privacy Statement | Corporate Social Responsibility | About Us | Contact Us

EXHIBIT 2
Page 21 of 808

3/3

EXHIBIT 3

EXHIBIT 3

At a Term of the Appellate Division of the Supreme Court held in and for the First Judicial Department in the County of New York on December 4, 2012.

Present - Hon. Luis A. Gonzalez,                Presiding Justice,
              Peter Tom
              David B. Saxe
              David Friedman
              James M. Catterson,                Justices.

**FILED**

**DEC 0 4 2012**

**SUP COURT, APP. DIV.
FIRST DEPT.**

--------------------------------------x
In the Matter of Amy R. Gurvey
(admitted as Amy Rebecca Weissbrod),
an attorney and counselor-at-law:

        Departmental Disciplinary Committee          M-667
        for the First Judicial Department,           M-1340
                    Petitioner,

        Amy R. Gurvey,
        (OCA Atty. Reg. No. 1994516),
                    Respondent.
--------------------------------------x

    An unpublished order of this Court having been entered on March 18, 2008 (M-391), finding respondent (who, as Amy Rebecca Weissbrod, was admitted to practice as an attorney and counselor-at-law in the State of New York at a Term of the Appellate Division of the Supreme Court for the Third Judicial Department on June 4, 1985) guilty of professional misconduct, and remanding the matter to the Committee for the appointment of a Hearing Panel to conduct a hearing solely to consider evidence in mitigation or aggravation, if any, and to recommend an appropriate sanction to be imposed upon respondent,

    And an unpublished order of this Court having been entered on June 8, 2009 (M-2024), denying reconsideration of the unpublished order of this Court entered on March 18, 2008 (M-391),

    And an unpublished order of this Court having been entered on May 19, 2010 (M-3290), denying respondent's motion for leave to appeal to the Court of Appeals from the unpublished order of this Court entered on June 8, 2009 (M-2024),

EXHIBIT 3
Page 23 of 808

(M-667/M-1340)                    -2-                    December 4, 2012

And an unpublished order of this Court having been entered
on October 14, 2011 (M-3930), denying respondent's motion to
direct the Departmental Disciplinary Committee to deliver the
original recording of the June 22, 2011 sanction hearing, and
other relief,

And the Departmental Disciplinary Committee for the First
Judicial Department, by Jorge Dopico, its Chief Counsel (Orlando
Reyes, of counsel), having submitted a motion and memorandum of
law to this Court on March 26, 2012, for an order pursuant to 22
NYCRR 605.15(e), affirming the findings of fact and conclusions
of law of the Hearing Panel, disaffirming so much of the
determination of the Hearing Panel with respect to a recommended
sanction of public censure, and recommending that respondent be
suspended from the practice of law in the State of New York for a
period of one year,

And respondent pro se having submitted a cross motion to
this court requesting, inter alia, that this proceeding be
dismissed in its entirety, that this Court's prior orders be
vacated; that the matter be transferred to the Third Judicial
Department for commencement of sanction proceedings against the
Departmental Disciplinary Committee, and for other relief,

And the Committee having submitted an affirmation to
respondent's cross motion,

Now, upon reading and filing the papers with respect to the
motion and cross motion, and due deliberation having been had
thereon, and upon the Opinion Per Curiam filed herein, it is
unanimously,

Ordered that the motion is granted to the extent of
confirming the determination of the Hearing Panel with respect to
professional misconduct, disaffirming so much thereof with
respect to sanction, and instead suspending respondent from the
practice of law in the State of New York for a period of six
months, effective 30 day from the date hereof and until further
order of this Court, and it is further,

Ordered that effective January 3, 2013, respondent is
commanded to desist and refrain from the practice of law in any
form, either as principal or agent, clerk or employee of another;

EXHIBIT 3
Page 24 of 808

(M-667/M-1340)                    -3-                    December 4, 2012

that respondent is forbidden to appear as an attorney or counselor-at-law before any court, judge, justice, board, commission or other public authority; that respondent is forbidden to give to another an opinion as to the law or its application or any advice in relation thereto. Respondent is directed to fully comply with the provisions of Title 22, Section 603.13, of the Rules of this Court, a copy of which is annexed hereto and made a part hereof.

ENTER:

_____
CLERK

APPELLATE DIVISION SUPREME COURT FIRST DEPARTMENT
STATE OF NEW YORK

I, SUSANNA ROJAS, Clerk of the Appellate Division of the Supreme Court First Judicial Department, do hereby certify that I have compared this copy with the original thereof filed in said office on _12/4/12_ and that the same is a correct transcript thereof, and of the whole of said original.
IN WITNESS WHEREOF I have hereunto set my hand and affixed the seal of this Court on _12/4/12_.

_____
CLERK

EXHIBIT 3
Page 25 of 808

SUPREME COURT, APPELLATE DIVISION    DEC 4 2012
FIRST JUDICIAL DEPARTMENT

        Luis A. Gonzalez,      Presiding Justice,
        Peter Tom
        David B. Saxe
        David Friedman
        James M. Catterson,     Justices.

-------------------------------------x

In the Matter of Amy R. Gurvey
(admitted as Amy Rebecca Weissbrod),
an attorney and counselor-at-law:
                                         M-667
   Departmental Disciplinary Committee     M-1340
      for the First Judicial Department,
              Petitioner,

   Any R. Gurvey,
             Respondent.

-------------------------------------x

Disciplinary proceedings instituted by the Departmental
   Disciplinary Committee for the First Judicial Department.
   Respondent, Amy R. Gurvey, was admitted to the Bar of the
   State of New York at a Term of the Appellate Division of the
   Supreme Court for the Third Judicial Department on June 4,
   1985.

   Jorge Dopico, Chief Counsel, Departmental
   Disciplinary Committee, New York
   (Orlando Reyes, of counsel), for petitioner.

   Respondent pro se.

EXHIBIT 3
Page 26 of 808

M-667
M-1340    March 26, 2012

## IN THE MATTER OF AMY R. GURVEY (A/K/A/ AMY R. WEISSBROD), AN ATTORNEY

Per Curiam

Respondent Amy R. Gurvey was admitted to the practice of law in the State of New York by the Third Judicial Department on June 4, 1985, under the name Amy Rebecca Weissbrod.  In 1998, respondent changed her name with the Office of Court Administration ("OCA") to "Amy R. Gurvey," and, in 2004, she allegedly advised OCA that she was changing her name to "Amy R. Weissbrod Gurvey."  Current OCA records still reflect respondent's name as "Amy R. Gurvey."

This matter arises from a 10-year litigation wherein respondent alleged that she was fraudulently induced to vacate her federally-subsidized Battery Park City apartment. The litigation resulted in, among other things, two Civil Court decisions and one Supreme Court decision imposing monetary sanctions against respondent totaling approximately $8,783.  The observations of the courts and/or referees who sanctioned respondent included that her conduct was "indicative of harassment and an abuse of the judicial process" and "mean spirited and vexatious," and that her "inappropriate use of the courts" resulted in "needless expense in the defense of a frivolous lawsuit."  She was sanctioned for "years of

2

EXHIBIT 3
Page 27 of 808

vituperative litigation," frivolous motion practice, and intentional misrepresentations to the court.

In April 2005, the DDC issued a Letter of Admonition to respondent based on one of the sanction decisions. When respondent demanded that the Admonition be vacated, the DDC commenced a collateral estoppel proceeding based on all three sanction decisions. The DDC contended that respondent's behavior violated the Code of Professional Responsibility DR 1-102(A)(4)(conduct involving fraud, dishonestly, deceit or misrepresentation), DR 1-102(A)(5)(conduct prejudicial to the administration of justice), DR 1-102(A)(7)(conduct that adversely reflects on fitness to practice), and DR 7-102(A)(1)(taking an action on behalf of a client when the lawyer knows or when it is obvious that such action serves to merely harass or maliciously injure another).[1]

On March 18, 2008, this Court granted the DDC's collateral estoppel petition and remanded the matter back to the DDC for a sanction hearing. Respondent moved for reconsideration and leave to appeal to the Court of Appeals, and we denied both motions. On September 14, 2010, the Court of Appeals denied respondent's motion for leave to appeal.

At the sanction hearing, respondent challenged the

---

[1] Effective April 1, 2009, Rules of Prof. Con. 3.1[2], 8.4[c], 8.4[d], 8.4[h].

3

EXHIBIT 3
Page 28 of 808

jurisdiction of this Court and the DDC on the grounds that she has never maintained an office for the practice of law within the First Department, that she has not practiced law since 2002, and that the sanctions imposed against her arose from her conduct as a party-litigant, not as an attorney. Respondent admitted that she had not paid the sanctions, nor did she intend to do so. Respondent also testified that she suffers from, among other things, a serious immune deficiency condition that has resulted in serious illnesses, some of which have been life threatening. Respondent also testified that she has been treated for cancer, and that her only source of income was disability benefits.

On December 15, 2011, the Hearing Panel issued a report in which it recommended that respondent be publicly censured. The DDC seeks an order, pursuant to 22 NYCRR 605.15(e), to dissafirm the Panel's recommendation and suspend respondent for one year. The DDC argues that whether respondent was in active practice or not, she engaged in a long pattern of frivolous litigation and willfully disregarded judicial orders imposing sanctions.

In response, respondent, pro se, has submitted a cross motion in which she requests: 1) that the collateral estoppel proceeding be dismissed; 2) that this Court's prior orders be vacated; 3) that the matter be transferred to the Third Department for the commencement of sanction proceedings against the DDC; 4) that the matter be consolidated with her article 78

4

EXHIBIT 3
Page 29 of 808

proceeding[2] and her pending appeal in the Third Department of an order dismissing her lawsuit against the State of New York;[3] and 5) that she be awarded attorneys' fees and monetary damages.

We agree with the DDC that the respondent's conduct warrants more than public censure. While the Panel noted that respondent's conduct did not pose "a threat of harm to the public at large," it nonetheless impacted seven state and federal courts. Although respondent was not acting as a practicing attorney at the time she was sanctioned, this Court has disciplined attorneys for conduct that is "both in and out of their profession so as to ensure the public's right to representation by attorneys who are worthy of trust" (*Matter of Wong*, 275 AD2d 1, 6 [1st Dept. 2000]; *Matter of Bikman*, 304 AD2d 162 [1st Dept. 2003], *lv denied* 100 NY2d 506 [2003]). Furthermore, respondent's pursuit of frivolous and vexatious litigation, as well as her misrepresentations to the court, warrant suspension (*see e.g. Matter of Tillem*, 56 AD3d 94 [1st Dept. 2008]; *Matter of Pu*, 37 AD3d 56 [1st Dept. 2006], appeal

---

[2] In September 2011, after the sanction hearing, but prior to the issuance of the Hearing Panel's report, respondent commenced an article 78 proceeding. Supreme Court referred 3 out of 12 of respondent's claims to this Court.

[3] In March 2007, respondent filed a lawsuit in the Court of Claims against the DDC and its attorneys alleging intentional and negligent torts, and seeking $30 million in damages. It is assumed that although dismissed, this is the action to which respondent refers.

5

EXHIBIT 3
Page 30 of 808

dismissed and lv denied 8 NY3d 877 [2007]; *Bikman*, 304 AD2d 162).

However, respondent's misconduct, while serious, is mitigated by her well-documented health problems (*see e.g. Matter of Flynn*, 69 AD3d 5 [4th Dept. 2009]; *Matter of Meltzer*, 293 AD2d 202 [1st Dept. 2002]).  Therefore, the one-year sentence urged by the DDC is unduly harsh.

Accordingly, the DDC's motion should be granted to the extent that respondent should be suspended from the practice of law for a period of six months effective 30 days from the date hereof, and until further order of the Court.  Respondent's cross motion should be denied in its entirety.  Respondent cannot seek reinstatement at the conclusion of her suspension without proof of payment of the sanctions.

All concur.

Order filed.

6

EXHIBIT 3
Page 31 of 808

EXHIBIT 4

EXHIBIT 4



## New York State Unified Court System

### Attorney Online Services - Search

**Close**

### Attorney Detail Report *as of 08/22/2023*

| | |
|---|---|
| Registration Number: | 1994516 |
| Name: | AMY R. GURVEY |
| Business Name: | |
| Business Address: | Not on File |
| Business Phone: | |
| Email: | |
| Date Admitted: | 06/04/1985 |
| Appellate Division Department of Admission: | 3rd |
| Law School: | UCLA |
| Registration Status: | Attorney - Suspended |
| Next Registration: | Apr 2023 |

### Disciplinary History

**Suspension**    **Effective Date:** 12/04/2012

*Ordered by Appellate Division 1st Department*

View Public Discipline



The Detail Report above contains information that has been provided by the attorney listed, with the exception of REGISTRATION STATUS, which is generated from the OCA database. Every effort is made to insure the information in the database is accurate and up-to-date.

The good standing of an attorney and/or any information regarding disciplinary actions must be confirmed with the appropriate Appellate Division Department. Information on how to contact the Appellate Divisions of the Supreme Court in New York is available at www.nycourts.gov/courts.

 **Attorney Services**

Close

# EXHIBIT 5

# EXHIBIT 5

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
_____X

In the matter of the Writ of
AMY R. WEISSBROD,

          Petitioner Pro Se,               NOTICE OF PETITION
                                      PURSUANT TO
For a Judgment Pursuant to Article 78        CPLR ARTICLE 78
Of the Civil Practice Law and Rules,
             -against-

Jorge Dopico, Esq., Senior Counsel of the First Departmental
Disciplinary Committee ("FDDC"), Hon. Fern Fisher, Chief
Administrative Judge, NYC Civil Court, Hon. Jean Schneider,
Supervising Judge NYC Housing Part, Thomas Cahill, Esq. James Shed, Esq.
Paul Curran, Esq., Naomi Goldstein, Esq., and Orlando Reyes, Esq.,
Harold McGuire, Esq. Chair Hearing Panel IV,

          Respondents.
_____X

11/110774

**FILED**

SEP 21 2011

COUNTY CLERK'S OFFICE
NEW YORK

**PLEASE TAKE NOTICE** that upon the annexed Verified Petition sworn to this

14th day of September, 2011, Petitioner Pro Se AMY R. WEISSBROD, a permanently

disabled USPTO inventor and technology executive on inactive attorney status in

California and a graduate of the UCLA School of Law and Harvard Graduate School,

will move the Supreme Court of New York on the 14th day of October, 2011 at 9:30 a.m.

or as soon thereafter as the parties may be heard at the Courthouse located at 60 Centre

Street, New York, NY 10007 in Motion Support Room 130 for a judgment pursuant to

Article 78 of the Civil Procedure Law and Rules:

      (1)      Directing Respondent Jorge Dopico, Chief Counsel of the First

Departmental Disciplinary Committee ("FDDC") and Harold McGuire, Esq. Chair of

FDDC Hearing Panel IV, to deliver to Petitioner, pursuant to the Due Process and

EXHIBIT 5
Page 35 of 808

Supremacy Clauses of the United States Constitution, the original audiotape recording with certified chain of custody from a June, 22, 2011 hearing for Petitioner's independent certified transcription. [*Rosario v. Amalgamated Ladies Garment Cutters Union, Local 10, ILGWU*, 605 F. 2d 1251 (SDNY 1979) (other cases cited therein); *United States v. Garland Tyree*, 279 Fed. Appx. 31 (EDNY 2007) (Fed. Briefs, 2007 WL 6506796 (2d Cir. 2007); *Goonewardena v. State of NY*, 475 F. Supp. 2d 310 (SDNY 2007)];

      (2)    Ordering Respondent Dopico to immediately withdraw Respondents' collateral estoppel proceeding in chief;

      (3)    Determining that Respondent officers Jorge Dopico, Fern Fisher, Jean Schneider, Thomas Cahill, James Shed, Paul Curran, Naomi Goldstein and Orlando Reyes, acting under color of state law, violated Petitioner's Due Process and Equal Protection rights under the Fourteenth Amendment and ordering damages against them pursuant to 42 USC 1983 in their official and individual capacities. [*Forrester v. White*, 484 US 219 (1988) (O'Connor, J.); *Goonewardena v. State of NY*, 475 F. Supp. 2d 310 (SDNY 2007); *Antoine v. Byers & Anderson*, 508 U.S. 429, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993); *Rosario v. Amalgamated Ladies Garment Cutters Union, Local 10, ILGWU*, 605 F. 2d 1251 (SDNY 1979) (other cases cited therein); *United States v. Garland Tyree*, 279 Fed. Appx. 31 (EDNY 2007) (Fed. Briefs, 2007 WL 6506796 (2d Cir. 2007); *See also, Cornell v. State of NY*, 46 NY 2d 1032, 389 NE 2d 1064 (1979);

      (4)    Determining that Respondent officers violated Petitioner's rights under NY's Constitution and ordering damages against them;

2

EXHIBIT 5
Page 36 of 808

(5)    Determining that Respondent officers violated Petitioner's right to equal protection of NY's Judiciary §§ 90(2) and 487 under the Fourteenth Amendment of the United States Constitution and ordering damages against them;

(6)    Determining that Respondent state officers violated Petitioner's rights under the Americans with Disabilities Act, 42 USC 12132 et seq., ("ADA") Title II and ordering damages against them in their official and individual capacities. [*Goonewardena v. State of NY*, 475 F. Supp. 2d 310 (SDNY 2007)];

(7)    Ordering that Respondent Dopico discipline the attorneys Elliot J. Cherson, Esq., Alfred Pennisi, Esq., Laurence Pearson, Esq. and Stephen Levy, Esq. who practice before the First Dept. under the Equal Protection Clause of the US Constitution and NY's Judiciary Law Section 90(2) and 487 because they undertook material forgery of a stipulation adverse to a tenant's HUD interests as found by Supreme Court; unilaterally altered a stipulation and appended it to warrant of eviction in a HUD/ADA eviction proceeding; falsely swore before the Supreme Court of NY that their landlord clients had no legal connection with the building project when they accepted three HUD mortgages; intentionally deprived Petitioner of notice of her federal rights and remedies; concealed and approved consideration for a coterminous lease to Petitioner's HUD/ADA protected apartment to another tenant; violated the Disciplinary Rules of NY; aided and abetted Petitioner's false arrest and malicious prosecution by Respondents; and bore false witness against Petitioner and her attorneys, Jay Stuart Dankberg, Esq. and Alan Goldberg, Esq.;

(8)    Ordering that Respondents state officers pay damages to Petitioner pursuant to 42 USC §1983 for stigmatization, medical injuries, emotional distress, abuse

3

EXHIBIT 5
Page 37 of 808

of process, malicious prosecution, false arrest, harassment; special damages to Petitioner's career, professional reputation and patents, and aiding and abetting the undue forfeiture of Petitioner's HUD/ADA protected disability tenancy interests in NYC;

(9)     Ordering punitive damages against Respondent FDDC officers as exemplary damages for heinous malicious harassment and attempting to quell her absolute rights of expression and exercise HUD remedies  under the First Amendment;

(10)     Ordering Respondents to pay Petitioner 42 USC 1983 damages, attorneys' fees and costs for aiding and abetting undue forfeiture of Petitioner's HUD/ADA protected lease and associated federal benefits;

(11)     Ordering Respondent Hon. Fern Fisher under Administrative Order 207/85 and *Miller v. Silbermann*, 951 F. Supp. 485, 494 (SDNY 1997) (Kram, J.) to discipline one administrative clerk, Ernesto Belzaguy and two NYC Housing Judges Laurie Lau and Jean Schneider for administrative breach of duty during a HUD eviction proceeding; for presiding without any power under NY statutes; for covertly destroying and failing to record proceedings and transcripts; denying Petitioner her HUD mandated right to trial by jury and HUD's  preempting and expanded definition of due process rights under the Supremacy Clause of the United States Constitution; and unlawfully sending Petitioner's tenant sanction to the NYS Lawyers' Fund;

(12)     Ordering damages against Housing Part judicial officers for abuse of process because Petitioner not an attorney admitted in NYS and not appearing as an attorney in the case;

(13)     Ordering 42 USC 1983 damages against Respondents for independently failing to investigate public attorney membership records concerning Petitioner; and

4

EXHIBIT 5
Page 38 of 808

(14)    Granting such other and further relief in Petitioner's favor as the Court

deems just and proper.


**PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR 2214 (b),

opposition papers must be served at least seven days prior to the return date.


Respectfully submitted,

Amy R. Weissbrod
Petitioner *Pro Se*
315 Highland Avenue
Upper Montclair, NJ  07043
PH 917-733-9981


To:

Office of the NYS Attorney General
120 Broadway
New York, NY  10271
Attn:  Intake, Litigation Bureau
(212) 416-8000

NYS Attorney General
The Capitol
Albany, NY  12224

Jorge Dopico, Chief Counsel
First Departmental Disciplinary Committee
61 Broadway   2nd Fl
New York, NY  10006

Hon. Fern Fisher
Chief Adm. Judge
NYC Civil Court
111 Centre Street
Chambers  12th Fl
New York, NY 10013

5

EXHIBIT 5
Page 39 of 808

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
———————————————————————————— X

In the matter of the Writ of
AMY R. WEISSBROD,

              Petitioner Pro Se,                         VERIFIED PETITION

For a Judgment Pursuant to Article 78
Of the Civil Practice Law and Rules

                 -against-

Jorge Dopico, Esq., Senior Counsel of the First Departmental
Disciplinary Committee ("FDDC"), Hon. Fern Fisher, Chief
Administrative Judge, NYC Civil Court, Hon. Jean Schneider,
Supervising Judge Housing Part, Thomas Cahill, Esq. James Shed, Esq.,
Paul Curran, Esq., Naomi Goldstein, Esq., and Orlando Reyes, Esq.,
Harold McGuire, Esq. Chair Hearing Panel IV,

              Respondents.
———————————————————————————— X

STATE OF NEW JERSEY   )
                       ) ss:
COUNTY OF ESSEX      )

       AMY R. WEISSBROD, the Petitioner in this CPLR Article 78 proceeding,

being duly sworn, swears to the truth of the following statements under penalty of perjury

in support of her Verified Petition seeking a writ and mandamus for Respondent NYS

officers to immediately deliver to Petitioner the original hearing audiotapes and chain of

custody from a June 22, 2011 sanction hearing for Petitioner's independent certified

transcription; for declaratory determinations of violations of Petitioner's constitutional

rights; and damages, punitive damages, attorneys' fees and costs against Respondents and

in Petitioner's favor pursuant to 42 USC §§1983, 1988.

6

EXHIBIT 5
Page 40 of 808

## I.  VERIFIED PETITION

1.      This Article 78 Verified Petition is brought pursuant to controlling

decisions from the United States Supreme Court and the Federal and State Courts of NY

against Respondents who are administrative, judicial and quasi-judicial officers of the

First Departmental Disciplinary Committee in NYS ("FDDC") and the NYC Civil Court.

[*Goonewardena v. State of NY*, 475 F. Supp. 2d  310 (SDNY 2007)]; *Rosario v.*

*Amalgamated Ladies Garment Cutters Union, Local 10, ILGWU*, 605 F. 2d 1251 (SDNY

1979) (other cases cited therein); *United States v. Garland Tyree*, 279 Fed. Appx. 31

(EDNY 2007) (Fed. Briefs, 2007 WL 6506796 (2d Cir. 2007); *see also Forrester v.*

*White*, 484 US 219 (1988) (O'Connor, J.); *Antoine v. Byers & Anderson*, 508 U.S. 429,

113 S.Ct. 2167, 124 L.Ed.2d 391 (1993)].

2.      The Petition seeks a writ mandating that FDDC Respondents immediately

deliver to Petitioner the original audiotapes and certified chain of custody from a sanction

hearing that took place on June 22, 2011 before FDDC Hearing Panel IV, Respondent

Harold McGuire, Esq. presiding; declaratory determinations of violations of Petitioner's

constitutional rights; and ordering 42 USC §§1983, 1988 damages and punitive,

exemplary damages, attorneys' fees and costs in Petitioner's favor and against

Respondents in their official and individual capacities.  *Goonewardena v. State of NY*,

475 F. Supp. 2d  310 (SDNY 2007)]; *Rosario v. Amalgamated Ladies Garment Cutters*

*Union, Local 10, ILGWU*, 605 F. 2d 1251 (SDNY 1979) (other cases cited therein);

*United States v. Garland Tyree*, 279 Fed. Appx. 31 (EDNY 2007) (Fed. Briefs, 2007 WL

6506796 (2d Cir. 2007).

7

EXHIBIT 5
Page 41 of 808

3.      Under the doctrine of *respondeat superior*, the State of NY is liable for violations of Petitioner's constitutional rights undertaken by Respondents in their official and individuals capacities. *Cornell v. State of NY*, 46 NY 2d 1032, 389 NE 2d 1064 (1979).      Respondents' primary responsibility, however, involves Respondents' constitutional violations against Petitioner's person, properties, business and professional interests.

4.      In this petitioner, Petitioner seeks declaratory determinations that FDDC Respondents are separately liable and must pay damages under 42 USC 1983, attorneys' fees and costs and punitive damages for Petitioner's unjustified abuse and harassment that was undertaken only because Respondents breached their public duty to her under the Equal Protection Clause and NY's Judiciary Law §§ 90(2) and 487 by failing to discipline NY attorneys that Supreme Court found materially and unilaterally forged Housing Part documents in proceedings concerning Petitioner's own HUD/ADA protected apartment.  (**Exhibit 1**)  These attorneys also falsely swore before that their landlord- clients had no affiliation or legal connection whatsoever with the building project when HUD's 2005 FOIA production c onfirmed the y are 1/3 equity owners. (**Exhibit 2**).  Under reams of annotations to NY Judiciary Law Sections 90(2) and 487, other attorneys in NYS have been disbarred or suspended for such acts of fraud, forgery and misconduct.   Respondents' failure to discipline, therefore, and their targeting Petitioner for unjustified judicial abuse, demonstrates that their standards and protocols are not equally applied, as they must be under the Equal Protection Clause, particularly when the aggrieved complainant has underlying federal HUD/ADA rights at issue.

8

5.    Petitioner now seeks an order mandating that Respondents immediately

withdraw their petition in chief as frivolous and pay 42 USC 1983 damages, attorneys'

fees and costs, and punitive damages for stigmatization, medical injuries, emotional

distress, abuse of process, malicious prosecution, false arrest, harassment; special

damages to Petitioner's career, patents and stellar professional reputation;  and aiding and

abetting the undue forfeiture of Petitioner's HUD/ADA protected disability tenancy

interests in NYC.

6.    The Petition is timely brought within four (4) months of the June 22, 2011

hearing that Respondents conducted after the NY Court of Appeals held on

September 14, 2010 that FDDC Respondents' collateral estoppel proceeding in chief was

not final as defined under NY's Constitution.  The NY Court of Appeals previously held

that the underlying housing proceedings, which are the premise for Respondents'

collateral estoppel petition, were also not final. [1]  (**Exhibit 3**).

7.    Respondents' other improper motives were to deter Petitioner from

seeking damages, attorneys' fees and costs against NYS Housing Part officers for

deprivation of her constitutional  rights during proceedings concerning her own valuable

HUD/ADA apartment [2] ; and possibly also to  discourage Petitioner's proper and

---

[1] *Hudson Towers Housing v. Amy Weissbrod & Patrick Lynch*, NYC Civil Court L&T
Index No. 60941/97; *Amy Weissbrod v. Patrick Lynch, Hudson Towers Housing Elliot
Cherson, Rappaport, Hertz, Cherson & Rosenthal, and the Lefrak Organization, Inc.*, NY
Supreme Index No.  118826/97.

[2] *King v. Housing Authority of the City of Huntsville, AL*, 670 F. 2d 952 (11th Cir. 1982);
*Skinner v. Boston Housing Authority*, 690 F. Supp. 109 (D. Mass 1988) [*Reversed* on the
issue of the Tenants' attorneys' fees and costs that were awarded in full by the First
Circuit, 873 F. 2d 1433 (1st Cir. 1989)];*Goldberg v. Kelly*, 397 US 254 (1970); *Escalera
v. NYC Housing Authority*, 425 F. 2d 853 (2d Cir. 1970); *Lopez v. Henry Phipps Plaza
South*, 498 F. 2d 937 (2d Cir. 1974) (binding NY landlords organized under the Limited
Profit Housing Law of NY who receive HUD mortgages under the National Housing Act,

9

EXHIBIT 5
Page 43 of 808

continued participation in an ongoing tenants' investigation at HUD's Washington, DC office against her landlords, Hudson Towers Housing and parent 1/3 owner Lefrak Organization, Inc. at the Gateway Plaza project in Battery Park City . This is where Petitioner has a federally protected apartment and associated welfare benefits effective September, 1995 [3].

8.      Respondents also never took required disciplinary action when state housing officers also acting under color of state law: (i) destroyed audiotapes and transcripts in the underlying housing proceedings; (ii) failed to record seminal hearings and recuse themselves as they represented; (iii) interfered with Petitioner's appeals through the state system; (iv) discriminated against Petitioner for being disabled and married with a high-risk pregnancy in open court; (v) and then denied Petitioner HUD's preempting and mandatory expanded definition of due process and a jury trial in violation of the Supremacy Clause of the United States Constitution. (**Exhibit 4**) (*fn 2, supra*). (See also, Memorandum of Law, **Section V**, *infra*).

9.      Furthermore Housing Judge Jean Schneider who in 2003 issued the sanction order jointly against Petitioner as tenant/client, and her attorney Jay Stuart Dankberg, Esq. that Respondents seek to use collaterally had no power to preside, and her subject order is void under NY's Constitution and state decisions that have interpreted it.  And an appeal thereto is also not yet final before the State.  (See, Memorandum of Law, **Section V, paras. 61-62**, *infra*)

---

12 USC 1701); *McNeill v. NYC Housing Authority*, 719 F. Supp. 233 (SDNY 1989) (Walker, J.).

[3] HUD Investigation No. 05-HL-1438

10

Supreme Court Records OnLine Library -  page 10 of 37

EXHIBIT 5
Page 44 of 808

10.    The Gateway Plaza multi-apartment project has been unlawfully managed

for years in violation of preempting HUD Regulations and run by its landlord/owners as

"purely private" when in fact the landlords Hudson Towers Housing and its parent Lefrak

Organization accepted three (3) increasing HUD mortgages from the US Government and

enjoyed 25 years of tax exempt status from NYS. [4]  Landlords' strict compliance was the

stated consideration for their low interest federal mortgages as revealed in HUD's 2005

FOIA production.  HUD also previously prosecuted the landlords before SDNY starting

in 1985 for illegal rent gouging, lease and wait list violations in publicized cases that

were settled and not reported. [5]  After settlement, landlords resumed their illegal

activities to appreciate their 1/3 equity interest.  They also resumed the illegal practice of

issuing non-compliant leases that deprived tenants of HUD mandated notice of their

federally protected rights and remedies when faced with eviction and retaliatory eviction,

which is Petitioner's case.  24 CFR 966.4.

11.    Gateway Plaza is a unique, valuable commodity for qualifying tenants.  It

is combined-use building project in Battery Park City where tenants can run businesses

from their apartments with full gym, pool and disability facilities.  It is where Petitioner

was issued a valuable ADA-approved lease when she was in graduate school in

California and about to enter medical school as a disabled student in NYC.  Petitioner's

---

[4] In 2005,  it was first revealed to Petitioner that a NYS agency, Battery Park City
Authority ("BPCA"), was an equity partner with landlords effective 1980 and had an
irreconcilable conflict of interest never disclosed as it was delegated by HUD with the
duty to "stand in the shows of the DHCR in protecting the tenants' federal interests"; but
on the other hand it was an equity partner with ownership interests in sync with the
landlords.

[5] *Sultzer v. Pierce*, 85 CV 0519 (CES) (SDNY 1985); *Sultzer v. Battery Park City
Authority*, NY Supreme Court Index No. 13906/86.

11

Supreme Court Records OnLine Library -  page 11 of 37

EXHIBIT 5
Page 45 of 808

unit was also optimally appointed on the north cool side of the project, therapeutic for her

permanent and severe pulmonary and immunologic disease, and on the lower Manhattan

waterfront, cool in the summertime.  Petitioner, who could not complete clinical training

in medical school then became a technology inventor in medical education with a

successful start-up business, and has urgent need for reinstatement of her lease in a

combined-use building project that is rent stabilized.

      12.     A core issue at bar is that unbeknownst to Petitioner, her lease was a per se

violation of HUD mandates 24 CFR 966.4; 966.51(a)(2); 966.66.  It was an instrument

only properly used for purely private housing in NYC because it omitted iteration and

notice of the federal rights and remedies before the Federal Courts that attached to her

tenancy as a matter of preempting HUD mandates.  Petitioner's lease is a per se violation

of 24 CFR 966.4; 966.51(a)(2).  It also illegally required her to waive her right to trial by

jury in violation of 24 CFR  966.66.  In NYS, a jury trial can only be legally waived in a

lease issued to a tenant in purely private housing.  Without a proper HUD compliant

lease, then, Petitioner also became deprived of her right to counsel when landlords'

without cause attempted to terminate her lease before the Housing Part, because her

attorneys were also deprived of notice of her immediately exercisable federal rights and

remedies in the issued lease.

      13.     The following additional facts demonstrate Respondents heinous abuse of

Petitioner mandating damages and punitive damages against them.  While Petitioner was

on a priority wait list for a larger disability apartment, pregnant with a high-risk

pregnancy and in medical school commuting from her ADA-approved subject apartment,

landlords clandestinely issued an illegal concealed (coterminous) lease to her unit <u>to an</u>

12

EXHIBIT 5
Page 46 of 808

<u>outsider</u>.  Consideration (one month's rent and security) is stated as received by landlords from their theretofore concealed new tenant *two weeks before their attorneys even filed a holdover proceeding naming Petitioner in the Housing Part*!  (**Exhibit 5**) Landlords filed their petition of holdover without serving Petitioner with HUD mandated notice of lease termination and without cause.  Landlords' attorneys then drafted a stipulation representing expedited issuance to Petitioner of a larger priority wait list unit (then already owing to her for more than a year), materially altered the stipulation they presented in different form before filing it appending to a warrant of eviction through the Housing Part clerks' window also without having it so ordered by a Judge.

14.     The problem for FDDC Respondents herein is the pre-existing order from Supreme Court of NY (**Exhibit 1**) that had already found, prior to the Housing Part hearings, *that the landlords lawyers unilaterally and materially changes after fraudulently inducing Petitioner and her attorneys to sign it!.* (**Exhibit 1** with attachments).  This order established the "law of the case" that Housing Judges were required to follow and did not; and demonstrates that Petitioner-tenant's attorney's 2000 motion for vacatur was proper and authorized, <u>and anything but frivolous or sanctionable</u>!  In the interim Respondents did not discipline the landlords' attorney per Supreme Court's order.

15.     The decision that FDDC Respondents now seek collateral estoppel application of, was issued by Respondent Judge Jean Schneider in 2003.  FDDC Respondents' proceeding in chief was then filed as a chilling tactic to deter Petitioner's pursuit of her individual HUD remedies against themselves and NYC Housing Part officers for ongoing deprivations of her constitutional rights and HUD remedies.

13

EXHIBIT 5
Page 47 of 808

16.     FDDC Respondents' abuse of state process against Petitioner constitutes separate intentional torts against Petitioner's person, property, business and professional interests that warrant 42 USC 1983 damages and punitive damages against them personally.

## II.  ABUSE OF JUDICIAL PROCESS

17.     Petitioner, contrary to Respondents' untruthful allegations in its proceeding in chief, is not admitted to active practice in NYS, was never admitted to the First Dept., never appeared as an attorney before the First Dept., does not reside in NY, has no clients in NY, and was at all times relevant herein, was the tenant-client in the housing proceedings.

18.     Respondents, therefore, have no jurisdiction over Petitioner in the capacity of attorney.   These facts were admitted during the June 22, 2011 hearing, demonstrating the cogent due process need for delivery to Petitioner of the original audiotapes and certification of chain of custody.

19.     Also, in all public records including membership records at the NY Court of Appeals, Petitioner is listed as <u>retired</u> from the *Third Dept.* in NYS <u>effective January 1, 2002</u> and on continuing inactive status in the State of California based on disability. Respondents are deemed to have actual notice of public records as a matter of law particularly membership records regarding active members of the NY Bar.

20.     In addition, in the underlying housing proceedings, Petitioner was at all times, represented by two attorneys, Jay Stuart Dankberg, Esq. and Alan Goldberg, Esq. who admitted to preparing, filing and arguing all motions.  Ergo, Petitioner performed no

14

EXHIBIT 5
Page 48 of 808

act in the capacity of an attorney whatsoever;  and an affirmative act in the capacity of attorney is required for any attorney discipline.

21.     That other previous and state tapes and transcripts were already ordered destroyed in the housing proceedings without notice to Petitioner or her attorney, makes mandamus a proper remedy.  *Goonewardena v. State of NY*, 475 F. Supp. 2d  310 (SDNY 2007)]; *Rosario v. Amalgamated Ladies Garment Cutters Union, Local 10, ILGWU*, 605 F. 2d 1251 (SDNY 1979) (other cases cited therein); *United States v. Garland Tyree*, 279 Fed. Appx. 31 (EDNY 2007) (Fed. Briefs, 2007 WL 6506796 (2d Cir. 2007).

22.     This Court must now also order mandatory withdrawal or dismissal of Respondents' petition in chief as frivolous and abort further abuse by mandamus.  In 2011 FDDC Respondents noticed they still intended to conduct a hearing to determine what *attorney* sanction, if any, should be assessed against Petitioner *personally*. Respondents now admit on the record Petitioner was not appearing as an attorney, and jurisdiction is lacking.  Petitioner has the right to be free of unjustified abuse.

23.     There is always, as FDDC Respondents are fully aware, significant professional damages and consequential damages when discipline of any kind is undertaken by their office.  Their punishment is always damaging to reputation and career.  The public belief is that punishment by Respondents is always *in capacity of an attorney in active practice* that will, without question, adversely affect the individual's professional record, career, business interests and reputation, ability to make a living and be hired, and will also stigmatize in perpetuity other matters in which the attorney may need to bring before any Court.  <u>FDDC Respondents must pay for all damages to</u>

15

EXHIBIT 5
Page 49 of 808

<u>Petitioner that were foreseeable by them when they intentionally and maliciously abused judicial process</u>.

24.    Respondents' e-mails even demonstrate that members of their office were seeking cruel and unusual punishment *i.e.,* Petitioner's disbarment for a minor monetary sanction. Disbarment has never been authorized under these types of circumstances by the Appellate Division. [6]  There is not one annotation affirming disbarment for a monetary sanction when the individual was not appearing in the capacity of attorney and had other attorneys formally retained in the case. Ergo Respondents violated Equal Protection and must be cited and pay.

25.    While Petitioner concedes that monetary sanctions could, if they *were* warranted, have been assessed against her only *as a party-tenant*, here Respondent Housing Judge Schneider improperly sent Petitioner's tenant sanction to the NYS Lawyers' Fund anyway, in reckless disregard of the consequences. <u>Judge Schneider knew from the transcripts that Petitioner was not an attorney in the case and not in active practice in NY</u>. FDDC Respondents then aided and abetted this wrongful state action and attempted to cover up their failure to discipline the landlords' attorneys.

26.    Petitioner is absolutely entitled to equal protection of NY's attorney discipline laws both as an individual tenant in HUD federally protected housing and from the perspective of being insulated from abuse for proper administrative pursuit of her

---

[6] Most respectfully, when Petitioner sent FDDC Respondents a grievance concerning her own USPTO patent lawyers for withdrawing from her USPTO representation without notice to her and for <u>admittedly</u> representing major competitors with conflicting interests to her patents and inventions, FDDC Respondents took no action. This definitely shows that Respondents' practices violate Equal Protection.

16

EXHIBIT 5
Page 50 of 808

HUD rights and remedies . Respondents must now be ordered to discipline the opposing

attorneys to comply with Equal Protection under the United States Constitution.

### III.  PETITIONER'S RIGHT TO ORIGINAL AUDIOTAPES

27.     Since the date of the June 22, 2011 sanction hearing, Respondents Dopico

and Reyes have emphatically refused Petitioner the original hearing audiotapes with

chain of custody.  This is a *per se* violation of Petitioner's right to due process warranting

42 USC 1983 damages, because other relevant tapes and transcripts were already

unilaterally destroyed without notice by state officers.  *United States v. Garland Tyree*,

279 Fed. Appx. 31 (EDNY 2007) (Fed. Briefs, 2007 WL 6506796 (2d Cir. 2007).

28.     Petitioner has the absolute right free from harassment and abuse of

process, to collaterally attack Respondents' Due Process, Equal Protection, First

Amendment and Supremacy Clause violations in State or Federal Court until a final order

as defined under NY's Constitution is entered.  *Goonewardena v. State of NY*, 475 F.

Supp. 2d  310 (SDNY 2007)]; *Rosario v. Amalgamated Ladies Garment Cutters Union,*

*Local 10, ILGWU*, 605 F. 2d 1251 (SDNY 1979) (other cases cited therein).

29.     That relevant audiotapes and transcripts from the Housing Court were

already covertly destroyed conclusively demonstrates that Petitioner had no full and fair

opportunity to litigate. *Ergo, Respondents' application based on collateral estoppel is a*

*legal impossibility **and frivolous.***

30.     In August, 2011, two (2) months after the June 22nd hearing, Respondents

Reyes and Dopico **again** improperly denied Petitioner original audiotapes, transcripts and

17

EXHIBIT 5
Page 51 of 808

chain of custody. The ongoing pattern of due process violations and disappearance of original records makes Respondents' recent denial very circumspect.

31.     There can be no question that only one original transcript from June 22 2011 can exist for purposes of Respondents due process attacks and for Petitioner's appeal to the NY Court of Appeals. *United States v. Garland Tyree*, 279 Fed. Appx. 31 (EDNY 2007) (Fed. Briefs, 2007 WL 6506796 (2d Cir. 2007)

32.     Instead, Respondents referred Petitioner to Ubiqus, a NYC transcription company. Chris Kelly, manager of Ubiqus, told Petitioner that his office cannot guarantee that the tape delivered by Respondents was an original and unedited recording from the hearing. Mr. Kelly also said that Ubiqus cannot give Petitioner certification of chain of custody on behalf of Respondents or the State. Kelly further wrote Petitioner in an e-mail that he was instructed to make one audio digital recording plus one written digital recording and then to quickly return the delivered tape back to Respondents. (**Exhibit 6**) **Kelly also said he was explicitly instructed by Respondents not to give Petitioner a copy of the audio digital transcript.** <u>This implies that Ubiqus' digital written version might be different or have alterations from the original and/or the audio.</u>

33.     Respondent Reyes then advised Petitioner that FDDC's position is that the State owns the original recording and Petitioner has no right to it.

34.     Petitioner emphatically opposes this legal conclusion.

## IV. PUNITIVE DAMAGES ARE PROPERLY AWARDED FOR ABUSE

35.     In 2005, when HUD opened a formal investigation targeting landlords and Battery Park City Authority (a NYS agency) for continuing HUD violations at the

18

Supreme Court Records OnLine Library - page 18 of 37

EXHIBIT 5
Page 52 of 808

Gateway Plaza project [7] , Petitioner became the target of judicial harassment, abuse and malicious prosecution. [8]

36.    On April 1, 2005, FDDC Respondents first sent Petitioner an *admonition notice* citing Judge Schneider's 2003 sanction order.  Petitioner wrote back that Respondents have no jurisdiction over her, she is not admitted to active practice in NYS, and performed no affirmation act in the capacity of attorney in the proceeding.

37.    By definition, under NY's Constitution, Respondents' 2005 admonition constituted "*discipline not warranting a proceeding before the Appellate Division*".

38.    In 2007, with *no subsequent conduct of the same type cited* as is required under NY's Constitution, 22 NCYRR 603.9, Respondents nonetheless defied NY statutes and filed a formal collateral estoppel proceeding before the Appellate Division First Dept. Petitioner was never admitted to the First Dept. and performed no act in the capacity of attorney in this proceeding.  In addition, Petitioner was then already then five years retired from NY's *Third Dept.* and on inactive disability status in California.

39.    Respondent FDDC officers represent a faction of the State Bar of NY delegated with the irrevocable duty under 22 NYCRR 603, et seq. to process complaint, commence and impose discipline against attorneys for violations of NY's Disciplinary

---

[7] HUD Investigation No. 05-HL 1438; See also *Sultzer v. Pierce*, 85 CV 0519 (CES) (SDNY 1985) (a class action brought by HUD and the original Gateway Plaza Tenants' Association or illegal rent gouging,  violation of wait list procedures and illegal evictions. The case was settled and never reported)

[8] HUD's 2005 FOIA production revealed for the first time that BPCA is a NYS agency that was HUD's delegated supervising agency for Gateway Plaza commencing in 1980 and assigned the job of standing in the shoes of the DHCR in protecting the tenants' federal interests.  HUD's 2005 production also revealed for the first time that BPCA is an equity partner with ownership interests in sync with the landlords 1/3 interest, presenting a conflict of interest, never revealed to the Gateway Plaza tenants as it should have been.

19

EXHIBIT 5
Page 53 of 808

Rules and other misconduct as codified and annotated in NY's Judiciary Law §§ 90(2) and 487. However Respondents' jurisdiction is expressly limited by statute to attorneys who are: (i) in current active practice in the First Dept.; (ii) whose offices are located within the First Dept.; or (iii) who commit acts while acting in the capacity of attorney within the First Dept. [22 NYCRR 603, et seq.; NY's Judiciary Law §§ 90(2) and 487; *Alexander v. Cahill*, 598 F. 3d 79 (2d Cir. 2010), *See also*, *Alexander v. Cahill* lower court decisions, 5:07-cv-117 (NDNY); 634 F. Supp. 2d 239 (2007 WL 1202402, April 23, 2007; 2009 WL 890608].

40.  **Petitioner as Respondents knew, falls into none of these categories**.

41.  The State Bar is a union of NY attorneys. The difference from private unions is that the discipline to be imposed in each case is determined by officers and quasi-judicial officers who are employees of NYS and *not* by private members of the Bar. A suit against NYS employees in federal court is held to be one against the State. Also, because NYS has not agreed to be sued in Federal Court, those being disciplined have more limited remedies to recover for due process violations under the Eleventh Amendment. *Goonewardena v. State of NY*, 475 F. Supp. 2d 310 (SDNY 2007).

42.  Here, however, FDDC Respondents' abuse was undertaken without all jurisdiction. It was also undertaken in violation of ADA Title II. It was undertaken to conceal Respondents' violations of equal protection. In these cases, damage suits are properly brought in Federal or State Court against state employees in their official and individual capacities. *Goonewardena v. State of NY*, 475 F. Supp. 2d 310 (SDNY 2007). For additional violations, action is properly brought in state court. *Ibid*.

20

EXHIBIT 5
Page 54 of 808

43.     Respondents, having made the calculated and pre-meditated decision to abuse process against Petitioner without jurisdiction or cause, took the risk that Respondents would be held responsible for all foreseeable damages Petitioner suffered. The Supreme Court of the United States, SDNY and Appellate Division have all held that NYS officers can be sued in their official and individual capacities for due process and ADA Title II violations, harassment, abuse of process without jurisdiction, and destroying audiotapes and transcripts from state proceedings, all that exist in the instant case. *Goonewardena v. State of NY*, 475 F. Supp. 2d 310 (SDNY 2007); *Forrester v. White*, 484 US 219 (1988) (O'Connor, J.); *Antoine v. Byers & Anderson*, 508 US 494 (1988); *see also Rosario v. Amalgamated Ladies Garment Cutters Union, Local 10, ILGWU*, 605 F. 2d 1251 (SDNY 1979) (other cases cited therein); *United States v. Garland Tyree*, 279 Fed. Appx. 31 (EDNY 2007) (Fed. Briefs, 2007 WL 6506796 (2d Cir. 2007)] see also, *Harris v. NYS Dept. of Health*, 202 F. Supp. 2d 143 (S.D.N.Y. 2002); *Garcia v. SUNY Health Sciences Center at Brooklyn*, 280 F.3d 98 (2d Cir. 2001;*Alvarez v. Snyder*, 264 A.D.2d 27, 702 N.Y.S.2d 5 (1st Dept. 2002).

44.     Punitive exemplary damages are properly awarded in a case such as this because Respondents' actions were undertaken with malice, without jurisdiction or justification, and in reckless disregard of the professional, medical and emotional injuries that were clearly foreseeable under the circumstances because Petitioner is disabled. *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (O'Connor, J.) *Antoine v. Byers & Anderson*, 508 U.S. 429, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993). New York has followed suit. *Alvarez v. Snyder*, 264 A.D.2d 27, 702 N.Y.S.2d 5 (1st Dept. 2000); *Pantoja v. Scott*, 1997 WL 433472, 96 CV 8593 (LLM).

21

EXHIBIT 5
Page 55 of 808

45.     FDDC Respondents are further responsible for acting based on improper motives, i.e., attempting to shield other state officers from liability for other, separate and heinous rights violations.  For example, Judge Laurie Lau's mockery of Plaintiff's disability and high-risk pregnancy in open court constitutes *per se* breach of the Americans With Disabilities Act, 42 USC §§12132 et seq., not protected by the Eleventh Amendment because Congress expressly voiced its intent to the contrary.  *Harris v. NYS Dept. of Health*, 202 F. Supp. 2d 143 (S.D.N.Y. 2002) and *Garcia v. SUNY Health Sciences Center at Brooklyn*, 280 F.3d 98 (2d Cir. 2001).  Clerk Belzaguy, in turn, ordered covert destruction of the tapes from the early Lau proceedings to protect the state from damage liability, and prevent review of Judge Lau's statement in open court on appeal.

46.     Likewise, Judge Schneider's breach of preempting HUD Regulations and the Supremacy Clause of the United States Constitution, by improperly denying Petitioner's request for a jury trial, her tenant folder, the original stipulation, and a due process compliant hearing on the landlords' stated grounds, are also not protected. 24 CFR 966.51(a)(2); 955.4(l)(3); 966.66.  Granting a tenant's application for expanded due process rights under HUD are mandatory functions of the adjudicating tribunal, deprivation of which entitles the tenant to damages, attorneys' fees and costs. 42 USC §§1983, 1988; 24 CFR 966.51(a)(2);  *King v. Housing Authority of the City of Huntsville, AL*, 670 F. 2d 952  (11th Cir. 1982); *Skinner v. Boston Housing Authority*, 690 F. Supp. 109 (D. Mass 1988) [*Reversed* on the issue of the Tenants' attorneys' fees and costs that were awarded in full by the First Circuit, 873 F. 2d 1433 (1st Cir. 1989)];  *Goldberg v. Kelly*, 397 US 254 (1970); *Escalera v. NYC Housing Authority*, 425 F. 2d 853 (2d Cir.

22

EXHIBIT 5
Page 56 of 808

1970); _Lopez v. Henry Phipps Plaza South_, 498 F. 2d 937 (2d Cir. 1974) (binding NY

landlords organized under the Limited Profit Housing Law of NY who receive HUD

mortgages under the National Housing Act, 12 USC 1701 to HUD Regulations binding

on Section 8 landlords); _See also_, _McNeill v. NYC Housing Authority_, 719 F. Supp. 233

(SDNY 1989) (Walker, J.) confirming Petitioner's right and standing to bring these

arguments].

47.     Because under preempting HUD mandates, the legal effect of state

officers' denial to Petitioner of HUD's "expanded definition of due process" and a jury

trial, Petitioner's lease and associated federal benefits were never legally or equitably

terminated. Ergo, FDDC Respondents' are jointly and severally liable for impeding by

abuse and unjustified process Petitioner's right to protect and maintain those rights that

are necessary for her physical and financial survival. 24 CFR 966.4(l)(3); 42 USC 1983,

1988. _Ibid._

48.     Judge Schneider's further improper act of sending Petitioner- tenant's

monetary sanction to the Lawyers' Fund is a separate breach of administrative duty.


## V. MEMORANDUM OF LAW

### A. There is no valid sanction order to which collateral estoppel can apply

49.     The 2003 sanction was clearly issued by Judge Schneider as a chilling

and retaliatory tactic for Mr. Dankberg's three applications for the mandatory recusal of

Housing Judge Laurie Lau for improper discrimination and bias up to that point. Judge

Lau expressly agreed to voluntarily recuse herself du\ring hearing in August, 2000. Yet,

_again_, she failed to record the hearing to prevent review of her order on appeal.

23

50.    Mr. Dankberg's motion papers were then not adjudicated for two years, until *after* Judge Lau issued and entered a ludicrous decision ordering a hearing on sanctions to determine if tenants' application was frivolous . Lau's sanction order was issued on March 2, 2001, after which Judge Lau did not correct her .record or fix the transcripts as she was obligated to do (**Exhibit 7**).   Judge Lau's obligation to disqualify herself when she first represented and agreed, means that her subsequent order is void as it was  already tainted with disqualifying bias.

51.    Then Judge Schneider, who took over the case and also biased, finally held Mr. Dankberg's motion for recusal moot two years after the fact, and targeted Petitioner-tenant for unjustified  harassment.

52.    The following facts demonstrate FDDC Respondents' subsequent pre-meditated bias and abuse after the fact that must be aborted by mandamus.

(i)    First, Judge Lau failed to follow the law of the case established by Supreme Court and FDDC Respondents also deceitfully omitted the same order from their petition in chief (**Exhibit 1 and attachments**). The two acts of misconduct are independent breaches of duty by the state;

(ii)    Second, Judge Lau failed to record and lost her early proceedings.

(iii)    Third Judge Lau failed to record Mr. Dankberg's oral arguments on tenant's 2000 motion for her mandatory recusal and to vacate the forged stipulation.

(iv)    Fourth, Judge Lau failed to order the  original signature copies of the stipulation from landlords and their attorneys.

24

EXHIBIT 5
Page 58 of 808

(v)      Fifth, Judge Lau reneged on her agreement to recuse herself and then repositioned herself back on the case to enter a decision ordering a hearing on sanctions to determine if tenant's motion was frivolous. With her disqualification already mandated, Judge Lau no longer had power to issue any order.  **Exhibit 7**).

(vi)      Sixth, Judge Lau  never fixed the transcripts or corrected the record she damaged before recusing herself;

(vii)      Judge Lau failed to record the oral argument on the vacatur hearing in November, 2000 to again prevent review of both of her in court statements and subsequent sanctions decision on appeal.

53.      These afore-stated breaches of administrative duty by a Housing Judge that were aided and abetted by Clerk Belzaguy when he ordered unnoticed destruction of original tapes and transcripts (**Exhibit 8**) This demonstrates that Petitioner had no "full and fair opportunity to litigate or appeal" through the state system, which is required as a matter of law for Respondents' petition based on collateral estoppel.

54.      In fact, Judge Lau's own factual ruling at pp. 9 of her March 2, 2001 order was that the vacatur motion was *not* frivolous (**Exhibit** 7. This is because Judge Lau held that the new tenant's riders were *"executed at a later date"* (*after* his principal lease was signed) (**Exhibit** 7).  In other words, landlords' new concealed tenant, Patrick Lynch, who was the named target of Justice Abdus-Salaam's injunction (**Exhibit 1 attachments**) and the pre-approved sublessee of Petitioner's apartment by landlords' leasing agent, paid for and was already in possession of his own theretofore concealed principal lease estate

25

EXHIBIT 5
Page 59 of 808

to Petitioner's HUD/ADA protected apartment *two weeks before the holdover petition*

*naming Petitioner was even filed!*

55.    The United States Supreme Court has held that there is no Eleventh

Amendment immunity for the damages Judge Lau and Clerk Belzaguy caused to

Petitioner's HUD protected interests and personal property because immunity attaches to

the function and not the office.  24 CFR 966.51(a)(2); 24 CFR 966.4(l)(3); 24 CFR

966.66; *Forrester v. White*, 484 US 219 (1988) (O'Connor, J.); *Goonewardena v. State of*

*NY*, 475 F. Supp. 2d  310 (SDNY 2007); *Antoine v. Byers & Anderson*, 508 U.S. 429, 113

S.Ct. 2167, 124 L.Ed.2d 391 (1993)].

56.    Likewise, there is no immunity for Judge Schneider improperly denial of

Petitioner's application for a jury trial, her tenant folder, the original signature copy of the

stipulations that landlords had forged, and a due process compliant hearing on the

landlords' stated grounds.  These are mandatory rights of a HUD tenant of which the

tenant cannot be deprived prior to lease termination without subjecting the adjudicating

tribunal to 42 USC 1983 liability.  24 CFR 966.51(a)(2); 955.4. 955.4(l)(3); 966.66.  *King*

*v. Housing Authority of the City of Huntsville, AL*, 670 F. 2d 952  (11th Cir. 1982);

*Skinner v. Boston Housing Authority*, 690 F. Supp. 109 (D. Mass 1988) [*Reversed* on the

issue of the Tenants' attorneys' fees and costs that were awarded in full by the First

Circuit, 873 F. 2d 1433 (1st Cir. 1989)];  *Goldberg v. Kelly*, 397 US 254 (1970); *Escalera*

*v. NYC Housing Authority*, 425 F. 2d 853 (2d Cir. 1970*)*; *Lopez v. Henry Phipps Plaza*

*South*, 498 F. 2d 937 (2d Cir. 1974) (binding NY landlords organized under the Limited

Profit Housing Law of NY who receive HUD mortgages under the National Housing Act,

12 USC 1701 to HUD Regulations binding on Section 8 landlords); *See also*,  *McNeill v.*

26

EXHIBIT 5
Page 60 of 808

_NYC Housing Authority_, 719 F. Supp. 233 (SDNY 1989) (Walker, J.) confirming
Petitioner's right and standing to bring these arguments]. [NOTE: HUD's expanded
definition of due process is not available to tenants in purely private housing.]

57.    In fact, under the Supremacy Clause and preempting HUD mandates over
NY's RPAPL, the legal effect of Petitioner never having been afforded HUD's expanded
definition of due process and a jury trial by the Housing Part is that her lease and
associated HUD benefits were never legally or equitably terminated.  This demonstrates
tenant's vacatur motion was absolutely proper and authorized under federal law.

58.    Damages and punitive damages are separately mandated against FDDC
Respondents because their clear intent through judicial abuse was to deter Petitioner's
pursuit of inalienable HUD rights and remedies and to shield other officers and the state
from federal damage liability.

### B. Judge Schneider's order is void because she had no power or jurisdiction to preside.

59.    Separate and apart from the arguments above, there can be no collateral
estoppel available to FDDC Respondents as a matter of law because Judge Schneider's
2003 order is void for lack jurisdiction and power to preside over the housing proceeding.

60.    The State's improper decision to leave Judge Schneider on the case and
not order her mandatory disqualification under NY's Constitution was the fault and
responsibility of the Chief Adm. Judge Respondent Fern Fisher.  There is no immunity
for these added administrative  breaches of duty and lack of jurisdiction is not waived.

61.    The Rules of the Civil Court Act of the City of New York provide in
relevant  part as follows:

27

EXHIBIT 5
Page 61 of 808

"The Housing Part shall be presided over by a Judge of the Civil Court. The presiding judge *shall* assign the individual cases to "hearing officers", <u>except that actions in equity and all actions to be tried by jury shall be tried before judges</u>. (22 NYCRR 2900.35[1]." [*Glass v. Thompson*, 51 A.D.2d 69, 379 N.Y.S.2d 427 at 429 (1st Dept. 1976), *Alvarez v. Snyder*, 264 A.D.2d 27, 702 N.Y.S.2d 5 (1st Dept. 2000).]

Chapter 310 of the Laws of 1978, subdivision (e) was amended to provide that actions and proceedings before the Housing Part would be tried before Civil Court Judges, Acting Civil Court Judges and Housing Judges. *Babigian v. Wachtler,* 113 Misc. 2d 111, 506 N.Y.S.2d 506 at 509; (*Affirmed*), 69 N.Y.2d 1012, 517 N.Y.S.2d 905 (1987). However, the hearing officers authorized by Section 110 are in essence referees... and there is no constitutional limitation upon its power in this regard except that compulsory references may not violate constitutionally guaranteed rights...such as a right to jury trial (*citing Schaffer v. City Bank Farmers Trust Company*, 244 App. Div. 463 , *affd*, 269 N.Y. 336; *Steck v. Colorado Fuel & Iron Co.*, 142 N.Y. 236).

When former New York Governor Mario Cuomo later agreed to change the title of "hearing officer" to "housing judge", the Court of Appeals clarified that such change was not intended to confer any additional jurisdiction, powers of benefits on housing judges. (*See*, Governor's Mem. approving L. 1984, Ch. 528, 1984 McKinney's Session Laws of New York, at 3619; *Met Council v. Crosson*, 84 N.Y.2d 328, 618 N.Y.S.2d 617 at 620.) Therefore, housing judges remain essentially a form of "referee", <u>non-judicial officers of the Court</u>, to assist (constitutional) Judges of the Civil Court in the performance of their judicial functions. *Ibid.*

Actions in equity and those involving trial by jury trial <u>are outside the scope of the jurisdiction of Housing Judges.</u> *Glass v. Thompson, supra*, 379 N.Y.S.2d at 429. In fact, the United States Supreme Court and Appellate Division First Dept. have both

28

EXHIBIT 5
Page 62 of 808

confirmed there is no absolute immunity from damages under 42 U.S.C. Section 1983 for administrative, legislative or executive functions or for a judge's acts outside his (her) jurisdiction because immunity attaches to the function and not the office. _Forrester v. White_, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (O'Connor, J.) _Alvarez  v. Snyder_, 264 A.D.2d 27, 702 N.Y.S.2d 5 (1st Dept. 2000).

To illustrate, the United States Supreme Court has declined to extend immunity to a county judge who had been charged with discriminating on the basis of race.  The Court reasoned that whether the act done by the judge was judicial or not is to be determined by its character, and not by the character of the agent.  Whether he was a county judge or not is of no importance.  The duty of selecting jurors might as well have been committed to a private person as to one holding the office of judge.  _Ex parte Virginia_, 100 U.S. (10 Otto) 339, 25 L.Ed. 676 (1880).

Likewise, judicial immunity has not been extended to judges acting to promulgate a code of conduct for attorneys.  _Supreme Court of Virginia v. Consumers Union of United States, Inc._, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980).  The acts of recording proceedings and maintaining transcripts that have been delegated to transcribers and law clerks are also administrative such that judicial immunity is improper and liability will attach. _Antoine v. Byers & Anderson_, 508 U.S. 429, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993); _Pantoja v. Scott_, 1997 WL 433472, 96 CV 8593 (LLM).

Moreover, a Judge's breach of the Americans with Disabilities Act as demonstrated by Judge Lau's in-court discriminatory statements in the early proceedings at bar is not protected by the Eleventh Amendment because Congress voiced an intent to

29

EXHIBIT 5
Page 63 of 808

the contrary. *Harris v. NYS Dept. of Health*, 202 F. Supp. 2d 143 (S.D.N.Y. 2002) and

*Garcia v. SUNY Health Sciences Center at Brooklyn*, 280 F.3d 98 (2d Cir. 2001).

New York has expressly held that a 42 USC1983 claim where the judge acting

under color of state law deprived an individual of a federally protected right is properly

brought when, as here, a Judge acted in the absence of jurisdiction or where the Judge

acted in a non-judicial, administrative capacity. *Alvarez v. Snyder*, 264 A.D.2d 27, 702

N.Y.S.2d 5 (1st Dept. 2002). This is the analogous situation here.

Further analogous to the situation where the Eleventh Circuit held that state law

could not govern when the HUD-subsidized tenant's right to discovery was only

"discretionary" (*King v. Housing Authority of the City of Huntsville, AL, supra*), HUD

Regulatory mandates and the Supremacy Clause must also govern on this issue in New

York. No hearing officer can preside over HUD-subsidized eviction if the tenant has an

absolute right to a jury trial, the presiding judge has no power to preside over a jury trial

or at least made no HUD-mandated inquiry as to whether the tenant voluntarily waived

that right.

Further the HUD Tenant must have the absolute right to have the conduct of the

Housing Judge reviewed by the Administrative Judge on a mandatory basis or in turn the

Administrative Judge must be subject to review by the Commission if no action, if

warranted, is taken. *Miller v Silberman*, 951 F. supp. 485, 494 (SDNY 1997).

Petitioner has standing to bring this challenge. *Babbitt v. United Farm Workers

Nat'l Union* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); *American Civil

Liberties Union v. the Florida Bar*, 999 F. 2d 1486 (1993); *Buckley v. Illinois Judicial

Inquiry Bd.*, 997 F.2d 224 (7th Cir. 1993); *Stretton v. Disciplinary Bd. Of S. Ct. of Pa.*,

Supreme Court Records OnLine Library -  page 30 of 37

EXHIBIT 5
Page 64 of 808

944 F. 2d 137 (3d Cir. 1991); See also *Chilling Injuries as a Basis for Standing*, 98 Yale

L. J. 905 (1989).

New York State has admitted that it has a compelling interest in directing judges

to maintain "high standards of conduct" and to preserve "the integrity" of the judiciary.

*Spargo v. NYS Commission on Judicial Conduct*, 351 F.3d 65 (2d Cir. 2003). It should

prove this by requiring mandatory discipline by the Chief Adm. Judge when a HUD

eviction is before the court and breach of duty is undertaken by Housing Judge.

62.    Based on the above authorities, Judge Schneider was <u>not empowered to</u>

<u>preside over the proceedings and her 2003 order is void. Her 2003 decision and order,</u>

<u>therefore cannot be used by Respondents to sanction Petitioner by collateral estoppel, the</u>

<u>Respondents' petition in chief must be ordered withdrawn or dismissed.</u>


## VI.  MANDATORY REVIEW OF HOUSING JUDGES IN HUD PROCEEDINGS

63.    In 1997, private landlords in NYC filed a class action lawsuit before

SDNY seeking a *mandatory* review protocol for Housing Judges, contending that their

rights to get summary evictions from private buildings under NY's RPAPL were being

sabotaged by those on the Bench. [See, *Miller v. Silbermann*, 832 F. Supp. 663 (SDNY

1991)]. [9] The early 1991 *Miller* proceedings resulted in a stipulation signed and adopted

by the then Chief Adm. Judge, Jacqueline W. Silbermann setting forth protocol for the

mandatory review of Housing Judges including for private evictions. (**Exhibit 9**)

---

[9]NOTE: Judge Schneider was an attorney participating in the *Miller* case on amicus
brief, demonstrating her actual knowledge of the decision and prevailing law.

31

EXHIBIT 5
Page 65 of 808

64.    At pp. 494, 951 F. Supp. 485, 494, Judge Shirley Wohl Kram held that mandatory review is required in HUD proceedings.  This holding governs the instant case.  It was improperly ignored by Respondent Judge Fern Fisher when complaints were filed by Petitioner and Mr. Dankberg concerning the ongoing misconduct of both Judges Lau and Schneider.

65.    Petitioner contends that per the *Miller* legislation now enacted [10], mandamus is proper to order Respondent Fern Fisher to discipline both Housing Judges and Clerk Belzaguy so as not to further prejudice Petitioner's constitutional rights and the property rights of other HUD tenants.  [*See Miller v. Silbermann*, *reopened decision*, 951 F. Supp. 485, at 494 (SDNY 1997) (Kram. J. agreeing)].

66.    In this case, two Housing Judges and one clerk intentionally defied preempting federal mandates and the Supremacy Clause of the United States Constitution.  They were so biased to the extent that they did not even order production of the original signature copies of the landlords' forged stipulations as found by Supreme Court.  And they failed to record their own hearings and covertly ordered destruction of tapes and transcripts to prevent review of in-court statements and orders in Petitioner's appeals and HUD damages from being awarded in her favor.

67.    The stipulation found materially forged by Supreme Court is the key to this case.  It was illegally appended to a warrant of eviction contrary to Petitioner's federally protected tenancy interests when no HUD mandated notice of lease termination had ever been served.  However, as an entered state judgment, Petitioner could no longer vacate it in Federal Court because to do so would violate the *Rooker-Feldman* doctrine.

---

[10] 951 F. Supp. 485 at 494

32

Supreme Court Records OnLine Library - page 32 of 37

EXHIBIT 5
Page 66 of 808

[On this issue, see *Goonewardena v. State of NY*, 475 F. Supp. 2d 310 (SDNY 2007);

See also, *Lopez v. Henry Phipps Plaza South,* 498 F. 2d 937 (2d Cir. 1974)].

68.    Directly contrary to Judge Schneider's order and in line with Justice

Sheila Abdus-Salaam's ruling, the stipulation was originally and suspiciously??? drafted

by landlords' attorney Elliot J. Cherson, Esq. a partner in the firm of Rappaport, Hertz,

Hertz & Rosenthal, PC <u>on 1/25/97</u>, *a full month before the petition of holdover naming*

*Petitioner was even filed on 2/25/97 before the Housing Court*! (**Exhibit 1** attachments)

[11] . Most respectfully if this Court looks closely, the 1/25/97 date is crossed out. The

date is also a month prior to the date the petition of holdover was filed. One question

comes to mind... *How could the landlords' attorney know what provisions to insert into*

*a stipulation before he even filed the proceeding*? Clearly to intent to was get a final

order that could not be vacated in federal court. Landlords' attorney Cherson had actual

superior knowledge that the project was HUD subsidized, and Petitioner and her attorney,

in possession of a private lease, did not!

69.    The stipulation copy as filed has some 30 crossings out and stray marks

masked by photocopies on top of photocopies, making it impossible to determine how it

was materially changed and when. It was also never typed to disguise from the clerk's

intake window the added unilateral deletion of the new tenant's signature line from the

first page.

---

[11] Rappaport Hertz, Cherson & Rosenthal, PC has since been prosecuted by EEOC before
SDNY and EDNY for physical and sexual assault of female associates and staff in their
law office. Upon belief, the firm was on probation for 3-5 years and was separately sued
for damages by a female associate and another female employee. See, 274 F. Supp. 2d
260 (2003); 448 F. Supp. 2d 458 (2006).

33

EXHIBIT 5
Page 67 of 808

70.    New tenant Patrick Lynch was already the subject of a Supreme Court injunction. He was in sole possession of Petitioner's furniture and possessions (**Exhibit 1 attachments**) and was a material and necessary party to any stipulation agreement. [12]

71.    Ultimately, two (2) distinct photocopied, and not original signature versions of the stipulation containing markedly different insignias each purporting to belong to retired Housing Judge Bruce Gould were uncovered in the Housing Part and Supreme Court files (**Exhibit 1 attachments**) . Again no disciplinary action was taken by FDDC Respondents when they were notified. Both court files also evidence ongoing material tampering by these lawyers. The files somehow include other of Mr. Cherson's papers expressly rejected by Housing Judge Peter Wendt in 2000 during the vacatur hearings because they were not served on Mr. Dankberg's office.

72.    Also an earlier version of the stipulation that was in the Housing Court file originally was replaced after the fact by an unilaterally altered one containing Judge Gould's signature. A third masterminded version was found in Supreme Court appended to landlords' frivolous 3211 motion papers that they had no affiliation or legal connect whatsoever with Gateway Plaza. (**Exhibit 2**).

73.    When these facts were reported to Chief Adm. Judge Respondent Fern Fisher and documents delivered, Judge Fisher only instructed Petitioner to take them to the NY District Attorney and took no other disciplinary action that was mandatory. Upon belief, the NY District Attorney also took no action. FDDC Respondent Naomi

---

[12] Annie Schumacher, Lefrak's onsite leasing agent, approved in writing Lynch's furnished sublease of Petitioner's apartment in October, 1996 during a meeting with petitioner's mother, co-guarantor of her ADA approved lease, when incessant drilling began under Petitioner's window on the north side of the complex and Petitioner could not study.

34

EXHIBIT 5
Page 68 of 808

Goldstein then asked Petitioner to come into her office and bring the documents, which

Petitioner did.  FDDC still took no action; the meeting was a sham and FDDC

Respondents must be sanctioned for their subsequent abuse.

74.    Judge Fisher then ordered an audiotape investigation.  The results released

by Civil Court Deputy Clerk Barry Clarke in 2001 confirmed that Judge Gould never "so

ordered" the stipulation and the case was never called to his calendar.  Still no

disciplinary action was taken.

75.    Mr. Cherson's previous affirmation submitted to the Housing Part

(**Exhibit 10**), falsely swore under oath that Petitioner's first attorney Alan Goldberg,

Esq., appeared in Court with him "*physically before Judge Gould*" and approved the

stipulation changes.  These ludicrous fabrications caused Civil Court Judge Martin

Shulman to render an order inconsistent with Supreme Court, i.e., that Cherson's

unilateral imposed changes were *de minimis*.  (**Exhibit 11**)  Judge Shulman's order is

wrong, assumes facts not in evidence and does not account for the second and third

stipulation forgeries containing Judge Gould' insignia found in Supreme Court.

76.    Within a year, however, Cherson's entire affirmation was established as

false when compared with Mr. Goldberg's affirmations that are crystal clear he was in FL

on the relevant date, never appeared in Court and authorized no stipulation changes.

(**Exhibit 12**) Moreover, Mr. Goldberg's billing statements  show no services on the

relevant "court" date. (*Ibid*)  This demonstrates that the material changes as Justice

Abdus-Salaam held, were in fact *very* significant.

35

EXHIBIT 5
Page 69 of 808

77.     FDDC Respondents must be sanctioned and ordered to pay punitive, exemplary damages for deleting this material order from their proceeding in chief and staging Petitioner's abuse and judicial harassment.

78.     Issuing coterminous leases and accepting multiple rents for the same apartment unit at the same is verboten for attorneys representing landlords even in purely private housing.  The act mandates discipline in HUD housing under the Equal Protection Clause.  This was FDDC Respondents' duty and continuing duty as more evidence of misconduct was submitted to them including HUD's FOIA production that incriminated a state agency, BPCA, in the scandal.

79.     That Judge Schneider  denied Petitioner's request for trial by jury is an issue of public concern that attracted the personal attention of Mayor Bloomberg and the NYS Inspector General.  In 2008, Cosmos Grant of NYS Inspector General at the request of the Mayor, wrote Mr. Belzaguy to take whatever steps he deemed necessary to ensure reform in the Housing Court for HUD evictions compliant with federal mandates.

80.     Mr. Belzaguy, of course, having himself destroyed the audiotapes and transcripts from the early Lau proceedings, took no action.  The need for long-overdue reform in the NYC Housing Part to protect the property rights of HUD tenants, remains urgent.

## VII. CONCLUSION

Based on the foregoing, Petitioner Weissbrod prays that her mandamus petition be granted in its entirety and that the Court order 42 USC 1983, 1988 damages,  punitive damages, attorneys' fees and costs in her favor and against Respondents.   Petitioner further prays for an order mandating that FDDC Respondents withdraw their petition in chief and discipline the attorneys found guilty under the Equal Protection Clause.

36

EXHIBIT 5
Page 70 of 808

WHEREFORE, it is respectfully requested that this Court issue an order and

judgment pursuant to Article 78 of the CPLR and grant such other and further relief in

Petitioner's favor as it deems just and proper.

Sworn to before me this
14th day of September, 2011

_____

NOTARY PUBLIC

AMY R. WEISSBROD
Petitioner Pro Se
315 Highland Avenue
Upper Montclair, NJJ  07043

**MARIE A. PUGLIESE**
**NOTARY PUBLIC OF NEW JERSEY**
MY COMMISSION EXPIRES APRIL 12, 2012

37

EXHIBIT 5
Page 71 of 808

EXHIBIT 6

EXHIBIT 6

In re Gurvey, 20 N.Y.3d 1085 (2013)

987 N.E.2d 634, 965 N.Y.S.2d 73, 2013 N.Y. Slip Op. 68377

20 N.Y.3d 1085
Court of Appeals of New York.

In the Matter of Amy R. GURVEY (admitted as
Amy Rebecca Weissbrod), an Attorney and
Counselor–at–Law.
Departmental Disciplinary Committee for the First
Judicial Department, Respondent, Amy R. Gurvey,
Appellant.

March 26, 2013.

**Opinion**

Reported below, 102 A.D.3d 197, 958 N.Y.S.2d 5.

Appeal dismissed without costs, by the Court of Appeals, sua sponte, upon the ground that no substantial constitutional question is directly involved.

**All Citations**

20 N.Y.3d 1085, 987 N.E.2d 634, 965 N.Y.S.2d 73 (Mem), 2013 N.Y. Slip Op. 68377

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT 6
Page 73 of 808

EXHIBIT 7

EXHIBIT 7

CLOSED,ECF,PRO-SE

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:13-cv-02565-JMF

| | |
|---|---|
| Weissbrod v. Gonzalez et al | Date Filed: 04/18/2013 |
| Assigned to: Judge Jesse M. Furman | Date Terminated: 05/06/2013 |
| Cause: 42:1983 Prisoner Civil Rights | Jury Demand: None |
| | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Amy R. Weissbrod**                    represented by     **Amy Rebecca Weissbrod**
Uspto Inventor Issued Us Patents
315 Highland Avenue
Montclair, NY 07043
(973)-655-0991
Fax: (973)-655-0992
Email: amyweissbrod@verizon.net
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Hon. Luis A. Gonzalez**
*Presiding Chief Justice, Appellate Division
First Dept.*

**Defendant**

**James T. Shed**
*quasi-judicial officers at the First
Departmental Disciplinary Committee
"FDDC defendants"*

**Defendant**

**Thomas Cahill**
*quasi-judicial officers at the First
Departmental Disciplinary Committee
"FDDC defendants"*

**Defendant**

**Naomi Goldstein**
*quasi-judicial officers at the First
Departmental Disciplinary Committee
"FDDC defendants"*

**Defendant**

**Paul Curran**
*quasi-judicial officers at the First*

EXHIBIT 7
Page 75 of 808

1/6

*Departmental Disciplinary Committee*
*"FDDC defendants"*

### Defendant

**Jorge DoPico**
*quasi-judicial officers at the First*
*Departmental Disciplinary Committee*
*"FDDC defendants"*

### Defendant

**Halliburton Fales**
*quasi-judicial officers at the First*
*Departmental Disciplinary Committee*
*"FDDC defendants"*

### Defendant

**Esq. Orlando Reyes**
*quasi-judicial officers at the First*
*Departmental Disciplinary Committee*
*"FDDC defendants"*

### Defendant

**Hon. Jonathan Lippman**
*Chief Justice of the NY Court of Appeals*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/18/2013 | 1 | COMPLAINT against Thomas Cahill, Paul Curran, Jorge DoPico, Halliburton Fales, Naomi Goldstein, Luis A. Gonzalez, Jonathan Lippman, Orlando Reyes, James T. Shed. (Filing Fee $ 350.00, Receipt Number 1065334)Document filed by Amy R. Weissbrod. (laq) (Additional attachment(s) added on 6/13/2013: # 1 part 2, # 2 Part 3, # 3 Part 4, # 4 part 5, # 5 Part 6, # 6 Part 7) (nd). (Entered: 04/19/2013) |
| 04/18/2013 | | SUMMONS ISSUED as to Thomas Cahill, Paul Curran, Jorge DoPico, Halliburton Fales, Naomi Goldstein, Luis A. Gonzalez, Jonathan Lippman, Orlando Reyes, James T. Shed. (laq) (Entered: 04/19/2013) |
| 04/18/2013 | | Magistrate Judge James L. Cott is so designated. (laq) (Entered: 04/19/2013) |
| 04/18/2013 | | Case Designated ECF. (laq) (Entered: 04/19/2013) |
| 05/02/2013 | 3 | SUMMONS RETURNED EXECUTED. Summons and Complaint served. Naomi Goldstein served on 4/22/2013, answer due 5/13/2013. Service was accepted by Ms. Sterling, Departmental Disciplinary Committee for the First Dept., 61 Broadway, New York, NY 10006. Document filed by Amy R. Weissbrod. (sc) (Entered: 05/02/2013) |
| 05/02/2013 | 4 | SUMMONS RETURNED EXECUTED Summons and Complaint, served. Thomas Cahill served on 4/24/2013, answer due 5/15/2013. Service was accepted at 420 Main Street, Greenwich, Connecticut by Thomas Cahill, Officer at First Departmental Disciplinary Committee. Document filed by Amy R. Weissbrod. (sc) (Entered: 05/02/2013) |
| 05/02/2013 | 5 | SUMMONS RETURNED EXECUTED. Summons and Complaint served. Luis A. Gonzalez served on 4/22/2013, answer due 5/13/2013. Service was accepted by Mr. D. Ramos, Chief Clerk, Appellate Division, First Department. Document filed by Amy R. Weissbrod. (sc) (Entered: 05/02/2013) |

EXHIBIT 7
Page 76 of 808

| 05/02/2013 | 6 | SUMMONS RETURNED EXECUTED. Summons and Complaint served. Jorge DoPico served on 4/22/2013, answer due 5/13/2013. Service was accepted by Ms. Sterling, Departmental Disciplinary Committee, First Dept., 61 Broadway, New York, N.Y. 10006. Document filed by Amy R. Weissbrod. (sc) (Entered: 05/02/2013) |
| --- | --- | --- |
| 05/02/2013 | 7 | SUMMONS RETURNED EXECUTED. Summons and Complaint served. Halliburton Fales served on 4/22/2013, answer due 5/13/2013. Service was accepted by Ms. Sterling, Departmental Disciplinary Committee, First Dept., 61 Broadway, New York, N.Y. 10006. Document filed by Amy R. Weissbrod. (sc) (Entered: 05/02/2013) |
| 05/02/2013 | 8 | SUMMONS RETURNED EXECUTED. Summons and Complaint served. Paul Curran served on 4/22/2013, answer due 5/13/2013. Service was accepted by Ms. Sterling, Departmental Disciplinary Committee, First Dept., 61 Broadway, New York, N.Y. 10006. Document filed by Amy R. Weissbrod. (sc) (Entered: 05/02/2013) |
| 05/02/2013 | 9 | SUMMONS RETURNED EXECUTED.Summons and Complaint served. James T. Shed served on 4/22/2013, answer due 5/13/2013. Service was accepted by James T. Shed, Esq. at 172 West 82nd Street, New York, NY 10024 Document filed by Amy R. Weissbrod. (sc) (Entered: 05/02/2013) |
| 05/02/2013 | 10 | SUMMONS RETURNED EXECUTED Summons and Complaint, served. Orlando Reyes served on 4/22/2013, answer due 5/13/2013. Service was accepted by Ms. Sterling, Departmental Disciplinary Committee, First Dept., 61 Broadway, New York, NY 10006. Document filed by Amy R. Weissbrod. (sc) (Entered: 05/02/2013) |
| 05/02/2013 | 11 | ORDER OF DISMISSAL: The Clerk of Court is directed to mail a copy of this Order to Plaintiff and note service on the docket. Plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii). Plaintiff's requests for injunctive and declaratory relief are denied as moot. The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk of the Court is directed to enter judgment dismissing the Complaint. (Signed by Judge Jesse M. Furman on 5/2/2013) (lmb) (Entered: 05/02/2013) |
| 05/02/2013 | | Transmission to Docket Assistant Clerk. Transmitted re: 11 Order of Dismissal, (directing Clerk to mail a copy of this order to Plaintiff) to the Docket Assistant Clerk for case processing. (lmb) (Entered: 05/02/2013) |
| 05/02/2013 | | Transmission to Judgments and Orders Clerk. Transmitted re: 11 Order of Dismissal, to the Judgments and Orders Clerk. (lmb) (Entered: 05/02/2013) |
| 05/03/2013 | | Mailed a copy of 11 Order of Dismissal, to Amy Rebecca Weissbrod Uspto Inventor issued Us patents 315 Highland Ave Montclair NY 07043 (sdi) (Entered: 05/03/2013) |
| 05/06/2013 | 12 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Reconsideration and *Amended Complaint*. Document filed by Amy R. Weissbrod. Return Date set for 5/24/2013 at 11:00 AM. (Attachments: # 1 Affidavit Ps Sworn Declaration in Support of Motion for Reconsideration and Amended Complaint 5-6-13, # 2 Exhibit Ps Amended Complaint 5-6-13, # 3 Exhibit Certification of Svc and ECF Filing, # 4 Exhibit 2d Cir Order Feb 10 2012, # 5 Exhibit SDNY Award of Arbitrator Aug 4 2009, # 6 Exhibit USPTO Solicitor OED 3-15-13, # 7 Exhibit Ps Reply NY Court of Appeals 5-6-13) (Weissbrod, Amy) Modified on 5/7/2013 (ldi). (Entered: 05/06/2013) |
| 05/06/2013 | 13 | CLERK'S JUDGMENT That for the reasons stated in the Court's Order of Dismissal dated May 2, 2013, Plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii); Plaintiff's requests for injunctive and declaratory relief are denied as moot; the Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from the Order of Dismissal dated May 2, 2013 would not be taken in good faith, and therefore in forma pauperis status is |

| | | |
|---|---|---|
| | | denied for the purpose of an appeal. (Signed by Clerk of Court Ruby Krajick on 5/6/13) (Attachments: # 1 Notice of Right to Appeal)(ml) (Entered: 05/06/2013) |
| 05/06/2013 | | Transmission to Docket Assistant Clerk. Transmitted re: 13 Clerk's Judgment,, 11 Order of Dismissal,,, to the Docket Assistant Clerk for case processing. (ml) (Entered: 05/06/2013) |
| 05/06/2013 | | Mailed a copy of 13 Clerk's Judgment, to Amy Rebecca Weissbrod Uspto Inventor Issued Us Patents 315 Highland Avenue Montclair, NY 07043 (sdi) (Entered: 05/06/2013) |
| 05/06/2013 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Amy Rebecca Weissbrod to RE-FILE Document 12 MOTION for Reconsideration *and Amended Complaint*. ERROR(S): Supporting documents must be filed separately, each receiving their own document number. Declaration in Support of Motion is found under the event list Replies, Opposition and Supporting Documents. (ldi)** (Entered: 05/07/2013) |
| 05/07/2013 | 14 | MOTION for Reconsideration *and Amended Complaint*. Document filed by Amy R. Weissbrod. Return Date set for 5/24/2013 at 11:00 AM.(Weissbrod, Amy) (Entered: 05/07/2013) |
| 05/07/2013 | 15 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** MOTION for Reconsideration re; 14 MOTION for Reconsideration *and Amended Complaint*. *Declaration in Support*. Document filed by Amy R. Weissbrod. Return Date set for 5/24/2013 at 11:00 AM.(Weissbrod, Amy) Modified on 5/8/2013 (ldi). (Entered: 05/07/2013) |
| 05/07/2013 | 16 | **FILING ERROR - ELECTRONIC FILING FOR NON-ECF DOCUMENT -** MOTION for Reconsideration re; 14 MOTION for Reconsideration *and Amended Complaint*., 13 Clerk's Judgment,, *AMENDED COMPLAINT*. Document filed by Amy R. Weissbrod. Return Date set for 5/24/2013 at 11:00 AM. (Attachments: # 1 Exhibit USPTO Solicitor OED Investigation, # 2 Exhibit Second Circuit Order Feb 10 2012, # 3 Exhibit Certification of Svc, # 4 Exhibit NY Court of Appeals Reply)(Weissbrod, Amy) Modified on 5/8/2013 (ldi). (Entered: 05/07/2013) |
| 05/07/2013 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Note to Attorney Amy Rebecca Weissbrod to RE-FILE Document 15 MOTION for Reconsideration re; 14 MOTION for Reconsideration *and Amended Complaint*. *Declaration in Support*. MOTION for Reconsideration re; 14 MOTION for Reconsideration *and Amended Complaint*. *Declaration in Support*. Use the event type Declaration in Support of Motion found under the event list Replies, Opposition and Supporting Documents. Re-File and link ONLY to document # 14 Motion. (ldi)** (Entered: 05/08/2013) |
| 05/07/2013 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF DOCUMENT ERROR. Note to Attorney Amy Rebecca Weissbrod to MANUALLY RE-FILE Document No. 16 Amended Complaint. This document is not filed via ECF. NOTE: You must indicate the case number on this document before manually filing. (ldi)** (Entered: 05/08/2013) |
| 05/08/2013 | 17 | DECLARATION of Amy R. Weissbrod in Support re: 14 MOTION for Reconsideration *and Amended Complaint*.. Document filed by Amy R. Weissbrod. (Attachments: # 1 Exhibit Certification of Svc, # 2 Exhibit 2d Cir Order Feb 10 2012, # 3 Exhibit USPTO Solicitor OED March 15, 2013, # 4 Exhibit NY Court of Appeals Reply, # 5 Exhibit Ps Amended Complaint Docketed #12 May 6, 2013)(Weissbrod, Amy) (Entered: 05/08/2013) |
| 05/14/2013 | 18 | ORDER denying 14 Motion for Reconsideration: Accordingly, Plaintiffs motion is DENIED in its entirety. Inasmuch as Plaintiff seeks permission to amend her complaint, the request is DENIED. The Clerk of Court is directed to mail a copy of this order to |

| | | Plaintiff and to note service on the docket. The Clerk of Court is further directed to accept no further submissions from Plaintiff in this case except for papers directed to the United States Court of Appeals for the Second Circuit. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). (Signed by Judge Jesse M. Furman on 5/14/2013) (rdz) (Entered: 05/14/2013) |
|---|---|---|
| 05/14/2013 | | Transmission to Docket Assistant Clerk. Transmitted re: 18 Order on Motion for Reconsideration to the Docket Assistant Clerk for case processing. (rdz) (Entered: 05/14/2013) |
| 05/14/2013 | 19 | Letter addressed to Judge Jesse M. Furman from Michael A. Berg dated 5/10/2013 re: We respectfully submit that Plaintiff's motion is meritless, fails to address (much less refute) the substance of the Court's Order of Dismissal, and expressly concedes that Plaintiff seeks to relitigate the New York State Court ruling against her. Document filed by Thomas Cahill, Paul Curran, Jorge DoPico, Halliburton Fales, Naomi Goldstein, Luis A. Gonzalez, Jonathan Lippman, Orlando Reyes, James T. Shed.(rdz) (Entered: 05/14/2013) |
| 05/14/2013 | | Mailed a copy of 19 Letter, to Amy Rebecca Weissbrod Uspto Inventor Issued Us Patents 315 Highland Avenue Montclair, NY 07043. (jab) (Entered: 05/14/2013) |
| 06/05/2013 | 21 | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT -** MOTION to Vacate., MOTION for Reconsideration.( Return Date set for 6/17/2013 at 11:00 PM.) Document filed by Amy R. Weissbrod.(Weissbrod, Amy) Modified on 6/6/2013 (ka). (Entered: 06/05/2013) |
| 06/05/2013 | 22 | **FILING ERROR - NO ORDER SELECTED FOR APPEAL -** NOTICE OF APPEAL. Document filed by Amy R. Weissbrod. Filing fee $ 455.00, receipt number 0208-8575399. Form D-P is due within 14 days to the Court of Appeals, Second Circuit. (Weissbrod, Amy) Modified on 6/5/2013 (nd). (Entered: 06/05/2013) |
| 06/05/2013 | | **\*\*\*NOTE TO ATTORNEY REGARDING DEFICIENT APPEAL. Note to litigant Amy Weissbrod to RE-FILE Document No. 22 Notice of Appeal,. The filing is deficient for the following reason: the Order being appealed was NOT selected. Re-file the document as a Corrected Notice of Appeal event and select the correct Order(s) being appealed. (nd)** (Entered: 06/05/2013) |
| 06/05/2013 | 23 | CORRECTED NOTICE OF APPEAL re: 22 Notice of Appeal, 18 Order on Motion for Reconsideration,,, 11 Order of Dismissal,,. Document filed by Amy R. Weissbrod. (Weissbrod, Amy) (Entered: 06/05/2013) |
| 06/05/2013 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 23 Corrected Notice of Appeal. (tp) (Entered: 06/05/2013) |
| 06/05/2013 | | Appeal Fee Paid electronically via Pay.gov: for 23 Corrected Notice of Appeal. Filing fee $ 455.00. Pay.gov receipt number 0208-8575399, paid on 6/5/2013. (tp) (Entered: 06/05/2013) |
| 06/05/2013 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 14 MOTION for Reconsideration *and Amended Complaint* filed by Amy R. Weissbrod, 23 Corrected Notice of Appeal filed by Amy R. Weissbrod, 5 Summons Returned Executed filed by Amy R. Weissbrod, 12 MOTION for Reconsideration *and Amended Complaint* filed by Amy R. Weissbrod, 15 MOTION for Reconsideration re; 14 MOTION for Reconsideration *and Amended Complaint. Declaration in Support*. MOTION for Reconsideration re; 14 MOTION for Reconsideration *and Amended Complaint. Declaration in Support* filed by Amy R. Weissbrod, 10 Summons Returned Executed, filed by Amy R. Weissbrod, 17 Declaration |

| | | |
|---|---|---|
| | | in Support of Motion, filed by Amy R. Weissbrod, [8] Summons Returned Executed, filed by Amy R. Weissbrod, [3] Summons Returned Executed, filed by Amy R. Weissbrod, [22] Notice of Appeal, filed by Amy R. Weissbrod, [9] Summons Returned Executed filed by Amy R. Weissbrod, 20 FRCP Rule 5d Memo - Sent to Chambers, [7] Summons Returned Executed, filed by Amy R. Weissbrod, [21] MOTION to Vacate. MOTION for Reconsideration filed by Amy R. Weissbrod, [16] MOTION for Reconsideration re; [14] MOTION for Reconsideration *and Amended Complaint*, [13] Clerk's Judgment, *AMENDED COMPLAINT*. MOTION for Reconsideration re; [14] MOTION for Reconsideration *and Amended Complaint*, [13] Clerk's Judgment, *AMENDED COMPLAINT*. MOTION for Reconsideration re; [14] MOTION for Reconsideration *and Amended Complaint*, [13] Clerk's Judgment, *AMENDED COMPLAINT* filed by Amy R. Weissbrod, [18] Order on Motion for Reconsideration, [6] Summons Returned Executed, filed by Amy R. Weissbrod, 2 Screening Memo to Judge, [19] Letter, filed by Halliburton Fales, Jonathan Lippman, Naomi Goldstein, Thomas Cahill, Orlando Reyes, Luis A. Gonzalez, Jorge DoPico, James T. Shed, Paul Curran, [4] Summons Returned Executed, filed by Amy R. Weissbrod, [13] Clerk's Judgment, [11] Order of Dismissal, were transmitted to the U.S. Court of Appeals. (tp) (Entered: 06/05/2013) |
| 06/06/2013 | | ***NOTE TO ATTORNEY THAT THE ATTEMPTED FILING OF Document No. [21] HAS BEEN REJECTED. Note to Attorney Amy Rebecca Weissbrod : THE CLERK'S OFFICE DOES NOT ACCEPT LETTERS FOR FILING, either through ECF or otherwise, except where the judge has ordered that a particular letter be docketed. Letters may be sent directly to a judge. (ka)** (Entered: 06/06/2013) |
| 10/23/2014 | [25] | MANDATE of USCA (Certified Copy) as to [23] Corrected Notice of Appeal filed by Amy R. Weissbrod, [22] Notice of Appeal, filed by Amy R. Weissbrod USCA Case Number 13-2211. UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED,ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Issued As Mandate: 10/25/2014. (tp) (Entered: 10/24/2014) |
| 10/24/2014 | | Transmission of USCA Mandate/Order to the District Judge re: [25] USCA Mandate. (tp) (Entered: 10/24/2014) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/21/2023 16:44:19 | | | |
| **PACER Login:** | mcrice3317 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:13-cv-02565-JMF |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

EXHIBIT 8

EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                              :

AMY R. WEISSBROD,                 :

                Plaintiff,       :

                              :

      -against-            :

                              :

HON. LUIS A. GONZALEZ, PRESIDING CHIEF :
JUSTICE, APPELLATE DIVISION FIRST    :
DEPT.; JAMES T. SHED; THOMAS CAHILL;   :
NAOMI GOLDSTEIN; PAUL CURRAN; JORGE :
DoPICO; HALLIBURTON FALES; ORLANDO   :
REYES, ESQ. [QUASI-JUDICIAL OFFICERS  :
AT THE FIRST DEPARTMENTAL         :
DISCIPLINARY COMMITTEE (HEREIN "FDDC :
DEFENDANTS")]; AND HON. JONATHAN    :
LIPPMAN, CHIEF JUSTICE OF THE NEW    :
YORK COURT OF APPEALS,         :

                              :

                Defendants.    :

                              :

-------------------------------------------------------------X

ORDER OF DISMISSAL

13 Civ. 2565 (JMF)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: May 02, 2013

JESSE M. FURMAN, United States District Judge:

      Plaintiff, appearing *pro se*, brings this action under 42 U.S.C. § 1983, alleging that Defendants violated her constitutional rights. The Court dismisses the complaint for the reasons set forth below.

## **STANDARD OF REVIEW**

      The Court has the authority to dismiss a frivolous complaint *sua sponte,* even when the plaintiff has paid the filing fee. *Fitzgerald v. First East Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (*per curiam*) (holding that Court of Appeals has inherent authority to dismiss frivolous appeal)). A claim is "frivolous when either: (1) the factual contentions are clearly baseless, such as when

EXHIBIT 8
Page 82 of 808

allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks and citation omitted). District courts "remain obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Thus, courts should read *pro se* complaints with "special solicitude" and interpret them to raise the "strongest [claims] that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted).

## BACKGROUND

Plaintiff, an attorney who, as of January 1, 2013, has been suspended for six months from the practice of law in the state of New York, brings this action alleging violation of her rights by Defendants during the course of the proceedings that led to her suspension. She seeks injunctive and declaratory relief against Defendants. Specifically, Plaintiff seeks to vacate the order suspending her from the practice of law for six months and to vacate a portion of the sanction order requiring Plaintiff to pay $5,000 to the Housing Part and $8,300 to be reinstated to the practice of law. Plaintiff also seeks unspecified monetary damages.

## DISCUSSION

A.  **Eleventh Amendment**

Plaintiff's monetary claims against Defendants must be dismissed because the Eleventh Amendment bars from federal court all suits by private parties against a state unless the state consents to such a suit or Congress has expressly abrogated its immunity. *See Bd. of Trustees v. Garrett*, 531 U.S. 356, 363-64 (2001); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). A state's immunity extends to state officials sued in their official capacities

2

EXHIBIT 8
Page 83 of 808

where the state is the "real, substantial party in interest." *See Huang v. Johnson*, 261 F.3d 65, 69-70 (2d Cir. 2001).

Because neither the State of New York nor its officials have consented to being sued in federal court under 42 U.S.C. § 1983, and Congress has not expressly abrogated the state's immunity, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977), Plaintiff's claims are barred by the Eleventh Amendment. *See Zukerman v. Appellate Div.*, 421 F.2d 625, 626 (2d Cir. 1970); *Davis v. State of New York*, No. 90 Civ. 6170 (MBM), 1991 WL 156351, *2 (S.D.N.Y. Aug. 6, 1991); *Mathis v. Clerk of First Dep't, Appellate Div.*, 631 F. Supp. 232, 235 (S.D.N.Y. 1986).

## B.    *Rooker-Feldman* **Doctrine**

To the extent Plaintiff seeks to bring claims challenging a judgment obtained in state court, her claims must be dismissed because they are barred under the *Rooker-Feldman* doctrine. The doctrine — created by two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983) — precludes federal district courts from reviewing final judgments of the state courts, except for constitutional challenges raised on direct appeal to the United States Supreme Court and reviews pursuant to an application for a writ of *habeas corpus*. *See* 28 U.S.C. § 1257(a) (the United States Supreme Court has the sole authority to review a state court's judicial decisions). In other words, district courts are barred from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)*; see also Green v.*

EXHIBIT 8
Page 84 of 808

*Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (noting the four circumstances requiring application of the *Rooker-Feldman* doctrine).

Inasmuch as Plaintiff (1) alleges that she lost in state court; (2) "complains of injuries caused by [a] state-court judgment"; and (3) asks this Court to review and reject the state court's judgment, *Green*, 585 F.3d at 101, her claims are barred under the *Rooker-Feldman* doctrine. *See also Brooks-Jones v. Hones*, 916 F. Supp. 280, 281-82 (S.D.N.Y. 1996) ("[A] plaintiff also may not seek reversal of a state court judgment simply by casting her complaint in the form of a civil rights action."). Applying this doctrine in a similar case, the Second Circuit held that "[a] challenge to a state judge's exercise of jurisdiction to suspend an attorney from practice is, in effect, a request to review the state court's judgment suspending the attorney from practice, which is precluded by the *Rooker-Feldman* doctrine." *Abrahams v. App. Div.*, 311 Fed. App'x 474, 475 (2d Cir. 2009). For the same reason, Plaintiff's claims challenging the discipline imposed against her as an attorney are precluded.

## C.  **Judicial Immunity**

Plaintiff's claims against Hon. Luis A. Gonzalez and Hon. Jonathan Lippman must also be dismissed on the basis of judicial immunity. Judges have absolute immunity from suit for judicial acts performed in their judicial capacities. *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (*per curiam*) ("[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damages.") (citation omitted). *See also Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Pierson v. Ray*, 386 U.S. 547, 553-55 (1967); *Oliva v. Heller*, 839 F.2d 37, 38 (2d Cir. 1998); *see also Forrester v. White*, 484 U.S. 219, 225 (1988). This absolute "judicial immunity is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the

EXHIBIT 8
Page 85 of 808

action he took was in error . . . or was in excess of his authority." *Mireles*, 502 U.S. at 12-13 (quoting *Stump*, 435 U.S. at 356).

Plaintiff's argument that Defendant Gonzalez is not protected by judicial immunity because his actions were in the "absence of all judicial and statutory authority," is without merit. Under New York Judiciary Law § 90(2), the Appellate Division of the Supreme Court is "authorized to censure, suspend from practice or remove from office any attorney and counselor-at-law admitted to practice who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice." The decision to suspend Plaintiff from the practice of law for six months arose from a ten-year litigation wherein Plaintiff alleged that she was fraudulently induced to vacate her federally-subsidized Battery City Park apartment. This litigation resulted in, among other things, two Civil Court decisions and one Supreme Court decision imposing monetary sanctions against Plaintiff in the total amount of $8,783. *See In the Matter of Gurvey*, 958 N.Y.S.2d 5 (App. Div. 2012). Plaintiff was sanctioned for "years of vituperative litigation," frivolous motion practice, and intentional misrepresentations to the court. *Id.* at 6. In light of the foregoing, a panel of the Appellate Division, First Department, including Defendant Gonzalez, upon review of the allegations of Plaintiff's misconduct in that case, ordered Plaintiff's suspension. Because Defendant Gonzalez did not act in the absence of jurisdiction, absolute immunity warrants dismissal of the claims against him. *See Abrahams*, 311 Fed. App'x at 476 (holding that justices had jurisdiction under New York Judiciary Law to suspend Plaintiff's license and claims against justices were therefore barred by absolute immunity).

EXHIBIT 8
Page 86 of 808

Therefore, Plaintiff's claims against Hon. Luis A. Gonzalez and Hon. Jonathan Lippman are dismissed because they seek monetary damages against Defendants who are absolutely immune from such relief.  28 U.S.C.  § 1915(e)(2)(B)(iii).

## D.    **Quasi-Judicial Immunity**

Plaintiff's claims against James T. Shed, Thomas Cahill, Naomi Goldstein, Paul Curran, Jorge DoPico, Halliburton Fales, and Orlando Reyes, all of whom Plaintiff asserts are members of the First Departmental Disciplinary Committee, must also be dismissed.  The doctrine of quasi-judicial immunity extends absolute immunity to "certain others who perform functions closely associated with the judicial process," *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985), including Defendants, *see Anonymous v. Ass'n of the Bar of N.Y.*, 515 F.2d 427, 433 (2d Cir. 1975) (noting that disciplinary proceedings are judicial in nature and holding that the state grievance committee acted "as a quasi-judicial body"); *see also Thaler v. Casella*, 960 F. Supp. 691, 700 (S.D.N.Y. 1997) (holding that judicial immunity bars claims against the Grievance Committee and its members).

Therefore, because state bar disciplinary proceedings are clearly judicial in nature, *see Truong v. McGoldrick, et al.*, No. 06 Civ. 1430 (SAS), 2006 WL 1788960, at *3 (S.D.N.Y. 2006) (quoting *Sassower. v. Mangano, et al.*, 927 F. Supp. 113, 120 (S.D.N.Y. 1996)), quasi-judicial immunity bars Plaintiffs claims against these members of the First Departmental Disciplinary Committee.  28 U.S.C. § 1915(e)(2)(B)(ii).

## E.    **Supplemental Jurisdiction**

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise its supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction[.]"  As Plaintiff's federal claims are dismissed for failure to state a claim, the Court

6

EXHIBIT 8
Page 87 of 808

declines to exercise its supplemental jurisdiction over any remaining state-law claims that Plaintiff raises in her Complaint. *See Martinez v. Simonetti*, 202 F.3d 625, 636 (2d Cir. 2000) (directing dismissal of supplemental state law claims where no federal claims remained).

## CONCLUSION

The Clerk of Court is directed to mail a copy of this Order to Plaintiff and note service on the docket. Plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii). Plaintiff's requests for injunctive and declaratory relief are denied as moot.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is directed to enter judgment dismissing the Complaint.

SO ORDERED.

Dated: May 2, 2013
    New York, New York

_____
JESSE M. FURMAN
United States District Judge

7

EXHIBIT 8
Page 88 of 808

EXHIBIT 9

EXHIBIT 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
AMY R. WEISSBROD,                                                       :
:
Plaintiff,                        :
:
-against-                                      :
:
HON. LUIS A. GONZALEZ, PRESIDING CHIEF                                  :
JUSTICE, APPELLATE DIVISION FIRST                                      :
DEPT.; JAMES T. SHED; THOMAS CAHILL;                                    :
NAOMI GOLDSTEIN; PAUL CURRAN; JORGE                                     :
DoPICO; HALLIBURTON FALES; ORLANDO                                      :
REYES, ESQ. [QUASI-JUDICIAL OFFICERS                                    :
AT THE FIRST DEPARTMENTAL                                               :
DISCIPLINARY COMMITTEE (HEREIN "FDDC                                    :
DEFENDANTS")]; AND HON. JONATHAN                                        :
LIPPMAN, CHIEF JUSTICE OF THE NEW                                       :
YORK COURT OF APPEALS,                                                  :
:
Defendants.                       :
:
------------------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:**_____
**DATE FILED:** 5/14/2013

ORDER

13 Civ. 2565 (JMF)

JESSE M. FURMAN, United States District Judge:

By Order dated May 2, 2013, Plaintiff's *pro se* complaint was dismissed pursuant to

28 U.S.C. § 1915(e)(2)(B)(ii), (iii).  On May 6, 2013, the Court received Plaintiff's motion for

reconsideration and amended complaint.

The Court liberally construes this submission as a motion to alter or amend judgment

under Federal Rule of Civil Procedure 59(e), a motion for reconsideration under Local Civil Rule

6.3, and in the alternative, as a motion for relief from a judgment or order under Federal Rule of

Civil Procedure 60(b).  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.

2006); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (noting that the solicitude

afforded to *pro se* litigants takes a variety of forms, including liberal construction of papers,

EXHIBIT 9
Page 90 of 808

"relaxation of the limitations on the amendment of pleadings," leniency in the enforcement of other procedural rules, and "deliberate, continuing efforts to ensure that a *pro se* litigant understands what is required of him") (citations omitted).  After reviewing the arguments in Plaintiff's submission, the Court denies Plaintiff's motion.

## DISCUSSION

"[T]he standards governing Fed. R. Civ. P. 59(e) and Local Civil Rule 6.3 are the same." *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009).  The movant must demonstrate that the Court overlooked "controlling decisions or factual matters" that had been previously put before it.  *Id.* at 509 (discussing both Local Civil Rule 6.3 and Federal Rule of Civil Procedure 59(e)); *see Padilla v. Maersk Line, Ltd.*, 636 F. Supp. 2d 256, 258-59 (S.D.N.Y. 2009).  "Such motions must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court."  *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 391-92 (S.D.N.Y. 2000); *see also SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 206, 210 (S.D.N.Y. 2009) ("A motion for reconsideration is not an invitation to parties to 'treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's ruling.'") (internal quotation and citations omitted).

Plaintiff, in her motion, has failed to demonstrate that the Court overlooked any controlling decisions or factual matters with respect to her dismissed action.  Thus, Plaintiff's motion, to the extent that it is brought under Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, is denied.

2

EXHIBIT 9
Page 91 of 808

Under Federal Rule of Civil Procedure 60(b), a party may seek relief from a district court's order or judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called  intrinsic or extrinsic), misrepresentation, or other misconduct of an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason justifying relief.

Fed. R. Civ. P. 60(b).  Even under a liberal interpretation of Plaintiff's motion, Plaintiff has failed to demonstrate that any of the grounds listed in the first five clauses of Rule 60(b) apply. Therefore, to the extent that Plaintiff seeks relief under any of these clauses, her motion is denied.

To the extent that Plaintiff seeks relief under Federal Rule of Civil Procedure 60(b)(6), her motion is also denied.  With respect to such motions, the movant must first demonstrate that he or she could not have sought relief under any of the first five clauses of Rule 60(b).  *See United Airlines, Inc. v. Brien*, 588 F.3d 158, 175 (2d Cir. 2009).  In addition, the movant must show that the motion was filed within a "reasonable time" and that "'extraordinary circumstances' [exist] to warrant relief."  *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 59 (2d Cir. 2002) (*per curiam*) (citation omitted).  Plaintiff has failed to demonstrate that any extraordinary circumstances exist to warrant relief under Rule 60(b)(6).

EXHIBIT 9
Page 92 of 808

## CONCLUSION

Accordingly, Plaintiff's motion is DENIED in its entirety. Inasmuch as Plaintiff seeks permission to amend her complaint, the request is DENIED.

The Clerk of Court is directed to mail a copy of this order to Plaintiff and to note service on the docket.

The Clerk of Court is further directed to accept no further submissions from Plaintiff in this case except for papers directed to the United States Court of Appeals for the Second Circuit.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: May 14, 2013
     New York, New York

_____
JESSE M. FURMAN
United States District Judge

4

EXHIBIT 9
Page 93 of 808

# EXHIBIT 10

# EXHIBIT 10

**General Docket**
**Court of Appeals, 2nd Circuit**

| | |
|---|---|
| **Court of Appeals Docket #:** 13-2211 | **Docketed:** 06/06/2013 |
| **Nature of Suit:** 3440 CIVIL RIGHTS-Other | **Termed:** 08/19/2014 |
| Weissbrod v. Gonzalez | |
| **Appeal From:** SDNY (NEW YORK CITY) | |
| **Fee Status:** Paid | |

**Case Type Information:**
   **1)** Civil
   **2)** Private
   **3)** -

**Originating Court Information:**
   **District:** 0208-1 : 13-cv-2565
   **Trial Judge:** Jesse M. Furman, U.S. District Judge
   **Date Filed:** 04/18/2013

| **Date Order/Judgment:** | **Date NOA Filed:** | **Date Rec'd COA:** |
|---|---|---|
| 05/14/2013 | 06/05/2013 | 06/06/2013 |

**Prior Cases:**
   None

**Current Cases:**
   None

**Panel Assignment:**    Not available

---

Amy Rebecca Gurvey
**Terminated:** 03/28/2018
         Plaintiff - Appellant

------------------------------

| | |
|---|---|
| Hon. Luis A. Gonzalez, Presiding Chief Justice, Appellate Division First Dept. | Mark Shawhan, Esq., - Direct: 212-416-6325 |
|        Defendant - Appellee | [COR NTC Attorney] New York State Office of the Attorney General 25th Floor 120 Broadway New York, NY 10271 |
| James T. Shed, quasi-judicial officers at the First Departmental Disciplinary Committee "FDDC defendants" | Mark Shawhan, Esq., - Direct: 212-416-6325 |
|        Defendant - Appellee | [COR NTC Attorney] (see above) |
| Thomas Cahill, quasi-judicial officers at the First Departmental Disciplinary Committee "FDDC defendants" | Mark Shawhan, Esq., - Direct: 212-416-6325 |
|        Defendant - Appellee | [COR NTC Attorney] (see above) |
| Naomi Goldstein, quasi-judicial officers at the First Departmental Disciplinary Committee "FDDC defendants" | Mark Shawhan, Esq., - Direct: 212-416-6325 |
|        Defendant - Appellee | [COR NTC Attorney] (see above) |
| Jorge DoPico, quasi-judicial officers at the First Departmental Disciplinary Committee "FDDC defendants" | Mark Shawhan, Esq., - Direct: 212-416-6325 |
|        Defendant - Appellee | [COR NTC Attorney] (see above) |
| Halliburton Fales, quasi-judicial officers at the First Departmental Disciplinary Committee "FDDC defendants" | Mark Shawhan, Esq., - Direct: 212-416-6325 |
|        Defendant - Appellee | [COR NTC Attorney] (see above) |

EXHIBIT 10
Page 95 of 808

| Orlando Reyes, Esq., quasi-judicial officers at the First Departmental Disciplinary Committee "FDDC defendants"<br>Defendant - Appellee | Mark Shawhan, Esq., -<br>Direct: 212-416-6325<br>[COR NTC Attorney]<br>(see above) |
|---|---|
| Hon. Jonathan Lippman, Chief Justice of the NY Court of Appeals<br>Defendant - Appellee | Mark Shawhan, Esq., -<br>Direct: 212-416-6325<br>[COR NTC Attorney]<br>(see above) |
| Paul Curran, quasi-judicial officers at the First Departmental Disciplinary Committee "FDDC defendants"<br>Defendant | Mark Shawhan, Esq., -<br>Direct: 212-416-6325<br>[COR NTC Attorney]<br>(see above) |

Amy R. Weissbrod,

       Plaintiff - Appellant,

v.

Hon. Luis A. Gonzalez, Presiding Chief Justice, Appellate Division First Dept., James T. Shed, Thomas Cahill, Naomi Goldstein, Jorge DoPico, Halliburton Fales, Orlando Reyes, Esq., quasi-judicial officers at the First Departmental Disciplinary Committee "FDDC defendants", Hon. Jonathan Lippman, Chief Justice of the NY Court of Appeals,

       Defendants - Appellees,

Paul Curran,

       Defendant.

EXHIBIT 10
Page 97 of 808

3/8

| 06/06/2013 | ☐ 1<br>52 pg, 7.49 MB | NOTICE OF CIVIL APPEAL, with district court docket, on behalf of Appellant Amy R. Weissbrod, FILED. [958085] [13-2211] [Entered: 06/06/2013 02:32 PM] |
| 06/06/2013 | ☐ 2 | PAYMENT OF DOCKETING FEE, on behalf of Appellant Amy R. Weissbrod, district court docket entry re: receipt # 0208-8575399, FILED.[958090] [13-2211] [Entered: 06/06/2013 02:34 PM] |
| 06/06/2013 | ☐ 3<br>4 pg, 70.89 KB | DISTRICT COURT ORDER, dated 05/14/2013, RECEIVED.[958095] [13-2211] [Entered: 06/06/2013 02:34 PM] |
| 06/06/2013 | ☐ 4<br>7 pg, 87.93 KB | DISTRICT COURT ORDER, dated 05/02/2013, RECEIVED.[958098] [13-2211] [Entered: 06/06/2013 02:35 PM] |
| 06/06/2013 | ☐ 5<br>2 pg, 116.36 KB | INSTRUCTIONAL FORMS, to Pro Se litigant, SENT.[958099] [13-2211] [Entered: 06/06/2013 02:35 PM] |
| 06/07/2013 | ☐ 6<br>9 pg, 53.47 KB | ELECTRONIC INDEX, in lieu of record, FILED.[958708] [13-2211] [Entered: 06/07/2013 10:01 AM] |
| 06/26/2013 | ☐ 9<br>2 pg, 130.06 KB | ACKNOWLEDGMENT AND NOTICE OF APPEARANCE FORM, on behalf of Party Amy R. Weissbrod, FILED. Service date 06/19/2013 by US mail.[977180] [13-2211] [Entered: 06/27/2013 01:17 PM] |
| 06/26/2013 | ☐ 10<br>2 pg, 114.59 KB | FORM D-P, on behalf of Appellant Amy R. Weissbrod, FILED. Service date 06/19/2013 by US mail. [977181] [13-2211] [Entered: 06/27/2013 01:17 PM] |
| 06/26/2013 | ☐ 11<br>2 pg, 99.45 KB | SCHEDULING NOTIFICATION, on behalf of Appellant Amy R. Weissbrod, informing Court of proposed due date 09/06/2013, RECEIVED. Service date 06/19/2013 by US mail.[977183] [13-2211] [Entered: 06/27/2013 01:18 PM] |
| 07/01/2013 | ☐ 13<br>1 pg, 116.46 KB | NOTICE, to Appellee Thomas Cahill, Paul Curran, Jorge DoPico, Halliburton Fales, Naomi Goldstein, Luis A. Gonzalez, Jonathan Lippman, Orlando Reyes and James T. Shed , for failure to file an appearance, SENT.[979475] [13-2211] [Entered: 07/01/2013 12:05 PM] |
| 07/02/2013 | ☐ 16<br>1 pg, 36.81 KB | NEW CASE MANAGER, Dana Ellwood, copy to pro se appellant, ASSIGNED.[980119] [13-2211] [Entered: 07/02/2013 08:28 AM] |
| 07/10/2013 | ☐ 19<br>1 pg, 39.98 KB | SO-ORDERED SCHEDULING NOTIFICATION, setting Appellant Amy R. Weissbrod Brief due date as 09/06/2013; Joint Appendix due date as 09/06/2013, copy to pro se appellant, FILED. [985319] [13-2211]-- [Edited 07/10/2013 by DE] [Entered: 07/10/2013 09:03 AM] |
| 07/23/2013 | ☐ 20<br>2 pg, 94.84 KB | NOTICE OF APPEARANCE AS SUBSTITUTE COUNSEL, on behalf of Appellee Jorge DoPico, Naomi Goldstein, Luis A. Gonzalez, Jonathan Lippman, Orlando Reyes and James T. Shed, FILED. Service date 07/23/2013 by US mail. [997271] [13-2211] [Entered: 07/23/2013 11:05 AM] |
| 07/24/2013 | ☐ 21 | ATTORNEY, Mark H. Shawhan, [20], in place of attorney Barbara D. Underwood, SUBSTITUTED.[998881] [13-2211] [Entered: 07/24/2013 03:41 PM] |
| 07/26/2013 | ☐ 23<br>3 pg, 135.24 KB | ACKNOWLEDGMENT AND NOTICE OF APPEARANCE, on behalf of Appellee Thomas Cahill, Jorge DoPico, Naomi Goldstein, Luis A. Gonzalez, Jonathan Lippman, Orlando Reyes and James T. Shed, FILED. Service date 07/26/2013 by US mail.[1000866] [13-2211] [Entered: 07/26/2013 12:08 PM] |
| 07/26/2013 | ☐ 24<br>2 pg, 69.85 KB | LETTER, regarding appearance form, on behalf of Appellee Thomas Cahill, Jorge DoPico, Naomi Goldstein, Luis A. Gonzalez, Jonathan Lippman, Orlando Reyes and James T. Shed, RECEIVED. Service date 07/26/2013 by US mail.[1000870] [13-2211]--[Edited 07/29/2013 by DE] [Entered: 07/26/2013 12:08 PM] |
| 07/29/2013 | ☐ 25<br>1 pg, 38.64 KB | CAPTION, removing Paul Curran as an appellee per acknowledgment form dated 07/26/2013, copy to pro se appellant, AMENDED.[1001734] [13-2211] [Entered: 07/29/2013 08:47 AM] |
| 09/06/2013 | ☐ 26<br>112 pg, 4.18 MB | MOTION, to extend time, on behalf of Appellant Amy R. Weissbrod, FILED. Service date 09/05/2013 by US mail.[1035511] [13-2211] [Entered: 09/06/2013 04:57 PM] |
| 09/12/2013 | ☐ 32<br>1 pg, 25.02 KB | MOTION ORDER, granting motion to extend time to file brief and appendix by 12/09/2013 [26] filed by Appellant Amy R. Weissbrod, by RKW, copy to pro se appellant, FILED. [1039334][32] [13-2211] [Entered: 09/12/2013 11:22 AM] |
| 12/09/2013 | ☐ 35 | BRIEF & SPECIAL APPENDIX, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 12/09/2013 by CM/ECF. [1110422] [13-2211] [Entered: 12/09/2013 10:50 PM] |
| 12/09/2013 | ☐ 36 | APPENDIX, volume 1 of 1, (pp. 1-489), on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 12/09/2013 by CM/ECF.[1110430] [13-2211] [Entered: 12/09/2013 11:57 PM] |
| 12/09/2013 | ☐ 43<br>96 pg, 4.38 MB | MOTION, to extend time, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 12/04/2013 by US mail.[1116784] [13-2211] [Entered: 12/17/2013 02:49 PM] |
| 12/12/2013 | ☐ 37 | CORRECTED APPENDIX, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date |

12/11/2002 by CM/ECF. [1113885] [13-2211] [Entered: 12/12/2013 06:53 PM]

| Date | | Entry |
|---|---|---|
| 12/14/2013 | ☐ 38 303 pg, 16.4 MB | CORRECTED APPENDIX, volume 1 of 2, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 12/11/2013 by CM/ECF. [1115008] [13-2211]--[Edited 01/13/2014 by DE] [Entered: 12/14/2013 06:08 AM] |
| 12/14/2013 | ☐ 39 198 pg, 9.76 MB | CORRECTED APPENDIX, volume 2 of 2, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 12/11/2013 by CM/ECF. [1115009] [13-2211]--[Edited 01/13/2014 by DE]--[Edited 01/13/2014 by DE] [Entered: 12/14/2013 06:10 AM] |
| 12/16/2013 | ☐ 40 1 pg, 39.43 KB | LR 31.2 SCHEDULING NOTIFICATION, on behalf of Appellee Thomas Cahill, Jorge DoPico, Naomi Goldstein, Luis A. Gonzalez, Jonathan Lippman, Orlando Reyes and James T. Shed, informing Court of proposed due date 03/10/2014, RECEIVED. Service date 12/16/2013 by CM/ECF.[1115853] [13-2211] [Entered: 12/16/2013 04:07 PM] |
| 12/17/2013 | ☐ 45 1 pg, 39.62 KB | SO-ORDERED SCHEDULING NOTIFICATION, setting Appellee Thomas Cahill, Jorge DoPico, Naomi Goldstein, Luis A. Gonzalez, Jonathan Lippman, Orlando Reyes and James T. Shed Brief due date as 03/10/2014, FILED.[1116809] [13-2211] [Entered: 12/17/2013 03:00 PM] |
| 12/17/2013 | ☐ 46 2 pg, 68.73 KB | DEFECTIVE DOCUMENT, Brief & Special Appendix, Corrected Appendices volumes 1-2, [35], [36], [37], [38], [39], on behalf of Appellant Amy Rebecca Weissbrod, FILED.[1116893] [13-2211] [Entered: 12/17/2013 03:36 PM] |
| 12/18/2013 | ☐ 48 1 pg, 143.41 KB | MOTION ORDER, denying as moot motion to extend time [43] filed by Appellant Amy Rebecca Weissbrod, FILED. [1117404][48] [13-2211] [Entered: 12/18/2013 10:11 AM] |
| 01/01/2014 | ☐ 49 33 pg, 1.27 MB | BRIEF, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 01/01/2014 by CM/ECF. [1124342] [13-2211] [Entered: 01/01/2014 10:05 AM] |
| 01/01/2014 | ☐ 50 51 pg, 2.27 MB | SPECIAL APPENDIX, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 01/01/2014 by CM/ECF.[1124343] [13-2211] [Entered: 01/01/2014 10:06 AM] |
| 01/05/2014 | ☐ 51 | MOTION, to accept brief and appendix as filed, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 01/05/2014 by CM/ECF. [1125434] [13-2211]--[Edited 01/06/2014 by DE] [Entered: 01/05/2014 04:54 PM] |
| 01/06/2014 | ☐ 52 2 pg, 69.25 KB | DEFECTIVE DOCUMENT, Motion to accept brief and appendix as filed, [51], on behalf of Appellant Amy Rebecca Weissbrod, FILED.[1125459] [13-2211] [Entered: 01/06/2014 08:35 AM] |
| 01/06/2014 | ☐ 53 101 pg, 19.3 MB | MOTION, to accept brief and appendix as filed, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 01/06/2014 by CM/ECF. [1125570] [13-2211]--[Edited 01/06/2014 by DE] [Entered: 01/06/2014 09:35 AM] |
| 01/06/2014 | ☐ 54 | CURED DEFECTIVE Motion to accept brief and appendix as filed [52], [53], on behalf of Appellant Amy Rebecca Weissbrod, FILED.[1125595] [13-2211] [Entered: 01/06/2014 09:41 AM] |
| 01/09/2014 | ☐ 58 1 pg, 145.42 KB | MOTION ORDER, granting motion to accept brief and appendix as filed [53] filed by Appellant Amy Rebecca Weissbrod, by CFD, FILED. [1129458][58] [13-2211] [Entered: 01/09/2014 10:37 AM] |
| 01/15/2014 | ☐ 62 | CURED DEFECTIVE Brief, Special Appendix, Corrected Appendix volumes 1-2 [46], [58], [49], [50], [38], [39], on behalf of Appellant Amy Rebecca Weissbrod, FILED.[1134035] [13-2211] [Entered: 01/15/2014 08:37 AM] |
| 03/10/2014 | ☐ 66 16 pg, 589.85 KB | BRIEF, on behalf of Appellee Thomas Cahill, Jorge DoPico, Naomi Goldstein, Luis A. Gonzalez, Jonathan Lippman, Orlando Reyes and James T. Shed, FILED. Service date 03/10/2014 by CM/ECF. [1174635] [13-2211] [Entered: 03/10/2014 07:00 PM] |
| 03/24/2014 | ☐ 69 65 pg, 2.81 MB | MOTION, to extend time, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 03/24/2014 by CM/ECF. [1185448] [13-2211] [Entered: 03/24/2014 03:48 PM] |
| 03/24/2014 | ☐ 71 174 pg, 14.24 MB | MOTION, to extend time, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 03/24/2014 by CM/ECF. [1185489] [13-2211] [Entered: 03/24/2014 04:04 PM] |
| 03/24/2014 | ☐ 74 | SUPPLEMENTARY PAPERS TO MOTION [71], on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 03/24/2014 by CM/ECF, US mail.[1185607][74] [13-2211] [Entered: 03/24/2014 05:23 PM] |
| 03/25/2014 | ☐ 75 2 pg, 57.66 KB | DEFECTIVE DOCUMENT, Supplementary Papers, [74], on behalf of Appellant Amy Rebecca Weissbrod, FILED.[1185725] [13-2211] [Entered: 03/25/2014 08:32 AM] |
| 03/25/2014 | ☐ 76 | CORRECTED , on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 03/25/2014 by CM/ECF.[1186076] [13-2211] [Entered: 03/25/2014 10:53 AM] |
| 03/25/2014 | ☐ 77 2 pg, 58.76 KB | DEFECTIVE DOCUMENT, Letter, [76], on behalf of Appellant Amy Rebecca Weissbrod, FILED.[1186094] [13-2211] [Entered: 03/25/2014 11:02 AM] |
| 03/25/2014 | ☐ 78 1 pg, 43.18 KB | LETTER, informing Court to disregard motion filed in docket entry # 69 and to instead accept motion filed in docket entry # 71, on behalf of Appellant Amy Rebecca Weissbrod, RECEIVED. Service date |

| | | |
|---|---|---|
| | | 03/25/2014 by CM/ECF.[1186180] [13-2211]--[Edited 03/25/2014 by DE] [Entered: 03/25/2014 11:47 AM] |
| 03/25/2014 | ☐ 79 | CURED DEFECTIVE Letter [77], [78], on behalf of Appellant Amy Rebecca Weissbrod, FILED.[1186188] [13-2211] [Entered: 03/25/2014 11:53 AM] |
| 03/25/2014 | ☐ 83 1 pg, 160.71 KB | MOTION ORDER, granting motion to extend time to file reply brief until 04/14/2014 [71][69] filed by Appellant Amy Rebecca Weissbrod, FILED. [1186459][83] [13-2211] [Entered: 03/25/2014 02:57 PM] |
| 04/14/2014 | ☐ 84 | REPLY BRIEF, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 04/14/2014 by CM/ECF. [1201928] [13-2211] [Entered: 04/14/2014 10:08 PM] |
| 04/16/2014 | ☐ 85 2 pg, 66.94 KB | DEFECTIVE DOCUMENT, Reply Brief, [84], on behalf of Appellant Amy Rebecca Weissbrod, FILED. [1203962] [13-2211] [Entered: 04/16/2014 04:25 PM] |
| 04/16/2014 | ☐ 86 27 pg, 976.84 KB | REPLY BRIEF, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 04/14/2014 by CM/ECF. [1204075] [13-2211] [Entered: 04/16/2014 07:01 PM] |
| 04/17/2014 | ☐ 87 | CURED DEFECTIVE Reply Brief [85], [86], on behalf of Appellant Amy Rebecca Weissbrod, FILED. [1204411] [13-2211] [Entered: 04/17/2014 11:37 AM] |
| 05/15/2014 | ☐ 89 | CASE CALENDARING, for the week of 08/18/2014, B, PROPOSED.[1225927] [13-2211] [Entered: 05/15/2014 04:33 PM] |
| 06/04/2014 | ☐ 90 | MOTION, to file supplemental appendix, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 06/04/2014 by CM/ECF. [1240845] [13-2211] [Entered: 06/04/2014 05:55 PM] |
| 06/05/2014 | ☐ 92 2 pg, 64.91 KB | DEFECTIVE DOCUMENT, motion[90], on behalf of Appellant Amy Rebecca Weissbrod, FILED.[1241310] [13-2211] [Entered: 06/05/2014 12:17 PM] |
| 06/05/2014 | ☐ 93 276 pg, 12.9 MB | MOTION, to file supplemental appendix, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 06/04/2014 by CM/ECF. [1241891] [13-2211] [Entered: 06/05/2014 10:29 PM] |
| 06/06/2014 | ☐ 94 | CURED DEFECTIVE Motion [92], [93], on behalf of Appellant Amy Rebecca Weissbrod, FILED.[1241935] [13-2211] [Entered: 06/06/2014 08:47 AM] |
| 06/17/2014 | ☐ 97 | CASE CALENDARING, on submission for 08/18/2014, B Panel, SET.[1250011] [13-2211] [Entered: 06/17/2014 10:42 AM] |
| 06/19/2014 | ☐ 100 1 pg, 40.18 KB | SUBMITTED NOTICE, to attorneys/parties, TRANSMITTED.[1253016] [13-2211] [Entered: 06/19/2014 04:45 PM] |
| 07/08/2014 | ☐ 104 | MOTION, to consolidate appeals, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 07/08/2014 by CM/ECF. [1265524] [13-2211] [Entered: 07/08/2014 11:59 AM] |
| 07/08/2014 | ☐ 105 2 pg, 65.7 KB | DEFECTIVE DOCUMENT, Motion to consolidate appeals, [104], on behalf of Appellant Amy Rebecca Weissbrod, FILED.[1265567] [13-2211] [Entered: 07/08/2014 12:14 PM] |
| 07/08/2014 | ☐ 106 204 pg, 11.46 MB | MOTION, to consolidate appeals, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 07/08/2014 by CM/ECF. [1265610] [13-2211] [Entered: 07/08/2014 12:31 PM] |
| 07/08/2014 | ☐ 107 | CURED DEFECTIVE Motion to consolidate appeals [105], [106], on behalf of Appellant Amy Rebecca Weissbrod, FILED.[1265616] [13-2211] [Entered: 07/08/2014 12:35 PM] |
| 07/15/2014 | ☐ 111 1 pg, 40.19 KB | SUBMITTED NOTICE, to attorneys/parties, copy sent to pro se, TRANSMITTED.[1271395] [13-2211] [Entered: 07/15/2014 01:40 PM] |
| 07/16/2014 | ☐ 114 2 pg, 39.22 KB | MOTION ORDER, denying motion to consolidate appeals [106] filed by Appellant Amy Rebecca Weissbrod, FILED. [1272590][114] [13-2211] [Entered: 07/16/2014 03:11 PM] |
| 08/15/2014 | ☐ 118 535 pg, 24.92 MB | SUPPLEMENTARY PAPERS TO WRIT [90], on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 08/15/2014 by CM/ECF.[1296563][118] [13-2211] [Entered: 08/15/2014 02:28 PM] |
| 08/18/2014 | ☐ 119 8 pg, 341.38 KB | SUPPLEMENTARY PAPERS TO WRIT [118], on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 08/18/2014 by CM/ECF.[1296984][119] [13-2211] [Entered: 08/18/2014 08:51 AM] |
| 08/18/2014 | ☐ 121 | CASE, to JAC, CJS, C.JJ., SUBMITTED.[1297487] [13-2211]--[Edited 08/19/2014 by MR] [Entered: 08/18/2014 12:32 PM] |
| 08/19/2014 | ☐ 123 1 pg, 37.18 KB | NEW CASE MANAGER, Yana Segal, ASSIGNED.[1298233] [13-2211] [Entered: 08/19/2014 09:44 AM] |
| 08/19/2014 | ☐ 124 5 pg, 173.2 KB | SUMMARY ORDER AND JUDGMENT, affirming judgment of the district court, by JAC, CJS, FILED. [1298264] [13-2211] [Entered: 08/19/2014 09:51 AM] |
| 08/19/2014 | ☐ 125 3 pg, 94.49 KB | MOTION ORDER, denying as moot motion to file supplemental appendix [93] filed by Appellant Amy Rebecca Weissbrod, see Summary Order filed on 08/19/2014 by JAC, CJS, FILED. [1298276][125] [13-2211] [Entered: 08/19/2014 09:54 AM] |

EXHIBIT 10
Page 100 of 808

| 09/02/2014 | ☐ 127 | MOTION, for rehearing en banc, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 09/02/2014 by CM/ECF. [1309110] [13-2211] [Entered: 09/02/2014 08:31 AM] |
| 09/03/2014 | ☐ 128<br>2 pg, 56.8 KB | DEFECTIVE DOCUMENT, Motion for Rehearing En Banc, [127], on behalf of Appellant Amy Rebecca Weissbrod, FILED.[1310800] [13-2211] [Entered: 09/03/2014 02:07 PM] |
| 09/04/2014 | ☐ 129<br>19 pg, 849.96 KB | PETITION FOR REHEARING/REHEARING EN BANC, on behalf of Appellant Amy Rebecca Weissbrod, FILED. Service date 09/02/2014 by CM/ECF.[1311304] [13-2211] [Entered: 09/04/2014 12:48 AM] |
| 09/04/2014 | ☐ 130 | CURED DEFECTIVE Petition for Rehearing and Rehearing En Banc [129], [128], on behalf of Appellant Amy Rebecca Weissbrod, FILED.[1311379] [13-2211] [Entered: 09/04/2014 09:07 AM] |
| 10/16/2014 | ☐ 133<br>1 pg, 18.08 KB | ORDER, petition for rehearing en banc denied,FILED.[1346480] [13-2211] [Entered: 10/16/2014 03:34 PM] |
| 10/23/2014 | ☐ 134<br>3 pg, 606.78 KB | JUDGMENT MANDATE, ISSUED.[1352575] [13-2211] [Entered: 10/23/2014 03:30 PM] |

Clear All

● **Documents and Docket Summary**
○ **Documents Only**

☑ **Include Page Numbers**

**Selected Pages:** `0`     **Selected Size:** `0 KB`   **(Max: 50 MB)**

View Selected

---

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/21/2023 16:30:26 | | |
| **PACER Login:** | mcrice3317 | **Client Code:** | |
| **Description:** | Docket Report (full) | **Search Criteria:** | 13-2211 |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |