EXHIBIT 21

EXHIBIT 21

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  PART 7
------------------------------------------------------------------------X

AMY WEISSBROD-GURVEY,

                               Plaintiff,

                  - against -

STATE OF NEW YORK, CITY OF NEW YORK,
APPELLATE DIVISION FIRST DEPT., APPELLATE
DIVISION FIRST DEPT. DISCIPLINARY
COMMITTEE ("DDC"), NYC/NYS ETHICS BOARDS
FOR ATTORNEY DISCIPLINE, NYS COMMISSION
ON JUDICIAL CONDUCT ("COMMISSION"), NYS
OFFICE OF COURT ADMINISTRATION ("OCA"),
HON(S). JONATHAN LIPPMAN, LUIS GONZALEZ,
ROBERT TEMBECKJIAN, THOMAS CAHILL, ALAN
FRIEDBERG, HAL LIEBERMAN, RICHARD SUPPPLE,
MARY JO HAMILTION, JAMES T. SHED, JORGE
DOPICO, NAOMI GOLDSTEIN, SHERRY COHEN,
HALLIBURTON FALES, RAYMON VALLEJO,
ORLANDO REYES, DDC HEARING PANEL IV), AND
DOES I-X INCLUSIVE, HINSHAW CULBERTSON,
LLC, and HON. GAIL PRUDENTI, CHIEF COUNSEL
OF THE NYS OFFICE OF COURT  ADMINISTRATION,

                             Defendants.

------------------------------------------------------------------------X

**NOTICE OF ENTRY**

Index No. 100163/15

      PLEASE TAKE NOTICE that the within is a true and correct copy of a Decision and Order in

the above captioned matter, dated March 21st, 2017, and duly entered in the office of the County

EXHIBIT 21
Page 310 of 808

Clerk of the Supreme Court of the State of New York, County of New York, on May 31, 2017.

Dated: New York, New York
June 9, 2017

ERIC T. SCHNEIDERMAN
Attorney General of the
State of New York

By: MICHAEL A. BERG
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8651

To: AMY WEISSBROD-GURVEY
315 Highland Avenue
Upper Montclair, NJ 07043
amyweissbrod@verizon.net
Plaintiff Pro Se

MARIAN C. RICE/NICOLE FEDER
L'Abbate, Balkan, Colavita & Contini, L.L.P.
1001 Franklin Avenue
Garden City, NY 11530
nfeder@lbcclaw.com
Counsel for Defendants Richard Supple,
Hal Lieberman, and Hinshaw & Culbertson

LESLEY BERSON MBAYE, ESQ.
Senior Counsel
New York City Law Department
100 Church Street, Room 2-306
New York, New York 10007
lmbaye@law.nyc.gov
Counsel for Defendant City of New York

EXHIBIT 21
Page 311 of 808

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

### HON. GERALD LEBOVITS
**J.S.C.**

PRESENT: _____          PART 7
                                    *Justice*

| Index Number : 100163/2015 |
| WEISSBROD-GURVEY, AMY |
| vs. |
| STATE OF NEW YORK |
| SEQUENCE NUMBER : 017 |
| PRELIMINARY INJUNCTION |

INDEX NO. _____
MOTION DATE _____
MOTION SEQ. NO. _____

The following papers, numbered 1 to _2_, were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _1-2_
Answering Affidavits — Exhibits _____ | No(s). _____
Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is    *granted without*
*Opposition.*

                        *Settle Order*

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

RECEIVED
APR 0 3 2017
NYS SUPREME COURT - CIVIL
GENERAL CLERK'S OFFICE

FILED
MAY 3 1 2017
COUNTY CLERK'S OFFICE
NEW YORK

Dated: _3/21/17_

HON. GERALD LEBOVITS    J.S.C.
                        **J.S.C.**

1. CHECK ONE: ..................................................    ☐ CASE DISPOSED    ☒ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ...........................MOTION IS: ☒GRANTED  ☐ DENIED  ☐.GRANTED IN PART  ☐ OTHER
3. CHECK IF APPROPRIATE: .................................................  ☐ SETTLE ORDER        ☐ SUBMIT ORDER
                                                    ☐ DO NOT POST  ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

*S/O*

EXHIBIT 21
Page 312 of 808

SUPREME    COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

AMY WEISSBROD-GURVEY

Index No.    100163-15

Plaintiffs,    (LEBOVITS, J.)

- against -

STATE OF NY, CITY OF NY, ET AL.

Defendants.

**REDACTION COVER PAGE**

CHECK ALL THAT APPLY:

☒ The document filed contains no confidential personal information, as defined in 22 NYCRR 202..5(e).

☐ The document filed is REDACTED in accordance with 22 NYCRR 202.5(e).

☐ The document filed is UN-REDACTED in accordance with 22 NYCRR 202.5(e).

☐ (a) The document filed contains SSN (as authorized by the order specified below).

☐ (b) The document filed contains confidential personal information as defined under 22 NYCRR 202.5(e) (as authorized by the order specified below).

☐ This document was previously filed REDACTED.
Date:

☐ This document was previously filed UN-REDACTED.
Date:

☐ The document filed seeks a remedy under 22 NYCRR 202.5(e)(2).

☐ The document filed seeks a remedy under 22 NYCRR 202.5(e)(3).

☐ Additional information:

FILED
MAY 31 2017
COUNTY CLERK'S OFFICE
NEW YORK

There is a previously filed order of the Court regarding this document:    ○ yes / ● no

☐ Date of order:

☐ Date order filed:

☐ Other identifying information for such order:

The order of the Court is being filed with the redacted / un-redacted document:    ○ yes / ○ no

☐ Date of order:

☐ Other identifying information for such order:

Signature of filer: _____
Print Name: MICHAEL A. BERG
Counsel appearing for: STATE DEFENDANTS AND NYS (name of party)

Filer is Unrepresented / Pro se:    ○ yes / ○ no

Date: 4/28/17

EXHIBIT 21
Page 313 of 808

**HON. GERALD LEBOVITS**
**J.S.C.**

FA
5/31/17 Present:
E
PLFO-17

---------------------------------------------------------X

AMY WEISSBROD-GURVEY,

               Plaintiff,

        - against -

STATE OF NEW YORK, CITY OF NEW YORK,
APPELLATE DIVISION FIRST DEPT.,
APPELLATE DIVISION FIRST DEPT.
DISCIPLINARY COMMITTEE ("DDC"),
NYC/NYS ETHICS BOARDS FOR ATTORNEY
DISCIPLINE, NYS COMMISSION ON
JUDICIAL CONDUCT ("COMMISSION"), NYS
OFFICE OF COURT ADMINISTRATION
("OCA"), HON(S). JONATHAN LIPPMAN, LUIS
GONZALEZ, ROBERT TEMBECKJIAN,
THOMAS CAHILL, ALAN FRIEDBERG, HAL
LIEBERMAN, RICHARD SUPPLE, MARY JO
HAMILTON, JAMES T. SHED, JORGE DO
PICO, NAOMI GOLDSTEIN, SHERRY COHEN,
HALLIBURTON FALES, RAYMOND VALLEJO,
ORLANDO REYES, DDC HEARING PANEL IV,
AND DOES I-X, INCLUSIVE, HINSHAW &
CULBERTSON, LLC, AND HON. GAIL
PRUDENTI, CHIEF COUNSEL OF THE NYS
OFFICE OF COURT ADMINISTRATION,

               Defendants.

---------------------------------------------------------X

At an I.A.S. Trial Term, Part 7, of the Supreme
Court of the State of New York, held in and for
the County of New York, located at 111 Centre
Street, Borough of Manhattan, New York, New
York 10013, on the 2nd day of May 2017

Index No. 100163-15

**ORDER**

**Mot. Seq. No. 17**

**FILED**

**MAY 3 1 2017**

**COUNTY CLERK'S OFFICE**
**NEW YORK**

**UPON THE MOTION** for a filing injunction filed on February 16, 2017 by defendants

the State of New York, the Supreme Court of the State of New York, Appellate Division, First

Department, the Departmental Disciplinary Committee of the Appellate Division, First

Department, the New York State Commission on Judicial Conduct, Jorge Dopico, Naomi F.

Goldstein, Raymond Vallejo, Orlando Reyes, and Alan W. Friedberg; and

**THE COURT HAVING READ** the following papers (Nos. 1-2) on the Motion:

**RECEIVED**

**MAY 3 1 2017**

**NYS SUPREME COURT - CIVIL**
**GENERAL CLERK'S OFFICE**

EXHIBIT 21
Page 314 of 808

1)     Notice of State Defendants' and State Attorneys' Motion for a Filing Injunction *dated Feb 22, 2017*

2)     Affirmation of Michael A. Berg in Support of State Defendants' and State

Attorneys' Motion for a Filing Injunction; *so duly affirmed on Feb 16, 2017, and*

**PLAINTIFF NOT HAVING** filed any papers in opposition or response to the motion;

and

**THE COURT HAVING GRANTED** the motion by memorandum decision dated

March 21, 2017 (a copy of which is attached hereto); and

**THE COURT HAVING GRANTED**, by short-form order dated January 17, 2017,

identical relief upon the motion of defendants the Hon. Jonathan Lippman, the Hon. Luis

Gonzalez, the Hon. A. Gail Prudenti, Sherry Cohen, James T. Shed, Thomas Cahill, Robert

Tembeckjian, and Sarah Josephine Hamilton (sued herein as "Mary Jo Hamilton") *Attorney*

*Now upon motion of Michael A. Berg, Asst. Attorney General, for the defendants*

**IT IS HEREBY ORDERED** that:

. Plaintiff Amy Weissbrod-Gurvey, also known as Amy Gurvey and Amy Weissbrod, is

hereby permanently enjoined from filing any new actions, claims or proceedings against the

following defendants without obtaining prior written leave of the Administrative Judge of the

Supreme Court, Civil Branch, New York County: (1) the State of New York; (2) the Supreme

Court of the State of New York, Appellate Division, First Department; (3) the Departmental

Disciplinary Committee of the Appellate Division, First Department; (4) the New York State

Commission on Judicial Conduct; (5) Jorge Dopico; (6) Naomi F. Goldstein; (7) Raymond

Vallejo; (8) Orlando Reyes; (9) Alan W. Friedberg; (10) the Hon. Jonathan Lippman; (11) the

Hon. Luis Gonzalez; (12) the Hon. A. Gail Prudenti; (13) Sherry Cohen; (14) James T. Shed;

(15) Thomas Cahill; (16) Robert Tembeckjian; and (17) Sarah Josephine Hamilton (sued herein

as "Mary Jo Hamilton"). *, and it is Further*

EXHIBIT 21
Page 315 of 808

ORDERED that:

The Clerk of this Court is directed to accept no further filings from or on behalf of

Plaintiff against the Defendants listed above without prior authorization of the Administrative

Judge of the Supreme Court, Civil Branch, New York County.

Enter:

_____
Hon. Gerald Lebovits, J.S.C.

FiLED

MAY 3 1 2017,

COUNTY CLERK'S OFFICE
NEW YORK

_____
Clerk of the Court

☐ DO NOT POST

EXHIBIT 21
Page 316 of 808

EA
4/3/17
E

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

## HON. GERALD LEBOVITS

PRESENT: _____ **J.S.C.**          PART _7_
                    *Justice*

Index Number : 100163/2015                    INDEX NO. _____
WEISSBROD-GURVEY, AMY
vs.                                                              MOTION DATE _____
STATE OF NEW YORK
SEQUENCE NUMBER : 017                    MOTION SEQ. NO. _____
PRELIMINARY INJUNCTION

The following papers, numbered 1 to _2_, were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _1-2_

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is  *granted without*

*opposition.*

*Settle order*

RECEIVED
APR 03 2017
NYS SUPREME COURT - CIVIL
GENERAL CLERK'S OFFICE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: _3/21/17_                              HON. GERALD LEBOVITS **J.S.C.**
                                                                            **J.S.C.**

1. CHECK ONE: ................................................ ☐ CASE DISPOSED          ☒ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ...........................MOTION IS: ☒ GRANTED     ☐ DENIED     ☐ GRANTED IN PART     ☐ OTHER

3. CHECK IF APPROPRIATE: ................................................ ☐ SETTLE ORDER          ☐ SUBMIT ORDER

☐ DO NOT POST          ☐ FIDUCIARY APPOINTMENT          ☐ REFERENCE

*S/O*

EXHIBIT 21
Page 317 of 808

STATE OF NEW YORK    )
                         : SS.:
COUNTY OF NEW YORK  )

      MICHAEL A. BERG, being duly sworn, deposes and says:

      That he is an Assistant Attorney General in the office of the Attorney General of the State of New York, attorney for defendants the State of New York, the Supreme Court of the State of New York, Appellate Division, First Department, the Departmental Disciplinary Committee, the New York State Commission on Judicial Conduct, Jorge Dopico, Naomi F. Goldstein, Raymond Vallejo, Orlando Reyes, Alan W. Friedberg, the Hon. Jonathan Lippman, Luis Gonzalez, and A. Gail Prudenti; Sherry Cohen, James T. Shed, Thomas Cahill, Robert Tembeckjian, and Sarah Josephine Hamilton (sued herein as "Mary Jo Hamilton") and that on the 28th of April 2017, he served the annexed Notice of Settlement and proposed Order upon the following named persons:

Amy Weissbrod-Gurvey, Esq.
315 Highland Avenue
Upper Montclair, NJ 07043
(973) 655-0991
amyweissbrod@verizon.net
*Plaintiff Pro Se*

Marian Rice, Esq.
Nicole Feder, Esq.
L'Abbate, Balkan, Colavita & Contini, L.L.P.
1001 Franklin Avenue
Garden City, NY 11530
(516) 294-8844
nfeder@lbcclaw.com
*Counsel for Defendant J. Richard Supple*
*Hal R. Lieberman, and Hinshaw & Culbertson, LLC*

Lesley Berson Mbaye, Esq.
New York City Law Department
100 Church Street, Room 2-306
New York, NY 10007
(212) 356-0897
lmbaye@law.nyc.gov
*Counsel for Defendant City of New York*

Shawn Kerby, Esq.
Office of Court Administration
25 Beaver Street, 11th Floor
New York, NY 10004
(212) 428-2150
skerby@nycourts.gov
*Counsel for OCA Defendants*

by U.S. Mail by depositing a true and correct copy thereof, properly enclosed in a post-paid regular mail wrapper, in a post-office box regularly maintained at 120 Broadway, New York, New York 10271 directed to said persons at the addresses within the State designated by them for that purpose.

                                    MICHAEL A. BERG

Sworn to before me this
28th day of April 2017

Michael J. Siudzinski
Assistant Attorney General

EXHIBIT 21
Page 318 of 808

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------X
AMY WEISSBROD-GURVEY,                          :
                                               :
                    Plaintiff,                 :
                                               :
            - against -                        :          **Index No. 100163-15**
                                               :
STATE OF NEW YORK, CITY OF NEW YORK,           :
APPELLATE DIVISION FIRST DEPT.,                :
APPELLATE DIVISION FIRST DEPT.                 :          <u>**NOTICE OF SETTLEMENT**</u>
DISCIPLINARY COMMITTEE ("DDC"),                :
NYC/NYS ETHICS BOARDS FOR ATTORNEY             :          **Hon. Gerald Lebovits, J.S.C.**
DISCIPLINE, NYS COMMISSION ON                  :
JUDICIAL CONDUCT ("COMMISSION"), NYS           :
OFFICE OF COURT ADMINISTRATION                 :
("OCA"), HON(S). JONATHAN LIPPMAN, LUIS        :
GONZALEZ, ROBERT TEMBECKJIAN,                  :
THOMAS CAHILL, ALAN FRIEDBERG, HAL             :
LIEBERMAN, RICHARD SUPPLE, MARY JO             :
HAMILTON, JAMES T. SHED, JORGE DO              :          
PICO, NAOMI GOLDSTEIN, SHERRY COHEN,           :
HALLIBURTON FALES, RAYMOND VALLEJO,            :
ORLANDO REYES, DDC HEARING PANEL IV,           :
AND DOES I-X, INCLUSIVE, HINSHAW &             :
CULBERTSON, LLC, AND HON. GAIL                 :
PRUDENTI, CHIEF COUNSEL OF THE NYS             :
OFFICE OF COURT ADMINISTRATION,                :
                                               :
                    Defendants.                :
---------------------------------------------------------------X

     **PLEASE TAKE NOTICE,** that the within ORDER will be presented for settlement and

signature herein to the Hon. Gerald Lebovits, one of the Judges of the within named Court, at the

Courthouse, 111 Centre Street, in the Borough of Manhattan, City of New York, on the 8th day

of May, 2017 at 9:30 a.m.

EXHIBIT 21
Page 319 of 808

DATED:    New York, New York
          April 28, 2017


                              ERIC T. SCHNEIDERMAN
                              Attorney General of the State of New York


                              By: _____
                              Michael A. Berg
                              Assistant Attorney General
                              120 Broadway, 24th floor
                              New York, New York 10271
                              Tel: (212) 416-8651
                              Fax: (212) 416-6009
                              michael.berg@ag.ny.gov


TO:                                       Marian Rice, Esq.
Amy Weissbrod-Gurvey, Esq.                Nicole Feder, Esq.
315 Highland Avenue                       L'Abbate, Balkan, Colavita & Contini
Upper Montclair, NJ   07043               1001 Franklin Avenue
(973) 655-0991                            Garden City, NY 11530
amyweissbrod@verizon.net                  (516) 294-8844
*Plaintiff Pro Se*                        (516) 294-8202 (fax)
                                          nfeder@lbcclaw.com
                                          *Counsel for Defendants J. Richard Supple,*
                                          *Hal R. Lieberman, and Hinshaw &*
                                          *Culbertson, LLC*


Lesley Berson Mbaye, Esq.                 Shawn Kerby, Esq.
Senior Counsel                            Office of Court Administration
New York City Law Department              25 Beaver Street, 11th Floor
100 Church Street, Room 2-306             New York, NY 10004
New York, N.Y. 10007                      (212) 428-2150
(212) 356-0897                            skerby@nycourts.gov
(212) 788.3770 (fax)                      *Counsel for OCA Defendants*
lmbaye@law.nyc.gov
*Counsel for Defendant City of New York*


EXHIBIT 21
Page 320 of 808

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:                                    Index No.:100163-15

AMY WEISSBROD-GURVEY,

                                            Plaintiff,

                    -against-

STATE OF NEW YORK, CITY OF NEW YORK, APPELLATE DIVISION FIRST DEPT.,
APPELLATE DIVISION FIRST DEPT. DISCIPLINARY COMMITTEE ("DDC"), NYC/NYS
ETHICS BOARDS FOR ATTORNEY DISCIPLINE, NYS COMMISSION ON JUDICIAL
CONDUCT ("COMMISSION"), NYS OFFICE OF COURT ADMINISTRATION ("OCA"),
HON(S) JONATHAN LIPPMAN, LUIS GONZALEZ, ROBERT TEMBECKJIAN, THOMAS
CAHILL, ALAN FRIEDBERG, HAL LIEBERMAN, RICHARD SUPPPLE, MARY JO
HAMILTION, JAMES T. SHED, JORGE DO PICO, NAOMI GOLDSTEIN, SHERRY
COHEN, HALLIBURTON FALES, RAYMON D. VALLEJO, ORLANDO REYES, DDC
HEARING PANEL IV, AND DOES I-X INCLUSIVE, HINSHAW CULBERTSON, LLC, and
HON. GAIL PRUDENTI, CHIEF COUNSEL OF THE NYS OFFICE OF COURT
ADMINISTRATION,

                                            Defendants.

---

## NOTICE OF SETTLEMENT

---

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*ATTORNEY FOR STATE DEFENDANTS AND STATE ATTORNEYS*
By:   Michael A. Berg
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
Tel. No.: (212) 416-8651
Fax Nos.: 212-416-6075/6009/6076
(Not for Service of Papers)

**FILED**

**MAY 3 1 2017**

**COUNTY CLERK'S OFFICE
NEW YORK**

EXHIBIT 21
Page 321 of 808

# EXHIBIT 22

# EXHIBIT 22

| **In the Matter of Amy R. Weissbrod Gurvey** |
|:---:|
| Motion No: M-2520 |
| Slip Opinion No: 2017 NYSlipOp 79127(U) |
| Decided on July 6, 2017 |
| Appellate Division, First Department, Motion Decision |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| This motion is uncorrected and is not subject to publication in the Official Reports. |

July 6, 2017

In the Matter of Amy R. Weissbrod

Gurvey,

Petitioner-Appellant,

v State of New York, et al.,

Respondents-Respondents.

A purported appeal having been taken from the order of the Supreme Court, New York County, entered on or about January 18, 2017,And petitioner-appellant having moved for an order directing this Court to permit the filing and service of her amended complaint "and motion to renew and reargue", for a stay, and for other relief, Now, upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon, It is ordered that the motion is denied. ENTERED: July 6, 2017

_____ CLERK

Present - Hon. Rolando T. Acosta,Presiding Justice, Dianne T. Renwick Rosalyn H. Richter Troy K. Webber,Justices

M-2520

Index No. 100163/15

EXHIBIT 22
Page 323 of 808

7/6/2017

# EXHIBIT 23

# EXHIBIT 23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
AMY R. GURVEY,                                            :
                                        Plaintiff,        :
                                                          :
                        -against-                         :
                                                          :
COWAN, LIEBOWITZ & LATMAN, P.C., et                      :
al.,                                                      :
                                        Defendants.       :
----------------------------------------------------------X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____               │
│ DATE FILED: 07/06/2017               │
└─────────────────────────────────────┘
```

06 Civ. 1202 (LGS)

OPINION AND ORDER

LORNA G. SCHOFIELD, District Judge:

Plaintiff Amy R. Gurvey commenced this action against Defendants William Borchard, Midge Hyman, Baila Celedonia, Christopher Jensen, all attorneys at the firm of Cowan Liebowitz & Latman, P.C. ("Cowan" or "the Firm"), which is also a defendant (together, "Defendants") and others. Defendants move for summary judgment on the remaining claims of attorney malpractice and breach of fiduciary duty. Plaintiff cross-moves for summary judgment as to a number of claims that are not pending in this case. Insofar as Plaintiff's claims have not been dismissed previously, Plaintiff's cross-motion is construed as a motion to amend the pleadings and is denied as both untimely and futile. *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016). For the reasons below, Defendants' motion is granted.

## I.    BACKGROUND

Unless noted, the facts below are undisputed and drawn from the parties' Rule 56.1 Statements and other submissions on this motion, and are construed in Plaintiff's favor. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016). Given the long history of this litigation, only the facts relevant to the adjudication of this motion are discussed.

EXHIBIT 23
Page 325 of 808

On December 6, 2001, Cowan sent Plaintiff a "letter of intent" confirming its offer of employment to Plaintiff, subject to finalizing the terms of the employment agreement. Around this time, Plaintiff was working on a venture that she called "ConcertMaster and Electronic Ticketing" -- a "ticketing and e-ticketing method[] on mobile devices . . . to enable distribution of live recordings and event merchandise." Plaintiff had described her venture "in general" during her interview with the Firm. She later, in a May 2002 email to a third party unrelated to Cowan, described her business idea: "The patent will allow ticket buyers to get a SmartCard or small CD in lieu of a cardboard ticket if they pay a premium over the ticket price, let's say $10. Within a certain number of hours after [sic] performance, the premium payer can will then [sic] be able to insert the disk into a computer and download an encryped [sic] DVD of the concert attended . . . ."

The Third Amended Complaint (the "Complaint") asserts that from January 2002, Plaintiff was Cowan's client, and Plaintiff testified that she "may have assumed that Cowan were [her] lawyers" at that time. On February 1, 2002, Plaintiff joined Cowan as "of counsel," under a one-year employment agreement, dated January 15, 2002. The only evidence of the parties' relationship from early 2002 is the employment agreement, which acknowledges Plaintiff's ownership of the e-ticketing venture, but makes no mention of any attorney-client relationship in connection with that project or any other matter.

Plaintiff presented her venture at a Firm meeting shortly after she joined in early 2002, at the request of Cowan attorney William Borchard. In her deposition, Plaintiff testified that Borchard told her that the purpose of her presentation was to inform "of-counsels who were part-time" "of the nature of [her] inventions and [her] practice . . . to find out if some of them could send [her] billings to do for their other clients." Plaintiff also testified that she provided

2

EXHIBIT 23
Page 326 of 808

handouts at the meeting, and that she did not remember whether those handouts were marked "confidential" or whether she informed the attendees that her invention was confidential.  She did not ask for the handouts to be returned to her.

In March or April 2002, Plaintiff claims to have attended a Firm event at which she met Michael Gordon of the band Phish and "w[as] shocked to discover how much [he] knew of plaintiff's confidential business plans and technology."  Plaintiff believed that Gordon's then-girlfriend, Cowan associate Susan Schick, disclosed Plaintiff's confidential information, or that "[Gordon] may have been at the [February] meeting."  Plaintiff testified that, at the time of the Firm event where she met Gordon, "Cowan had not done any filing for [her]," and "Cowan had not done anything yet."

The Firm terminated Plaintiff's employment on or around May 7, 2002.  Beginning on May 10, 2002, while planning for Plaintiff's departure, the Firm agreed to help Plaintiff prepare and file with the United States Patent and Trademark Office ("USPTO") a provisional patent application ("PPA") for her electronic ticketing venture.  In a May 10, 2002, email from Plaintiff to Borchard and Cowan attorney Christopher Jensen, Plaintiff stated:

> Coincidentally (and without any request on my part), Mark Montague came into my office yesterday and said he would like to file the provisional patent for my concert idea.  Since my discussing this patent and the business model during my first firm meeting, a few of the associates have asked me if they could work on it. I have deferred answering them.  Time has now become of the essence . . . .  For expediency purposes, I am willing to pay for Mark's time and legal fees. . . .  If it is better if all my projects and clients are handled separately, please so advise, and I will retain outside counsel.  I told Mark that I would love him to do the work but under no circumstances could he do anything without getting your permission.

Later the same day, Jensen authorized Cowan attorney Mark Montague to file the PPA on Plaintiff's behalf and said, "[w]e should just keep track of our time for now and then we will figure out later with Amy how we are going to get paid."

3

EXHIBIT 23

Page 327 of 808

On May 22, 2002, after Plaintiff's employment was terminated but before she had vacated her office at the Firm, Montague filed a PPA on Plaintiff's behalf, entitled "Premium Performance Ticket." On May 24, 2002, Cowan attorney Lewis Gable filed a second PPA that was substantially similar to, but more expansive than, the first PPA and intended to supersede the first PPA. Defendants assert that they did not perform any legal work for Plaintiff after Gable filed the second PPA, and Plaintiff has not presented contrary evidence.

In June 2002 (after Plaintiff was fired, but still before she had vacated her office, which occurred in September), Cowan attorney Midge Hyman told Plaintiff that "the firm would not send [her] work under any circumstances" or "allow [her] to work on [her] patent or . . . use any of the firm's other patent attorneys to assist [her]." In October 2002, Plaintiff sent an email to Borchard and Jensen requesting that her files be sent to her, and thereafter, that "all of [her] files . . . be burned and destroyed" and a "Certificate of Destruction [be] signed by the firm."

In December 2002, Plaintiff had a telephone conversation with Jensen in which, Jensen asserts, Plaintiff threatened to sue the Firm. The next day, Plaintiff sent an email to Jensen and Borchard, in which she sought payment for her services and threatened to "pursue vigorously" the "misappropriation of any my [*sic*] trade secrets and patent (filed by the firm)." In response, Jensen instructed Plaintiff not to email him again. According to Defendants, Plaintiff's "threat of litigation" created a conflict of interest, which prompted them to withdraw formally as her representative before the USPTO, which they did by filing a request for withdrawal on January 3, 2003. The request for withdrawal stated as the reason for the request that "[a] conflict of interest has arisen between the applicant [Plaintiff] and the law firm [Defendants]." The record includes a January 3, 2003, letter from Defendants to Plaintiff advising her, "Since a potential conflict of interest has arisen between you and Cowan, Liebowitz & Latman, P.C., we are

4

EXHIBIT 23
Page 328 of 808

ethically obligated to withdraw as legal counsel to you in the above-referenced patent matter."
On February 13, 2003, the USPTO accepted the request, which Plaintiff alleges in the Complaint
that she learned of on February 16, 2003.

In April 2003, Plaintiff communicated with Schick and claimed not to know the source of
the Firm's conflict of interest. Jensen, after learning about this communication replied, "As we
previously informed you, we can not [*sic*] represent you in connection with your provisional
patent applications because of your threats of legal action against this firm."

On May 5, 2003, the *New York Times* published an article that Plaintiff describes as
"announcing and introducing [Clear Channel Communications, Inc.'s ("Clear Channel")] newest
venture," and describing "Plaintiff's entire confidential business models for the onsite
distribution of live recordings at concerts." The article reported that Clear Channel would begin
selling compact discs of live recordings of concerts at Clear Channel venues "within five minutes
of a show's conclusion," and that Clear Channel described the venture as "a continuation of the
trend among various bands and start-ups in recent years to sell authorized recordings that are
available on CD or as Internet downloads soon after the event." The article quoted various
people in the music industry, including Phish's manager, John Paluska. "Although [Phish's]
experience is not a direct comparison," he illustrated the potential growth of the instant disc
market by noting that Phish had "sold close to $1 million in concert-show downloads over the
Internet since opening the livephish.com site in late December." He observed that "it would not
be easy for Clear Channel to move into the instant-CD sphere" because of "legal issues," an
apparent reference to an earlier observation in the same article that instant discs could pose a
problem for established artists who have contracts with "major labels." In and before 2002,
Clear Channel was Cowan's client as to unrelated matters that did not concern live events.

EXHIBIT 23
Page 329 of 808

According to the Complaint, Defendants and Clear Channel "joint[ly] misappropriate[ed] . . . Plaintiff's trade secrets, confidential business models including those contained in Plaintiff's PPA's."

On April 24, 2009, this Court dismissed the Complaint in its entirety. On February 10, 2012, the Second Circuit affirmed the dismissal, except "to the extent that it dismissed Gurvey's claims for attorney malpractice and breach of fiduciary duty." *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, 462 F. App'x 26, 30 (2d Cir. 2012) (summary order). The Second Circuit held that Plaintiff had pleaded a "plausible claim by alleging that [Defendants] used the information given to them as part of a confidential attorney-client relationship to their own advantage by disclosing it to other clients who then profited therefrom to Gurvey's detriment." *Id*. The Second Circuit noted that "[t]he plausibility of this argument is bolstered by Gurvey's allegation that Cowan withdrew from representing Gurvey before the United States Patent and Trademark Office due to what Cowan allegedly termed a 'conflict of interest.'" *Id*. at n.8.

## II.    LEGAL STANDARD

Summary judgment should be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Proctor v. LeClaire*, 846 F.3d 597, 607 (2d Cir. 2017). There is a genuine dispute "when the evidence is such that, if the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party," and "no rational factfinder could find in favor of the nonmovant." *SEC v. Frohling*, 851 F.3d 132, 136–37 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (affirming summary judgment and the district court's finding that "no rational factfinder could fail to find that Frohling knew" that

6

EXHIBIT 23
Page 330 of 808

opinion letters he issued were false, despite his deposition testimony to the contrary, in light of his admission and documentary evidence illustrating his knowledge). This standard applies "whether summary judgment is granted on the merits or on an affirmative defense such as the statute of limitations." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The movant bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[T]he movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Vill. of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) (citing *Celotex Corp.*, 477 U.S. at 322–23). The burden then shifts to the nonmoving party, who must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The court must construe the evidence and draw all reasonable inferences in favor of the non-moving party. *See Wright*, 831 F.3d at 71–72.

The nonmoving party may not create a triable issue of fact by contradicting factual allegations in the Complaint, *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011), or submitting an affidavit that disputes her own prior sworn testimony, *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014). "The purpose of th[is 'sham issue of fact'] doctrine is clear: '[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.*; *accord Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (explaining that "where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine . . .

7

EXHIBIT 23
Page 331 of 808

whether there are any genuine issues of material fact, without making some assessment of the
plaintiff's account.").

New York law governs the substantive issues arising from the surviving claims of
attorney malpractice and breach of fiduciary duty. "In a diversity action based on attorney
malpractice, state substantive law . . . applies." *Nordwind v. Rowland*, 584 F.3d 420, 429 (2d
Cir. 2009); *accord Henkel v. Wagner*, No. 12 Civ. 4098, 2016 WL 1271062, at *5 (S.D.N.Y.
Mar. 29, 2016). "The parties' briefs assume that [New York] state law governs this case, and
'such implied consent is . . . sufficient to establish the applicable choice of law.'" *Trikona
Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017) (quoting *Arch Ins. Co. v. Precision Stone,
Inc.*, 584 F.3d 33, 39 (2d Cir. 2009)).

## III. DISCUSSION

Defendants move for summary judgment as to Plaintiff's claims for attorney malpractice
and breach of fiduciary duty. The motion is granted on the independent grounds that both claims
are time barred, and that Plaintiff has proffered insufficient evidence from which a reasonable
jury could find in her favor on either claim.

### A. Statutes of Limitations

Plaintiff's claims are dismissed as untimely because they were not filed within the
limitations period applicable to each claim -- three years, plus 228 days during which time the
statutes of limitations were tolled due to Cowan's representation of Plaintiff in connection with
her patent application. The Complaint was filed on February 15, 2006. To be timely, any claim
must have accrued no earlier than three years plus 228 days before that date, or July 2, 2002.
The evidence in the record, construed in Plaintiff's favor as required on this motion, shows that

EXHIBIT 23
Page 332 of 808

any improper disclosure of Plaintiff's information by Cowan occurred no later than April 2002. Accordingly, the claims are time barred.

### 1. Relevant Statutory Period

The surviving claims allege attorney malpractice and breach of fiduciary duty. Each is constrained by a three-year statute of limitations period. Under New York law, an action for attorney malpractice must be filed within three years from the date of accrual. N.Y. C.P.L.R. § 214(6). "For fiduciary duty claims, the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks." *Rohe v. Bertine, Hufnagel, Headley, Zeltner, Drummon & Dohn, LLP*, 160 F. Supp. 3d 542, 548 (S.D.N.Y. 2016) (quoting *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 272 (N.Y. 2009)). Where, as here, Plaintiff seeks money damages, "a three-year statute of limitations similarly applies." *Id.*

Plaintiff argues that a six-year statute of limitations applies to her breach of fiduciary duty claim because "fraud, concealment, sabotage, USPTO false claims as are involved here have a six-year statute of limitations." Plaintiff is correct insofar as "where an allegation of fraud is essential to a breach of fiduciary [duty] claim, courts have applied a six-year statute of limitations under CPLR 213(8)." *Levy v. Young Adult Inst., Inc.*, No. 13 Civ. 2861, 2016 WL 6092705, at *20 (S.D.N.Y. Oct. 18, 2016) (quoting *IDT Corp.*, 907 N.E.2d at 272). The six-year statute of limitations is inapplicable here, however, because the Complaint's allegations of breach of fiduciary duty are not "inextricably bound to a fraud claim." *Id.* The essence of a fraud claim is a knowing misrepresentation of material fact. *See id.* (citing *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 164–65 (1st Dep't 2003)). After the Second Circuit's remand Order, the surviving claims are based on allegations that Defendants "used [Plaintiff's] information given to them as part of a confidential attorney-client relationship to their own advantage by disclosing it

EXHIBIT 23

Page 333 of 808

to other clients." *Gurvey*, 462 F. App'x at 30. As Plaintiff's fiduciary duty claim is based on the alleged misappropriation and wrongful disclosure of Plaintiff's information and not fraud, the three-year -- not the six-year -- statute of limitations applies.

### 2. Tolling of the Statute of Limitations

"'[T]he rule of continuous representation tolls the running of the [s]tatute of [l]imitations on [a] malpractice claim until the ongoing representation is completed.'" *Grace v. Law*, 21 N.E.3d 995, 999 (N.Y. 2014) (quoting *Shumsky v. Eisenstein*, 750 N.E.2d 67, 70 (N.Y. 2001)); *see also Zaref v. Berk & Michaels, P.C.*, 595 N.Y.S.2d 772, 774 (1st Dep't 1993) (noting that "a client cannot reasonably be expected to assess the quality of the professional service while it is still in progress" and finding the continuous representation doctrine applies where "the continuous representation . . . [is] in connection with the particular transaction which is the subject of the action"). Generally, tolling under the continuous representation doctrine "end[s] once the client is informed or otherwise put on notice of the attorney's withdrawal from representation." *Champlin v. Pellegrin*, 974 N.Y.S.2d 379, 380 (1st Dep't 2013) (internal quotation marks omitted and alterations in original). There must be "clear indicia of an ongoing, continuous, developing, and dependent relationship between [plaintiff and defendant] . . . or a mutual understanding of the need for further representation on the specific subject matter[s] underlying the malpractice claim." *Id.* (internal citation and quotation marks omitted and alterations in original). The parties must "explicitly contemplate[] further representation" for tolling to apply. *Williamson ex rel. Lipper Convertibles, L.P. v. PricewaterhouseCoopers LLP*, 872 N.E.2d 842, 847 (N.Y. 2007); *accord Carvel v. Ross*, No. 09 Civ. 0722, 2011 WL 856283, at *13 (S.D.N.Y. Feb. 16, 2011).

EXHIBIT 23
Page 334 of 808

The period for which the statute of limitations period is tolled is, at most, the duration of the attorney-client relationship. Based on the evidence, no reasonable jury could find that Cowan represented Plaintiff before May 10, 2002, or after December 24, 2002 (and likely would find that the engagement ended earlier).

In her May 10, 2002, email Plaintiff asked Jensen for his permission to have the Firm represent her before the USPTO and file her PPA. She offered to pay for attorney Montague's time and legal fees, but also offered to retain outside counsel if Jensen preferred. On the same day, Jensen authorized Montague to make the USPTO filing and instructed him to keep track of his time. Although Plaintiff says that she "may have assumed that Cowan were [her] lawyers" in early 2002, the evidence in the record shows that Plaintiff became an employee of Cowan at that time, not a client. Based on the undisputed evidence, a reasonable jury could find only that Cowan's representation of Plaintiff began on or after May 10, 2002.

Defendants expressly repudiated the attorney-client relationship in June 2002, when Hyman notified Plaintiff that Defendants would no longer assist with her patent filings, and thereafter took no further action on her behalf. Likewise, Plaintiff repudiated the attorney-client relationship, first, on October 12, 2002, when she demanded that Defendants return and destroy all of her files in their possession, and again, on December 24, 2002, when she threatened in writing to sue Defendants. The evidence shows that by December 24, 2002, Plaintiff and Defendants both had unequivocally disavowed the attorney-client relationship.

Plaintiff's unsupported and contradictory statements, including that "Cowan **never** attempted to withdraw from Plaintiff's representation until [as late as] February 20, 2007," are insufficient to create a triable issue. First, the Complaint alleges that Cowan represented Plaintiff through "at least February 2003 and May, 2003" -- not 2007. Plaintiff may not directly

11

EXHIBIT 23
Page 335 of 808

contradict the pleadings to survive a motion for summary judgment, and the Court is entitled to disregard such statements. *See Rojas*, 660 F.3d at 106. Second, Plaintiff has provided no evidence that Defendants represented her after December 2002 (or even June 2002), or to controvert Defendants' evidence that (1) Hyman expressly terminated the attorney-client relationship in June 2002; (2) Plaintiff requested that the Firm send her all of her files and then destroy any copies in October 2002; and (3) Plaintiff threatened to sue Defendants in December 2002.

Plaintiff's own submissions on this motion contradict her argument that Defendants represented her after December 2002. For example, Plaintiff argues that "[D]efendant Jensen admit[ted] that <u>Montague continued to perform patent searches until May 1, 2003</u>." However, Plaintiff's corresponding exhibit -- a letter from Jensen to Plaintiff dated May 1, 2003 -- states that Montague performed a computer database search at some unspecified time in the past; that the search is inconclusive because of information that was unavailable at the time the search was conducted; that "we formally withdrew as your counsel in the Patent Office in January, 2003 and have not represented you in connection with this matter since that date"; and that it is "imperative that [Plaintiff] engage new patent counsel" to meet the looming May 22 and 24 USPTO deadlines. The implication is that the search was conducted before January 2003 and would need to be updated by Plaintiff's new counsel, who should be hired immediately. Nothing in the record suggests that Cowan acted on Plaintiff's behalf after June 2002.

No reasonable fact finder could conclude that the parties contemplated or had a mutual understanding as to Defendants' continuing representation respecting Plaintiff's patent application after December 24, 2002. *See, e.g.*, *De Carlo v. Ratner*, 204 F. Supp. 2d 630, 638 (S.D.N.Y. 2002) (finding plaintiff's legal malpractice claim time barred because the continuing

12

EXHIBIT 23
Page 336 of 808

representation doctrine was inapplicable and where "there [was] a breakdown" in the attorney-client relationship); *Tantleff v. Kestenbaum & Mark*, 15 N.Y.S.3d 840, 843–44 (2d Dep't 2015) (affirming grant of summary judgment on attorney malpractice claim on the ground that the claim was time barred where undisputed facts showed that the representation and tolling had ended). Construing the evidence in Plaintiff's favor, and therefore assuming that Defendants represented Plaintiff no earlier than May 10, 2002, until no later than December 24, 2002, the statutes of limitations were tolled for 228 days, and any claim must have accrued no earlier than July 2, 2002.

### 3. Accrual of Plaintiff's Claims

Causes of action for both attorney malpractice and breach of fiduciary duty accrue on the date of the alleged breach. *Rohe,* 160 F. Supp. 3d at 549. "What is important is when the malpractice was committed, not when the client discovered it." *McCoy v. Feinman*, 785 N.E.2d 714, 718 (N.Y. 2002).

The surviving claims in this action are based on the allegation that Defendants disclosed Plaintiff's confidential information to other clients. *See Gurvey*, 462 F. App'x at 30. The Complaint alleges that Plaintiff suspected Cowan associate Susan Schick of disclosing Plaintiff's confidential information to Phish band member Michael Gordon before or around February 2002. Plaintiff, at her deposition, testified that Gordon confirmed in April 2002 that Schick had disclosed the information. Construing these facts in the light most favorable to Plaintiff, the latest date on which a reasonable jury could find that Plaintiff's claims accrued based on the alleged Phish disclosure was in April 2002.

The Complaint also alleges that Cowan and Clear Channel jointly misappropriated Plaintiff's information. This allegation appears to be based solely on the May 2003 *New York*

13

EXHIBIT 23
Page 337 of 808

*Times* article which reported that Clear Channel was beginning an "instant CD" venture, similar to but not the same as Plaintiff's e-ticketing venture, and described as "a continuation of the trend among various bands and start-ups in recent years to sell authorized recordings that are available on CD or as Internet downloads soon after the event." The article is insufficient to give rise to an inference of improper disclosure by the Firm to Clear Channel. As there is no evidence of any improper disclosure of Plaintiff's information to Clear Channel or any date on which it allegedly occurred, there is no date when Plaintiff's claims based on this alleged disclosure accrued.

Based on an April 2002 accrual date, Plaintiff's claims are barred by the three-year statutes of limitations. Plaintiff filed the Complaint on February 15, 2006. To be timely absent tolling, Plaintiff's claims must have accrued on or after February 15, 2003. Tolling the statutes of limitations for 228 days, the duration of Cowan's representation of Plaintiff, any timely claim must have accrued no earlier than 228 days before February 15, 2003, or July 2, 2002. Plaintiff's claims, which accrued no later than April 2002, are untimely.[1]

### B. Sufficiency of the Evidence

As noted, the surviving claims in this action are based on the allegation that Defendants disclosed Plaintiff's confidential information to other clients. *See Gurvey*, 462 F. App'x at 30. These claims fail as a matter of law also because Plaintiff has not proffered sufficient evidence from which a reasonable jury could find liability or damages.

---

[1] Even if the attorney-client relationship continued until January 3, 2003 (the date on which Defendants withdrew as Plaintiff's counsel before the USPTO) or until February 16, 2003 (the date on which Plaintiff claims to have learned that Defendants withdrew as her counsel before the USPTO), Plaintiff's claims still are untimely. If the attorney-client relationship continued until January 3, 2003 (resulting in a tolling period of 238 days), any timely claim must have accrued no earlier than June 22, 2002. If the relationship continued until February 16, 2003 (resulting in a tolling period of 282 days) any timely claim must have accrued by May 9, 2002.

14

EXHIBIT 23
Page 338 of 808

First, the undisputed evidence shows that Plaintiff's information was not confidential. She shared it at a Firm meeting where she did not take any precautions to prevent its dissemination. The Complaint also states that she shared it with various third parties, and the evidence includes a May 2002 email describing her proposal to a third party. Although the claims are premised on the confidentiality of the information in the PPAs, Plaintiff inexplicably now contends that the PPAs did not include any confidential information or information that would be "of interest to [Defendants'] clients." Lastly, as discussed in detail above, Cowan did not learn Plaintiff's confidential information during the course of a confidential relationship, as the Firm did not yet represent Plaintiff when she initially disclosed it at her employment interview in December 2001, and again at the Firm meeting in February 2002.

Second, Plaintiff has not adduced evidence to show that she entrusted information with Defendants during the course of any attorney-client or other fiduciary relationship, or that Defendants disclosed her information during the course of such a relationship. Both the disclosure by Plaintiff to the Firm, and the Firm's alleged disclosure to Pfish, occurred prior to the commencement of the representation. "Failure to establish an attorney-client relationship prevents a plaintiff from proceeding on a legal malpractice claim." *Case v. Clivilles*, 216 F. Supp. 3d 367, 379 (S.D.N.Y. 2016).

Third, as discussed above, Plaintiff has failed to adduce any evidence that the Firm disclosed her information to Clear Channel. Plaintiff repeatedly testified at her deposition that she does not have specific evidence that any of the individual Defendants actually disclosed her confidential information.

Fourth, Plaintiff has not presented evidence from which a reasonable jury could conclude that she suffered damages that were proximately caused by Defendants' alleged breach. In

EXHIBIT 23
Page 339 of 808

remanding the claims at issue, the Second Circuit cited *Ulico Casualty Co. v Wilson, Elser, Moskowitz, Edelman & Dicker*, 865 N.Y.S.2d 14, 22 (1st Dep't 2008), which held that a plaintiff must establish "but for causation" to recover on either an attorney malpractice claim or a breach of fiduciary duty claim against an attorney; "the plaintiff must establish the 'but for' element of malpractice" -- i.e., that Plaintiff would not have sustained a loss but for the defendant attorney's breach. *See also Reubens v. Mason*, 387 F.3d 183, 189 (2d Cir. 2004). "[M]ere speculation of a loss resulting from an attorney's alleged omissions . . . is insufficient to sustain a claim for legal malpractice." *Gallet, Dreyer & Berkey, LLP v. Basile*, 35 N.Y.S.3d 56, 58 (1st Dep't 2016) (quoting *Markard v. Bloom*, 770 N.Y.S.2d 869, 869 (1st Dep't 2004) (alterations in original). "[S]ummary judgment dismissing the legal malpractice claim has been granted where the asserted damages are vague, unclear, or speculative." *Id.* at 59.

There is no evidence in the record, expert or otherwise, that Plaintiff's venture would have been commercially successful but for any alleged conduct of Defendants, or that she would not have suffered any other actual damages but for the alleged improper disclosures. *See id.* at 58–59 (affirming summary judgment on malpractice claim because damages were purely speculative); *see also Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 212 (S.D.N.Y. 2010) (noting that "[e]xpert testimony is sometimes required to establish . . . whether the negligence proximately caused any injury to the plaintiff-client"); *O'Shea v. Brennan*, No. 02 Civ. 3396, 2004 WL 583766, at *14 (S.D.N.Y. Mar. 23, 2004) (granting summary judgment as to legal malpractice claim because "without expert testimony, it is unlikely that a jury could conclude whether, but for O'Shea's failure to file timely, [plaintiff] would have been successful in a defamation action in New York, had such an action been commenced").

EXHIBIT 23
Page 340 of 808

Plaintiff erroneously argues that "in the event an attorney breaches his duty of loyalty, the client, as a matter of law, is not required to meet the higher standard of pleading and proving causation; but rather, must demonstrate only that the breach or conflict of interest was a substantial factor in bringing about its loss." The cases on which Plaintiff relies are inapposite or do not stand for the propositions for which she cites them. *See, e.g.*, *Ulico Cas. Co.*, 865 N.Y.S.2d at 22 ("[T]he plaintiff must establish the 'but for' element of malpractice"); *Schneider v. Wien & Malkin LLP*, No. 601363/02, 2004 WL 2495843, at *17 n.10 (N.Y. Sup. Ct. Nov. 1, 2004) ("The more rigorous 'but for' standard of causation will be applied where a breach of fiduciary claim against an attorney is premised on allegations of legal malpractice"); *Estate of Re v. Kornstein Veisz & Wexler*, 958 F. Supp. 907, 924 (S.D.N.Y. 1997) ("[T]o recover for legal malpractice, it must be shown not only that the attorney was negligent, but also that 'but for' the attorney's negligence the plaintiff would have prevailed in the underlying action.").

Because the evidence is insufficient to create any genuine issue of material fact as to Defendants' liability or Plaintiff's alleged damages, summary judgment is granted on this basis in addition to the expiration of the statutes of limitations.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED, and Plaintiff's cross-motions are DENIED. Any of Plaintiff's claims or arguments not addressed herein have been considered and rejected. The Clerk of Court is directed to close the motion at Docket No. 375 and close this case.

Dated: July 6, 2017
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

EXHIBIT 23
Page 341 of 808

EXHIBIT 24

EXHIBIT 24

Case 2:23-cv-04381-MEMF-E   Document 22-4   Filed 09/08/23   Page 35 of 132   Page
Case 1:06-cv-01202-LGS-HBP   Document 410   Filed 07/07/17   Page 1 of 1
ID #:741

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED: 07/07/2017 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                :
AMY R. GURVEY,                                  :
                              Plaintiff,        :
                                                :          06 Civ. 1202 (LGS)
            -against-                           :
                                                :          OPINION AND ORDER
COWAN, LIEBOWITZ & LATMAN, P.C., et al.,:
                              Defendants. :
------------------------------------------------------------:
                                                X

LORNA G. SCHOFIELD, District Judge:

It is hereby **ORDERED** that pro se Plaintiff Amy R. Gurvey shall not call or contact

Chambers directly, but instead shall communicate with the Court solely through the Pro Se

Office.

Plaintiff is reminded that, per the Order dated September 17, 2015, "Plaintiff will receive

the balance of the funds she deposited [with the Court], if any, after this case is closed and all

appeals have been exhausted."

If Plaintiff requires further assistance, she may contact the Legal Assistance Clinic, which

is a free legal clinic staffed by attorneys and paralegals to assist those who are representing

themselves in civil lawsuits in the Southern District of New York. Additional information about

the Legal Assistance Clinic is available on the Southern District of New York's website:

http://www.nysd.uscourts.gov/prose?clinic.

New York, New York
July 7, 2017

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

EXHIBIT 24
Page 343 of 808

EXHIBIT 25

EXHIBIT 25

**General Docket**
**Court of Appeals, 2nd Circuit**

| | |
|---|---|
| **Court of Appeals Docket #:** 17-2760 | **Docketed:** 09/05/2017 |
| **Nature of Suit:** 4190 CONTRACT-Other Contract Action | **Termed:** 12/04/2018 |
| Gurvey v. Cowan, Liebowitz & Latman, PC | |
| **Appeal From:** SDNY (NEW YORK CITY) | |
| **Fee Status:** Paid | |

**Case Type Information:**
    **1)** Civil
    **2)** Private
    **3)** -

**Originating Court Information:**
    **District:** 0208-1 : 06-cv-1202
    **Trial Judge:** Lorna G. Schofield, U.S. District Judge
    **Trial Judge:** Henry B. Pitman, U.S. Magistrate Judge
    **Date Filed:** 02/15/2006

| | |
|---|---|
| **Date Order/Judgment:** | **Date NOA Filed:** |
| 08/09/2017 | 09/01/2017 |

**Prior Cases:**

| | | | |
|---|---|---|---|
| 09-2185 | **Date Filed:** 05/22/2009 | **Date Disposed:** 02/10/2012 | **Disposition:** FRAP procedural without judici |
| 10-3698 | **Date Filed:** 09/15/2010 | **Date Disposed:** 12/28/2010 | **Disposition:** Original Proceedings denied |
| 10-4111 | **Date Filed:** 10/08/2010 | **Date Disposed:** 02/10/2012 | **Disposition:** Affirmed In Part and Rev Vac In Part |
| 14-960 | **Date Filed:** 03/27/2014 | **Date Disposed:** 04/15/2015 | **Disposition:** Dismissed/frivolous |
| 15-285 | **Date Filed:** 02/02/2015 | **Date Disposed:** 04/15/2015 | **Disposition:** Dismissed/frivolous |
| 15-2703 | **Date Filed:** 08/24/2015 | **Date Disposed:** 10/05/2015 | **Disposition:** FRAP 42 P Stipulation with prejudice |
| 15-2724 | **Date Filed:** 08/25/2015 | **Date Disposed:** 11/30/2015 | **Disposition:** Original Proceedings denied |
| 15-3049 | **Date Filed:** 09/29/2015 | **Date Disposed:** 11/30/2015 | **Disposition:** Dismissed/frivolous |

**Current Cases:**
    None

**Panel Assignment:**    Not available

| | |
|---|---|
| Amy R. Gurvey | Amy R. Gurvey, - |
|     Plaintiff - Appellant | Direct: 917-733-9981 |
| | [NTC Pro Se] |
| | 315 Highland Avenue |
| | Upper Montclair, NJ 07043 |
| | |
| | Amy Rebecca Gurvey, - |
| | Direct: 917-733-9981 |
| | [COR NTC Attorney, Pro se] |
| | 315 Highland Avenue |
| | Upper Montclair, NJ 07043 |
| ------------------------------ | |
| Cowan, Liebowitz and Lathman, P.C. | J. Richard Supple, - |
|     Defendant - Appellee | [COR NTC Retained] |
| | Hinshaw & Culbertson LLP |
| | 800 Third Avenue, 13th Floor |
| | New York, NY 10022 |
| | |
| Clear Channel Communications, Inc. | J. Richard Supple, - |
|     Defendant - Appellee | [COR NTC Retained] |
| | (see above) |
| | |
| Live Nation, Inc. | J. Richard Supple, - |
|     Defendant - Appellee | [COR NTC Retained] |
| | (see above) |
| | |
| Instant Live Concerts, LLC | J. Richard Supple, - |
|     Defendant - Appellee | [COR NTC Retained] |
| | (see above) |

EXHIBIT 25
Page 345 of 808

Nexticketing, Incorporated
    Defendant - Appellee

J. Richard Supple, -
[COR NTC Retained]
(see above)

William Borchard
    Defendant - Appellee

J. Richard Supple, -
[COR NTC Retained]
(see above)

Midge Hyman
    Defendant - Appellee

J. Richard Supple, -
[COR NTC Retained]
(see above)

Baila Celedonia
    Defendant - Appellee

J. Richard Supple, -
[COR NTC Retained]
(see above)

Christopher Jensen
    Defendant - Appellee

J. Richard Supple, -
[COR NTC Retained]
(see above)

Dale Head
    Defendant - Appellee

J. Richard Supple, -
[COR NTC Retained]
(see above)

Steve Simon
    Defendant - Appellee

J. Richard Supple, -
[COR NTC Retained]
(see above)

Nicole Ann Gordon
    Defendant - Appellee

J. Richard Supple, -
[COR NTC Retained]
(see above)

Susan Schick
    Defendant - Appellee

J. Richard Supple, -
[COR NTC Retained]
(see above)

Does, 1-X Inclusive
    Defendant

Michael Gordon
    Defendant

Amy Rebecca Gurvey,

      Plaintiff - Appellant,

v.

Cowan, Liebowitz & Latman, P.C., Clear Channel Communications, Inc., Live Nation, Inc., Instant Live Concerts, LLC, Nexticketing, Incorporated, William Borchard, Midge Hyman, Baila Celedonia, Christopher Jensen, Dale Head, Steve Simon, Nicole Ann Gordon, Susan Schick,

      Defendants - Appellees,

Does, 1-X Inclusive, Michael Gordon,

      Defendants.

EXHIBIT 25
Page 347 of 808

3/13

| Date | Doc | Description |
|---|---|---|
| 09/05/2017 | ☐ 1 <br> 93 pg, 1.83 MB | NOTICE OF CIVIL APPEAL, with district court docket, on behalf of Appellant Amy Rebecca Gurvey, FILED. [2117145] [17-2760] [Entered: 09/05/2017 03:55 PM] |
| 09/05/2017 | ☐ 2 <br> 3 pg, 200.9 KB | DISTRICT COURT ORDER, dated 08/09/2017, RECEIVED.[2117149] [17-2760] [Entered: 09/05/2017 03:57 PM] |
| 09/05/2017 | ☐ 3 <br> 1 pg, 35.92 KB | DISTRICT COURT MEMO ENDORSEMENT, dated 08/09/2017, RECEIVED.[2117150] [17-2760] [Entered: 09/05/2017 03:58 PM] |
| 09/05/2017 | ☐ 4 <br> 1 pg, 45.98 KB | PAYMENT OF DOCKETING FEE, on behalf of Appellant Amy Rebecca Gurvey, USCA receipt # 465401189944, FILED.[2117152] [17-2760] [Entered: 09/05/2017 03:58 PM] |
| 09/05/2017 | ☐ 5 <br> 56 pg, 289.64 KB | ELECTRONIC INDEX, in lieu of record, FILED.[2117154] [17-2760] [Entered: 09/05/2017 03:59 PM] |
| 09/05/2017 | ☐ 9 | NON-ADMITTED ATTORNEY, Party Amy Rebecca Gurvey, orally informed to apply for admission forthwith and submit Addendum A to Notice of Appearance, NOTIFIED.[2117237] [17-2760] [Entered: 09/05/2017 04:32 PM] |
| 09/20/2017 | ☐ 10 <br> 1 pg, 36.86 KB | ORDER, dated 09/20/2017, dismissing appeal by 10/04/2017, unless Appellant Amy Rebecca Gurvey submits Form C and D, FILED.[2129496] [17-2760] [Entered: 09/20/2017 12:55 PM] |
| 09/20/2017 | ☐ 11 <br> 1 pg, 36.83 KB | ORDER, dated 09/20/2017, dismissing appeal by 10/04/2017, unless Appellant Amy Rebecca Gurvey submits acknowledgment and notice of appearance, FILED.[2129499] [17-2760] [Entered: 09/20/2017 12:58 PM] |
| 09/20/2017 | ☐ 12 <br> 1 pg, 9.68 KB | NOTICE, to Appellee William Borchard, Baila Celedonia, Clear Channel Communications, Inc., Cowan, Liebowitz & Lathman, PC, Nicole Ann Gordon, Dale Head, Midge Hyman, Instant Live Concerts, LLC, Christopher Jensen, Live Nation, Inc., Nexticketing, Incorporated, Susan Schick and Steve Simon , for failure to file an appearance, SENT.[2129508] [17-2760] [Entered: 09/20/2017 01:01 PM] |
| 09/20/2017 | ☐ 13 | ACKNOWLEDGMENT AND NOTICE OF APPEARANCE, on behalf of Appellee William Borchard, Baila Celedonia, Clear Channel Communications, Inc., Cowan, Liebowitz & Lathman, PC, Nicole Ann Gordon, Dale Head, Midge Hyman, Instant Live Concerts, LLC, Christopher Jensen, Live Nation, Inc., Nexticketing, Incorporated, Susan Schick and Steve Simon, FILED. Service date 09/20/2017 by CM/ECF. [2129685] [17-2760] [Entered: 09/20/2017 03:15 PM] |
| 09/20/2017 | ☐ 14 <br> 2 pg, 17.93 KB | DEFECTIVE DOCUMENT, ACKNOWLEDGMENT AND NOTICE OF APPEARANCE, [13], on behalf of Appellee William Borchard, Baila Celedonia, Clear Channel Communications, Inc., Cowan, Liebowitz & Lathman, PC, Nicole Ann Gordon, Dale Head, Midge Hyman, Instant Live Concerts, LLC, Christopher Jensen, Live Nation, Inc., Nexticketing, Incorporated, Susan Schick and Steve Simon, FILED.[2129757] [17-2760] [Entered: 09/20/2017 03:51 PM] |
| 09/20/2017 | ☐ 15 | ACKNOWLEDGMENT AND NOTICE OF APPEARANCE, on behalf of Appellee William Borchard, Baila Celedonia, Clear Channel Communications, Inc., Cowan, Liebowitz & Lathman, PC, Nicole Ann Gordon, Dale Head, Midge Hyman, Instant Live Concerts, LLC, Christopher Jensen, Live Nation, Inc., Nexticketing, Incorporated, Susan Schick and Steve Simon, FILED. Service date 09/20/2017 by CM/ECF. [2129794] [17-2760] [Entered: 09/20/2017 04:05 PM] |
| 09/20/2017 | ☐ 16 <br> 2 pg, 17.96 KB | DEFECTIVE DOCUMENT,ACKNOWLEDGMENT AND NOTICE OF APPEARANCE, [15], on behalf of Appellee William Borchard, Baila Celedonia, Clear Channel Communications, Inc., Cowan, Liebowitz & Lathman, PC, Nicole Ann Gordon, Dale Head, Midge Hyman, Instant Live Concerts, LLC, Christopher Jensen, Live Nation, Inc., Nexticketing, Incorporated, Susan Schick and Steve Simon, FILED.[2129808] [17-2760] [Entered: 09/20/2017 04:11 PM] |
| 09/20/2017 | ☐ 17 <br> 1 pg, 36.31 KB | ACKNOWLEDGMENT AND NOTICE OF APPEARANCE, on behalf of Appellee William Borchard, Baila Celedonia, Cowan, Liebowitz & Lathman, PC, Midge Hyman and Christopher Jensen, FILED. Service date 09/20/2017 by CM/ECF.[2129937] [17-2760] [Entered: 09/20/2017 05:38 PM] |
| 09/21/2017 | ☐ 18 | CURED DEFECTIVE, ACKNOWLEDGMENT AND NOTICE OF APPEARANCE, [17], on behalf of Appellee William Borchard, Baila Celedonia, Cowan, Liebowitz & Lathman, PC, Midge Hyman and Christopher Jensen, FILED.[2130477] [17-2760] [Entered: 09/21/2017 12:06 PM] |
| 10/04/2017 | ☐ 25 <br> 366 pg, 9.86 MB | FORM C, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 10/04/2017 by US mail. [2143411] [17-2760] [Entered: 10/10/2017 12:55 PM] |
| 10/04/2017 | ☐ 26 <br> 2 pg, 67.79 KB | FORM D-P, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 10/04/2017 by US mail. [2143417] [17-2760] [Entered: 10/10/2017 12:59 PM] |
| 10/06/2017 | ☐ 21 | ORDER, [10] appeal dismissed for appellant/petitioner Appellant Amy Rebecca Gurvey failure to file forms, C & D, EFFECTIVE. [2141932] [17-2760] [Entered: 10/06/2017 10:15 AM] |
| 10/06/2017 | ☐ 22 <br> 1 pg, 24.57 KB | ORDER, vacating dismissal order dated 09/20/2017, FILED.[2142103] [17-2760] [Entered: 10/06/2017 11:29 AM] |

EXHIBIT 25
Page 348 of 808

| | | |
|---|---|---|
| 10/11/2017 | ☐ 28<br>3 pg, 224.37 KB | LETTER, dated 10/09/2017, on behalf of Appellant Amy Rebecca Gurvey, Informing the court she is a pro se litigant inventor for this appeal, RECEIVED. Service date 10/11/2017 by US mail.[2145749] [17-2760] [Entered: 10/12/2017 11:10 AM] |
| 10/19/2017 | ☐ 31<br>3 pg, 63.71 KB | ACKNOWLEDGMENT AND NOTICE OF APPEARANCE, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 10/19/2017 by CM/ECF.[2152212] [17-2760] [Entered: 10/19/2017 04:30 PM] |
| 10/27/2017 | ☐ 34<br>1 pg, 9.17 KB | NEW CASE MANAGER, Khadijah Young, ASSIGNED.[2158270] [17-2760] [Entered: 10/27/2017 10:07 AM] |
| 11/01/2017 | ☐ 37 | LETTER, on behalf of Appellant Amy Rebecca Gurvey, dated 11/01/2017 in re: transcripts RECEIVED. Service date 11/01/2017 by CM/ECF.[2162130] [17-2760]--Edited 11/01/2017 by KY] [Entered: 11/01/2017 03:00 PM] |
| 11/01/2017 | ☐ 38<br>2 pg, 17.34 KB | DEFECTIVE DOCUMENT, letter, [37], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2162339] [17-2760] [Entered: 11/01/2017 04:32 PM] |
| 11/01/2017 | ☐ 39<br>2 pg, 250.66 KB | TRANSCRIPT STATUS UPDATE LETTER, dated 11/01/2017, on behalf of Appellant Amy Rebecca Gurvey , informing court of transcript delays, RECEIVED. Service date 11/01/2017 by CM/ECF.[2162391] [17-2760] [Entered: 11/01/2017 05:06 PM] |
| 11/02/2017 | ☐ 40 | CURED DEFECTIVE letter [39], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2162712] [17-2760] [Entered: 11/02/2017 10:01 AM] |
| 11/28/2017 | ☐ 42<br>3 pg, 332.26 KB | TRANSCRIPT STATUS UPDATE LETTER, dated 11/28/2017, on behalf of Appellant Amy Rebecca Gurvey , informing court of transcript delays, RECEIVED. Service date 11/28/2017 by CM/ECF.[2181001] [17-2760] [Entered: 11/28/2017 01:33 PM] |
| 11/30/2017 | ☐ 43 | MOTION, to supplement record on appeal, to disqualify attorney, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 11/30/2017 by CM/ECF. [2183513] [17-2760] [Entered: 11/30/2017 01:23 PM] |
| 11/30/2017 | ☐ 44<br>2 pg, 17.35 KB | DEFECTIVE DOCUMENT, motion to supplement record on appeal, to disqualify attorney, [43],[43], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2183715] [17-2760] [Entered: 11/30/2017 03:08 PM] |
| 12/01/2017 | ☐ 45 | MOTION, to supplement record on appeal, to disqualify attorney, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 12/01/2017 by CM/ECF.[2184250] [17-2760] [Entered: 12/01/2017 09:45 AM] |
| 12/01/2017 | ☐ 46<br>2 pg, 17.46 KB | DEFECTIVE DOCUMENT, motion to supplement record on appeal, to disqualify attorney, [45],[45], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2184380] [17-2760] [Entered: 12/01/2017 10:31 AM] |
| 12/02/2017 | ☐ 47<br>141 pg, 5.3 MB | MOTION, to supplement record on appeal, to disqualify attorney, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 12/02/2017 by CM/ECF. [2185253] [17-2760] [Entered: 12/02/2017 08:25 AM] |
| 12/04/2017 | ☐ 48 | CURED DEFECTIVE motion to supplement record on appeal, to disqualify attorney, [47],[47], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2185345] [17-2760] [Entered: 12/04/2017 09:46 AM] |
| 12/11/2017 | ☐ 55<br>24 pg, 899.19 KB | OPPOSITION TO MOTION, [47], [47], [45], [45], [43], [43], on behalf of Appellee William Borchard, Cowan, Liebowitz & Lathman, PC, Midge Hyman, Baila Celedonia and Christopher Jensen, FILED. Service date 12/11/2017 by CM/ECF. [2191478] [17-2760]--Edited 12/15/2017 by KY] [Entered: 12/11/2017 02:44 PM] |
| 01/02/2018 | ☐ 64<br>2 pg, 306.46 KB | TRANSCRIPT STATUS UPDATE LETTER, dated 12/30/2017, on behalf of Appellant Amy Rebecca Gurvey , informing court of transcript delays, RECEIVED. Service date 01/02/2018 by CM/ECF.[2204805] [17-2760] [Entered: 01/02/2018 07:08 PM] |
| 02/16/2018 | ☐ 68<br>29 pg, 929.03 KB | TRANSCRIPT STATUS UPDATE LETTER, dated 02/14/2018, on behalf of Appellant Amy Rebecca Gurvey , informing court of transcript delays, RECEIVED. Service date 02/16/2018 by CM/ECF.[2238106] [17-2760] [Entered: 02/16/2018 01:18 PM] |
| 02/21/2018 | ☐ 69<br>1 pg, 91.42 KB | LETTER, on behalf of Appellee Cowan, Liebowitz & Lathman, PC, dated 02/21/2018 in re: briefing schedule RECEIVED. Service date 02/21/2018 by US mail.[2240501] [17-2760]--Edited 02/21/2018 by KY] [Entered: 02/21/2018 03:14 PM] |
| 02/22/2018 | ☐ 72<br>7 pg, 239.98 KB | TRANSCRIPT STATUS UPDATE LETTER, dated 02/22/2018, on behalf of Appellant Amy Rebecca Gurvey , informing court of transcript delays, RECEIVED. Service date 02/22/2018 by CM/ECF.[2241485] [17-2760] [Entered: 02/22/2018 02:38 PM] |
| 02/23/2018 | ☐ 74<br>1 pg, 62.46 KB | ORDER, dated 02/23/2018, setting 04/04/2018 due date for Appellant's brief and appendix, copy to pro se, FILED.[2242479] [17-2760] [Entered: 02/23/2018 11:55 AM] |
| 03/07/2018 | ☐ 75<br>2 pg, 41.02 KB | TRANSCRIPT STATUS UPDATE LETTER, dated 03/07/2018, on behalf of Appellant Amy Rebecca Gurvey , informing court of transcript delays, RECEIVED. Service date 03/07/2018 by CM/ECF.[2251496] [17-2760] [Entered: 03/07/2018 04:02 PM] |

| | | |
|---|---|---|
| 03/07/2018 | ☐ 76 | MOTION, to extend time, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 03/07/2018 by CM/ECF. [2251498] [17-2760] [Entered: 03/07/2018 04:05 PM] |
| 03/08/2018 | ☐ 77<br>2 pg, 18.56 KB | DEFECTIVE DOCUMENT, motion to extend time, [76], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2251621] [17-2760] [Entered: 03/08/2018 09:04 AM] |
| 03/08/2018 | ☐ 79<br>1 pg, 86.77 KB | TRANSCRIPT STATUS UPDATE LETTER, dated 03/08/2018, on behalf of Appellant Amy Rebecca Gurvey , informing court of transcript delays, RECEIVED. Service date 03/08/2018 by CM/ECF.[2251915] [17-2760] [Entered: 03/08/2018 11:11 AM] |
| 03/09/2018 | ☐ 80<br>1 pg, 88.42 KB | TRANSCRIPT STATUS UPDATE LETTER, dated 03/09/2018, on behalf of Appellant Amy Rebecca Gurvey, informing court of transcript delays, RECEIVED. Service date 03/09/2018 by CM/ECF.[2253879] [17-2760] [Entered: 03/09/2018 04:50 PM] |
| 03/10/2018 | ☐ 81<br>178 pg, 12.88 MB | MOTION, to certify question, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 03/10/2018 by CM/ECF. [2253966] [17-2760] [Entered: 03/10/2018 05:54 PM] |
| 03/12/2018 | ☐ 82 | CURED DEFECTIVE Motion to extend time, [81], on behalf of Appellant Amy Rebecca Gurvey, FILED. [2254112] [17-2760] [Entered: 03/12/2018 09:42 AM] |
| 03/12/2018 | ☐ 84<br>1401 pg, 12.47 MB | TRANSCRIPT STATUS UPDATE LETTER, dated 03/12/2018, on behalf of Appellant Amy Rebecca Gurvey, informing court of transcript delays, RECEIVED. Service date 03/12/2018 by CM/ECF.[2254143] [17-2760] [Entered: 03/12/2018 10:01 AM] |
| 03/12/2018 | ☐ 87 | OPPOSITION TO MOTION, [76], on behalf of Appellee Cowan, Liebowitz & Lathman, PC, FILED. Service date 03/12/2018 by CM/ECF. [2254840] [17-2760] [Entered: 03/12/2018 03:55 PM] |
| 03/12/2018 | ☐ 88<br>2 pg, 17.4 KB | DEFECTIVE DOCUMENT, Opposition to Motion, [87], on behalf of Appellee Cowan, Liebowitz & Lathman, PC, FILED.[2254870] [17-2760] [Entered: 03/12/2018 04:04 PM] |
| 03/12/2018 | ☐ 89<br>35 pg, 1.67 MB | OPPOSITION TO MOTION, [76], on behalf of Appellee Cowan, Liebowitz & Lathman, PC, FILED. Service date 03/12/2018 by CM/ECF. [2254958] [17-2760] [Entered: 03/12/2018 04:34 PM] |
| 03/13/2018 | ☐ 90 | CURED DEFECTIVE Opposition to Motion, [89], on behalf of Appellee Cowan, Liebowitz & Lathman, PC, FILED.[2255236] [17-2760] [Entered: 03/13/2018 10:07 AM] |
| 03/14/2018 | ☐ 95<br>1 pg, 60.46 KB | MOTION ORDER, denying Appellant's motion to extend time to file the brief and appendix, by RKW, FILED. [2256958][95] [17-2760] [Entered: 03/14/2018 03:19 PM] |
| 03/14/2018 | ☐ 96<br>36 pg, 1.71 MB | MOTION, to impose sanction, on behalf of Appellee Cowan, Liebowitz & Lathman, PC, FILED. Service date 03/14/2018 by CM/ECF. [2257216] [17-2760] [Entered: 03/14/2018 07:26 PM] |
| 03/15/2018 | ☐ 100 | SUPPLEMENTARY PAPERS TO MOTION [96], on behalf of Appellee Cowan, Liebowitz & Lathman, PC, FILED. Service date 03/15/2018 by CM/ECF.[2257551][100] [17-2760] [Entered: 03/15/2018 10:53 AM] |
| 03/15/2018 | ☐ 101<br>5 pg, 155.87 KB | SUPPLEMENTARY PAPERS TO MOTION [96], on behalf of Appellee Cowan, Liebowitz & Lathman, PC, FILED. Service date 03/15/2018 by CM/ECF.[2257578][101] [17-2760] [Entered: 03/15/2018 11:06 AM] |
| 03/15/2018 | ☐ 102<br>2 pg, 17.27 KB | DEFECTIVE DOCUMENT, supplementary papers to motion, [100], on behalf of Appellee Cowan, Liebowitz & Lathman, PC, FILED.[2257593] [17-2760] [Entered: 03/15/2018 11:13 AM] |
| 03/15/2018 | ☐ 103 | CURED DEFECTIVE supplementary papers to motion, [101], on behalf of Appellee Cowan, Liebowitz & Lathman, PC, FILED.[2257597] [17-2760] [Entered: 03/15/2018 11:18 AM] |
| 03/16/2018 | ☐ 107<br>47 pg, 2.47 MB | REPLY TO OPPOSITION [89], [87], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 03/16/2018 by CM/ECF.[2259158][107] [17-2760] [Entered: 03/16/2018 07:49 PM] |
| 03/19/2018 | ☐ 108<br>90 pg, 2.85 MB | OPPOSITION TO MOTION, [96], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 03/16/2018 by CM/ECF. [2259504] [17-2760] [Entered: 03/19/2018 11:02 AM] |
| 03/19/2018 | ☐ 110 | STAY STATUS UPDATE LETTER, dated 03/19/2018, on behalf of Appellant Amy Rebecca Gurvey, dated 03/19/2018 in re: exhibits, RECEIVED. Service date 03/19/2018 by CM/ECF.[2259579] [17-2760]--[Edited 03/22/2018 by KY] [Entered: 03/19/2018 11:30 AM] |
| 03/21/2018 | ☐ 113<br>2 pg, 17.3 KB | DEFECTIVE DOCUMENT, letter, [110], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2261806] [17-2760] [Entered: 03/21/2018 01:37 PM] |
| 03/21/2018 | ☐ 114<br>5 pg, 188.74 KB | LETTER, on behalf of Appellant Amy Rebecca Gurvey, dated 03/19/2018 in re: exhibits RECEIVED. Service date 03/19/2018 by CM/ECF.[2261842] [17-2760]--[Edited 03/22/2018 by KY] [Entered: 03/21/2018 04:08 PM] |
| 03/22/2018 | ☐ 115 | CURED DEFECTIVE letter, [114], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2262645] [17-2760] [Entered: 03/22/2018 03:24 PM] |
| 03/26/2018 | ☐ 117 | LETTER, on behalf of Appellant Amy Rebecca Gurvey, in re: support to Motion to certify RECEIVED. Service date 03/25/2018 by CM/ECF.[2264043] [17-2760]--[Edited 03/26/2018 by KY] [Entered: 03/26/2018 12:54 AM] |

| 03/26/2018 | ☐ 118 | MOTION, to impose sanction, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 03/25/2018 by CM/ECF. [2264044] [17-2760] [Entered: 03/26/2018 01:10 AM] |
| 03/26/2018 | ☐ 119<br>2 pg, 17.51 KB | DEFECTIVE DOCUMENT, letter and motion to impose sanction, [118], [117], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2264277] [17-2760] [Entered: 03/26/2018 11:03 AM] |
| 03/26/2018 | ☐ 120<br>1 pg, 37.78 KB | LETTER, on behalf of Appellee Cowan, Liebowitz & Lathman, PC, dated 03/26/2018 in re: response to Appellant's latest correspondence, RECEIVED. Service date 03/26/2018 by CM/ECF. [2264299] [17-2760]--[Edited 03/26/2018 by KY] [Entered: 03/26/2018 11:14 AM] |
| 03/26/2018 | ☐ 121 | SUPPLEMENTARY PAPERS TO WRIT [81], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 03/25/2018 by CM/ECF.[2264464][121] [17-2760] [Entered: 03/26/2018 12:34 PM] |
| 03/26/2018 | ☐ 122<br>2 pg, 17.5 KB | DEFECTIVE DOCUMENT, Supplementary Papers to Writ, [121], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2264556] [17-2760] [Entered: 03/26/2018 01:48 PM] |
| 03/26/2018 | ☐ 123 | SUPPLEMENTARY PAPERS TO WRIT [81], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 03/25/2018 by CM/ECF.[2265033][123] [17-2760] [Entered: 03/26/2018 06:20 PM] |
| 03/28/2018 | ☐ 124 | SUPPLEMENTARY PAPERS TO WRIT [81], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 03/28/2018 by CM/ECF.[2266168][124] [17-2760] [Entered: 03/28/2018 07:56 AM] |
| 03/28/2018 | ☐ 125<br>2 pg, 18.9 KB | DEFECTIVE DOCUMENT, Supplementary Papers to Motion, [124], [123], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2266210] [17-2760] [Entered: 03/28/2018 08:56 AM] |
| 03/28/2018 | ☐ 126 | SUPPLEMENTARY PAPERS TO WRIT [81], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 03/28/2018 by CM/ECF.[2266351][126] [17-2760] [Entered: 03/28/2018 10:17 AM] |
| 03/29/2018 | ☐ 128<br>24 pg, 1.35 MB | SUPPLEMENTARY PAPERS TO MOTION [81], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 03/29/2018 by CM/ECF.[2267308][128] [17-2760] [Entered: 03/29/2018 10:08 AM] |
| 03/29/2018 | ☐ 129<br>2 pg, 17.29 KB | DEFECTIVE DOCUMENT, Supplementary Papers to Motion, [126], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2267318] [17-2760] [Entered: 03/29/2018 10:13 AM] |
| 03/29/2018 | ☐ 130 | CURED DEFECTIVE Supplementary Papers to Motion, [128], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2267326] [17-2760] [Entered: 03/29/2018 10:17 AM] |
| 04/04/2018 | ☐ 135 | BRIEF, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 04/04/2018 by CM/ECF. [2271069] [17-2760] [Entered: 04/04/2018 07:45 AM] |
| 04/04/2018 | ☐ 136 | APPENDIX, volume 1 of 3, (pp. 1-105), on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 04/04/2018 by CM/ECF.[2272320] [17-2760] [Entered: 04/04/2018 11:07 PM] |
| 04/04/2018 | ☐ 137 | APPENDIX, volume 2 of 3, (pp. 1-183), on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 04/04/2018 by CM/ECF.[2272322] [17-2760] [Entered: 04/04/2018 11:14 PM] |
| 04/04/2018 | ☐ 138 | APPENDIX, volume 3 of 3, (pp. 1-250), on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 04/04/2018 by CM/ECF.[2272323] [17-2760] [Entered: 04/04/2018 11:23 PM] |
| 04/05/2018 | ☐ 139<br>2 pg, 17.92 KB | DEFECTIVE DOCUMENT, Brief and Appendix volumes 1-3, [138], [137], [136], [135], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2272459] [17-2760] [Entered: 04/05/2018 10:01 AM] |
| 04/09/2018 | ☐ 140 | BRIEF & APPENDIX, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 04/09/2018 by CM/ECF. [2274716] [17-2760] [Entered: 04/09/2018 12:50 PM] |
| 04/09/2018 | ☐ 141<br>2 pg, 17.95 KB | DEFECTIVE DOCUMENT, Brief & Appendix, [140], on behalf of Appellant Amy Rebecca Gurvey, FILED. [2275121] [17-2760] [Entered: 04/09/2018 04:43 PM] |
| 04/09/2018 | ☐ 142<br>52 pg, 337.47 KB | BRIEF, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 04/09/2018 by CM/ECF. [2275207] [17-2760] [Entered: 04/09/2018 06:11 PM] |
| 04/09/2018 | ☐ 143<br>272 pg, 11.65 MB | APPENDIX, volume 1 of 2, (pp. 1-265), on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 04/09/2018 by CM/ECF.[2275209] [17-2760] [Entered: 04/09/2018 06:14 PM] |
| 04/09/2018 | ☐ 144<br>268 pg, 8.76 MB | APPENDIX, volume 2 of 2, (pp. 266-526), on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 04/09/2018 by CM/ECF.[2275210] [17-2760] [Entered: 04/09/2018 06:15 PM] |
| 04/09/2018 | ☐ 145<br>156 pg, 5.96 MB | SPECIAL APPENDIX, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 04/09/2018 by CM/ECF.[2275212] [17-2760] [Entered: 04/09/2018 06:18 PM] |
| 04/11/2018 | ☐ 146<br>1 pg, 23.92 KB | LR 31.2 SCHEDULING NOTIFICATION, on behalf of Appellee Cowan, Liebowitz & Lathman, PC, informing Court of proposed due date 06/11/2018, RECEIVED. Service date 04/11/2018 by CM/ECF. [2276401] [17-2760] [Entered: 04/11/2018 09:35 AM] |
| 04/11/2018 | ☐ 150 | CURED DEFECTIVE Brief and Appendix volumes 1-3, [145], [144], [143], [142], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2277085] [17-2760] [Entered: 04/11/2018 04:14 PM] |

EXHIBIT 25
Page 351 of 808

| | | |
|---|---|---|
| 04/11/2018 | ☐ 153<br>1 pg, 39.28 KB | SO-ORDERED SCHEDULING NOTIFICATION, setting Appellee William Borchard, Baila Celedonia, Clear Channel Communications, Inc., Cowan, Liebowitz & Lathman, PC, Nicole Ann Gordon, Dale Head, Midge Hyman, Instant Live Concerts, LLC, Christopher Jensen, Live Nation, Inc., Nexticketing, Incorporated, Susan Schick and Steve Simon Brief due date as 06/11/2018, FILED.[2277122] [17-2760] [Entered: 04/11/2018 04:24 PM] |
| 04/15/2018 | ☐ 158 | MOTION, to change venue, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 04/15/2018 by CM/ECF. [2279488] [17-2760]--[Edited 04/16/2018 by JW] [Entered: 04/15/2018 10:17 PM] |
| 04/16/2018 | ☐ 159<br>2 pg, 17.55 KB | DEFECTIVE DOCUMENT, motion[158], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2279690] [17-2760]--[Edited 04/16/2018 by JW] [Entered: 04/16/2018 10:39 AM] |
| 04/16/2018 | ☐ 160 | MOTION, to change venue, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 04/15/2018 by CM/ECF. [2279784] [17-2760]--[Edited 04/17/2018 by KY] [Entered: 04/16/2018 11:28 AM] |
| 04/16/2018 | ☐ 161<br>44 pg, 2.15 MB | MOTION, to change venue, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 04/15/2018 by CM/ECF. [2279799] [17-2760] [Entered: 04/16/2018 11:33 AM] |
| 04/17/2018 | ☐ 164<br>2 pg, 17.3 KB | DEFECTIVE DOCUMENT, motion to change venue, [160], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2281093] [17-2760] [Entered: 04/17/2018 12:24 PM] |
| 04/17/2018 | ☐ 165 | CURED DEFECTIVE motion to change venue, [161], on behalf of Appellant Amy Rebecca Gurvey, FILED. [2281102] [17-2760] [Entered: 04/17/2018 12:28 PM] |
| 04/19/2018 | ☐ 170<br>30 pg, 909.93 KB | OPPOSITION TO MOTION, [161], on behalf of Appellee Cowan, Liebowitz & Lathman, PC, FILED. Service date 04/19/2018 by CM/ECF. [2283945] [17-2760] [Entered: 04/19/2018 04:17 PM] |
| 04/24/2018 | ☐ 175<br>12 pg, 311.17 KB | REPLY TO OPPOSITION [170], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 04/24/2018 by CM/ECF. [2287189][175] [17-2760] [Entered: 04/24/2018 03:31 PM] |
| 05/29/2018 | ☐ 183<br>2 pg, 65.48 KB | MOTION ORDER, denying Appellant's motion to enlarge or correct the record, to disqualify Appellees' counsel, to certify questions to the state court, and to transfer this appeal to the Federal Circuit [47], [47], [81], [161] filed by Appellant Amy Rebecca Gurvey; denying Appellees' cross-motion for sanctions against Appellant [96] filed by Appellee Cowan, Liebowitz & Latman, P.C. by RKW, RSP, BDP, FILED. [2312737] [183] [17-2760] [Entered: 05/29/2018 01:49 PM] |
| 06/08/2018 | ☐ 184<br>118 pg, 5.46 MB | MOTION, for rehearing en banc, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 06/08/2018 by CM/ECF. [2321603] [17-2760] [Entered: 06/08/2018 04:51 PM] |
| 06/08/2018 | ☐ 185 | SUPPLEMENTARY PAPERS TO WRIT [184], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 06/08/2018 by CM/ECF.[2321620][185] [17-2760] [Entered: 06/08/2018 05:03 PM] |
| 06/11/2018 | ☐ 187<br>2 pg, 17.86 KB | DEFECTIVE DOCUMENT, Supplementary Papers to Motion, [185], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2321906] [17-2760] [Entered: 06/11/2018 10:40 AM] |
| 06/11/2018 | ☐ 189<br>56 pg, 212.1 KB | BRIEF, on behalf of Appellee Cowan, Liebowitz & Latman, P.C., Clear Channel Communications, Inc., Live Nation, Inc., Instant Live Concerts, LLC, Nexticketing, Incorporated, William Borchard, Midge Hyman, Baila Celedonia, Christopher Jensen, Dale Head, Steve Simon, Nicole Ann Gordon and Susan Schick, FILED. Service date 06/11/2018 by CM/ECF. [2322360] [17-2760] [Entered: 06/11/2018 03:54 PM] |
| 06/11/2018 | ☐ 190<br>289 pg, 30.65 MB | SUPPLEMENTAL APPENDIX volume I of III (pp. 1-278), on behalf of Appellee Cowan, Liebowitz & Latman, P.C., William Borchard, Midge Hyman, Baila Celedonia and Christopher Jensen, FILED. Service date 06/11/2018 by CM/ECF. [2322412] [17-2760]--[Edited 06/12/2018 by KY] [Entered: 06/11/2018 04:15 PM] |
| 06/11/2018 | ☐ 192 | SUPPLEMENTAL APPENDIX volume II of III, on behalf of Appellee Cowan, Liebowitz & Latman, P.C., William Borchard, Midge Hyman, Baila Celedonia and Christopher Jensen, FILED. Service date 06/11/2018 by CM/ECF. [2322471] [17-2760]--[Edited 06/12/2018 by KY] [Entered: 06/11/2018 04:41 PM] |
| 06/11/2018 | ☐ 193 | SUPPLEMENTAL APPENDIX volume III of III, on behalf of Appellee Cowan, Liebowitz & Latman, P.C., William Borchard, Midge Hyman, Baila Celedonia and Christopher Jensen, FILED. Service date 06/11/2018 by CM/ECF. [2322486] [17-2760]--[Edited 06/12/2018 by KY] [Entered: 06/11/2018 04:46 PM] |
| 06/12/2018 | ☐ 194<br>12 pg, 2.45 MB | SUPPLEMENTARY PAPERS TO MOTION [184], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 06/08/2018 by CM/ECF.[2322608][194] [17-2760] [Entered: 06/12/2018 08:14 AM] |
| 06/12/2018 | ☐ 195 | CURED DEFECTIVE Supplementary Papers to Motion, [194], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2322803] [17-2760] [Entered: 06/12/2018 10:31 AM] |
| 06/12/2018 | ☐ 197<br>2 pg, 18.12 KB | DEFECTIVE DOCUMENT, Supplemental Appendix volumes II and III, [193], [192], on behalf of Appellee William Borchard, Baila Celedonia, Clear Channel Communications, Inc., Cowan, Liebowitz & Latman, P.C., Nicole Ann Gordon, Dale Head, Midge Hyman, Instant Live Concerts, LLC, Christopher Jensen, Live Nation, Inc., Nexticketing, Incorporated, Susan Schick and Steve Simon, FILED.[2323200] [17-2760] [Entered: 06/12/2018 01:52 PM] |
| 06/12/2018 | ☐ 198<br>314 pg, 20.59 MB | SUPPLEMENTAL APPENDIX volume II of III (pp. 279-581), on behalf of Appellee William Borchard, Baila Celedonia, Cowan, Liebowitz & Latman, P.C., Midge Hyman and Christopher Jensen, FILED. Service date |

06/12/2018 by CM/ECF. [2323362] [17-2760]--[Edited 06/14/2018 by KY] [Entered: 06/12/2018 03:30 PM]

| 06/12/2018 | ☐ 199<br>238 pg, 24.21 MB | SUPPLEMENTAL APPENDIX volume III of III (pp. 582-808), on behalf of Appellee William Borchard, Baila Celedonia, Cowan, Liebowitz & Latman, P.C., Midge Hyman and Christopher Jensen, FILED. Service date 06/12/2018 by CM/ECF. [2323368] [17-2760]--[Edited 06/14/2018 by KY] [Entered: 06/12/2018 03:32 PM] |

| 06/14/2018 | ☐ 200 | CURED DEFECTIVE Supplemental Appendix volumes II and III, [199], [198], on behalf of Appellee William Borchard, Baila Celedonia, Clear Channel Communications, Inc., Cowan, Liebowitz & Latman, P.C., Nicole Ann Gordon, Dale Head, Midge Hyman, Instant Live Concerts, LLC, Christopher Jensen, Live Nation, Inc., Nexticketing, Incorporated, Susan Schick and Steve Simon, FILED. [2324855] [17-2760] [Entered: 06/14/2018 09:06 AM] |

| 06/18/2018 | ☐ 203<br>35 pg, 1.38 MB | OPPOSITION TO MOTION, [184], on behalf of Appellee William Borchard, Baila Celedonia, Cowan, Liebowitz & Latman, P.C., Midge Hyman and Christopher Jensen, FILED. Service date 06/18/2018 by CM/ECF. [2326988] [17-2760]--[Edited 06/19/2018 by KY] [Entered: 06/18/2018 02:55 PM] |

| 06/20/2018 | ☐ 206<br>91 pg, 4.6 MB | REPLY TO OPPOSITION [203], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 06/20/2018 by CM/ECF. [2329051][206] [17-2760] [Entered: 06/20/2018 02:18 PM] |

| 06/26/2018 | ☐ 209<br>1 pg, 61.99 KB | MOTION ORDER, denying motion for reconsideration en banc [184] filed by Appellant Amy Rebecca Gurvey, FILED. [2332615][209] [17-2760] [Entered: 06/26/2018 11:49 AM] |

| 06/28/2018 | ☐ 210<br>11 pg, 600.32 KB | MOTION, to file late, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 06/28/2018 by CM/ECF. [2335406] [17-2760] [Entered: 06/28/2018 11:47 PM] |

| 06/29/2018 | ☐ 212<br>2 pg, 96.46 KB | OPPOSITION TO MOTION, [210], on behalf of Appellee William Borchard, Baila Celedonia, Cowan, Liebowitz & Latman, P.C., Midge Hyman and Christopher Jensen, FILED. Service date 06/29/2018 by CM/ECF. [2336232] [17-2760]--[Edited 07/02/2018 by KY] [Entered: 06/29/2018 05:38 PM] |

| 07/03/2018 | ☐ 215<br>28 pg, 301.77 KB | SUPPLEMENTARY PAPERS TO MOTION [210], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 07/03/2018 by CM/ECF.[2337860][215] [17-2760] [Entered: 07/03/2018 12:50 PM] |

| 07/05/2018 | ☐ 218<br>1 pg, 62.1 KB | MOTION ORDER, granting the motion for an extension of time to file reply brief [210] filed by Appellant Amy Rebecca Gurvey, by JAC, FILED. [2338606][218] [17-2760] [Entered: 07/05/2018 11:24 AM] |

| 07/05/2018 | ☐ 219<br>29 pg, 413.54 KB | REPLY BRIEF, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 07/05/2018 by CM/ECF. [2338877] [17-2760] [Entered: 07/05/2018 02:42 PM] |

| 07/12/2018 | ☐ 222<br>1 pg, 62.25 KB | ORAL ARGUMENT STATEMENT LR 34.1 (a), on behalf of filer Attorney Amy Rebecca Gurvey for Appellant Amy Rebecca Gurvey, FILED. Service date 07/12/2018 by CM/ECF. [2343847] [17-2760] [Entered: 07/12/2018 01:55 PM] |

| 07/12/2018 | ☐ 224<br>1 pg, 51.49 KB | ORAL ARGUMENT STATEMENT LR 34.1 (a), on behalf of filer Attorney J. Richard Supple for Appellee William Borchard, Baila Celedonia, Clear Channel Communications, Inc., Cowan, Liebowitz & Latman, P.C., Nicole Ann Gordon, Dale Head, Midge Hyman, Instant Live Concerts, LLC, Christopher Jensen, Live Nation, Inc., Nexticketing, Incorporated, Susan Schick and Steve Simon, FILED. Service date 07/12/2018 by CM/ECF. [2344181] [17-2760] [Entered: 07/12/2018 04:46 PM] |

| 09/10/2018 | ☐ 226 | CASE CALENDARING, for the week of 11/27/2018, PROPOSED.[2385559] [17-2760] [Entered: 09/10/2018 02:46 PM] |

| 10/12/2018 | ☐ 227 | CASE CALENDARING, for argument on 11/29/2018, SET.[2408741] [17-2760] [Entered: 10/12/2018 11:21 AM] |

| 10/18/2018 | ☐ 231<br>2 pg, 17.24 KB | ARGUMENT NOTICE, to attorneys/parties, copy sent to pro se, TRANSMITTED.[2413530] [17-2760] [Entered: 10/18/2018 03:52 PM] |

| 11/02/2018 | ☐ 232<br>3 pg, 89.48 KB | LETTER, on behalf of Appellant Amy Rebecca Gurvey, in re: U.S. Patent and Trademark Office confirmation RECEIVED. Service date 11/02/2018 by CM/ECF.[2424823] [17-2760]--[Edited 11/02/2018 by KY] [Entered: 11/02/2018 01:08 PM] |

| 11/06/2018 | ☐ 235<br>1 pg, 206.3 KB | LETTER, on behalf of Appellee William Borchard, Baila Celedonia, Cowan, Liebowitz & Latman, P.C., Midge Hyman and Christopher Jensen, dated 11/05/2018 in re: response to appellant's letter RECEIVED. Service date 11/05/2018 by CM/ECF.[2427599] [17-2760]--[Edited 11/07/2018 by KY] [Entered: 11/06/2018 04:19 PM] |

| 11/09/2018 | ☐ 239<br>2 pg, 67.01 KB | LETTER, on behalf of Appellant Amy Rebecca Gurvey, in re: response to Appellees' letter RECEIVED. Service date 11/09/2018 by CM/ECF.[2431188] [17-2760]--[Edited 11/09/2018 by KY] [Entered: 11/09/2018 04:45 PM] |

| 11/25/2018 | ☐ 243<br>71 pg, 1.87 MB | LETTER, on behalf of Appellant Amy Rebecca Gurvey, in re: response to Appellees' letter RECEIVED. Service date 11/25/2018 by CM/ECF.[2440568] [17-2760]--[Edited 11/26/2018 by KY] [Entered: 11/25/2018 07:08 PM] |

| 11/27/2018 | ☐ 246<br>2 pg, 79.6 KB | LETTER, on behalf of Appellee William Borchard, Baila Celedonia, Cowan, Liebowitz & Latman, P.C., Christopher Jensen and Midge Hyman, in re: response to Appellant's letter RECEIVED. Service date |

EXHIBIT 25
Page 353 of 808

11/27/2018 by CM/ECF.[2442920] [17-2760]--[Edited 11/28/2018 by KY] [Entered: 11/27/2018 06:02 PM]

| 11/29/2018 | ☐ 252 | CASE, before ALK, DAL, SLC, HEARD.[2444610] [17-2760] [Entered: 11/29/2018 11:51 AM] |
| 12/03/2018 | ☐ 253 | ORAL ARGUMENT STATEMENT LR 34.1 (a), on behalf of filer Attorney Amy Rebecca Gurvey for Appellant Amy Rebecca Gurvey, FILED. Service date 12/02/2018 by CM/ECF. [2446482] [17-2760] [Entered: 12/03/2018 01:35 AM] |
| 12/03/2018 | ☐ 254<br>2 pg, 17.49 KB | DEFECTIVE DOCUMENT, Motion to file post argument letter brief, [253], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2446931] [17-2760] [Entered: 12/03/2018 12:39 PM] |
| 12/03/2018 | ☐ 255 | MOTION, to vacate judgment, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 12/03/2018 by CM/ECF. [2447648] [17-2760] [Entered: 12/03/2018 10:42 PM] |
| 12/03/2018 | ☐ 256 | SUPPLEMENTARY PAPERS TO MOTION [255], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 12/03/2018 by CM/ECF.[2447649][256] [17-2760] [Entered: 12/03/2018 11:00 PM] |
| 12/04/2018 | ☐ 257<br>7 pg, 100.65 KB | SUMMARY ORDER AND JUDGMENT, affirming the judgment of the district court, by ALK, DAL, SLC, FILED.[2447726] [17-2760] [Entered: 12/04/2018 09:13 AM] |
| 12/04/2018 | ☐ 260<br>1 pg, 9.17 KB | NEW CASE MANAGER, Yenni Liu, ASSIGNED.[2447751] [17-2760] [Entered: 12/04/2018 09:22 AM] |
| 12/04/2018 | ☐ 263<br>1 pg, 16.58 KB | DEFECTIVE DOCUMENT, Motion to vacate judgment, [255], [256], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2447923] [17-2760] [Entered: 12/04/2018 10:53 AM] |
| 12/04/2018 | ☐ 265 | SUPPLEMENTARY PAPERS TO MOTION [255], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 12/03/2018 by CM/ECF.[2448730][265] [17-2760] [Entered: 12/04/2018 06:37 PM] |
| 12/05/2018 | ☐ 266 | PETITION FOR REHEARING/REHEARING EN BANC, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 12/05/2018 by CM/ECF.[2448839] [17-2760] [Entered: 12/05/2018 11:46 AM] |
| 12/06/2018 | ☐ 267<br>2 pg, 23.3 KB | DEFECTIVE DOCUMENT, Petition for Rehearing En Banc, [266], [265], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2449001] [17-2760] [Entered: 12/06/2018 08:54 AM] |
| 12/14/2018 | ☐ 268<br>19 pg, 338.64 KB | PETITION FOR REHEARING/REHEARING EN BANC, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 12/14/2018 by CM/ECF.[2455805] [17-2760] [Entered: 12/14/2018 02:36 PM] |
| 12/14/2018 | ☐ 269 | CURED DEFECTIVE Petition for Rehearing/Rehearing En Banc [268], [266], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2455811] [17-2760] [Entered: 12/14/2018 02:39 PM] |
| 12/17/2018 | ☐ 271 | ITEMIZED BILL OF COSTS, on behalf of Appellee William Borchard, Baila Celedonia, Cowan, Liebowitz & Latman, P.C., Midge Hyman and Christopher Jensen, FILED. Service date 12/17/2018 by CM/ECF. [2456994] [17-2760] [Entered: 12/17/2018 04:43 PM] |
| 12/19/2018 | ☐ 272<br>2 pg, 17.6 KB | DEFECTIVE DOCUMENT, itemized bill of cost, [271], on behalf of Appellee William Borchard, Baila Celedonia, Cowan, Liebowitz & Latman, P.C., Midge Hyman and Christopher Jensen, FILED.[2459345] [17-2760] [Entered: 12/19/2018 04:04 PM] |
| 12/19/2018 | ☐ 273<br>5 pg, 1.07 MB | ITEMIZED BILL OF COSTS, on behalf of Appellee William Borchard, Baila Celedonia, Cowan, Liebowitz & Latman, P.C., Midge Hyman and Christopher Jensen, FILED. Service date 12/19/2018 by CM/ECF. [2459438] [17-2760] [Entered: 12/19/2018 04:44 PM] |
| 12/19/2018 | ☐ 274 | CURED DEFECTIVE ITEMIZED BILL OF COSTS [273], on behalf of Appellee William Borchard, Baila Celedonia, Cowan, Liebowitz & Latman, P.C., Midge Hyman and Christopher Jensen, FILED.[2459504] [17-2760] [Entered: 12/19/2018 05:11 PM] |
| 12/21/2018 | ☐ 276 | PAPERS, Appellant's updated brief cover, per the caption amendment, RECEIVED.[2464310] [17-2760] [Entered: 12/28/2018 11:35 AM] |
| 01/04/2019 | ☐ 278<br>17 pg, 549.27 KB | OPPOSITION TO ITEMIZED BILL OF COSTS, [273], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 01/04/2019 by CM/ECF. [2468097] [17-2760] [Entered: 01/04/2019 04:25 PM] |
| 01/05/2019 | ☐ 279 | SUPPLEMENTARY PAPERS TO ITEMIZED BILL OF COSTS [278], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 01/05/2019 by CM/ECF.[2468270][279] [17-2760] [Entered: 01/05/2019 11:52 AM] |
| 01/07/2019 | ☐ 280<br>2 pg, 17.91 KB | DEFECTIVE DOCUMENT, Opposition to Itemized Bill of Costs, [278], [279], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2468347] [17-2760] [Entered: 01/07/2019 09:06 AM] |
| 01/09/2019 | ☐ 281 | MOTION, to extend time, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 01/09/2019 by CM/ECF. [2471554] [17-2760] [Entered: 01/09/2019 04:44 PM] |
| 01/09/2019 | ☐ 282<br>2 pg, 17.55 KB | DEFECTIVE DOCUMENT, Motion to extend time, [281], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2471561] [17-2760] [Entered: 01/09/2019 04:49 PM] |
| 01/09/2019 | ☐ 283 | SUPPLEMENTARY PAPERS TO MOTION [281], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 01/09/2019 by CM/ECF.[2471589][283] [17-2760] [Entered: 01/09/2019 05:22 PM] |

| 01/10/2019 | ☐ 284 2 pg, 17.91 KB | DEFECTIVE DOCUMENT, Motion to extend time, [283], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2471656] [17-2760] [Entered: 01/10/2019 07:53 AM] |
| 01/10/2019 | ☐ 285 37 pg, 1.48 MB | MOTION, to extend time, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 01/09/2019 by CM/ECF. [2471657] [17-2760] [Entered: 01/10/2019 07:58 AM] |
| 01/10/2019 | ☐ 286 | CURED DEFECTIVE Motion to extend time [285], [283], [281], [279], [278], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2471660] [17-2760] [Entered: 01/10/2019 08:02 AM] |
| 01/18/2019 | ☐ 289 1 pg, 17.96 KB | ORDER, petition for panel rehearing, or, in the alternative, for rehearing en banc, denied, FILED. [2478203] [17-2760] [Entered: 01/18/2019 11:54 AM] |
| 01/22/2019 | ☐ 291 1 pg, 60.35 KB | MOTION ORDER, granting motion to accept late opposition to the bill of costs [285] filed by Appellant Amy Rebecca Gurvey, by SLC, FILED. [2479640][291] [17-2760] [Entered: 01/22/2019 04:09 PM] |
| 01/25/2019 | ☐ 293 5 pg, 540.4 KB | JUDGMENT MANDATE, ISSUED.[2482212] [17-2760] [Entered: 01/25/2019 09:56 AM] |
| 01/27/2019 | ☐ 294 | SUPPLEMENTARY PAPERS TO OPPOSITION [278], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 01/26/2019 by CM/ECF.[2482931][294] [17-2760]--[Edited 01/28/2019 by YL] [Entered: 01/27/2019 04:19 PM] |
| 01/28/2019 | ☐ 296 2 pg, 16.88 KB | DEFECTIVE DOCUMENT, Supplementary papers to opposition, [294], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2483115] [17-2760] [Entered: 01/28/2019 10:06 AM] |
| 02/02/2019 | ☐ 298 | MOTION, to reinstate appeal, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 02/01/2019 by CM/ECF. [2487930] [17-2760] [Entered: 02/02/2019 01:30 AM] |
| 02/04/2019 | ☐ 299 2 pg, 18.07 KB | DEFECTIVE DOCUMENT, Motion to reinstate appeal, [298], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2487953] [17-2760] [Entered: 02/04/2019 08:18 AM] |
| 02/05/2019 | ☐ 300 9 pg, 1.97 MB | MOTION, to reinstate appeal, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 02/04/2019 by CM/ECF. [2489112] [17-2760] [Entered: 02/05/2019 09:17 AM] |
| 02/05/2019 | ☐ 301 9 pg, 1.95 MB | MOTION, to recall mandate, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 02/05/2019 by CM/ECF. [2489438] [17-2760] [Entered: 02/05/2019 11:35 AM] |
| 02/05/2019 | ☐ 303 | CURED DEFECTIVE MOTION, to recall mandate [301], MOTION, to reinstate appeal [300], [298], on behalf of Appellant Amy Rebecca Gurvey, FILED.[2489451] [17-2760] [Entered: 02/05/2019 11:41 AM] |
| 02/11/2019 | ☐ 304 7 pg, 354.28 KB | OPPOSITION TO MOTION, [301], on behalf of Appellee William Borchard, Baila Celedonia, Cowan, Liebowitz & Latman, P.C., Midge Hyman and Christopher Jensen, FILED. Service date 02/11/2019 by CM/ECF. [2494053] [17-2760] [Entered: 02/11/2019 03:15 PM] |
| 02/20/2019 | ☐ 307 3 pg, 162.17 KB | REPLY TO OPPOSITION [304], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 02/20/2019 by CM/ECF. [2500010][307] [17-2760] [Entered: 02/20/2019 05:24 AM] |
| 03/11/2019 | ☐ 312 1 pg, 61.96 KB | MOTION ORDER, denying motion to recall mandate [301] and motion to reinstate appeal [300] filed by Appellant Amy Rebecca Gurvey, by ALK, DAL, DLC, FILED. [2514344][312] [17-2760] [Entered: 03/11/2019 09:03 AM] |
| 03/11/2019 | ☐ 313 1 pg, 61.95 KB | STATEMENT OF COSTS, on behalf of Appellees William Borchard, Baila Celedonia, Cowan, Liebowitz & Latman, P.C., Midge Hyman and Christopher Jensen, FILED.[2514392] [17-2760] [Entered: 03/11/2019 09:25 AM] |
| 03/11/2019 | ☐ 314 1 pg, 562.83 KB | CERTIFIED ORDER, dated 03/11/2019, to SDNY, ISSUED.[2514393] [17-2760] [Entered: 03/11/2019 09:26 AM] |
| 04/24/2019 | ☐ 315 1 pg, 56.24 KB | U.S. SUPREME COURT NOTICE of writ of certiorari filing, dated 04/22/2019, U.S. Supreme Court docket # 18-8930, RECEIVED.[2546748] [17-2760] [Entered: 04/24/2019 08:59 AM] |
| 06/24/2019 | ☐ 316 1 pg, 82.22 KB | U.S. SUPREME COURT LETTER, dated 06/24/2019, Petitioner is allowed until 7/15/2019 to pay the docketing fee, RECEIVED.[2593576] [17-2760] [Entered: 06/24/2019 04:22 PM] |
| 10/07/2019 | ☐ 317 1 pg, 65.7 KB | U.S. SUPREME COURT LETTER, dated 10/07/2019, U.S. Supreme Court docket # 18-8930, stating the petition for writ of certiorari is denied, RECEIVED.[2674370] [17-2760] [Entered: 10/07/2019 03:53 PM] |
| 11/26/2019 | ☐ 319 1 pg, 65.8 KB | U.S. SUPREME COURT LETTER, dated 11/25/2019, denying the petition for rehearing, RECEIVED. [2716011] [17-2760] [Entered: 11/26/2019 09:26 AM] |
| 01/19/2020 | ☐ 320 239 pg, 7.32 MB | MOTION, to vacate judgment, on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 01/19/2020 by CM/ECF. [2756109] [17-2760] [Entered: 01/19/2020 10:27 PM] |
| 01/19/2020 | ☐ 321 153 pg, 8.33 MB | SUPPLEMENTARY PAPERS TO MOTION [320], on behalf of Appellant Amy Rebecca Gurvey, FILED. Service date 01/19/2020 by CM/ECF.[2756110][321] [17-2760] [Entered: 01/19/2020 10:53 PM] |
| 01/21/2020 | ☐ 322 1 pg, 9.59 KB | PAPERS [320][321] received in a closed case, RETURNED.[2756348] [17-2760] [Entered: 01/21/2020 |

EXHIBIT 25
Page 355 of 808

| 01/24/2020 | ☐ 324 | LETTER, dated 01/22/2020, on behalf of Appellant Amy Rebecca Gurvey, requesting hearing on motion, RECEIVED. Service date 01/24/2020 by US mail.[2761494] [17-2760] [Entered: 01/27/2020 09:53 AM] |
| | 6 pg, 468.32 KB | |
| 01/27/2020 | ☐ 325 | LETTER [324] received in a closed case, RETURNED.[2761499] [17-2760] [Entered: 01/27/2020 09:55 AM] |
| | 7 pg, 477.93 KB | |
| 01/28/2020 | ☐ 326 | LETTER, dated 01/25/2020, on behalf of Appellant Amy Rebecca Gurvey, requesting hearing on motion, RECEIVED. Service date 01/25/2020 by US mail.[2763113] [17-2760] [Entered: 01/28/2020 01:00 PM] |
| | 8 pg, 638.14 KB | |
| 01/28/2020 | ☐ 327 | LETTER [326] received in a closed case, RETURNED.[2763116] [17-2760] [Entered: 01/28/2020 01:01 PM] |
| | 9 pg, 647.75 KB | |

EXHIBIT 25
Page 356 of 808

12/13

Clear All

◉ **Documents and Docket Summary**
◯ **Documents Only**

☑ **Include Page Numbers**

**Selected Pages:** `0`    **Selected Size:** `0 KB`    **(Max: 50 MB)**

View Selected

---

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 06/26/2023 18:54:49 | | | |
| **PACER Login:** | mcrice3317 | **Client Code:** | |
| **Description:** | Docket Report (full) | **Search Criteria:** | 17-2760 |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |

EXHIBIT 25
Page 357 of 808

13/13

EXHIBIT 26

EXHIBIT 26

2017 N.Y. Slip Op. 92255(U)

2017 WL 5492078 (N.Y.A.D. 1 Dept.), 2017 N.Y. Slip Op. 92255(U)

**This motion is uncorrected and is not subject to publication in the Official Reports.**

In the Matter of Amy R. Weissbrod Gurvey, Petitioner-Appellant, v State of New York, et al., Respondents-Respondents.

**MOTION DECISION**
Supreme Court, Appellate Division, First Department, New York
M-4247
November 16, 2017

-Hon. Richard T. Andrias,Justice Presiding, Judith J.

Gische Jeffrey K. Oing Anil C. Singh,Justices

November 16, 2017

An appeal having been taken from the order of the Supreme Court, New York County, entered on or about January 18, 2017,And petitioner-appellant having moved, inter alia, for an order transferring the aforesaid appeal from this Court to the Appellate Division, Third Judicial Department, for disposition, Now, upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon,It is ordered that the motion is denied. ENTERED: November 16, 2017

_____ CLERK

M-4247

Index No. 100163/13

Copr. (C) 2023, Secretary of State, State of New York

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT 26
Page 359 of 808

# EXHIBIT 27

# EXHIBIT 27

| **In the Matter of Amy R. Weissbrod Gurvey** |
| --- |
| Motion No: M-6697 |
| Slip Opinion No: 2018 NYSlipOp 61578(U) |
| Decided on January 23, 2018 |
| Appellate Division, First Department, Motion Decision |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| This motion is uncorrected and is not subject to publication in the Official Reports. |

January 23, 2018

In the Matter of Amy R. Weissbrod

Gurvey,

Petitioner,

For a Judgment Pursuant to Article 78

of the Civil Practice Law and Rules,in the Nature of a Writ of Mandamus,O.P. No. 132/17

v

Hon. Rolando T. Acosta, Presiding Justice,

Appellate Division, First Department,

Respondent.

This proceeding, brought pursuant to CPLR Article 78 in the nature of mandamus, seeks to compel the Presiding Justice of this Court to order the Chief Attorney of the Attorney Grievance Committee to produce and turn over to petitioner certain files,Now, upon this Court's own motion, it is Ordered that the proceeding is transferred to the Appellate Division, Second Department, pursuant to New York Constitution, Article VI, § 4(I), for hearing and determination, and it is further, Ordered that all further proceedings in connection with the proceeding shall be conducted pursuant to the rules of the Appellate Division, Second Department. ENTERED: January 23, 2018

_____ CLERK

Present - Hon. David Friedman,Justice Presiding, John W. Sweeny, Jr. Dianne T. Renwick Rosalyn H. Richter Sallie Manzanet-Daniels,Justices

In the Matter of Amy R. Weissbrod Gurvey

M-6697

EXHIBIT 28

EXHIBIT 28

| |
|---|
| **Matter of Amy R. Gurvey, a suspended attorney** |
| Motion No: M-4853 |
| Slip Opinion No: 2018 NY Slip Op 64119(U) |
| Decided on February 15, 2018 |
| Appellate Division, First Department, Motion Decision |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| This motion is uncorrected and is not subject to publication in the Official Reports. |

February 15, 2018

In the Matter of Amy R. Gurvey, a suspended attorney:

Motion is denied. No further filings accepted from petitioner without prior leave of this Court. No opinion. All concur.

Before: Freidman, J.P., Renwick, Richter, Manzanet-Daniels, Tom, JJ.

Motion No. M-4853

# EXHIBIT 29

# EXHIBIT 29

| In the Matter of Amy R. Weissbrod Gurvey |
| :---: |
| Motion No: M-37 |
| Slip Opinion No: 2018 NYSlipOp 64778(U) |
| Decided on February 20, 2018 |
| Appellate Division, First Department, Motion Decision |
| Published by <u>New York State Law Reporting Bureau</u> pursuant to Judiciary Law § 431. |
| This motion is uncorrected and is not subject to publication in the Official Reports. |

February 22, 2018

In the Matter of Amy R. Weissbrod

Gurvey,

Petitioner-Appellant,

v State of NY, City of NY, First Dept. Disciplinary Committee, Chief Counsel

Jorge Dopico, Thomas Cahill, Alan

Friedberg, Robert Tembeckjian, James

Shed, Naomi Goldstein, Sherry Cohen,

Raymond Vallejo, Orlando Reyes, Hearing

Panel IV, Lawrence Marks (Chief Counsel

of the NYS Office of Court Administration),

Richard Supple, Hal Lieberman and Hinshaw &

Culbertson, LLP,

Defendants-Respondents.

Plaintiff-appellant having moved for reconsideration of, the decision and order of this Court, entered on November 16, 2017 [M-4247] (M-6696), And, defendants-respondents Hinshaw & Culbertson, LLP, Richard Supple and Hal Lieberman having moved for a filing injunction against plaintiff-appellant (M-69), And, defendants-respondents having moved to dismiss plaintiff's appeal from an order of the Supreme Court, New York County, entered on or about August 29, 2016, for failure to timely perfect (M-37),Now, upon reading and filing the papers with respect to the motions, and due deliberation having been had thereon, It is ordered that the motion for reconsideration of this Court's order entered November 16, 2017 (M-6696) and the cross motion for a filing injunction against plaintiff-appellant (M-69) are denied. The motion to dismiss the appeal taken from the order entered on or about August 29, 2016 is granted and the appeal is dismissed. Sua sponte the appeal taken from an order of the same Court entered on January 18, 2017 is dismissed for failure to prosecute (M-37).
ENTERED: February 20, 2018

EXHIBIT 29

Page 366 of 808

1/2

_____ CLERK

The following order was entered and filed on February 20, 2018:

PRESENT: Hon. Judith J. Gische, Justice Presiding, Richard T. Andrias Jeffrey K. Oing Anil C. Singh, Justices

M-37

M-69

M-6696

Index No. 100163/15

# EXHIBIT 30

# EXHIBIT 30

JUDGE TORRES

# 18 CV 2206

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRI CT OF NEW YORK

————————————————————————X

AMY R. WEISSBROD GURVEY,

    USPTO Patentee, Plaintiff,

      -against-

Hon(s). Jonathan Lippman, Peter Tom, Luis Gonzalez, Rolando
Acosta, Thomas Cahill, Sherry Cohen, David Spokony,
Jorge Dopico, Alan W. Friedberg, Sherry Cohen, James Shed,
Naomi Goldstein, Raymond Vallejo, Orlando Reyes, Lauren Holmes,
Hearing Panel IV, Hinshaw & Culbertson, LLP, Richard Supple,
Hal Lieberman, O. Lee Squitieri, Squitieri & Fearon, LLP,
NYS Office of Court Administration (Lawrence Marks &
John McConnell, chief counsels), State of NY, City of NY
and DOES I-X, Inclusive,

    Defendants.

**CASE NO.**

**CIVIL RIGHTS & UNLAWFUL
PATENT TAKING COMPLAINT
42 USC §§1983, 1988**

*Jury Trial Requested*

————————————————————————X

## I.    Statement of the Case

1.    This civil rights, illegal targeting, unlawful US patent taking and public corruption
lawsuit is filed by USPTO Patentee-Plaintiff Amy R. Gurvey [1] against defendants for depriving
Plaintiff of her rights, privileges and immunities under the First, Fifth and Fourteenth
Amendments of the United States Constitution for twelve (12) years including by contributing to
an unprecedented 8-10 year delay in US patent issuance and enforcement rights to Plaintiff. This
lawsuit parallels: (i) an ongoing investigation before the USPTO Commissioner of Patents after
Plaintiff's early patent applications were abandoned and two application went expired based on
serious ethics violations by the NY law firm of Cowan Liebowitz & Latman that lost Plaintiff
valuable patent claims and priority dates owing to Plaintiff and took several years to revive; (ii) a
criminal civilian complaint and investigation pending before the US Attorney for the Southern

---

[1] Gurvey issued US Patent Nos. 7603321: D647910S; Plaintiff is sole inventor of a 20-patent
portfolio disclosing systems, apparatuses and designs for the end-to-end management of live
events, from electronic ticketing and registration operation, to transmission of customized event
content and venue security systems. 14 patents were delayed based on the torts of defendants
and are pending for issuance and enforcement.

1

EXHIBIT 30
Page 369 of 808

District of NY; (iii) Plaintiff's SDNY patent breach of fiduciary duty, USPTO ethics and malpractice damages lawsuit duly filed against the Cowan firm before this Court in 2006 [2] that was prejudiced on remand from the 2d Circuit (*fn 2*) based on defendants' unprotected illegal targeting of Plaintiff in contended collusion with Cowan's defense lawyer defendant Richard Supple, himself a theretofore undisclosed AGC executive committee member; and (iv) and a mandamus proceeding originally filed at the Appellate Division First Dept. against respondent current AGC presiding justice Hon. Rolando Acosta seeking AGC compliance with NY's Judiciary Law Part 1240 Amended Statutes including (a) to compel production of all Plaintiff's files since Plaintiff filed protected ethics complaints and in retaliation was unlawfully targeted (JL Part 1240.7); and (b) to disqualify defendant Supple and his insurance defense firm Hinshaw & Culbertson, LLP ("H&C") retroactive to 2006. JL Section 90(10);JL Part 1240.6, .18; *Anderson v. State of NY*, 614 F. Supp. 2d 404 (SDNY 2009)(Scheindlin, J.)[Headnotes, 15,16]; Part 1240.6, Part 1240,7; Part 1240.18; *US Football League v. National Football League* 605 F. Supp. 1448 (SDNY 1985); *Ulico v. Wilson Elser, et al.*, 56 AD 3 1 (AD 1st Dept. 2008); [See also *King v. Fox* 28 Fed. Appx. 95 (2d Cir. 2002) certifying state questions of law to the NY Court of Appeals].

2.    Plaintiff's otherwise proper AGC ethics complaints since 2003 were ignored by defendants against her Cowan patent attorneys in violation of equal protection because rotating AGC administrative presiding justice defendants failed to supervise those AGC staff attorneys and clerks who unlawfully allowed defendant Supple illegal *ex parte* access into the confidential state files concerning Plaintiff and Cowan such that Supple became in possession of confidential documents he had no right or standing to see. In addition, AGC defendants gave defendant Supple unlawful *ex parte* access to materially alter the state confidential files while he was Plaintiff's SDNY adversary. Ergo, Supple played a significant role in creating the withheld AGC documents that were used since 2005 to feign AGC jurisdiction over Plaintiff in 2008 that did not exist, so that defendant Supple could in turn could use the documents that he helped create to prejudice Plaintiff's SDNY damages lawsuit against his clients.

4.    Based on conflicts of interest and potential exposure of AGC First Dept. officers to Plaintiff, defendant Justice Acosta transferred Plaintiff's state mandamus petition [1(iv) above] *sua sponte* to the Second Dept. on January 23, 2018. The mandamus proceeding is now pending before the 2d Dept. with an order to show cause returnable March 9, 2018.

---

[2] 17-2760 (2d Cir). Plaintiff won the first appeal pro se in 2012. 462 Fed. Appx. 26 (2d Cir) (Feb 10, 2012). Plaintiff also won binding SDNY Arbitration against the Cowan firm for breach of her associated employment contract on August 4, 2009. SDNY Arbitrator found that Cowan breached Plaintiff's contract without cause just three weeks after Cowan management signed it; and during the proceedings it was also established that Cowan managing partner William Borchard, Esq., unilaterally altered the rider to insert an extended date stamp that was never shown to Plaintiff or initialed by her. In the interim period, Cowan had stolen Plaintiff's confidential inventions in favor of another client and got that client a patent ahead of Plaintiff.

2

EXHIBIT 30
Page 370 of 808

5.    In the instant related lawsuit, Plaintiff seeks special and consequential damages, 42 USC §§1983, 1988 civil rights damages, attorneys' fees and costs and declaratory determinations against defendants for engaging in relentless unprotected acts of illegal targeting of this Plaintiff over 12 years.  Defendants' illegal targeting being without jurisdiction is not protected under any theory of immunity and caused special damages to Plaintiff's patents, career and reputation, ability to work, undue prejudice to her SDNY lawsuit against the Cowan firm for five years on remand from 2d Circuit in 2012 (*fn 2*) (1.iii) above), and Plaintiff's ability to enforce her patents causing her to suffer delay damages.  *Bradley v. Fisher*, 80 US 335, 354 (1872); *Forrester v. White*, 484 US 219 (O'Connor J.); *Antoine v. Byers & Anderson*, 509 US 429 (1993); *NeuroRepair v. Nath Law Group*, 781 F. 3d 1340 (Fed. Cir. 2015).  Plaintiff is entitled to contribution from every party or entity that contributed to her patent damages.  *Protostorm v. Antonelli*, 834 F. Supp. 2d 141 (EDNY 2011)

## II. Statement of Facts in Support of All Claims

6.    The 2007 *Anderson* litigation and Plaintiff's instant lawsuit are inextricably related.  Both claim violations of the public's absolute right under the First Amendment to file ethics complaints against NY lawyers without fear of retaliation and to be afforded state remedies compliant with equal protection.  Christine Anderson, herself an AGC staff triage attorney, was protecting Plaintiff's ethics complaints duly filed against the Cowan firm when she was terminated from her job as an AGC triage staff and research attorney in 2005.

7.    In this lawsuit, Plaintiff contends that AGC defendants including those previously cited in *Anderson,* engaged in collusion with defendant Supple, a theretofore undisclosed AGC executive committee member starting in 2007-8, suspiciously only after Plaintiff sued the Cowan firm who were Supple's private sector clients before SDNY in 2006; and that AGC defendant staff attorneys and clerks cited in *Anderson, supra*, upon belief, engaged in collusion with defendant Supple, to begin manufacturing and inserting *ex parte* false documents into Plaintiff's confidential state files at the Appellate Division.  All the relevant and altered ethics files have since been improperly withheld from Plaintiff in defiance of due process and JL Part 1240.7 for 10 years.  Defendants' aim was to enable AGC defendants to create false documents that could feign disciplinary jurisdiction over Plaintiff that AGC defendants knew did not exist so that defendant Supple could quickly achieve state orders that could be used to collaterally prejudice Plaintiff's recovery rights before SDNY, even if lacking in jurisdiction, and could not vacated by the federal court.

8.    In 2005, when plaintiff Christine Anderson was terminated from her AGC staff attorney position, her administrative supervisors were also ignoring Plaintiff's ethics complaints against the Cowan firm in violation of equal protection of Plaintiff's rights under NY's Judiciary Law Section 90.  In addition, presiding justice defendants were breaching their purely administrative, statutory duties to Plaintiff to supervise those staff attorneys whose duty it was to process her

3

EXHIBIT 30
Page 371 of 808

ethics complaints and get Plaintiff her USPTO inventorship files returned from the Cowan firm.
Plaintiff needed her complete USPTO files compelled from Cowan to attempt to reverse or
mitigate damages to her portfolio, already caused by Cowan's serious breaches of fiduciary duty
duty and USPTO ethics violations. Cowan had also erased material USPTO files from a CD
ROM sent to Plaintiff in 2003. The withheld and erased files included Cowan's powers of
attorney filed at the USPTO in 2003 that Cowan attorneys and defendant Supple, as Cowan's
agent, swore to SDNY for 12 years did not exist. The delay caused to Plaintiff's USPTO
prosecution and enforcement rights entitles Plaintiff to recover so-called "delay patent damages"
against all contributing defendants. _NeuroRepair v. Nath Law Group_, 781 F. 3d 1340 (Fed. Cir.
2012)

9.      Because AGC defendants did not compel production of Plaintiff's files and defendant
Supple and Lieberman never disclosed conflicts of interest and that they were involved with
altering the relevant ethics files as state officers, defendant Supple was able to concealed that he
got illegal ex parte access into the files without standing or a warrant in defiance of JL Section
90(10); JL Part 1240.18. Defendants were also able to continue Plaintiff's illegal targeting
unchecked for 12 years, ruin Plaintiff's professional reputation, her patent company and ability
to enforce her patents internationally before courts of competent jurisdiction and made it
impossible for Plaintiff to work. Defendants also caused extended and undue prejudice to
Plaintiff's recovery rights before SDNY against the Cowan firm.


### III. Governing Case Precedents

10.     In _Anderson v. State of NY_, 614 F. Supp. 2d 404 (SDNY 2009), AGC defendants herein
were found by SDNY Judge Shira Scheindlin to have potentially violated the First Amendment
rights of Christine Anderson, a state AGC triage and research attorney, for terminating Anderson
from her state job in 2005. Anderson was terminated allegedly for being a whistleblower and
attempting to protect the First Amendment rights of public citizens to file ethics complaints
against NY attorneys without fear of retaliation and to be afforded standard state relief compliant
with equal protection under NY's Judiciary Law. Plaintiff contends that because she had no
state job that could be terminated by AGC defendants, a different scheme had to be conjured up
to prevent her recovery against defendant Supple's private sector clients who were her patent
attorneys at the Cowan firm because defendant Supple had no defense to Cowan's serious
USPTO ethics violations.

11.     Standard state remedies to be afforded aggrieved victims of attorney ethics violations in
NYS under NY's Judiciary Law ("JL"), include orders against the reported attorney to return the
client's files upon abandonment or withdrawal and to succumb to mediation on stolen retainer

EXHIBIT 30
Page 372 of 808

funds. Plaintiff was denied and continues to be denied these state orders since 2003 in defiance of equal protection and defendants' administrative, statutory duties to Plaintiff. [3]

12. In 2013, the US Supreme Court mandated that adjudication of patent attorney ethics claims and damage claims are the state's exclusive responsibility and that the federal courts lack jurisdiction to hear these claims. *Gunn v. Minton*, 133 S. Ct. 1059 (USSC Tex. 2013)(Roberts J). Defendants still defied the law and did not compel Cowan to turn over Plaintiff's complete USPTO files or turn over their own AGC files since Plaintiff filed her state ethics complaints including communications with the Cowan firm and defendant Supple.

13. In *Anderson*, SDNY specifically found the evidence that citizens' ethics complaints - even if serious - were "whitewashed" 100% of the time if the reported attorney was being represented by AGC executive committee members or former chief counsels in their private sector law firms. This is precisely what transpired in Plaintiff's case.

14. SDNY's findings are determinative of Plaintiff's First Amendment unlawful retaliation claims in the instant lawsuit. Defendants Supple and Lieberman, who were long-standing AGC executive committee members and former chief counsel who were involved with the state ethics files involving Plaintiff and Cowan, got illegal ex parte access to the confidential state files and unilaterally altered these files. *Anderson v. State of NY*, 614 F. Supp. 2d 404 (SDNY 2009)(Scheindlin, J.)[Headnotes, 15, 16]; *Ulico v. Wilson Elser, et al.*, 56 AD 3 1 (AD 1st Dept. 2008).

15. The facts are no better established than by the April 21, 2016 order of First Dept. Defendant justice Peter Tom, also cited by the Anderson Court, concedes that access was given to defendant Supple to the confidential files in defiance of law and without standing or a warrant. JL Section 90, JL Part 1240.18. In improperly accepting and continuing in Cowan's insurance defense retainer, defendant Supple has been an agent of two conflicting entities - the First Dept. AGC which had duties to assist Plaintiff as an aggrieved victim of attorney ethics violations, and of the Cowan attorneys, who engaged in the ethics violations against this Plaintiff. Those conflicts could never be reconciled.

16. Even after Plaintiff won binding SDNY arbitration on breach of employment contract claims against the Cowan firm in 2009 and then a pro se appeal before 2d Circuit in 2012 upholding her claims for patent breach of fiduciary duty, fraud and malpractice, based on Justice Tom's order, Supple's ex parte misconduct in the state confidential files continued. Based therein, on remand from 2d Circuit in 2012 Plaintiff continued to be denied all USPTO document

---

[3] Allegedly, the USPTO has the power to put pressure on a withdrawing attorney to return the client's files by not granting withdrawal until the files are returned to the inventor-client. 37 CFR 11.1116; 37 CFR 10.40. However, as often occurs, the attorneys will falsely swear to the Office of Petitions that he has returned the files and noticed the withdrawal, and the USPTO will often grant the withdrawal before docketing the attorney's petition, depriving the inventor of due process and the right to oppose the withdrawal.

EXHIBIT 30
Page 373 of 808

discovery and an amended complaint by the new SDNY Magistrate. *Cold Spring Harbor v.*
*Ropes & Gray*, 840 F. Supp. 2d 473 (D. Mass. 2011)(Transferred from EDNY); *NeuroRepair v.*
*Nath Law Group*, 781 F. 3d 1340 (Fed. Cir. 2015).

17.     The reason was for Magistrate's continuing bias and prejudice were the without
jurisdiction orders entered against Plaintiff by AGC defendants commencing in 2011 and 2012
and in breach of administrative duty were never vacated by presiding justice defendants as was
their administrative duty to Plaintiff.  In other words, defendant Supple played an instrumental
role in causing the prejudice to Plaintiff's SDNY lawsuit through parallel criminal forgery and
unilateral alteration of state confidential files in collusion with AGC officers, and the order
entered without jurisdiction over Plaintiff were not timely vacated based on further unilateral
alterations made by Supple to the state confidential  files.

18.     Based thereon, ,SDNY Magistrate also improperly denied three motions to disqualify
Supple and H&C from the Cowan firm's continuing representation (*fn 2*) that is now mandatory
under JL Part 1240.6.  In very order pertaining to Plaintiff's right per 2d Circuit to document
discovery and to amend her complaint, Magistrate kept referring to the state AGC orders
orchestrated by defendant Supple via illegal access to the files,  that were in fact issued without
jurisdiction over Plaintiff as part of defendants' illegal targeting.

19.     AGC presiding justice defendants had an administrative duty to vacate the orders entered
without jurisdiction over Plaintiff and delayed adjudications for 5 years, and again improperly
allowed defendant Supple to oppose Plaintiff's motions in the confidential files without standing.

20.     Plaintiff contends that defendants Supple and H&C's disqualification was mandatory
since 2006 under JL Part 1240.6 and *US Football League, v. National Football League*, 605 F.
Supp. 1448 (1985).  Defendant Supple got unlawful ex parte access into the confidential state
files, received confidential information that he used against Plaintiff, and also was improperly
allowed by AGC defendants access to unilaterally alter the files ex parte to his own advantage
and the advantage of his Cowan clients.

20.     That Plaintiff's constitutional claims are meritorious is no better demonstrated by the fact
that NY's Legislature changed the law in enacting Part 1240, making defendants' violations of
Plaintiff's constitutional rights, now codified as unlawful.

21.     Plaintiff contends that this Court must now determine what court or state agency is
required to enforce JL Part 1240 to mandate the retroactive disqualification defendants Supple,
Lieberman and H&C from continuing to represent the Cowan firm before this Court and 2d
Circuit; and if necessary, certify those questions to the NY Court of Appeals. See, *King v. Fox*,
28 Fed. Appx. 95 (2d Cir. 2002); NY Court of Appeals Oral Argument, 2006 WL 5876557
(N.Y.) (Oral Argument).

22.  In addition, Plaintiff contends that this Court must mandate that defendants Supple,

6

EXHIBIT 30
Page 374 of 808

Lieberman and H&C forfeit to Plaintiff all legal fees realized from the Cowan firm's representation since 2006 for failing to disclose conflicts of interest. *Ulico v. Wilson Elser, et al.,* 56 AD 3d 1 (AD 1st Dept. 2008)

## IV. Defendants' Illegal Targeting of Plaintiff through Criminal Acts

23.     Plaintiff has a more compelling First Amendment retaliation case than Christine Anderson did. This is because AGC defendants' ongoing administrative breaches of duty included ***defendants' unilateral, criminal alteration and manufacture of false state documents that defendants inserted ex parte and allowed others without standing or a warrant to insert ex parte into Plaintiff's confidential state files. These acts demonstrate public corruption and criminal fraud.*** As a matter of law, these egregious acts constitute unprotected breaches of purely administrative, non-judicial duties owed to Plaintiff that are not protected under any theory of immunity. *Bradley v. Fisher*, 80 US 335, 354 (1872); *Forrester v. White*, 484 US 219 (O'Connor J.); *Antoine v. Byers & Anderson*, 509 US 429 (1993).

24.     The manufactured, forged and untruthful documents thus far discovered that defendants inserted *ex parte* into Plaintiff's strictly confidential state files and that were never served on Plaintiff in violation of due process, include a photocopy of a 2008 Appellate Division petition affirmation appended to a frivolous 2008 petition naming Plaintiff as respondent purportedly signed in 2008 by a 2002 former AGC chief counsel Paul Curran, when Curran, in fact, left the AGC in 2002 and was dead of cancer in 2008 [4]. No living AGC officer signed the affirmation or any other affirmation in support of petition and no original signature copy of Curran's signature was ever produced or ordered compelled by presiding justice defendants. In addition, defendants' false entries in their petition say that the petition is based on a previous 1997 Housing Part matter and in response to which defendants had already mailed an admonition notice to Plaintiff in 2005 that ended defendants' disciplinary jurisdiction as a matter of law as to the complete Housing Part case because no subsequent like misconduct was ever cited. 22 NCYRR 603.4 ,603.9 The reference to defendants' admonition notice was fraudulently omitted from the petition. In addition, entered on several pages were falsely sworn averments that Plaintiff maintains a law office at PO Box 1523, New York NY 10013 (when no such office ever existed and Plaintiff never had an office for the practice of law in NYS). [5] This petition was

---

[4] Paul Curran was coincidentally a former partner at Kaye Scholer with Cowan managing partner William Borchard demonstrating how defendant Supple, as Cowan's agent, could have gotten access to Curran's signature and helped other AGC defendants manufacture the false documents.

[5] Plaintiff, inventor of valuable issued US method and apparatus patents in expanded event ticketing and venue security operations, organized a patent software firm in 2000 and has been on inactive status from her original barred State of California since she entered medical school as

EXHIBIT 30
Page 375 of 808

also never served pursuant to the CPLR, defendants mailed it without service to Plaintiff in New Jersey, and thereafter, defendants, knowing that jurisdiction was lacking, relentlessly prosecuted the petition for 8 years, bombarding Plaintiff with frivolous motions, letters and papers. These wrongful state actions prevented Plaintiff, who has an ADA-qualifying disability, from being able to work, make a living, complete prosecution of her delayed US patents, protect her interests before court of competent jurisdiction, and also caused Plaintiff to become further immunocompromised with recurrent pneumonia, pleurisy, cancer and ulcerative colitis that required months of hospitalizations.

25.     That defendants actually knew that no disciplinary jurisdiction over Plaintiff existed  is matter of state statutes and their own publications.  22 NYCRR 603.4, 603.9. See _NY Attorney Discipline_, NYLJ Treatise, 2016 Ed. Ch. 6.  The admonition notice sent by AGC defendants to Plaintiff in 2005 pertained to an unrelated HUD tenant matter wherein Plaintiff was the ADA-disabled HUD tenant  represented by an attorney. The admonition was defendants' admission that defendants lost  disciplinary jurisdiction over Plaintiff with regard to all matters contained in the admonition.  In addition, decisions from the US Supreme Court are clear that in order for state disciplinary jurisdiction to exist, the cited attorney must be the attorney in the relevant attorney client relationship for disciplinary jurisdiction, which was not the case here. _Kay v. Ehrler_, 499 US 432 (1993).

26.     Thereafter AGC defendants and presiding justices breached further administrative duties to Plaintiff in depriving Plaintiff of her files, verbatim transcripts from a 2011 hearing (_Cleavinger v. Saxner_, 474 US 193 (1985) and instructed the Ubiqus transcript company not to offer Plaintiff verbatim transcripts.

27.     Because illegal targeting is deemed breach of a purely administrative, non-judicial function, AGC defendants' heinous, predatory and relentless abuse of process against this Plaintiff over 12 years is not protected under any theory of immunity. _Bradley v. Fisher_, 80 US 335, 354 (1872); _Forrester v. White_, 484 US 219 (O'Connor J.); _Antoine v. Byers & Anderson_, 509 US 429 (1993).  Plaintiff is entitled to recover civil rights damages, attorneys' fees and costs against including special damages to Plaintiff's patents, career and professional reputation. Plaintiff is also entitled to mandamus relief by this Court under _Ex parte Young_, 209 US 123 (1908).against AGC presiding justice defendants for their promulgation of unlawful state protocols for 12 years in violation of Plaintiff's constitutional rights that were confirmed as unlawful by the enactment of JL Part 1240.

28.     Plaintiff's damage claims against defendants Supple, Lieberman and Squitieri extend to their individual capacities and also involve liability of their respective law firms (defendants H&C and Squitieri & Fearon.

_____

an ADA-disabled student in 1995.  Plaintiff also formerly retired from the Third Dept. in NYS in 2000 and has never represented a client before any court in CA or NY.

8

EXHIBIT 30
Page 376 of 808

## V. JURISDICTION AND VENUE

29.     Jurisdiction of this Court is invoked under 28 USC §1331; 28 USC §§1343 (3)(4). Pendent jurisdiction over Plaintiff's state law claims is proper pursuant to 28 USC§ 1367.

30.     This Court has jurisdiction pursuant to 42 USC §§1983, 1988 because AGC defendants are employees and officers of the State of New York within the meaning of §1983.

31.     Venue in this District Court is proper pursuant to 28 USC §1391 (b) because the cause of action arose in the Southern District of New York and because the events or omissions that gave rise ad continue to give rise to many of Plaintiff's constitutional claims occurred in this judicial district.

32.     Because matters in this lawsuit will require resolution of significant issues of federal patent law including application of preempting USPTO patent attorney ethic mandates they are matters in the exclusive jurisdiction of the federal courts.  See, 37 CFR 11.1116; 37 CFR 10.40; 37 CFR 1.36(b); *See also, In re Hulquist*, 136 AD 3d 170 (2d Dept. 2016).

33.  Plaintiff also joins NY attorney Lee Squitieri and his firm Squitieri & Fearon, LLP as defendants. Defendant Squitieri was Plaintiff's attorney of record at critical, early stages in the Cowan SDNY lawsuit between 2006-2011[6].  Defendant Squitieri is alleged to have engaged in collusion with defendant Supple, and withheld all Plaintiff's case files after he suspiciously moved to withdraw in 2010 just after Plaintiff won arbitration against the Cowan firm on certain contract counts in August 2009 and Plaintiff's first US patents issued two months later in October, 2009 after an unprecedented 8 years.  Squitieri's unlawful withholding of Plaintiff's SDNY was the subject of a further ethics complaint whitewashed by defendants in violation of equal protection.  Plaintiff was then forced move for a writ before Supreme Court (Index No. 120516-2012) and although certain files were produced in 2014, defendant Squitieri remains in contempt, having still failed to turn over his communications with defendant Supple that are Plaintiff's property. *Cold Spring Harbor Laboratories v Ropes & Gray*, 840 F. Supp. 2d 473 (D. Mass.0211 (Transferred from EDNY).  [7]

---

[6] 06cv1202(SDNY) filed February 15, 2006.

[7] Defendant Squitieri remains in contempt of a 2013 writ entered by Supreme Court of NY (102516-2012) for unlawfully withholding all Plaintiff's SDNY case files after AGC defendants again ignored Plaintiffs' ethics complaints, including the 2009 arbitration files and Squitieri's communications with defendant Supple that are Plaintiff's property. All AGC files and Squitieri's complete case files are the proper subject of mandamus from this Court pursuant to JL Part 1240.7 and because they were generated during a plaintiff-inventor's federal patent

9

EXHIBIT 30
Page 377 of 808

## COUNTS FOR RELIEF

34.    In summary, in filing this separate civil rights damages in the amount of $10,000,000 per retaliatory harassment claim as in *Anderson*, $10,000,000 in lost salary since 2002, $100,000,000 minimum on patent unlawful taking claims, Plaintiff stands squarely in the derivative shoes of Christine Anderson in seeking damages allowable under the Civil Rights Act of 1871, 42 USC §§1983, 1988, attorneys' fees and costs.  Plaintiff also seeks declaratory determinations and mandamus relief under *Ex parte Young*, 209 US 123 (1908) against AGC presiding justice defendants for promulgating unconstitutional state protocols and breaching purely administrative and statutory duties owed to Plaintiff for 12 years that were since remedied by the JL Part 1240 Amended statutes including the following:

(a) Illegally targeting and abusing process against this Plaintiff knowingly without disciplinary jurisdiction for 12 years in retaliation for her filing absolutely protected ethics complaints against her NY patent lawyers at the Cowan firm under the First Amendment;

(b)Failing to apply preempting USPTO mandates pertaining to Cowan USPTO ethics violations including unilateral withdrawal based on admitted conflicts of interest and failing to return Plaintiff's files.   See, 37 CFR 11.1116; 37 CFR 10.40; 37 CFR 1.36(b);  see also *In re Hulquist*, 136 AD 3d 170 (2d Dept. 2016).

(c) Allowing outsiders such as defendant Supple, an undisclosed AGC executive committee member harboring irreconcilable conflicts of interest, and another NY attorney Lee Squitieri, both who have no standing and no warrant, unlawful *ex parte* access into Plaintiff's strictly confidential state files and breaching further administrative statutory duties by failing to supervise and instruct other AGC staff attorneys and clerks to also maintain the strict confidentiality of these files and prevent unilateral alteration of these files.  JL Section 90(10); JL Part 1240.18;

(d) Failing to ensure that the AGC executive committee members and chief counsels who were involved with the ethics complaints filed by Plaintiff, were not then permitted to accept private sector retainer of the patent attorneys Plaintiff reported for ethics violations unless full disclosure of conflicts of interest was made. JL Part 1240.6;

(e) Failing to compel defendant Supple, Lieberman and H&C to withdraw from the Cowan firm's representation on a timely basis based on undisclosed conflicts of interests and their

---

misconduct and breach of fiduciary duty litigation seeking damages related to USPTO ethics violations by her patent attorneys. *Cold Spring Harbor Laboratories v. Ropes & Gray*, 840 F. Supp. 2d 473 (D. Mass, 2011)(Transferred from EDNY).]

10

EXHIBIT 30
Page 378 of 808

getting access to confidential information contained the state files that defendant then used against this Plaintiff. JL Part 1240.6;

(f) Failing to ensure and failing to instruct other AGC defendants to ensure that disciplinary jurisdiction in fact existed over Plaintiff before beginning to illegally target, harass and abuse process Plaintiff when no disciplinary jurisdiction existed;

(g) Withholding Plaintiff's complete Appellate Division files, including communications with defendants Supple and Lieberman, and responses filed by the Cowan firm in response to Plaintiff's ethics complaints to ensure that Plaintiff was afforded due process of law during the illegal harassment and also had the right to confront all witnesses against her (JL Part 1240.7); and

(h) Withholding disciplinary action against each of Cowan, defendant Supple, as Cowan's agent, and Plaintiff's SDNY attorney defendant Lee Squitieri, who were duly reported to AGC since 2008;

35.    All the aforesaid administrative, non-judicial duties owed to Plaintiff by defendants, a USPTO patent inventor were breached for more than 12 years and Plaintiff became the victim of illegal targeting with jurisdiction in retaliation for her exercising her absolutely protected right to free speech under the First Amendment.

36.    Plaintiff demands trial by jury on her claims.

*Def State of NY is liable and is responsible for civil rights violations of state players superior in their official capacities*
*Def City of NY is liable and for unlawful taking and for unlawful US patent taking*

Dated: March 6, 2018
Upper Montclair, NJ

AMY R GURVEY, USPTO Patentee
315 Highland Avenue Upper Montclair, NJ  07043
PH 917-733-9981
email:  amygurvey@gmail.com

11

EXHIBIT 30
Page 379 of 808

KeyCite Yellow Flag - Negative Treatment
Distinguished by Matthews v. City of New York, S.D.N.Y., July 29, 2013

614 F.Supp.2d 404
United States District Court,
S.D. New York.

Christine C. ANDERSON, Plaintiff,
v.
The STATE OF NEW YORK, the OFFICE OF
COURT ADMINISTRATION OF the UNIFIED
COURT SYSTEM, Thomas J. Cahill, in his official
and individual capacity, Sherry K. Cohen, in her
official and individual capacity, and David
Spokony, in his official and individual capacity,
Defendants.

No. 07 Civ. 9599(SAS).
|
April 27, 2009.

**Synopsis**
**Background:** African American state employee brought
action against employer and related defendants, alleging
that she was unlawfully terminated and subjected to a
hostile work environment because of her race, color, and
national origin, and that defendants deprived her of the
right to make and enforce contracts, unlawfully retaliated
against her for having exercised her constitutional right to
free speech, violated her Fourteenth Amendment rights to
due process and equal protection by discriminating
against her, and breached a state collective bargaining
agreement. Defendants moved for summary judgment.

**Holdings:** The District Court, Shira A. Scheindlin, J.,
held that:

[1] employee failed to establish a prima facie case of
discriminatory discharge;

[2] conduct which employee complained of was not
sufficiently severe to alter the conditions of her
employment, and therefore did not give rise to a hostile
work environment claim;

[3] employee's alleged workplace comments reporting
ethical misconduct were subject to **First** Amendment
protection; and

[4] genuine issue of material fact existed as to whether
there was a causal connection between public employee's
protected speech and her eventual discharge four months
later.

Motions granted in part and denied in part.

West Headnotes (18)

[1] **Civil Rights**
🔑Hostile environment; severity, pervasiveness,
and frequency

Hostile work environment claims brought under
New York state law are governed by the same
standards applicable to claims brought under
Title VII. Civil Rights Act of 1964, § 701 et
seq., 42 U.S.C.A. § 2000e et seq.;
N.Y.McKinney's Executive Law § 296.

1 Cases that cite this headnote

[2] **Civil Rights**
🔑Hostile environment; severity, pervasiveness,
and frequency

Factors considered in determining whether there
is a hostile work environment are: (1) the
frequency of the discriminatory conduct; (2) its
severity; (3) whether the conduct was physically
threatening or humiliating, or a mere offensive
utterance; (4) whether the conduct unreasonably
interfered with plaintiff's work; and (5) what
psychological harm, if any, resulted. Civil
Rights Act of 1964, § 701 et seq., 42 U.S.C.A. §
2000e et seq.; N.Y.McKinney's Executive Law
§ 296.

2 Cases that cite this headnote

[3] **Civil Rights**

EXHIBIT 30
Page 380 of 808

⚬⃗Hostile environment; severity, pervasiveness, and frequency

To establish a hostile work environment claim, a plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; N.Y.McKinney's Executive Law § 296.

3 Cases that cite this headnote

[4]     **Constitutional Law**
⚬⃗Retaliation in general
**Constitutional Law**
⚬⃗Causation; substantial or motivating factor

To establish a retaliation claim in violation of the **First** Amendment right to free speech, a public employee must show: (1) that the speech at issue was protected; (2) that she suffered an adverse employment action; and (3) that there exists a causal connection between the speech and the adverse employment action. U.S.C.A. Const.Amend. 1.

16 Cases that cite this headnote

[5]     **Constitutional Law**
⚬⃗Public Employees and Officials

Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any **First** Amendment liberties the employee might have enjoyed as a private citizen. U.S.C.A. Const.Amend. 1.

3 Cases that cite this headnote

[6]     **Constitutional Law**
⚬⃗Efficiency of public services

So long as public employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively. U.S.C.A. Const.Amend. 1.

3 Cases that cite this headnote

[7]     **Civil Rights**
⚬⃗Discharge or layoff
**Civil Rights**
⚬⃗Motive or intent; pretext

African American court employee failed to establish a prima facie case of discriminatory discharge; although employee showed that her supervisor's conduct toward her was racially motivated and that supervisor supplied the ultimate decision makers with information about employee, there was no evidence that supervisor's racial bias tainted the ultimate decision to terminate her. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; N.Y.McKinney's Executive Law § 296.

Cases that cite this headnote

[8]     **Civil Rights**
⚬⃗Hostile environment; severity, pervasiveness, and frequency

Negative job evaluations and increased scrutiny, without any attendant consequences such as demotion or diminution of wages, are not adverse employment actions which can support a hostile work environment claim. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; N.Y.McKinney's Executive Law § 296.

3 Cases that cite this headnote

[9]     **Civil Rights**
⚬⃗Hostile environment; severity, pervasiveness,

EXHIBIT 30
Page 381 of 808

and frequency

Conduct which African American court employee complained of was not sufficiently severe to alter the conditions of her employment, and therefore did not give rise to a hostile work environment claim; employee complained that defendants accused her of refusing to follow instructions, gave her a negative performance evaluation, subjected her to an unwarranted counseling session, and that one supervisor made racist remarks over the course of several years. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; N.Y.McKinney's Executive Law § 296.

1 Cases that cite this headnote

[10] **Civil Rights**
☞Race, color, ethnicity, or national origin
**Civil Rights**
☞Discrimination in General
**Civil Rights**
☞Contracts, trade, and commercial activity

To establish a claim under § 1981, plaintiff must show that: (1) she is a member of a racial minority group; (2) defendants intended to discriminate against her on the basis of race; and (3) the discrimination concerned one of the activities enumerated in § 1981, which includes the right to make and enforce contracts, the right to sue, and the right to the full and equal benefit of all laws and proceedings for the security of persons and property. 42 U.S.C.A. § 1981.

Cases that cite this headnote

[11] **Civil Rights**
☞Motive or intent; pretext

Intentional discrimination is a necessary element of an employment discrimination claim under both § 1981 and Title VII. 42 U.S.C.A. § 1981; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

2 Cases that cite this headnote

[12] **Federal Courts**
☞Agencies, officers, and public employees

Public employee's § 1983 claims against governmental entity defendants and the individual defendants in their official capacities were barred under the Eleventh Amendment. U.S.C.A. Const.Amend. 11; 42 U.S.C.A. § 1983.

6 Cases that cite this headnote

[13] **Constitutional Law**
☞Public employees and officials
**Courts**
☞Ministerial officers in general

African American court employee did not establish equal protection claim against her employer where she failed to show any comparison to similarly situated Caucasian employees accused of insubordination who were treated more favorably than her. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[14] **Constitutional Law**
☞Rights and interests protected in general

At-will employment is not a due process protected property interest. U.S.C.A. Const.Amend. 14.

2 Cases that cite this headnote

[15] **Constitutional Law**
☞Attorneys, prosecutors, and Attorney

EXHIBIT 30
Page 382 of 808

General's office
**Courts**
👉Ministerial officers in general

Court employee's alleged workplace comments reporting ethical misconduct were made in her capacity as a private citizen, and not as a public employee, and were therefore subject to **First** Amendment protection; employee's speech was not pursuant to her official duties as a Principal Attorney, which were to research legal questions and issues, organize complex investigations, prepare and present complex cases before administrative tribunals and trial and appellate courts, and perform related duties. U.S.C.A. Const.Amend. 1.

2 Cases that cite this headnote

[16]   **Constitutional Law**
       👉Retaliation in general

For purposes of a **First** Amendment retaliation claim, an employment action is "adverse" if it would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights. U.S.C.A. Const.Amend. 1.

4 Cases that cite this headnote

[17]   **Federal Civil Procedure**
       👉Employees and Employment Discrimination, Actions Involving

Genuine issue of material fact existed as to whether there was a causal connection between public employee's protected speech and her eventual discharge four months later, precluding summary judgment in favor of employer on employee's **First** Amendment retaliation claim; furthermore, issue of fact existed as to whether defendants refused to remove employee's supervisor so they could use employee's inevitable resistance to supervisor's continuing supervision as a pretext for firing her, thereby obscuring their illegitimate and retaliatory discharge of employee. U.S.C.A. Const.Amend.

1.

1 Cases that cite this headnote

[18]   **Labor and Employment**
       👉Discharge

Failing to hold a hearing prior to the discharge of a confidential, at-will employee did not support a claim for breach of collective bargaining agreement (CBA) since employee was not covered by agreement's hearing requirement.

Cases that cite this headnote

**Attorneys and Law Firms**

***407** John A. Beranbaum, Esq., Beranbaum Menken Ben–Asher & Bierman LLP, New York, NY, for Plaintiff.

Lee A. Adlerstein, Wesley E. Bauman, Assistant Attorneys General, Attorney General for the State of New York, New York, NY, for Defendants.

*OPINION AND ORDER*

SHIRA A. SCHEINDLIN, District Judge.

Plaintiff Christine Anderson brings suit against defendants[1] pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"),[2] 42 U.S.C. § 1981 ("section 1981"), 42 U.S.C. § 1983 ("section 1983"), New York State Executive Law § 296, and state common law. Plaintiff claims, under both federal and state law, that she was unlawfully terminated and subjected to a hostile work environment because of her race (African American), color (black), and national origin (Jamaican).[3] Plaintiff further claims that defendants: deprived her of the right to make and enforce contracts; unlawfully retaliated against her for having exercised her constitutional right to free speech; violated her Fourteenth Amendment rights to due

EXHIBIT 30
Page 383 of 808

process and equal protection by discriminating against her; and that defendants NYS and OCA breached a state collective bargaining agreement. In her request for relief, plaintiff seeks, *inter alia*, money damages and the appointment of a federal monitor to oversee the day-to-day operations of the Supreme Court of the State of New York, Appellate Division, **First** Judicial Department ("**First** Department"), Departmental **Disciplinary Committee** ("DDC"). Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking to dismiss this action in its entirety. For the following reasons, defendants' motion is granted in part and denied in part.

## I. BACKGROUND

### A. The DDC

The DDC is a **committee** within the New York State Unified Court System responsible for investigating complaints and grievances against attorneys for alleged misconduct in the course of representing **\*408** members of the public.[4] On February 1, 2001, Anderson was hired as a Principal Attorney by the DDC to investigate claims of attorney misconduct.[5] Defendant Thomas Cahill was Chief Counsel of the DDC while Anderson worked there.[6] As head of the DDC, Cahill oversaw the work of the DDC and set policy in close coordination with the DDC Policy **Committee**, the governing body responsible for the overall functioning of the DDC.[7] Defendant Sherry Cohen has worked at the DDC since 1993 and became **First** Deputy Chief Counsel in 2003.[8] Cohen supervises the day-to-day operations of the DDC and reviews its legal work.[9] Defendant David Spokony is the Deputy Clerk of the **First** Department Clerk's Office and is responsible for managing the day-to-day operations of the **First** Department's Clerk's Office.[10]

### B. Plaintiffs Employment at the DDC

From early 2001 through early 2003, plaintiff's work was reviewed and supervised by her caseload supervisor, Judith Stein.[11] Once Stein approved a recommendation made by plaintiff, it was sent to Cahill for his review and approval.[12] After Cahill approved the recommendation, it was sent to the Policy **Committee** which would decide on the discipline to be imposed.[13] In the Spring of 2003, Cohen assumed the position of **First** Deputy to Chief Counsel Cahill.[14] Shortly thereafter, Cohen became Anderson's supervisor.[15]

Starting in 2005, Anderson made repeated complaints to Cahill and Cohen about the DDC's failure to vigorously

prosecute complaints against attorneys accused of misconduct, particularly where the "respondents were either themselves politically connected or they had attorneys who used to work for us."[16] Anderson expressed her concern about improper DDC practices in connection with at least nine cases in which she believed the DDC treated attorneys too leniently.[17] It was one case in particular, the case of "H.," that permanently soured the relationship between Anderson and Cohen.

In September 2005, after a year-long investigation, Anderson completed a proposed report, recommending the admonition of H. for misrepresentation and commingling of client funds.[18] Stein had approved Anderson's recommendation, as had Cahill after a paragraph was inserted at Cahill's request.[19] H. was represented by a former staff attorney at the DDC. After reviewing Anderson's admonition memorandum, Cohen decided that **\*409** it was too harsh and re-wrote it.[20] Anderson told Cohen that it was improper to revise the memorandum to skew the end result and accused Cohen of trying to "whitewash" the case.[21] Cohen, who was offended by Anderson's accusation, reported what Anderson said to Cahill.[22] Cohen then re-wrote the memorandum, removing the most serious finding that H. made misrepresentations to the DDC and diluting the allegations of commingling.[23] Cohen submitted the revised memorandum to the Policy **Committee** in May 2006.[24]

### C. The July 2006 Incident

After the matter of H. concluded, issues continued to arise between Anderson and Cohen.[25] One such incident involved the purchase of a paper shredder. Cohen thought that Anderson was planning to buy a paper shredder for the office without prior approval.[26] Cohen raised her voice during a telephone conversation in which she forbade Anderson from making this purchase.[27] The following Monday, July 24, 2006, Cohen entered Anderson's office and closed the door.[28] Cohen resurrected the shredder issue and asked Anderson whether she had destroyed, or was planning to destroy, case documents.[29] Anderson then got up and moved past Cohen toward the door so she could leave to meet with a complainant.[30] Anderson claims that when she reached for the door handle, Cohen grabbed her hand, dug her nails into Anderson's wrist, and said: "You're not leaving this office."[31] Anderson retreated to the far side of her desk and told Cohen that it would be best, for both of them, if Cohen left Anderson's office.[32] After some hesitation, Cohen stated, "Now I am leaving your office," and slammed the door behind her.[33] At her deposition, Cohen did not specifically recall whether there was any physical contact between them but

EXHIBIT 30
Page 384 of 808

conceded that their hands may have touched.[34]

After the July 2006 incident, Anderson asked Cahill to take **disciplinary** action against Cohen.[35] When he failed to do so, Anderson met with former **First** Department Court Clerk Catherine O'Hagan Wolfe on August 8, 2006.[36] At that meeting, Anderson gave Wolfe two written reports **\*410** recounting the July incidents.[37] Anderson told Wolfe that she did not want Cohen to continue as her supervisor, which she believed to be a reasonable request given the availability of Stein as a supervisor.[38] Anderson informed Wolfe that Cohen's hostility stemmed from disagreements between Anderson and Cohen over the handling of some cases to the perceived detriment to complainants.[39]

At their meeting, Anderson verbally advised Wolfe that the DDC favored certain well-connected respondents and attorneys through lenient treatment otherwise known as "whitewashing," and that such whitewashing tarnished the mission of the DDC. Anderson told Wolfe that she previously complained to Cohen and Cahill about whitewashing in some cases.[40] In particular, Anderson reported that a former DDC attorney, in her role as respondents' counsel, was trying to improperly influence the disposition of cases, acting as "one of the cogs in the wheel of trying to subvert the mission of our office ...."[41] In sum, Anderson stressed to Wolfe that "complainants were not being served."[42]

Wolfe instructed Spokony to set up a fact-finding mediation panel consisting of Spokony and two other court managers, Sara Jo Hamilton and Pat Finnegan.[43] On September 12, 2006, the panel interviewed Anderson and Cohen separately.[44] Anderson told the panel of the July 2006 incident, complained about Cohen's temperament, and requested a different supervisor.[45] Cohen also gave her account of the July 2006 incident and acknowledged that she was responsible for the unfortunate incident.[46] After the interviews were conducted, and written input was submitted by the panel members, Spokony recommended that Cohen: (1) apologize to Anderson for raising her voice and for the physical contact in Anderson's office, and (2) attend a management skills course.[47] Because Spokony found that the supervisor/subordinate relationship could be reestablished, **\*411** he rejected Anderson's request to have Cohen removed as her supervisor.[48] Finally, Spokony concluded that Anderson's complaint did not raise an issue of class bias.[49] In a letter to Anderson's former counsel, Wolfe stated that she accepted Spokony's findings and recommendations on September 28, 2006.[50]

Anderson appealed the Spokony Report to Presiding Justice John Buckley on the ground that the remedial measures suggested by Spokony—a mandated management skills course for Cohen and an apology to Anderson—were not commensurate with the gravity of Cohen's misconduct.[51] In her Appeal, Anderson alleged that Cohen acted "out of bias toward [her] as a person of color and this is reflected in her dealings with persons of color, or those whom she regards as objectionable, for example, persons she regards as overweight."[52] In a letter dated October 24, 2006, Justice Buckley affirmed the Spokony Report,[53] finding "that the recommendations set forth in the report are proportionate to the complaint and appropriate to restore a professional relationship between Ms. Anderson, the subordinate, and Ms. Cohen, the supervisor."[54] With regard to race discrimination, Justice Buckley found "no evidence in either Ms. Anderson's account of Ms. Cohen's conduct or the investigation that supports a claim of racial bias."[55]

### D. Subsequent Retaliation Against Anderson

After the issuance of the Spokony Report, Anderson alleges that she was subjected to a series of negative job actions. **First** and foremost, Anderson's requests to have Cohen removed as her supervisor were repeatedly rejected by Cahill without explanation.[56] Furthermore, at Wolfe's direction, Cohen began taking notes of her observations of and interactions with Anderson, e.g., documenting when Anderson left work early.[57] Cohen also began to micro-manage Anderson's work and assigned her ministerial duties typically performed by paralegals.[58] Starting in **\*412** October 2006, Anderson was required to meet with Cohen approximately every other week. At one such meeting, Cohen allegedly referred to Anderson as "silly" and "stupid."[59]

On November 1, 2006, after conferring with Wolfe, Cohen sent a "counseling memorandum" to Anderson for canceling a meeting at the last minute.[60] On January 25, 2007, Cohen requested Wolfe's permission to hold a "counseling session" with Anderson for "her demonstrated refusal to take steps to restore the supervisor's subordinate relationship in accordance with David Spokony's report ...."[61] This request came one day after Anderson's attorney sought confirmation as to whether Cohen attended the management skills course mandated in the Spokony Report.[62] On January 30, 2007, Cohen gave Anderson her **first** partially negative evaluation.[63] Anderson received an "Unsatisfactory" in the category "Responsive to supervision and direction from superiors."[64] In the Comments section of the Evaluation, Cohen wrote that Anderson "needs to take steps to restore supervisor-subordinate relationship" and that she "must stop communicating hostility."[65] This was the **first**

EXHIBIT 30
Page 385 of 808

negative evaluation Anderson received after five years of consecutively excellent performance evaluations.[66]

At Wolfe's direction, Spokony scheduled a counseling session with Anderson for February 6, 2007.[67] The day before the scheduled meeting, Anderson notified Spokony that she would not be able to attend for "health reasons."[68] Spokony informed Anderson that he was treating her failure to attend as "insubordinate default, an act which can lead to **disciplinary** action."[69] At the counseling session, held on February 9, 2007, Spokony admonished Anderson for resisting Cohen's supervision.[70] Spokony's Counseling Memorandum, which was placed in Anderson's permanent personnel folder, stated that it could be used in any subsequent **disciplinary** action against her.[71] Spokony did, in fact, use his Counseling Memorandum to support his recommendation for Anderson's termination.[72]

**\*413 E. The Court's Decision to Terminate Anderson**

Following the **First** Department's instructions to Anderson, as conveyed in the Spokony Report, Anderson's hostility toward Cohen became apparent. In an e-mail dated October 30, 2006, Anderson made the following remarks to Cohen:

> 1. You expressed "disappointment" with what you have characterized as my failure to honor a "mutual agreement" to be collegial. Speaking for myself, I made no such agreement ....
>
> 2. I regret that there was no instruction that you be removed from contact with me, inasmuch as your e-mail constitutes a continuation of the same misconduct for which you were admonished....
> 3. I shall not address your remarks, of a highly subjective nature, with respect to my demeanor. You have exhibited an "emotional response" of a physical nature, which you have admitted. It is not surprising, therefore, that I would not be comfortable to sit, alone in a room with you, in close physical proximity, thereby risking the possibility of a repetition of that behavior.[73]

There are a host of other e-mails in which Anderson's hostility toward, and refusal to cooperate with, Cohen are evident. For example, on November 13, 2006, Anderson refused to get a file for Cohen, informing Cohen that she "may retrieve the respondent's original file from that office."[74] On November 20, 2006, Anderson refused to provide Cohen with a translation of her shorthand notes, offering her only a "summary transcription."[75] In an

e-mail dated December 28, 2006, regarding an attorney **disciplinary** matter, Anderson stated:

> With respect to N, you have now taken on to yourself to re-write an admonition, which was previously signed off on .... In light of the foregoing, I do not believe it will be helpful to sit down for a meeting .... Naturally, I shall not refuse to sit down with Andral Bratton and yourself, but I see very little value to the expenditure of this time.[76]

In that same e-mail, Anderson criticized Cohen for approaching her in the hallway.[77] On March 15, 2007, Anderson described a deposition recommended by Cohen as a "waste of time and money."[78] Finally, on May 9, 2007, Anderson sent an e-mail "to express, in the clearest possible terms, [her] distaste and professional disappointment with [Cohen's] performance at a meeting at 12:28 p.m. today ...."[79] In that e-mail, Anderson states: "I will not be spoken to in the manner in which you did and be subjected to the type of conduct with which you deported yourself in that meeting."[80] Anderson then chides Cohen when she states that she cannot prevent Cohen from pursuing a "dead end."[81] Anderson concludes the e-mail: "I, however, **\*414** will not be subjected to the sort of treatment in which you indulged today and I am putting you on notice accordingly."[82]

Anderson's hostility toward Cohen continued after the February 9, 2007 counseling session, as documented by e-mails forwarded by Cohen to Wolfe on April 11, 2007.[83] At Wolfe's direction, Spokony provided these e-mails and other relevant correspondence to the Acting Presiding Justice and the other Justices of the Court's Liaison **Committee**.[84] In his April 12, 2007 Memorandum, Spokony states that Anderson is "subject to termination" because she "continues to resist appropriate supervision, despite counseling and other efforts to restore a proper supervisor/subordinate relationship."[85]

On May 18, 2007, Anderson postponed a counseling session with Spokony scheduled for May 23, because she was allegedly interviewing new counsel.[86] On that same day, Anderson submitted a Non–Contract Grievance Form to the **First** Department, which included her allegations of whitewashing and Cohen's assault and also mentioned unspecified instances of "disparate treatment."[87] Anderson's grievance was never addressed because she was terminated shortly after its filing.

The final decision to terminate Anderson was made with the approval of Presiding Justice Jonathan Lippman.[88] Shortly after Justice Lippman commenced his duties as Presiding Justice in May 2007, Wolfe apprised him of the employment situation with Anderson and the DDC.[89]

EXHIBIT 30
Page 386 of 808

Case 2:23-cv-04388-MEMF-E Document 22-4 Filed 03/08/23 Page 79 of 132 Page ID #:785

Anderson v. State of New York, Office of Court Admin. of..., 614 F.Supp.2d 404...

Justice Lippman acknowledged receipt of the documents appended to Spokony's April 12, 2007 Memorandum and discussed the Anderson matter with Spokony in some detail.[90] Justice Lippman noted that no objection to Anderson's proposed termination had been raised by any of the Justices of the DDC Liaison **Committee** (the "Justices").[91] Justice Lippman also discussed the matter with former Presiding Justice Peter Tom.[92] Based on Spokony's recommendation and discussions with his fellow Justices, Justice Lippman concluded that Anderson's ongoing resistance to the instructions contained in the Spokony Report constituted insubordination warranting her dismissal.[93] However, before Anderson was terminated, the Justices of the Liaison **Committee** asked Spokony to check into Cohen's handling of the H. matter given Anderson's allegations.[94] Spokony did so—by reading the H. file and discussing the matter with Cohen—and reported to the Justices that Cohen had acted properly.[95] The Justices then approved **\*415** the final decision and Justice Lippman authorized Spokony to terminate Anderson's employment.[96] Anderson was terminated effective June 8, 2007.[97]

## F. Plaintiff's Evidence of Racial Animus[98]

At her deposition, Anderson acknowledged that she has no evidence of racial bias on the part of Spokony and Cahill.[99] Plaintiff attempts to show racial bias on Cohen's part by referencing several racist comments she allegedly made. For example, Anderson testified that in 2005, in her presence and that of two other DDC employees, Cohen remarked that she hated homeless people because they are "smelly" and that she does not like to see so many blacks in the subways.[100] In addition, Cohen allegedly told Anderson in 2006 that she wasn't happy that so many "black rappers" were moving near her vacation home, "buying property with their gold chains, with all those gold chains."[101] Plaintiff does not link these comments with the decision to terminate her employment in June 2007.

Plaintiff also attempts to show racial animus on Cohen's part by recounting the experiences of other DDC employees of color. In particular, Anderson deposed two present and one former DDC employees: Nicole Corrado, Monique Hudson, and Kenneth Van Lew. Corrado testified as to her subjective belief that Cohen was racist, citing an incident where Cohen referred to her vacation home gardener as "this little Mexican guy."[102] Corrado reported her belief that Cohen was a racist to Second Deputy Counsel Bratton who, according to Corrado, did not disagree with her "at all."[103] Hudson recounted her subjective belief that Cohen discriminated against people of color including Joseph Wiggly, Grace Jacobs, Nina

Windfield, Marcy Sterling, and Patricia Wilson.[104] Hudson testified that she believed that Cohen was harassing Anderson in an effort to get rid of her.[105] Hudson also believed that Cohen was discriminating against her by arbitrarily enforcing DDC's time and attendance **\*416** requirements.[106]

Van Lew submitted an affidavit to support his allegation that DDC employees of color were being singled out and treated negatively by Cohen.[107] Van Lew reportedly witnessed Cohen discriminate against employees of color "by routinely harassing, demeaning, and micro-managing them, until they are eventually forced out of their jobs."[108] Van Lew also claims that Cohen treated him differently than similarly situated Caucasian employees with regard to schedule flexibility, sick day documentation, docking of pay, and a new computer request.[109] In sum, Van Lew claims that Cohen's "harassment of [him] as an African-American unquestionably forced [his] constructive discharge from the DDC."[110]

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[111] An issue of fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' "[112] A fact is material when it " 'might affect the outcome of the suit under the governing law.' "[113] "It is the movant's burden to show that no genuine factual dispute exists."[114]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. "Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' "[115] To do so, the non-moving party must do more than show that there is " 'some metaphysical doubt as to the material facts,' "[116] and it " 'may not rely on conclusory allegations or unsubstantiated speculation.' "[117] However, **\*417** " 'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.' "[118]

In determining whether a genuine issue of material fact

EXHIBIT 30
Page 387 of 808

exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.[119] However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.' "[120] Summary judgment is therefore "only appropriate when there is no genuine issue as to any material fact, making judgment appropriate as a matter of law."[121]

" 'It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.' "[122] "Courts within the Second Circuit have not hesitated to grant defendants summary judgment in such cases where ... plaintiff has offered little or no evidence of discrimination."[123] Indeed, " '[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.' "[124]

However, greater caution must be exercised in granting summary judgment in employment discrimination cases where the employer's intent is genuinely at issue and circumstantial evidence may reveal an inference of discrimination.[125] This is so because " '[e]mployers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law.' "[126] But " '[e]ven in the discrimination context, a plaintiff must prove more than conclusory allegations of discrimination to defeat a motion for summary judgment.' "[127] " '[M]ere conclusory allegations, speculation or conjecture will not avail a party **418 resisting summary judgment.' "[128]

## B. Discrimination Under Title VII

### 1. Unlawful Termination

"To withstand a motion for summary judgment, a discrimination plaintiff must withstand the three-part burden-shifting laid out by *McDonnell Douglas Corp. v. Green*"[129] "[T]he initial burden rests with the plaintiff to establish a prima facie case of discrimination."[130] A plaintiff meets this burden by showing that: (1) she falls within a protected group; (2) she was qualified for the position she held; (3) she was subject to an adverse employment action; and (4) the adverse employment action was taken under circumstances giving rise to an inference of unlawful discrimination.[131] The Second Circuit has "characterized the evidence necessary to satisfy this initial burden as 'minimal' and 'de minimis.' "[132]

Once a plaintiff establishes a prima facie case, a rebuttable presumption of unlawful discrimination arises and the burden of production shifts to the employer to proffer a "legitimate, nondiscriminatory reason" for the challenged employment action.[133] "If the defendant articulates such a reason, 'the presumption of discrimination drops out,' and the plaintiff must 'prove that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' "[134] At this final stage of analysis, courts must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.' "[135] In other words, plaintiff is left with the final burden of proving that her race " 'was the real reason' for any adverse employment action."[136] Direct evidence is not required; circumstantial evidence will suffice.[137]

### 2. Hostile Work Environment

[1] Hostile work environment claims brought under New York state law are governed by the same standards applicable to claims brought under Title VII.[138] To **419 prevail on a hostile work environment claim, a plaintiff must show:

(1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.[139]

"This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive."[140] Of course, the conduct creating the hostile work environment must have been motivated by the protected characteristic, *e.g.,* race.[141]

[2] "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.' "[142] Isolated acts do not generally meet the threshold of severity or pervasiveness.[143] In determining whether there is a hostile work environment, courts must look at the following factors:

(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what

EXHIBIT 30
Page 388 of 808

psychological harm, if any, resulted.[144]

[3] In sum, "a plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment."[145] In considering the above factors, however, courts must keep in mind that Title VII is not a workplace "civility code."[146]

**\*420 C. Section 1983 First Amendment Retaliation Claim**

Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere."[147] In order to state a claim under section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution.[148]

[4] To establish a retaliation claim in violation of the **First** Amendment right to free speech, a plaintiff must show *first,* that the speech at issue was protected; *second,* that she suffered an adverse employment action; and *third,* that there exists a causal connection between the speech and the adverse employment action.[149] With respect to the **first** prong, the Supreme Court has made clear that "public employees do not surrender all of their **First** Amendment rights by reason of their employment."[150] "Whether public employee speech is protected from retaliation under the **First** Amendment entails two inquiries: (1) 'whether the employee spoke as a citizen on a matter of public concern' and, if so, (2) 'whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.' "[151]

[5] The Supreme Court has stated that when a public employee makes statements pursuant to her official duties, she does not speak as a citizen for **First** Amendment purposes.[152] Accordingly, "the Constitution does not insulate her communications from employer discipline" based on the employer's reaction to the speech.[153] Thus, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."[154] The Supreme Court has rejected the "notion that the **First** Amendment shields from discipline **\*421** the expressions employees make pursuant to their professional duties."[155]

"Employee expression is not a matter of public concern when it 'cannot be fairly considered as relating to any

matter of political, social, or other concern to the community.' "[156] " '[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision.' "[157] "In making its determination, the court should focus on the motive of the speaker, and attempt to discern whether the speech was calculated to redress personal grievances or whether it had a broader public purpose."[158]

[6] If an employee spoke as a citizen on a matter of public concern, a **First** Amendment claim may, but does not automatically, arise. The next question is "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public."[159] "This consideration reflects the importance of the relationship between the speaker's expressions and employment. A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations."[160] "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively."[161] Thus, a balance has been sought "both to promote the individual and societal interests that are served when employees speak as citizens on matters of public concern and to respect the needs of government employers attempting to perform their important public functions."[162]

**III. DISCUSSION**

**A. Discrimination Claims**

**1. Unlawful Termination**

[7] Plaintiff claims that she was "singled out for discriminatory and abusive treatment," which included being summarily discharged from employment "without cause" because of her race, color, and/or national origin.[163] Plaintiff's unlawful termination claim fails, however, because the circumstances surrounding her discharge **\*422** do not give "rise to an inference of" discrimination.[164] Given the absence of any evidence of discrimination on the part of Spokony and Cahill, Anderson must show that Cohen tainted the **First** Department's termination decision with discriminatory animus. To do this, Anderson must show that: (1) Cohen

EXHIBIT 30
Page 389 of 808

Case 2:23-cv-04178-MEMF-ADS Document 22-4 Filed 03/08/23 Page 282 of 1132 Page ID #:788

Anderson v. State of New York, Office of Court Admin. of..., 614 F.Supp.2d 404...

had a role in the decision-making process; (2) Cohen discriminated against Anderson because of her race, color and/or national origin; and (3) the Justices' decision-making process was influenced by Cohen's discriminatory animus.

As for the **first** requirement, Cohen may have influenced the termination decision, albeit indirectly, by supplying the ultimate decision makers with information about Anderson. Both Wolfe and Spokony relied on Cohen to inform them about Anderson's employment situation. Their reliance is evidenced by the fact that Spokony's recommendation to terminate Anderson came one day after Cohen forwarded to Wolfe numerous e-mails she received from Anderson. In addition, the Justices relied on information tunneled to Spokony and Wolfe from Cohen. For example, when the Justices asked Spokony to investigate the matter of "H." before terminating Anderson, Spokony spoke only to Cohen. Given the significance of Cohen's input, plaintiff's unlawful termination claim is not foreclosed by the absence of " 'evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the ... process.' "[165]

With regard to the second requirement, Anderson's evidence of Cohen's discriminatory animus consists, in part, of the three statements allegedly made by Cohen in Anderson's presence. One of those statements, the statement about "smelly" homeless people, does not relate to race, color or national origin and can therefore be completely discounted. The other two remarks—about too many blacks in the subway and black rappers moving near Cohen's vacation home—are not particularly probative of discrimination for several reasons, whether or not they are categorized as "stray comments."[166] **First**, because the comments were not made by a decision-maker, they may be considered stray comments.[167] **Second**, the comments were temporally remote to plaintiff's termination, having allegedly been uttered in 2005 and 2006.[168] Finally, the comments were not directed toward plaintiff, and were unrelated to her discharge.[169] In **\*423** sum, the race-related comments allegedly made by Cohen are insufficient to establish race discrimination with respect to Anderson's termination.

In addition to Cohen's comments, plaintiff attempts to show bias through the deposition testimony of two DDC employees, Corrado and Hudson, and an affidavit from a former DDC employee, Van Lew. Corrado and Hudson stated their subjective belief that Cohen discriminated against DDC employees of color. However, their statements are conclusory and devoid of any factual

circumstances linking Cohen to any discriminatory conduct.[170] Van Lew, on the other hand, provides concrete instances in which he believes he was treated less favorably by Cohen than similarly situated Caucasian employees.[171] The specific instances of discrimination described by Van Lew provide some credible evidence that Cohen's conduct toward employees of color, including Anderson, was motivated, at least in part, by racial animus.

Assuming, then, that Anderson has shown that Cohen's conduct toward her was racially motivated, there simply is no evidence that Cohen's racial bias tainted the Justices' ultimate decision to terminate her. The Justices established a mediation panel in September 2006 in order to assess and resolve the conflict between Anderson and Cohen stemming, in part, from the July 2006 incident. The mediation panel interviewed Anderson separately from Cohen to give her ample opportunity to express her point of view. In addition to the panel's interviews, the Justices had a host of documents detailing Anderson's persistent campaign to avoid and discredit Cohen.[172] While some of the information conveyed to the Justices did, in fact, come from Cohen, there is no evidence that Cohen editorialized or filtered the information she submitted in such a way as to advance any discriminatory motives. To the contrary, Anderson's verbal and written communications, along with the attachments appended to the April 12, 2007 Memorandum, gave the Justices more than enough objective information in which to conduct an "independent evaluation" of Anderson's situation. The Justices' final decision in favor of termination is thus not vulnerable to attack.[173] Because plaintiff has failed to establish a prima facie case with regard to her discharge, her unlawful termination claim must be dismissed.[174]

### \*424 2. Hostile Work Environment

[8] [9] Anderson claims, under federal and state law, that she was subjected to a hostile work environment because of her race, color and national origin.[175] In creating a hostile work environment, Anderson alleges that defendants: accused her of refusing to follow instructions; gave her a negative performance evaluation; and subjected her to an unwarranted counseling session.[176] In addition, Cohen is alleged to have made racist remarks.[177] Negative job evaluations and increased scrutiny, without any attendant consequences such as demotion or diminution of wages, are not considered adverse employment actions which can support a hostile work environment claim.[178] Furthermore, Cohen's alleged racist remarks, which plaintiff heard over the course of several

EXHIBIT 30
Page 390 of 808

years, do not constitute pervasive conduct amounting to a hostile work environment.[179] Accordingly, plaintiff's hostile work environment claim must be dismissed because: (1) when viewed objectively, the conduct in issue was not sufficiently severe or pervasive to alter the conditions of her employment;[180] and (2) there is no evidence that the conduct occurred because of plaintiff's race, color or national origin.[181]

Anderson appears to concede the futility of her hostile work environment claim when she states: "Assuming that under federal law the harassment that Anderson experienced did not rise to a hostile work environment, under the New York City Human Rights Law ('NYC HRL') it did."[182] Plaintiff notes that the Local Civil Rights Restoration Act of 2005 amended the HRL to provide for "a more protective standard for determining workplace harassment than federal and New York State law."[183] However, because plaintiff's Second Amended Complaint alleges hostile work environment claims under *425 federal and state law only, this new claim premised on the NYC HRL is precluded.[184] Accordingly, plaintiff's hostile work environment claims are dismissed.

In sum, Anderson's unlawful termination claim is dismissed because she has failed to establish a prima facie case and, even if she had, she has failed to rebut defendants' legitimate, nondiscriminatory reason as a pretext for unlawful discrimination. In addition, Anderson's hostile work environment claims are dismissed because the conduct of which she complains was not sufficiently severe to alter the conditions of her employment.

### 3. Section 1981

[10] Plaintiff has brought a claim under section 1981 against all defendants, alleging that they have denied her the "rights to full and equal benefit of the laws as a result of her race with respect to the performance, modification, and termination of Plaintiff s contract and contractual employment relationship, and with respect to the enjoyment of all benefits, privileges, terms, and conditions of that contractual relationship."[185] To establish a claim under section 1981, plaintiff must show that: (1) she is a member of a racial minority group; (2) defendants intended to discriminate against her on the basis of race; and (3) the discrimination concerned one of the activities enumerated in section 1981[186] which includes the right to make and enforce contracts, the right to sue, and the right "to the full and equal benefit of all laws and proceedings for the security of persons and property."[187]

[11] Plaintiff's efforts to establish the second element of a section 1981 claim—intentional discrimination on the basis of race—are subject to the same burden-shifting analysis as intentional discrimination claims brought under Title VII.[188] Intentional discrimination is a necessary element of an employment discrimination claim under both section 1981 and Title VII.[189] Thus, "a failure to establish sufficient evidence of discriminatory intent to survive summary judgment on a Title VII claim is fatal to a similar claim of racial discrimination under § 1981."[190] Because plaintiff has failed to show intentional discrimination by any of the defendants, her section 1981 claim must be dismissed in its entirety.[191]

### *426 4. Section 1983

[12] Plaintiff has brought a claim against all defendants pursuant to section 1983 for the alleged violation of her rights under the Fourteenth Amendment to the United States Constitution.[192] In particular, plaintiff claims that her rights to equal protection and due process were violated when defendants discriminated against her on account of her race, color, and national origin.[193] However, Anderson's section 1983 claim must be dismissed against the governmental entity defendants (N.Y.S and OCA) and the individual defendants in their official capacities on the basis of sovereign immunity under the Eleventh Amendment.[194]

[13] Plaintiff's only remaining claims under section 1983 are against the individual defendants acting in their individual capacities.

> To state a prima facie case under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must demonstrate that she: (1) is a member of a protected class; (2) is otherwise similarly situated to members of the unprotected class; (3) suffered an adverse employment action; (4) was treated differently from members of the unprotected class; and (5) the defendant acted with discriminatory intent.[195]

Here, Anderson clearly fails to satisfy the second and fourth prongs as her Second Amended Complaint is devoid of any comparison to similarly situated Caucasian Principal Attorneys accused of insubordination who were treated more favorably than Anderson. Accordingly,

EXHIBIT 30
Page 391 of 808

because plaintiff's equal protection claim cannot withstand summary judgment, it must be dismissed.

[14] With regard to her due process claim, Anderson must show the following three elements to support a claim of an unconstitutional taking in violation of the Fourteenth Amendment and section 1983: (1) a property interest; (2) that has been taken under the color of state law; (3) without due process or just compensation.[196] With regard to the **first** requirement—a property interest—plaintiff has not shown that she had tenure or any other specific guarantee of employment. Thus, her employment at DDC can be described as "at-will." Consequently, plaintiff's procedural due process claims fails "because at-will employment is not a constitutionally protected property interest."[197] As a result, her due process claim must also be dismissed.

## *427 B. Plaintiff's First Amendment Retaliation Claim

### 1. Plaintiff Engaged in Protected Speech

[15] In her Second Amended Complaint, Anderson alleges that she

> was targeted for harassment and abuse, and was retaliated against, after she discovered and reported acts of misconduct and corruption within the DDC, which constituted an abuse of the power and a fraud upon the public. The conduct and actions of defendants in retaliating against Plaintiff and subjecting her to a hostile work environment, culminating in the constructive demotion and termination of her position and employment, were wrongful, oppressive and unlawfully taken in retaliation against her for having exercised her Constitutional Right of Free Speech as a private citizen regarding matters of public concern to the community.[198]

"Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record."[199] At issue is whether the employee's speech was "calculated to redress personal grievances or whether it had a broader

public purpose."[200] Accordingly, this Court must evaluate whether Anderson's alleged whistle-blowing comments were made in her role as a Principal Attorney fulfilling her professional responsibilities or as a private citizen concerning matters of public concern.

Defendants argue that plaintiff was not speaking as a citizen on matters of public concern when she criticized the DDC for alleged whitewashing because plaintiff: (1) did not speak out in public, nor did she express an intention to do so, before filing the instant action; and (2) did not make any statements about *quid pro quo* corruption on the part of any DDC personnel. Defendants further argue that Anderson's "disputes with how the DDC was handling certain cases were limited to disagreement with the prosecutorial discretion exercised by her superiors."[201]

> Anderson's deposition testimony acknowledged that DDC operates in a manner analogous to a prosecutor's office, that prosecutorial discretion needs to be applied as part of DDC's work, and that reasonable attorneys can differ on application of prosecutorial discretion. The comments Anderson claims to have made merely reflect differences in approach concerning specific case handling in a few instances and differences in how hard the office should press on charges in prosecutions. Discussion with colleagues about the use of prosecutorial discretion is a necessary and expected part of a DDC attorney's work. The comments plaintiff claims she made about the use of discretion in specific cases simply cannot be transformed into speech on systemic claims of corruption.[202]

**\*428** *Garcetti* and its progeny dictate that speech made by a public employee pursuant to her professional duties does not fall under the purview of the **First** Amendment because it is not spoken as a private citizen. *Garcetti* involved a deputy district attorney who claimed that he was retaliated against for recommending the dismissal of a case because of a flawed affidavit used to obtain a critical search warrant.[203] The Court found that the plaintiff's speech was not protected because it was "made pursuant to his duties as a calendar deputy."[204] In finding that the plaintiff was acting as a public employee with regard to an internal matter, the Court noted that "[plaintiff] spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case."[205] Exercising similar reasoning, district courts in the Second Circuit have dismissed **First** Amendment retaliation claims where plaintiffs have alleged that their protected speech resulted from the fulfillment of job duties.[206]

This case is patently distinguishable from *Garcetti*.

EXHIBIT 30
Page 392 of 808

Whereas the prosecutor in *Garcetti* spoke out about a single case pending in his office, Anderson spoke out about systemic problems at the DDC, thereby making her speech protected.[207] Where a public employee's speech concerns a government agency's breach of the public trust, as it does here, the speech relates to more than a mere personal grievance and therefore falls outside *Garcetti*'s restrictions.[208]

Furthermore, plaintiff did not engage in speech pursuant to her official duties as a Principal Attorney for the DDC when she complained about whitewashing. Anderson's job duties as a Principal Attorney were to "research legal questions and issues, organize complex investigations, prepare and present complex cases before administrative tribunals and trial and appellate courts, and perform related duties."[209] Speaking out about improper DDC practices was clearly not one of Anderson's job duties. Cahill reinforced this point at a meeting held on October 11, 2006, where he told Anderson that "she did not make policy decisions [and] that her function was limited to matters assigned to her."[210] Because Anderson was not required **\*429** to speak out about DDC whitewashing cases, she expressed her views as a private citizen, not as a public employee, under *Garcetti*.[211]

Moreover, the fact that Anderson expressed her views about the DDC within the workplace does not strip them of constitutional protection.[212] Although a statement made at work, and in private, may militate against a finding of public concern, it is not dispositive.[213] Indeed, the Supreme Court in *Garcetti* expressly noted that the fact that an employee engages in speech "inside his office, rather than publicly" is not dispositive because "[m]any citizens do much of their talking inside their respective workplaces[.]"[214] As such, it would undermine the goal of "treating public employees like any member of the general public to hold that all speech within the office is automatically exposed to restriction."[215] Here, Anderson engaged in speech in the workplace, but that does not preclude this Court from finding that her speech addressed a matter of public concern.

## 2. Plaintiff Suffered an Adverse Employment Action

[16] Plaintiff has offered sufficient facts to support her allegation that she suffered an adverse employment action. For purposes of a **First** Amendment retaliation claim, an employment action is adverse if it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights ...."[216] Anderson claims that she suffered two adverse employment actions:

"1) her discharge; and 2) the cumulative negative job actions taken against her which made her work environment 'unreasonably inferior and adverse.' "[217] Because it is beyond dispute that Anderson's discharge constituted an adverse employment action, she has satisfied this element.

## 3. There is a Material Question of Fact Regarding Causation

[17] A plaintiff can establish the causal connection necessary for a **First** Amendment retaliation claim by showing that her **\*430** protected activity was followed closely in time by the adverse employment action.[218] Temporal proximity is strong circumstantial evidence of improper intent.[219] While it is not the sole factor to be considered in establishing causation, nor is it dispositive, it creates a strong inference of causation, particularly where plaintiff does not allege that she engaged in numerous acts of speech over a long period of time.[220] There is no bright line for how close in time the adverse employment action must follow the protected activity in order to sustain the causation element.[221] There is, however, substantial authority holding that a period between five and six months is sufficient.[222]

Defendants argue that plaintiff's retaliation claim should be dismissed because she cannot show a causal connection between her protected speech and her eventual discharge.[223] In particular, defendants argue that plaintiff has no direct evidence of retaliatory motive and that she fails to show sufficient temporal proximity between the alleged whitewashing statements she made to Wolfe in August 2006 and her termination in June 2007.

Although defendants focus on the period between Anderson's conversation with Wolfe in August 2006 and her subsequent discharge in June 2007, there is evidence that Anderson complained about DDC whitewashing in November–December 2006, in connection with the case of "D.N."[224] And although Anderson's official discharge was in June of 2007, the decision initiating the termination process was made by Spokony in April 2007. Thus, using these alternative dates, the gap between the protected activity and the adverse employment action is approximately four months. There is, therefore, a material question of fact as to whether plaintiff has shown a causal connection between her protected speech and her discharge. Defendants' motion for summary judgment on Anderson's **First** Amendment retaliation claim is denied.

EXHIBIT 30
Page 393 of 808

#### 4. Motive

Defendants argue, in conclusory terms, that they would have fired Anderson, even in the absence of her protected activity, *431 because of her insubordination.[225] Whether defendants would have done so turns on motive, which ordinarily should not be decided on summary judgment.[226] This Court cannot assess whether defendants were motivated to fire Anderson because of her protected speech as opposed to other factors. Disentangling the permissible from the impermissible reasons for Anderson's termination is a matter for the jury, not this Court. Furthermore, there is a question of fact as to whether defendants tried to induce Anderson's insubordination by refusing to remove Cohen as her supervisor, in order to have a pretext for firing her. If so, Anderson's alleged insubordination is not the real reason for her discharge. "Where the employer provokes a reaction from an employee, that reaction should not justify a decision to impose a disproportionately severe sanction."[227] A reasonable jury could find that defendants refused to remove Cohen as Anderson's supervisor so they could use Anderson's inevitable resistance to Cohen's continuing supervision as a pretext for firing her, thereby obscuring their illegitimate and retaliatory discharge of plaintiff.

#### C. Plaintiff's Breach of Contract Claim

Plaintiff brings a state law breach of contract claim alleging that NYS and OCA

> entered into a contract of employment with Plaintiff which carried with it express and implied promises that Plaintiff would be protected under the terms of the contract, that these Defendants would honor the terms of the contract, and that they would not discriminate against her because of her National Origin, race or color during the course of her employment with the Defendants State and OCA.[228]

Plaintiff further alleges that NYS and OCA breached the contract of employment by: (1) discriminating against her on the basis of race, color and national origin; (2) summarily discharging her without a hearing; and (3) punishing her for adhering to and upholding the ethical rules of the legal profession.[229]

[18] Plaintiff's breach of contract claim fails as a matter of law for several reasons. *First,* I have already found that plaintiff has failed to offer proof that the relevant decision makers discriminated against Anderson when they terminated her employment. Nor has plaintiff shown that she was subjected to a hostile work environment for purposes of Title VII. This lack of discrimination under Title VII also dooms plaintiff's allegation that defendants NYS and OCA willfully and intentionally breached the contract of employment by discriminating against her.[230] *432 *Second,* plaintiff alleges that "Article 12.1 of the Union Agreement states that an attorney in Plaintiff's position 'shall not be removed or otherwise subjected to any **disciplinary** penalty ... except for incompetency or misconduct shown *after a hearing* upon stated charges ....' "[231] Defendants argue that as a Principal Attorney at the DDC, plaintiff was a "confidential employee" not covered by the Union Agreement's hearing requirement.[232] Anderson has failed to refute defendants' argument. Accordingly, the hearing requirement does not apply to Anderson who was an "at-will" employee. Failing to hold a hearing prior to the discharge of a confidential, at-will employee cannot, as a matter of law, support a claim for breach of an employment contract. Finally, plaintiff's third ground in support of her breach of contract claim relies on an alleged agreement—implicit in every employment relationship among lawyers according to Anderson—"that all lawyers shall conduct themselves in accordance with the prevailing legal codes of conduct and ethical standards applicable to all lawyers."[233] Plaintiff alleges that she was punished for reporting ethical misconduct in violation of this implicit requirement.[234] But this claim is duplicative of plaintiff's **First** Amendment retaliation claim and must be dismissed.[235] In sum, plaintiff's state law breach of contract claim is dismissed.

#### IV. CONCLUSION

For the foregoing reasons, plaintiff's discrimination claims are dismissed, as is her *433 breach of contract claim. Plaintiff's **First** Amendment retaliation claim remains. The Clerk of the Court is directed to close defendants' motion for summary judgment (Document # 63). A status conference is scheduled for May 8, 2009, at 5:30 p.m., in Courtroom 15C.

SO ORDERED:

**All Citations**

614 F.Supp.2d 404

EXHIBIT 30
Page 394 of 808

Anderson v. State of New York, Office of Court Admin. of..., 614 F.Supp.2d 404...

Footnotes

1   Defendants are two public entities—the State of New York ("NYS") and the Office of Court Administration of the Unified Court System ("OCA")—and three individuals—Thomas Cahill, Sherry Cohen and David Spokony.

2   Codified at 42 U.S.C. § 2000e *et seq.*

3   Plaintiff was born in Jamaica, West Indies, and has black, Asian and white ancestry. For the purposes of this action, she considers herself to be African–American. *See* Second Amended Complaint ("Cmpl.") ¶ 11.

4   *See id.* ¶ 17.

5   *See id.* ¶ 20.

6   *See* Defendants' Statement Pursuant to Local Rule 56.1 ("Def.56.1") ¶ 6.

7   *See id.*

8   *See id.* ¶ 4.

9   *See id.*

10  *See id.* ¶ 7.

11  *See* Cmpl. ¶ 26.

12  *See id.* ¶ 27.

13  *See id.*

14  *See id.* ¶ 28.

15  *See id.* ¶ 29.

16  Deposition of Christine Anderson ("Anderson Dep."), Ex. 1 to the Affirmation of John A. Beranbaum ("Beranbaum Aff"), plaintiff's counsel, at 82.

17  *See id.* at 81, 83–85, 86–87, 102, 120–22, 128, 129.

18  *See id.* at 76–77.

19  *See id.* at 77.

20  *See id.*

EXHIBIT 30
Page 395 of 808

21    *See id.* at 77–78; Deposition of Sherry Cohen ("Cohen Dep."), Ex. 5 to the Beranbaum Aff., at 64–66.

22    *See* Deposition of Thomas Cahill ("Cahill Dep."), Ex. 3 to the Beranbaum Aff., at 106.

23    *See* Anderson Dep. at 77.

24    *See* Declaration of David Spokony ("Spokony Decl."), Ex. E, at 2.

25    *See* Def. 56.1 ¶ 12.

26    *See id.*

27    *See id.*

28    *See id.* ¶ 13.

29    *See* Plaintiff's Response to Defendants' Statement Pursuant to Local Rule 56.1 ("Pl. 56.1") ¶ 13.

30    *See id.*

31    *Id.* Anderson claims that although the wound was not deep, there was some bleeding, which Anderson washed and bandaged by herself. *See* Anderson Dep. at 56. Defendants note that Anderson was able to go about her business the rest of the day. *See* Incident Report, Ex. B to the Spokony Decl, at 2.

32    *See* Def. 56.1 ¶ 13.

33    *Id.*

34    *See id.*

35    *See* Anderson Dep. at 88.

36    *See id.* at 89.

37    *See id.* at 92. The two incidents include the telephone call in which Cohen raised her voice and the office incident.

38    *See* Deposition of Catherine O'Hagan Wolfe ("Wolfe Dep."), Ex. 9 to the Beranbaum Aff, at 93.

39    *See* Anderson Dep. at 93 ("I have seen incidents of which I disapprove where the complainants are not being served.").

40    For example, Anderson spoke out once again against DDC practices in the course of working on the case of "D.N." In November and December 2006, Cohen and Cahill rejected Anderson's admonition of D.N. for intentional misrepresentation. With Cahill's concurrence, Cohen insisted that D.N. be admonished for a lesser violation. *See* Anderson Dep. at 84, 98–99. When Anderson objected to eliminating the more serious charge, Cohen removed her from the case and re-wrote the memorandum herself. *See id.* Anderson complained to Cohen and Cahill that the case of D.N. was symptomatic of the DDC not fulfilling its mandate.

EXHIBIT 30
Page 396 of 808

Anderson v. State of New York, Office of Court Admin. of..., 614 F.Supp.2d 404...

I went and I reported that to Cahill and I said to Cahill, I do not like the way selective respondents are treated, we are not fulfilling our mandate, we are shortchanging the public. I said, think of these poor people, these complainants who are not getting justice. I said, we are not fulfilling our mandate.
*Id.* at 85.

41   *Id.* at 98.

42   *Id.* at 95.

43   *See* Deposition of David Spokony ("Spokony Dep."), Ex. 8 to the Beranbaum Aff., at 20.

44   *See* 9/26/06 Memorandum from Spokony to Wolfe ("Spokony Report"), Ex. B to the Spokony Decl., at 3.

45   *See id.* at 4.

46   *See id.* at 5.

47   *See id.* at 3.

48   *See id.* at 5–6. Although one of the panel members suggested that Anderson could be supervised by a different attorney, Wolfe believed that the attorney lacked the appropriate supervisory skills. *See* Wolfe Dep. at 71.

49   *See* Spokony Report at 6 ("None of the words or actions used by Ms. Cohen were motivated by bias. Nothing in Ms. Anderson's account reflected that she was singled out unlawfully.").

50   *See* 9/29/06 Letter from Wolfe to Gary Phelan, plaintiff's former counsel, Ex. B to the Spokony Decl., at 7.

51   *See* 10/13/06 Appeal From Decision of the Appellate Division, **First** Department Matter of Christine C. Anderson, Esq. Re: Sherry K. Cohen ("Appeal"), Ex. B to the Spokony Decl., at 9.

52   *Id.* at 11.

53   *See* 10/24/06 Letter from Presiding Justice Buckley to Phelan, Ex. B to the Spokony Decl., at 13 ("The Clerk of the Court's acceptance of the Deputy Clerk of the Court's report is affirmed.").

54   *Id.* at 12.

55   *Id.* at 13.

56   *See* 10/20/06 E-mail from Anderson to Cahill, Ex. C to the Spokony Decl., at 1.

57   *See* Wolfe Dep. at 135.

58   *See* 2/19/07 Answer to Statement Set Forth in Counseling Meeting and Memorandum ("Answer"), Ex. D to the Spokony Decl., at 7 ("Among numerous examples [of harassment] was Ms. Cohen's new practice of asking for information as to an investigation, by voice mail, repeating that precise question via email and, again, at a meeting in her office. After six years working as a principal attorney and conducting investigations, Ms. Cohen has now recently begun to instruct me, via email, on how to conduct an investigation. Such conduct amounts to a virtual stalking of myself, by Ms. Cohen, and is plainly harassment of me.").

EXHIBIT 30
Page 397 of 808

79  5/9/07 E-mail from Anderson to Cohen, Ex. C to the Spokony Deck, at 15.

80  *Id.*

81  *Id.*

82  *Id.*

83  *See* Spokony Decl., Ex. C, at 11 (enclosing e-mails dated 1/18/07, 2/26/07, 2/28/07, 2/29/07, 3/15/07, 3/29/07, 4/4/07 and 4/10/07).

84  *See* 4/12/07 Memorandum.

85  *Id.*

86  *See* 5/18/07 E-mail from Anderson to Spokony, Ex. D to the Spokony Decl, at 11.

87  *See* Non–Contract Grievance Form, Ex. F to the Spokony Decl., at 4.

88  *See* Declaration of Presiding Justice Jonathan Lippman ("Lippman Decl.") ¶ 4.

89  *See id.*

90  *See id.* ¶ 5.

91  *See id.*

92  *See id.* ¶ 6.

93  *See id.* ¶ 7.

94  *See* Def. 56.1 ¶ 39.

95  *See* 5/24/07 Memorandum from Spokony to Justices, Ex. E to the Spokony Decl., at 2 ("The file in the 'H' reflects that this matter was properly investigated and evaluated. The final 20–page recommendation to the **Disciplinary Committee** was made on the basis of discretion, experience and considered professional prosecutorial judgment.").

96  *See* Lippman Decl. ¶ 8.

97  *See* Def. 56.1 ¶ 35. Although Cohen was aware that Anderson might be terminated, she was not notified of her actual termination until it occurred. *See id.* ¶ 36.

98  In the Factual Background section of her Second Amended Complaint, Anderson alleges that she was discriminated against on account of her race, not her national origin. *See* Cmpl. ¶ 30 ("Cohen also discriminated against Plaintiff because of her race, and against other non-white employees in the office.... Plaintiff was aware of a number of reports of racial discrimination and harassment by Cohen against other employees of color."). Thus, plaintiff's claims of national origin discrimination are subsumed

EXHIBIT 30
Page 398 of 808

117   *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir.2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir.2001)).

118   *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir.2006) (quoting *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505).

119   See *Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir.2008) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir.2005)).

120   *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir.2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir.1997)). *Accord Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

121   *Karpova v. Snow*, 497 F.3d 262, 270 (2d Cir.2007) (citing *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 486–87 (2d Cir.2006)).

122   *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir.2001) (quoting *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001)). *Accord Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) ("the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to ... other areas of litigation.").

123   *Alphonse v. State of Connecticut Dep't of Admin. Servs.*, No. Civ.3:02CV1195, 2004 WL 904076, at *7 (D.Conn. Apr. 21, 2004) (quotation marks and citation omitted).

124   *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir.2004) (quoting *Abdu–Brisson*, 239 F.3d at 466) (alteration in original).

125   See *id.*

126   *Sadki v. Suny Coll. at Brockport*, 310 F.Supp.2d 506, 515 (W.D.N.Y.2004) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir.1999) (quotation marks and citation omitted, alteration in original)).

127   *Flakowicz v. Raffi Custom Photo Lab, Inc.*, No. 02 Civ. 9558, 2004 WL 2049220, at *8 (S.D.N.Y. Sept. 13, 2004) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997)).

128   *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir.2003) (quoting *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir.1996) (alteration in original)). *Accord Cameron v. Community Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir.2003) ( " '[P]urely conclusory allegations of discrimination, absent any concrete particulars,' are insufficient" to satisfy an employee's burden on a motion for summary judgment.) (quoting *Meiri*, 759 F.2d at 998) (alteration in original).

129   *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir.2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Woodman v. WWOR–TV*, 411 F.3d 69, 76 (2d Cir.2005) (applying *McDonnell Douglas* framework to age discrimination claim)).

130   *Cross v. New York City Transit Auth.*, 417 F.3d 241, 248 (2d Cir.2005).

131   See *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir.2003); *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir.2001).

132   *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir.2001). *Accord Woodman*, 411 F.3d at 76.

133   *Woodman*, 411 F.3d at 76.

134   *Id.* (quoting *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir.2001)).

135   *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir.2000) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

EXHIBIT 30
Page 399 of 808

136    *Cross*, 417 F.3d at 248 (quoting *Schnabel*, 232 F.3d at 87).

137    *See Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir.1998).

138    *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir.2006) ("Hostile work environment and retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII.")

139    *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir.1996) (quotation marks and citation omitted). *Accord Mack v. Otis Elevator Corp.*, 326 F.3d 116, 122–23 (2d Cir.2003); *Alfano v. Costello*, 294 F.3d 365, 373–74 (2d Cir.2002).

140    *Id.* at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

141    *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir.2001) ( "It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic") (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79–80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).

142    *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir.2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997)).

143    *See Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir.1999).

144    *Richards v. NYC Dep't of Homeless Servs.*, No. 05 CV 5986, 2009 WL 700695, at *7 (E.D.N.Y. Mar. 15, 2009) (quoting *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir.1999) (quotation marks and citations omitted)).

145    *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997)).

146    *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). *See also Ricks v. Conde Nast Publications Inc.*, 92 F.Supp.2d 338, 345 (S.D.N.Y.2000) (conduct that is "merely offensive, unprofessional or childish is not discriminatory conduct proscribed by Title VII"); *Curtis v. Airborne Freight Co.*, 87 F.Supp.2d 234, 250 (S.D.N.Y.2000) (Title VII does not "protect plaintiffs from undiscriminating intimidation by bullish and abusive supervisors"); *Forts v. City of New York Dep't of Corr.*, No. 00 Civ. 1716, 2003 WL 21279439, at *4 (S.D.N.Y. June 4, 2003).

147    *Morris–Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir.2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).

148    *See Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir.2004).

149    *See Singh v. City of New York*, 524 F.3d 361, 372 (2d Cir.2008) (citing *Cioffi v. Averill Park Cent. School Dist.*, 444 F.3d 158, 162 (2d Cir.2006)). *See also Skehan v. Village of Mamaroneck*, 465 F.3d 96, 106 (2d Cir.2006) (rephrasing the test for a **First** Amendment retaliation claim as three-pronged, requiring a plaintiff to prove: "(1) [she] engaged in constitutionally protected speech because [she] spoke as [a] citizen[ ] on a matter of public concern; (2) [she] suffered an adverse employment action; and (3) the speech was a motivating factor in the adverse employment decision") (quotation marks and citation omitted).

150    *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).

151    *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir.2008) (quoting *Garcetti*, 547 U.S. at 417, 126 S.Ct. 1951).

152    *Garcetti*, 547 U.S. at 421, 126 S.Ct. 1951 ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for **First** Amendment purposes, and the Constitution does not insulate their communications from employer discipline.").

EXHIBIT 30
Page 400 of 808

153   *Id.*

154   *Id.* at 421–22, 126 S.Ct. 1951.

155   *Id.* at 426, 126 S.Ct. 1951 (stating that "[o]ur precedents do not support the existence of a constitutional cause of action behind every statement a public employee makes in the course of doing his or her job").

156   *Singh,* 524 F.3d at 372 (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).

157   *Id.* (quoting *Connick,* 461 U.S. at 147, 103 S.Ct. 1684).

158   *Hanig v. Yorktown Cent. School Dist.,* 384 F.Supp.2d 710, 722 (S.D.N.Y.2005) (citation omitted).

159   *Garcetti,* 547 U.S. at 418, 126 S.Ct. 1951 (citing *Pickering v. Board of Ed. of Township High Sch. Dist. 205, Will County,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).

160   *Id.*

161   *Id.* at 419, 126 S.Ct. 1951.

162   *Id.* at 420, 126 S.Ct. 1951.

163   Cmpl. ¶ 86. *See also* Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment ("Pl. Mem.") at 24 ("Anderson's race and national origin were contributing and motivating factors in defendants' hostile treatment toward Anderson that culminated in her discharge.").

164   *Lizardo v. Denny's, Inc.,* 270 F.3d 94, 101 (2d Cir.2001).

165   *Holcomb v. Iona Coll.,* 521 F.3d 130, 143 (2d Cir.2008) (quoting *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 450 (2d Cir.1999)).

166   The Second Circuit has counseled against reflexively ignoring comments labeled as "stray." *See Tomassi v. Insignia Fin. Group, Inc.,* 478 F.3d 111, 115–16 (2d Cir.2007) ("Where we described remarks as 'stray,' the purpose of doing so was to recognize that all comments pertaining to a protected class are not equally probative of discrimination and to explain in generalized terms why the evidence in the particular case was not sufficient. We did not mean to suggest that remarks should **first** be categorized either as stray or not stray and then disregarded if they fall into the stray category.").

167   *See Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171, 182 (2d Cir.1992) (describing remarks as "stray" when made "in the workplace by persons who are not involved in the pertinent decisionmaking process").

168   *See Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 162–63 (2d Cir.1998) (rejecting the label "stray" where decision-makers uttered age-related remarks near the time of plaintiff's discharge).

169   *See Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 92 n. 2 (2d Cir.2001) (characterizing remarks as "stray" where they were "unrelated to [the plaintiff's] discharge"); *Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 56 (2d Cir.1998) (explaining that the label "stray" is inappropriate where "other indicia of discrimination" tie the remarks to an adverse employment action).

170   *See Hester v. BIC Corp.,* 225 F.3d 178, 185 (2d Cir.2000) ( "[I]n an employment discrimination action, Rule 701(b) [of the Federal Rules of Evidence] bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision."); *Minus v. West,* No. 99–CV–7229, 2003 WL 21295122, at *4 (E.D.N.Y. May 30, 2003) (holding

EXHIBIT 30
Page 401 of 808

that a co-worker's conclusory allegation that an employer "did not want blacks in his office" was insufficient to withstand summary judgment).

171    *See* Van Lew Aff. ¶¶ 5, 6, 9, and 10.

172    *See* 4/12/07 Memorandum, Attachments 1–11.

173    *See Fullard v. City of New York,* 274 F.Supp.2d 347, 357 (S.D.N.Y.2003) ("The discriminatory animus of intermediate supervisors who have input in the decisionmaking process will not give rise to liability if the supervisor with final authority bases an adverse employment action exclusively on an independent evaluation.").

174    For purposes of this motion, the term "racial bias" includes bias based on color and/or national origin. Similarly, the term "racial discrimination" includes discrimination based on color and/or national origin. Even if plaintiff could establish a prima facie case of discrimination with regard to her termination, defendants have proffered a legitimate, nondiscriminatory reason for her discharge, namely, her insubordination toward Cohen. Plaintiff attempts to rebut this explanation by arguing that "defendants induced Anderson's alleged insubordination." Pl. Mem. at 27. The source of plaintiff s insubordination is irrelevant to the question of whether her behavior justified her termination. Plaintiff has thus failed to rebut defendants' proffered reason as a pretext for racial discrimination.

175    *See* Cmpl. ¶ 86 (Title VII), ¶ 124 (New York State Executive Law § 296).

176    *See id.* ¶ 86.

177    *See supra* Part I.F.

178    *See Weeks v. New York State (Div. of Parole),* 273 F.3d 76, 86 (2d Cir.2001); *Salerno v. Town of Bedford,* No. 05 Civ. 7293, 2008 WL 5101185, at *2 (S.D.N.Y. Dec. 3, 2008) ("But the mere filing of **disciplinary** charges against an employee, without more, does not constitute an adverse employment action.").

179    *See Danzer,* 151 F.3d at 56 (holding that stray remarks, without more, cannot get a Title VII discrimination case to a jury); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1306 n. 5 (2d Cir.1995) ("It is true that isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive.").

180    In order to survive summary judgment on a claim of hostile work environment, a plaintiff must produce evidence that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.' " *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

181    *See Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir.2002).

182    Pl. Mem. at 28.

183    *Id.*

184    *See Shah v. Helen Hayes Hosp.,* 252 Fed.Appx. 364, 366 (2d Cir.2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint."); *Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir.1998).

185    Cmpl. ¶ 93.

186    *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993).

EXHIBIT 30
Page 402 of 808

187 42 U.S.C. § 1981(a).

188 *See Jenkins v. NYC Transit Auth.,* 201 Fed.Appx. 44, 45–46 (2d Cir.2006) (citing *Gant ex rel. Gant v. Wallingford Bd. of Educ.,* 195 F.3d 134, 146 (2d Cir.1999)).

189 *See Patterson v. County of Oneida,* 375 F.3d 206, 226 (2d Cir.2004) ("[A] plaintiff pursuing a claimed violation of § 1981 ... must show that the discrimination was intentional."); *Choudhury v. Polytechnic Inst. of N.Y.,* 735 F.2d 38, 44 (2d Cir.1984) ("We have previously indicated that the same elements constitute a claim for employment discrimination under § 1981 as under Title VII.").

190 *Hill v. Rayboy–Brauestein,* 467 F.Supp.2d 336, 367–68 (S.D.N.Y.2006). *Accord Ani v. IMI Sys., Inc.,* No. 98 Civ. 8430, 2002 WL 1888873, at *20 (S.D.N.Y. Aug. 15, 2002) ("Since plaintiff's Title VII claims for disparate treatment, hostile environment and discriminatory discharge fail as a matter of law, necessarily his section 1981 claim and the mirror-image state-law ... claims are equally subject to summary judgment.").

191 Even if Anderson had met the second element of her section 1981 claim, she has not demonstrated that the alleged discrimination concerned one or more of the activities enumerated in the statute (*i.e.,* make and enforce contracts, sue and be sued, give evidence). As a result, her section 1981 claim fails as a matter of law for this independent reason.

192 *See* Cmpl. 111–119.

193 *See id.* ¶ 113. Plaintiff's due process claim is presumed to be a procedural due process claim.

194 *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 67, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). For purposes of this motion, it will be assumed that the individual defendants acted under color of state law.

195 *McPhaul v. Board of Comm'rs of Madison County,* 226 F.3d 558, 564 (7th Cir.2000) (citing *Greer v. Amesqua,* 212 F.3d 358, 370 (7th Cir.2000); *Jackson v. City of Columbus,* 194 F.3d 737, 751–52 (6th Cir.1999)).

196 *See Parratt v. Taylor,* 451 U.S. 527, 535–37, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

197 *Baron v. Port Authority of New York and New Jersey,* 271 F.3d 81, 89 (2d Cir.2001). *Accord Luck v. Mazzone,* 52 F.3d 475, 477 (2d Cir.1995) (employee "lacked state civil-service tenure or any other formal employment guarantee that would have given her a cognizable property interest in her job"); *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1062 (2d Cir.1993) ("An interest that state law permits to be terminated at the whim of another person is not a property right that is protected by the Due Process Clause.").

198 Cmpl. ¶ 101.

199 *Lewis v. Cowen,* 165 F.3d 154, 163 (2d Cir.1999) (citing *Connick v. Myers,* 461 U.S. 138, 147–48 & n. 7, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).

200 *Id.* at 163–64.

201 Def. Mem. at 24.

202 Defendants' Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment ("Reply") at 6.

203 *Garcetti,* 547 U.S. at 421, 126 S.Ct. 1951.

EXHIBIT 30
Page 403 of 808

204    *Id.*

205    *Id.*

206    *See, e.g., Ruotolo v. City of New York,* No. 03 Civ. 5045, 2006 WL 2033662, at *3–6 (S.D.N.Y. July 19, 2006) (dismissing **First** Amendment retaliation claim where plaintiff's alleged protected speech consisted of a report prepared pursuant to his professional duties as a police sergeant), *aff'd,* 514 F.3d 184 (2d Cir.2008); *Healy v. City of New York,* No. 04 Civ. 7344, 2006 WL 3457702, at *5 (S.D.N.Y. Nov. 22, 2006) (granting defendant's motion for summary judgment on plaintiff's **First** Amendment retaliation claim where plaintiff stated that his speech was made as part of his duties as defendant's employee), *aff'd,* 286 Fed.Appx. 744, 745 (2d Cir.2008).

207    *See Cotarelo v. Village of Sleepy Hollow Police Dep't,* 460 F.3d 247, 252 (2d Cir.2006) (holding that a public employee's speech about alleged job discrimination is protected so long as the claim concerns general bias problems and is not limited to instances affecting only the plaintiff).

208    *See Skehan v. Village of Mamaroneck,* 465 F.3d 96 (2d Cir.2006) ("Plaintiffs' speech plainly concerned issues of public concern: misfeasance within the police department and allegations of an ongoing cover-up and an attempt to silence those who spoke out against it."), *overruled on other grounds by Appel v. Spiridon,* 531 F.3d 138 (2d Cir.2008).

209    Principal Attorney Job Description, Ex. 12 to the Beranbaum Aff., at DDC 78.

210    10/12/06 Memorandum from Spokony to the Record, Ex. 12 to the Beranbaum Aff., at DDC 1768.

211    *See, e.g., Ventura v. Town of Manchester,* 3:06 CV 630(EBB), 2008 WL 4080099, at *17 (D.Conn. Sept. 2, 2008) (denying summary judgment where there was a factual question as to whether police officer was compelled to make complaints about his supervisor's alleged theft of overtime or did so voluntarily); *Casale v. Reo,* 522 F.Supp.2d 420, 423–24 (N.D.N.Y.2007) (denying summary judgment where there was insufficient evidence to show that school aide was required to participate in the investigation of a teacher's allegedly inappropriate behavior); *Paola v. Spada,* 498 F.Supp.2d 502, 508–09 (D.Conn.2007) (denying summary judgment where there were questions of fact as to whether State Trooper was expected to report all wrongdoing within his division); *Barclay v. Michalsky,* 451 F.Supp.2d 386, 395–96 (D.Conn.2006) (finding material issues of fact regarding whether nurse was required by her job duties to report misbehavior by colleagues, such as sleeping on the job and using excessive restraints on patients).

212    *See Garcetti,* 547 U.S. at 421, 126 S.Ct. 1951 ("The **First** Amendment protects some expressions related to the speaker's job."); *Morey v. Somers Cent. Sch. Dist.,* No. 06 Civ. 1877, 2007 WL 867203, at *10 (S.D.N.Y. Mar. 21, 2007) (holding that a school custodian's concerns about the presence of asbestos in the school were protected even though he expressed them in the ordinary course of his duties).

213    *See De Los Santos v. City of New York,* 482 F.Supp.2d 346, 353 (S.D.N.Y.2007).

214    *Garcetti,* 547 U.S. at 420, 126 S.Ct. 1951.

215    *Id.* at 420–21, 126 S.Ct. 1951 (quotation marks omitted).

216    *Zeinik v. Fashion Inst, of Tech.,* 464 F.3d 217, 225–26 (2d Cir.2006).

217    Pl. Mem. at 20 (quoting *Phillips v. Bowen,* 278 F.3d 103, 109 (2d Cir.2002)).

218    *See Gorman–Bakos v. Cornell Coop. Extension of Schenectady County,* 252 F.3d 545, 554 (2d Cir.2001).

EXHIBIT 30
Page 404 of 808

Anderson v. State of New York, Office of Court Admin. of..., 614 F.Supp.2d 404...

219   *See Anemone v. Metropolitan Transp. Auth.,* No. 05 Civ. 3170, 2008 WL 1956284, at *10 (S.D.N.Y. May 2, 2008) (citations omitted). *See also Gorman–Bakos,* 252 F.3d at 554 ("In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action. This court has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.") (quotation marks omitted).

220   *See McAllan v. Von Essen,* 517 F.Supp.2d 672, 683 (S.D.N.Y.2007).

221   *See id.*

222   *See, e.g., Gorman–Bakos,* 252 F.3d at 555 (five months); *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 45–46 (2d Cir.1980) (eight month gap between EEOC complaint and retaliatory act suggested causal relationship); *Agostino v. Simpson,* No. 08 Civ. 5760, 2008 WL 4906140, at *7 (S.D.N.Y. Nov. 11, 2008) (six months); *Bolick v. Alea Group Holdings, Ltd.,* 278 F.Supp.2d 278, 284 (D.Conn.2003) (six months).

223   Def. Mem. at 24. "The inadequacy of plaintiff s temporal showing is patent, where a period of eight months or more elapsed between arguably articulated complaints about case management and her termination." Reply at 2.

224   *See supra* n. 40.

225   *See* Def. Mem. at 24–25 (citing *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.,* 444 F.3d 158, 163 (2d Cir.2006) (on **First** Amendment claim, "employer may avoid liability by demonstrating that it would have taken the same adverse employment action 'even in the absence of the protected conduct' ") (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 286, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977))).

226   *See Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999) ( "Summary judgment is precluded where questions regarding an employer's motive predominate in the inquiry regarding how important a role the protected speech played in the adverse employment decision.").

227   *Sumner v. United States Postal Serv.,* 899 F.2d 203, 210 (2d Cir.1990) (identifying provocation by the employer as a factor supporting the finding of pretext).

228   Cmpl. ¶ 129.

229   *See id.* ¶¶ 131–133.

230   *Cf. Brzostowski v. Laidlaw Waste Sys., Inc.,* 49 F.3d 337, 339 (7th Cir.1995) ("If the plaintiff here had had an employment contract which protected her from being fired without cause, and she claimed that she was fired in violation both of the contract and of Title VII, these two claims would be the same claim for purposes of res judicata because, although they would not have the identical elements, the central factual issue would be the same in the trial of each of them. It would be whether she had been fired for cause, in which event the employer would be guilty neither of a breach of the employment contract nor of discrimination, or because of her [protected class], in which event the employer would be guilty of both a breach of contract and discrimination ....") (quotation marks and citation omitted).

231   *Id.* ¶ 132 (emphasis in original).

232   *See* Union Agreement, Article 12(c) (exempting confidential employees, including Principal Attorneys, from the Article's hearing requirement); *Murphy v. Rosenblatt,* 140 Misc.2d 450, 453 n. 1, 531 N.Y.S.2d 432 (1988) (employees designated as confidential "serve at the pleasure of the appointing authority and are ordinarily subject to termination at any time without a hearing").

233   Cmpl. ¶ 133 ("Indeed, implied in her employment relationship with Defendants State and OCA was the understanding that violating the prevailing rules and ethical standards of the legal profession would frustrate the very purpose of the employment

EXHIBIT 30
Page 405 of 808

Anderson v. State of New York, Office of Court Admin. of..., 614 F.Supp.2d 404...

relationship between the parties.").

234    *See id.* ("Defendants State and OCA breached their contract with Plaintiff by subjecting her (through their agents and employees) to a campaign of harassment, culminating in her constructive demotion and retaliatory discharge for adhering to and upholding the ethical rules of the legal profession.").

235    *Cf. Hamdy v. County of Niagara,* No. 00–CV–0708A, 2007 WL 295325, at *2 (W.D.N.Y. Jan. 30, 2007) ("Because the plaintiff's breach of contract claim is duplicative of his retaliation claims and affords him no greater relief than he would get under those claims, the Court declines to exercise supplemental jurisdiction over the breach of contract claim at this juncture. It would be cumulative, a waste of time and too confusing to submit essentially the same claim to the jury based upon two different theories. Accordingly, the Court will not submit the breach of contract claim ... to the jury.") (citing *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.,* 241 F.Supp.2d 1123, 1147 n. 13 (D.Kan.2002) (dismissing claim alleging breach of employment agreement as duplicative of retaliation claim)).

---

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT 30
Page 406 of 808

## Supreme Court, Appellate Division, All Departments

### Part 1240. RULES FOR ATTORNEY DISCIPLINARY MATTERS
(effective October 1, 2016)

<u>TABLE OF CONTENTS</u>

§ 1240.

| | | |
|---|---|---|
| 1. | Application | 1 |
| 2. | Definitions | 2 |
| 3. | Discipline Under These Rules Not Preclusive | 3 |
| 4. | Appointment of Committees | 4 |
| 5. | Committee Counsel and Staff | 5 |
| 6. | Conflicts; Disqualification from Representation | 6 |
| 7. | Proceedings Before Committees | 7 |
| 8. | Proceedings in the Appellate Division | 10 |
| 9. | Interim Suspension While Investigation or Proceeding is Pending | 13 |
| 10. | Resignation While Investigation or Proceeding is Pending | 14 |
| 11. | Diversion to a Monitoring Program | 15 |
| 12. | Attorneys Convicted of a Crime | 16 |
| 13. | Discipline for Misconduct in a Foreign Jurisdiction | 18 |
| 14. | Attorney Incapacity | 19 |
| 15. | Conduct of Disbarred or Suspended Attorneys | 20 |
| 16. | Reinstatement of Disbarred or Suspended Attorneys | 22 |
| 17. | Reinstatement of Incapacitated Attorneys | 24 |
| 18. | Confidentiality | 25 |
| 19. | Medical and Psychological Evidence | 26 |
| 20. | Abatement; Effect of Pending Civil or Criminal Matters, Restitution | 27 |
| 21. | Appointment of Attorney to Protect Interests of Clients or Attorney | 28 |
| 22. | Resignation for Non-disciplinary Reasons; Reinstatement | 29 |
| 23. | Volunteers/Indemnification | 30 |
| 23. | Costs and Disbursements | 31 |

EXHIBIT 30
Page 407 of 808

**Supreme Court, Appellate Division, All Departments**

Part 1240. RULES FOR ATTORNEY DISCIPLINARY MATTERS
(effective October 1, 2016)

# Appendices

Uniform Forms

Appendix A:
    Affidavit in Support of Application to Resign While Proceeding or Investigation is Pending (§1240.10)

Appendix B:
    Affidavit of Compliance for Disbarred or Suspended Attorneys (§1240.15 [f])

Appendix C:
    Application for Reinstatement to the Bar After Disbarment or Suspension for More Than Six Months (§1240.16 [b])

Appendix D:
    Application for Reinstatement to the Bar After Suspension for Six Months or Less (§1240.16 [d])

Appendix E:
    Affidavit in Support of Application to Resign for Non-Disciplinary Reasons (§1240.22 [a])

Appendix F:
    Affidavit in Support of Application for Reinstatement to the Bar After Non-Disciplinary Resignation (§1240.22 [b])

EXHIBIT 30
Page 408 of 808

**Supreme Court, Appellate Division, All Departments**
**Part 1240. RULES FOR ATTORNEY DISCIPLINARY MATTERS**
(effective October 1, 2016)

§ 1240.1 <u>Application</u>

These Rules shall apply to (a) all attorneys who are admitted to practice in the State of New York; (b) all in-house counsel registered in the State of New York; (c) all legal consultants licensed in the State of New York; (d) all attorneys who have an office in, practice in, or seek to practice in the State of New York, including those who are engaged in temporary practice pursuant to Part 523 of this Title, who are admitted <u>pro hac vice,</u> or who otherwise engage in conduct subject to the New York Rules of Professional Conduct; and (e) the law firms that have as a member, retain, or otherwise employ any person covered by these Rules.

1

EXHIBIT 30
Page 409 of 808

## § 1240.2 Definitions

(a) Professional Misconduct Defined. A violation of any of the Rules of Professional Conduct, as set forth in Part 1200 of this Title, including the violation of any rule or announced standard of the Appellate Division governing the personal or professional conduct of attorneys, shall constitute professional misconduct within the meaning of Judiciary Law §90(2).

(b) Admonition: discipline issued at the direction of a Committee or the Court pursuant to these Rules, where the respondent has engaged in professional misconduct that does not warrant public discipline by the Court. An Admonition shall constitute private discipline, shall be in writing, may be delivered to a recipient by personal appearance before the Committee or its Chairperson, and may be considered by a Committee or the Court in determining the action to be taken or the discipline to be imposed upon a subsequent finding of misconduct.

(c) Censure: censure pursuant to Judiciary Law §90(2).

(d) Committee: an attorney grievance committee established pursuant to these Rules.

(e) Complainant: a person or entity that submits a complaint to a Committee.

(f) Court: the Appellate Division of the Supreme Court of the State of New York for the Judicial Department having jurisdiction over a complaint, investigation, proceeding or person covered by these Rules.

(g) Disbar; Disbarment: to remove, or the removal, from office pursuant to Judiciary Law §90(2). Such terms shall also apply to any removal based upon a resignation for disciplinary reasons, a felony conviction, or the striking of an attorney's name from the roll of attorneys for any disciplinary reason, as stated in these Rules.

(h) Letter of Advisement: letter issued at the direction of a Committee pursuant to section 1240.7(d)(2)(iv) of these Rules, upon a finding that the respondent has engaged in conduct requiring comment that, under the facts of the case, does not warrant the imposition of discipline. A Letter of Advisement shall be confidential and shall not constitute discipline, but may be considered by a Committee or the Court in determining the action to be taken or the discipline to be imposed upon a subsequent finding of misconduct.

(i) Respondent: a law firm, an attorney or other person that is the subject of an investigation or a proceeding before the Committee or the Court pursuant to these Rules.

(j) Suspension: the imposition of suspension from practice pursuant to Judiciary Law §90(2).

2

EXHIBIT 30
Page 410 of 808

## § 1240.3 <u>Discipline Under These Rules Not Preclusive</u>

Discipline pursuant to these Rules shall not bar or preclude further or other action by any court, bar association, or other entity with disciplinary authority.

3

EXHIBIT 30
Page 411 of 808

## § 1240.4 <u>Appointment of Committees</u>

Each Department of the Appellate Division shall appoint such Attorney Grievance Committee or Committees (hereinafter referred to as "Committee") within its jurisdiction as it may deem appropriate. Each Committee shall be comprised of at least 21 members, of which no fewer than 3 members shall be non-lawyers. A lawyer member of a Committee shall be appointed to serve as Chairperson. All members of the Committee shall reside or maintain an office within the geographic jurisdiction of the Committee. Two-thirds of the membership of a Committee shall constitute a quorum for the conduct of business; all Committee action shall require the affirmative vote of at least a majority of the members present.

**4**

EXHIBIT 30
Page 412 of 808

### § 1240.5 <u>Committee Counsel and Staff</u>

Each Department of the Appellate Division shall appoint to a Committee or Committees such chief attorneys and other staff as it deems appropriate.

**5**

EXHIBIT 30
Page 413 of 808

## § 1240.6 Conflicts; Disqualifications from Representation

(a) No (1) current member of a Committee, (2) partner, associate or member of a law firm associated with a current member of a Committee, (3) current member of a Committee's professional staff, or (4) immediate family member of a current Committee member or Committee staff member, may represent a respondent or complainant in a matter investigated or prosecuted before that Committee.

(b) No referee appointed to hear and report on the issues raised in a proceeding under these Rules may, in the Department in which he or she was appointed, represent a respondent or complainant until the expiration of two years from the date of the submission of that referee's final report.

(c) No former member of the Committee, or former member of the Committee's professional staff, may represent a respondent or complainant in a matter investigated or prosecuted by that Committee until the expiration of two years from that person's last date of Committee service.

(d) No former member of the Committee, or former member of the Committee's professional staff, may represent a respondent or complainant in any matter in which the Committee member or staff member participated personally while in the Committee's service.

6

EXHIBIT 30
Page 414 of 808

**§ 1240.7 <u>Proceedings Before Committees</u>**

(a) <u>Complaint</u>

    (1) Investigations of professional misconduct may be authorized upon receipt by a Committee of a written original complaint, signed by the complainant, which need not be verified. Investigations may also be authorized by a Committee acting <u>sua sponte</u>.

    (2) The complaint shall be filed initially in the Judicial Department encompassing the respondent's registration address on file with the Office of Court Administration. If that address lies outside New York State, the complaint shall be filed in the Judicial Department in which the respondent was admitted to the practice of law or otherwise professionally licensed in New York State. The Committee or the Court may transfer a complaint or proceeding to another Department or Committee as justice may require.

(b) <u>Investigation; Disclosure</u>. The Chief Attorney is authorized to:

    (1) interview witnesses and obtain any records and other materials and information necessary to determine the validity of a complaint;

    (2) direct the respondent to provide a written response to the complaint, and to appear and produce records before the Chief Attorney or a staff attorney for a formal interview or examination under oath;

    (3) apply to the Clerk of the Court for a subpoena to compel the attendance of a person as a respondent or witness, or the production of relevant books and papers, when it appears that the examination of such person or the production of such books and papers is necessary for a proper determination of the validity of a complaint. Subpoenas shall be issued by the Clerk in the name of the Presiding Justice and may be made returnable at a time and place specified therein; and

    (4) take any other action deemed necessary for the proper disposition of a complaint.

(c) <u>Disclosure</u>. The Chief Attorney shall provide a copy of any complaint not otherwise disposed of pursuant to section 1240.7(d)(1) of these Rules within 60 days of receipt of that complaint. Prior to the taking of any action against a respondent pursuant to sections 1240.7(d)(2)(iv), (v) or (vi) of these Rules, the Chief Attorney shall provide the respondent with the opportunity to review all written statements and other documents that form the basis of the proposed Committee action, excepting material that is attorney work product or otherwise deemed privileged by statute or case law, and materials previously provided to the Committee by the respondent.

7

EXHIBIT 30
Page 415 of 808

(d) <u>Disposition</u>.

(1) Disposition by the Chief Attorney.

(i) The Chief Attorney may, after initial screening, decline to investigate a complaint for reasons including but not limited to the following: (A) the matter involves a person or conduct not covered by these Rules; (B) the allegations, if true, would not constitute professional misconduct; (C) the complaint seeks a legal remedy more appropriately obtained in another forum; or (D) the allegations are intertwined with another pending legal action or proceeding. The complainant shall be provided with a brief description of the basis of any disposition of a complaint by the Chief Attorney.

(ii) The Chief Attorney may, when it appears that a complaint involves a fee dispute, a matter suitable for mediation, or a matter suitable for review by a bar association grievance committee, refer the complaint to a suitable alternative forum upon notice to the respondent and the complainant.

(2) Disposition by the Committee. After investigation of a complaint, with such appearances as the Committee may direct, a Committee may take one or more of the following actions:

(i) dismiss the complaint by letter to the complainant and to the respondent;

(ii) when it appears that a complaint involves a fee dispute, a matter suitable for mediation, or a matter suitable for review by a bar association grievance committee, refer the complaint to a suitable alternative forum upon notice to the respondent and the complainant;

(iii) make an application for diversion pursuant to section 1240.11 of these Rules;

(iv) when the Committee finds that the respondent has engaged in conduct requiring comment that, under the facts of the case, does not warrant imposition of discipline, issue a Letter of Advisement to the respondent;

(v) when the Committee finds, by a fair preponderance of the evidence, that the respondent has engaged in professional misconduct, but that public discipline is not required to protect the public, maintain the integrity and honor of the profession, or deter the commission of similar misconduct, issue a written Admonition to the respondent, which shall clearly state the facts forming the basis for such finding, and the specific rule or other announced standard that was violated. Prior to the imposition of an Admonition, the Committee shall give the respondent 20 days' notice by mail of the Committee's proposed action and shall, at the respondent's request, provide the respondent an opportunity to appear personally before the Committee, or a subcommittee thereof, on such terms as the Committee deems just, to seek reconsideration of the proposed Admonition.

8

EXHIBIT 30
Page 416 of 808

(vi) when the Committee finds that there is probable cause to believe that the respondent engaged in professional misconduct warranting the imposition of public discipline, and that such discipline is appropriate to protect the public, maintain the integrity and honor of the profession, or deter others from committing similar misconduct, authorize a formal disciplinary proceeding as set forth in section 1240.8 of these Rules.

(3) As may be permitted by law, the complainant shall be provided with a brief description of the basis of any disposition of a complaint by the Committee.

(e) Review.

(1) Letter of Advisement.

(i) Within 30 days of the issuance of a Letter of Advisement, the respondent may file a written request for reconsideration with the chair of the Committee, with a copy to the Chief Attorney. Oral argument of the request shall not be permitted. The Chair shall have the discretion to deny reconsideration, or refer the request to the full Committee, or a subcommittee thereof, for whatever action it deems appropriate.

(ii) Within 30 days of the final determination denying a request for reconsideration, the respondent may seek review of a Letter of Advisement by submitting an application to the Court, on notice to the Committee, upon a showing that the issuance of the letter was in violation of a fundamental constitutional right. The respondent has the burden of establishing a violation of such a right.

(2) Admonition. Within 30 days of the issuance of an Admonition, the respondent may make an application to the Court, on notice to the Committee, to vacate the Admonition. Upon such application and the Committee's response, if any, the Court may consider the entire record and take whatever action it deems appropriate.

(3) Review of Dismissal or Declination to Investigate. Within 30 days of the issuance of notice to a complainant of a Chief Attorney's decision declining to investigate a complaint, or of a Committee's dismissal of a complaint, the complainant may submit a written request for reconsideration to the chair of the Committee. Oral argument of the request shall not be permitted. The Chair shall have the discretion to grant or deny reconsideration, or refer the request to the full Committee, or a subcommittee thereof, for whatever action it deems appropriate.

(4) As permitted by law, a respondent or complainant who has submitted a request for review pursuant to this section shall be provided with a brief description of the basis for the determination of such request. In the event that such review results in a change in the outcome of a determination, any respondent or complainant adversely affected thereby shall be provided with a brief description of the basis for the determination.

9

EXHIBIT 30
Page 417 of 808

**§ 1240.8 Proceedings in the Appellate Division**

    (a) Procedure for formal disciplinary proceedings in the Appellate Division.

        (1) Formal disciplinary proceedings shall be deemed special proceedings within the meaning of CPLR Article 4, and shall be conducted in a manner consistent with the rules of the Court, the rules and procedures set forth in this Part, and the requirements of Judiciary Law §90. Unless otherwise directed by the Court, there shall be (i) a notice of petition and petition, which the Committee shall serve upon the respondent in a manner consistent with Judiciary Law §90(6), and which shall be returnable on no less than 20 days' notice; (ii) an answer; and (iii) a reply if appropriate. Except upon consent of the parties or by leave of the Court or referee, no other pleadings or amendment or supplement of pleadings shall be permitted. All pleadings shall be filed with the Court. The Court shall permit or require such appearances as it deems necessary in each case.

        (2) Statement of Disputed Facts. Within 20 days after service of the answer or, if applicable, a reply, the Committee shall file with the Court a statement of facts that identifies those allegations that the Committee contends are undisputed and those allegations that the party contends are disputed and for which a hearing is necessary. Within 20 days following submission by the Committee, the respondent shall respond to the Committee's statement and, if appropriate, set forth respondent's statement of facts identifying those allegations that the respondent contends are undisputed and those allegations that the respondent contends are disputed and for which a hearing is necessary. In the alternative, within 30 days after service of the answer or, if applicable, a reply, the parties may (i) file a joint statement advising the Court that the pleadings raise no issue of fact requiring a hearing, or (ii) file a joint stipulation of disputed and undisputed facts.

        (3) Disclosure Concerning Disputed Facts. Except as otherwise ordered by the Court, a party must, no later than 14 days after filing a statement of facts with the Court as required by section 1240.8(a)(2) of these Rules, provide to any other party disclosure concerning the allegations that the party contends are disputed. The disclosure shall identify the following:

            (i) the name of each individual likely to have relevant and discoverable information that the disclosing party may use to support or contest the disputed allegation and a general description of the information likely possessed by that individual; and

            (ii) a copy of each document that the disclosing party has in its possession or control that the party may use to support or contest the allegation, unless copying such documents would be unduly burdensome or expensive, in which case the disclosing party may provide a description of the documents by category and location, together with an opportunity to inspect and copy such documents.

10

EXHIBIT 30

Page 418 of 808

(4) Subpoenas. Upon application by the Committee or the respondent, the Clerk of the Court may issue subpoenas for the attendance of witnesses and the production of books and papers before Court or the referee designated by the Court to conduct a hearing on the issues raised in the proceeding, at a time and place therein specified. When there is good cause to believe that a potential witness will be unavailable at the time of a hearing, the testimony of that witness may be initiated and conducted, and used at the hearing, in a manner provided by Article 31 of the New York Civil Practice Law and Rules.

(5) Discipline by Consent.

(i) At any time after the filing of the petition with proof of service, the parties may file a joint motion with the Court requesting the imposition of discipline by consent. The joint motion shall include:

(A) a stipulation of facts;

(B) the respondent's conditional admission of the acts of professional misconduct and the specific rules or standards of conduct violated;

(C) any relevant aggravating and mitigating factors, including the respondent's prior disciplinary record; and

(D) the agreed upon discipline to be imposed, which may include monetary restitution authorized by Judiciary Law §90(6-a).

(ii) The joint motion shall be accompanied by an affidavit of the respondent acknowledging that the respondent:

(A) conditionally admits the facts set forth in the stipulation of facts;

(B) consents to the agreed upon discipline;

(C) gives the consent freely and voluntarily without coercion or duress; and

(D) is fully aware of the consequences of consenting to such discipline.

(iii) Notice of the joint motion, without its supporting papers, shall be served upon the referee, if one has been appointed, and all proceedings shall be stayed pending the Court's determination of the motion. If the motion is granted, the Court shall issue a decision imposing discipline upon the respondent based on the stipulated facts and as agreed upon in the joint motion. If the motion is denied, the conditional admissions shall be deemed withdrawn and shall not be used against the respondent or the Committee in the pending proceeding.

11

EXHIBIT 30
Page 419 of 808

### § 1240.9 <u>Interim Suspension While Investigation or Proceeding is Pending</u>

(a) A respondent may be suspended from practice on an interim basis during the pendency of an investigation or proceeding on application or motion of a Committee, following personal service upon the respondent, or by substitute service in a manner approved by the Presiding Justice, and upon a finding by the Court that the respondent has engaged in conduct immediately threatening the public interest. Such a finding may be based upon: (1) the respondent's default in responding to a petition, notice to appear for formal interview, examination, or pursuant to subpoena under these Rules; (2) the respondent's admission under oath to the commission of professional misconduct; (3) the respondent's failure to comply with a lawful demand of the Court or a Committee in an investigation or proceeding under these Rules; (4) the respondent's willful failure or refusal to pay money owed to a client, which debt is demonstrated by an admission, judgment, or other clear and convincing evidence; or (5) other uncontroverted evidence of professional misconduct.

(b) An application for suspension pursuant to this rule may provide notice that a respondent who is suspended under this rule and who has failed to respond to or appear for further investigatory or disciplinary proceedings within six months from the date of the order of suspension may be disbarred by the Court without further notice.

(c) Any order of interim suspension entered by the Court shall set forth the basis for the suspension and provide the respondent with an opportunity for a post-suspension hearing.

(d) An order of interim suspension together with any decision issued pursuant to this subdivision shall be deemed a public record. The papers upon which any such order is based shall be deemed confidential pursuant to Judiciary Law §90(10).

13

EXHIBIT 30
Page 420 of 808

**§ 1240.10 <u>Resignation While Investigation or Proceeding is Pending</u>**

(a) A respondent may apply to resign by submitting to a Court an application in the form in Appendix A to these Rules, with proof of service on the Committee, setting forth the specific nature of the charges or the allegations under investigation and attesting that:

    (1) the proposed resignation is rendered voluntarily, without coercion or duress, and with full awareness of the consequences, and that the Court's approval of the application shall result in the entry of an order disbarring the respondent; and

    (2) the respondent cannot successfully defend against the charges or allegations of misconduct.

(b) When the investigation or proceeding includes allegations that the respondent has willfully misappropriated or misapplied money or property in the practice of law, the respondent in the application shall:

    (1) identify the person or persons whose money or property was willfully misappropriated or misapplied;

    (2) specify the value of such money or property; and

    (3) consent to the entry of an order requiring the respondent to make monetary restitution pursuant to Judiciary Law §90(6-a).

(c) Upon receipt of an application for resignation, and after affording the Committee an opportunity to respond, the Court may accept the resignation and remove the respondent from office by order of disbarment pursuant to Judiciary Law §90(2).

**14**

EXHIBIT 30
Page 421 of 808

**§ 1240.11 Diversion to a Monitoring Program**

(a) When in defense or as a mitigating factor in an investigation or formal disciplinary charges, the respondent raises a claim of impairment based on alcohol or substance abuse, or other mental or physical health issues, the Court, upon application of any person or on its own motion, may stay the investigation or proceeding and direct the respondent to complete an appropriate treatment and monitoring program approved by the Court. In making such a determination, the Court shall consider:

(1) the nature of the alleged misconduct;.

(2) whether the alleged misconduct occurred during a time period when the respondent suffered from the claimed impairment; and

(3) whether diverting the respondent to a monitoring program is in the public interest.

(b) Upon submission of written proof of successful completion of the monitoring program, the Court may direct the discontinuance or resumption of the investigation, charges or proceeding, or take other appropriate action. In the event the respondent fails to comply with the terms of a Court-ordered monitoring program, or the respondent commits additional misconduct during the pendency of the investigation or proceeding, the Court may, after affording the parties an opportunity to be heard, rescind the order of diversion and direct resumption of the disciplinary charges or investigation.

(c) All aspects of a diversion application or a respondent's participation in a monitoring program pursuant to this rule and any records related thereto are confidential or privileged pursuant to Judiciary Law §§90(10) and 499.

(d) Any costs associated with a respondent's participation in a monitoring program pursuant to this section shall be the responsibility of the respondent.

15

EXHIBIT 30
Page 422 of 808

**§ 1240.12 <u>Attorneys Convicted of a Crime</u>**

(a) An attorney to whom the rules of this Part shall apply who has been found guilty of any crime in a court of the United States or any state, territory or district thereof, whether by plea of guilty or nolo contendere, or by verdict following trial, shall, within 30 days thereof notify the Committee having jurisdiction pursuant to section 1240.7(a)(2) of these Rules of the fact of such finding. Such notification shall be in writing and shall be accompanied by a copy of any judgment, order or certificate of conviction memorializing such finding of guilt. The attorney shall thereafter provide the Committee with any further documentation, transcripts or other materials the Committee shall deem necessary to further its investigation. The obligations imposed by this rule shall neither negate nor supersede the obligations set forth in Judiciary Law §90(4)(c).

(b) Upon receipt of proof that an attorney has been found guilty of any crime described in subdivision (a) of this section, the Committee shall investigate the matter and proceed as follows:

(1) If the Committee concludes that the crime in question is not a felony or serious crime, it may take any action it deems appropriate pursuant to section 1240.7 of these Rules.

(2) If the Committee concludes that the crime in question is a felony or serious crime as those terms are defined in Judiciary Law §90(4), it shall promptly apply to the Court for an order (i) striking the respondent's name from the roll of attorneys; or (ii) suspending the respondent pending further proceedings pursuant to these Rules and issuance of a final order of disposition.

(c) Upon application by the Committee, and after the respondent has been afforded an opportunity to be heard on the application, including any appearances that the Court may direct, the Court shall proceed as follows:

(1) Upon the Court's determination that the respondent has committed a felony within the meaning of Judiciary Law §90(4)(e), the Court shall strike the respondent's name from the roll of attorneys.

(2) Upon the Court's determination that the respondent has committed a serious crime within the meaning of Judiciary Law §90(4)(d),

(i) the Court may direct that the respondent show cause why a final order of suspension, censure or disbarment should not be made; and

(ii) the Court may suspend the respondent pending final disposition unless such a suspension would be inconsistent with the maintenance of the integrity and honor of the profession, the protection of the public and the interest of justice; and

EXHIBIT 30
Page 423 of 808

(iii) the Court, upon the request of the respondent, shall refer the matter to a referee or judge appointed by the Court for hearing, report and recommendation; and

(iv) the Court, upon the request of the Committee or upon its own motion, may refer the matter to a referee or judge appointed by the Court for hearing, report and recommendation; and

(v) after the respondent has been afforded an opportunity to be heard, including any appearances that the Court may direct, the Court shall impose such discipline as it deems proper under the circumstances.

(3) Upon the Court's determination that the respondent has committed a crime not constituting a felony or serious crime, it may remit the matter to the Committee to take any action it deems appropriate pursuant to section 1240.7 of these Rules, or direct the commencement of a formal proceeding pursuant to section 1240.8 of these Rules.

(d) A certificate of the conviction of a respondent for any crime shall be conclusive evidence of the respondent's guilt of that crime in any disciplinary proceeding instituted against the respondent based on the conviction.

(e) Applications for reinstatement or to modify or vacate any order issued pursuant to this section shall be made pursuant to section 1240.16 of these Rules.

17

EXHIBIT 30
Page 424 of 808

### § 1240.13 <u>Discipline for Misconduct in a Foreign Jurisdiction</u>

(a) Upon application by a Committee containing proof that a person or firm covered by these Rules has been disciplined by a foreign jurisdiction, the Court shall direct that person or firm to demonstrate, on terms it deems just, why discipline should not be imposed in New York for the underlying misconduct.

(b) The respondent may file an affidavit stating defenses to the imposition of discipline and raising any mitigating factors. Any or all of the following defenses may be raised:

    (1) that the procedure in the foreign jurisdiction was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

    (2) that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistent with its duties, accept as final the finding in the foreign jurisdiction as to the respondent's misconduct; or

    (3) that the misconduct for which the respondent was disciplined in the foreign jurisdiction does not constitute misconduct in New York.

(c) After the respondent has had an opportunity to be heard, and upon review of the order entered by the foreign jurisdiction, and the record of the proceeding in that jurisdiction, if such record or part thereof is submitted by a party and deemed relevant by the Court, the Court may discipline the respondent for the misconduct committed in the foreign jurisdiction unless it finds that the procedure in the foreign jurisdiction deprived the respondent of due process of law, that there was insufficient proof that the respondent committed the misconduct, or that the imposition of discipline would be unjust.

(d) Any person or firm to whom these Rules shall apply who has been disciplined in a foreign jurisdiction shall, within 30 days after such discipline is imposed, advise the appropriate Court (as described in section 1240.7(a)(2) of these Rules) and Committee of such discipline. Such notification shall be in writing and be accompanied by any judgment, order or certificate memorializing the discipline imposed. The person or firm shall thereafter provide the Committee with any further documentation, transcripts or other materials the Committee shall deem necessary to further its investigation.

EXHIBIT 30
Page 425 of 808

**§ 1240.14 <u>Attorney Incapacity</u>**

(a) Upon application by a Committee that includes proof of a judicial determination that a respondent is in need of involuntary care or treatment in a facility for the mentally disabled, or is the subject of an order of incapacity, retention, commitment or treatment pursuant to the Mental Hygiene Law, the Court may enter an order immediately suspending the respondent from the practice of law. The Committee shall serve a copy of the order upon the respondent, a guardian appointed on behalf of the respondent or upon the director of the appropriate facility, as directed by the Court.

(b) At any time during the pendency of a disciplinary proceeding or an investigation conducted pursuant to these Rules, the Committee, or the respondent, may apply to the Court for a determination that the respondent is incapacitated from practicing law by reason of mental disability or condition, alcohol or substance abuse, or any other condition that renders the respondent incapacitated from practicing law. Applications by respondents shall include medical proof demonstrating incapacity. The Court may appoint a medical expert to examine the respondent and render a report. When the Court finds that a respondent is incapacitated from practicing law, the Court shall enter an order immediately suspending the respondent from the practice of law and may stay the pending proceeding or investigation. Upon reinstatement of the incapacitated attorney pursuant to § 1240.17 of these rules, the Court may take such action as it deems advisable, including a direction for the resumption of the proceeding or investigation.

EXHIBIT 30
Page 426 of 808

## § 1240.15 <u>Conduct of Disbarred or Suspended Attorneys</u>

(a) Prohibition Against Practicing Law. Attorneys disbarred or suspended shall comply with Judiciary Law §§478, 479, 484 and 486. After entry of an order of disbarment or suspension, the affected respondent shall not accept any new retainer or engage in any new case or legal matter of any nature as attorney for another. However, during the period between the entry date of the order and its effective date, the respondent may wind up and complete, on behalf of any client, all matters which were pending on the entry date.

(b) Notification of Clients. Within 10 days of the date of entry of an order of suspension or disbarment, the affected respondent shall notify, by certified mail and, where practical, electronic mail, each client of the respondent, the attorney for each party in any pending matter, the court in any pending matter, and the Office of Court Administration for each action where a retainer statement has been filed pursuant to court rules. The notice shall state that the respondent is unable to act as counsel due to disbarment or suspension. A notice to a respondent's client shall advise the client to obtain new counsel. A notice to counsel for a party in a pending action, or to the Office of Court Administration in connection with an action where a retainer statement has been filed pursuant to court rule, shall include the name and address of the respondent's client. Where counsel has been appointed by a court, notice shall also be provided to the appointing court.

(c) Duty to Return Property and Files. Within 30 days of the date of entry of the order of suspension or disbarment, the affected respondent shall deliver to all respondent's clients or third parties, or to a successor attorney designated by such clients or third parties, all money and property (including legal files) in the possession of the respondent to which such clients or third parties are entitled.

(d) Discontinuation of Attorney Advertising. Within 30 days of the date of entry of the order of suspension or disbarment, the affected respondent shall discontinue all public and private notices through advertising, office stationery and signage, email signatures, voicemail messages, social media, and other methods, that assert that the respondent may engage in the practice of law.

(e) Forfeiture of Secure Pass. Within 30 days of the date of entry of the order of suspension or disbarment, the affected respondent shall surrender to the Office of Court Administration any Attorney Secure Pass issued to him or her.

(f) Affidavit of Compliance. Within 45 days after the date of service of the order of disbarment or suspension, the affected respondent shall file with the Court, together with proof of service upon the Committee, an affidavit in the form in Appendix B to these Rules showing a current mailing address for the respondent and that the respondent has complied with the order and these Rules.

(g) Compensation. A respondent who has been disbarred or suspended from the practice of law may not share in any fee for legal services rendered by another attorney during the period of disbarment or suspension but may be compensated on a quantum meruit basis

20

EXHIBIT 30
Page 427 of 808

for services rendered prior to the effective date of the disbarment or suspension. On motion of the respondent, with notice to the respondent's client, the amount and manner of compensation shall be determined by the court or agency where the action is pending or, if an action has not been commenced, at a special term of the Supreme Court in the county where the respondent maintained an office. The total amount of the legal fee shall not exceed the amount that the client would have owed if no substitution of counsel had been required.

(h) Required Records. A respondent who has been disbarred or suspended from the practice of law shall keep and maintain records of the respondent's compliance with this rule so that, upon any subsequent proceeding instituted by or against the respondent, proof of compliance with this rule and with the disbarment or suspension order or with the order accepting resignation will be available.

21

EXHIBIT 30
Page 428 of 808

**§ 1240.16 <u>Reinstatement of Disbarred or Suspended Attorneys</u>**

(a) Upon motion by a respondent who has been disbarred or suspended, with notice to the Committee and the Lawyers' Fund for Client Protection, and following such other notice and proceedings as the Court may direct, the Court may issue an order reinstating such respondent upon a showing, by clear and convincing evidence, that: the respondent has complied with the order of disbarment, suspension or the order removing the respondent from the roll of attorneys; the respondent has complied with the rules of the court; the respondent has the requisite character and fitness to practice law; and it would be in the public interest to reinstate the respondent to the practice of law. Within thirty days of the date on which the application was served upon the Committee, or within such longer time as the Court may allow, the Committee may file an affidavit in relation thereto.

(b) Necessary papers. Papers on an application for reinstatement of a respondent who has been disbarred or suspended for more than six months shall include a copy of the order of disbarment or suspension, and any related decision; an affidavit in the form in Appendix C to these Rules; and proof that the respondent has, no more than one year prior to the date the application is filed, successfully completed the Multistate Professional Responsibility Examination described in section 520.9 of this Title. After the application has been filed, the Court may deny the application with leave to renew upon the submission of proof that the respondent has successfully completed the New York State Bar Examination described in section 520.8 of this Title, or a specified requirement of continuing legal education, or both. A respondent who has been suspended for a period of six months or less shall not be required to submit proof that the respondent has successfully completed the Multistate Professional Responsibility Examination, unless otherwise directed by the Court.

(c) Time of application

    (1) A respondent disbarred by order of the Court for misconduct may apply for reinstatement to practice after the expiration of seven years from the entry of the order of disbarment.

    (2) A suspended respondent may apply for reinstatement after the expiration of the period of suspension or as otherwise directed by the Court.

(d) Respondents suspended for a fixed term of six months or less. A respondent who has been suspended for six months or less pursuant to disciplinary proceedings may file an application for reinstatement with the Court no more than thirty days prior to the expiration of the term of suspension, in the form prescribed at Appendix D to these Rules, together with proof of service of a copy of same upon the appropriate Committee and the Lawyers' Fund for Client Protection. Within twenty days of the date on which the application was served upon the Committee and Lawyers' Fund, or within such longer time as the Court may allow, the Committee and Lawyers' Fund may file a response thereto. After the Committee and Lawyers' Fund have had an opportunity to be heard, the Court may issue an order reinstating the respondent upon a showing, by

22

EXHIBIT 30
Page 429 of 808

clear and convincing evidence, that the respondent has otherwise satisfied the requirements of section 1240.16 (a) of these Rules.

(e) The Court may establish an alternative expedited procedure for reinstatement of attorneys suspended for violation of the registration requirements set forth in Judiciary Law §468-a.

**23**

EXHIBIT 30
Page 430 of 808

### § 1240.16 <u>Reinstatement of Disbarred or Suspended Attorneys</u>

(a) Upon motion by a respondent who has been disbarred or suspended, with notice to the Committee and the Lawyers' Fund for Client Protection, and following such other notice and proceedings as the Court may direct, the Court may issue an order reinstating such respondent upon a showing, by clear and convincing evidence, that: the respondent has complied with the order of disbarment, suspension or the order removing the respondent from the roll of attorneys; the respondent has complied with the rules of the court; the respondent has the requisite character and fitness to practice law; and it would be in the public interest to reinstate the respondent to the practice of law. Within thirty days of the date on which the application was served upon the Committee, or within such longer time as the Court may allow, the Committee may file an affidavit in relation thereto.

(b) Necessary papers. Papers on an application for reinstatement of a respondent who has been disbarred or suspended for more than six months shall include a copy of the order of disbarment or suspension, and any related decision; an affidavit in the form in Appendix C to these Rules; and proof that the respondent has, no more than one year prior to the date the application is filed, successfully completed the Multistate Professional Responsibility Examination described in section 520.9 of this Title.
After the application has been filed, the Court may deny the application with leave to renew upon the submission of proof that the respondent has successfully completed the New York State Bar Examination described in section 520.8 of this Title, or a specified requirement of continuing legal education, or both. A respondent who has been suspended for a period of six months or less shall not be required to submit proof that the respondent has successfully completed the Multistate Professional Responsibility Examination, unless otherwise directed by the Court.

(c) Time of application

(1) A respondent disbarred by order of the Court for misconduct may apply for reinstatement to practice after the expiration of seven years from the entry of the order of disbarment.

(2) A suspended respondent may apply for reinstatement after the expiration of the period of suspension or as otherwise directed by the Court.

(d) Respondents suspended for a fixed term of six months or less. A respondent who has been suspended for six months or less pursuant to disciplinary proceedings may file an application for reinstatement with the Court no more than thirty days prior to the expiration of the term of suspension, in the form prescribed at Appendix D to these Rules, together with proof of service of a copy of same upon the appropriate Committee and the Lawyers' Fund for Client Protection. Within twenty days of the date on which the application was served upon the Committee and Lawyers' Fund, or within such longer time as the Court may allow, the Committee and Lawyers' Fund may file a response thereto. After the Committee and Lawyers' Fund have had an opportunity to be heard, the Court may issue an order reinstating the respondent upon a showing, by

22

EXHIBIT 30
Page 431 of 808

clear and convincing evidence, that the respondent has otherwise satisfied the requirements of section 1240.16 (a) of these Rules.

(e) The Court may establish an alternative expedited procedure for reinstatement of attorneys suspended for violation of the registration requirements set forth in Judiciary Law §468-a.

**23**

EXHIBIT 30

Page 432 of 808

**§ 1240.17 Reinstatement of Incapacitated Attorneys**

(a) Time of application. A respondent suspended on incapacity grounds pursuant to section 1240.14 of these Rules may apply for reinstatement at such time as the respondent is no longer incapacitated from practicing law.

(b) Necessary papers. Papers on an application for reinstatement following suspension on incapacity grounds shall include a copy of the order of suspension, and any related decision; proof, in evidentiary form, of a declaration of competency or of the respondent's capacity to practice law; a completed affidavit in a form approved by the Court; a copy of a letter to The Lawyers' Fund for Client Protection notifying the Fund that the application has been filed; and such other proofs as the Court may require. A copy of the complete application shall be served upon the Committee.

(c) Such application shall be granted by the Court upon showing by clear and convincing evidence that the respondent's disability or incapacity has been removed and the respondent is fit to resume the practice of law. Upon such application, the Court may take or direct such action as it deems necessary or proper for a determination as to whether the respondent's disability or incapacity has been removed, including a direction of an examination of the respondent by such qualified experts as the Court shall designate. In its discretion, the Court may direct that the expense of such an examination shall be paid by the respondent. In a proceeding under this section, the burden of proof shall rest with the suspended respondent.

(d) Where a respondent has been suspended by an order in accordance with the provisions of section 1240.14 of these Rules and thereafter, in proceedings duly taken, the respondent has been judicially declared to be competent, the Court may dispense with further evidence that the respondent's disability or incapacity has been removed and may direct the respondent's reinstatement upon such terms as are deemed proper and advisable.

(e) Waiver of Doctor-Patient Privilege Upon Application for Reinstatement. The filing of an application for reinstatement by a respondent suspended for incapacity shall be deemed to constitute a waiver of any doctor-patient privilege existing between the respondent and any psychiatrist, psychologist, physician, hospital or facility who or which has examined or treated the respondent during the period of disability. The respondent shall be required to disclose the name of every psychiatrist, psychologist, physician, hospital or facility by whom or at which the respondent has been examined or treated since the respondent's suspension, and the respondent shall furnish to the Court written consent to each to divulge such information and records as may be requested by court-appointed experts or by the Clerk of the Court.

24

EXHIBIT 30
Page 433 of 808

**§ 1240.18 Confidentiality**

    (a) All disciplinary investigations and proceedings shall be kept confidential by Court personnel, Committee members, staff, and their agents.

    (b) All papers, records and documents upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of any respondent under these Rules are sealed and deemed private and confidential pursuant to Judiciary Law §90(10). This provision is not intended to proscribe the free interchange of information among the Committees.

    (c) All proceedings before a Committee or the Court shall be closed to the public absent a written order of the Court opening the proceedings in whole or in part.

    (d) Application to Unseal Confidential Records or for Access to Closed Proceedings. Unless provided for elsewhere in these Rules, an application pursuant to Judiciary Law §90(10) to unseal confidential documents or records, or for access to proceedings that are closed under these Rules, shall be made to the Court and served upon such other persons or entities as the Presiding Justice may direct, if any, and shall specify:

        (1) the nature and scope of the inquiry or investigation for which disclosure is sought;

        (2) the papers, records or documents sought to be disclosed, or the proceedings that are sought to be opened; and

        (3) other methods, if any, of obtaining the information sought, and the reasons such methods are unavailable or impractical.

    (e) Upon written request of a representative of The Lawyers' Fund for Client Protection ("Fund") certifying that a person or persons has filed a claim or claims seeking reimbursement from the Fund for the wrongful taking of money or property by any respondent who has been disciplined by the Court, the Committee is authorized to disclose to the Fund such information as it may have on file relating thereto.

25

EXHIBIT 30
Page 434 of 808

### § 1240.19 Medical and Psychological Evidence

Whenever a respondent intends to offer evidence of a medical or psychological condition in mitigation of allegations or charges, he or she shall give written notice to the Committee of the intention to do so no later than 20 days before the scheduled date of any appearance, argument, examination, proceeding, or hearing during which the respondent intends to offer such evidence to the Court, referee, Committee, subcommittee thereof, or counsel to a Committee. Said notice shall be accompanied by (a) the name, business address, and curriculum vitae of any health care professional whom the respondent proposes to call as a witness, or whose written report the respondent intends to submit; and (b) a duly executed and acknowledged written authorization permitting the Committee to obtain and make copies of the records of any such health care professional regarding the respondent's medical or psychological condition at issue.

26

EXHIBIT 30
Page 435 of 808

### § 1240.20 <u>Abatement; Effect of Pending Civil or Criminal Matters; Restitution</u>

(a) Any person's refusal to participate in the investigation of a complaint or related proceeding shall not require abatement, deferral or termination of such investigation or proceeding.

(b) The acquittal of a respondent on criminal charges, or a verdict, judgment, settlement or compromise in a civil litigation involving material allegations substantially similar to those at issue in the disciplinary matter, shall not require termination of a disciplinary investigation.

(c) The restitution of funds that were converted or misapplied by a person covered by these Rules shall not bar the commencement or continuation of a disciplinary investigation or proceeding.

EXHIBIT 30
Page 436 of 808

### § 1240.21 <u>Appointment of Attorney to Protect Interests of Clients or Attorney</u>

(a) When an attorney is suspended, disbarred or incapacitated from practicing law pursuant to these Rules, or when the Court determines that an attorney is otherwise unable to protect the interests of his or her clients and has thereby placed clients' interests at substantial risk, the Court may enter an order, upon such notice as it shall direct, appointing one or more attorneys to take possession of the attorney's files, examine the files, advise the clients to secure another attorney or take any other action necessary to protect the clients' interests. An application for such an order shall be by motion, with notice to the Committee, and shall include an affidavit
setting forth the relationship, if any, as between the moving party, the attorney to be appointed and the suspended, disbarred or incapacitated attorney.

(b) Compensation. The Court may determine and award compensation and costs to an attorney appointed pursuant to this rule, and may direct that compensation of the appointee and any other expenses be paid by the attorney whose conduct or inaction gave rise to those expenses.

(c) Confidentiality. An attorney appointed pursuant to this rule shall not disclose any information contained in any client files without the client's consent, except as is necessary to carry out the order appointing the attorney or to protect the client's interests.

28

EXHIBIT 30
Page 437 of 808

### § 1240.22 <u>Resignation for Non-Disciplinary Reasons; Reinstatement</u>

(a)  Resignation of attorney for non-disciplinary reasons.

(1)  An attorney may apply to the Court for permission to resign from the bar for non-disciplinary reasons by submitting an affidavit in the form in Appendix E to these Rules. A copy of the application shall be served upon the Committee and the Lawyers' Fund for Client Protection, and such other persons as the Court may direct.

(2)  When the Court determines that an attorney is eligible to resign for non-disciplinary reasons, it shall enter an order removing the attorney's name from the roll of attorneys and stating the non-disciplinary nature of the resignation.

(b)  Reinstatement. An attorney who has resigned from the bar for non-disciplinary reasons may apply for reinstatement by filing with the Court an affidavit in the form in Appendix F to these Rules. The Court may grant the application and restore the attorney's name to the roll of attorneys; or deny the application with leave to renew upon proof that the applicant has successfully completed the Multistate Professional Responsibility Examination described in section 520.9 of this Title, or the New York State Bar Examination described in section 520.8 of this Title; or take such other action as it deems appropriate.

EXHIBIT 30
Page 438 of 808

### § 1240.23 <u>Volunteers/Indemnification</u>

Members of the Committee, as well as referees, bar mediators, bar grievance committee members when assisting the Court of the Committee, and pro bono special counsel acting pursuant to duties or assignments under these Rules, are volunteers and are expressly authorized to participate in a State-sponsored volunteer program, pursuant to Public Officers Law §17(1).

**30**

EXHIBIT 30
Page 439 of 808

## § 1240.24 <u>Costs and Disbursements</u>

The necessary costs and disbursements of an agency, committee or appointed attorney in conducting a proceeding under this Part shall be paid in accordance with Judiciary Law §90(6).

EXHIBIT 30
Page 440 of 808