EXHIBIT 41

EXHIBIT 41

140 S.Ct. 161
Supreme Court of the United States.

Amy Rebecca GURVEY, Petitioner,
v.
COWAN, LIEBOWITZ & LATMAN, P.C., et al.

No. 18-8930
|
October 7, 2019

Case below, 757 Fed.Appx. 62.

**Opinion**

Petition for writ of certiorari to the United States Court of Appeals for the Second Circuit denied.

**All Citations**

140 S.Ct. 161 (Mem), 205 L.Ed.2d 52

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

EXHIBIT 41
Page 507 of 808

EXHIBIT 42

EXHIBIT 42

*Original*
*Court Copy*

AMY R. GURVEY
US PATENTEE
315 Highland Avenue
Upper Montclair, NJ  07043
PH 917-733-9981
amygurvey@gmail.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____X

AMY R. GURVEY

Plaintiff/US Patentee PRO SE,


v.

LIVE NATION, INC. (the surviving
entity of CLEAR CHANNEL
ENTERTAINMENT SPINCO),
INSTANT LIVE CONCERTS, LLC,
NEXT TICKETING, INC., COWAN,
LIEBOWITZ & LATMAN, PC,
MIKE GORDON (Does 1-X Inclusive),

Defendants.

_____X

06CV1202 (LGS)

NOTICE OF APPEAL

[TO: US COURT OF
APPEALS FOR THE
FEDERAL CIRCUIT]

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/19/2020
```

**PLEASE TAKE NOTICE** that US ticketing Patentee-Plaintiff
*PRO SE* Amy R. Gurvey, sole named inventor of US ticketing
apparatus, method and design patents and pending patents (Gurvey US
Patent Nos. 7603321; D647910S that issued October 13, 2009,

EXHIBIT 42
Page 509 of 808

November 1, 2011), hereby appeals to the United States Court of Appeals for the Federal Circuit, 717 Madison Place, NW, Washington, DC 20439 from all orders of the United States District Court for the Southern District of New York through the final order entered March 9, 2020 (Docket #430). The docket reflects organized corruption in a patent lawsuit against a pro se litigant. Several docketed entries were since removed from the docket after filing including Plaintiff's 2010 motion seeking damages for infringement and the Court also never adjudicated other motions that were filed and stamped by the Court.

The final Docketed orders #s 427-430 finally denied Plaintiff's claims for US patent infringement, aiding and abetting infringement pursuant to 35 USC 271, 285, 286, and antitrust treble damages in violation of the Clayton Act, 15 USC § 18, and also denied reconsideration.

Infringing defendants include the world's largest concert promoter/venue owner Live Nation, Inc., its February 2009 merged partner Ticketmaster, Inc., and wholly owned subsidiary Instant Live Concerts, LLC, the parties' common NYC patent practitioners including defendant Cowan Liebowitz & Latman, PC, and Mike Gordon of PHISH, against whom claims were filed since 2006. Plaintiff seeks hearing inter alia on her claims for infringement, aiding and abetting infringement, breach of fiduciary duty, USPTO conflicts of interest practitioner mandates, 37 CFR 2.19, 10.66, 11.116, 1.36, breach of attorney client privilege, misconduct before the USPTO, spoliation of evidence, and filing fraudulent declarations before the USPTO.

EXHIBIT 42
Page 510 of 808

Of relevance is that on January 8, 2020, the US Dept. of Justice, Media and Entertainment Division, sanctioned defendant Live Nation and its merged partner Ticketmaster, Inc. in the amount of $1mil per Clayton antitrust violation including for breach of a January 2010 DDC consent decree and competitive impact statement, 2010 WL 975407, 975408, signed by defendants during the instant lawsuit. The claims filed in this lawsuit are parallel. There is no dispute that defendants engaged in in-court fraud related to Plaintiff's patent claims before the SDNY and the USTPO including by fraudulently denying contacts with NYS to unlawfully attempt to get dismissed on jurisdictional grounds without justification when they were using Plaintiff's pending patents for several years by the time of issuance. Prosecution delays were caused by the parties' common defendant attorneys who defied USPTO practitioner conflict of interest mandates.

The Dept. of Justice found, contrary to sworn papers in this lawsuit (some of which that were removed ex parte from the docket), that defendant Live Nation was distributing its own primary ticketing services to its NY venues in 2008 including House of Blues, Roseland Ballroom and Irving Plaza, a year before it announced merger with Ticketmaster, Inc. in February 2009, proving that jurisdiction over Plaintiff's claims before this court was properly conferred. Also by 2009, defendant Live Nation and its wholly owned subsidiary, defendant Instant Live Concerts, LLC, had engaged in fraud before the USPTO during prosecution of a competing patent which was invalidated by the USPTO in 2007. Defendant Instant Live Concerts, LLC was never dismissed in any order of the Court from this lawsuit.

EXHIBIT 42
Page 511 of 808

Both defendants were outsourcing Plaintiff's first US patent claims before and after the formal issuance date of October 13, 2009.

Plaintiff now hereby appeals from the whole and every part of the totality of SDNY orders on the docket.

Appeal Fee of $505 is enclosed for depositing with the SDNY Clerk.

March 18, 2020
Upper Montclair, NJ  07043

AMY R. GURVEY
US Patentee

EXHIBIT 42
Page 512 of 808

DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/9/2020

*Original
Court Copy*

*Pro Se Office
Docketing
Rm 200*

**Amy R. Gurvey**
**US Patentee/Plaintiff Pro Se**
**315 Highland Avenue**
**Upper Montclair, NJ  07043**
**PH: (917) 733-9981**
**amygurvey@gmail.com**

Application for reconsideration DENIED.  Plaintiff does not raise any new information compelling a different result on her Motion to Vacate the March 17, 2009, Order dismissing Defendant Live Nation (Dkt. No. 65):

1. Contrary to Plaintiff's claim that the Order dismissing Live Nation -- which she is now challenging -- was dated April 24, 2009,  the dismissal Order was dated March 17, 2009 (Dkt. No. 65).  Accordingly, as this Court's February 13, 2020, Order explains:  even if Plaintiff had filed an April 22, 2010, motion to vacate the March 17, 2009, order, any such motion would "not [have been] reasonably prompt, because it would have been filed over a year after the March 17, 2009, Order. *Cf.* Fed. R. Civ. P. 60(c)(1) (Rule 60 motions generally should not be made "more than a year after the entry of the... order" being challenged.)"

2. Any appeal of the March 17, 2009 Order is not timely.  *See* Fed. R. App. P. 4;  *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, 462 F. App'x 26, 30 n.5 (2d Cir. 2012) ("*Gurvey I*") (finding that Second Circuit did not have jurisdiction to consider appeal of the March 17, 2009, Order, because Plaintiff did not timely include the Order in her notice of appeal).  The issues in this action have been fully adjudicated and appealed twice.  *See Gurvey I*, 462 F. App'x 26; *Gurvey v. Cowan, Liebowitz & Latman P.C.*, 757 F. App'x 62 (2d Cir. 2018), *cert. denied*, 140 S. Ct. 161, 205 L. Ed. 2d 52 (2019), *reh'g denied*, No. 18-8930, 2019 WL 6257536 (U.S. Nov. 25, 2019).

3. None of the documents Plaintiff attaches below are the April 22, 2010 filings she references.  Among the attachments, the one closest in time is a May 10, 2010, notice of motion to vacate the April 24, 2009, Order.  Both Judge Jones in a reconsideration Order (Dkt. No. 80) and the Second Circuit conclusively reviewed the April 24, 2009, Order.

4. The January 28, 2020, Amended Final Judgment and Consent Decree, in the Department of Justice's antitrust action against Live Nation Entertainment, Inc. (available at https://www.justice.gov/atr/case-document/file/1241016/download), does not bear on the issues below or warrant vacatur of Orders in this action.

**Accordingly, reconsideration of the February 13, 2020, Order (Dkt. No. 428) -- denying Plaintiff's untimely motion to vacate -- is DENIED.  If Plaintiff files frivolous materials, an injunction may be imposed, requiring Plaintiff seek permission first before filing anything further on the docket.**  The Clerk of Court is respectfully directed to close Dkt. No. 429, and to mail a copy of this Order to Plaintiff.

**DISTRICT COURT**

**UCT OF NEW YORK**

x

Amy R. Gurvey v. Cowan, Liebowitz & Lathman, PC, ET AL.

**CASE NO. 06-1202-cv (LGS)**

**NOTICE OF MOTION TO RECONSIDER DENIAL OF US PATENTEE/PLAINTIFF'S MOTION TO VACATE SDNY ORDERS BASED ON FAILURE TO ADJUDICATE APRIL 2010 AMENDED COMPLAINT STATING DAMAGES FOR PATENT INFRINGEMENT, AIDING & ABETTING INFRINGEMENT AND CLAYTON ANTITRUST VIOLATIONS [35 USC § 271 271(b) 285 286; 15 USC§18]**

Dated: March 9, 2020
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

1

EXHIBIT 42
Page 513 of 808

**CC: DEPARTMENT OF JUSTICE ("DOJ") Media and Entertainment Division, Hon. Owen Kendler, Chief Hon. Geoffrey Berman, US Attorney for the SDNY Public Corruption Division US Patents and Antitrust**

**CC: Hon. Ruth Bader Ginsburg, in Her Honor's capacity as Chief Administrative Judge of the Second Circuit**

### SDNY'S UNNOTICED REMOVAL OF DOCKETED ENTRIES, FAILURE TO ADJUDICATE A FILED AMENDED COMPLAINT FOR PATENT INFRINGEMENT, SPOLIATION OF DOCKETED USPTO SUBPOENAS AND DEFIANCE OF NY'S JUDICIARY LAW

Plaintiff/US Primary Ticketing Patentee *Pro Se* Amy R. Gurvey swears to the truth of the following statements in moving this Court, Hon. Lorna G. Schofield, the fourth rotating judge after three previous judges and magistrates left the Court, to reconsider the Court's February 13, 2020 order denying Plaintiff's second motion since April 22, 2010 to reinstate defendant Live Nation, Inc. to answer for willful infringement, aiding and abetting infringement of Plaintiff's US ticketing patents and Clayton Antitrust violations as found by the Department of Justice ("DOJ"). The Court also failed to adjudicate Plaintiff's infringement and USPTO misconduct claims against defendant Instant Live Concerts, LLC, defendant Live

EXHIBIT 42
Page 514 of 808

Nation's wholly owned subsidiary.  *Therasense v. Becton Dickinson*, 649 F. 3d 1276 (Fed. Circ. 2011)

The Court's recent order is contrary to the early record in this lawsuit since 2006.  <u>This is because docketed entries were since unlawfully removed by the Court and because Plaintiff's filed 4AC to recover patent infringement and Clayton Antitrust damages filed April 22, 2010 was never adjudicated</u>.  In addition, after NY's Legislature changed the law in enacting Judiciary Law Part 1240 effective October 1, 2016, the Court defied the governing state statutes by failing to order mandatory withdrawal of defense attorneys at Hinshaw & Culbertson, LLC and in particular Richard Supple, Esq. This enabled defense attorneys to unilaterally alter and corrupt court files after the same attorneys were already found to have corrupted confidential state files by inserting forged and unserved documents by an order of the AD 1st Dept. entered April 21, 2016.

Plaintiff's company LIVE-Fi Technologies®, LLC's complaint was solicited by the Dept. of Justice ("DOJ") in 2010. It was docketed as "E" on the DOJ Media and Entertainment website with 153 pages and was one factor resulting in DOJ's sanctioning of

3

EXHIBIT 42
Page 515 of 808

defendant Live Nation and its 2009 partner Ticketmaster. However, based on this Court's removal of docketed entries, Plaintiff's 4AC appending the same documents was never adjudicated.

## FACTS IN SUPPORT OF MOTION

1.    Defendant Live Nation's crimes against the public in the field of primary ticketing with associated Clayton antitrust violations were found by Department of Justice ("DOJ") <u>twice</u> first on January 25, 2010 and again on January 8, 2020 when the DOJ issued sanctions against defendant and its 2009 merged partner Ticketmaster, Inc. in the amount of $1mil per violation.  15 USC §18.

2.    In January 2010, the DOJ and DC District Court made the February 2009 merger of defendant Live Nation and Ticketmaster expressly conditional upon discharge of all obligations and terms set forth in a consent decree and competitive impact statement signed by defendant Live Nation on January 25, 2010. 2010 WL 975407, 975408.  Those conditions involved proscriptions in the field of primary ticketing.  They also made expressly unlawful the merged entity's use of ticket data to enable other non-ticketing

4

EXHIBIT 42
Page 516 of 808

Case 1:06-cv-01202-LGS-HBP   Document 430   Filed 03/09/20   Page 5 of 124
Case 1:04-cv-04667-LGS-HBP   Document 451   Filed 03/13/20   Page 3 of 30   Page
ID #:915

benefits, such as distribution of event recordings, to pay for parking
and sell targeted ads.  2010 WL 975408, pp. 8, line 10.

3.     On January 8, 2020, ten years later, the DOJ found the
terms of the consent decree and competitive impact statement were
intentionally breached.  The DOJ extended and enlarged the
mandates through 2026.

4.     Plaintiff and her company, LIVE-Fi Technologies®, LLC
invented, own and control US method and apparatus patents in
primary ticketing and ticket management including those that
enable other non-ticketing benefits. Other federal courts have
already found that ticket data is not copyrightable.   There is no
dispute Plaintiff's issued US patent claims have been willfully
infringed by defendant Live Nation, its subsidiary Instant Live
Concerts, LLC and Ticketmaster since before the merger and after.

5.     In 2008-2009, Plaintiff's attorney in this lawsuit O. Lee
Squitieri, who representing plaintiffs in a ticketing class action
against defendant Live Nation's predecessor in interest, defendant
Clear Channel Entertainment SPINCO ("CCE") emphatically
opposed defendant Live Nation's 2008 Rule 12(b) motion papers
falsely alleging under oath that defendant *had no NY contacts to*

5

EXHIBIT 42
Page 517 of 808

Case 1:06-cv-01292-LGS-HBP Document 420 Filed 03/09/20 Page 6 of 124
Case 1:06-cv-04338-DMB-EAS-HBP Document 243 Filed 08/25/26 Page 516 of 808 Page
ID #:916

confer personal jurisdiction in this Court". More than 12 Live Nation
employees and Baker Botts attorneys falsely swore to these
allegations over 2 ½ years, causing Mr. Squitieri to withdraw from
the case and leaving Plaintiff to proceed pro se.

6.     Directly contrary to defendants' motion papers, however,
defendant Live Nation <u>admitted</u> to multiple NY contacts when it
executed the DOJ consent decree and competitive impact statement
in the DC District Court proceedings on January 25, 2010.  In
particular,  defendant Live Nation *admitted* it was distributing its
own primary ticketing systems since 2008 in NYC including to its
owned and operated venues Roseland Ballroom, House of Blues and
Irving Plaza.  2010 WL 975408.  Moreover, defendant had an office
in the same building with the Cowan defendants and has since
moved to the meat packing district where it houses several hundred
employees.

7.     Defendant Live Nation's signed DOJ mandates
demonstrate actionable fraud in this lawsuit, even before the case
was closed on April 24, 2009 and Plaintiff's first US ticketing patent
issued thereafter issued 5 1/2 months later on October 13, 2009.
Defendant Instant Live Concerts, LLC, that was acquired by

6

EXHIBIT 42
Page 518 of 808

defendants Live Nation in 2005, was also was infringing Plaintiff's patents and aiding and abetting defendant Live Nation and others to infringe Plaintiff's patents. 35 USC §271, 271(b), 285, 286.

8.    In February 2010, when Plaintiff and her company LIVE-Fi Technologies® filed its DOJ opposition to the merger, docketed were complaints of the merged entity's prospective negative impact on small businesses and technology companies and referred to defendant Live Nation's fraud in this lawsuit. The objection was one of thirteen docketed and posted as "E" on the DOJ Media and Entertainment website.

9.    Plaintiff then immediately submitted the same papers to this Court on April 22, 2010 as an exhibit to Plaintiff's 4AC complaint. 153 pages were filed including concrete documentary evidence of defendant's fraud. Plaintiff included statements from defendant's executive Stephen Prendergast that he thought "*Plaintiff's patents could be used by anyone*".

10.    At the same time, defendants Live Nation, Instant Live Concerts and Prendergast were engaging in misconduct before the USPTO related to the Griner concert recording patent defendants acquired in 2005 (6,614729) that was invalidated by the USPTO in

7

EXHIBIT 42
Page 519 of 808

Case 1:06-cv-01202-LGS-HBP Document 420 Filed 03/09/20 Page 8 of 124
Case 2:23-cv-04365-MBA-EGS-HBP Document 43 Filed 08/29/20 Page 2 of 303 Page
ID #:918

2006-7 on application of the Electronic Frontier Foundation. In

moving for reexamination for 12 years, defendants failed to cite to

Plaintiff's patents as prior art; and continued to use ticket data for

non-ticketing business, demonstrating willfully infringement of

patent claims proprietary with Plaintiff.

    11.  In fact, Plaintiff's first issued US ticketing patent on

October 13, 2009, was being willfully infringed by defendants since

before this case was closed by ordered entered by former Judge

Barbara Jones on April 24, 2009. Contrary to the Court's recent

order, the 4AC with Plaintiff's motion papers was timely filed by the

SDNY within one year on April 22, 2010 as to fraud and mistake

claims. There is a SDNY stamp on the papers with this date.

However, Plaintiff's first patent of October 13, 2009 constitutes new

evidence" and qualifies for Rule 60(b)(6) relief that has no statutory

deadline.

    12.  Many of the early docketed entries in this lawsuit

between 2006-2009 were since unlawfully removed without notice

in violation of Plaintiff's right to due process of law. Most of the

removed entries pertain to breaches of fiduciary duty and fraud by

defendants' Baker Botts attorneys and other attorneys, defendant

8

EXHIBIT 42
Page 520 of 808

Case 1:06-cv-01202-LGS-HBP Document 420 Filed 03/09/20 Page 8 of 124
Case 1:06-cv-01202-LGS-HBP Document 431 Filed 08/19/26 Page 521 of 808 Page
ID #:919

Cowan Liebowtz & Latman who were representing Plaintiff before
the USPTO at times relevant. Plaintiff contends the attorneys who
engaged in conflict of interest violations and defiance of USPTO
mandates are secondarily liable for Plaintiff's damages if she cannot
recover against Live Nation and Instant Live defendants. The ex
parte removal of docketed entries without notice to Plaintiff
demonstrates organized corruption.

13.   US Supreme Court decisions and Federal Circuit law are
unanimous that Plaintiff's 4AC was required to be granted for
service and adjudicated against existing defendants. This is old
established law. _Reedy v. Scott_, 90 US 352 (1874). It never was in
breach of administrative duty by two judges and two magistrate
judges since 2010.

14.   In addition, Judge Schofield failed to compel withdrawal
of  defense attorneys at Hinshaw & Culbertson, LLP and in
particular, Richard Supple, no later than October 1, 2016, the
effective date of Judiciary Law Part 1240.   See JL Part 1240.6, Part
1240.18. An order of the Appellate Division entered April 21, 2016
found that Supple had been corrupting confidential state files
contrary to Plaintiff's interests in this case and failed to disclose he

9

EXHIBIT 42
Page 521 of 808

Case 1:06-cv-01202-LGS-HBP Document 430 Filed 03/09/20 Page 10 of 124
Case 1:06-cv-01202-LGS-HBP Document 431 Filed 08/23/20 Page 10 of 130 Page
ID #:920

was an executive appointee to the Attorney Grievance Committee
along with other Hinshaw partners. There was parallel corruption
of files in this lawsuit, ex parte removal of docketed entries and
spoliation of USPTO subpoenas. Supple's ex parte state crimes,
corruption of files and insertion of untruthful and forged unserved
documents, induced the extrajudicial bias of this Court on matters
unrelated to this case.

15. Plaintiff Gurvey's first US primary ticketing patents and
ticketing management patents, 7603321; D647910S issued on
October 13, 2009 and November 1, 2011, respectfully. By the time
of issuance, both patents were being willfully infringed by
defendants Live Nation and its subsidiary defendant Instant Live
Concerts, LLC, the latter never dismissed in any order from this
lawsuit.

16. It is relevant that in 2006 when this lawsuit was filed,
Plaintiff's valuable patent claims had been unduly delayed for
issuance at the USPTO based on the defendant Cowan
practitioners' breaches of duty, conflict of interest violations, .and
filing of defective patent applications and fraudulent declarations of

EXHIBIT 42
Page 522 of 808

Case 1:06-cv-01202-LES-HBP   Document 430   Filed 03/09/20   Page 11 of 124
Case 2:03-cv-04312-DMC-MCA   Document 431   Filed 06/08/20   Page 11 of 130 Page
ID #:921

inventorship by the Cowan defendants before the USPTO.  37 CFR
2.19, 10.66, 11.116, 1.36, 35 USC 256.

17.   The Cowan defendants were representing defendant Live
Nation's predecessor in interest defendant Clear Channel
Entertainment SPINCO, its executives who formed Instant Live
Concerts, LLC in 2003.

18.   The Cowan defendants attempted abandonment of
Plaintiff's early patent applications in 2003 but were never granted
unilateral withdrawal by the USPTO after two attempts in 2003 and
2007.  The Cowan defendants admitted did not exercise Plaintiff's
expedited prosecution rights or advise Plaintiff she had those rights
that would have achieved issued the same US patents no later than
2005, which then would been immediately enforceable when this
lawsuit was filed in 2006.

19.   Plaintiff's 4AC was filed on April 22, 2010 to recover
infringement, aiding and abetting infringement and antitrust treble
damages as soon as the first claims issued; and Plaintiff's
constitutional rights to enforce and protect her patents continues
through the full term of protection.   There is no viable defense of
laches can that be claimed and, contrary to its recent order, this

11

EXHIBIT 42
Page 523 of 808

Court cannot legally prevent Plaintiff from pursuing claims to protect her property.

20.   Further contrary to the Court's order, any appeal to this motion sequence would be in the exclusive appellate jurisdiction of the Federal Circuit and not the 2d Circuit.  28 USC 1338, 1295.

21.   The Griner patent acquired by defendants in 2005 disclosed a pure recording method found non-patentable and of no utility by the USPTO in 2007.  Important is that it discloses no means of distribution of event recordings or benefits using ticket data, which defendants and Ticketmaster were all admittedly outsourcing since the attempted merger in 2009.

22.   There is no laches defense available during the full term of patent protection.  A patentee who gets new or additional claims is absolutely entitled to file an amended complaint in a lawsuit in which infringers are parties.  Reedy v. Scott, 90 US 352 (1874); In re Global Tech Appliances, 563 US 754 (2011); Halo Electronics v. Pulse Electronics, 136 S. Ct. 1923 (2016); SCA Hygiene Products Aktiebolag v. First Quality Baby Products, 137 S. Ct. 954 (2017).

23.   Moreover, contrary to the Court's order, there is no time limit for a patentee to file Rule 60(b)(6) motion.

12

EXHIBIT 42
Page 524 of 808

Case 1:06-cv-01202-LES-HBP   Document 430   Filed 03/09/20   Page 13 of 124
Case 1:06-cv-01202-LES-HBP   Document 431   Filed 06/08/20   Page 21 of 303 Page
ID #:923

24.   Defendant Live Nation was formally dismissed when the case was closed on April 24, 2009.  Plaintiff's Rule 60(b)(6) motion filed and stamped by the Court on April 22, 2010 was based on new evidence, i.e., the recent issuance of Plaintiff's first US patent claims.  Ergo the 4AC was timely filed even as concerns the other subdivisions of the Rule 60(b) statute that govern matters of fraud, mistake, etc.

25.   Plaintiff is entitled to recover 6 years of relate back willful infringement damages, aiding and abetting infringement damages and get an injunction from this Court from the time she got a patent and filed for infringement damages.  Plaintiff's damages should be trebled under law based on the abominable fraud and misconduct of defendants.  <u>Reedy v. Scott</u>, 90 US 352 (1874); <u>In re Global Tech Appliances</u>, 563 US 754 (2011); <u>Halo Electronics v. Pulse Electronics</u>, 136 S. Ct. 1923 (2016); <u>SCA Hygiene Products Aktiebolag v. First Quality Baby Products</u>, 137 S. Ct. 954 (2017).  Plaintiff remains entitled to recover patent damages for the full term of protection.

26.   The Court, however, has continued to misapply the law and ignore the prevailing patent and antitrust laws .and defendant's

EXHIBIT 42
Page 525 of 808

ongoing Clayton antitrust violations found by the DOJ on January

8, 2020, that were stated with specificity in Plaintiff's early

complaints.

27.   The removal of docketed entries by the Court constitutes

a per se violation of Plaintiff's right to due process of law – it shocks

the conscience.   The Court's continued failure to adjudicate

Plaintiff's 4AC.  The fourth judge's order that it can't find the

complaint constitutes organized corruption, or at minimum,

inexcusable breaches of administrative duty.

28.   Other meritless demonstrations of extrajudicial bias by

this Court including defiance of NY's Judiciary Law Part 1240,

failing to provide an unbiased tribunal also contra to Plaintiff's

constitutional rights and the Court's issuance of unconscionable

decisions frame Plaintiff for crimes of defense counsel since 2013.

29.   The totality of the Court's ongoing judicial breaches of

duty, failure to grant service of the 4AC, and demonstrations of

extrajudicial bias on matters unrelated to the case warrant recusal

and reassignment.

14

EXHIBIT 42
Page 526 of 808

WHEREFORE, Plaintiff prays that her motion seeking

reconsideration of the Court's February 13, 2020 order be granted

in all respects, that the Court award Plaintiff attorneys' fees and

costs and such other and further relief as it deems just and proper.


Dated:  February 28, 2020
Coconut Creek FL

_____

AMY R. GURVEY
US PATENTEE PRO SE

15

EXHIBIT 42
Page 527 of 808

Case 1:06-cv-01202-LGS-HBP Document 480 Filed 03/20/2020 Page 19 of 124
Case 1:06-cv-01202-LGS-HBP Document 433 Filed 06/08/29 for page 23 of 808 Page
ID #:528

┌─────────────────────────────┐
│ USDC SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #:_____        │
│ DATE FILED: _2/13/2020_      │
└─────────────────────────────┘

*Original*
*Court Copy*
*Clerk Pro Se*
*Office Rm 200*

**Amy R. Gurvey**
**US Patentee/Plaintiff Pro Se**
**315 Highland Avenue**
**Upper Montclair, NJ 07043**
**PH: (917) 733-9981**
**amygurvey@gmail.com**

FEB 6 - 2020

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

—————————————————————————— X

### AMY R. GURVEY,

#### Plaintiff *Pro Se*,

This motion to vacate is DENIED. There is no April 22, 2010, motion on the docket. In any case, this motion to vacate is untimely. Federal Rule of Civil Procedure 60(c)(1) requires that any motion to vacate, under Rule 60(b)(6), "be made within a reasonable time." It's been over a decade since the March 17, 2009, order was entered. Even if the April 22, 2010, motion to vacate were filed, that motion was also not reasonably prompt, because it would have been filed over a year after the March 17, 2009, Order. *Cf.* Fed. R. Civ. P. 60(c)(1) (Rule 60 motions generally should not be made "more than a year after the entry of the . . . order" being challenged.) This action has been appealed several times to the Second Circuit, and has been resolved and closed.

· The Clerk of Court is respectfully directed to close Dkt. No. 427, and to mail a copy of this Order to Plaintiff.

Dated: February 13, 2020
        New York, New York

**CASE NO.  06-1202-cv (LGS)**

**NOTION OF MOTION TO VACATE SDNY ORDERS AS TO DEFENDANT LIVE NATION [FRCP 60(b)(6)] [NOTE:  Plaintiff's previous motion filed April 22, 2010 to vacate March 17, 2009 order dismissing defendant Live Nation, Inc. was never adjudicated] RETURN DATE FEB. 21, 2020**

*Volume II*

BY

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

1

EXHIBIT 42
Page 528 of 808

DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 4/27/09

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

AMY R. GURVEY,

Plaintiff,

-against-

COWAN, LIEBOWITZ & LATMAN, P.C., CLEAR
CHANNEL COMMUNICATIONS, INC.,
INSTANT LIVE CONCERTS, LLC, LIVE NATION,
INC., NEXTICKETING, INC., DALE HEAD,
STEVE SIMON, and DOES I-VIII, INCLUSIVE
Defendants.
------------------------------------------------------------X

06 **CIVIL** 1202 (BSJ)

**JUDGMENT**

Whereas the above-captioned action having come before this Court, and the matter having

come before the Honorable Barbara S. Jones, United States District Judge, and the Court, on April

23, 2009, having rendered its Opinion and Order dismissing plaintiff's claims against all defendants,

it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Opinion and Order dated April 23, 2009, plaintiff's claims against all Defendants are

dismissed; accordingly, the case is closed.

**Dated:** New York, New York
April 27, 2009

**J. MICHAEL McMAHON**

**Clerk of Court**

**BY:**

**Deputy Clerk**

**THIS DOCUMENT WAS ENTERED**
ON THE DOCKET ON _____

EXHIBIT 42
Page 529 of 808

Case 1:06-cv-01202-GS-HBP Document 430 Filed 03/09/20 Page 19 of 124
Case 1:06-cv-01202-BSJ-THK Document 431 Filed 05/22/09 Page 1 of 1

**A-663**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

FILE NUMBER: 06-CIV-1202 (BSJ)

-------------------------------------------------------------x
                              )

AMY R. GURVEY,                  )

                Plaintiff,      )      **NOTICE OF APPEAL**

                              )

            v.               )

                              )

COWAN LIEBOWITZ & LATMAN, PC.,  )
CLEAR CHANNEL COMMUNICATIONS, INC., )
INSTANTLIVE CONCERTS, LLC, LIVE        )
NATION, INC., NEXTICKETING, INC., DALE  )
HEAD, STEVE SIMON, and DOES I-VIII,    )
INCLUSIVE,                      )

                              )

              Defendants.   )

                              )
-------------------------------------------------------------x

     FILED U.S. DC
     MAY 22 2009
     S.D. OF N.Y.

     Notice is hereby given that Amy R. Gurvey, plaintiff in the above-named case, hereby

appeals to the United States Court of Appeals for the Second Circuit from the Opinion and Order

dismissing plaintiff's claims against all defendants entered in this action on the 24th day of April,

2009.

Date:  May 22, 2009

                           SQUITIERI & FEARON, LLP
                           Attorneys for Plaintiff

                           By: _____
                              Lee Squitieri
                           32 East 57th Street
                           12th Floor
                           New York, New York 10022
                           (212) 421-6492

EXHIBIT 42
Page 530 of 808

06-CV-1202

# A-664

## UNITED STATES COURT OF APPEALS
### FOR THE
### SECOND CIRCUIT

Jones, J.
Katz, J.

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 17th day of June, two thousand and nine,

---

Amy R. Gurvey,

    Plaintiff-Appellant,

      v.

Cowan, Liebowitz & Lathman, PC, Clear Channel Communications, Inc., Live Nation, Inc., Instant Live Concerts, LLC, Does 1 - X, Nexticketing, Inc., William Borchard, Midge Hyman, Baila Celedonia, Christopher Jensen, Dale Head, Steve Simon, Michael Gordon, Susan Schick,

    Defendants-Appellees.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUN 1 8 2009

**ORDER**
Docket Number: 09-2185-cv

UNITED STATES COURT OF APPEALS
FILED
JUN 1 7 2009
Catherine O'Hagan Wolfe, Clerk
SECOND CIRCUIT

A motion or motions of the type specified by Rule 4(a)4 of the Federal Rules of Appellate Procedure having been filed in this matter, and now pending before the district court, the above numbered and entitled appeal is hereby stayed to await final disposition of said motion(s).

Movant below is hereby directed to inform this Court, in writing, as to the status of each such motion, at thirty-day interval from the date of filing and immediately upon final disposition of the last outstanding motion, and to provide the Court a copy of all dispositive orders.

Parties are advised that appellate review of the lower court's disposition regarding any such motion requires a timely filed amended notice of appeal.

Very truly yours,

Catherine O'Hagan Wolfe, Clerk

By: _____
Dylan Beesley, Deputy Clerk

A TRUE COPY
Catherine O'Hagan Wolfe, Clerk
by _____
DEPUTY CLERK

CERTIFIED:

JUN 1 7 2009

EXHIBIT 42
Page 531 of 808

AMY R. GURVEY, Pro Se
315 Highland Avenue
Upper Montclair, NJ 07043
(917) 733-9981



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

AMY R. GURVEY,
(and LIVE-FI™ TECHNOLOGIES, LCC     CASE NO. 06-CV-1202 (BSJ)
as the real party-in-interest assigned
Gurvey's US patents),
             Plaintiffs,                NOTICE OF MOTION

-against-

COWAN, LIEBOWITZ & LATMAN, PC;
CLEAR CHANNEL COMMUNICATIONS,
INC. INSTANTLIVE CONCERTS, LLC;
LIVE NATION, INC.; NEXTICKETING, et al.,

            Defendants.

---------------------------------------------------X

RECEIVED
APR 22 2010
U.S.D.C. S.D.N.Y.
CASHIERS

     **PLEASE TAKE NOTICE** that Plaintiff Amy R. Gurvey and (proposed) new Plaintiff

LIVE-FI™ Technologies, LLC as the real party-in-interest assigned Gurvey's issued US patents

and other rights of enforcement in and to Plaintiff's proprietary technologies and trade secrets,

will move this Court on May 10, 2010 pursuant to FRCP Rule 60(b), Title 35 and Title 15 of the

US Code, for an order, *inter alia*, vacating the Court's previous order of April 24, 2009 as moot,

joining LIVE-FI™ Technologies as a party plaintiff, granting Plaintiffs an extension of time to

retain new counsel, severing certain claims against the different groups of defendants, and

ordering service of Plaintiff's Fourth Amended Complaint herein for a temporary restraining

order, damages for patent infringement, unfair competition, violation of the antitrust laws,

sanctions for fraud, attorneys fees and costs, damages pursuant to 18 USC 1030, breach of

fiduciary duty and such other and further relief as the Court deems just and proper.

1

EXHIBIT 42
Page 532 of 808

Case 1:08-cv-00921-RMC-DR Document 130 Filed 06/09/20 Page 31 of 524
Case 1:08-cv-00921-RMC-DR Document 130 Filed 06/09/20 Page 31 of 524
ID #:931

RECEIVED

MAR 2 3 2010



**LIVE-FI™**
TECHNOLOGIES INC.



www.live-fi.com
(917) 733-9981

LITIGATION III, ANTITRUST DIV.
U.S. DEPT. OF JUSTICE

March 18, 2010

**FEDERAL EXPRESS**
Hon. Rosemary M. Collyer
US District Court
District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

cc: John R. Read, Chief
US Dept. of Justice
Litigation III Section
450 Fifth Street, NW    Suite 4000
Washington, DC  20540

cc: Cong. Rick Baucher
Chair, Telecommunications Committee
US House of Representatives

cc: Steve Waldman, FCC Deputy Commissioner

cc: Cong. Ed Markey
Former Chair, Telecommunications Committee

Re:  Comments to Competitive Impact Statement of January 25, 2010
Ticketmaster and Live Nation, Inc. Merger   USDC Dist. of Col. No. 1:10-CV-00139

Dear Judge Collyer:

In accordance with the Justice Dept.'s January 25, 2010 Competitive Impact Statement ("CIS") inviting comments within sixty (60) days to the Court's revised order re the prospective merger between defendants Ticketmaster and Live Nation, Inc., as Inventor and President of an early stage live event digital distribution company, LIVE-FI™ Technologies, LLC with its first US patents issued on October 13, 2009 (US Patent No. 7,603, 321) (**Exhibit 1**), I respectfully submit on behalf of LIVE-FI™, the public and other entities similarly situated, "inadequacy" and material omission objections to the order.  It is contended that if the CIS is adopted in its present form without further revision, it will have a significant anti-competitive impact on the future of all live industries including music, sports, gaming and education contrary to the public interest in violation of the Tunney Act, 15 USC §§ 16(b)-(h).

Most respectfully, LIVE-FI™ has three primary concerns with the CIS as published:

(1)  The Court has omitted all discussion of the negative anticompetitive impact the merger will have upon live event and recording distribution particularly electronic broadcasts and transmissions that are the future of the converging TV and mobile markets.  As *admitted* in Live Nation's own papers and press releases, monopolization of the domestic and international concert market has been one of the company's primary objectives since it was formed in 2005. (See **Exhibit 2** and pp. 3 *infra*). There exists an inherent danger from a merged entity that will be, all at the same time, a promoter, majority venue owner for concerts and sports, label for performing artists, and the owner of ticketing and mobile ticketing systems, venue contracts and

1

EXHIBIT 42
Page 533 of 808

ticketholder lists from 80% of US venues going back 25 years. As this Court correctly found, Live Nation already owns some 80-100 US venues and 30 in foreign territories. Ticketmaster's lists will now give the merged entity the added unfair advantage to promote and fulfill consumer electronic requests for live concerts and sports merchandise throughout the world even for artists and celebrities not represented by Live Nation but who are appearing at venues that deploy Ticketmaster systems;

(2) The Court wrongly assumes at pp. 7 that the merged entity will have no significant impact on small companies. As such, it speaks only to the ticket pricing interests of large promoters and venues such as AEG and Comcast Spectator. This is contended prejudicial error. The Court's most recent revised solution that mandates giving AEG access to Ticketmaster's systems and divests Ticketmaster of its Paciolan venue software in favor of Comcast-Spectator, presents a source of even greater concern for small entities. This is because the result will be a larger number of public concert and sports venues with access to the same basic ticketing, mobile ticketing operating systems including interfaces without equal access given to small companies, making the field even harder for smaller technology firms to penetrate; and

(3) The Court has failed to adopt explicit protocols and safeguards to ensure that private litigants and smaller entities maintain equal and fair access to the Courts to protect their rights and remedies against the individual defendants and the merged entity. This is the Court's stated objective in Section IV.

In fact, Live Nation and its former parent Clear Channel Entertainment, Inc., a division of Clear Channel Communications, Inc. have a long history of defrauding private litigants before the Courts that must not be overlooked and most respectfully, should be investigated by this Court prior to adoption of a final plan. Live Nation's practice for years has been to *falsely deny under oath all contacts with individual States* to avoid jurisdiction to answer for anticompetitive misconduct.

In particular, I draw this Court's attention to the appended untruthful papers sworn to under oath in 2006 and 2008 by defendant Live Nation and their Baker Botts attorneys in an antitrust case before Southern District of New York [Case No. 06-CV-1202 (BSJ) (SDNY)]. Live Nation, Clear Channel, and their attorneys falsely *deny under oath all contacts with New York State* (**Exhibit 3**).

As this Court correctly found and contrary to these sworn papers, Live Nation owns many New York venues including House of Blues, Jones Beach Amphitheatre, Blue Note, and at times relevant, 24 major radio stations in the tri-state area including WLTW-Lite 106.7 FM. Live Nation filed similar untruthful papers before other tribunals in lawsuits brought by private litigants. (**Exhibit 4**)

In addition, just prior to Live Nation's acquisition of Clear Channel's new affiliate Instant Live Concerts in 2005, Live Nation, *admittedly* sought to monopolize live concert distribution. In 2004, Live Nation acquired a third party inventor's patent called "Griner" (US Patent No. 6,614,729). Griner discloses only a single operating system that affixes tracks on a master

2

EXHIBIT 42
Page 534 of 808

recording as individual selections are being performed during a concert as but one method to expedite distribution of onsite concert CD's.

Yet, immediately after acquiring Griner, Live Nation issued a series of false press releases throughout the US and the world that it owned a *monopoly* on distributing live concert recordings. (**Exhibit 5**). Live Nation's clear intent and ensuing practice was to prevent smaller recording companies from accompanying artists into its venues to achieve unfair market penetration of its recording distribution systems even at venues owned by others. This is, in part, how Live Nation attracted major artists such as Madonna, Jay-Z, Bono and Shakira, to leave their respective labels and sign with Live Nation in all fields during a time that the recording industry was vulnerable and experiencing plummeting CD sales from digital piracy of shared MP3 files over the Internet.

In 2005, LIVE-FI™ was itself denied access to Live Nation's venues. This was after LIVE-FI™'s USPTO unpublished provisional patent applications were believed to have been misappropriated to Live Nation through a New York intellectual property law firm representing LIVE-FI™ and Clear Channel simultaneously without disclosure. The misappropriation resulted in the formation Clear Channel's affiliate, Instant Live Concerts, LLC in 2003 by principals of Clear Channel Entertainment ("CCE"). Instant Live Concerts was subsequently acquired by Live Nation in 2005 after it was spun off from CCE and both remain headquartered at 9348 Civic Center Drive, Beverly Hills, CA.

Relevant here is that the New York Times article of May 5, 2003 that introduced Instant Live Concerts (**Exhibit 6**), also included sound bites from Irving Azoff, President of Front Line Management and now CEO of defendant Ticketmaster.

Now that live recording distribution has evolved into a digital rather than a hand-out business, Live Nation has continued to preclude LIVE-FI™ and other recording companies from its venues. If defendants' merger is approved without further revision, penetration of other company's technologies will be significantly impeded. This is because Ticketmaster's lists will afford Live Nation the ultimate advantages of controlling all of live concert promotion, venue entry access and event content distribution to the detriment of the public and all other entertainment companies.

In 2006, the press confirmed LIVE-FI™'s premise when it reported that Live Nation was in fact precluding smaller recording companies from accompanying artists to record concerts at its venues. At that time, Live Nation did not represent any artists or their recording rights.

In response, certain recording companies including DiscLive and Hyburn filed complaints against Live Nation and Clear Channel with the Electronic Frontier Foundation in San Francisco and were found to have meritorious claims. (**Exhibit 7**) Shortly thereafter, EFF invalided the Griner patent before the USPTO on other grounds, leaving Live Nation without a patent. This paved the way, as this Court correctly found, for Live Nation's 2006 alliance with German technology giant CTS Eventim and Clear Channel's other new subsidiary, Next Ticketing (**Exhibit 8**). This venture failed leading to Live Nation's more recent partnership with Ticketmaster (**Exhibit 9**).

3

EXHIBIT 42
Page 535 of 808

**Live Nation's history of unfair and anticompetitive practices should now raise a red flag to this Court** on *the* most pressing antitrust issues potentially affecting the future of the entire music and sports industries.

Without speaking directly to the issues of live event and recording distribution, the Court, most respectfully, is doing the public a disservice.

The CIS as it stands does nothing to protect the interests of small recording and technology firms that have invested huge monies in development and may be able to compete with Live Nation and online subdistributors such as iTunes and Google to reverse the last ten years of industry losses emanating from digital piracy of MP3 files.

In summary, unless the Court mandates further revisions and sharing of assets with small companies, the pooling of the portfolio of powerful assets already controlled by Ticketmaster and Live Nation will enable the merged entity to unduly monopolize all of public access to concerts and events, majority lists of ticketholders and in turn, live recording distribution to those most likely to buy event recordings and podcasts. The end result will make it virtually impossible for new technology companies that have no equal access to Ticketmaster's operating systems to have a fair chance to compete.

Respectfully submitted,

Amy R. Gurvey
Inventor and President
LIVE-FI™ Technologies
amyg@live-fi.com
Ph: 917-733-9981

4

EXHIBIT 42
Page 536 of 808

# EXHIBIT 1

EXHIBIT 42
Page 537 of 808

Case Case 1:06-cv-01202-GMB Document 3-430 Filed 10/20/20 Page 38 of 524
Case 4:06-cv-01202-GMB Document 3-430 Filed 06/27/20 Page 538 of 808 Page
ID #:936

US007603321B2

(12) **United States Patent**

Gurvey

(10) Patent No.: **US 7,603,321 B2**

(45) **Date of Patent:** **Oct. 13, 2009**

(54) **ELECTRONIC SYSTEM AND METHOD COUPLING LIVE EVENT TICKETING AND INTERACTIVE ENTRIES WITH THE SALE, DISTRIBUTION AND TRANSMISSION OF EVENT RECORDINGS, MASTERING SYSTEM AND INTELLIGENT TERMINAL DESIGNS**

(76) Inventor: **Amy R. Gurvey,** 315 Highland Ave., Upper Montclair, NJ (US) 07043

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **11/253,912**

(22) Filed: **Oct. 18, 2005**

(65) **Prior Publication Data**

US 2006/0173701 A1    Aug. 3, 2006

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 10/442,468, filed on May 20, 2003.

(60) Provisional application No. 60/382,710, filed on May 22, 2002, provisional application No. 60/382,949, filed on May 24, 2002, provisional application No. 60/619,754, filed on Oct. 18, 2004.

(51) **Int. Cl.**
*G06Q 99/00*    (2006.01)

(52) **U.S. Cl.** ............................ **705/65;** 705/50; 705/64; 705/52; 726/26

(58) **Field of Classification Search** ............ 705/50–59; 369/1; 726/26
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,825,876 A * 10/1998 Peterson, Jr. ................ 705/52

| | | | | |
|---|---|---|---|---|
| 6,614,729 | B2 * | 9/2003 | Griner et al. ................. | 369/1 |
| 2001/0018660 | A1 * | 8/2001 | Sehr ........................... | 705/5 |
| 2002/0199198 | A1 * | 12/2002 | Stonedahl ................... | 725/86 |
| 2003/0023564 | A1 * | 1/2003 | Padhye et al. ............. | 705/54 |
| 2003/0097307 | A1 * | 5/2003 | Greene ....................... | 705/26 |
| 2004/0137929 | A1 * | 7/2004 | Jones et al. ............... | 455/517 |
| 2008/0133416 | A1 * | 6/2008 | Rhoads ....................... | 705/51 |

OTHER PUBLICATIONS

"Broadway Television Network Selects On.2.com to Poer Video-On-Demand Webcasts of Broadway Shows", Jun. 15, 2000.*

* cited by examiner

*Primary Examiner*—Jalatee Worjloh
(74) *Attorney, Agent, or Firm*—Allan Chan; Allan Chan & Assoc

(57) **ABSTRACT**

The present disclosure provides a method and system of electronically associating one or any combination of the production, balancing, editing, transmission, distribution and sale of live event "Recordings" with the sale of a "ticket" [defined to include any entrance payment/receipt, (tournament) entrance fee or logged placed bet] to or during the event, such that both or either of a ticket purchaser and/or non-ticket purchaser are able to automatically acquire a Recording or participate in interactive offerings related to the event by means of [optional] authenticated retrieval systems at a terminal device when connected to the Internet or wireless network. A method for electronically converting a balanced audience feed to the value for optimal Recording balance is also disclosed for optional integration. Distribution and/or retrieval of a Recording by patrons, non-attendee purchasers and/or licensees may occur when the Recording is embodied in a fixed medium of expression and/or when the Recording is in digital or other encoded format.

**10 Claims, 9 Drawing Sheets**



EXHIBIT 42
Page 538 of 808

Case 1:03-cv-01020-GMS-HBB   Document 430   Filed 06/09/09   Page 737 of 784
ID #:937



FIG. 1

EXHIBIT 42
Page 539 of 808

Case 2:04-cv-01045-RSM Document 143-1 Filed 08/09/20 Page 826 of 894
Case 2:04-cv-01045-RSM Document 143 Filed 08/09/20 Page 540 of 808 Page
ID #:938



TRANSACTION PROCESSING

FIG. 2A

FIG. 2B

FIG. 2C

EXHIBIT 42
Page 540 of 808

Case 4:08-cv-01024-CW Document 48 Filed 02/09/10 Page 837 of 824 Page ID #:939



FIG. 3

EXHIBIT 42
Page 541 of 808

Case 1:08-cv-01020-LPS-JEP  Document 53  Filed 08/20/20  Page 37 of 524
Case 1:08-cv-01020-LPS-JEP  Document 53  Filed 08/20/20  Page 37 of 524
ID #:940



FIG. 4

EXHIBIT 42
Page 542 of 808

A-672

AMY R. GURVEY
[LIVE-FI™ TECHNOLOGIES, LLC]
315 Highland Avenue
Upper Montclair, NJ  07043
(917) 733-9981

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————X

AMY R. GURVEY                                          CASE NO. 06-CV-1202 (BSJ)
(and LIVE-FI™ TECHNOLOGIES, LCC
as the real party-in-interest assigned
Plaintiff's US patents),
                            Plaintiffs,
     -against-                                          AFFIDAVIT IN SUPPORT
                                                        PLAINTIFFS' MOTION TO
                                                        VACATE AND SERVE
COWAN, LIEBOWITZ & LATMAN, PC;                          FOURTH AMENDED COMPLAINT
CLEAR CHANNEL COMMUNICATIONS,
INC.; LIVE NATION, INC.;
INSTANTLIVE CONCERTS, LLC;
NEXT TICKETING; ET AL.,

                            Defendants.
————————————————————X


## I.    **INTRODUCTION**

This motion is brought pursuant to FRCP Rule 60(b), Titles 35, 15 and Rule 15 of the US

Code, the Restatement of Torts Second and the Uniform Trade Secrets Act. [1]  In it, Plaintiff *pro*

*se*, Amy R. Gurvey [2], an inventor, producer and attorney, seeks to:

---

[1] See also, *Schreiber Foods, Inc. v. Beatrice Cheese and Kustner Industries*, 402 F. 3d
1198, 61 Fed. R.Serv.3d 174, 74 USPQ 2d 1204 (USCA Fed. Cir.) (2005); *Vaxiion v. Foley &
Larnder*, 593 F. Supp. 2d 1153 (SD CA 2008); *Opals On Ice Lingerie v. Bodylines*, 425 F. Supp.
2d 286 (EDNY 2004)

[2] Plaintiff's 2008-9 arbitration attorney, Lee Squitieri, Esq., moved to withdraw pursuant
to Local Rule 1.4 on or about April 16, 2010.  Plaintiff now seeks time to retain new counsel
who does not notice a conflict of interest with Live Nation defendants, their new proposed
merger partner, Ticketmaster, Inc. or with defendant CLL.

3

EXHIBIT 42
Page 543 of 808

(1)     Vacate the April 24, 2009 order of SDNY, Hon. Barbara S. Jones (annexed as

Plaintiff's **Exhibit 1**) pursuant to FRCP Rule 60(b)(2) based on new evidence, *i.e.*, two US

patents issued to Plaintiff Gurvey in October, 2009 and January, 2010 [3] representing separate

inventions premised on two unpublished USPTO provisional patent application Nos. 60/382,710

and 60/382,949 ("PPAs") filed by defendant NY law firm Cowan Liebowitz & Latman, PC

("CLL") as Plaintiff's attorneys on May 22 and 24, 2002;

(2)     Vacate this Court's April 24, 2009 order pursuant to FRCP Rule 60(b)(3) and the

catchall fraud phrase of Rule 60(b) based on two distinct sets of untruthful/frivolous Rule 12(b)

motion papers submitted in 2006 and 2008 by opposing law firm Baker Botts on behalf of its

clients, defendants Clear Channel, Live Nation, Inc., Instant Live Concerts and Next Ticketing

(collectively "Live Nation defendants") wherein defendants falsely swore under oath "no

contacts with NYS" to attempt to avoid jurisdiction over them in this lawsuit  (**Exhibit 2**) [4] .

[NOTE:  Live Nation defendants' contacts with New York State were subsequently

acknowledged and found in the current proceedings before Hon. Rosemary M. Collyer in *United

States v. Ticketmaster and [defendant herein] Live Nation, Inc.*, Fed. R. Vol. 75, No. 27, Case

No. 1:10-cv-00139) (DC District Court, February 10, 2010) (**Exhibit 3**).   Live Nation

defendants also submitted similar untruthful motion papers denying all contacts with other

---

[3] US Patent Nos. 7, 603, 321(the "321 Patent") and 29/310,547 (the "547 Patent"), the
latter issued Notice of Issuance with all fees paid in January, 2010.

[4] Defendants' motions papers were, in fact, knowing false when submitted, aimed only at
unduly prejudicing/dismissing Plaintiff's instant lawsuit, and merit sanctions in Plaintiff's favor
particularly because moving attorneys, with knowledge of the blatant falsity of their proffers,
never informed the Court or corrected the record. See, e.g., *Schreiber Foods v. Beatrice and
Kustner, supra,* 402 F. 3d 1198, 1205 (USCA Fed. Cir. 2005) on the issue of sanctions for fraud
under Rule 60(b) for an attorney's failure to take reasonable remedial measures after learning of
the falsity of his own proffered material evidence.

EXHIBIT 42
Page 544 of 808

Case 1:06-cv-01202-CS-HBP Document 430 Filed 09/09/20 Page 33 of 124
Case 1:06-cv-01202-CS-HBP Document 431 Filed 08/25/20 Page 36 of 2030 Page
ID #:943

A-674

jurisdictions in cases brought by private litigants (**Exhibit 4**), demonstrating defendants' pattern

of prejudicial and frivolous documentary misconduct before the Federal Courts that is expressly

proscribed in Section IV of Judge Collyer's Competitive Impact Statement issued January 25,

2010 and precedent for purposes of this lawsuit (**Exhibit 3**)];

    (3)    Vacate this Court's April 24, 2009 order pursuant to FRCP Rule 60(b)(6) based

on Live Nation defendants' antitrust crimes against society cited by the Electronic Frontier

Foundation in 2005-2006 that are the same dishonest business practices defendants used to

unlawfully preclude Plaintiff and LIVE-FI ™ Technologies from its venues (**Exhibit 5**) while, at

the same time, unlawfully using its monopoly of 150 US concert venues, 30 abroad and 250

radio stations to attempt to destroy Plaintiff's business and violate the antitrust laws;

    (4)    Join as a party plaintiff, real party-in-interest LIVE-FI™ Technologies, LLC, a

Delaware limited liability corporation assigned Gurvey's patents and other rights of enforcement

in and to Plaintiff's intellectual property interests and trade secrets;

    (5)    Grant Plaintiffs an extension of time to retain new counsel and sever the claims

against the Live Nation defendants on the one hand from those against the CLL defendants on

the other; and

    (6)    Order service of Plaintiff's Fourth Amended Complaint herein that seeks a TRO,

double and treble damage claims, as the case may be, sanctions, and such other and further relief

as the Court deems just and proper for defendants' infringement of Plaintiff's patents directly

and through the doctrine of equivalents, dishonest business practices, unfair competition,

violations of the Sherman Act and 18 USCA Section 1030, breach of fiduciary duty,

misappropriation, malpractice, fraud before this Court and unauthorized continuing use and

deployment of each of Plaintiff's inventions.

5

EXHIBIT 42
Page 545 of 808

## PLAINTIFFS' FOURTH AMENDED COMPLAINT

### II.    JURISDICTION

Jurisdiction over Plaintiff's Fourth Amended Complaint is based on Titles 15 and 35 of the US Code, 18 USC Section 1030, the Uniform Trade Secrets Act, as they pertain to unlawful and unauthorized misappropriation of Plaintiff's trade secrets that resulted in two US patents, unauthorized deployment and infringement of Plaintiff's inventions directly and by the doctrine of equivalents, unfair competition, dishonest business practices, antitrust violations and defendant CLL's misappropriation of Plaintiff's trade secrets and misconduct before the United States Patent and Trademark Office that prejudiced prosecution of Plaintiff's patent portfolio.

Claims for CLL's breach of fiduciary duty, violations of 22 NYCRR 603 and tortious interference with Plaintiff's contract with Legend Films are joined as arising out the same nucleus of operative facts under the pendent jurisdiction of the Federal Courts.  FRCP Rule 60(b), *Schreiber Foods, Inc. v. Beatrice Cheese and Kustner Industries*, 402 F. 3d 1198, 61 Fed. R.Serv.3d 174, 74 USPQ 2d 1204 (USCA Fed. Cir.) (2005), *Vaxiion v. Foley & Larnder*, 594 F. Supp. 2d 1153 (SD CA 2008).

### III.    PARTIES

Plaintiff, Amy R. Gurvey, is an inventor, producer, development executive and CA attorney currently residing in Montclair, NJ.

LIVE-FI™ Technologies, LLC is a Delaware limited liability company assigned Plaintiff Amy R. Gurvey's patents and intellectual property interests including rights of enforcement therein.

6

EXHIBIT 42
Page 546 of 808

Case 1:06-cv-01202-LES-HBP Document 430 Filed 08/09/20 Page 35 of 124 Case 1:06-cv-01202-LES-HBP Document 431 Filed 08/28/20 Page 36 of 120 Page ID #646

A-676

Defendant CLL is a New York law firm with an international trademark practice headquartered at 1133 Avenue f the Americas, New York, NY 10036.

Defendants Midge Hyman, Esq., Simon Gerson, Esq., William Borchard, Esq., Christopher Jensen, Esq. and Baila Celedonia, Esq. are equity partners of defendant CLL. Defendants CLL, Hyman, Gerson, Borchard, Jensen and Celedonia are collectively referred to herein as "CLL defendants".

Defendant Michael Gordon is bass guitarist of the band *Phish*. Upon information and belief, either or both of Gordon or *Phish* were at times relevant, client(s) of defendant CLL. Upon further information and belief, defendant Gordon resides in Burlington, VT.

Defendant Clear Channel Communications, Inc. is a Texas corporation and the parent and/or holding company of defendant Clear Channel Entertainment Inc. ("CCE"), a client of defendant CLL, that became CCE Spinco and in turn defendant Live Nation, Inc. in 2005.

Defendant Live Nation, Inc. is the world's largest concert promoter, and is a Delaware corporation, located at 9348 Civic Center Drive, Beverly Hills, CA, assigned all defendant CCE's US and foreign concert venues.

Defendant Instant Live Concerts is a Massachusetts LLC formed in 2003 by principals of defendant CCE that was acquired by defendant Live Nation in 2005 and is now also located at 9348 Civic Center Drive, Beverly Hills, CA.

Defendant Next Ticketing is an affiliate of defendant Clear Channel based in San Antonio, TX.

Defendants Clear Channel Communications, CCE, Live Nation, Instant Live Concerts and Next Ticketing are collectively referred to herein as "Live Nation defendants", except when expressly referred to individually.

7

EXHIBIT 42
Page 547 of 808

Case 1:06-cv-01099-LES-HBP   Document 430   Filed 03/09/20   Page 36 of 124
Case 1:06-cv-01099-LES-HBP   Document 451   Filed 08/25/20   Page 43 of 303   Page
D #946

## A-677

### IV.    LITIGATION HISTORY

The following facts are undisputed in support of Plaintiff's motion-in-chief and instant Fourth Amended Complaint since issuance of two US Patents to Plaintiff in October, 2009 and January, 2010 assigned to proposed new plaintiff LIVE-FI™ Technologies, LLC:

(1)    In 2001, Plaintiff, an inventor, producer, development executive and attorney, was General Counsel of a brand new company, Legend Films, a Nevada LLC, comprised then only of three Class A shareholders - two founders and one investor, Jeffrey Yapp (Plaintiff's long standing client and business colleague), Barry Sandrew and Alan Folkman.  Since then, and based on Plaintiff's efforts, ideas for Legend's digital v. previous analog technology and work to get Legend a patent, the LLC has become Legend Films, Inc. of San Diego, CA, employing some 240 individuals worldwide in the field of black and white film and video colorization.

(2)    Plaintiff's contract with Legend Films for services since 1999 to its original founders entitled Plaintiff to 3% of Class B authorized stock pre-dilution plus an in-house salary to be negotiated to take effect when the company had its first significant round of venture funding.

(3)    On April 17, 2002, defendant CLL partners, interested in representing Legend and other of Plaintiff's entertainment and technology clients including videogame/Atari mastermind Nolan Bushnell, signed a one-year Of Counsel contract with Plaintiff effective January 15, 2002 inclusive of a rider on which Plaintiff's reserved interests were expressly set stated.[5][6]  Plaintiff's

---

[5]  That Plaintiff's Of Counsel contract including the rider was signed by defendant CLL on April 17, 2002, was found by arbitrator Charlotte Moses Fischman, Esq. in 2009 and is res judicata in this lawsuit.

[6] CLL's first papers in this lawsuit submitted by attorney Hinshaw & Culbertson with a sworn affirmation by CLL partner Simon Gerson, Esq. omitted the rider that had CLL's own codes, in an attempt to defraud Plaintiff and  the Court and improperly argue for a different date of

8

EXHIBIT 42
Page 548 of 808

A-678

(grandfathered) reserved rights included, without limitation, Plaintiff's trade secrets, inventions, proprietary operating systems and designs pertaining to authenticated live event recording distribution, royalty accounting and mobile ticketing/electronic entry access control at live event venues (since assigned to LIVE-FI™ Technologies, LLC) and Plaintiff's 3% stock interest in Legend Films (**Exhibit 6**);

(4)     Unbeknownst to Plaintiff, Plaintiff's trade secrets, files and contact lists were input into defendant law firm's CLL computer networks and then misappropriated without authorization in violation of 18 USCA Section 1030 by defendant CLL attorneys to CLL clients including at least one of defendant Mike Gordon of *Phish* and defendant Clear Channel, its principals, subsidiaries, and affiliates;

(5)     On or about May 7, 2002, defendant CLL unilaterally repudiated Plaintiff's Of Counsel contract without cause when it told Plaintiff CLL "changed its mind". This was just after Plaintiff had already turned down a competing offer from law firm Moses & Singer and Plaintiff had submitted her CLL contract to a mortgage company that financed her home in Montclair, NJ.

(6)     Two weeks later, on May 22 and 24, 2002, defendant CLL by its attorneys Mark Montague, Esq. and R. Lewis Gable, Esq. filed Plaintiff's PPA Nos. 60/382,710 and 60/382,949 before the USPTO as Plaintiff's exclusive attorneys. At least one PPA was entitled "Premium Performance Ticket".

(7)     Plaintiff's PPAs remain unpublished and are trade secrets. They ultimately resulted in the issuance of two patents to Plaintiff Gurvey in 2009 and 2010, some seven+ years after CLL's filings, placing this case within the exclusive jurisdiction of the Federal Courts under

---

execution. This same argument was advanced by attorney Richard Supple, Esq. during the arbitration in 2008 that Plaintiff won against CLL on all counts.

EXHIBIT 42
Page 549 of 808

Title 35 of the US Code. Plaintiff's claims for CLL's misconduct before the Patent Office, malpractice, breach of fiduciary duty and failing to reveal a conflict of interest are properly before this Court as pendent state claims arising out of the same nucleus of operative facts along with Plaintiff's claims against CLL for tortious interference of her General Counsel agreement with Legend Films. *Vaxiion v. Foley & Lardner*, 593 F. Supp. 2d 1153 (SDCA 2008)

(8)     Because of defendant CLL's continuing torts as to Plaintiff, however, that included its unnoticed and incomplete withdrawal as Plaintiff's lawyer before the USPTO [Para. (17) *infra*], prosecution of Plaintiff's patent portfolio was prejudiced causing Plaintiff significant damages to her proprietary inventions and business;

(9)     In fact, based on defendant CLL's torts, Live Nation defendants, as CLL's principals under agency/principal theory, were enabled to beat Plaintiff to the market with her own inventions and proprietary technology. Thusfar two separate operating systems and inventions belonging to Plaintiff exclusively have been deployed by Live Nation defendants.

(10)     In August, 2002, three months after CLL's contract repudiation but while an interim arrangement for Plaintiff to maintain her CLL office was in effect, Plaintiff was locked out of defendant CLL offices upon returning from a business trip for Legend Films to CA. During this time, Plaintiff's files including digital files on CLL's computer were unlawfully confiscated by CLL attorneys, agents and employees, and some never returned;

(11)     On October 14, 2002, defendant CLL attorneys and/or other CLL employees unlawfully deleted 1/3 of Plaintiff's computer files before sending her by Fed Ex in November, 2002 a significantly erased disk with some 50+ entries eradicated in violation of 18 USC Section 1030. The date of October 14, 2002 is imprinted on the disk as the date of deletion for all missing entries and upon information and belief, certain entries, that CLL attempted to conceal,

10

EXHIBIT 42
Page 550 of 808

**A-680**

were misappropriated to other of CLL's clients, while Plaintiff was permanently denied access thereto;

(12)    Upon information and belief, at least one of CLL defendant partners defendants Midge Hyman, Esq., Simon Gerson, Esq., William Borchard, Esq. , Christopher Jensen, Esq. and Baila Celedonia, Esq. ordered the file erasures that pertained to, *inter alia*, Plaintiff's reserved rights under the Of Counsel contract, her trade secrets, the plans for her own live event distribution and mobile ticketing company, and separately, Legend Films;

(13)    In March, 2003, some six months later, principals of defendant Clear Channel first announced recent formation of a Massachusetts LLC they called [defendant herein] Instant Live Concerts, that had just begun authenticated distribution of live concert recordings at Clear Channel venues and had copied Plaintiff's business model for her own company from her files at CLL;

(14)    Defendant Instant Live Concerts was formally announced in trade journals and in the Business Section of the *New York Times* on May 5, 2003 as defendant Clear Channel's newest venture.  The *New York Times* is, upon belief, another client of defendant CLL.

(15)    The *New York Times* article quoted verbatim from Plaintiff's unpublished PPAs, her files at the firm, and cited Plaintiff's identical trade secrets, plans and business model for her company that defendant CLL was obligated as Plaintiff's lawyers, to keep confidential. The article also included interviews from other of  CLL's clients including members of *Phish* on the import of [Plaintiff's] inventions and novel business model.  (**Exhibit 7**);

(16)    A CLL attorney, Susan Schick, Esq., who had the office two doors from Plaintiff, was  engaged to Mike Gordon of Phish at this time and on several occasions, informed CLL

11

EXHIBIT 42
Page 551 of 808

partners about the huge potential of Plaintiff's inventions (**Exhibit 8**). [7] When Plaintiff and her

husband met defendant Gordon at a firm party, Gordon knew all about Plaintiff's trade secrets.

(17)    In 2003 and unbeknownst to Plaintiff, defendant CLL allegedly filed a notice with

the USPTO withdrawing as Plaintiff's attorney for an **admitted** *"conflict of interest"* but only as

to PPA No. 949.

(18)    CLL never notified Plaintiff that it had ceased to represent Plaintiff's interests and

inventions, and in fact, never withdrew as to PPA No. 710.

(19)    Defendant CLL's alleged withdrawal notice although dated in 2003 was not found

by the USPTO until 2005 when it was sent to Plaintiff for the first time (**Exhibit 9**),

demonstrating an issue of fact as to when it was actually filed.

(20)    Defendant CLL's notice does not contain an affidavit or certificate of service and

in fact, was never docketed (**Exhibit 10**). It therefore did not constitute legal notice to Plaintiff

of attorney withdrawal as is required under the Rules of Professional Responsibility and 22

NYCRR 603, et seq. Technically CLL was still Plaintiff's lawyer on the 710 PPA filing.

(21)    Defendant CLL does not deny that it never withdrew as to the 710 PPA and also

never informed Plaintiff of its *admitted* conflict of interest.

(22)    Lack of notice prevented Plaintiff from being able to protect her inventions before

the USPTO.

(23)    Misappropriation of Plaintiff's patented event content distribution system using

Plaintiff's authentication methods as disclosed in Plaintiff's unpublished PPAs filed by

defendant CLL was admittedly exploited and advertised to consumer-end users by defendant

Instant Live Concerts on its first website posted in March, 2003 (**Exhibit 11**).

---

[7] Upon information, Mr. Gordon was subsequently arraigned on child molestation charges on
Long Island.

12

EXHIBIT 42
Page 552 of 808

(24)    There was no InstantLive Concerts previous to misappropriation of Plaintiff's files and trade secrets by defendant CLL that CLL was required to be kept confidential pursuant to the attorney client privilege and the Computer Fraud and Abuse Act, 18 USCA 1030.

(25)    In 2004, Live Nation defendants falsely claimed a monopoly on Plaintiff's trade secrets and inventions at the time the USPTO had put Plaintiff's applications on the back burner because of an inability to reconcile CLL's single withdrawal notice with the two PPAs it filed.

(26)    In the meantime, Live Nation defendants continued to deploy Plaintiff's inventions without authorization, get to market first, and take advantage of the delay to the detriment of Plaintiff's business.

(27)    In 2005, defendant Live Nation, was spun off from defendant Clear Channel and then immediately acquired defendant Instant Live Concerts as a subsidiary.  Shortly thereafter defendant Live Nation aligned itself with another new Clear Channel subsidiary, defendant Next Ticketing, to deploy the second of Plaintiff's inventions.

(28)    In 2005, after notice by Plaintiff to Live Nation defendants and their in-house counsel, Dale Head, Esq., of the unlawful misappropriation of Plaintiff's trade secrets through its agent defendant CLL, the press reported that Live Nation had formed a joint venture with Universal Music Group to deploy Plaintiff's inventions demonstrating a second misappropriation after notice and without authorization by Live Nation defendants themselves.  (**Exhibit 12**).

(29)    In 2006, the press and Internet sites reported that defendant Next Ticketing had deployed Plaintiff's mobile ticketing operations and interfaces at defendant Live Nation venues and venues owned by others.  (**Exhibit 13**)  Plaintiff's mobile ticketing interfaces represent a distinct technology from Plaintiff's proprietary systems that associate event content distribution

13

EXHIBIT 42
Page 553 of 808

with ticketing information as a means to expedite authenticated concert transmission and

distribution including, without limitation, to audience members.

(30)   In 2006, Live Nation defendants were cited for antitrust crimes against society by

the Electronic Frontier Foundation in San Francisco (**Exhibit 14**).  Aside from precluding

entities DiscLive and Hyburn from its venues to record artist concerts, Live Nation defendants

also precluded Plaintiff and used its monopoly of 150 US concert venues and defendant Clear

Channel 250 radio stations to unlawfully violate the antitrust laws, and falsely claim a monopoly

for itself on Plaintiff's inventions (**Exhibit 15**).

(31)   On February 6, 2006, Plaintiff filed and served a summons and complaint in this

action, which is the date relevant for statute of limitation purposes.

(32)   Plaintiff next served an amended complaint on June 5, 2006 via process server

while still seeking an attorney without a conflict of interest with each of Live Nation defendants

and defendant CLL;

(33)   In the interim, Legend Films, Inc., that had terminated Plaintiff's services in

December, 2002 after being apprised of difficulties with defendant CLL, continued to make

assurances to Plaintiff to issue Plaintiff's due and owing 3% stock.  In spite of Legend's 2005-6

offer to issue Plaintiff 40,000 shares for her services as General Counsel, Legend failed to turn

over the necessary due diligence documents so that Plaintiff could assess the value of that offer.

(34)   The documents subsequently produced by Legend principals demonstrated

defendant CLL's interference with Plaintiff's agreement with Legend, a matter that is currently

before the USDC SD CA Case No. 09-cv-0942 (IEG) (JMA).

(35)   In this lawsuit, in 2006 and 2008 Live Nation defendants and their Baker Botts

attorneys filed two distinct sets of untruthful and frivolous rule 12(b) motions falsely swearing

14

EXHIBIT 42
Page 554 of 808

under oath that Live Nation had no contacts with the State of New York to avoid jurisdiction (**Exhibit 2**).

(36)    In 2008 , this Court severed Plaintiff's contract claims against defendant CLL for binding arbitration along with defendants CLL's proffered defenses and counterclaims;

(37)    On April 24, 2009, the Court dismissed Plaintiff's claims against Live Nation defendants based on Live Nation defendants' fraudulent moving papers and statute of limitations grounds, a ruling that is now moot based on issuance of Plaintiffs' patents and undisputed deployment by Live Nation defendants including by and through its new merger partner, Ticketmaster, Inc., of Plaintiff's mobile ticketing and entry control access patent (**Exhibit 1**).

(38)    Thereafter, in August, 2009, Arbitrator Charlotte Moses Fischman, Esq. found in Plaintiff's favor on all counts and denied each and every one of defendant CLL's counterclaims and defenses (**Exhibit 16**). This order is now res judicata concerning other claims against defendant CLL and its Live Nation defendant principals by law.

(39)    A motion to confirm the arbitration award is currently sub judice before this Court) (**Exhibit 17**).

(40)    On October 13, 2009, Plaintiff's 321 patent was issued and in January, the 547 patent received notice of issuance and all fees were paid to the USPTO (**Exhibit 18**).

(41)    In the interim, based in part on contended antitrust violations, defendant Clear Channel sold its 250 US radio stations to Thomas H. Lee and Bain partners for $22.7 bil after successfully marketing and passing off Plaintiff's inventions as its own which lured veteran artists such as Madonna, Bono, Jay-Z and Shakira to sign with Live Nation in all fields and in essence become a record label to steal Plaintiff's business;

15

EXHIBIT 42
Page 555 of 808

Case 1:06-cv-01289-LES-HBP   Document 438   Filed 09/09/20   Page 1 of 224
Case 1:06-cv-01289-LES-HBP   Document 434   Filed 08/28/20   Page 1 of 303 Page D #: 851

**A-685**

(42)   Live Nation defendants have since noticed merger with Ticketmaster, Inc. and have continued to jointly use Plaintiff's mobile ticketing interfaces without authorization that were since issued a patent (**Exhibit 19**);

(43)   An injunction, infringement damages, double damages for unfair competition and treble damages for antitrust violation against Live Nation defendants are now sought based on direct infringement and/or infringement by the doctrine of equivalents;

(44)   Live Nation defendants took the risk that their unauthorized deployment and continued use of Plaintiff's trade secrets and two separate inventions after notice would not result in patent issuances to Plaintiff.  They were wrong and must now pay.

(45)   There can be no prejudice to defendants if Plaintiff is permitted to amend her complaint and join LIVE-FI™ as a party plaintiff since Live Nation defendants and their attorneys defrauded the Court twice, under precedents should be sanctioned for misconduct that prejudiced Plaintiff's lawsuit, and discovery has not even begun.

**WHEREFORE**, Plaintiff prays judgment against defendants as follows:

1.   For an order vacating the Court's previous order of April 24, 2009 as moot;

2.   For an order joining LIVE-FI Technologies, LLC as a proper party plaintiff;

3.   For an order severing the claims against CLL defendants from those against the Live Nation defendants;

4.   For an order extended Plaintiffs' time to retain new counsel;

5.   For an order of res judicata of the arbitration decision and order in Plaintiff's favor and denying CLL's counterclaims and defenses on all counts

16

EXHIBIT 42
Page 556 of 808

# A-686

6. For an order of res judicata of the arbitration decision and order against CLL's principals, Live Nation defendants;

7. For damages against defendant CLL, for violation of the Uniform Trade Secrets Act, 18 USCA Section 1030, misappropriation of Plaintiff's trade secrets,, malpractice, breach of fiduciary duty, failing to reveal a material conflict of interest, tortious interference with contract, violation of 22 NYCRR 603, et seq. and the Rules of Professional Responsibility for withdrawing as Plaintiff's attorney deliberately without notice;

8. Against Live Nation defendants for an injunction aborting all use of Plaintiff's technology including though its new merged partner, Ticket Master Inc.

9. Against Live Nation for damages for infringement of Plaintiff's patents directly and through the doctrine of equivalents, double damages for unfair competition, treble damages for breach of the Sherman Act, damages for misappropriation and fraud before this Court;

10. For an order against Baker Botts attorneys for fraud before this Court;

11. For sanctions against Live Nation defendants and their Baker Botts attorneys for fraud before this Court;

12. For an award of attorneys' fees and costs in Plaintiffs' favor

13. For such other and further relief as the Court deems just and proper.

Dated:  April 21, 2010
Montclair, NJ

Respectfully submitted,

AMY R. GURVEY
Plaintiff Pro se

EXHIBIT 42
Page 557 of 808

## CERTIFICAT E OF SERVICE

     Amy R. Gurvey, the Plaintiff pro se, certifies that on April 21, 2010 she served a true and accurate copy of Plaintiff's instant Motion to Vacate Order and Serve a Fourth Amended Complaint in this lawsuit on attorneys for defendants, Baker Botts, LLP and Hinshaw & Culbertson, LLP, by depositing a true and accurate copy of same in post office boxes duly maintained by the US Postal Service.

 

                       _____
                       AMY R. GURVEY

EXHIBIT 42
Page 558 of 808

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————X

AMY R. GURVEY,                                          CIVIL ACTION NO.:
                                                        06-CV-1202 (BSJ)
                        Plaintiff,

        -against-

WILLIAM BORCHARD, MIDGE HYMAN,
BAILA CELEDONIA, CHRISTOPHER
JENSEN, COWAN, LIEBOWITZ & LATMAN,
PC, CLEAR CHANNEL COMMUNICATIONS,
INC., INSTANT LIVE CONCERTS, LLC,
LIVE NATION, INC., NEXT TICKETING, LLC,
DALE  HEAD, STEVE SIMON, MICHAEL
GORDON  and SUSAN SCHICK,

                        Defendants.
———————————————————————X


### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE OPINION AND ORDER ENTERED APRIL 24, 2009, TO FILE AN AMENDED PLEADING AND AMEND SUB JUDICE MOTION FOR REARGUMENT

### INTRODUCTION

This motion is based on Plaintiff's issued US Patent No. 7,603,321 issued October 13, 2009, assigned to her early-stage limited liability company, LIVE-FI™ Technologies of Delaware, arbitrator Charlotte Moses, Esq's decision and order awarding Plaintiff contractual damages against defendant law firm herein, Cowan Liebowitz & Latman, PC (hereinafter "CLL") and denying all CLL's defenses and counterclaims.

Plaintiff now submits her annexed motion and instant Memorandum of Law to:

(i)     vacate the Court's Opinion and Order entered April 24, 2009 ("Order") as

        dismissed Plaintiff's misappropriation, unfair competition, legal malpractice,

EXHIBIT 42
Page 559 of 808

and fiduciary breach claims against CLL and its clients defendants Clear
Channel, LiveNation, InstantLive Concerts and Next Ticketing;

(ii)     file an amended pleading to include claims for patent infringement under USC
Title 35, treble damages and injunctive relief pursuant to antitrust statutes,
Section 7 of the Clayton Act, 15 USC Section 18, and Section 2(b) of the
Antitrust Procedures and Penalties Act ("APPA" or "Tunney Act"), 15 USC
Sections 16 (b)-(h);

(iii)    add limited liability company LIVE-FI™ Technologies as the real party
plaintiff in interest to prosecute the infringement and antitrust claims;

(iv)     amend Plaintiff's motion for reargument now *sub judice* before the Court; and

(v)      for such other and further relief as the Court deems just and proper.


## INTRODUCTION

Plaintiff's instant motion pursuant to Rule 60(b) (2) and (3) and this Memorandum are
based on Plaintiff's issued patent of October 13, 2009 (USPTO Patent No. 7, 603, 321), the
January 25, 2010 decision of Hon. Rosemary M. Collyer rendered in *United States of America, et
al., v. Ticketmaster Entertainment, Inc. and Live Nation, Inc.*, [defendant Live Nation, Inc. herein
(hereinafter "LN")] Case: 1:10-cv-00139 (USDC Dist. of Columbia) (**Exhibit 1** annexed hereto)
documents submitted in the Ticketmaster-LiveNation antitrust litigation  that are public record,
the 2009 arbitration award rendered 100% in Plaintiff's favor by Charlotte Moses, Esq. in this
lawsuit that settled only certain contract claims and denied all defenses and counterclaims of
defendant CLL, and authority in the field of attorney misconduct and malpractice related to
patent services. *Landmark v. Morgan, Lewis & Bockius*, 2009 WL 160214 (ND CA); *Vaxiion v.*

EXHIBIT 42
Page 560 of 808

_Foley & Lardner_, 593 F. Supp. 2d 1153; 2008 WL 5147201 (SD CA); _Attorney Liability_

_Protection v. Swanson Law Office_, 2004 WL 3695281.  Plaintiff's right to damages including

possible punitive damages for CLL's malpractice, breach of fiduciary duty, contract,

representing conflicting client interests without disclosure and fraud.  Defending Legal

Malpractice Claim Arising from Representation of Small Business.  62 Am. Jur. Trials 395

(August 2009).

   Judge Collyer's January 25, 2010 order in the Ticketmaster-LiveNation antitrust

litigation (**Exhibit 1**) and other documents filed in that lawsuit demonstrate previous

documentary fraud upon this Court in papers submitted by defendants CLL and its clients Clear

Channel, Live Nation, Instant Live Concerts, Next Ticketing, and their Baker Botts attorneys in

support of defendants' 2006-7 motions to dismiss Plaintiff's action, warranting vacatur of this

Court's April 24, 2009 Opinion and Order.

## NEW EVIDENCE WARRANTING RULE 60(b)(2) RELIEF

   On October 13, 2009, Plaintiff was issued her first US Patent No. 7,603,321 (**Exhibit 2**)
(hereinafter the "321 Patent") that when filed claimed the benefit of an early priority filing date
of May 22, 2004 based on two provisional patent applications filed by Plaintiff's attorneys,
Cowan, Liebowitz & Latman, LLP ("CLL" herein).  The provisional patent applications are No.
60/382,710 filed by CLL attorney Mark Montague, Esq. and 60/382,949 filed by CLL attorney
R. Lewis Gable on may 22 and May 24, 2002 respectively.

   Plaintiff's issue  321 patent has since been assigned to Plaintiff's early-stage company,
LIVE-FI™ Technologies, LLC, a Delaware limited liability corporation, now sought to be added
as a Plaintiff as the real party in interest to prosecute patent infringement and antitrust claims in
this lawsuit.

   The 321 patent claims thusfar issued by the USPTO fulfill user content requests on
electronic terminals during and after a live event and deploy authentication methods including
certain uniquely identifying user data to assist with the distribution and transmission of event
content and event associated merchandise.  User identifying data might include a cell phone
number, e-mail, credit card, account, bar code, etc., and any data that could be exchanged during
event ticketing.

EXHIBIT 42
Page 561 of 808

Plaintiff's 321 patent was based on two (2) unpublished provisional patent applications ("PPA") filed before the USPTO on May 22 and May 24, 2002 respectively by Plaintiff's then lawyers, defendant NYC law firm herein Cowan, Liebowitz and Latman, PC ("CLL").  This means that in theory, Plaintiff's inventions including continuation in part applications and divisional are entitled to get the benefit of an early May, 2002 filing date as they pertain or are an outgrowth of the same original inventions.

Defendants William Borchard, Christopher Jensen, Midge Hyman and Baila Celedonia are partners of defendant CLL and defendant Susan Schick is a former senior associate of the firm.  Upon information and belief, defendant Schick has left the firm and both she and defendant Michael Gordon, who were engaged when the PPAs were filed, now live in Burlington, VT.  Defendant Gordon is a member of the rock band, Phish.

The following facts are undisputed in this lawsuit.

On May 22, 2002 and May 24, 2002, defendant CLL filed two provisional patent applications ("PPA") identifying Plaintiff's inventions and disclosures in capsule form.  These filings were assigned PPA Nos. 60/382,710 and 60/382,949.  They disclose systems packaging and distribution/purchase of event recordings during a time line starting with purchase of event tickets until a time after the event concludes by ticket holders, viewers over all broadcast screens and other global fans.

Without ever notifying Plaintiff, in or about March, 2003, defendant CLL by its attorney-employee Mark Montague, Esq. served upon the USPTO a notice of withdrawal from Plaintiff's legal representation. Defendant CLL and its defendant partners, however, never served Plaintiff with the firm's withdrawal notice. In fact, there is no CLL certification, declaration or affirmation of service in the USPTO files. Ergo, there was a period of time when Plaintiff was not represented before the USPTO by an attorney, prejudicing her inventions and property interests.

More than two years later, in or about June, 2005, the USPTO notified Plaintiff that it had located defendant CLL's withdrawal notice and sent her a copy of it.   When Plaintiff received the USPTO copy, this is the first time Plaintiff discovered that the reason for defendant CLL's withdrawal was its admitted "conflict of interest", that defendant CLL and its defendant partners herein, never previously disclosed to Plaintiff.  Ergo, Plaintiff's claims for breach of fiduciary duty, malpractice and to disclose a material conflict of interest have a tolled statute of limitations.

In addition, CLL's withdrawal notice is stated as related to only one of the PPAs defendant CLL filed as Plaintiff's attorney.   There was no withdrawal notice filed as to Plaintiff's second PPA.

In May, 2003, Plaintiff saw an article in the New York Times Business Section introducing defendant Clear Channel's newest venture, defendant InstantLive Concerts herein and noticing that InstantLive was distributing concert CDs at its Boston clubs and allowing the CDs to be pre-purchased with tickets.

EXHIBIT 42
Page 562 of 808

Defendant Clear Channel Entertainment was a client of defendant CLL when it filed Plaintiff's provisional applications a year earlier in 2002. The InstantLive website was posted in March, 2003, also citing form Plaintiff's unpublished PPA filed by defendant CLL.

In 2005, Clear Channel Entertainment, a subsidiary of defendant Clear Channel communications, Inc. was spun off to become defendant LiveNation herein, the world's larger promoters. Shortly thereafter, defendant Live Nation acquired defendant InstantLive. Both defendants LN and InstantLive are located in the same building at 9348 Civic Center Drive, Beverly Hills, CA.

On February 6, 2006, Plaintiff filed this lawsuit well within all statutes of limitations. However, the breach of fiduciary duty, conflict of interest and malpractice claims against defendant CLL did not accrue until 2005.

In Februayr, 2006, defendants Clear Channel owned some 24 radio stations in NYS including WLTW Lite-FM 106.7, that had its studios in the same building with defendant CLL, 1133 Avenue of the Americas, New York, NY 10036. In addition, defendant Clear Channel owned 15+ concert venues in NYS including Jones Beach Theatre and the Blue Note. In 2008, defendant Clear Channel Communications sold its radio stations to Thomas H. Lee and Bain partners and assigned all US concert venues ownership rights to defendant LiveNation. Defendant LiveNation now now also owns House of Blues and other New York State venues, as found by the USDC Dist. of Columbia.

The Federal Courts have exclusive jurisdiction over all matters involving issued patents including attorney malpractice and breach of fiduciary duty with respect to their services that result in issued patents. *Vaxiion v. Foley & Lardner*, 2008 WL 5147201; *Landmark v. Morgan Lewis & Bockius*, 2009 WL 160214 (ND California 2009); *Attorney Liability Protection v. Swanson Law Offices*, 2004 WL 3695281.

Plaintiff is entitled to a priority date of May, 2002 for her inventions based on the PPAs filed by defendant Cowan. Loss of a priority date due to defendant CLL's malpractice, breach of fiduciary duty and failure to notify Plaintiff of its 2003 withdrawal.

## LITIGATION HISTORY

Currently sub judice before this Honorable tribunal is Plaintiff's motion to grant reargument of the portions of the Court's Order of April 24, 2009 that granted defendants' motion to dismiss the misappropriation, unfair competition, legal malpractice and fiduciary breach claims in this lawsuit. The grounds for reconsideration of dismissal of the misappropriation and unfair competition is that the Court erred in dismissing both claims on statute of limitations grounds because the Court overlooked the fact that (1) plaintiffs original complaint was filed in February 2006 well within the three year statute of limitations based on the accrual date of May 2003 used

EXHIBIT 42
Page 563 of 808

by the Court and (2) the Court overlooked the allegations (TAC **17** 62,65) that defendants'
first
*use* of the misappropriated trade secret was "Fall 2005" @) and thus overlooked the fact that
Fall 2005 was the proper accrual date of all of the foregoing claims.

The grounds for reconsideration of the Court's dismissal of plaintiffs claims for legal
malpractice, breach of fiduciary duty and unjust enrichment against the Cowan, Liebowitz &
Latman, P.C. defendants are that the Court overlooked the well pleaded allegations of (1)
malpractice acts and acts of fiduciary breach and (2) plaintiffs description of categorical
damages and causation.

## POINT I
## STANDARDS FOR RECONSIDERATION

Local Civil Rule 6.3, Motions for Reconsideration or Reargument, provides in relevant
part: "There shall he served with the notice of motion a memorandum setting forth concisely the
matters or controlling decisions which counsel believes the court has overlooked." To be
entitled to reargument, the movant must demonstrate that the Court overlooked controlling
decisions or factual matters on the underlying motion, which, had they been considered "might
reasonably have altered the result reached by the court." Consolidated Gold Fields v. Anglo Am.

**m,** 713 F. Supp. 1457, 1476 (S.D.N.Y. 1989); see also Dietrich v. Bauer, 76 F. Supp. 2d 312,
327 (S.D.N.Y. 1999); Ameritrust Co. Nat'l Ass'n v. Dew, 151 F.R.D. 237,238 (S.D.N.Y. 1993).
The standards for a motion for reargument are governed by Local Rule 6.3 and Fed. R. Civ. P.
. *See* Hertmer v. Henderson, 292 F.3d 302,303 (2d Cir. 2002).

Reargument may also be granted to "correct a clear error or prevent manifest injustice."
Doe v. New York City Dep't of Soc. Servs., 709 F.2d 782,789 (2d Cir. 1983) (quoting 18 C
Wright, A. Miller & E. Cooper, Federal Practice and Procedure *5* 4478 at 790 (1981).
Plaintiff easily meets these standards which warrant the relief sought herein.

## POINT II
## THE COURT OVERLOOKED WELL PLEADED ALLEGATIONS
## ESTABLISHING THE TIMELINESS OF PLAINTIFF'S
## MISAPPROPRIATION AND UNFAIR COMPETITION CLAIMS
## AND WRONGLY APPLIED APPLICABLE LAW

In its Order, the Court based its dismissal of plaintiffs misappropriation and trade secret
claims on statute of limitations grounds. Order at 4, 5. The Court held that the measure date for
determining whether the statute of limitations had expired was June 5,2006, the date of filing of
the Amended Complaint (Order at 5, 6) (rather than the date of filing of the original Complaint)
and that the claim accrual date was May 5, 2003 rather than Fall 2005 as argued by plaintiff. In
so holding, the Court failed to follow established procedural law that the date of commencement
of an action is the date of filing. *See* Fed. R. Civ. P. 3 "A civil action is commenced by filing a
complaint with the Court." As noted by the Court, in its Order &page 3, footnote 3) the
original complaint was filed on February 15,2006. However, the Court held, without
explanation or citation, in a footnote, that "Plaintiff has failed to establish that the earlier
Complaint should operate to bring these claims against the defendants within the applicable
period." Order at 5, footnote 6. The commencement of an action, of course, tolls the statute of
limitation. The Court ignored this principle and instead decided a factual issue: when defendants

EXHIBIT 42
Page 564 of 808

first had "notice" of the claims. *See* Order at 6.

The Court also misapprehended the complaint's allegations of the accrual of the causes of action for misappropriation and unfair competition. The TAC alleges and plaintiff argued that the accrual date was Fall 2005, the date of *use* of the misappropriated secrets. The TAC contains detailed factual allegations alleging that the CLL Partners' shared plaintiffs trade secrets with Clear Channel (TAC 77 34-41) who then used plaintiffs trade secrets no earlier than Fall, 2005 when they implemented plaintiffs proprietary electronic ticketing solutions related to plaintiff's proprietary methods on mobile devices. TAC 7162-65.

The accrual date for such a claim is determined "either when the defendant discloses the trade secret when he first makes *use* of the plaintiffs ideas." [Emphasis supplied]. Lemelson v. Carolina Enterprises, Inc., 541 F. Supp. 645 (S.D.N.Y. 1982), citing Petnel v. American Teleuhone & Telemauh Co., 280 App. Div. 706, 117 N.Y.S.2d 294 (3d Dep't 1952). See also Greenliht Capital, Inc. v. Greenlight, No. 04 Civ. 3136 2005 WL 13682, at *7 (January 3,2005 S.D.N.Y.)

Therefore, plaintiff has alleged that defendants misappropriated plaintiffs trade secrets and used same in Fall 2005, and thus, the claim accrued at that time

## POINT I11

## PLAINTIFF HAS ADEQUATELY ALLEGED CLAIMS OF
## BREACH OF FIDUCIARY DUTY AND LEGAL MALPRACTICE

The Court dismissed plaintiffs malpractice and fiduciary breach claims against the Cowan defendants on the grounds that the allegations were not specific enough either as to the acts or the harm caused thereby. *See* Order at 12 - 15. However, the Court failed to properly consider the TAC's allegations of defendants' acts.

To state a prima facie case for legal malpractice, plaintiff needs only plead that there was a duty, that the duty was breached and that she was harmed by defendants' breach of the duties owed to her, which plaintiff has done. Tinelli v. Redl, 199 F.3d 603 (2d Cir. 1999), citing Marshall v. Nacht, 172 A.D.2d 727,569 N.Y.S.2d 113, 114 (2d Dep't 1991); TAC 7 77,79,121.

Plaintiff has alleged that CLL owed her the duties of utmost loyalty and care (TAC 7 119), that CLL breached that duty by misappropriating her trade secrets to Clear Channel, by failing to properly advise her regarding the commercial exploitation of her trade secret and by having an improper conflict of interest which damaged plaintiff. (TAW 120). Plaintiffs allegations that CLL did not advise Gurvey with respect to opportunities for the commercial exploitation of her own inventions and instead allowed its other client, Clear Channel to exploit Gurvey's trade ideas are allegations speaking directly to Cowan's representation as her potential counsel and the conflict that Cowan admitted. TAC 77 52-59.

CLL admitted to the USPTO that CLL had an impermissible conflict of interest regarding representation of Gurvey, and thus withdrew its representation of Gurvey. TAC 7 32 (plaintiff received notification from the USPTO that "CLL had unilaterally withdrawn as plaintiffs attorney on PPA # 60,382,710 for an alleged 'conflict of interest'").

These same allegations were also overlooked by the Court in dismissing the fiduciary breach claims. Attorneys can breach their fiduciary obligations by appropriating a client's business opportunity for the benefit of another client. See, e.g, Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman &Dicker, 16 Misc.3d 1051,843 N.Y.S.2d 749 *(N.Y.* Sup. Ct. 2007) (court

EXHIBIT 42
Page 565 of 808

**A-695**

refused to dismiss breach of fiduciary duty claim holding that it was not duplicative of the legal malpractice claim because "[t]here is thus substantial persuasive authority upholding fiduciary duty claims based on an attorney's appropriation of a former client's business opportunity for the benefit of the attorney or another client, where there is a reasonable probability or significant risk that the client's confidential information will be used in acquiring the business.")

The Court's dismissal on grounds that damages were speculative is also unsupported under applicable authority. At the motion to dismiss stage (pre-discovery), plaintiff "need only plead allegations from which damages attributable to [defendant's] conduct might be inferred"'. InKine Pham. Co v. Coleman, 305 A.D.2d 15 1,152 (N. Y. App. Div. 1 st Dep't 2003), quoting Tenzer, Greenblatt, Fallon & Kaplan v. Ellenberg, 199 A.D.2d 45 (N.Y. App. Div. 1st Dep't 1993). Therefore, plaintiff has adequately alleged all the elements of a legal malpractice and fiduciary breach claims.

**CONCLUSION**

For all of the foregoing reasons, plaintiffs motion for reargument and reconsideration should be granted in its entirety and upon reconsideration defendants' motions for dismissal of plaintiffs claims of misappropriation, unfair competition, malpractice and breach of fiduciary duty should be denied.

Dated: May 8,2009
SQUITIERI & FEARON, LLP
By: s/Lee Squitieri
Lee Squitieri (LS-1684)
32 East 57& Street
12& Floor
New York, New York 10022
Tel: (212) 421-6492
Fax: (212) 421-6553

**CERTIFICATE OF SERVICE**

I certify that on May 8,2009, copies of the foregoing NOTICE OF MOTION FOR REARGUMENT AND RECONSIDERATION OF ORDER AND OPINION ENTERED APRIL
24.2009 and PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR REARGUMENT AND RECONSIDERATION OF ORDER AND OPINION ENTERED APRIL
24,2009 were sewed via ECF on the following:
Andrew B. Cripe, Esq.
HINSHAW & CULBERTSON, L.L.P.
222 N. LaSalle Street
Chicago, Illinois 60601
Richard Supple, Jr., Esq.
HINSHAW & CULBERTSON, L.L.P.
780 Third Avenue
New York. New York 100 17
Eric Roman, Esq.
Ian H. Hurnmel, Esq.
BAKER BOTTS LLP
30 Rockefeller Plaza

EXHIBIT 42
Page 566 of 808

44' Floor
New York, New York 101 12
Steven G. Schortgen, Esq.
Jonathan B. Rubenstein, Esq.
BAKER BOTTS LLP
2001 Ross Avenue
Suite 600
Dallas, TX 75244
s/Lee Squitieri
Lee Squitieri

EXHIBIT 42
Page 567 of 808

# APPENDIX
# TABLE OF CONTENTS

### (Volume I of III)

                                                                                                    **Page**

District Court Docket Entries.................................................................................................. A-1

Cover Letter by Jonathan B. Rubenstein for Defendants Clear Channel Communications, Inc. ("Clear" and Live Nation, Inc. ("Live")  delivering Motion to Dismiss for Lack of Personal Jurisdiction, lack of Subject Matter Jurisdiction and Failure to State a claim For Which Relief Can be Granted and supporting documents, dated June 28, 2006 ........................................... A-16

Memorandum of Law, by Defendants Clear and Live, in Support of Motion to Dismiss, dated June 28, 2006 ........................................................................................................................ A-17

Declaration of Hamlet T. Newsom, Jr., for Defendant Clear, in Support of Motion to Dismiss, filed June 26, 2006 ..................................................................................................................... A-35

Declaration of Richard A. Munisteri, for Defendant Live, in Support of Motion to Dismiss, filed June 26, 2006 ......................................................................................................................... A-38

Notice of Motion and Motion by Defendants Clear and Live to Dismiss for Lack of Personal Jurisdiction, All Defendants' Notice of Motion and Motion to Dismiss for Lack of Subject Matter Jurisdiction and All Defendants' Notice of Motion and Motion to Dismiss for Failure to State a Claim for Which Relief Can Be Granted, dated June 28, 2006 ................................... A-40

Attachment to Motion – Proposed Order, undated ............................................................... A-42

Letter from Plaintiff to Richard Supple. Esq., dated July 11, 2006......................................... A-43

Notice of Motion, by Defendant Cowan, Liebowitz & Latman, P.C. ("Cowan") to Compel Arbitration and Stay Proceedings Pending the Completion of Arbitration, dated July 14, 2006 ................................................................................................................... A-44

Declaration of Simon Gerson, for Defendant Cowan, in Support of Motion to Compel Arbitration and Say Proceedings in this Matter, dated July 14, 2006...................................... A-46

Attachment to Declaration of Gerson, Memorandum Agreement Between Cowan and Amy. R. Gurvey, undated........................... A-47

Memorandum of Law in Support of Defendant Cowan's Motion to Compel Arbitration and Stay Proceedings, dated July 14, 2006......................................................................... A-52

Letter from Plaintiff to the Honorable Barbara S. Jones, dated August 10, 2006 ................... A-58

EXHIBIT 42
Page 568 of 808

Letter from Plaintiff to the Honorable Barbara S. Jones, dated August 18, 2006 ................... A-61

Notice of Cross-Motion by Plaintiff for Rule 11 Sanctions and Leave to File and Serve a
Second Amended Complaint, dated October 9, 2006 ............................................................ A-64

Affidavit, by Plaintiff, in Support of Cross-Motion for Rule 11 Sanctions and Leave to
File and Serve a Second Amended Complaint, dated October 9, 2006 ................................. A-66

Exhibit 1 to Affidavit, Second Amended Complaint dated October 9, 2006 ........................ A-89

Exhibit 2 to Affidavit, excerpt from Motion of Defendants Clean and
Live Motion to Dismiss ....................................................................................................... A-121

Exhibit 3 to Affidavit, Defendant Clear Form 10-K Filed with United States Securities
and Exchange Commission ("SEC"), selected pages, for fiscal year ended
December 31,  2005; Defendant Clear Selected Press Releases; Defendant Clear
Corporate Description; Defendant Clear List of Venues; Defendant Live Nation web
page Contact Information; Defendant Clear web page "About" and Company History;
Defendant Clear Form 10-K Filed with SEC for fiscal year ended
December 31, 2002, selected pages ...................................................................................... A-125

Exhibit 4 to Affidavit, Provisional Patent Cover Sheet, dated May 24, 2002 ..................... A-197

Exhibit 5 to Affidavit, Defendant Clear's Motion to Dismiss Plaintiff's Amended Complaint
with Supporting Memorandum of Law in *Spanish Broadcasting System, Inc. vs. Clear
Channel Communications, Inc.* and *Hispanic Broadcasting Corporation*,
Case No. 02-21755-Civ-Seitz/Bandstra, United States District Court, Southern District
Of Florida, filed August 29, 2002 ........................................................................................ A-199

Exhibit 6 to Affidavit, clipping, *BusinessWeek* and Business Week online, July 12, 2004,
"Burning to Burn Instant CDs" ........................................................................................... A-243

Exhibit 7 to Affidavit, Affidavit of H. Scott Gurvey ......................................................... A-246

Exhibit 8 to Affidavit, clipping, *The New York Times*, "Concert CDs Sold on the Spot by
A Radio Giant", undated ...................................................................................................... A-249

Exhibit 9 to Affidavit, press release, "Clear Channel Entertainment Launches Instant Live
In Boston", dated May 5, 2003, various web site presentations, various dates ................. A-252

Exhibit 10 to Affidavit, newspaper clipping by Ray Waddell, "UMG Deal Should Boost
Concert CD Business", undated ............................................................................................ A263

Exhibit 11 to Affidavit, newspaper clipping, Upfront, Touring by Ray Waddell, "Clear
Channel Spinoff Outlines New Structure", undated ........................................................... A-265

EXHIBIT 42
Page 569 of 808

Case 1:06-cv-01202-LGS-HBP  Document 430  Filed 03/29/20  Page 58 of 124
Case 1:06-cv-01202-LGS-HBP  Document 431  Filed 03/23/20  Page 53 of 830  PageID #:968
iii

Exhibit 12 to Affidavit, clipping, *The Wall Street Journal Online*, "Bootlegs Go Corporate" by Ethan Smith, dated September 27, 2005 ...................................................................... A-267

Exhibit 13 to Affidavit, Amended Complaint filed June 5, 2006 ......................................... A-271

Letter from Plaintiff to the Honorable Barbara S. Jones, dated October 27, 2006 ................. A-288

Letter from Eric Roman for Defendants Clear and Live to the Honorable Barbara S. Jones, dated November 3, 2006 ................................................................................................. A-290

Letter from Schuyler B. Kraus for Defendant Cowan to the Honorable Barbara S. Jones, dated November 3, 2006 ................................................................................................. A-291

Opposition by Defendants Clear and Live to Plaintiff's Cross-Motion for Leave to File and Serve a Second Amended Complaint dated November 3, 2006 ......................................... A-292

## (Volume II of III)

Memorandum of Law in Further Support of Defendant Cowan's Motion to Compel Arbitration and in Opposition to Plaintiff's Cross Motion to File a Second Amended Complaint, dated November 3, 2006 ....................................................................................... A-300

Letter from Plaintiff to the Honorable Barbara S. Jones, dated November 13, 2006 ............. A-306

Letter from Plaintiff to the Honorable Barbara S. Jones, dated November 22, 2006 ............. A-308

Letter from Plaintiff to the Honorable Barbara S. Jones, dated November 30, 2006 ............. A-310

Letter from Plaintiff to the Honorable Barbara S. Jones, dated December 24, 2006 ............. A-312

Letter from Plaintiff to the Honorable Barbara S. Jones, dated January 10, 2007 ................. A-315

Letter from Plaintiff to the Honorable Barbara S. Jones, dated January 19, 2007 ................. A-317

Letter order, letter from Defendant Cowan to the Honorable Barbara S. Jones dated January 28, 2008 ................................................................................................... A-319

Order of the Honorable Barbara S. Jones dated February 11, 2008 ....................................... A-321

Notice of Motion and Motion by Defendants Live and Clear to Dismiss for Lack of Personal Jurisdiction, and Live, Clear, InstantLive Concerts, LLC's and Nextticketing, LLC's Notice of Motion and Motion to Dismiss for Failure to State a Claim for Which Relief Can Be Granted, dated April 25, 2008 ............................................................................... A-323

EXHIBIT 42
Page 570 of 808

Attachment to Motion, Proposed order, undated ................................................................. A-327

Declaration of Hamlet T. Newsom, Jr., in Support of Defendant Clear's
Motion to Dismiss, dated June 26, 2006, filed April 25, 2008 ................................................ A-329

Declaration of Richard A. Munisteri, for Defendants Live and Clear, in Support of Motion to
Dismiss, dated June 26, 2006, filed April 25, 2008 ................................................................ A-332

Notice of Motion, by Defendants Cowan, William Borchard, Midge Hyman, Baila Celedonia
and Christopher Jensen (collectively, the "CCL Defendants"), for an Order Dismissing
Allegations, filed April 25, 2008 ........................................................................................ A-334

Declaration of Schuyler B. Kraus, for Defendants CCL, in Support of Motion to Dismiss
Allegations, filed April 25, 2008 ........................................................................................ A-336

Exhibit A to Kraus Declaration –
Contract Between Cowan and Amy Gurvey, dated January 15, 2002 ................................ A-339

Exhibit B to Kraus Declaration –
Provisional Patent Application 60, 382, 710 ....................................................................... A-346

Exhibit C to Kraus Declaration –
Provisional Patent Application No. 60, 382, 949 ................................................................ A-355

Exhibit D to Kraus Declaration –
New York Times Article Entitled: "Concert CD's Sold on the Spot by a Radio Giant",
dated May 5, 2003 ............................................................................................................. A-361

Exhibit E to Kraus Declaration –
Complaint, dated February 12, 2006 .................................................................................. A-365

Exhibit F to Kraus Declaration –
Summons and Amended Complaint, dated June 5, 2006 ..................................................... A-376

Exhibit G to Kraus Declaration –
Third Amended Complaint, dated March 4, 2008 ................................................................ A-395

Exhibit H to Kraus Declaration –
Letter from Richard Supple to Lee Squitieri, dated March 18, 2008 ................................... A-435

Exhibit I to Kraus Declaration –
Letter from Lee Squitieri to Richard Supple, dated March 27, 2008 ................................... A-438

Memorandum of Law, by Defendants CLL, in Support of Motion to Dismiss Allegations,
filed April 25, 2008 ............................................................................................................. A-439

EXHIBIT 42
Page 571 of 808

Memorandum of Law, by Plaintiff, in Opposition to Defendants CLL's Motion to Dismiss Allegations, dated June 11, 2008 ............................................................................. A-471

Declaration of Maria J. Ciccia, for Plaintiffs, in Support of Opposition to Defendants Live and Clear's Motion to Dismiss, dated June 11, 2008 ........................................ A-504

    Exhibit A to Ciccia Declaration –
      Print out from New York State Department of State, Division of Corporations Entity Information ................................................................................................ A-506

    Exhibit B to Ciccia Declaration –
      Excerpts from the 2007 10-k filed by Defendant Clear with the SEC ............................ A-507

    Exhibit C to Ciccia Declaration –
      Print out from www.google.com/maps of Live Nation, Inc.'s New York Office ........... A-515

    Exhibit D to Ciccia Declaration –
      Print out from www.livenation.com of Live Nation, Inc.'s New York Venues .............. A-516

    Exhibit E to Ciccia Declaration –
      Excerpts from the 2007 Annual Report and 10-k filed by Defendant Live to the SEC .. A-520

    Exhibit F to Ciccia Declaration –
      Print out from www.clearchannelny.com ....................................................................... A-528

    Exhibit G to Ciccia Declaration –
      Copy of EEO Public File Report for Defendant Clear for the Period Between February 1, 2004 - January 31, 2005 ........................................................................ A-519

Memorandum of Law, by Plaintiffs, in Opposition to Defendants Live and Clear's Motion to Dismiss, dated June 11, 2008 ................................................................................. A-538

Reply Memorandum of Law, by Defendants CLL, in Further Support of Motion to Dismiss, dated June 30, 2008 ..................................................................................................... A-569

Reply Memorandum of Law, by Defendants Live and Clear, in Further Support of Motion to Dismiss, dated June 30, 2008 ...................................................................................... A-587

**(Volume III of III)**

Opinion and Order of the Honorable Barbara S. Jones, dated March 16, 2009 ................... A-613

Opinion and Order of the Honorable Barbara S. Jones, dated April 23, 2009 ..................... A-622

Judgment, dated April 27, 2009, with Attachments ............................................................. A-637

EXHIBIT 42
Page 572 of 808

Notice of Motion, by Plaintiff, for Re-argument and Reconsideration of 4/23/09 Opinion and Order, dated May 8, 2009 .......................................................................................... A-643

Memorandum of Law, by Plaintiff, in Support of Motion for Re-argument and Reconsideration, dated May 8, 2009 ......................................................................................................... A-645

Response by Defendants Live and Clear in Opposition to Motion for Re-argument and Reconsideration, dated May 22, 2009 ................................................................................. A-652

Notice of Appeal, by Plaintiff, dated May 22, 2009 ............................................................. A-663

Notice of Motion, by Plaintiff, to Withdraw as Counsel of Record, dated April 21, 2010 ... A-665

Declaration of Lee Squitieri, for Squitieri & Fearon, LLP, in Support of Motion to Withdraw as Counsel, dated April 21, 2010 ........................................................................................... A-667

Amended Notice of Motion, by Squitieri & Fearon, LLP, to Withdraw as Counsel of Record, dated April 21, 2010 ......................................................................................................... A-669

Plaintiff's Notice of Motion under Rule 60(b), To Vacate and Serve Fourth Amended Complaint, date stamped April 22, 2010 .............................................................................. A-671

Affidavit in Support, by Plaintiff, of Motion under Rule 60(b) To Vacate and Serve Fourth Amended Complaint, date stamped April 22, 2010 ................................................... A-672

Introduction, 2010 ............................................................................................................... A-665

Fourth Amended Complaint ................................................................................................... A-675

Memorandum of Law, by Plaintiff, in Support of Motion under Rule 60(b) To Vacate and Serve Fourth Amended Complaint, date stamped April 22, 2010 ....................................... A-688

Letter from Plaintiff to the Honorable Barbara S. Jones, dated May 4, 2010 ...................... A-697

Fourth Amended Complaint as proposed in Plaintiff's Rule 60(b) Motion to Vacate filed April 22, 2010 ........................................................................................................... A-704

Order of the Honorable Barbara S. Jones, dated September 20, 2010 ................................... A-743

Order of the Honorable Barbara S. Jones, dated September 21, 2010 ................................... A-747

Letter from Plaintiff to the Honorable Barbara S. Jones, dated September 22, 2010 ........... A-748

Notice of Appeal by Plaintiff, filed September 27, 2010 ...................................................... A-751

Order of the Honorable Barbara S. Jones, dated October 14, 2010 ...................................... A-752

EXHIBIT 42
Page 573 of 808

Case Case 4:05-cv-01279-RMC HBP Document 2439 Filed 03/09/21 Page 169 of 1024
Case 4:05-cv-00239-RMC Document 248 Filed 03/23/21 Page 3 of 905 Page
ID #:972

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *et al.*,

   *Plaintiffs*,

  v.

TICKETMASTER ENTERTAINMENT,
INC., *et al*and LIVE NATION
ENTERTAINMENT, INC.,

   *Defendants*.

Case: 1:10-cv-00139-RMC
Assigned to: Collyer, Rosemary M.
Assign. Date: 1/25/2010
Description: Antitrust

## [PROPOSED] AMENDED FINAL JUDGMENT

  WHEREAS, plaintiffs, United States of America, and the States of Arizona, Arkansas, California, Florida, Illinois, Iowa, Louisiana, Nebraska, Nevada, Ohio, Oregon, Rhode Island, Tennessee, Texas, and Wisconsin, and the Commonwealths of Massachusetts and Pennsylvania ("Plaintiff States") filed their Complaint on January 25, 2010, and whereas the States of New Jersey and Washington joined as Plaintiff States pursuant to an Amended Complaint filed January 28, 2010, the United States, Plaintiff States, and defendants, Ticketmaster Entertainment, Inc. and Live Nation, Inc., by their respective attorneys, have consented to the entry of thise Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

  AND WHEREAS, the United States and Defendants have consented to the entry of this Amended Final Judgment;

1

EXHIBIT 42
Page 574 of 808

Case 1:06-cv-02045-GK Document 24-10 Filed 07/09/20 Page 36 of 124
Case 3:05-cv-01045-GK Document 243 Filed 06/23/20 Page 36 of 350 Page
ID #:973

AND WHEREAS, defendants agree to be bound by the provisions of this Amended Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Amended Final Judgment is the prompt and certain divestiture of certain rights or assets by the defendants and the imposition of certain conduct restrictions on defendants, to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the divestitures required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. Definitions

As used in this Amended Final Judgment:

A.      "AEG" means Anschutz Entertainment Group, Inc., a company with its headquarters in Los Angeles, California, its successors and assigns, and its subsidiaries,

2

EXHIBIT 42
Page 575 of 808

divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

     B.    "Acquirer" or "Acquirers" means the entity or entities to whom defendants divest the Divestiture Assets.

     C.    "Client Ticketing Data" means financial data relating to a ticketing client's events including on-sale dates for a client's events, the number of tickets sold for the specific event, the proceeds from those sales for a specific event, ticket inventory that is made available on the Ticketmaster system, the number and location of tickets that are sold, the amount for which the tickets are sold, pricing, marketing and promotions run for the event, the sales as a result of the marketing or promotions, and the status of the ticket inventory. "Client ticketing data" does not include data that Defendants collect through other means (e.g., website tracking, user group surveys, public sources). Client Ticketing Data does not include data that is made public by a client or third party.

     D.    "Comcast-Spectacor" means Comcast-Spectacor, L.P., a company with its headquarters in Philadelphia, Pennsylvania, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

     E.    "Condition" means to explicitly or practically require buyers to take one product or set of services if they want to obtain a second product or set of services. In the absence of explicit conditioning, providing the buyer with an opportunity to buy the two products or sets of services separately is only conditioning if no reasonable buyer would be expected to accept the terms of the separate offers.

3

EXHIBIT 42
Page 576 of 808

F.      "Covered Employee" means any employee of Defendants whose principal job responsibility involves the operation or day-to-day management of Defendants' venues, concert promotions, or artist management services.

G.      "Defendants" means either defendant acting individually or both defendants acting collectively, as appropriate. Where the Amended Final Judgment imposes an obligation to engage in or refrain from engaging in certain conduct, that obligation shall apply as broadly as reasonable to each defendant individually, both defendants acting together, and the merged firm.

H.      "Divestiture Assets" means the Ticketmaster Host Platform (via the binding agreement to license and to provide private label ticketing services to the Ticketmaster Host Platform Acquirer as required in Section IV.A) and Paciolan.

I.      "Exempted Employee" means any employee of Defendants who is not a Covered Employee, including: (a) any senior corporate officer, director or manager with responsibilities that include oversight of Defendants provision of Primary Ticketing Services; and (b) any employee whose primary responsibilities solely include accounting, human resources, legal, information systems, and/or finance.

J.      "Live Entertainment Event" means a live music concert for which tickets are sold to the public.

K.      "Live Nation" means defendant Live Nation, Inc., a Delaware corporation with its headquarters in Beverly Hills, California, its successors and assigns, and its subsidiaries (whether partially or wholly owned), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

L.      "Merger" means the merger of Ticketmaster and Live Nation.

4

EXHIBIT 42
Page 577 of 808

M. "Paciolan" means Paciolan, Inc., a Delaware corporation which is engaged in the provision of ticketing services to venues or other organizations under the Paciolan or Ticketmaster Irvine names, and which includes:

1. All tangible assets that comprise the Paciolan line of business, including servers and other computer hardware; research and development activities; all fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible property and all assets used exclusively in connection with Paciolan; all licenses, permits and authorizations issued by any governmental organization relating to Paciolan; all contracts, teaming arrangements, agreements, leases (including the lease to the Paciolan headquarters in Irvine, California), commitments, certifications, and understandings, relating to Paciolan, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records and all other records relating to Paciolan;

2. All intangible assets used in the development, distribution, production, servicing and sale of Paciolan, including, but not limited to, all patents, contractual rights (including contractual rights to provide ticketing services and employment contracts), licenses and sublicenses, intellectual property, copyrights, trademarks, trade names, service marks, service names, technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, all

5

EXHIBIT 42
Page 578 of 808

research data concerning historic and current research and development

relating to Paciolan, quality assurance and control procedures, design tools

and simulation capability, all manuals and technical information

defendants provide to their own employees, customers, suppliers, agents

or licensees, and all research data concerning historic and current research

and development efforts relating to Paciolan, including, but not limited to,

designs of experiments, and the results of successful and unsuccessful

designs and experiments. Preexisting commitments to transfer contractual

rights from Paciolan to another entity that are specifically identified in the

Paciolan sales agreement are excluded from this definition.

N.    "Paciolan Acquirer" means the entity to whom defendants divest Paciolan.

O.    "Primary Ticketing Services" means a collection of services provided to venues

or other customers to enable the initial sale of tickets for live entertainment events directly to

customers and enable the validation of tickets at the venue to control access to the event.

P.    "Provide Live Entertainment Events" and "Provision of Live Entertainment

Events" mean to supply a Live Entertainment Event, Live Entertainment Events and/or services

reasonably necessary to plan, promote, market and settle a Live Entertainment Event, including

but not limited to concert promotion services provided by firms such as Live Nation and the

provision of artists managed by firms such as Front Line. The Promotion of Live Entertainment

Events specifically does not include the provision of primary ticketing services, venue

management services and/or tour design and construction services.

Q.    "Retaliate" means refusing to Provide Live Entertainment Events to a Venue

Owner, or Providing Live Entertainment Events to a Venue Owner on less favorable terms, for

6

EXHIBIT 42
Page 579 of 808

the purpose of punishing or disciplining a Venue Owner because the Venue Owner has contracted or is contemplating contracting with a company other than Defendants for Primary Ticketing Services. The term "Retaliate" does not mean pursuing a more advantageous deal with a competing Venue Owner.

R.     "Ticket Buyer Data" means non-public identifying information for ticket buyers for a specific event (including, if provided, the buyer's name, phone number, e-mail address, and mailing address) that Defendants collect in the course of providing a ticketing client's Primary Ticketing Services. Ticket Buyer Data does not include data that Defendants collect solely through other means (e.g., website tracking, user group surveys, public sources).

S.     "Ticketmaster" means defendant Ticketmaster Entertainment, Inc., a Delaware corporation with its headquarters in West Hollywood, California, its successors and assigns, and its subsidiaries (whether partially or wholly owned), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

T.     "Ticketmaster Host Platform" means the primary Ticketmaster software used by Ticketmaster to sell primary tickets in the United States. The Ticketmaster Host Platform includes the following software: Ticketmaster Classic Ticketing System (also called Ticketmaster Host); Ticketmaster.com full website package; Access Management; payment processing and settlements; and PCI point of sale system (for phone and outlets).

U.     "Ticketmaster Host Platform Acquirer" means AEG, the entity with whom defendants will enter into a binding agreement to license the Ticketmaster Host Platform.

V.     "Venue Owner" means a person or company that owns, operates, or manages one or more venues that host Live Entertainment Events.

7

EXHIBIT 42
Page 580 of 808

W.     "Management" means all directors and officers of Defendants, or any other employee with management or supervisory responsibilities for Defendants' business or operations related to negotiating the provision of Primary Ticketing Services or the Provision of Live Entertainment Events.

Z.     "Relevant Employees" means Defendants' employees with responsibility for negotiating the provision of Primary Ticketing Services or the Provision of Live Entertainment Events.

## III. Applicability

A.     This Amended Final Judgment applies to Ticketmaster and Live Nation, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Amended Final Judgment by personal service or otherwise.

B.     If, prior to complying with Sections IV and V of this Amended Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Amended Final Judgment. Defendants need not obtain such an agreement from the Acquirers of the assets divested pursuant to this Amended Final Judgment.

## IV. Divestiture

A.     Defendants are ordered and directed not to consummate the Merger until they have entered into a binding agreement to license the Ticketmaster Host Platform to the Ticketmaster Host Platform Acquirer and to provide private label ticketing services to the Ticketmaster Host Platform Acquirer in a manner consistent with this Amended Final Judgment and with the following terms and conditions:

8

EXHIBIT 42
Page 581 of 808

1.  The agreement shall include the option, exercisable at the discretion of the Ticketmaster Host Platform Acquirer, to acquire a non-exclusive, perpetual, fully-paid up license to the Ticketmaster Host Platform. The license shall include a copy of the source code of the Ticketmaster Host Platform and shall permit the Ticketmaster Host Platform Acquirer to modify the software in any manner without limitation and without any requirement to license back any improvements to Defendants. If the option is exercised, Defendants shall promptly begin the installation of a fully functional ticketing system and website in the facilities of the Ticketmaster Host Platform Acquirer and shall complete the installation within a reasonable time pursuant to a schedule subject to approval by the United States, after consultation with Plaintiff States. Defendants shall warrant that the system is current as of the time of installation and operational for use in providing Primary Ticketing Services. Defendants shall provide reasonable training and support to enable the Ticketmaster Host Platform Acquirer to operate the software and to understand the source code so that it can make independent changes to the code. The license shall permit the Ticketmaster Host Platform Acquirer to transfer the license following the complete installation of the Ticketmaster Host Platform. The scope of use of the license shall be at least the United States.

2.  The agreement shall include a private label ticketing agreement pursuant to which Ticketmaster shall provide private label ticketing services to the

9

EXHIBIT 42
Page 582 of 808

Case 2:23-cv-00528-SMB-ESM Document 42-30 Filed 07/08/20 Page 47 of 402
Case 2:23-cv-00528-SMB-ESM Document 245 Filed 08/23/20 Page 3 of 303 Page
ID #:981

Ticketmaster Host Platform Acquirer for a period of no more than five years from the date of execution of the license. The private label ticketing agreement shall be on such reasonable terms and conditions that will enable the Ticketmaster Host Platform Acquirer to compete effectively against Ticketmaster to secure contracts for the provision of Primary Ticketing Services. The private label ticketing agreement shall give the Ticketmaster Host Platform Acquirer all control over the ticketing fees charged individual consumers or clients of the Ticketmaster Host Platform Acquirer for tickets sold pursuant to the agreement and Defendants shall have no right or ability to set these ticketing fees. Ticketmaster shall, at the request of the Ticketmaster Host Platform Acquirer, post on the main Ticketmaster public website links to events sold under the private label ticketing agreement, subject to reasonable, non-discriminatory, and customary terms and conditions. Ticketmaster shall customize a separate website for the Ticketmaster Host Platform Acquirer with branding, look, and feel to be determined by the Ticketmaster Host Platform Acquirer. The private label ticketing services as described in this Section shall be operational within six months from the date that the binding agreement to license Ticketmaster Host Platform becomes effective.

B.      Defendants shall implement the Ticketmaster Host Platform binding agreement required by Section IV.A and any resulting Ticketmaster Host Platform license in a manner consistent with the terms of Section IV.A. Defendants shall comply with the terms of the Ticketmaster Host Platform binding agreement required by Section IV.A and any resulting

10

EXHIBIT 42
Page 583 of 808

Ticketmaster Host Platform license, provided that nothing in the Ticketmaster Host Platform

binding agreement or resulting Ticketmaster Host Platform license can relieve Defendants of any

obligations imposed by this Amended Final Judgment.

      C.     Defendants shall, as soon as possible, but within one business day after

completion of the relevant event, notify the United States and Plaintiff States of: (1) the effective

date of the Merger and (2) the effective date of the binding agreement to license to the

Ticketmaster Host Platform Acquirer.

      D.     If the Ticketmaster Host Platform Acquirer exercises its option to license the

Ticketmaster Host Platform, Defendants shall waive any non-compete agreements that would

prevent any employee of Defendants whose primary responsibility is the development or

operation of the Ticketmaster Host Platform from joining the Ticketmaster Host Platform

Acquirer.

      E.     Defendants are ordered and directed, concurrently with the closing of the Merger,

to enter into a Letter of Intent to divest Paciolan to Comcast-Spectacor in a manner consistent

with this Amended Final Judgment. Within sixty (60) calendar days of closing the Merger,

Defendants shall complete the divestiture of Paciolan in a manner consistent with this Amended

Final Judgment to Comcast-Spectacor or an alternative Acquirer acceptable to the United States,

in its sole discretion, after consultation with Plaintiff States. Defendants agree to use their best

efforts to divest the Divestiture Assets as expeditiously as possible.

      F.     Defendants shall provide the United States and the Paciolan Acquirer information

relating to the personnel involved in the production, operation, development and sale of Paciolan

at any time since Ticketmaster acquired Paciolan to enable the Paciolan Acquirer to make offers

of employment. Defendants will not interfere with any negotiations by the Paciolan Acquirer to

11

EXHIBIT 42
Page 584 of 808

employ any defendant employee whose primary responsibility is the production, operation, development, and sale of Paciolan, and shall waive any non-compete agreements that would prevent any such employee from joining the Paciolan Acquirer. Nothing in this Section shall prohibit defendants from making offers of continued employment to, continuing to employ, or continuing to use the services of any of their employees, including personnel involved in the production, operation, development and marketing of Paciolan and its ticketing system, subject to the overarching limitation that the agreement to sell Paciolan to the Paciolan Acquirer must ensure that the Paciolan Acquirer will be able to adequately staff Paciolan in a manner that enables the Paciolan Acquirer to successfully compete as a provider of Primary Ticketing Services, as determined by United States in its sole discretion. In addition, nothing in this Section shall prohibit defendants from maintaining any reasonable restrictions on the disclosure by an employee who accepts an offer of employment with the Paciolan Acquirer of the defendants' proprietary non-public information that is (1) not otherwise required to be disclosed by this Amended Final Judgment, (2) related solely to the defendants' businesses and clients, and (3) not related to the production, operation, development, and marketing of Paciolan and its ticketing system.

      G.      Defendants shall permit the Paciolan Acquirer to have reasonable access to personnel and to make inspections of the physical facilities of Paciolan; access to any and all environmental, zoning, and other permit documents and information; access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

      H.      Defendants shall warrant to the Paciolan Acquirer that each asset it acquires will be operational on the date of sale.

EXHIBIT 42
Page 585 of 808

I.  Defendants shall warrant to the Paciolan Acquirer that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of Paciolan, and that following the sale of Paciolan, defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of Paciolan.

J.  Defendants shall not take any action that will impede in any way the permitting, operation, use, or divestiture of the Divestiture Assets.

K.  Unless the United States otherwise consents in writing, after consultation with Plaintiff States, the divestitures pursuant to Section IV of this Amended Final Judgment shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, after consultation with Plaintiff States, that the Divestiture Assets can and will be used by the Acquirer(s) as part of a viable, ongoing business, engaged in providing Primary Ticketing Services. Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of the United States, after consultation with Plaintiff States, that the Divestiture Assets will remain viable and the divestiture of such assets will remedy the competitive harm alleged in the Complaint. The divestitures, whether pursuant to Section IV or Section V of this Amended Final Judgment,

1.  shall be made to an Acquirer(s) that, in the United States's sole judgment, after consultation with Plaintiff States, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the business of providing Primary Ticketing Services; and

13

EXHIBIT 42
Page 586 of 808

2.      shall be accomplished so as to satisfy the United States, in its sole

discretion, after consultation with Plaintiff States, that none of the terms of

any agreement between an Acquirer(s) and Defendants give Defendants

the ability unreasonably to raise the Acquirer's costs, to lower the

Acquirer's efficiency, or otherwise to interfere in the ability of the

Acquirer to compete effectively.

### V. Appointment of Trustee to Effect Divestiture

A.      If Defendants have not divested Paciolan as specified in Section IV.E, defendants

shall notify the United States of that fact in writing. Upon application of the United States, the

Court shall appoint a trustee selected by the United States and approved by the Court to divest

Paciolan in a manner consistent with this Amended Final Judgment. Defendants consent to

appointment of a trustee prior to entry of this Amended Final Judgment if Paciolan has not been

divested within the time periods provided in Section IV.E.

B.      After the appointment of a trustee becomes effective, only the trustee shall have

the right to sell Paciolan. The trustee shall have the power and authority to accomplish the

divestiture to an Acquirer acceptable to the United States, after consultation with Plaintiff States,

at such cash price and on such terms as are then obtainable upon reasonable effort by the trustee,

subject to the provisions of Sections IV, V, and VI of this Amended Final Judgment, and shall

have such other powers as this Court deems appropriate.

C.      Subject to Section V.E of this Amended Final Judgment, the trustee may hire at

the cost and expense of defendants any investment bankers, attorneys, or other agents, who shall

be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in

the divestiture.

14

EXHIBIT 42
Page 587 of 808

D.     Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

E.     The trustee shall serve at the cost and expense of defendants, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to defendants and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of Paciolan and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

F.     Defendants shall use their best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, including any information provided to the United States during its investigation of the merger related to the business to be divested, and defendants shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

15

EXHIBIT 42
Page 588 of 808

Case 1:06-cv-01999-CKK Document 490 Filed 09/08/20 Page 17 of 24
Case 1:06-cv-01998-CKK Document 491 Filed 09/28/20 Page 84 of 303 Page
ID #:987

G. After its appointment, the trustee shall file monthly reports with the United States, Plaintiff States, and the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Amended Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in Paciolan, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest Paciolan.

H. If the trustee has not accomplished the divestiture ordered under this Amended Final Judgment within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Amended Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

### VI. Notice of Proposed Divestiture

A. Within two (2) business days following execution of a definitive divestiture agreement, defendants shall notify the United States and Plaintiff States of any proposed

16

EXHIBIT 42
Page 589 of 808

divestiture required by Section IV of this <u>Amended</u> Final Judgment. Within two (2) business days following execution of a definitive divestiture agreement, the trustee shall notify the United States and Plaintiff States of any proposed divestiture required by Section V of this <u>Amended</u> Final Judgment. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in Paciolan, together with full details of the same.

B.     Within fifteen (15) calendar days of receipt by the United States and Plaintiff States of such notice, the United States may request from defendants, the proposed Acquirer(s), any other third party, or the trustee if applicable, additional information concerning the proposed divestiture, the proposed Acquirer(s), and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.     Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States and Plaintiff States has been provided the additional information requested from defendants, the proposed Acquirer(s), any third party, and the trustee, whichever is later, the United States shall provide written notice to defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States, after consultation with Plaintiff States, provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Section V.C of this <u>Amended</u> Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer(s) or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by

17

EXHIBIT 42
Page 590 of 808

defendants under Section V.D, a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Amended Final Judgment.

## VIII. Hold Separate

Until the divestiture required by this Amended Final Judgment has been accomplished, defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestiture ordered by this Court.

## IX. Anti-Retaliation Provision and Other Provisions Designed to Promote Competition

A.     Defendants shall not:

1.     Retaliate against a Venue Owner because it is known to Defendants that the Venue Owner is or is contemplating contracting with a company other than Defendants for Primary Ticketing Services;

2.     Condition or threaten to Condition the Provision of Live Entertainment Events to a Venue Owner based on that Venue Owner refraining from contracting with a company other than Defendants for Primary Ticketing Services; or. For the avoidance of doubt, this provision prohibits Defendants from threatening to withhold the Provision of Live Entertainment Events if a Venue decides to contract with a company other than Defendants for Primary Ticketing Services; or

18

EXHIBIT 42
Page 591 of 808

3. Condition or threaten to Condition the provision of Primary Ticketing Services to a Venue Owner based on that Venue Owner refraining from contracting with a company other than Defendants for the Provision of Live Entertainment Events.

For the avoidance of doubt, Section IX prohibits Defendants from Conditioning, Retaliating, or threatening to Condition with respect to the provision of one or more Live Entertainment Events. Live Nation waives any argument that this Amended Final Judgment only prohibits Retaliation or Conditioning with respect to all Live Nation content. Particular conduct may violate more than one provision of this Amended Final Judgment, e.g., Sections IX.A.1. and IX.A.2. of this Amended Final Judgment are not mutually exclusive.

Nothing in this Section prevents Defendants from bundling their services and products in any combination or from exercising their own business judgment in whether and how to pursue, develop, expand, or compete for any ticketing, venue, promotions, artist management, or any other business, so long as Defendants do so in a manner that is not inconsistent with the provisions of this Section.

Evidence that Defendants do or do not (a) bid for, contract with, win, or retain a venue, artist, or promoter as a client, and/or (b) promote a show or shows in particular buildings or group of buildings (even where similar shows historically have been promoted in those buildings) is not alone sufficient to establish, or create a presumption of, a violation of this Section. For the avoidance of doubt, Live Nation waives any argument that Plaintiffs must identify particular shows that have been withheld in order to prevail on a claim of Retaliation.

B. Defendants shall not disclose to any Covered Employee any Client Ticketing Data. Defendants however: (1) may disclose Client Ticketing Data concerning a specific event to

19

EXHIBIT 42
Page 592 of 808

any Covered Employee involved in the promotion of that event or the management of the artist who performed at that event, if it does so on the same terms it generally provides such information to other promoters or artist managers not affiliated with Defendants; (2) may disclose Client Ticketing Data to an Exempted Employee who requires the information in order to perform his or her job function(s); provided however, that such Exempted Employee may not use Client Ticketing Data to perform any job function(s) that primarily involve(s) the day-to-day operation or management of Defendants' venues, concert promotions, or artist management services; and (3) may disclose Client Ticketing Data to any Defendant employee where so required by law, government regulation, legal process, or court order, so long as such disclosure is limited to fulfillment of that purpose.

  C.  If any client of Defendants' primary ticketing services chooses not to renew a contract for Primary Ticketing Services with Defendants for some or all of its venues, upon the expiration of that contract and the written request of the client, Defendants shall within forty-five (45) days provide the client with a complete copy of all Client Ticketing Data and all Ticket Buyer Data historically maintained by Defendants for such venue(s) in the ordinary course of business, in a form that is reasonably usable by the client. Nothing in this provision shall be read to: (1) alter any rights Defendants would otherwise have to Client Ticketing Data or Ticket Buyer Data pursuant to the Primary Ticketing Services contract with the client, and/or its historical custom, practice, and course of dealing with the client; or (2) limit any rights the client would otherwise have to its Client Ticketing Data or Ticket Buyer Data pursuant to the Primary Ticketing Services contract with Defendants and/or its historical custom, practice, and course of dealing with Defendants. Defendants shall maintain Client Ticketing Data and Ticket Buyer Data

20

EXHIBIT 42

Page 593 of 808

on behalf of its clients for no less than three (3) years. This provision only applies to contracts for Primary Ticketing Services in effect prior to the entry of this <u>Amended </u>Final Judgment.

## X. Affidavits

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestitures have been completed under Section IV or Section V, defendants shall deliver to the United States and Plaintiff States an affidavit as to the fact and manner of its compliance with Section IV or Section V of this <u>Amended </u>Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States, after consultation with Plaintiff States, to information provided by defendants, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.      Every two (2) months prior to the private label ticketing agreement described in Section IV.A.2 becoming operational, and every six (6) months thereafter, defendants shall deliver to the United States and Plaintiff States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section IV.A and the terms of Ticketmaster Host Platform binding agreement.

21

EXHIBIT 42
Page 594 of 808

C.   Defendants shall, in addition, deliver to the United States and Plaintiff States an affidavit describing any revised or amended agreements with the Ticketmaster Host Platform Acquirer relating to the agreement required by Section IV.A. Such notice shall be delivered to the United States and Plaintiff States at least fifteen (15) calendar days prior to the effective date of the revised or amended agreement and Defendants shall not implement any amended agreement if the United States, after consultation with Plaintiff States, objects during the fifteen (15) day notice period.

D.   Within twenty (20) calendar days of the filing of the Complaint in this matter, defendants shall deliver to the United States and Plaintiff States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section VIII of this Amended Final Judgment. Defendants shall deliver to the United States and Plaintiff States an affidavit describing any changes to the efforts and actions outlined in defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change if implemented.

E.   Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## XI. Compliance Inspection

A.   For purposes of determining or securing compliance with this Amended Final Judgment, or of determining whether the Amended Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative

22

EXHIBIT 42
Page 595 of 808

of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

1.     access during defendants' office hours to inspect and copy, or at the option of the United States, to require defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of defendants, relating to any matters contained in this Amended Final Judgment; and

2.     to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

B.     Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports, under oath if requested, relating to any of the matters contained in this Amended Final Judgment as may be requested. Written reports authorized under this paragraph may, at the sole discretion of the United States, require Defendants to conduct, at Defendants' cost, an independent audit or analysis relating to any of the matters contained in this Amended Final Judgment.

C.     No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, or the Attorney General's Office of any other plaintiff, except in the course of legal proceedings to which the United States is a party (including grand

EXHIBIT 42
Page 596 of 808

jury proceedings), or for the purpose of securing compliance with this <u>Amended</u> Final Judgment, or as otherwise required by law.

      D.     If at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give defendants ten (10) calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XII. Notification

      Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), defendants, without providing advance notification to the United States and Plaintiff States, shall not directly or indirectly acquire any assets of or any interest, including any financial, security, loan, equity or management interest, in any person that, at any time during the twelve (12) months immediately preceding such acquisition, was engaged in the United States in providing Primary Ticketing Services during the term of this <u>Amended</u> Final Judgment.

      Such notification shall be provided to the United States and Plaintiff States in the same format as, and per the instructions relating to the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended. Notification shall be provided at least thirty (30) calendar days prior to acquiring any such interest, and shall include, beyond what may be required by the applicable instructions, the names of the principal

EXHIBIT 42
Page 597 of 808

representatives of the parties to the agreement who negotiated the agreement, and any

management or strategic plans discussing the proposed transaction. If within the 30-day period

after notification, representatives of the United States make a written request for additional

information, defendants shall not consummate the proposed transaction or agreement until

twenty (20) calendar days after submitting all such additional information. Early termination of

the waiting periods in this paragraph may be requested and, where appropriate, granted in the

same manner as is applicable under the requirements and provisions of the HSR Act and rules

promulgated thereunder. This Section shall be broadly construed and any ambiguity or

uncertainty regarding the filing of notice under this Section shall be resolved in favor of filing

notice.

    For purposes of this Amended Final Judgment, any notice or other communication

required to be provided to Plaintiffs shall be sent to the person at the address and emails set forth

below (or such other addresses as a Plaintiff may specify in writing to Defendants):

    United States
    Owen Kendler
    Chief
    Media, Entertainment, and Professional Services Section
    U.S. Department of Justice
    Antitrust Division
    450 Fifth Street, NW, Suite 4000
    Washington, D.C. 20530
    Owen.Kendler@usdoj.gov

    Arizona
    Unit Chief Counsel
    Arizona Attorney General's Office
    Antitrust Unit
    2005 N. Central Ave.
    Phoenix, AZ 85004
    Dana.Vogel@azag.gov

    Arkansas
    Public Protection Department

25

EXHIBIT 42
Page 598 of 808

Arkansas Office of the Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
johnathan.carter@arkansasag.gov

California
Antitrust Law Section
State of California Department of Justice
300 S. Spring Street, Suite 1720
Los Angeles, CA 90013
Paula.Gibson@doj.ca.gov

Florida
Antitrust Division
Office of the Attorney General of Florida
The Capitol PL-01
Tallahassee, FL 32399-1050
lee.istrail@myfloridalegal.com

Illinois
Antitrust Bureau
Office of the Illinois Attorney General
100 W Randolph St., Floor 13
Chicago, IL, 60601-3397
JChervin@atg.state.il.us

Iowa
Max M. Miller
Consumer Protection Division
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Max.Miller@ag.iowa.gov

Louisiana
Stacie Lambert deBlieux
Chief, Complex Litigation Section
Louisiana Department of Justice
1885 N. 3rd Street
Baton Rouge, LA 70802
deblieuxs@ag.state.la.us

Massachusetts
Chief, Antitrust Division
Massachusetts Office of the Attorney General
One Ashburton Place, 18th Floor

26

EXHIBIT 42
Page 599 of 808

Boston, MA 02108
michael.mackenzie@state.ma.us

Nebraska
Chief, Consumer Protection Division
Nebraska Attorney General's Office
2115 State Capitol Building
Lincoln, NE 68509
meghan.stoppel@nebraska.gov

Nevada
Bureau of Consumer Protection
Office of the Nevada Attorney General
8945 W. Russell Road, Suite 204
Las Vegas, Nevada 89148
LTucker@ag.nv.gov

New Jersey
Consumer Fraud Prosecution Section
Department of Law & Public Safety – Division of Law
State of New Jersey Office of the Attorney General
124 Halsey Street, P.O. Box 45029
Newark, New Jersey 07101
patricia.schiripo@law.njoag.gov

Ohio
Chief
Antitrust Section
Ohio Attorney General's Office
150 East Gay Street, 22nd Floor
Columbus, Ohio 43215
jennifer.pratt@ohioattorneygeneral.gov

Oregon
Civil Enforcement Division
Oregon Department of Justice
1162 Court St NE, Salem, OR 97301-4096
Tim.D.Nord@doj.state.or.us

Pennsylvania
Commonwealth of Pennsylvania
Office of Attorney General
Antitrust Section
Strawberry Square, 14th Floor
Harrisburg, PA 17120
jbetsko@attorneygeneral.gov

27

EXHIBIT 42
Page 600 of 808

Rhode Island
Chief, Civil Division
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
KHoffmann@riag.ri.gov

Tennessee
Deputy, Consumer Protection Division
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, TN  37202
David.McDowell@ag.tn.gov

Texas
Division Chief
Antitrust Division
Office of the Texas Attorney General
300 W. 15th Street
Austin, Texas 78701
David.Ashton@oag.texas.gov

Wisconsin
Unit Director
Division of Legal Services – Public Protection Unit
State of Wisconsin Department of Justice
17 West Main Street
PO Box 7857
Madison, WI 53707-7857
CooleyGJ@DOJ.STATE.WI.US

Washington
Paula Pera C.
Assistant Attorney General, Antitrust Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
paula.pera@atg.wa.gov

## XIII. No Reacquisition

A.      Defendants may not reacquire any part of the Divestiture Assets during the term

of this Amended Final Judgment.

28

EXHIBIT 42
Page 601 of 808

B.      Following the expiration of the private label ticketing agreement with the Ticketmaster Host Platform Acquirer required by Section IV.A.2: (1) Defendants shall not provide Primary Ticketing Services to any venues in North America for which, by virtue of an ownership interest, the Ticketmaster Host Platform Acquirer controls the rights to select the Primary Ticketing Services provider; and (2) for all other venues in North America, Defendants shall not provide Primary Ticketing Services on behalf of or pursuant to a ticketing contract with the Ticketmaster Host Platform Acquirer. Nothing in this Section shall prevent Defendants from: (1) competing to provide Primary Ticketing Services to venues (including such venues managed by the Ticketmaster Host Platform Acquirer) other than those for which, by virtue of an ownership interest, the Ticketmaster Host Platform Acquirer controls the rights to select the Primary Ticketing Services provider; and (2) providing Primary Ticketing Services to artist fan clubs in venues owned, operated, or managed by the Ticketmaster Host Platform Acquirer.

## XIV. Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Amended Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Amended Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XV. Expiration of Amended Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

Sections I, II, III, IX, XI, XII, XIII.A., XIV, XV, XVI, XVII, XVIII, and XIX of this Amended Final Judgment are extended and shall expire on December 31, 2025, unless the Court

29

EXHIBIT 42
Page 602 of 808

grants further extension. All other provisions in this Amended Final Judgment shall expire on July 30, 2020.

## XVI. Public Interest Determination

Entry of this Amended Final Judgment is in the public interest. The parties have~~previously~~ complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of thi~~s~~e Final Judgment~~,~~ entered by the Court on July 30, 2010 (the "2010 Final Judgment"), the Competitive Impact Statement, and any comments thereon and the United States' responses to comments. Based upon the record before the Court, ~~which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this~~entry of this Amended Final Judgment is in the public interest.

## XVII. Compliance Provisions

A.      Appointment of an Independent Monitoring Trustee

     1.      Upon application of the United States, after consultation with Plaintiff States, the Court will appoint an independent Monitoring Trustee selected by the United States, after consultation with Defendants, and approved by the Court.

     2.      The Monitoring Trustee will have the power and authority to monitor Defendants' compliance with the terms of this Amended Final Judgment and will have other powers as the Court deems appropriate. If the Monitoring Trustee determines that any violation of this Amended Final Judgment has occurred, the Monitoring Trustee shall promptly

30

EXHIBIT 42
Page 603 of 808

recommend an appropriate remedy to the United States, which, in its sole

discretion, after consultation with Plaintiff States, can accept, modify, or

reject a recommendation to pursue a remedy.

3.      Defendants may not object to actions taken by the Monitoring Trustee in

fulfillment of the Monitoring Trustee's responsibilities pursuant to this

Amended Final Judgment or any other Order of the Court on any ground

other than malfeasance by the Monitoring Trustee.  Objections by

Defendants to actions taken by the Monitoring Trustee must be conveyed

in writing to the United States and the Monitoring Trustee within ten

calendar days of the Monitoring Trustee's action that gives rise to

Defendants' objection.

4.      The Monitoring Trustee will serve at the cost and expense of Defendants

as detailed in a written agreement, on terms and conditions, including

terms and conditions governing confidentiality requirements and conflict-

of-interest certifications, that are approved by the United States after

consultation with Defendants.

5.      The Monitoring Trustee may hire, at the cost and expense of Defendants,

agents or consultants, including investment bankers, attorneys, and

accountants, reasonably necessary in the Monitoring Trustee's judgment

to assist with the Monitoring Trustee's duties. Agents or consultants will

be accountable solely to the Monitoring Trustee and will serve on terms

and conditions, including terms and conditions governing confidentiality

31

EXHIBIT 42
Page 604 of 808

requirements and conflict-of-interest certifications, that are approved by the United States after consultation with Defendants.

6.     The compensation of the Monitoring Trustee and agents or consultants retained by the Monitoring Trustee must be on reasonable and customary terms commensurate with the individuals' experience and responsibilities. If the Monitoring Trustee and Defendants are unable to reach agreement on the Monitoring Trustee's compensation or other terms and conditions of engagement within twenty-one calendar days of the appointment of the Monitoring Trustee, the United States, in its sole discretion, may take appropriate action, including by making a recommendation to the Court. Within three business days of hiring an agent or consultant, the Monitoring Trustee must provide written notice of the hiring and the rate of compensation to Defendants and the United States.

7.     The Monitoring Trustee must account for all costs and expenses incurred.

8.     Defendants must use their best efforts to assist the Monitoring Trustee to monitor Defendants' compliance with their obligations under this Amended Final Judgment. The Monitoring Trustee and agents or consultants retained by the Monitoring Trustee must, subject to protections for trade secrets, other confidential research, development, or commercial information, and any applicable privileges, have full and complete access to all personnel, books, records, and facilities relating to compliance with this Amended Final Judgment. Defendants may not take any action to

32

EXHIBIT 42
Page 605 of 808

interfere with or to impede the Monitoring Trustee's accomplishment of its responsibilities.

9.   The Monitoring Trustee must investigate and report on Defendants' compliance with this Amended Final Judgment. The Monitoring Trustee must provide periodic reports to Plaintiffs setting forth Defendants' efforts to comply with Defendants' obligations under this Amended Final Judgment. The United States, in its sole discretion, will set the frequency of the Monitoring Trustee reports.

10.   The Monitoring Trustee will serve until the expiration of this Amended Final Judgment.

11.   If the United States, after consultation with Plaintiff States, determines that the Monitoring Trustee is not acting diligently or in a reasonably cost-effective manner, the United States may recommend that the Court appoint a substitute.

B.   Antitrust Compliance Officer.

1.   Within twenty-one days of entry of this Amended Final Judgment, Defendants shall appoint an Antitrust Compliance Officer who is an internal employee or officer of one of Defendants, and identify to Plaintiffs the Antitrust Compliance Officer's name, business address, telephone number, and email address. Within forty-five days of a vacancy in the Antitrust Compliance Officer position, Defendants shall appoint a replacement, and shall identify to Plaintiffs the replacement Antitrust Compliance Officer's name, business address, telephone number, and

33

EXHIBIT 42
Page 606 of 808

email address. In all events, Defendants' appointment of any Antitrust Compliance Officer is subject to the approval of the United States, in its sole discretion.

2.     The Antitrust Compliance Officer shall have the following minimum qualifications:

a.     be an active member in good standing of the bar in any U.S. jurisdiction; and

b.     have at least five years' experience in legal practice, including experience with antitrust, regulatory or compliance matters.

3.     The Antitrust Compliance Officer shall, directly or through the employees or counsel working under the Antitrust Compliance Officer's authority and direction:

a.     Within twenty-one days after the Antitrust Compliance Officer's appointment, furnish to all of Defendants' Management and Relevant Employees a copy of this Amended Final Judgment;

b.     Within thirty days after the Antitrust Compliance Officer's appointment, in a manner to be devised by Defendants and approved by the United States, provide Defendants' Management and Relevant Employees reasonable notice of the meaning and requirements of this Amended Final Judgment;

c.     Twice during the first year, then annually thereafter, brief Defendants' Management and Relevant Employees on the meaning and

34

EXHIBIT 42
Page 607 of 808

requirements of this Amended Final Judgment, with written materials for each briefing to be approved by the United States in its sole discretion;

     d.     Brief any person who succeeds a person identified as Management or a Relevant Employee within sixty days of such succession;

     e.     Obtain from each person designated as Management or a Relevant Employee, within thirty days of that person's receipt of this Amended Final Judgment, a certification that the person (i) has read and understands and agrees to abide by the terms of this Amended Final Judgment; (ii) is not aware of any violation of this Amended Final Judgment that has not been reported to Defendants; and (iii) understands that failure to comply with this Amended Final Judgment may result in an enforcement action for civil or criminal contempt of court; and

     f.     Annually communicate to Defendants' Management and Relevant Employees that they may disclose to the Antitrust Compliance Officer or Monitoring Trustee, without reprisal or adverse consequence for such disclosure, information concerning any violation or potential violation of this Amended Final Judgment or the U.S. antitrust laws by Defendants.

    C.     Venue Disclosure. Defendants shall provide notice and a copy of this Amended Final Judgment, in a form and manner to be proposed by Defendants and approved by the United States in its sole discretion, to: (1) every Venue Owner for whom Ticketmaster provides Primary Ticketing Services, or with whom Ticketmaster is negotiating or discussing the provision of Primary Ticketing Services, within thirty days of entry of this Amended Final Judgment; and (2) every Venue Owner at the beginning of any negotiation with Ticketmaster and/or Live Nation

35

EXHIBIT 42
Page 608 of 808

related in whole or in part to Primary Ticketing Services. Defendants shall provide Plaintiffs with

its proposed notice, including the list of recipients, within ten days of the filing of this Amended

Final Judgment. The notice shall include an explanation of the requirements of Section IX of this

Amended Final Judgment, a statement encouraging Venue Owners to contact the Department of

Justice and any Plaintiff State if they are or become aware of any potential violations of this

Amended Final Judgment, and a statement waiving any contractual obligation the venue may have

to provide notice to Live Nation or Ticketmaster about any such contacts.

    D.       Reporting, Investigation, and Certification Requirements

        1.      Defendants shall:

                a.      Upon Management or the Antitrust Compliance Officer

learning of any violation or potential violation of any provision of this Amended

Final Judgment, (i) promptly notify the Monitoring Trustee and take

appropriate action to investigate, and in the event of a violation, terminate or

modify the activity so as to comply with this Amended Final Judgment, (ii)

maintain all documents related to any violation or potential violation of this

Amended Final Judgment for a period of five years or the duration of this

Amended Final Judgment, whichever is shorter, and (iii) maintain, and furnish

to Plaintiffs upon request, a log of (a) all such documents for which Defendants

claim protection under the attorney-client privilege or the attorney work product

doctrine, and (b) all potential and actual violations, even if no documentary

evidence regarding the violations exist;

                b.      Within seven days of Management or the Antitrust

Compliance Officer learning of any violation or potential violation of any

36

EXHIBIT 42
Page 609 of 808

provision of this Amended Final Judgment, notify Plaintiffs and the Monitoring Trustee of the violation or potential violation;

     c.    Within thirty days of Management or the Antitrust Compliance Officer learning of any violation or potential violation of any provision of this Amended Final Judgment, provide to Plaintiffs and the Monitoring Trustee a statement describing the violation or potential violation, which shall include a description of any communications constituting the violation or potential violation, including the date and place of the communication, the persons involved, and the subject matter of the communication;

     d.    Establish a whistleblower protection policy, which provides that any employee may disclose, without reprisal or adverse consequence for such disclosure, to the Antitrust Compliance Officer or the Monitoring Trustee information concerning any violation or potential violation by the Defendants of this Amended Final Judgment or the U.S. antitrust laws;

     e.    Have Live Nation's CEO certify in writing to Plaintiffs 180 days after entry of this Amended Final Judgment, and thereafter annually on the anniversary date of the entry of this Amended Final Judgment, that Defendants have complied with the provisions of this Amended Final Judgment; and

     f.    Maintain and produce to Plaintiffs upon request: (i) a list identifying all employees having received the compliance training required under Sections XVII.B.3.c and XVII.B.3.d of this Amended Final Judgment, and the dates on which the employees received the training; and (ii) copies of

37

EXHIBIT 42
Page 610 of 808

all materials distributed as part of the annual antitrust compliance training required under XVII.B.3.c and XVII.B.3.d of this Amended Final Judgment. For all materials requested to be produced pursuant to this paragraph for which Defendants claim protection under the attorney-client privilege or the attorney work product doctrine, Defendants shall furnish to Plaintiffs a privilege log.

### XVIII. Future Enforcement

A.     In any future civil contempt action, any motion to show cause, or any similar civil action brought by any Plaintiff regarding an alleged violation of this Amended Final Judgment, Plaintiff(s) may establish a violation of this Amended Final Judgment and the appropriateness of any remedy therefor by a preponderance of the evidence.

B.     This Amended Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore all competition Plaintiffs alleged was harmed by the challenged conduct in this Amended Complaint. Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Amended Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Amended Final Judgment should not be construed against either party as the drafter.

C.     Defendants will pay a penalty of $1,000,000 per violation of each enumerated paragraph of Section IX, as modified, payable to the United States of America. For the avoidance of doubt, a single violation for purposes of calculating this penalty refers to any and all conduct prohibited by this Amended Final Judgment that occurs in relation to a Venue Owner's ticketing contract cycle, except that a violation of Section IX.A.1. shall be deemed a separate violation than

38

EXHIBIT 42
Page 611 of 808

a violation of Section IX.A.2. and will be subject to a separate penalty. If, for example, there are multiple threats to Condition during the same contracting cycle, Live Nation would pay $1,000,000. If, for example, there are multiple threats to Condition and Live Nation Retaliates during the same contracting cycle, Live Nation would pay $2,000,000. For the avoidance of doubt, for these purposes, a new ticketing contract cycle begins when the previous contract is signed such that a ticketing contract cycle exists at all times for each Venue Owner.

      D.     For a period of four years following the expiration of this Amended Final Judgment, if any Plaintiff has evidence that a Defendant violated this Amended Final Judgment before expiration, any Plaintiff may file an action against that Defendant in this Court requesting that the Court order (1) Defendant to comply with the terms of this Amended Final Judgment for an additional term of at least four years following the filing of the enforcement action under this Section, (2) any appropriate contempt remedies, (3) an extension of this Amended Final Judgment, (4) any additional relief needed to ensure the Defendant complies with the terms of this Amended Final Judgment, and (5) fees or expenses.

      E.     For future disputes regarding Defendants' compliance with the terms of this Amended Final Judgment, the parties may agree that any such dispute may be referred to a third-party arbiter.

## XIX. Fees and Costs

      Defendants shall pay the United States its reasonable costs and attorney fees incurred in investigating Defendants' conduct and in connection with its investigation of violation of the 2010 Final Judgment, in an amount of $3 million, to be paid within 60 days of entry of this Amended Final Judgment.

Date: ~~30 July 2010~~ _____

39

EXHIBIT 42
Page 612 of 808

Court approval subject to procedures of the Antitrust Procedures
and Penalties Act, 15 U.S.C. § 16.


~~/s/  Rosemary M.~~

~~Collyer~~ _____

United States District Judge

40

EXHIBIT 42
Page 613 of 808

2010 WL 975407 (D.D.C.)                                                                      Page 1

For Opinion See 2010-2 Trade Cases P 77113

United States District Court, District of Columbia.
UNITED STATES OF AMERICA, et al., Plaintiffs,
v.
TICKETMASTER ENTERTAINMENT, INC. and Live Nation, Inc., Defendants.
No. 110-cv-00139.
January 25, 2010.

Assign. Date: 1/25/2010
Description: Antitrust

Competitive Impact Statement

Aaron D. Hoag, Attorney, U.S. Department of Justice, Antitrust Division, 450 Fifth Street, N.W., Suite 4000, Washington D.C 20530, Telephone: (202) 514-5038, Fax: (202) 514-7308, Email: aaron.hoag@usdoj.gov.

Assigned to: Collyer, Rosemary M.

Plaintiff United States of America ("United States"), pursuant to Section 2(b) of the Antitrust Procedures and Penalties Act ("APPA" or "Tunney Act"), 15 U.S.C. § 16(b)-(h), files this Competitive Impact Statement relating to the proposed Final Judgment submitted for entry in this civil antitrust proceeding.

## I. NATURE AND PURPOSE OF THE PROCEEDING

Defendant Ticketmaster Entertainment, Inc. ("Ticketmaster") and Defendant Live Nation, Inc. ("Live Nation") entered into an agreement, dated February 10, 2009, pursuant to which they would merge into a new entity to be known as Live Nation Entertainment. The United States, and the States of Arizona, Arkansas, California, Florida, Illinois, Iowa, Louisiana, Nebraska, Nevada, Ohio, Oregon, Rhode Island, Tennessee, Texas, and Wisconsin, and the Commonwealths of Massachusetts and Pennsylvania filed a civil antitrust Complaint on January 25, 2010, seeking to enjoin the proposed transaction because its likely effect would be to lessen competition substantially for primary ticketing services to major concert venues located in the United States in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. This loss of competition likely would result in higher prices for and less innovation in primary ticketing services.

At the same time the Complaint was filed, the United States also filed a Hold Separate Stipulation and Order ("Hold Separate") and proposed Final Judgment, which are designed to eliminate the anticompetitive effects of the acquisition. Under the proposed Final Judgment, which is explained more fully below, Defendants are required to grant a perpetual license to their Host platform and to divest their entire Paciolan business in order to establish two independent ticketing companies capable of competing effectively with the merged entity. The Final Judgment also prohibits Defendants from engaging in certain conduct that would prevent equally efficient firms from competing effectively. Under the terms of the Hold Separate, Ticketmaster will take certain steps to ensure that the Paciolan business is operated as a competitively independent, economically viable and ongoing business concern that will remain independent and uninfluenced by the consummation of the transaction and to ensure that competition is maintained during the pendency of the ordered divestiture.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 42
Page 614 of 808

The United States and Defendants have stipulated that the proposed Final Judgment may be entered after compliance with the APPA. Entry of the proposed Final Judgment would terminate this action, except that the Court would retain jurisdiction to construe, modify, or enforce the provisions of the proposed Final Judgment and to punish and remedy violations thereof.

## II. DESCRIPTION OF THE EVENTS GIVING RISE TO THE ALLEGED VIOLATION

### A. The Concert Industry

Staging concerts traditionally has required the participation of several parties. *Artists* provide the entertainment that makes the concert possible. *Managers* and/or *agents* represent artists in negotiations to establish the commercial terms on which artists will perform. Promoters contract with artists to perform at particular concerts, assume the financial risk of staging the concerts, make the arrangements for the concerts to occur at certain times and places, and market the concerts. *Venues* are the physical locations where concerts occur, and venues' owners, operators, or managers usually arrange for the sale of tickets to concerts at their venues. *Primary ticketing companies* provide services - such as websites, call centers, and retail networks from which tickets may be purchased - that facilitate the initial sale of tickets to concertgoers.[FN1]

> FN1. After their initial sale, concert tickets may be resold on the secondary ticketing market. *Ticket brokers purchase* tickets with the intention of reselling them to concertgoers. *Secondary ticketing companies* provide services that facilitate the resale of tickets to concertgoers by ticket brokers and others.

Contracts between venues and primary ticketing companies are individually negotiated. In a typical contract, a venue agrees to use one primary ticketing company as its exclusive service provider for several years. In exchange, the primary ticketing company often agrees to pay to the venue a portion of the fees that the primary ticketing company charges to concertgoers who purchase tickets to events at the venue. The primary ticketing company also may agree to pay an up-front bonus or advance upon execution of the contract. Primary ticketing contracts typically prohibit venues from reselling the primary ticketing services they receive.

### B. The Defendants and the Proposed Transaction

Ticketmaster is the largest primary ticketing company in the United States. In 2008, Ticketmaster earned gross revenues of about $800 million from its U.S. primary ticketing business. Ticketmaster offers two principal primary ticketing products to venues: (1) Host, a Ticketmaster-managed platform for selling tickets through Ticketmaster's website and other sales channels; and (2) Paciolan, a venue-managed platform for selling tickets through the venue's own website and other sales channels. In 2008, Ticketmaster provided primary ticketing services to venues representing more than 80% of major concert venues.[FN2] In addition to its primary ticketing operations, Ticketmaster expanded into the artist management business in 2008 by acquiring a controlling interest in Front Line Management Group Inc. ("Front Line"), an important artist management firm with clients such as the Eagles, Neil Diamond, Jimmy Buffett, Christina Aguilera and John Mayer.

> FN2. While the conclusions reached in the antitrust analysis described below are not sensitive to the precise number of venues included within this class, for purposes of this Competitive Impact Statement, "major concert venues" are the 500 U.S. venues generating the greatest concert revenues in 2008, as reported in Pollstar, a leading source of concert industry information. Concert ticket revenues from events at these venues represent more than 90% of the concert ticket revenues at all venues reported in Pollstar. Major concert venues are a diverse group, which includes large stadiums and arenas with relatively few concerts (*e.g.*, the Verizon Center in Washington, DC), mid-sized amphitheaters that host concerts regularly during certain seasons (*e.g.*, Nissan Pavilion in Bristow, VA), and smaller clubs and theaters with frequent concerts

throughout the year (*e.g.,* Warner Theatre in Washington, DC and Live Nation's House of Blues clubs). To account for this diversity, venues are weighted by their capacity in calculating shares of the market for primary ticketing services to major concert venues. Only public sources of information were used to calculate the market shares described in this Competitive Impact Statement

Live Nation is the largest concert promoter in the United States, earning more than $1.3 billion in revenue from its U.S. promotions business in 2008 and promoting shows representing 33% of the concert revenues at major concert venues in 2008. Live Nation has entered long-term partnerships with several popular artists - including Madonna and Jay-Z - to exclusively promote their concerts, sell recordings of their music, and market artist-branded merchandise such as T-shirts. Live Nation also owns or operates about 70 major concert venues throughout the United States. And as explained further below, Live Nation entered the market for primary ticketing services in late December 2008.

On February 10, 2009, less than two months after its entry into primary ticketing, Live Nation agreed to merge with Ticketmaster. That proposed transaction would substantially lessen competition and is the subject of the Complaint and proposed Final Judgment filed by the United States in this matter.

*C. The Market for Primary Ticketing Services to Major Concert Venues in the United States*

Antitrust law, including Section 7 of the Clayton Act, protects consumers from anticompetitive conduct, such as firms' acquisition of the ability to raise prices above levels that would prevail in a competitive market. Market definition assists antitrust analysis by focusing attention on the relevant portions of the economy where competitive effects are likely to be felt. Well-defined markets encompass the economic actors - including both sellers and buyers whose conduct most strongly influences the nature and magnitude of competitive effects. To ensure that antitrust analysis takes account of a broad enough set of products to evaluate whether a transaction is likely to lead to a substantial lessening of competition, defining relevant markets in horizontal merger cases frequently begins by identifying a collection of products or set of services over which a hypothetical monopolist profitably could impose a small but significant and non-transitory increase in price. Here, the United States's investigation revealed that major concert venues would have no alternatives to primary ticketing services if prices were to rise significantly above the levels that would have prevailed but for the proposed transaction, so the hypothetical-monopolist test would exclude all other products or services from the relevant market. But that is not the end of the market-definition exercise.

When sellers are unable to set different terms of sale for different buyers, all buyers will face similar competitive effects, and a relevant product market properly (if implicitly) encompasses not only all sellers of the relevant product, but all buyers as well. But when different buyers may experience different competitive effects, a well-defed product market encompassing fewer than all buyers can focus antitrust analysis appropriately on those buyers most vulnerable to suffering probable and significant competitive harm. It also avoids conflating in that analysis those buyers whose prices are likely to be significantly affected with others who are unlikely to be harmed substantially.

One situation in which different buyers experience different effects involves price discrimination, such as when sellers are able to charge different prices to different buyers for equivalent products. Sellers can price discrinate when they are able to identify and target vulnerable buyers for price increases and when buyers facing low prices cannot resell to those facing higher prices. Both conditions are present here. Venues and primary ticketing companies individually negotiate their contracts, and the terms of those contracts typically make it impossible for venues to resell (arbitrage) primary ticketing services.

Because primary ticketing companies can price discriminate among different venues, the proposed transaction could affect different classes of venues differently, and antitrust analysis requires attention to those venues with few alternative primary ticketing providers to Ticketmaster and Live Nation because, if the proposed transaction were consummated, their real-world choices would be reduced differently than would be other venues' options.

Major concert venues require more sophisticated primary ticketing services than other venues, so each tends to select a primary ticketing company with an established reputation for providing good service to similar venues. Ticketmaster has shown that its primary ticketing platform is able to withstand the heavy transaction volume associated with the first hours when tickets to popular concerts become available to concertgoers ("high-volume on-sales "), offer integrated marketing capabilities, and otherwise has proven, high-quality service to venues. When the proposed transaction was announced, Live Nation was building experience selling tickets to concerts at its own venues as a way to demonstrate to other venues that its primary ticketing platform also performed well. No primary ticketing company other than Ticketmaster and Live Nation has amassed or likely could have amassed in the near term sufficient scale to develop a reputation for successfully delivering similarly sophisticated primary ticketing services. Additionally, Live Nation planned to compete for primary ticketing contracts with major concert venues, but had less interest in serving non-concert venues outside its historically core concert expertise. Because they would have no equally attractive alternative primary ticketing provider to the merged firm, and because they would have benefited more from competition between Ticketmaster and Live Nation, major concert venues are more vulnerable than smaller venues to anticompetitive harms caused by the proposed transaction, and a well-defined relevant market should not encompass customers other than major concert venues. For example, a high school that hires a student to sell tickets to one of its musical productions could be said to be buying "primary ticketing services," but the relevant market can exclude such other venues because there is no significant risk that sales to them would affect Defendants' ability to exercise market power over major concert venues.

Antitrust analysis also must consider the geographic dimensions of competition. Section 7 protects against harm to competition "in any section of the country." 15 U.S.C. § 18. Here, domestic anticompetitive harms would be experienced by major concert venues located throughout the United States. Because the merged firm could price disiminate, any effects of the proposed transaction on foreign venues would be distinct from any effects on domestic venues. Thus, including only major concert venues located in the United States within the relevant market poses no risk of omitting buyers whose inclusion would significantly alter the antitrust analysis.[FN3]

> FN3. In this case, there are not significant transportation costs associated with the relevant services, so sellers' locations do little to inform the market-definition inquiry, though they are not irrelevant to antitrust analysis. To the contrary, only sellers capable of serving major concert venues located in the United States can compete with Defendants in the relevant market. Many of those sellers are located within the United States, but some are foreign firms, as suggested by Live Nation adaptation of a European primary ticketing platform for use in the United States, which is discussed below. Foreign sellers historically have not competed effectively in the United States because of the significant investments required to enter the domestic market. Still, Live Nation'S example suggests that, with a significant investment of time and money, foreign primary ticketing companies might be capable of adapting their products for U.S. customers.

In short, the sale of primary ticketing services to major concert venues in the United States is a well-defined relevant market for the purpose of analyzing the effects of the proposed transaction.

### D. The Competitive Effects of the Proposed Transaction

Until 2009, Ticketmaster dominated the market for primary ticketing services to major concert venues in the United States with greater than 80% market share. The only other primary ticketing companies with greater than a 1% share in 2008 were Tickets.com (4%), Front Gate Tickets (3%), New Era Tickets (2%), Live Nation (2%),[FN4] and Tessitura (1%). Ticketmaster's largest customer for primary ticketing services was Live Nation, the owner or operator of venues representing about 15% of capacity at all major concert venues in the United States in 2008. Ticketmaster renews its primary ticketing contracts at a very high rate. Even though Ticketmaster's distribution costs have declined dramatically as concertgoers have shifted their purchases toward the internet and away from traditional sales channels, the ticketing fees retained by Ticketmaster have not fallen, and Ticketmaster has continued to enjoy large profit margins on its primary ticketing business for many years.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 42
Page 617 of 808

Case 1:06-cv-01204-EGS-HBP Document 430 Filed 08/09/20 Page 106 of 124
Case 1:06-cv-01204-EGS-HBP Document 431 Filed 08/29/20 Page 106 of 186 Page ID #:1016

2010 WL 975407 (D.D.C.)                                                      Page 5

These margins have persisted because they are protected by high barriers to other companies successfully, substantially, and profitably entering or attempting to expand in the market for primary ticketing services to major concert venues. First, the platforms required to provide primary ticketing services to major concert venues are technologically complicated and expensive to develop and deploy. Second, major concert venues are reluctant to enter long-term exclusive contracts with new primary ticketing companies because they lack Ticketmaster's established reputation for capably handling high-volume on-sales and providing high-quality service to venues. Third, the costs of installing and training employees to use new equipment make it expensive for venues to switch between primary ticketing companies. Fourth, because there are high fixed costs to develop and maintain a primary ticketing platform, entrants struggle to obtain sufficient scale to compete successfully with Ticketmaster on price. Fifth, Ticketmaster's scale provides another important incumbent advantage over other firms- extensive data about individual concertgoers collected over many years. Ticketmaster can use that data as a powerful marketing tool to secure venue contracts for primary ticketing services. Sixth, Ticketmaster's practice of signing long-term exclusive contracts with venues limits how quickly other firms can amass sufficient scale to compete effectively with Ticketmaster on any of these dimensions.

> FN4. Before 2009, by virtue as its position as a promoter, Live Nation received roughly 10% of the tickets to concerts it promoted, and it sold those tickets to concertgoers through its MusicToday subsidiary and a platform licensed from eTix. Live Nation also used the MusicToday platform to provide primary ticketing services to a few small venues.

By 2008, Ticketmaster's longstanding dominance faced a major threat. Live Nation was better positioned to overcome the entry barriers discussed above than any other existing or potential competitor because it could achieve sufficient scale to compete effectively with Ticketmaster simply by ticketing its own venues. Live Nation also possessed a unique competitive advantage in that it could bundle access to important concerts with its ticketing service. Recognizing Live Nation's potential to disrupt its dominant position in the market for primary ticketing services, Ticketmaster attempted to renew Live Nation's primary ticketing contract before its December 31, 2008 expiration. But Live Nation instead chose to license technology from CTS Eventim AG ("CTS") that would enable it to sell concert tickets to its own venues beginning in 2009 and to compete with Ticketmaster for other venues' primary ticketing contracts in the future.

This competition began even before Live Nation's contract with Ticketmaster expired. On September 11, 2008, Live Nation announced that SMG - the largest venue management company in the United States, with the ability to control or influence the selection of primary ticketing companies at more than 40 major concert venues - had agreed to use Live Nation's primary ticketing services, if Live Nation could provide a primary ticketing platform comparable to other leading primary ticketing companies. SMG was Ticketmaster's third largest customer (behind only Live Nation and Anschutz Entertainment Group, Inc.), but it switched to Live Nation because SMG expected that, if it used Live Nation's primary ticketing services, Live Nation would use its strength in promotions to bring more concerts to SMG-managed venues. On October 14, 2008, Live Nation announced that it would provide primary ticketing services to New York City's Roseland Ballroom, another former Ticketmaster client. By 2009, Live Nation provided primary ticketing services to more than 15% of the capacity at major concert venues in the United States.

Ticketmaster responded to competition from Live Nation in several ways. First, it offered more attractive renewal terms to customers with expiring contracts than it had customarily offered in order to lock customers into long-term deals before Live Nation could sign them. Second, Ticketmaster acquired a controlling interest in Front Line on October 23, 2008. Front Line's strength in artist management enabled Ticketmaster for the first time to offer venues a package of primary ticketing services and concert content that could rival Live Nation's ticketing-and-content package. Finally, Ticketmaster moved to eliminate Live Nation entirely as a competitor by agreeing to the proposed transaction less than two months after Live Nation began ticketing with the CTS platform.

The proposed transaction would extinguish competition between Ticketmaster and Live Nation and thereby eliminate the financial benefits that venues enjoyed during the brief period when Live Nation was poised to challenge Ticketmaster's dominance. The proposed transaction would also diminish innovation in primary ticketing services because

Case 1:06-cv-01204-EGS-HBF Document 430 Filed 03/09/20 Page 107 of 124
Case 1:06-cv-01204-EGS-HBF Document 439 Filed 03/29/20 Page 114 of 303 Page ID #:1017

2010 WL 975407 (D.D.C.)                                                                              Page 6

the merged firm would have reduced incentives to develop new features. Further, the proposed transaction would result in even higher barriers to entry and expansion in the market for primary ticketing services. In addition to the long-standing entry barriers discussed above, the merged firm's ability to bundle primary ticketing services (implicitly or explicitly) with access to artists managed by Front Line and/or promoted by Live Nation would require competitors to offer venues both primary ticketing services and access to content in order to compete most effectively.

Defendants have asserted that the proposed transaction will generate efficiencies sufficient to counteract any anti-competitive effects. More specifically, they have contended that the vertical integration of Ticketmaster and Live Nation's complementary businesses will reduce the number of industry participants who currently must be compensated for a concert to be produced and, thus, will allow the merged entity to reduce the prices paid by venues for primary ticketing services and by concertgoers for tickets. While appreciating that vertical integration may benefit consumers in some situations, the United States does not fully credit Defendants' efficiency claims because they each could realize many of the asserted efficiencies without consummating the proposed transaction. Ticketmaster and Live Nation each already had expanded vertically before they agreed to the proposed transaction, and but for the proposed transaction, venues and concertgoers would have continued to enjoy the benefits of competition between two vertically integrated competitors. A vertically integrated monopoly is less likely to spur innovation and efficiency than competition between vertically integrated firms, and a vertically integrated monopoly is unlikely to pass the benefits of innovation and efficiency onto consumers.

Defendants also contended that Live Nation's impact on ticketing would be minimal because of shortcomings in Live Nation's ticketing platform, including the absence of a season ticketing component, which is important for a number of venues. Though the CTS platform was originally designed for use in Europe, Live Nation and CTS have invested heavily to adapt it for use in the United States. In the first six months of 2009, Live Nation used the CTS platform to sell more than 6 million tickets to concerts at its U.S. venues. Before entering the proposed transaction, Live Nation had planned to continue improving the CTS platform, including developing a season ticketing component, to make it more attractive to potential third-party venue clients in the United States.

### III. EXPLANATION OF THE PROPOSED FINAL JUDGMENT

The proposed Final Judgment will eliminate the anticompetitive effects of the proposed transaction in the market for primary ticketing services to major concert venues in four principal ways.

First, the Final Judgment will enable Anschutz Entertainment Group, Inc. ("AEG ") to become a new, independent, economically viable, and vertically integrated competitor in the market for primary ticketing services to major concert venues. AEG is the second largest promoter in the United States (behind Live Nation), promoting shows representing about 14% of concert revenues at major concert venues in 2008. No company other than AEG or Live Nation promotes concerts representing more than 4% of the concert revenues from major concert venues. AEG also owns, operates, or manages more than 30 major concert venues, representing about 8% of the capacity at major U.S. concert venues, and it can select (or influence the selection of) the primary ticketing company for those venues. In addition, AEG owns one-half of an important artist management firm with several popular clients, including Justin Timberlake and the Jonas Brothers. Due to its significant presence in promotions, venues, and artist management, AEG is the company best positioned to achieve the necessary scale, overcome the other entry barriers discussed above, and compete successfully with the merged form in the market for primary ticketing services to major concert venues.

The Final Judgment facilitates AEG's entry through a two-stage process that gives it access to Ticketmaster's core primary ticketing platform, which AEG can then use to service its own venues and to sell primary ticketing services to third-party venues. In the first stage, which must begin within six months of the proposed transaction's consummation and may continue for up to five years, the Final Judgment requires Defendants to provide AEG with its own branded website based on Ticketmaster's Host platform, including any upgrades and enhancements (the "AEG Site"). AEG has the right to use the AEG Site to sell tickets to events at specified venues it currently owns, operates, and manages as well as to events at any other venues from which AEG secures the right to provide primary ticketing services. Though

AEG must pay Defendants royalties for each ticket sold through the AEG Site, those royalties are below the average rate Ticketmaster currently charges, and Defendants have no control over AEG's final prices. These provisions immediately provide AEG incentives to compete with Defendants and diminish the risk that AEG would be unable to compete successfully had it attempted to deploy a less established primary ticketing platform.

The Final Judgment also requires Defendants to provide AEG with an option to acquire a perpetual, fully paid-up license to the then-current version of Ticketmaster's Host platform, including a copy of the source code, which Defendants must install and then support during the first six months after its installation. AEG is permitted to exercise this option within four years of the proposed transaction's consummation, which will allow AEG to assume full responsibility for operating its own primary ticketing business, independently of Defendants.

The Final Judgment gives AEG incentives to exercise its option to acquire a copy of Host (or to develop or acquire a competing primary ticketing platform) by prohibiting Defendants from providing primary ticketing services to AEG's venues after AEG's right to use the AEG Site expires. That provision is critical to preserving competition in the primary ticketing services market because it guarantees that, within five years, AEG will have to either supply its own primary ticketing services or obtain them from some company other than the merged firm. Because AEG cannot rely indefinitely on the AEG Site, it will have incentives to plan for the future. Even if AEG's plans do not involve exercising its option to acquire a copy of Host, the Final Judgment will preserve competition because AEG will have to contract for primary ticketing services with one of Defendants' rivals. AEG's ticket volume would give that primary ticketing company sufficient scale and credibility to compete effectively with the merged firm.

Second, the Final Judgment's requirement that Defendants divest Ticketmaster's entire Paciolan business will establish another independent and economically viable competitor in the market for primary ticketing services to major concert venues. Ticketmaster currently licenses its Paciolan platform both directly to venues representing 3% of major U.S. concert venue capacity and to other primary ticketing companies that sublicense the Paciolan platform to venues representing an additional 4% of the relevant market. Before consummating the proposed transaction, Defendants must enter a letter of intent to divest to Comcast-Spectacor, L.P. ("Comcast-Spectacor") the entire Paciolan business, including all intellectual property in the Paciolan platform and all contracts with venue and primary ticketing company licensees of that platform. Through its New Era Tickets ("New Era") subsidiary, which currently licenses the Paciolan platform from Ticketmaster, Comcast-Spectacor already provides primary ticketing services to venues representing 2% of major concert venue capacity. In addition to its interest in New Era, Comcast-Spectacor owns 2 major U.S. concert venues and manages 15 others. When combined with New Era's ticketing business and Comcast-Spectacor's venue presence, the Paciolan business that the Final Judgment requires Defendants to divest would provide Comcast-Spectacor sufficient scale to compete effectively and independently with the merged firm in the market for primary ticketing services to major concert venues. Comcast-Spectacor and others have contended that the movement in primary ticketing services will be towards "self-enablement" models, such as Paciolan, which allow a venue to manage its own ticketing platform.

Within 60 days of signing the letter of intent, the Paciolan business must be divested in such a way as to satisfy the United States in its sole discretion, and, in consultation with the Plaintiff states, that the operations can and will be operated by Comcast-Spectacor or an alternative purchaser as a viable, ongoing business that can compete effectively in the relevant market. Defendants must take all reasonable steps necessary to accomplish the divestiture quickly and shall cooperate with any prospective purchaser. In the event that Defendants do not accomplish the Paciolan divestiture in a timely fashion, the Final Judgment provides that the Court will appoint a trustee selected by the United States to effect the divestiture. If a trustee is appointed, the proposed Final Judgment provides that Defendants will pay all costs and expenses of the trustee. The trustee's commission will be structured so as to provide an incentive for the trustee based on the price obtained and the speed with which the divestiture is accomplished. After his or her appointment becomes effective, the trustee will file monthly reports with the Court and the United States setting forth his or her efforts to accomplish the divestiture. At the end of six months, if the divestiture has not been accomplished, the trustee and the United States will make recommendations to the Court, which shall enter such orders as appropriate, in order to carry out the purpose of the trust, including extending the trust or the term of the trustee's appointment.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 42
Page 620 of 808

Third, the Final Judgment prohibits Defendants from engaging in certain conduct that would impede effective competition from equally efficient rivals that may or may not be not vertically integrated. Thus, the Final Judgment proscribes retaliation against venue owners who contract or consider contracting for primary ticketing services with Defendants' competitors. The Final Judgment also prohibits Defendants from explicitly or practically requiring venues to take their primary ticketing services if the venues only want to obtain concerts the Defendants promote or concerts by artists the Defendants manage, and it likewise prohibits Defendants from explicitly or practically requiring venues to take concerts they promote or concerts by artists they manage if those venues only want to obtain the Defendants' primary ticketing services. These provisions preserve the ability of primary ticketing companies that do not also have access to content (and promoters and artist managers that do not also provide primary ticketing services) to continue competing with Defendants. Elsewhere, the Final Judgment prevents Defendants from abusing their position in the primary ticketing market to impede competition among promoters and artist managers by requiring that Defendants either refrain from using certain ticketing data in their non-ticketing businesses or provide that data to other promoters and artist managers. Finally, the Final Judgment mandates that Defendants provide any current primary ticketing client with that client's ticketing data promptly upon request, if the client chooses not to renew its primary ticketing contract. That provision reduces venues' switching costs and lowers barriers to other companies competing for Defendants' primary ticketing clients because it ensures that those venue clients will not be forced to relinquish valuable data if they decide to switch primary ticketing service providers.

*Fourth,* the Final Judgment requires Defendants to notify the United States at least thirty days before acquiring any assets of or any interest in any firm engaged in providing primary ticketing services in the United States, regardless of whether the acquisition would otherwise be subject to reporting pursuant to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a. If the United States requests additional information within thirty days of the Defendants notifying it of an acquisition, the Final Judgment prohibits Defendants from consummating the acquisition until twenty days after providing the requested information. These provisions facilitate the vigilant and effective oversight that will be necessary to guard against the potential for Defendants to frustrate the purposes of the Final Judgment.

In short, the Final Judgment will eliminate the anticompetitive effects of the proposed transaction in the provision of primary ticketing services to major concert venues in the United States while preserving the possibility of efficiency-enhancing vertical integration in the concert industry and also preserving competition from Defendants' non-vertically integrated rivals.

## IV. REMEDIES AVAILABLE TO POTENTIAL PRIVATE LITIGANTS

Section 4 of the Clayton Act, 15 U.S.C. § 15, provides that any person who has been injured as a result of conduct prohibited by the antitrust laws may bring suit in federal court to recover three times the damages the person has suffered, as well as costs and reasonable attorneys' fees. Entry of the proposed Final Judgment will neither impair nor assist the bringing of any private antitrust damage action. Under the provisions of Section 5(a) of the Clayton Act, 15 U.S.C. § 16(a), the proposed Final Judgment has no prima facie effect in any subsequent private lawsuit that may be brought against Defendants.

## V. PROCEDURES AVAILABLE FOR MODIFICATION OF THE PROPOSED FINAL JUDGMENT

The United States and Defendants have stipulated that the proposed Final Judgment may be entered by the Court after compliance with the provisions of the APPA, provided that the United States has not withdrawn its consent. The APPA conditions entry upon the Court's determination that the proposed Final Judgment is in the public interest.

The APPA provides a period of at least sixty (60) days preceding the effective date of the proposed Final Judgment within which any person may submit to the United States written comments regarding the proposed Final Judgment.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 42
Page 621 of 808

Case 1:06-cv-01024-EGS-HBF Document 430 Filed 03/09/20 Page 110 of 124
Case 1:06-cv-01024-EGS-HBF Document 431 Filed 03/29/20 Page 119 of 130 Page ID #:1020

2010 WL 975407 (D.D.C.)                                                      Page 9

Any person who wishes to comment should do so within sixty (60) days of the date of publication of this Competitive Impact Statement in the Federal Register, or the last date of publication in a newspaper of the summary of this Competitive Impact Statement, whichever is later. All comments received during this period will be considered by the United States Department of Justice, which remains free to withdraw its consent to the proposed Final Judgment at any time prior to the Court's entry of judgment. The comments and the response of the United States will be filed with the Court and published in the Federal Register.

Written comments should be submitted to:
John R. Read
Chief, Litigation III Section
Antitrust Division
United States Department of Justice
450 Fifth Street, NW, Suite 4000
Washington, DC 20530

The proposed Final Judgment provides that the Court retains jurisdiction over this action, and the parties may apply to the Court for any order necessary or appropriate for the modification, interpretation, or enforcement of the Final Judgment.

## VI. ALTERNATIVES TO THE PROPOSED FINAL JUDGMENT

The United States considered, as an alternative to the proposed Final Judgment, a settlement that would have required Defendants to divest the current set of divestiture assets to Comcast-Spectacor. The United States rejected that settlement because it would not have been as effective as the remedy embodied in the proposed Final Judgment at replicating the competitive dynamics that would have prevailed in the market for primary ticketing services had the proposed transaction not occurred.

As another alternative to the proposed Final Judgment, the United States considered a full trial on the merits against Defendants. The United States could have continued the litigation and sought preliminary and permanent injunctions against Defendants' merger. The United States is satisfied, however, that the divestiture of assets and prohibitions of anticompetitive practices described in the proposed Final Judgment will preserve competition for the provision of primary ticketing services to major concert venues in the United States. Thus, the proposed Final Judgment would protect competition as effectively as would any remedy available through litigation, but avoids the time, expense, and uncertainty of a full trial on the merits of the Complaint.

## VII. STANDARD OF REVIEW UNDER THE APPA FOR THE PROPOSED FINAL JUDGMENT

The Clayton Act, as amended by the APPA, requires that proposed consent judgments in antitrust cases brought by the United States be subject to a sixty-day comment period, after which the court shall determine whether entry of the proposed Final Judgment "is in the public interest." 15 U.S.C. § 16(e)(1). In making that determination, the court, in accordance with the statute as amended in 2004, is required to consider:
(A) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and
(B) the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial

15 U.S.C. § 16(e)(1)(A) & (B). In considering these statutory factors, the court's inquiry is necessarily a limited one as

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 42
Page 622 of 808

Case 1:06-cv-01202-EGS-HBP Document 43 Filed 03/09/20 Page 114 of 124
Case 1:06-cv-01202-EGS-HBP Document 43 Filed 03/23/20 Page 115 of 125 Page
ID #:1021

2010 WL 975407 (D.D.C.)                                                                        Page 10

the goverment is entitled to "broad discretion to settle with the defendant within the reaches of the public interest." _United States v. Microsoft Corp._, 56 F.3d 1448, 1461 (D.C. Cir. 1995); _see generally United States v. SBC Commc'ns, Inc._, 489 F. Supp. 2d 1 (D.D.C. 2007) (assessing public interest standard under the Tunney Act); _United States v. InBev N.V./S.A._, No. 08-1965 (JR), 2009-2 Trade Cas. (CCH) 176,736, 2009 U.S. Dist. LEXIS 84787, at *3 (D.D.C. Aug. 11, 2009) (noting that the court's review of a consent judgment is limited and only inquires "into whether the government's determination that the proposed remedies will cure the antitrust violations alleged in the complaint was reasonable, and whether the mechanism to enforce the final judgment is clear and manageable.).[FN5]

> FN5. The 2004 amendments substituted "shall" for "may" in directing relevant factors for court to consider and amended the list of factors to focus on competitive considerations and to address potentially ambiguous judgment terms. _Compare_ 15 U.S.C. § 16(e) (2004), with 15 U.S.C. § 16(e)(1) (2006); _see also SBC Commc'ns_, 489 F. Supp. 2d at 11 (concluding that the 2004 amendments "effected minimal changes" to Tunney Act review).

As the United States Court of Appeals for the District of Columbia Circuit has held, under the APPA a court considers, among other things, the relationship between the remedy secured and the specific allegations set forth in the government's complaint, whether the decree is sufficiently clear, whether enforcement mechanisms are sufficient, and whether the decree may positively harm third parties. See _Microsoft_, 56 F.3d at 1458-62. With respect to the adequacy of the relief secured by the decree, a court may not "engage in an unrestricted evaluation of what relief would best serve the public." _United States v. BNS, Inc._, 858 F.2d 456, 462 (9th Cir. 1988) (citing _United States v. Bechtel Corp._, 648 F.2d 660, 666 (9th Cir. 1981)); see also _Microsoft_, 56 F.3d at 1460-62; _United States v. Alcoa, Inc._, 152 F. Supp. 2d 37,40 (D.D.C. 2001); InBev, 2009 U.S. Dist LEXIS 84787 at *3 Courts have held that:
[t]he balancing of competing social and political interests affected by a proposed antitrust consent decree must be left, in the first instance, to the discretion of the Attorney General. The court's role in protecting the public interest is one of insuring that the government has not breached its duty to the public in consenting to the decree. The court is required to determine not whether a particular decree is the one that will best serve society, but whether the settlement is _"within the reaches of the public interest."_ More elaborate requirements might undermine the effectiveness of antitrust enforcement by consent decree.

> FN6. _Cf. BNS_, 858 F.2d at 464 (holding that the court's "ultimate authority under the [APPA] is limited to approving or disapproving the consent decree"); _United States v. Gillette Co._, 406 F. Supp. 713, 716 (D. Mass. 1975) (noting that, in this way, the court is constrained to "look at the overall picture not hypercritically, nor with a microscope, but with an artist's reducing glass"). See generally _Microsoft_, 56 F.3d at 1461 (discussing whether "the remedies [obtained in the decree are] so inconsonant with the allegations charged as to fall outside of the 'reaches of the public interest'").

_Bechtel_, 648 F.2d at 666 (emphasis added) (citations omitted).[FN6] In determining whether a proposed settlement is in the public interest, a district court "must accord deference to the government's predictions about the efficacy of its remedies, and may not require that the remedies perfectly match the alleged violations." _SBC Commc 'ns_, 489 F. Supp. 2d at 17; see also _Microsoft_, 56 F.3d at 1461 (noting the need for courts to be "deferential to the government's predictions as to the effect of the proposed remedies"); _United States v. Archer-Daniels-Midland Co._, 272 F. Supp. 2d 1, 6 (D.D.C. 2003) (noting that the court should grant due respect to the United States' prediction as to the effect of proposed remedies, its perception of the market structure, and its views of the nature of the case).

Courts have greater flexibility in approving proposed consent decrees than in crafting their own decrees following a finding of liability in a litigated matter. "[A] proposed decree must be approved even if it falls short of the remedy the court would impose on its own, as long as it falls within the range of acceptability or is 'within the reaches of public interest.'" _United States v. Am. Tel. & Tel. Co._, 552 F. Supp. 131, 151 (D.D.C. 1982) (citations omitted) (quoting _United States v. Gillette Co._, 406 F. Supp. 713, 716 (D. Mass. 1975)), _aff'd sub nom. Maryland v. United States_, 460 U.S. 1001 (1983); _see also United States v. Alcan Aluminum Ltd._, 605 F. Supp. 619, 622 (W.D. Ky. 1985) (approving the consent decree even though the court would have imposed a greater remedy). To meet this standard, the United

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 42
Page 623 of 808

States "need only provide a factual basis for concluding that the settlements are reasonably adequate remedies for the alleged harms." *SBC Commc 'ns*, 489 F. Supp. 2d at 17.

Moreover, the court's role under the APPA is limited to reviewing the remedy in relationship to the violations that the United States has alleged in its Complaint, and does not authorize the court to "construct [its] own hypothetical case and then evaluate the decree against that case." *Microsoft*, 56 F.3d at 1459; *see also InBev*, 2009 U.S. Dist. LEXIS 84787, at *20 ("[T]he 'public interest' is not to be measured by comparing the violations alleged in the complaint against those the court believes could have, or even should have, been alleged."). Because the "court's authority to review the decree depends entirely on the government's exercising its prosecutorial discretion by bringing a case in the first place," it follows that "the court is only authorized to review the decree itself," and not to "effectively redraft the complaint" to inquire into other matters that the United States did not pursue. *Microsoft*, 56 F.3d at 1459-60. As this Court recently confirmed in SBC Communications, courts "cannot look beyond the complaint in making the public interest determination unless the complaint is drafted so narrowly as to make a mockery of judicial power." *SBC Commc'ns*, 489 F. Supp. 2d at 15.

In its 2004 amendments, Congress made clear its intent to preserve the practical benefits of utilizing consent decrees in antitrust enforcement, adding the unambiguous instruction that "[n]othing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene." 15 U.S.C. § 16(e)(2). The language wrote into the statute what Congress intended when it enacted the Tunney Act in 1974, as Senator Tunney explained: "[t]he court is nowhere compelled to go to trial or to engage in extended proceedings which might have the effect of vitiating the benefits of prompt and less costly settlement through the consent decree process." 119 Cong. Rec. 24,598 (1973) (statement of Senator Tunney). Rather, the procedure for the public interest determination is left to the discretion of the court, with the recognition that the court's "scope of review remains sharply proscribed by precedent and the nature of Tunney Act proceedings." *SBC Commc'ns*, 489 F. Supp.2d at 11.[FN7]

> FN7. *See United States v. Enova Corp.*, 107 F. Supp. 2d 10, 17 (D.D.C. 2000) (noting that the "Tunney Act expressly allows the court to make its public interest determination on the basis of the competitive impact statement and response to comments alone"); *United States v. Mid-Am. Dairymen, Inc.*, 1977-1 Trade Cas. (CCH) ¶ 61,508, at 71,980 (W.D. Mo. 1977) ("Absent a showing of corrupt failure of the government to discharge its duty, the Court, in making its public interest finding, should ... carefully consider the explanations of the government in the competitive impact statement and its responses to comments in order to determine whether those explanations are reasonable under the circumstances."); S. Rep. No. 93-298, 93d Cong., 1st Sess., at 6 (1973) ("Where the public interest can be meaningfully evaluated simply on the basis of briefs and oral arguments, that is the approach that should be utilized.")

## VIII. DETERMINATIVE DOCUMENTS

In formulating the proposed Final Judgment, the United States considered the AEG/TM Technology Agreement, dated January 11, 2010 and attached hereto as Exhibit A,[FN8] to be a determinative document within the meaning of the APPA.

> FN8. The United States redacted competitively sensitive information and information unrelated to U.S. markets from the version of the AEG/TM Technology Agreement attached as Exhibit A.

Dated: January 25, 2010

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 42
Page 624 of 808

Westlaw.

Slip Copy, 2010 WL 5699134 (D.D.C.), 2010-2 Trade Cases P 77,113
**(Cite as: 2010 WL 5699134 (D.D.C.))**

C

United States District Court,
District of Columbia.
UNITED STATES of America, et al., Plaintiffs,
v.
**TICKETMASTER** ENTERTAINMENT, INC., et al., Defendants.

No. 1:10-cv-00139.
July 30, **2010.**

Aaron D. Hoag, U.S. Department of Justice, Washington, DC, for Plaintiffs.

Jennifer Lynn Giordano, Michael G. Egge, Joshua N. Holian, Karen E. Silverman, Latham & Watkins, LLP, Washington, DC, for Defendants.

### FINAL JUDGMENT

ROSEMARY M. COLLYER, District Judge.

**\*1** WHEREAS, plaintiffs, United States of America, and the States of Arizona, Arkansas, California, Florida, Illinois, Iowa, Louisiana, Nebraska, Nevada, Ohio, Oregon, Rhode Island, Tennessee, Texas, and Wisconsin, and the Commonwealths of Massachusetts and Pennsylvania ("Plaintiff States") filed their Complaint on January 25, **2010,** and whereas the States of New Jersey and Washington joined as Plaintiff States pursuant to an Amended Complaint filed January 28, **2010,** the United States, Plaintiff States, and defendants, **Ticketmaster** Entertainment, Inc. and **Live Nation,** Inc., by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by the defendants and the imposition of certain conduct restrictions on defendants, to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the divestitures required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

### I. Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

### II. Definitions

As used in this Final Judgment:

A. "AEG" means Anschutz Entertainment Group, Inc., a company with its headquarters in Los Angeles, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B. "Acquirer" or "Acquirers" means the entity or entities to whom defendants divest the Divestiture Assets.

C. "Client Ticketing Data" means financial data relating to a ticketing client's events including on-sale dates for a client's events, the number of tickets sold for the specific event, the proceeds from those sales for a specific event, ticket inventory that is made available on the **Ticketmaster** system, the number

EXHIBIT 42
Page 625 of 808

Case 1:06-cv-01204-EGS-HBF  Document 430  Filed 03/09/20  Page 114 of 124
Case 1:06-cv-01204-EGS-HBF  Document 431  Filed 03/29/20  Page 116 of 136  Page ID #:1024

Page 2

Slip Copy, 2010 WL 5699134 (D.D.C.), 2010-2 Trade Cases P 77,113
(Cite as: 2010 WL 5699134 (D.D.C.))

and location of tickets that are sold, the amount for which the tickets are sold, pricing, marketing and promotions run for the event, the sales as a result of the marketing or promotions, and the status of the ticket inventory. "Client ticketing data" does not include data that Defendants collect through other means (e.g., website tracking, user group surveys, public sources). Client Ticketing Data does not include data that is made public by a client or third party.

**\*2** D. "Comcast-Spectacor" means Comcast-Spectacor, L.P., a company with its headquarters in Philadelphia, Pennsylvania, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

E. "Condition" means to explicitly or practically require buyers to take one product or set of services if they want to obtain a second product or set of services. In the absence of explicit conditioning, providing the buyer with an opportunity to buy the two products or sets of services separately is only conditioning if no reasonable buyer would be expected to accept the terms of the separate offers.

F. "Covered Employee" means any employee of Defendants whose principal job responsibility involves the operation or day-to-day management of Defendants' venues, concert promotions, or artist management services.

G. "Defendants" means either defendant acting individually or both defendants acting collectively, as appropriate. Where the Final Judgment imposes an obligation to engage in or refrain from engaging in certain conduct, that obligation shall apply as broadly as reasonable to each defendant individually, both defendants acting together, and the merged firm.

H. "Divestiture Assets" means the **Ticketmaster** Host Platform (via the binding agreement to license and to provide private label ticketing services to the **Ticketmaster** Host Platform Acquirer as required in Section IV.A) and Paciolan.

I. "Exempted Employee" means any employee of Defendants who is not a Covered Employee, including: (a) any senior corporate officer, director or manager with responsibilities that include oversight of Defendants provision of Primary Ticketing Services;

and (b) any employee whose primary responsibilities solely include accounting, human resources, legal, information systems, and/or finance.

J. "Live Entertainment Event" means a live music concert for which tickets are sold to the public.

K. "**Live Nation**" means defendant **Live Nation**, Inc., a Delaware corporation with its headquarters in Beverly Hills, California, its successors and assigns, and its subsidiaries (whether partially or wholly owned), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

L. "**Merger**" means the **merger** of **Ticketmaster** and **Live Nation**.

M. "Paciolan" means Paciolan, Inc., a Delaware corporation which is engaged in the provision of ticketing services to venues or other organizations under the Paciolan or **Ticketmaster** Irvine names, and which includes:

1. All tangible assets that comprise the Paciolan line of business, including servers and other computer hardware; research and development activities; all fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible property and all assets used exclusively in connection with Paciolan; all licenses, permits and authorizations issued by any governmental organization relating to Paciolan; all contracts, teaming arrangements, agreements, leases (including the lease to the Paciolan headquarters in Irvine, California), commitments, certifications, and understandings, relating to Paciolan, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records and all other records relating to Paciolan;

**\*3** 2. All intangible assets used in the development, distribution, production, servicing and sale of Paciolan, including, but not limited to, all patents, contractual rights (including contractual rights to provide ticketing services and employment contracts), licenses and sublicenses, intellectual property, copyrights, trademarks, trade names, service marks, service names, technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 42
Page 626 of 808

Slip Copy, 2010 WL 5699134 (D.D.C.), 2010-2 Trade Cases P 77,113
**(Cite as: 2010 WL 5699134 (D.D.C.))**

protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, all research data concerning historic and current research and development relating to Paciolan, quality assurance and control procedures, design tools and simulation capability, all manuals and technical information defendants provide to their own employees, customers, suppliers, agents or licensees, and all research data concerning historic and current research and development efforts relating to Paciolan, including, but not limited to, designs of experiments, and the results of successful and unsuccessful designs and experiments. Preexisting commitments to transfer contractual rights from Paciolan to another entity that are specifically identified in the Paciolan sales agreement are excluded from this definition.

N. "Paciolan Acquirer" means the entity to whom defendants divest Paciolan.

O. "Primary Ticketing Services" means a collection of services provided to venues or other customers to enable the initial sale of tickets for live entertainment events directly to customers and enable the validation of tickets at the venue to control access to the event.

P. "Provide Live Entertainment Events" and "Provision of Live Entertainment Events" mean services reasonably necessary to plan, promote, market and settle a Live Entertainment Event, including but not limited to concert promotion services provided by firms such as **Live Nation** and the provision of artists managed by firms such as Front Line. The Promotion of Live Entertainment Events specifically does not include the provision of primary ticketing services, venue management services and/or tour design and construction services.

Q. "Retaliate" means refusing to Provide Live Entertainment Events to a Venue Owner, or Providing Live Entertainment Events to a Venue Owner on less favorable terms, for the purpose of punishing or disciplining a Venue Owner because the Venue Owner has contracted or is contemplating contracting with a company other than Defendants for Primary Ticketing Services. The term "Retaliate" does not mean pursuing a more advantageous deal with a competing Venue Owner.

R. "Ticket Buyer Data" means non-public identifying information for ticket buyers for a specific event (including, if provided, the buyer's name, phone number, e-mail address, and mailing address) that Defendants collect in the course of providing a ticketing client's Primary Ticketing Services. Ticket Buyer Data does not include data that Defendants collect solely through other means (e.g ., website tracking, user group surveys, public sources).

**\*4** S. "**Ticketmaster**" means defendant **Ticketmaster** Entertainment, Inc., a Delaware corporation with its headquarters in West Hollywood, California, its successors and assigns, and its subsidiaries (whether partially or wholly owned), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

T. "**Ticketmaster** Host Platform" means the primary **Ticketmaster** software used by **Ticketmaster** to sell primary tickets in the United States. The **Ticketmaster** Host Platform includes the following software: **Ticketmaster** Classic Ticketing System (also called **Ticketmaster** Host); *Ticketmaster.com* full website package; Access Management; payment processing and settlements; and PCI point of sale system (for phone and outlets).

U. "**Ticketmaster** Host Platform Acquirer" means AEG, the entity with whom defendants will enter into a binding agreement to license the **Ticketmaster** Host Platform.

V. "Venue Owner" means a person or company that owns, operates, or manages one or more venues that host Live Entertainment Events.

### III. Applicability

A. This Final Judgment applies to **Ticketmaster** and **Live Nation**, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B. If, prior to complying with Sections IV and V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 42
Page 627 of 808

Case 1:04cv01829-EGS-HBR Document 430 Filed 03/09/20 Page 116 of 124
Case 1:06-cv-01204-EGS-HBR Document 431 Filed 03/29/20 Page 116 of 126 Page ID #:1026

Page 4

Slip Copy, 2010 WL 5699134 (D.D.C.), 2010-2 Trade Cases P 77,113
**(Cite as: 2010 WL 5699134 (D.D.C.))**

need not obtain such an agreement from the Acquirers of the assets divested pursuant to this Final Judgment.

### IV. Divestiture

A. Defendants are ordered and directed not to consummate the **Merger** until they have entered into a binding agreement to license the **Ticketmaster** Host Platform to the **Ticketmaster** Host Platform Acquirer and to provide private label ticketing services to the **Ticketmaster** Host Platform Acquirer in a manner consistent with this Final Judgment and with the following terms and conditions:

1. The agreement shall include the option, exercisable at the discretion of the **Ticketmaster** Host Platform Acquirer, to acquire a non-exclusive, perpetual, fully-paid up license to the **Ticketmaster** Host Platform. The license shall include a copy of the source code of the **Ticketmaster** Host Platform and shall permit the **Ticketmaster** Host Platform Acquirer to modify the software in any manner without limitation and without any requirement to license back any improvements to Defendants. If the option is exercised, Defendants shall promptly begin the installation of a fully functional ticketing system and website in the facilities of the **Ticketmaster** Host Platform Acquirer and shall complete the installation within a reasonable time pursuant to a schedule subject to approval by the United States, after consultation with Plaintiff States. Defendants shall warrant that the system is current as of the time of installation and operational for use in providing Primary Ticketing Services. Defendants shall provide reasonable training and support to enable the **Ticketmaster** Host Platform Acquirer to operate the software and to understand the source code so that it can make independent changes to the code. The license shall permit the **Ticketmaster** Host Platform Acquirer to transfer the license following the complete installation of the **Ticketmaster** Host Platform. The scope of use of the license shall be at least the United States.

**\*5** 2. The agreement shall include a private label ticketing agreement pursuant to which **Ticketmaster** shall provide private label ticketing services to the **Ticketmaster** Host Platform Acquirer for a period of no more than five years from the date of execution of the license. The private label ticketing agreement shall be on such reasonable terms and conditions that will enable the **Ticketmaster** Host

Platform Acquirer to compete effectively against **Ticketmaster** to secure contracts for the provision of Primary Ticketing Services. The private label ticketing agreement shall give the **Ticketmaster** Host Platform Acquirer all control over the ticketing fees charged individual consumers or clients of the **Ticketmaster** Host Platform Acquirer for tickets sold pursuant to the agreement and Defendants shall have no right or ability to set these ticketing fees. **Ticketmaster** shall, at the request of the **Ticketmaster** Host Platform Acquirer, post on the main **Ticketmaster** public website links to events sold under the private label ticketing agreement, subject to reasonable, non-discriminatory, and customary terms and conditions. **Ticketmaster** shall customize a separate website for the **Ticketmaster** Host Platform Acquirer with branding, look, and feel to be determined by the **Ticketmaster** Host Platform Acquirer. The private label ticketing services as described in this Section shall be operational within six months from the date that the binding agreement to license **Ticketmaster** Host Platform becomes effective.

B. Defendants shall implement the **Ticketmaster** Host Platform binding agreement required by Section IV.A and any resulting **Ticketmaster** Host Platform license in a manner consistent with the terms of Section IV.A. Defendants shall comply with the terms of the **Ticketmaster** Host Platform binding agreement required by Section IV.A and any resulting **Ticketmaster** Host Platform license, provided that nothing in the **Ticketmaster** Host Platform binding agreement or resulting **Ticketmaster** Host Platform license can relieve Defendants of any obligations imposed by this Final Judgment.

C. Defendants shall, as soon as possible, but within one business day after completion of the relevant event, notify the United States and Plaintiff States of: (I) the effective date of the **Merger** and (2) the effective date of the binding agreement to license to the **Ticketmaster** Host Platform Acquirer.

D. If the **Ticketmaster** Host Platform Acquirer exercises its option to license the **Ticketmaster** Host Platform, Defendants shall waive any non-compete agreements that would prevent any employee of Defendants whose primary responsibility is the development or operation of the **Ticketmaster** Host Platform from joining the **Ticketmaster** Host Platform

Case 1:04-cv-01264-EGS-HBP Document 430 Filed 08/09/20 Page 117 of 124
Case 1:06-cv-01264-EGS-HBP Document 431 Filed 03/29/20 Page 244 of 620 Page ID #:1027
Page 5

Slip Copy, 2010 WL 5699134 (D.D.C.), 2010-2 Trade Cases P 77,113
(Cite as: 2010 WL 5699134 (D.D.C.))

Acquirer.

E. Defendants are ordered and directed, concurrently with the closing of the **Merger**, to enter into a Letter of Intent to divest Paciolan to Comcast-Spectacor in a manner consistent with this Final Judgment. Within sixty (60) calendar days of closing the **Merger**, Defendants shall complete the divestiture of Paciolan in a manner consistent with this Final Judgment to Comcast-Spectacor or an alternative Acquirer acceptable to the United States, in its sole discretion, after consultation with Plaintiff States. Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible.

**\*6** F. Defendants shall provide the United States and the Paciolan Acquirer information relating to the personnel involved in the production, operation, development and sale of Paciolan at any time since **Ticketmaster** acquired Paciolan to enable the Paciolan Acquirer to make offers of employment. Defendants will not interfere with any negotiations by the Paciolan Acquirer to employ any defendant employee whose primary responsibility is the production, operation, development, and sale of Paciolan, and shall waive any non-compete agreements that would prevent any such employee from joining the Paciolan Acquirer. Nothing in this Section shall prohibit defendants from making offers of continued employment to, continuing to employ, or continuing to use the services of any of their employees, including personnel involved in the production, operation, development and marketing of Paciolan and its ticketing system, subject to the overarching limitation that the agreement to sell Paciolan to the Paciolan Acquirer must ensure that the Paciolan Acquirer will be able to adequately staff Paciolan in a manner that enables the Paciolan Acquirer to successfully compete as a provider of Primary Ticketing Services, as determined by United States in its sole discretion. In addition, nothing in this Section shall prohibit defendants from maintaining any reasonable restrictions on the disclosure by an employee who accepts an offer of employment with the Paciolan Acquirer of the defendants' proprietary non-public information that is (1) not otherwise required to be disclosed by this Final Judgment, (2) related solely to the defendants' businesses and clients, and (3) not related to the production, operation, development, and marketing of Paciolan and its ticketing system.

G. Defendants shall permit the Paciolan Acquirer to have reasonable access to personnel and to make inspections of the physical facilities of Paciolan; access to any and all environmental, zoning, and other permit documents and information; access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

H. Defendants shall warrant to the Paciolan Acquirer that each asset it acquires will be operational on the date of sale.

I. Defendants shall warrant to the Paciolan Acquirer that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of Paciolan, and that following the sale of Paciolan, defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of Paciolan.

J. Defendants shall not take any action that will impede in any way the permitting, operation, use, or divestiture of the Divestiture Assets.

K. Unless the United States otherwise consents in writing, after consultation with Plaintiff States, the divestitures pursuant to Section IV of this Final Judgment shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, after consultation with Plaintiff States, that the Divestiture Assets can and will be used by the Acquirer(s) as part of a viable, ongoing business, engaged in providing Primary Ticketing Services. Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of the United States, after consultation with Plaintiff States, that the Divestiture Assets will remain viable and the divestiture of such assets will remedy the competitive harm alleged in the Complaint. The divestitures, whether pursuant to Section IV or Section V of this Final Judgment,

**\*7** 1. shall be made to an Acquirer(s) that, in the United States's sole judgment, after consultation with Plaintiff States, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the business of providing Primary

EXHIBIT 42
Page 629 of 808

Case 1:06-cv-01204-EGS-HBP Document 430 Filed 03/09/20 Page 118 of 124
Case 1:06-cv-01204-EGS-HBP Document 431 Filed 03/29/20 Page 258 of 280 Page ID #:1028

Page 6

Slip Copy, 2010 WL 5699134 (D.D.C.), 2010-2 Trade Cases P 77,113
**(Cite as: 2010 WL 5699134 (D.D.C.))**

Ticketing Services; and

2. shall be accomplished so as to satisfy the United States, in its sole discretion, after consultation with Plaintiff States, that none of the terms of any agreement between an Acquirer(s) and Defendants give Defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

**V. Appointment of Trustee to Effect Divestiture**

A. If Defendants have not divested Paciolan as specified in Section IV.E, defendants shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to divest Paciolan in a manner consistent with this Final Judgment. Defendants consent to appointment of a trustee prior to entry of this Final Judgment if Paciolan has not been divested within the time periods provided in Section IV.E.

B. After the appointment of a trustee becomes effective, only the trustee shall have the right to sell Paciolan. The trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States, after consultation with Plaintiff States, at such cash price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate.

C. Subject to Section V.E of this Final Judgment, the trustee may hire at the cost and expense of defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

D. Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

E. The trustee shall serve at the cost and expense of defendants, on such terms and conditions as the United States approves, and shall account for all

monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to defendants and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of Paciolan and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

**\*8** F. Defendants shall use their best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, including any information provided to the United States during its investigation of the **merger** related to the business to be divested, and defendants shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

G. After its appointment, the trustee shall file monthly reports with the United States, Plaintiff States, and the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in Paciolan, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest Paciolan.

H. If the trustee has not accomplished the divestiture ordered under this Final Judgment within six (6) months after its appointment, the trustee shall

Case 1:00-cv-01284-LGS-HBP Document 430 Filed 08/09/20 Page 119 of 124
Case 1:00-cv-01284-LGS-HBP Document 430 Filed 08/29/20 Page 253 of 856 Page
ID #:1029

Page 7

Slip Copy, 2010 WL 5699134 (D.D.C.), 2010-2 Trade Cases P 77,113
(Cite as: 2010 WL 5699134 (D.D.C.))

promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

### VI. Notice of Proposed Divestiture

A. Within two (2) business days following execution of a definitive divestiture agreement, defendants shall notify the United States and Plaintiff States of any proposed divestiture required by Section IV of this Final Judgment. Within two (2) business days following execution of a definitive divestiture agreement, the trustee shall notify the United States and Plaintiff States of any proposed divestiture required by Section V of this Final Judgment. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in Paciolan, together with full details of the same.

**\*9** B. Within fifteen (15) calendar days of receipt by the United States and Plaintiff States of such notice, the United States may request from defendants, the proposed Acquirer(s), any other third party, or the trustee if applicable, additional information concerning the proposed divestiture, the proposed Acquirer(s), and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C. Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States and Plaintiff States has been provided the additional information requested from defendants, the proposed Acquirer(s), any third party, and the trustee, whichever is later, the United States shall

provide written notice to defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States, after consultation with Plaintiff States, provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Section V.C of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer(s) or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by defendants under Section V.D, a divestiture proposed under Section V shall not be consummated unless approved by the Court.

### VII. Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

### VIII. Hold Separate

Until the divestiture required by this Final Judgment has been accomplished, defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestiture ordered by this Court.

### IX. Anti-Retaliation Provision and Other Provisions Designed to Promote Competition

A. Defendants shall not:

1. Retaliate against a Venue Owner because it is known to Defendants that the Venue Owner is or is contemplating contracting with a company other than Defendants for Primary Ticketing Services;

2. Condition or threaten to Condition the Provision of Live Entertainment Events to a Venue Owner based on that Venue Owner refraining from contracting with a company other than Defendants for Primary Ticketing Services; or

3. Condition or threaten to Condition the provision of Primary Ticketing Services to a Venue Owner based on that Venue Owner refraining from contracting with a company other than Defendants for the Provision of Live Entertainment Events.

Nothing in this Section prevents Defendants from

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 42
Page 631 of 808

Case 1:06-cv-01021-EGS-HBP   Document 430   Filed 08/09/20   Page 129 of 124
Case 1:06-cv-01021-EGS-HBP   Document 431   Filed 08/29/20   Page 129 of 130   Page
ID #:1030

Page 8

Slip Copy, 2010 WL 5699134 (D.D.C.), 2010-2 Trade Cases P 77,113
(Cite as: 2010 WL 5699134 (D.D.C.))

bundling their services and products in any combination or from exercising their own business judgment in whether and how to pursue, develop, expand, or compete for any ticketing, venue, promotions, artist management, or any other business, so long as Defendants do so in a manner that is not inconsistent with the provisions of this Section.

*10 Evidence that Defendants do or do not (a) bid for, contract with, win, or retain a venue, artist, or promoter as a client, and/or (b) promote a show or shows in particular buildings or group of buildings (even where similar shows historically have been promoted in those buildings) is not alone sufficient to establish, or create a presumption of, a violation of this Section.

B. Defendants shall not disclose to any Covered Employee any Client Ticketing Data. Defendants however: (1) may disclose Client Ticketing Data concerning a specific event to any Covered Employee involved in the promotion of that event or the management of the artist who performed at that event, if it does so on the same terms it generally provides such information to other promoters or artist managers not affiliated with Defendants; (2) may disclose Client Ticketing Data to an Exempted Employee who requires the information in order to perform his or her job function(s); provided however, that such Exempted Employee may not use Client Ticketing Data to perform any job function(s) that primarily involve(s) the day-to-day operation or management of Defendants' venues, concert promotions, or artist management services; and (3) may disclose Client Ticketing Data to any Defendant employee where so required by law, government regulation, legal process, or court order, so long as such disclosure is limited to fulfillment of that purpose.

C. If any client of Defendants' primary ticketing services chooses not to renew a contract for Primary Ticketing Services with Defendants for some or all of its venues, upon the expiration of that contract and the written request of the client, Defendants shall within forty-five (45) days provide the client with a complete copy of all Client Ticketing Data and all Ticket Buyer Data historically maintained by Defendants for such venue(s) in the ordinary course of business, in a form that is reasonably usable by the client. Nothing in this provision shall be read to: (1) alter any rights Defendants would otherwise have to Client Ticketing

Data or Ticket Buyer Data pursuant to the Primary Ticketing Services contract with the client, and/or its historical custom, practice, and course of dealing with the client; or (2) limit any rights the client would otherwise have to its Client Ticketing Data or Ticket Buyer Data pursuant to the Primary Ticketing Services contract with Defendants and/or its historical custom, practice, and course of dealing with Defendants. Defendants shall maintain Client Ticketing Data and Ticket Buyer Data on behalf of its clients for no less than three (3) years. This provision only applies to contracts for Primary Ticketing Services in effect prior to the entry of this Final Judgment.

### X. Affidavits

A. Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestitures have been completed under Section IV or Section V, defendants shall deliver to the United States and Plaintiff States an affidavit as to the fact and manner of its compliance with Section IV or Section V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States, after consultation with Plaintiff States, to information provided by defendants, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

*11 B. Every two (2) months prior to the private label ticketing agreement described in Section IV.A.2 becoming operational, and every six (6) months thereafter, defendants shall deliver to the United States and Plaintiff States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section IV.A and the terms of **Ticketmaster** Host Platform binding agreement.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 42
Page 632 of 808

Case 1:06-cv-01216-LGS-HBP Document 431 Filed 03/09/20 Page 121 of 124
Case 1:06-cv-01216-LGS-HBP Document 431 Filed 03/29/20 Page 226 of 160
ID #:1031

Page 9

Slip Copy, 2010 WL 5699134 (D.D.C.), 2010-2 Trade Cases P 77,113
**(Cite as: 2010 WL 5699134 (D.D.C.))**

C. Defendants shall, in addition, deliver to the United States and Plaintiff States an affidavit describing any revised or amended agreements with the **Ticketmaster Host Platform Acquirer** relating to the agreement required by Section IV.A. Such notice shall be delivered to the United States and Plaintiff States at least fifteen (15) calendar days prior to the effective date of the revised or amended agreement and Defendants shall not implement any amended agreement if the United States, after consultation with Plaintiff States, objects during the fifteen (15) day notice period.

D. Within twenty (20) calendar days of the filing of the Complaint in this matter, defendants shall deliver to the United States and Plaintiff States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Defendants shall deliver to the United States and Plaintiff States an affidavit describing any changes to the efforts and actions outlined in defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change if implemented.

E. Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

**XI. Compliance Inspection**
A. For purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

1. access during defendants' office hours to inspect and copy, or at the option of the United States, to require defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of defendants, relating to any mat-

ters contained in this Final Judgment; and

2. to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

**\*12** B. Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested. Written reports authorized under this paragraph may, at the sole discretion of the United States, require Defendants to conduct, at Defendants' cost, an independent audit or analysis relating to any of the matters contained in this Final Judgment.

C. No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, or the Attorney General's Office of any other plaintiff, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D. If at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

**XII. Notification**
Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"),

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 42
Page 633 of 808

Slip Copy, 2010 WL 5699134 (D.D.C.), 2010-2 Trade Cases P 77,113
**(Cite as: 2010 WL 5699134 (D.D.C.))**

defendants, without providing advance notification to the United States and Plaintiff States, shall not directly or indirectly acquire any assets of or any interest, including any financial, security, loan, equity or management interest, in any person that, at any time during the twelve (12) months immediately preceding such acquisition, was engaged in the United States in providing Primary Ticketing Services during the term of this Final Judgment.

Such notification shall be provided to the United States and Plaintiff States in the same format as, and per the instructions relating to the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended. Notification shall be provided at least thirty (30) calendar days prior to acquiring any such interest, and shall include, beyond what may be required by the applicable instructions, the names of the principal representatives of the parties to the agreement who negotiated the agreement, and any management or strategic plans discussing the proposed transaction. If within the 30-day period after notification, representatives of the United States make a written request for additional information, defendants shall not consummate the proposed transaction or agreement until twenty (20) calendar days after submitting all such additional information. Early termination of the waiting periods in this paragraph may be requested and, where appropriate, granted in the same manner as is applicable under the requirements and provisions of the HSR Act and rules promulgated thereunder. This Section shall be broadly construed and any ambiguity or uncertainty regarding the filing of notice under this Section shall be resolved in favor of filing notice.

### XIII. No Reacquisition
*13 A. Defendants may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

B. Following the expiration of the private label ticketing agreement with the **Ticketmaster** Host Platform Acquirer required by Section IV.A.2: (1) Defendants shall not provide Primary Ticketing Services to any venues in North America for which, by virtue of an ownership interest, the **Ticketmaster** Host Platform Acquirer controls the rights to select the Primary Ticketing Services provider; and (2) for all other venues in North America, Defendants shall not provide Primary Ticketing Services on behalf of or

pursuant to a ticketing contract with the **Ticketmaster** Host Platform Acquirer. Nothing in this Section shall prevent Defendants from: (1) competing to provide Primary Ticketing Services to venues (including such venues managed by the **Ticketmaster** Host Platform Acquirer) other than those for which, by virtue of an ownership interest, the **Ticketmaster** Host Platform Acquirer controls the rights to select the Primary Ticketing Services provider; and (2) providing Primary Ticketing Services to artist fan clubs in venues owned, operated, or managed by the **Ticketmaster** Host Platform Acquirer.

### XIV. Retention of Jurisdiction
This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

### XV. Expiration of Final Judgment
Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

### XVI. Public Interest Determination
Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

D.D.C.,2010.
U.S. v. Ticketmaster Entertainment, Inc.
Slip Copy, 2010 WL 5699134 (D.D.C.), 2010-2 Trade Cases P 77,113

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 42
Page 634 of 808

# CERTIFICATION OF SERVICE

Amy R. Gurvey, a US patentee admitted to practice law in the State of California certifies that on February 28, 2020 she served a true and accurate copy of the within motion for reconsideration of the Court's order entered February 13, 2020.  The envelopes were addressed as follows:

Hinshaw & Culbertson, LLP
800 Third Avenue  13th FL
New York, NY  10022

Baker Botts, LLP
30 Rockefeller Plaza
New York, NY  10112

Greenberg & Traurig
54 State Street  6th FL
Albany, NY  12207

AMY R. GURVEY

EXHIBIT 42
Page 635 of 808




Express



ORIGIN ID:TNTA   (917) 733-9981
AMY WEISSBRODGURVEY
315 HIGHLAND AVE

MONTCLAIR, NJ 07043
UNITED STATES US

TO PRO SE OFFICE RM 200
US DISTRICT CT. SOUTHERN DIS OF NY
500 PEARL ST
RM 200
NEW YORK NY 10007
(212) 805-0175
TM42 805-0175
REF:

DEPT:

SHIP DATE: 29FEB20
ACTWGT:1.40 LB
CAD: 6992703/SSF0201

BILL CREDIT CARD

TRK# 3907 5312 2143
0201

SA PCTA

WED – 04 MAR 4:
EXPRESS SA

NY-US E

Align top of FedEx Express® shipping label h

EXHIBIT 42
Page 636 of 808

# CERTIFICATION OF SERVICE

Plaintiff-USPTO Inventor pro se Amy R. Gurvey declares under penalty of perjury that on March 18, 2020 she served a true and accurate copy of the within Notice of Appeal upon attorneys for all defendants Live Nation, Inc., Clear Channel Entertainment SPINCO, Inc., Instant Live Concerts, LLC, Next Ticketing, Inc., Cowan Liebowitz & Latman, PC and Michael Gordon seeking appeal of SDNY orders through final Docket #430 to the United States Court of Appeals for the Federal Circuit that has exclusive jurisdiction over appeals related to patents, 28 USC §§1338, 1295.

The envelopes were addressed as follows:

1. Baker Botts, LLP  30 Rockefeller Plaza, New York, NY  10112
2. Hinshaw & Culbertson, LLP  800 Third Avenue, New York, NY 10022
3. Greenberg & Traurig, LLP, 54 State Street, 6th FL, Albany, NY 12207.

AMY R. GURVEY

EXHIBIT 42
Page 637 of 808

Align top of FedEx Express® shipping label here.

ORIGIN ID:TNIA   (917) 733-9981
AMY GURVEY
PRO SE
315 HIGHLAND AVE

UPPER MONTCLAIR, NJ 07043
UNITED STATES US

SHIP DATE: 18MAR20
ACTWGT: 1.40 LB
CAD: 6995613/SSF02101

BILL CREDIT CARD

TO  PROS SE OFFICE ROOM 200
US DISTRICT COURT SOUTHERN DIST. NY
500 PEARL ST ROOM 200

NEW YORK NY 10007
(212) 806-0175        REF:
PO:                    DEPT:





FedEx
Express

E

THU – 19 MAR 3:00P
STANDARD OVERNIGHT

TRK# 3912 0158 7261
0201

XA PCTA            10007
                   NY-US  EWR





EXHIBIT 42
Page 638 of 808

# EXHIBIT 43

# EXHIBIT 43

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _08/16/2023_

NOTE:  This order is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

### In re:  AMY R. GURVEY,
*Petitioner*

---

2023-134

---

On Petition for Writ of Mandamus to the United States District Court for the Southern District of New York in No. 1:06-cv-01202-LGS-HBP, Judge Lorna G. Schofield.

---

## ON PETITION

---

PER CURIAM.

## O R D E R

Amy R. Gurvey petitions for a writ of mandamus to "disqualif[y]" the magistrate judge and district court judge, vacate the district court's orders "retroactive to 2012," and direct that her case be transferred.  ECF No. 2-1 at 21–22.

The district court entered final judgment against Ms. Gurvey in 2017.  She appealed to the United States Court of Appeals for the Second Circuit, which affirmed in 2018. In 2020 and 2021, the district court denied Ms. Gurvey's requests to vacate the judgment.  We transferred her appeals from those rulings (and her associated petition for a writ of mandamus) to the Second Circuit, which dismissed

EXHIBIT 43
Page 640 of 808

them.  In 2022, the district court entered an anti-filing injunction against Ms. Gurvey.  This petition appears to arise out of Ms. Gurvey's recent attempts to file submissions at the district court seeking disqualification and vacatur of the prior rulings, which have been returned to her unadjudicated.

The All Writs Act provides that the federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  As that statute makes clear, however, the Act is not itself a grant of jurisdiction. *See Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999).  As we have repeatedly explained to Ms. Gurvey, we do not have jurisdiction over her case.  *See* 28 U.S.C. § 1295.  Under the circumstances, we dismiss, having concluded that it would not be in the interest of justice to transfer to the Second Circuit under 28 U.S.C. § 1631.

Accordingly,

IT IS ORDERED THAT:

The petition is dismissed.

FOR THE COURT

August 16, 2023                          /s/ Jarrett B. Perlow
      Date                               Jarrett B. Perlow
                                         Clerk of Court

EXHIBIT 43
Page 641 of 808

# EXHIBIT 44

# EXHIBIT 44

2021 WL 3918878
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Amy R. GURVEY, Plaintiff-Appellant,
v.
COWAN, LIEBOWITZ AND LATHMAN, P.C., et al., Defendants-Appellees,
Does, 1-X Inclusive, Michael Gordon, Defendants.

20-1986
|
January 8, 2021

## Attorneys and Law Firms

Amy R. Gurvey, Upper Montclair, NJ, Pro Se.

Ariel Michael Furman, Esq., Furman Kornfeld & Brennan LLP, New York, NY, for Defendants-Appellees.

Present: Guido Calabresi, Reena Raggi, Denny Chin, Circuit Judges.

## Opinion

**\*1** Appellees move to dismiss the appeal and for sanctions. Upon due consideration, it is hereby ORDERED that Appellees' motion is DENIED. It is further ORDERED that the appeal is DISMISSED because it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Pillay v. INS*, 45 F.3d 14, 17 (2d Cir. 1995) (holding Court has inherent authority to dismiss an appeal that lacks an arguable basis in law or fact). Appellant's mandamus petition, which was transferred to this Court as part of this appeal from the United States Court of Appeals for the Federal Circuit, is DENIED because mandamus may not be used as a substitute for an appeal. *See Linde v. Arab Bank, PLC*, 706 F.3d 92, 117–18 (2d Cir. 2013).

## All Citations

Not Reported in Fed. Rptr., 2021 WL 3918878

---

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT 44
Page 643 of 808

EXHIBIT 45

EXHIBIT 45

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

AMY R. GURVEY,

                                        Plaintiff,

                v.

HON(S). JANET DIFIORE, ALAN
SCHEINKMAN (2ND DEPT.), ELIZABETH
GARRY (3RD DEPT.), GERALD WHELAN (4TH
DEPT.), LAWRENCE MARKS (NYS OFFICE
OF COURT ADMINISTRATION), JORGE
DOPICO & ERNEST CALLAZO (1ST DEPT.
ATTORNEY GRIEVANCE COMMITTEE),

                and

RICHARD SUPPLE, HINSHAW &
CULBERTSON LLP, O. LEE SQUITIERI, ESQ.,
SQUITIERI & FEARON, LLP, JORGE
DOPICO, ERNEST CALLAZO, ALAN
FRIEDBERG, SHERRY COHEN, THOMAS
CAHILL (deceased), ORLANDO REYES,
JAMES T. SHED, HON(S). LUIS GONZALEZ,
JONATHAN LIPPMAN, PETER TOM,
HERAING PANEL IV, LAUREN HOLMES,
AND DOES 10-10, inclusive,

                                        Defendants.

---

**MEMORANDUM AND ORDER**

19-CV-4739 (LDH) (ST)

---

LaShann DeArcy Hall, United States District Judge:

        Plaintiff Amy R. Gurvey, proceeding *pro se*,[1] filed the instant action against current and

former New York State judges Janet DiFiore, Lawrence K. Marks, Alan D. Scheinkman,

---

[1] Though proceeding *pro se*, Plaintiff states that she was admitted to the practice of law in New York State in 1985. (*See* Am. Compl. ¶ 75, ECF No. 10.)  Typically, when the plaintiff is proceeding *pro se*, the Court must "construe liberally" her complaint and any further pleadings, and "interpret them to raise the strongest arguments that they suggest." *Cold Stone Creamery, Inc. v. Gorman*, 361 F. App'x 282, 286 (2d Cir. 2010) (internal quotation marks and citation omitted).  However, because Plaintiff is a licensed attorney, the Court declines to apply this liberal standard. *See Breindel & Ferstendig v. Willis Faber & Dumas Ltd.*, No. 95 CIV. 7905 (SHS), 1996 WL 413727, at *5 (S.D.N.Y. July 24, 1996) ("Although pleadings by a party proceeding pro se ordinarily are construed extremely liberally, the same does not hold true where the pro se party is an attorney or law firm." (internal citations omitted)); *Cf. Larsen v. JBC Legal Grp., P.C.*, 533 F.Supp.2d 290, 295 n.2 (E.D.N.Y. 2008) ("[T]he rules afforded pro se litigants are not relaxed when that litigant is also an attorney[.]").

EXHIBIT 45
Page 645 of 808

Elizabeth A. Garry, Rolando T. Acosta, Jonathan Lippman, Luis A. Gonzalez, Peter Tom, and

Gerald Whelan; current and former attorneys of the New York Appellate Division, First

Department's Attorney Grievance Committee ("AGC") Alan W. Friedberg, Ernest J. Collazo,

Jorge Dopico, Sherry Cohen, Thomas Cahill, Orlando Reyes, James Shed, and Lauren Holmes

(collectively, the "State Defendants"); Richard Supple and Hinshaw & Culbertson LLP

("Hinshaw," and together with Defendant Supple, the "Hinshaw Defendants"); and O. Lee

Squitieri and Squitieri & Fearon, LLP ("Squitieri," and together with Defendant O. Lee Squitieri,

the "Squitieri Defendants").  Plaintiff filed an amended complaint on September 27, 2019

seeking injunctive relief and money damages.  (*See* Am. Compl.)

## BACKGROUND[2]

## I.    Plaintiff's History of Vexatious Litigation

### A.    Ethics Complaints Against the Cowan Firm

Plaintiff, who was previously admitted to the practice law in California, was admitted to

the practice law in New York in 1985.  (Am. Compl. ¶ 75.)  In 2001, Plaintiff established a

Delaware company to hold certain intellectual property rights she was developing.  (*Id.*)  In

January 2002, Plaintiff was hired as Of Counsel by the New York law firm Cowan Liebowitz &

Latman (the "Cowan firm").  *See Gurvey v. Cowan, Liebowitz & Latman, PC.*, 06-CV-1202,

2009 WL 1117278, at *1 (S.D.N.Y. Apr. 24, 2009) (citing Plaintiff's pleading referencing her

employment contract with the Cowan firm).  In May 2002, Plaintiff's employment with the

---

[2] The amended complaint is lengthy, verbose, and poorly organized.  It includes entire sections committed to
Plaintiff's interpretation of state and federal law (many of which involve misapprehensions of law) and conclusory
factual allegations.  Nonetheless, the following facts are taken from the amended complaint, and prior filings
incorporated therein, and assumed to be true for the purposes of this memorandum and order.  The Court also takes
judicial notice of certain orders entered by state and federal courts relevant to issues resolved by this memorandum
and order.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial
notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but
rather to establish the fact of such litigation and related filings.").

EXHIBIT 45
Page 646 of 808

Cowan firm was terminated, but she continued to maintain an office at the firm until August of that year. *Id*. Prior to Plaintiff's termination, the Cowan firm agreed to represent Plaintiff before the U.S. Patent and Trademark Office ("USPTO"). *Id*. Plaintiff believed that filings made by the Cowan firm on her behalf were defective and/or delayed. (*See* Am. Compl. ¶ 95.) As such, in or around 2004, she filed a series of ethics complaints with the AGC against the Cowan firm. (*Id*. ¶ 91.) Among other things, Plaintiff sought the return of certain files related to her patent applications. (*Id*.)

### B.      SDNY Suit Against the Cowan Firm

On February 15, 2006, Plaintiff brought suit in the United States District Court for the Southern District of New York (the "SDNY Action") against the Cowan firm and its attorneys in connection with their representation of her before the USPTO. (*Id*. ¶ 95.) In that suit, Plaintiff alleged that, among other things, the Cowan firm abandoned her patent applications and failed to disclose admitted conflicts of interest. (*Id*.) Plaintiff sought damages for alleged spoliation of documents and the return of her complete patent files. (*Id*.) The Hinshaw Defendants represented the Cowan firm in the SDNY Action. (*Id*. ¶ 97.) According to Plaintiff, the Hinshaw Defendants had previously served on the AGC, and thus, had a conflict of interest in representing the Cowan firm. (*Id*.)

### C.      Supreme Court Suit Against the Squitieri Defendants

The Squitieri Defendants represented Plaintiff in the SDNY Action. *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, 06-CV-1202 (LGS) (HBP), 2013 WL 3718071, at *15 (S.D.N.Y. July 15, 2013). At some point, Plaintiff's relationship with Squitieri Defendants soured. *See id*. Although the relationship ended, Plaintiff alleged Squitieri did not return her files. *Id*. As a result, Plaintiff filed suit against the Squitieri Defendants in New York Supreme Court, New

3

EXHIBIT 45
Page 647 of 808

York County for legal malpractice and breach of fiduciary duty. *Id*. The mater was ultimately resolved by order of the court directing the Squitieri Defendants "to produce to plaintiff all available emails and electronic files concerning their representation of plaintiff between 2007 and 2010[.]" *See Gurvey v. Squitieri and Fearon, LLP*, No. 102516/12, slip op. (N.Y. Sup. Ct. Apr. 30, 2013). Nevertheless, Plaintiff moved for a writ of replevin in the SDNY Action seeking the return of her files from the Squitieri Defendants. *See Gurvey*, 2013 WL 3718071 at *15. The court found Plaintiff's replevin motion was moot in light of the New York Supreme Court's decision. *Id*. The court further noted that "[e]ven if [Plaintiff's] application for a writ of replevin were not moot, it would be barred by the doctrine of *res judicata*, because an identical motion has also been made and ruled upon in her lawsuit . . . in the Southern District of California." *Id*. at *15 n.5 (citing *Gurvey v. Legend Films, Inc.*, No. 3:09-CV-00942(AJB), 2013 WL 1883229, at *1–2 (S.D. Cal. May 3, 2013)).

### D.    Housing Litigation

Sometime around 2002, Plaintiff became embroiled in litigation with her landlord wherein she claimed that she was fraudulently induced to vacate her federally subsidized Battery Park City apartment (the "Housing Litigation"). *See In re Gurvey*, 958 N.Y.S.2d 5, 5 (App. Div. 2012) (summarizing litigation). The Housing Litigation resulted in, among other things, three state court decisions imposing monetary sanctions against Plaintiff totaling $8,783. *Id*. In imposing the sanctions, the court concluded that they were warranted due to Plaintiff's "years of vituperative litigation, frivolous motion practice, and intentional misrepresentations to the court." *Id*. at 6 (internal quotations marks omitted). Indeed, the court concluded that Plaintiff's conduct was "indicative of harassment and an abuse of the judicial process," "mean spirited and

4

EXHIBIT 45
Page 648 of 808

vexatious," and that her "inappropriate use of the courts" resulted in "needless expense in the defense of a frivolous lawsuit." *Id.* at 5–6.

E.    **Disciplinary Proceedings Against Plaintiff**

In or about April 2005, the AGC[3] commenced a disciplinary proceeding against Plaintiff for violations of the Code of Professional Responsibility allegedly committed by her during the Housing Litigation. *Id.* In December 2011, the AGC moved pursuant to 22 New York Codes, Rules, and Regulations § 605.15 to suspend Plaintiff's license to practice law for one year, arguing that "whether [Plaintiff] was in active practice or not, she engaged in a long pattern of frivolous litigation and willfully disregarded judicial orders imposing sanctions." *Id.* In a decision dated December 4, 2012, the New York Appellate Division, First Department ("First Department") granted the AGC's motion, suspended Plaintiff from practicing law in New York for six months, and required Plaintiff to submit proof that she had paid the sanctions imposed during the Housing Litigation before seeking reinstatement. *Id.* at 7. In turn, Plaintiff filed suit against the Hon. Luis A Gonzalez, Chief Justice of the First Department, the Hon. Jonathan Lippman, Chief Justice of the New York Court of Appeals, and several AGC officers (including Defendants DoPico, Cahill, Reyes, Shed, and Tom) in federal court seeking to vacate the First Department's order suspending her from the practice of law; reinstatement; and unspecified money damages. *See Weissbrod v. Gonzalez*, 13-CV-2565 (JMF), 2013 WL 12084506 (S.D.N.Y. May 2, 2013), *aff'd*, 576 F. App'x 18 (2d Cir. 2014). The court found that Plaintiff's claims challenging the AGC's discipline imposed against her were barred by the *Rooker-Feldman* doctrine. *Id.* at *2. Further, the court found that Plaintiff's claims against the

---

[3] Formerly known as the First Department's Departmental Disciplinary Committee.

5

EXHIBIT 45
Page 649 of 808

individual defendants were precluded under judicial immunity or quasi-judicial immunity.  *Id*. at
*2–3.

## II.    The Amended Complaint

On September 27, 2019, Plaintiff filed an amended complaint in this action incorporating
by reference her prior filings with this Court and filings made in the above-mentioned
proceedings.  (*See generally* Am. Compl.)  According to Plaintiff, beginning in 2005, AGC
officers and staff attorneys created "forged and perjured documents and inserted these documents
into [her] . . . bar files."  (*Id.* ¶¶ 45–46.)  She further alleges that the Squitieri Defendants had
access to and altered her files in the attorney discipline proceedings against her.  (*Id.* ¶ 71.)
Plaintiff contends that the Hinshaw Defendants and Squitieri Defendants conspired with the
AGC to corrupt her disciplinary proceedings.  (*Id.* ¶¶ 46, 62, 90.)  Plaintiff maintains that this
conduct was done in retaliation because she filed ethics complaints against the Cowan firm.  (*Id.*
¶ 40.)

Plaintiff also challenges the constitutionality of New York's Judiciary Law § 90 and Part
1240 of Title 22 of the N.Y.C.R.R. ("Part 1240") related to attorney discipline and
simultaneously complains that these provisions were not adhered to in her disciplinary
proceedings.  (*Id.* ¶¶ 30, 55.)  In particular, Plaintiff alleges that Defendant Hon. Luis A.
Gonzalez failed to supervise AGC attorneys and did not have jurisdiction to preside over
Plaintiff's ethics proceedings.  (*Id.* ¶ 17.)  Finally, Plaintiff challenges the First Department's
jurisdiction to institute the disciplinary proceedings in the first instance.  (*Id.* ¶¶ 10, 48.)

Plaintiff demands injunctive and declaratory relief as well as unspecified monetary
damages.  (*Id.* ¶¶ xi–xx, 145, 148.)  She asks this Court to compel state court judges to vacate
certain state court orders, reopen the disciplinary proceedings against her, produce records from

EXHIBIT 45
Page 650 of 808

those proceedings and her bar files, and reopen ethics complaints she filed against the Squitieri

and Hinshaw Defendants.  (*Id.* ¶¶ 150, (b), (d), (f)–(g).)  She seeks an order compelling the New

York Office of Court Administration to produce the legislative history and drafting notes for

"Judiciary Law (JL) Part 1240."  (*Id.* ¶ 57.)  She asks this Court to intervene in the SDNY

Action, by issuing an order disqualifying Defendants Richard Supple and Hinshaw as the Cowan

firm's counsel; compelling the Cowan firm to return her patent and inventorship files; and

compelling the Squitieri Defendants to give Plaintiff files related to their representation of her,

including communications between Defendant Squitieri and opposing counsel.  (*Id.* ¶¶ 77–80,

99, (i).)  Finally, Plaintiff seeks a declaration that State Defendants "have imposed and continue

to impose unconstitutional protocols against [her] since 2004."  (*Id.* ¶ (a).)

## DISCUSSION

It is impossible to discern with certitude what claims are being advanced by Plaintiff.[4]

That said, at various points the amended complaint makes opaque references to claims for

violations of: the First and Fourteenth Amendments brought pursuant to 42 U.S.C. § 1983, (Am.

Compl. ¶¶ ii, xii, xiii, 22, 87–88); the Racketeer Influenced and Corrupt Organizations Act

("RICO"), (*Id.* ¶¶ x, 40, 62, 70, 146); the Freedom of Information Act ("FOIA"), (*Id.* ¶¶ xiv, 57,

156); New York Rules for Attorney Disciplinary Matters, (*Id.* at ¶¶ iii, iv, vi, viii, ix, xiv); and

state law tort claims, including defamation, (*Id.* ¶¶ xviii, 61, 140), intentional infliction of

emotional distress, (*Id.* ¶¶ xix, 25), aiding and abetting fraud (*Id.* ¶¶ viii), and abuse of process

(*Id.* ¶¶ xviii, 9).

"[D]istrict courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff

has paid the required filing fee." *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362,

---

[4] The amended complaint does not set forth separate claims for relief as required by Fed. R. Civ. P. 8(a)(2).

7

EXHIBIT 45
Page 651 of 808

364 (2d Cir. 2000).[5]  An action is frivolous when it is "based on an indisputably meritless legal

theory"—that is, when it "lacks an arguable basis in law . . . , or [when] a dispositive defense

clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.*, 141 F.3d

434, 473 (2d Cir. 1998).  Moreover, "[a] complaint will be dismissed as 'frivolous' when 'it is

clear that the defendants are immune from suit.'"  *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir.

1999) (*per curium*) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).  There can be no

question—this action is frivolous.

## I.    Plaintiff's Claims Against the State Defendants

As best as the Court can glean, Plaintiff generally alleges the State Defendants

improperly carried out their duties (or failed to do so) in violation of Plaintiff's rights under the

First and Fourteenth Amendments of the United States Constitution and the New York Rules for

Attorney Disciplinary Matters.  (*Id*. ¶¶ iii–iv, vi, viii, xii–xiii, 2–5, 8–12, 17–18, 21–22, 39, 41,

60, 66.)  Plaintiff also alleges the State Defendants defamed Plaintiff and intentionally inflicted

emotional distress through "malicious and abhorrent abuse of process[.]"  (*Id*. ¶ xix; *see also* ¶¶

xviii, 25.)  Finally, Plaintiff seeks FOIA orders against certain State Defendants to compel the

production of legislative drafting notes.  (*Id*. ¶¶ xiv, 57, 156.)  These claims are barred.

As a matter of law, the State Defendants are immune from suit.  Judges are immune from

suit for judicial acts performed in their judicial capacity.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991)

("[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages."

(citation omitted)).  This absolute immunity extends to "certain others who perform functions

closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985).

---

[5] The State Defendants and the Hinshaw Defendants have separately brought motions to dismiss the amended
complaint, which set out some of the bases for dismissal addressed herein.  (*See* ECF Nos. 47, 56.)  However,
because the Court can dismiss the claims *sua sponte* as frivolous, it does not reach a decision on those motions.

EXHIBIT 45
Page 652 of 808

Relevant here, courts have recognized that the AGC is "part of the judicial arm of the state of New York." *Thaler v. Casella*, 960 F. Supp. 691, 700 (S.D.N.Y. 1997). Accordingly, the AGC's staff-counsel are entitled to absolute immunity from suit, because they act in a "'quasi-public adjudicatory or prosecutorial capacity.'" *Id.* (quoting *Barbara v. N.Y. Stock Exchange, Inc.*, 99 F.3d 49, 58 (2d Cir. 1996)).

According to the amended complaint, the State Defendants: improperly handled Plaintiff's ethics complaints (Am. Compl. ¶¶ 4, 46, 52); failed to supervise the AGC staff (*Id.* ¶ 8); improperly exercised jurisdiction over her conduct and filings, at times through forgery and perjury (*Id.* ¶¶ 3, 9–10, 46, 48, 59, 60, 67); improperly transferred her complaints to the purportedly wrong jurisdiction (*Id.* ¶ 11); improperly disclosed her confidential information and files (*Id.* ¶¶ 14, 22, 25, 142); engaged in retaliatory harassment through the issuance of sanctions (*Id.* ¶¶ 17, 22, 53); failed to properly discharge their duties under New York Rules for Attorney Disciplinary Matters (*Id.* ¶¶ 2, 24, 26, 149); engaged in an "illegal enterprise . . . in furtherance of a conspiracy" to target her and others who file ethics complaints against New York City attorneys (*Id.* ¶ 40; *see also* ¶¶ 45, 147); and aided and abetted the unlawful taking of her patent claims without just compensation (*Id.* ¶ 62). The only reasonable inference that can be drawn from these allegations is that the State Defendants' alleged wrongful conduct stems from their judicial or quasi-judicial functions. That Plaintiff alleges that the State Defendant's conduct was malicious or somehow improper is of no consequence. The immunity afforded to judges and officials "is not overcome by allegations of bad faith or malice, nor can a judge be deprived of immunity because the action he took was in error [] or was in excess of his authority." *Weissbrod*, 2013 WL 12084506, at *2 (quoting *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (per curiam))). Accordingly, the State Defendants are immune from suit.

9

EXHIBIT 45
Page 653 of 808

Even if the State Defendants were not immune from suit, Plaintiff's claims regarding past attorney disciplinary matters would be barred under the *Rooker-Feldman* doctrine.  Plaintiff requests intervention in state ethics proceedings that she commenced against Defendants Supple and Squitieri and that the AGC commenced against her.  (*See id*. at 43–44, ¶¶ (b)–(c), (g), (i), (k)–(l).)  However, under the *Rooker-Feldman* doctrine, Plaintiff is barred from bringing any claim challenging a state court decision in federal court.  *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923).  That is, *Rooker-Feldman* bars federal courts from hearing cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The doctrine bars federal jurisdiction when: (1) the plaintiff lost in state court or in a state disciplinary proceeding; (2) his or her alleged injuries were caused by the state courts' orders; (3) the state court rendered its determinations before the federal action was commenced; and (4) the plaintiff challenges the state courts' decisions.  *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (outlining the four requirements for the *Rooker-Feldman* doctrine to apply); *see also Neroni v. Zayas*, 663 F. App'x 51, 53 (2d Cir. 2016) (applying the doctrine equally to attorney disciplinary determinations).

Each of these elements are easily met here.  Plaintiff alleges that she was suspended and sanctioned by the AGC and alleges that the AGC failed to take action in response to her ethics complaints against Defendants Supple and Squitieri.  (*See, e.g.*, Am. Compl. ¶¶ (b), (g).)  Now, years later, Plaintiff seeks injunctive relief and damages for the AGC's alleged wrongdoing.  Against this backdrop, it is undeniable that the *Rooker-Feldman* doctrine applies.[6]

---

[6] The *Younger* abstention doctrine also requires federal courts to abstain from interfering with certain pending state court proceedings.  *See Younger v. Harris*, 401 U.S. 37, 43–45 (1971) (identifying the "primary sources" of the

10

EXHIBIT 45
Page 654 of 808

## II.     Plaintiff's Claims Against the Hinshaw and Squitieri Defendants

Plaintiff's claims against the Hinshaw Defendants and Squitieri Defendants are barred by

the doctrine of *res judicata* which "protect[s] parties from having to relitigate identical claims or

issues and . . . promote[s] judicial economy." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162

F.3d 724, 731 (2d Cir. 1998).  In particular, *res judicata* bars subsequent litigation if: "(1) the

previous action involved an adjudication on the merits; (2) the previous action involved the

[parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action

were, or could have been, raised in the prior action."  *Monahan v. N.Y.C. Dep't of Corrs.*, 214

F.3d 275, 285 (2d Cir. 2000).

Giving Plaintiff's allegations the strongest argument they can make, Plaintiff seeks to

compel the Cowan firm (who is not named as a Defendant in this action) to return her patent and

inventorship files; to compel the Squitieri Defendants to produce to her files related to their

representation of her; an order retroactively disqualifying the Hinshaw Defendants in the SDNY

Action; damages for aiding and abetting fraud and the obstruction of justice; and damages under

common law tort theories of defamation and intentional infliction of emotional distress.  These

very claims were raised in prior litigation.  Plaintiff brought a motion to disqualify the Hinshaw

Defendants in the SDNY Action and a prior New York Supreme Court action.  *See Gurvey v.*

*Cowan, Liebowitz & Latman, P.C.*, 2014 WL 6491281, at *6 (S.D.N.Y. Nov. 20, 2014);

*Weissbrod-Gurvey v. State of New York*, No. 100163/2015 (N.Y. Sup. Ct. Aug. 29, 2016).

Plaintiff's intentional tort and aiding and abetting claims against the Hinshaw Defendants were

thoroughly litigated and adjudicated in the prior New York Supreme Court action and a separate

---

"longstanding public policy against federal court interference with state court proceedings).  Relevant here, attorney
disciplinary proceedings are precisely the type of enforcement action to which *Younger* applies.  *Schorr v. Dopico*,
205 F. Supp. 3d 359, 363 (S.D.N.Y. 2016) ("Disciplinary proceedings against attorneys fall within the category of
proceedings to which *Younger* applies."), *aff'd*, 686 F. App'x 34 (2d Cir. 2017).

EXHIBIT 45
Page 655 of 808

action filed in the Southern District of New York.  *See Weissbrod-Gurvey*, No. 100163/2015;

*Weissbrod Gurvey v. Hon. Jonathan Lippman*, No. 18-cv-2206 (S.D.N.Y. June 5, 2018).  In both

cases, her claims were dismissed.  *See Weissbrod-Gurvey*, No. 100163/2015, slip op. at 8 (N.Y.

Sup. Ct. Aug. 29, 2016) (granting the Hinshaw Defendants' motion to dismiss and for filing

injunction against Plaintiff); Order of Dismissal at 2, *Weissbrod Gurvey*, No. 18-cv-2206

(S.D.N.Y. June 5, 2018), ECF No. 29 ("[T]he Court concludes that Plaintiff's allegations and

arguments are frivolous.").  With respect to the Squitieri Defendants, Plaintiff has already

successfully litigated her claim in a prior New York Supreme Court action.  *See Gurvey v.

Squitieri and Fearon, LLP*, No. 2012-102516, slip op. (N.Y. Sup. Ct. April 30, 2013).

Accordingly, Plaintiff's claims against the Hinshaw and Squitieri Defendants are barred by *res

judicata*.  To the extent Plaintiff attempts to allege new tort claims not previously alleged in prior

actions, the allegations here are impermissibly vague and simply do not state a claim.  *See* Fed.

R. Civ. P. 8(a)(2); *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (affirming district

court's dismissal of claims that were "so vague as to fail to give the defendants adequate notice

of the claims against them").  Accordingly, Plaintiff's claims against the Hinshaw Defendants

and Squitieri Defendants must be dismissed.

## III.    Filing Injunction

State Defendants and the Hinshaw Defendants separately move for a filing injunction,

barring Plaintiff from filing any civil action in this Court against them arising out of the events

alleged in the amended complaint, without prior leave of the Court.  (ECF Nos. 52, 56–14.)

"The United States Courts are not powerless to protect . . . litigants [] from the depredations of

those [] who abuse the process of the Courts to harass and annoy others with meritless, frivolous,

vexatious or repetitive [] proceedings."  *In re Martin-Trigona*, 737 F.2d 1254, 1261–62 (2d Cir.

12

EXHIBIT 45
Page 656 of 808

1984) (quoting *In Re Hartford Textile Corp.*, 659 F.2d 299, 305 (2d Cir. 1981)). Indeed, federal

courts have the "inherent authority" to "'impose sanctions against litigants who abuse the

judicial process,' and '[t]he filing of repetitive and frivolous suits constitutes the type of abuse

for which an injunction forbidding further litigation may be an appropriate sanction.'" *Vassel v.*

*Firststorm Props. 2 LLC*, 750 F. App'x 50, 52 (2d Cir. 2018) (alteration in original) (quoting

*Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996)). The Second Circuit has

identified five factors relevant to the decision to impose a filing injunction:

> "(1) the litigant's history of litigation and in particular whether it entailed vexatious,
> harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the
> litigation," including whether the litigant has "an objective good faith expectation
> of prevailing[]; (3) whether the litigant is represented by counsel; (4) whether the
> litigant has caused needless expense to other parties or has posed an unnecessary
> burden on the courts and their personnel; and (5) whether other sanctions would be
> adequate to protect the courts and other parties."

*Id.* (quoting *Safir v. U.S. Lines Inc*., 792 F.2d 19, 24 (2d Cir. 1986) (internal quotation marks

omitted)). Although the Court is loathe to enjoin a party from filing suit, this litigation cries out

for the application of an injunction. Indeed, each factor counsels in favor of the Defendants'

requests.

*First*, Plaintiff has a history of vexatious litigation. This Court would not be the first to

make such a finding. *See, e.g.*, *In re Gurvey*, 958 N.Y.S.2d at 6 (noting that Plaintiff was

"sanctioned for 'years of vituperative litigation,' frivolous motion practice, and intentional

misrepresentations to the court"). *Second*, Plaintiff brought claims already found to be barred by

immunity and *res judicata*. *See Weissbrod*, 2013 WL 12084506. *Third*, Plaintiff, an attorney, is

not entitled to any special solicitude as a *pro se* litigant. *See Larsen*, 533 F.Supp.2d at 295 n.2

(E.D.N.Y. 2008) ("[T]he rules afforded pro se litigants are not relaxed when that litigant is also

an attorney[.]"). *Fourth*, Plaintiff's repeated frivolous lawsuits are a needless imposition on

13

EXHIBIT 45
Page 657 of 808

State Defendants, the Hinshaw Defendants, and the courts.  *Fifth*, other sanctions cannot adequately protect the courts and the other parties.  Indeed, courts have already imposed monetary sanctions on Plaintiff, which did not dissuade her from commencing the instant action. Plaintiff's arguments advanced opposing the filing injunction are utterly meritless.  (*See generally* Pl.'s Mem. L. Opp. Mot. Dismiss, ECF No. 59.)

## CONCLUSION

For the foregoing reasons, the amended complaint is DISMISSED in its entirety.  State Defendants and the Hinshaw Defendants' motions for a filing injunction are GRANTED. Defendants' motions to dismiss the amended complaint are DISMISSED as MOOT.  Plaintiff is barred from filing any civil action in the Eastern District of New York against the State Defendants or the Hinshaw Defendants arising out of the events alleged in the amended complaint, without prior leave of the Court.


                                          SO ORDERED.


Dated: Brooklyn, New York                 /s/ LDH_____
       September 30, 2021                 LaSHANN DeARCY HALL
                                          United States District Judge

EXHIBIT 45
Page 658 of 808

EXHIBIT 46

EXHIBIT 46

6/21/23, 4:08 PM    Case 2:23-cv-04381-MEMF-E    Eastern District of New York Live Database 1.7 Revision 1.2 Page 155 of 303    Page
                                               Document 22-6    Filed 09/08/23    ID #:1058

CLOSED,NPROSE

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:19-cv-04739-LDH-ST

Gurvey v. Garry et al

Assigned to: Judge LaShann DeArcy Hall

Referred to: Magistrate Judge Steven Tiscione

Cause: 42:1983 Civil Rights Act

Date Filed: 08/16/2019

Date Terminated: 09/30/2021

Jury Demand: Plaintiff

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: Federal Question

**Plaintiff**

**Amy R. Gurvey**                    represented by    **Amy R. Gurvey**

7302 Woodstone Circle

Princeton, NJ 08540

973-655-0991

PRO SE

V.

**Defendant**

**Hon. Elizabeth A. Garry**          represented by    **Michael A. Berg**

Office of the NYS Attorney General

Litigation Bureau

28 Liberty Street

New York, NY 10005

(212)416-8651

Fax: (212)416-6075

Email: michael.berg@ag.ny.gov

*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Defendant**

**Hon. Gerald Whelan**

**Defendant**

**Hon. Alan Scheinkman**             represented by    **Michael A. Berg**

(See above for address)

*ATTORNEY TO BE NOTICED*

**Defendant**

**Hon. Rolando Acosta**              represented by    **Michael A. Berg**

(See above for address)

*ATTORNEY TO BE NOTICED*

**Defendant**

**Chief Counsel Jorge Dopico**       represented by    **Michael A. Berg**

(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Chief Adm. Officer Lawrence Marks**                represented by   **Michael A. Berg**
                                                                     (See above for address)
                                                                     *ATTORNEY TO BE NOTICED*

**Defendant**

**Luis Gonzalez**                                    represented by   **Michael A. Berg**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**Defendant**

**Peter Tom**                                        represented by   **Michael A. Berg**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**Defendant**

**Jonathan Lippman**                                 represented by   **Michael A. Berg**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**Defendant**

**Alan Friedberg**                                   represented by   **Michael A. Berg**
                                                                     (See above for address)
                                                                     *ATTORNEY TO BE NOTICED*

**Defendant**

**Lauren Holmes**

**Defendant**

**Richard Supple**                                   represented by   **Nicole Feder**
                                                                     L'Abbate Balkan Colavita & Contini
                                                                     3 Huntington Qualdrangle, Suite 102-S
                                                                     Melville, NY 11747
                                                                     516-294-8844
                                                                     Email: nfeder@lbcclaw.com
                                                                     *ATTORNEY TO BE NOTICED*

**Defendant**

**Hinshaw & Culberston**                             represented by   **Nicole Feder**
                                                                     (See above for address)
                                                                     *ATTORNEY TO BE NOTICED*

**Defendant**

**O. Lee Squitieri, Esq.**

**Defendant**

EXHIBIT 46
Page 661 of 808

Squitieri & Fearon, LLP

**Defendant**

**Does I-X**
*inclusive*

**Defendant**

**Janet DiFiore**                                        represented by   **Michael A. Berg**
                                                                          (See above for address)
                                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Ernest Callazo**                                       represented by   **Michael A. Berg**
                                                                          (See above for address)
                                                                          *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/16/2019 | | FILING FEE: $ 400, receipt number 4653142790 (Bowens, Priscilla) (Entered: 08/16/2019) |
| 08/16/2019 | 1 | COMPLAINT against All Defendants, filed by Amy R. Gurvey. (Attachments: # 1 Civil Cover Sheet) (Bowens, Priscilla) Modified on 8/16/2019 (Bowens, Priscilla). (Entered: 08/16/2019) |
| 08/16/2019 | 2 | Unsigned Order to Show Cause by Amy R. Gurvey (Bowens, Priscilla) (Entered: 08/16/2019) |
| 08/16/2019 | 3 | Summons Issued as to All Defendants. (Bowens, Priscilla) (Entered: 08/16/2019) |
| 08/16/2019 | 4 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences. Do NOT return or file the consent <u>unless</u> all parties have signed the consent.** (Bowens, Priscilla) (Entered: 08/16/2019) |
| 08/16/2019 | 5 | ORDER: As set forth in the Court's August 16, 2019 Order, Plaintiff's August 16, 2019 request for a hearing and preliminary injunctive relief is DENIED 1 . See attached Order for details. The Court will continue to review the Complaint. Ordered by Judge LaShann DeArcy Hall on 8/16/2019. (Ramesar, Thameera) (Entered: 08/16/2019) |
| 08/30/2019 | 6 | Letter MOTION for Reconsideration by Amy R. Gurvey. (Attachments: # 1 Exhibits) (Ramesar, Thameera) (Entered: 09/05/2019) |
| 09/05/2019 | 7 | Letter dated 9/5/2019 from Amy R. Gurvey to Judge DeArcy Hall regarding 6 MOTION for Reconsideration as to submitting a duplicate. (Ramesar, Thameera) (Entered: 09/06/2019) |
| 09/27/2019 | 8 | Letter *re Status of Service and Pleading* by Rolando Acosta, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Lauren Holmes, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom, Gerald Whelan (Berg, Michael) (Entered: 09/27/2019) |

EXHIBIT 46
Page 662 of 808

| 09/27/2019 | 9 | SUMMONS Returned Executed by Amy R. Gurvey. Rolando Acosta served on 9/25/2019, answer due 10/16/2019; Jorge Dopico served on 9/25/2019, answer due 10/16/2019; Alan Friedberg served on 9/25/2019, answer due 10/16/2019; Elizabeth A. Garry served on 9/25/2019, answer due 10/16/2019; Luis Gonzalez served on 9/25/2019, answer due 10/16/2019; Hinshaw & Culberston served on 9/25/2019, answer due 10/16/2019; Lauren Holmes served on 9/25/2019, answer due 10/16/2019; Jonathan Lippman served on 9/25/2019, answer due 10/16/2019; Lawrence Marks served on 9/25/2019, answer due 10/16/2019; Alan Scheinkman served on 9/25/2019, answer due 10/16/2019; O. Lee Squitieri, Esq served on 9/25/2019, answer due 10/16/2019; Squitieri & Fearon, LLP served on 9/25/2019, answer due 10/16/2019; Richard Supple served on 9/25/2019, answer due 10/16/2019; Peter Tom served on 9/25/2019, answer due 10/16/2019; Gerald Whelan served on 9/25/2019, answer due 10/16/2019. (Ramesar, Thameera) (Entered: 09/30/2019) |
| 09/27/2019 | 10 | AMENDED COMPLAINT against All Defendants, filed by Amy R. Gurvey. (Attachments: # 1 Cont.) (Ramesar, Thameera) (Entered: 10/01/2019) |
| 10/16/2019 | 11 | NOTICE of Appearance by Michael A. Berg on behalf of Peter Tom (aty to be noticed) (Berg, Michael) (Entered: 10/16/2019) |
| 10/16/2019 | 12 | MOTION for pre motion conference , MOTION for Extension of Time to File Answer *or Motion to Dismiss* by Peter Tom. (Attachments: # 1 Prior Court Order) (Berg, Michael) (Entered: 10/16/2019) |
| 10/16/2019 | 13 | Letter dated October 4, 2019 from pro se plaintiff Amy R. Gurvey re: case (See letter for further details) (Almonte, Giselle) (Entered: 10/22/2019) |
| 10/28/2019 | 14 | Letter MOTION for Leave to File Document *Pre-Answer Motion to Dismiss* by Hinshaw & Culberston, Richard Supple. (Attachments: # 1 Exhibit A - Decision dated 8/25/16, # 2 Exhibit B - Order of Dismissal, # 3 Exhibit C - Court of Appeals Decision, # 4 Exhibit D - Decision dated 2/10/16) (Feder, Nicole) (Entered: 10/28/2019) |
| 11/22/2019 | 15 | SUMMONS Returned Executed by Amy R. Gurvey. Jorge Dopico served on 10/15/2019, answer due 11/5/2019; Luis Gonzalez served on 10/11/2019, answer due 11/1/2019; Hinshaw & Culberston served on 9/30/2019, answer due 10/21/2019; Jonathan Lippman served on 10/11/2019, answer due 11/1/2019; O. Lee Squitieri, Esq served on 9/30/2019, answer due 10/21/2019; Squitieri & Fearon, LLP served on 9/30/2019, answer due 10/21/2019; Richard Supple served on 9/30/2019, answer due 10/21/2019; Peter Tom served on 10/11/2019, answer due 11/1/2019. (Ramesar, Thameera) (Entered: 11/25/2019) |
| 11/22/2019 | 16 | Letter MOTION for pre motion conference *along with Opposition re Defendants filing injunction and Application seeking ECF-filing privileges* by Amy R. Gurvey. (Ramesar, Thameera) (Entered: 11/25/2019) |
| 12/02/2019 | 17 | Letter MOTION for Leave to File Document *Pre-Answer Motion to Dismiss* by Hinshaw & Culberston, Richard Supple. (Feder, Nicole) (Entered: 12/02/2019) |
| 12/05/2019 | 18 | NOTICE of Appearance by Michael A. Berg on behalf of Jorge Dopico, Jonathan Lippman (aty to be noticed) (Berg, Michael) (Entered: 12/05/2019) |
| 12/05/2019 | 19 | MOTION for pre motion conference by Jorge Dopico, Jonathan Lippman. (Berg, Michael) (Entered: 12/05/2019) |
| 12/05/2019 | 20 | SUMMONS Returned Executed by Amy R. Gurvey. Ernest Callazo served on 11/26/2019, answer due 12/17/2019; Janet DiFiore served on 11/27/2019, answer due 12/18/2019; Alan Friedberg served on 11/26/2019, answer due 12/17/2019; Elizabeth A. Garry served on 11/27/2019, answer due 12/18/2019; Lawrence Marks served on 11/25/2019, answer due 12/16/2019; Alan Scheinkman served on 12/4/2019, answer due 12/25/2019. (Ramesar, Thameera) (Entered: 12/06/2019) |

EXHIBIT 46
Page 663 of 808

| 12/05/2019 | 21 | Summons Returned Unexecuted by Amy R. Gurvey as to Rolando Acosta. Incorrect service to "Roberto Acosta". (Ramesar, Thameera) (Entered: 12/06/2019) |
|---|---|---|
| 12/13/2019 | 22 | Unsigned Order to Show Cause by Amy R. Gurvey, US Patentee, PRO SE. (Love, Alexis) (Entered: 12/17/2019) |
| 12/30/2019 | 23 | Summons Returned Unexecuted by Amy R. Gurvey as to Richard Supple, incorrect name. (Ramesar, Thameera) (Entered: 01/03/2020) |
| 01/10/2020 | 24 | Letter from Amy R. Gurvey to Ms. Fazzone and Mr. Mac Donald in regards to missing entries. (Ramesar, Thameera) (Entered: 01/14/2020) |
| 01/27/2020 | 25 | Letter from Amy R. Gurvey to Judge DeArcy Hall regarding 23 Affidavit and the execution of the summons. (See letter for details). (Ramesar, Thameera) (Entered: 01/30/2020) |
| 02/21/2020 | 26 | NOTICE of 'Motion to enter Default Judgment on the pleadings and summary judgment' filed by Amy R. Gurvey. (Ramesar, Thameera) (Entered: 02/21/2020) |
| 02/21/2020 | 27 | Letter *Response to Plaintiff's Letter of Feb. 21, 2020* by Jorge Dopico, Jonathan Lippman, Peter Tom (Berg, Michael) (Entered: 02/21/2020) |
| 03/12/2020 | 28 | Letter response to Defendant 27 Letter, filed by Amy R. Gurvey. (Ramesar, Thameera) (Entered: 03/13/2020) |
| 03/31/2020 | | ORDER: On August 16, 2019, the Court denied plaintiff's request for a hearing and preliminary injunctive relief seeking intervention into state court proceedings. Plaintiff filed a letter motion on August 30, 2019, requesting that the Court reconsider its August 16, 2019 order. Plaintiff has failed to make the substantial showing necessary to warrant reconsideration. She has not demonstrated an intervening change of controlling law, the availability of new evidence not previously available, or the need to correct clear error or prevent manifest injustice. See Salveson v. JP Morgan Chase & Co., 663 F. App'x 71, 75 (2d Cir. 2016) ("The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."). For these reasons, Plaintiff's motion for reconsideration 6 is DENIED. Local Civ. R. 6.3; Fed. R. Civ. 59(e). Ordered by Judge LaShann DeArcy Hall on 3/31/2020. (Williams, Erica) (Entered: 04/06/2020) |
| 04/02/2020 | 29 | Letter dated March 30, 2020 from Amy R. Gurvey to Judge DeArcy Hall regarding a response to Defendant seeking a conference call. (*See letter for details*). (Ramesar, Thameera) (Entered: 04/03/2020) |
| 08/21/2020 | 30 | Letter from Amy Gurvey to Judge DeArcy Hall regarding 'docketing deficiencies in the above case.' (Ramesar, Thameera) (Entered: 08/24/2020) |
| 08/21/2020 | 31 | Letter from Amy Gurvey to Judge DeArcy Hall requesting the Court 'Certify Interlocutory Appeal.' (Ramesar, Thameera) (Entered: 08/24/2020) |
| 09/02/2020 | 32 | Letter (*second*) from Amy Gurvey to Judge DeArcy Hall requesting the Court 'Certify Interlocutory Appeal.' (Ramesar, Thameera) (Entered: 09/04/2020) |
| 09/08/2020 | | ORDER: Plaintiff's request 32 that the Court certify interlocutory appeal of its August 16, 2019 order denying Plaintiff's request for a hearing and preliminary injunctive relief is DENIED. Ordered by Judge LaShann DeArcy Hall on 9/8/2020. (Williams, Erica) (Entered: 09/08/2020) |
| 09/08/2020 | | ORDER: The parties' letter motions for a pre-motion conference 12 14 16 17 19 are DENIED. The parties shall brief Defendants' motion to dismiss in accordance with this Court's Individual Practices. Defendants shall serve Plaintiff with a motion to dismiss by |

EXHIBIT 46
Page 664 of 808

| | | |
|---|---|---|
| | | September 29, 2020. Plaintiff shall serve Defendant with opposition papers by October 20, 2020. Defendant shall serve Plaintiff with one consolidated reply, if any, and file the fully briefed motion by October 27, 2020. As a courtesy, unless objected to by the parties, the Court asks that the parties file the motion only once it is fully briefed. Defendant shall provide the Court with a courtesy copy of the filed, stamped, fully briefed motion, within two business days of filing. Memoranda of law and courtesy copies shall comply with this Court's Individual Practices. Ordered by Judge LaShann DeArcy Hall on 9/8/2020. (Williams, Erica) (Entered: 09/08/2020) |
| 09/24/2020 | 33 | NOTICE of Appearance by Michael A. Berg on behalf of Rolando Acosta, Ernest Callazo, Janet DiFiore, Alan Friedberg, Lawrence Marks, Alan Scheinkman (aty to be noticed) (Berg, Michael) (Entered: 09/24/2020) |
| 09/24/2020 | 34 | MOTION for Extension of Time to File Answer *or Motion to Dismiss* by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom. (Berg, Michael) (Entered: 09/24/2020) |
| 09/28/2020 | | ORDER: Defendants' motion 34 for extension of time to file is GRANTED. Defendants shall serve Plaintiff with their motions to dismiss by October 20, 2020. Plaintiff shall serve Defendants with opposition papers by November 10, 2020. Defendants shall serve Plaintiff with their consolidated replies, if any, and file the fully briefed motions by November 17, 2020. State Defendants, as defined in Defendants' September 24, 2020 request, are granted leave to file a separate moving and reply brief. As a courtesy, unless objected to by the parties, the Court asks that the parties file the motions once they are fully briefed. Defendants shall provide the Court with a courtesy copy of the filed, stamped, fully briefed motions, within two business days of filing. Memoranda of law and courtesy copies shall comply with this Court's Individual Practices. Ordered by Judge LaShann DeArcy Hall on 9/28/2020. (Williams, Erica) (Entered: 09/28/2020) |
| 10/08/2020 | 35 | Letter dated 10/7/2020 from Amy R. Gurvey to Judge LaShann DeArcy Hall, informing the Court that "Plaintiffs application to amend her complaintfiled in June, 2020 seeking mandamus relief against the NY Court of Claims Adm. Judge Hon. Richard E. Sise in NY Claim #(s) 128261/134439 has not been adjudicated." Ms. Gurvey further states that "The State of NY and four NY agencies owe Plaintiff strict liability patent taking and infringement damages retroactive to 2011, because NY Court of Claims # (s)l28261(changed to 134439) was filed in 2017." Plaintiff also seeks Monell damages and restates her application seeking ECF filing privileges. "Plaintiff is a guardian for her mother, age 93, in Florida, and there is litigation in this matter. It is almostimpossible for Plaintiff to hand-deliver papers to this Court; and two sets of papers including Plaintiffs motion to file an amended complaint have not been adjudicated. Plaintiff also has an ADA disability and is a pro se litigant, entitled to reasonable concessions and accommodations from the Court." (Galeano, Sonia) (Entered: 10/09/2020) |
| 10/09/2020 | 36 | NOTICE of Appearance by Michael A. Berg on behalf of Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom (aty to be noticed) (Berg, Michael) (Entered: 10/09/2020) |
| 10/09/2020 | 37 | Letter by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom (Berg, Michael) (Entered: 10/09/2020) |
| 10/09/2020 | 38 | Letter *opposing motion to amend complaint* by Hinshaw & Culberston, Richard Supple (Feder, Nicole) (Entered: 10/09/2020) |
| 10/12/2020 | 39 | REPLY re 38 Letter filed by Amy R. Gurvey. (Ramesar, Thameera) (Entered: 10/14/2020) |

EXHIBIT 46
Page 665 of 808

| 11/09/2020 | 40 | Letter dated November 6, 2020 from Amy R. Gurvey to Judge DeArcy Hall opposing defendant motion's to dismiss. (Ramesar, Thameera) (Entered: 11/09/2020) |
|---|---|---|
| 11/10/2020 | 41 | Letter *Responding to Plaintiff's Letter, ECF 40* by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom (Berg, Michael) (Entered: 11/10/2020) |
| 11/10/2020 | | ORDER: Plaintiff's letter motion for extension of time 40 is GRANTED. Plaintiff shall serve Defendants with opposition papers by November 24, 2020. Defendants shall serve Plaintiff with a reply, if any, and file the fully briefed motions by December 8, 2020. No further extensions of time shall be granted. The Clerk of Court is respectfully directed to mail a copy of this order to the pro se litigant. Ordered by Judge LaShann DeArcy Hall on 11/10/2020. (Williams, Erica) (Entered: 11/10/2020) |
| 11/24/2020 | 42 | MOTION to Amend/Correct/Supplement 1 Complaint by Amy R. Gurvey. (Ramesar, Thameera) (Entered: 11/25/2020) |
| 11/30/2020 | 43 | Letter *re Service and Filing of Motion Papers* by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom (Berg, Michael) (Entered: 11/30/2020) |
| 12/02/2020 | 44 | REPLY in Opposition re 43 Letter filed by Amy R. Gurvey. (Ramesar, Thameera) (Entered: 12/02/2020) |
| 12/02/2020 | 45 | Letter *opposing request to amend complaint* by Hinshaw & Culberston (Feder, Nicole) (Entered: 12/02/2020) |
| 12/08/2020 | 46 | MOTION to Dismiss for Failure to State a Claim , MOTION to Dismiss for Lack of Jurisdiction by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom. (Berg, Michael) (Entered: 12/08/2020) |
| 12/08/2020 | 47 | MEMORANDUM in Support re 46 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction filed by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom. (Berg, Michael) (Entered: 12/08/2020) |
| 12/08/2020 | 48 | AFFIDAVIT/DECLARATION in Support re 46 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction *of Ernest Collazo* filed by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom. (Berg, Michael) (Entered: 12/08/2020) |
| 12/08/2020 | 49 | AFFIDAVIT/DECLARATION in Support re 46 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction *of Michael A. Berg* filed by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom. (Attachments: # 1 Pl.'s NY Bar Status, # 2 Pl.'s CA Bar Status, # 3 Compl.,, Weissbrod v. Gonzalez, # 4 Compl., Weissbrod v. NY, # 5 Merits Decision, Weissbrod v. NY, # 6 Filing Injunctions, Weissbrod v. NY, # 7 Motion, Gurvey v. Acosta, # 8 Petition, Gurvey v. Garry, # 9 Order, Gurvey v. Garry, # 10 Compl., Weissbrod Gurvey v. Lippman, # 11 Order, Weissbrod Gurvey v. Lippman, # 12 Letter, 1st Dep't to R. Supple) (Berg, Michael) (Entered: 12/08/2020) |

EXHIBIT 46
Page 666 of 808

| 12/08/2020 | 50 | NOTICE by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom re 46 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction (Berg, Michael) (Entered: 12/08/2020) |
|---|---|---|
| 12/08/2020 | 51 | REPLY in Support re 46 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction filed by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom. (Attachments: # 1 Certificate of Service) (Berg, Michael) (Entered: 12/08/2020) |
| 12/08/2020 | 52 | MOTION for Permanent Injunction - *Filing Injunction Against Plaintiff* by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom. (Attachments: # 1 Certificate of Service) (Berg, Michael) (Entered: 12/08/2020) |
| 12/08/2020 | 53 | MOTION to Dismiss by Hinshaw & Culberston. (Feder, Nicole) (Entered: 12/08/2020) |
| 12/08/2020 | 54 | RESPONSE in Opposition re 53 MOTION to Dismiss filed by Richard Supple. (Feder, Nicole) (Entered: 12/08/2020) |
| 12/08/2020 | 55 | REPLY in Support filed by Richard Supple. (Attachments: # 1 Exhibit Exhibit M - Order June 23, 2020, # 2 Exhibit Exhibit N - Letter dated November 25, 2018, # 3 Exhibit Exhibit O - Notice of Motion to Dismiss, # 4 Reply Memorandum of Law) (Feder, Nicole) (Entered: 12/08/2020) |
| 12/08/2020 | 56 | MOTION to Dismiss by Hinshaw & Culberston, Richard Supple. (Attachments: # 1 Exhibit A - Complaint, # 2 Exhibit B - Decision dated May 14,2013, # 3 Exhibit C - Gurvey's Complaint, # 4 Exhibit D - Decision dated August 25, 2016, # 5 Exhibit E - Decision dated February 10, 2016, # 6 Exhibit F - Decision dated April 21, 2016, # 7 Exhibit G - Complaint, # 8 Exhibit H - Order to Show Cause, # 9 Exhibit I - Decision dated June 5, 2018, # 10 Exhibit J - Decision dated February 11, 2019, # 11 Exhibit K - Amended Complaint, # 12 Exhibit L - Letter dated April 24, 2015, # 13 Notice to Pro Se Litigant, # 14 Memorandum of Law in Support) (Feder, Nicole) (Entered: 12/08/2020) |
| 12/24/2020 | 57 | NOTICE of Order To Show Cause filed by Amy R. Gurvey (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit) (Ramesar, Thameera) (Entered: 12/28/2020) |
| 01/04/2021 | 58 | Letter *in Response to Unsigned Order to Show Cause* by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom (Berg, Michael) (Entered: 01/04/2021) |
| 01/05/2021 | 59 | RESPONSE to Motion re 56 MOTION to Dismiss filed by Amy R. Gurvey. (Attachments: # 1 Exhibits, # 2 Exhibits, # 3 Exhibits) (Ramesar, Thameera) (Additional attachment(s) added on 1/7/2021: # 4 Exhibits, # 5 Exhibits) (Ramesar, Thameera). (Entered: 01/07/2021) |
| 01/08/2021 | 60 | Letter by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom (Berg, Michael) (Entered: 01/08/2021) |
| 01/12/2021 | 61 | REPLY to Response to Motion re 56 MOTION to Dismiss filed by Amy R. Gurvey. (Ramesar, Thameera) (Entered: 01/12/2021) |
| 02/03/2021 | 62 | Letter from Amy R. Gurvey regarding the above-captioned case. See attached. (Ramesar, Thameera) (Entered: 02/10/2021) |

EXHIBIT 46
Page 667 of 808

| 04/07/2021 | 63 | NOTICE of Change of address Once the filing has been made, you must login to www.pacer.gov and update your account. (Feder, Nicole) (Entered: 04/07/2021) |
|---|---|---|
| 07/06/2021 | 64 | Letter dated June 30, 2021 from Amy R. Gurvey to Judge LaShann DeArcy Hall, in response to Defendants' oppositions to Plaintiff's motions seeking to enter default judgment / summary judgment, submitting a notice of the New York Court of Appeals dated June 29, 2021 and Plaintiff's pending Motion for Leave to Appeal Orders of the 2d Dept. (Latka-Mucha, Wieslawa) (Entered: 07/09/2021) |
| 07/21/2021 | 65 | Letter *Response to Plaintiff's July 6, 2021 Letter* by Rolando Acosta, Ernest Callazo, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom, Gerald Whelan (Attachments: # 1 Letter to NYS Court of Appeals, # 2 Certificate of Service) (Berg, Michael) (Attachment 1 identified as malformed and replaced on 8/31/2021) (Lee, Tiffeny). (Entered: 07/21/2021) |
| 07/21/2021 | 66 | Letter from Amy R. Gurvey to Judge DeArcy Hall dated 7/9/2021 re: "Plaintiff lost her mother and is involved post mortem contested litigation in the State of Florida in two courts." (Herrera, Isaiah) (Entered: 07/26/2021) |
| 08/06/2021 | 67 | Letter from Amy R. Gurvey dated August 2, 2021, challenging the constitutionality of Judiciary Law ("JL") Section 90 and the new JL Part 1240 Amended Statutes on ground that they allow for the entry of unlawful sua sponte orders to deprive respondents of constitutional access to the courts of New York in fabricated and frivolous attorney disciplinary proceedings. DC Court of Appeals v. Feldman, 460 US 462 at 480-484 (1983) (Brennan, J.) (Brown, Marc) (Entered: 08/10/2021) |
| 08/16/2021 | 68 | NOTICE / "Plaintiff's Rule 20 Motion To Join Hon(s). Letitia James & Pamela McDevitt Under *Ex Parte* *Young*, 209 US 123 (1908) To Accept Orders For Injunctive Relief [FRCP Rule 20]" filed by *pro se* Amy R. Gurvey, dated "August 11, 2020." W/Attachments. (Latka-Mucha, Wieslawa) (Entered: 08/18/2021) |
| 08/20/2021 | 69 | Letter *re Plaintiff's Filing dated Aug. 16, 2021* by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom (Berg, Michael) (Entered: 08/20/2021) |
| 09/30/2021 | 70 | ORDER: As set forth in the attached Memorandum and Order, Plaintiff's amended complaint 10 is DISMISSED in its entirety sua sponte. The State Defendants' motion 46 to dismiss the amended complaint is DISMISSED as MOOT. The Hinshaw Defendants' motions 53 56 to dismiss and for a filing injunction is GRANTED in part. The State Defendants' motion 52 for a permanent filing injunction is GRANTED. Plaintiff is barred from filing any civil action in the Eastern District of New York against the State Defendants or the Hinshaw Defendants arising out of the events alleged in the amended complaint, without prior leave of the Court. Plaintiff's motion 42 to file a second amended complaint is DENIED. Moreover, Plaintiff's motion 68 to join Hon(s). Letitia James and Pamela McDevitt is denied. The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to the pro se litigant and close this case. Ordered by Judge LaShann DeArcy Hall on 9/30/2021. (Williams, Erica) (Entered: 09/30/2021) |
| 09/30/2021 | 71 | CLERK'S JUDGMENT, that Plaintiff's amended complaint is dismissed in its entirety sua sponte; that the State Defendants' motion to dismiss the amended complaint is dismissed as moot; that the Hinshaw Defendants' motions to dismiss and for a filing injunction is granted in part; that the State Defendants' motion for a permanent filing injunction is granted; that Plaintiff is barred from filing any civil action in the Eastern District of New York against the State Defendants or the Hinshaw Defendants arising out of the events alleged in the amended complaint, without prior leave of the Court; and that Plaintiff's motion to file a second amended complaint is denied. Signed by Douglas C. Palmer, Clerk |

| | | of Court By J. Poveda, Deputy Clerk on 9/30/2021. (Layne, Monique) (Entered: 10/01/2021) |
|---|---|---|
| 10/15/2021 | [72](#) | MOTION for Reconsideration re [71](#) Clerk's Judgment,,, *(recv'd. on 10/19/2021) filed* by Amy R. Gurvey. (Layne, Monique) (Entered: 10/19/2021) |
| 10/20/2021 | | ORDER: Defendants are directed to submit a response to Plaintiff's motion [72](#) for reconsideration, not to exceed ten (10) pages, on or before November 3, 2021. Plaintiff shall not be permitted to file a reply brief. Ordered by Judge LaShann DeArcy Hall on 10/20/2021. (Williams, Erica) (Entered: 10/20/2021) |
| 10/29/2021 | [73](#) | MEMORANDUM in Opposition *to Plaintiff's Motion for Reconsideration* filed by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom. (Attachments: # [1](#) Certificate of Service) (Berg, Michael) (Entered: 10/29/2021) |
| 11/03/2021 | [74](#) | MEMORANDUM in Opposition re [72](#) MOTION for Reconsideration re [71](#) Clerk's Judgment,,, *(recv'd. on 10/19/2021) filed* filed by Hinshaw & Culberston, Richard Supple. (Feder, Nicole) (Entered: 11/03/2021) |
| 12/16/2021 | | ORDER: By memorandum and order [70](#) dated September 30, 2021 (the "Dismissal Order"), the Court dismissed Plaintiffs amended complaint in its entirety sua sponte. On October 15, 2021, Plaintiff filed a motion [72](#) requesting that the Court reconsider the Dismissal Order pursuant to Federal Rule of Civil Procedure 59(e). Plaintiff has failed to make the substantial showing necessary to warrant reconsideration. Plaintiff has not demonstrated "an intervening change of controlling law, the availability of new evidence not previously available, or the need to correct clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). Rather, much of Plaintiff's motion attempts to reframe theories already considered and rejected by the Court. See Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (reconsideration is not a vehicle for "relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."). Accordingly, Plaintiff's motion [72](#) is DENIED. Ordered by Judge LaShann DeArcy Hall on 12/16/2021. (Williams, Erica) (Entered: 12/16/2021) |
| 12/27/2021 | [75](#) | MOTION to Vacate [71](#) Clerk's Judgment And Replead Amended Complaint Post Judgement *W/Exhs. and Certificate of Service* by Amy R. Gurvey. (Layne, Monique) (Entered: 12/28/2021) |
| 12/29/2021 | [76](#) | RESPONSE in Opposition re [75](#) MOTION to Vacate [71](#) Clerk's Judgment,,, *W/Exhs. and Certificate of Service* filed by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom. (Berg, Michael) (Entered: 12/29/2021) |
| 01/11/2022 | | ORDER: Plaintiff's motion [75](#) , brought pursuant to Federal Rules of Civil Procedure 59 and 60, fails to make the substantial showing necessary to warrant reconsideration or vacatur. Specifically, Plaintiff has not demonstrated "an intervening change of controlling law, the availability of new evidence not previously available, or the need to correct clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). Further, Plaintiff has not demonstrated that extraordinary circumstances warrant relief under Federal Rule of Civil Procedure 60(b). Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012). Rather, Plaintiff's motion attempts to reframe theories already considered and rejected by the Court. See Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (reconsideration is not a vehicle for "relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."); see also Maldonado v. Loc. 803 I.B. of T. Hlth. & Welfare Fund, 490 F. App'x 405, 406 (2d Cir. 2013) (A Rule 60(b) |

EXHIBIT 46

| | | |
|---|---|---|
| | | motion is properly denied where it seeks only to relitigate issues already decided.) Accordingly, Plaintiff's motion 75 is DENIED. Ordered by Judge LaShann DeArcy Hall on 1/11/2022. (Williams, Erica) (Entered: 01/11/2022) |
| 03/09/2022 | 77 | MOTION to Amend/Correct/Supplement 10 Amended Complaint / "Notice of Motion to Replead Post Judgment Amended Complaint and [MOTION to] Vacate Orders Pursuant to FRCP Rules 15, 60(b)(1)-(6)" filed by *pro se* Amy R. Gurvey, dated 3/6/2022. W/Attachments. (Latka-Mucha, Wieslawa) *Modified.* (Entered: 03/10/2022) |
| 03/11/2022 | 78 | MEMORANDUM in Opposition *to Plaintiff's Third Motion for Reconsideration* filed by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom. (Berg, Michael) (Entered: 03/11/2022) |
| 03/17/2022 | 79 | REPLY To Motion To Replead Post Judgment Amended Complaint And Vacate Orders Pursuant To FRCP Rules 15 60(b)(1)-(6), filed by petitioner Amy R. Gurvey. (Layne, Monique) (Entered: 03/17/2022) |
| 04/08/2022 | 80 | Letter MOTION to Vacate *(Seeking permission to vacate orders of the Appellate Division First Dept. entered December 4, 2012 and April 21, 2016), filed* by Amy R. Gurvey. (Layne, Monique) (Entered: 04/08/2022) |
| 10/02/2022 | 81 | Letter MOTION for Discovery *(Seeking discovery or pre-trial conferenc on Pltff's repleaded amennded complaint post judgment) (Recv'd for filing 10/2/2022)filed* by Amy R. Gurvey. (ML) (Entered: 10/07/2022) |
| 10/14/2022 | | ORDER: In direct contravention of this Court's memorandum and order 70 dated September 30, 2021 (Dismissal Order), Plaintiff filed three new motions 77, 80 and 81 seeking to relitigate its claims that have already been resolved. This Court made clear in its Dismissal Order that Plaintiff's amended complaint was dismissed in its entirety sua sponte and denied Plaintiff's motion to file a second amended complaint. This Court further ordered that Plaintiff is barred from filing any civil action in the Eastern District of New York against the State and Hinshaw Defendants arising out of the events alleged in the amended complaint without prior leave of the Court. Plaintiff's motions 77, 80 and 81 are DENIED. Plaintiff may not attempt to circumvent this Courts prior Orders and relitigate its claims in a case that was deemed close. Ordered by Judge LaShann DeArcy Hall on 10/14/2022. (EW) (Entered: 10/14/2022) |
| 11/15/2022 | 82 | Letter MOTION for Hearing re 10 Amended Complaint *(Request for Conference on Amended Complaint Post Judgment Based on Issuance of US Patent 11403566 August 2, 2022)* by Amy R. Gurvey. (ML) (Entered: 11/17/2022) |
| 11/16/2022 | 84 | Letter dtd. 11/9/2022 from Amy R. Gurvey to Judge DeArcy Hall, entitled Second Request for Conference on Amended Complaint Post Judgment Based on Issuance of U.S. Patent 11403566 on August 2, 2022. (w/Cert. of Service). Address previously updated. (ML) (Entered: 11/18/2022) |
| 11/18/2022 | 83 | RESPONSE to Motion re 82 Letter MOTION for Hearing re 10 Amended Complaint *(Request for Conference on Amended Complaint Post Judgment Based on Issuance of US Patent 11403566 August 2, 2022)* filed by Rolando Acosta, Ernest Callazo, Janet DiFiore, Jorge Dopico, Alan Friedberg, Elizabeth A. Garry, Luis Gonzalez, Jonathan Lippman, Lawrence Marks, Alan Scheinkman, Peter Tom. (Berg, Michael) (Entered: 11/18/2022) |
| 11/30/2022 | 85 | Mail Returned as **Undeliverable**. Judge LaShann DeArcy Hall's Electronic Order issued on October 14, 2022 sent to Amy R. Gurvey at 315 Highland Avenue, Upper Montclair, NJ 07043, returned on 11/30/2022 with postal notation "Return To Sender. Not Deliverable As Addressed. Unable To Forward." (WL) (Entered: 12/01/2022) |

EXHIBIT 46
Page 670 of 808

| 12/07/2022 | ORDER: In direct contravention of the Court's memorandum and order 70 dated September 30, 2021, Plaintiff filed a new motion 82 seeking to relitigate its claims that have already been resolved. Plaintiff's motion 82 is DENIED. Plaintiff is barred from filing any document under this case number, 19-cv-4739. Ordered by Judge LaShann DeArcy Hall on 12/7/2022. (EW) (Entered: 12/07/2022) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/21/2023 15:59:59 | | | |
| **PACER Login:** | mcrice3317 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:19-cv-04739-LDH-ST |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |

EXHIBIT 46
Page 671 of 808                12/12

EXHIBIT 47

EXHIBIT 47

Case 2:23-cv-04381-MEMF-E    Document 22-6    Filed 09/08/23    Page 168 of 303    Page
ID #:1071
Case 22-725, Document 31, 04/07/2022, 3293143, Page1 of 87

1

# NO. 20-1986

IN THE

# United States Court of Appeals for the Second Circuit

AMY R. GURVEY, *US PATENTEE,*

*Appellant-Petitioner Pro Se,*

v.

COWAN, LIEBOWITZ & LATMAN, PC,
CLEAR CHANNEL COMMUNICATIONS, INC.
LIVE NATION, INC., INSTANT LIVE CONCERTS, LLC.
NEXTTICKETING INCORPORATED, WILLIAM BORCHARD, MIDGE HYMAN,
BAILA CELEDONIA, CHRISTOPHER JENSEN, DALE HEAD, STEVE SIMON,
NICOLE ANN GORDON, SUSAN SCHICK, MICHAEL GORDON, DOES I-X
INCLUSIVE,

*Appellees-Respondents.*

## PRO SE PETITION SEEKING A WRIT OF MANDAMUS
## AGAINST SDNY AND TO VACATE MANDATES

**AMY R. GURVEY**
**US Patentee/Petitioner Pro Se**
**315 Highland Avenue**
**Upper Montclair NJ 07043**
**amyg@live-fi.com**
**PH: (917)733-9981**

| | | |
|---|---|---|
| **Hinshaw & Culberson** | **Greenberg & Traurig** | **Furman Kornfeld&Brennan** |
| **800 Third Avenue** | **54 State Street** | **61 Broadway  26th FL** |
| **New York, NY  10022** | **Albany, NY  12207** | **New York, NY  10006** |

EXHIBIT 47
Page 673 of 808

Case 2:23-cv-04381-MEMF-E   Document 22-6   Filed 09/08/23   Page 169 of 303   Page
Case 22-725, Document 31, 04/07/2022, 3293143, Page2 of 87
ID #:1072

2

This motion seeks a writ of mandamus to vacate orders entered by
the SDNY and vacate the Second Circuit mandate entered in Case No.
20-1986 (2d Cir.) based on startling new evidence, *i.e.*, that since 2013,
Magistrate Henry Pitman was engaging in *ex parte* communications
with defense attorney for the Cowan Liebowitz & Latman law firm
defendants, Richard Supple, Esq., of Hinshaw & Culbertson ("H&C"),
and allowing Supple, a concealed executive member of the attorney
grievance panel in the First Dept. ("AGC") to breach Petitioner's
attorney client privilege owed by the Cowan defendants to the court.
*Von Bulow v. Von Bulow*, 811 F. 2d 136 (2d Cir 1987); *Spalding Sports
Worldwide v. Wilson*, 203 F. 3d800 (Fed. Cir. 2000). Then Magistrate
unilaterally contacted the SDNY Circuit Executive Office to remove
Petitioner's name from the roster of attorneys without notice or hearing
in blatant violation of due process of law.  *In re Gouiran*, 58 F. 3d (2d
Cir 1995) (citing *Selling v. Radford*, 243 US 46 (1917). To date
Petitioners has had no hearing and has been deprived of all
constitutional access to the SDNY to protect her US patents against
infringers and willful infringers residing in this district.

Supple at the same time illegally entered and inserted documents
related to his ex parte communications with Magistrate ex parte into
the Cowan defendants' state ethics complaint files and Petitioner's
confidential state bar files by misusing his concealed state post, that
were considered ex parte by the First Dept. and conflicted out the entire
court.  Supple submitted ex parte documents both to the First Dept. and
his AGC immediate supervisor, former justice Luis Gonzalez, while he
was the Petitioner's adversary unlawfully representing the Cowan
defendants in this lawsuit. The First Dept. AGC has disciplinary
jurisdiction over the Cowan defendants and Supple, but not over
Petitioner.

Petitioner first learned of the removal of her name from the roster
of SDNY attorneys in March 2022 and since has moved before the
SDNY Grievance Panel for a hearing to vacate its sua sponte order
(Exhibit 1). Petitioner, a member of the State Bar of California was
admitted to the SDNY at about the same time she was admitted to the

EXHIBIT 47
Page 674 of 808

Case 2:23-cv-04381-MEMF-E  Document 22-6  Filed 09/08/23  Page 170 of 303  Page
ID #:1073
Case 22-725, Document 31, 04/15/2022, 3293143, Page3 of 87

3

Central District of California.  While disqualification of Magistrate from
the SDNY lawsuit was timely sought in 2014, Magistrate left the case
and the court.  However, Judge Schofield failed to vacate Magistrate's
orders tainted with bias and also disqualify Supple, who was required
to be disqualified under Judiciary Law Part 1240.6d no later than
October 1, 2016.  Supple's dual concealed position as an executive aide
on the First Dept. attorney grievance committee ("AGC") when the
ethics complaints were filed seeking orders to compel return of the
complete USPTO patent files related to Petitioner's representation,
precluded Supple and his former Hinshaw & Culbertson, from ever
accepting the Cowan defense firm's retainer in this lawsuit or
continuing in that retainer. Judiciary Law ("JL") Parts 1240.6d,
1240.18.

Judge Schofield has since deprived Petitioner of complete
constitutional access to the court to protect her US patents against
infringers in this district, to vacate orders based on Magistrate's bias,
get patent discovery and file an amended complaint post patent
issuance in defiance of mandates of the US Supreme Court, Second
Circuit law and Federal Circuit law.  *SCA Hygiene Products Aktiebolag
v. First Quality Baby Products*, 137 S. CT. 954 (2017: *Metzler
Investments GMBH v. Chipotle Mexican Grill*, 970 F. 3d 133 (2d Cir
2020); *Anza Technology v. Mushkin*, 934 F. 3d 1359 (Fed. Cir. 2019).

This is a serious motion requiring the special attention of this
appellate court.  Petitioner's case is the only case at the time in this
district denied relief against patent practitioners and their infringer
clients for significant cause and willful acts. See, e.g., *Protostorm v.
Antonelli*, 834 F. Supp. 2d 141 (EDNY 2011); *Cold Spring Harbor
Laboratories v. Ropes & Gray*, 762  F. Supp. 2d 543 (EDNY 2011).  It is
being filed by a PRO SE litigant and US patentee who still needs to
enter this court to protect her patents against resident infringers in the
district. Aside from the current willful infringer defendant Live Nation,
Inc. and other mega corporate infringers such as Apple, Inc., MLB and
the NBA, seven agencies of the State of NY have taken Petitioner's

EXHIBIT 47
Page 675 of 808

patents without payment of just compensation in violation of the Fifth Amendment. They include the Port Authority of NY and NJ, NYS Thruway, EZ Pass and MetroCard and each entity when contacted refers to the orders of the Magistrate, that were required to be vacated and immediately so with an order disqualifying Magistrate from further presiding.

The result of Magistrate's continuing improper ex parte communications with Supple coupled with unconstitutional provisions and ignorance of preempting federal patent statutes being enforced against Petitioner by First Dept. AGC administrative and judicial officers in violation of *Ex parte Young*, 209 US 123 (1908), was Petitioner being permanently denied all constitutional access to the SDNY to protect her US patents, seek injunctive relief and get paid by willful private corporate infringers including state and NYC agencies. *Erickson v. Pardus*, 551 US 89 (2007); 37 CFR 2.10, 2.19, 10,66, 11.116, 1.36, 1.324; 35 USC §§271, 284, 285, 286, 256. The prejudice, ignorance of preempting patent law and unconstitutional violations continue.

Mandamus orders are also properly granted against State officers under *Ex parte Young*, 209 US 123 (1908) who continue to defy their administrative duties in nonfinal state mandamus actions under preempting federal patent law and the Supremacy Clause and continue to enforce unconstitutional protocols against Petitioner. *Gurvey v. Garry, et al.*, 19-cv-4739 (EDNY). State officers are still withholding federally mandated orders to compel Petitioner's withheld patent and USPTO files from the Cowan defendants, and answers from the Cowan defendants to Petitioner's grievances, and from attorney grievance committee officers who conspired with Supple, a concealed aide to the AGC to corrupt the state files ex parte.

There is no dispute that in 2003, the Cowan defendants abandoned Petitioner's USPTO patent retainer based on an *admitted conflict of interest*, defied preempting USPTO mandates related to conflicts of interest in violation of the Supremacy Clause, never got consent to withdraw from the USPTO, and allowed four valuable patent applications to expire. These acts in totality lost Petitioner valuable

EXHIBIT 47
Page 676 of 808

Case 2:23-cv-04381-MEMF-E Document 22-6 Filed 09/08/23 Page 172 of 303 Page ID #:1075
Case 1:25-... Document 40/20... Page 677...

5

priority dates and years of patent protection against other defendant clients Live Nation, Inc., Phish/PhishLIVE, and Instant Live Concerts, LLP and other clients including MLB and Legend Films of San Diego.

The state proceedings remain non final based on Supple's continuing ex parte communications with Justice Luis Gonzalez and other judicial members of the First Dept. That Supple entered and inserted unserved documents into Petitioner's confidential bar files from the Third Dept. without a warrant was found in an Appellate Division order entered April 21, 2016. The First Dept. admitted consideration of these ex parte insertions by Supple while he was Petitioner's adversary in the instant lawsuit, conflicting out the entire court.

Yet the district court, when immediately petitioned to disqualify Supple under JL Part 1240.6d, 1240.18, defied its duty under the state law and did not disqualify Supple from the Cowan firm's representation. Instead, Judge Schofield entertained summary judgment motions in February 2017 when a significant number of genuine issues of fact existed because patent discovery had been unlawfully stayed and then denied without justification since 2006.

This case falls within the exceptions iterated by the US Supreme Court in *Middlesex County Ethics Committee v. Garden State Bar Assn*, warranting mandamus relief and intervention also into the state mandamus cases to compel production of the complete state files and ethics files against the Cowan defendants. The case involves bad faith and conflicts of interest harbored by state officers. *Middlesex County, supra,* 457 US 423 (1982); *Gurvey v. Garry*, et al., 19-cv-4739 (EDNY)' 37 CFR 2.10, 2.19, 10,66, 11.116, 1.36, 1.324; 35 USC §§271, 284, 285, 286, 256; *Sprint v. Jacobs*, 571 US 69 (2013)(Ginsburg, J.); *Virginia Office of Protection and Advocacy v. Stewart*, 563 US 247 (2011)(Scalia J.). See, also, *Gurvey v. Acosta*, 132-17 (transferred sua sponte based on former First Dept. judge Hon. Luis Gonzalez's ongoing ex parte communications with his aide Supple between 2006 and 2018. 132-17 (1st Dept.) (now 01366-2018 (2d Dept.))

EXHIBIT 47
Page 677 of 808

Case 22-725, Document 9, 04/26/2022, 3293143, Page68 of 87

Since 2004-5, Petitioner filed otherwise proper ethics complaints against the Cowan Liebowitz & Latman patent attorneys and managing partners before the First Dept. Petitioner sought state orders to compel the complete USPTO Files from the First Dept. AGC which has disciplinary jurisdiction over the Cowan defendants and Supple but not over Petitioner.  Petitioner sought to compel production of her complete USPTO files that related to Cowan defendants' defective patent filing on behalf of Petitioner and the abandonment of those applications and formal applications at USPTO.  The USPTO never granted unilateral withdrawal to the Cowan defendants not in 2003 or in 2007 for defiance of federal practitioner mandates, binding on the state.

Petitioner continued to be denied her patent files, however, her complete state files to investigate whether she was unlawfully retaliated in violation of the First Amendment for filing ethics complaints against NYC patent practitioners, answers from Cowan defendants to the ethics complaints and subpoenas against the USPTO to produce the complete USPTO files on claims filed in this action.

Article 78 relief was first sought in 2011 before the Supreme Court of NY, NY County to compel the files under preempting federal law. The case was sua sponte transferred to the First Dept. because the matter involved attorney ethics violations, and was then sua sponte dismissed by the First Dept. in 2013 without notice or any opportunity to be heard.  *Gurvey v. State of NY, Supreme Court of NY, NY County* 110774-2011.  During this time, Supple was engaging in ex parte communications with Justice Gonzalez, his supervisor at the First Dept. AGC, and got a six-month sanction order signed ex parte in Chambers based on "collateral estoppel" and entered into Petitioner's otherwise stellar file.  In fact, Petitioner was never sanctioned as an attorney in NYS or any state, precluding a collateral estoppel order by factual and legal impossibility.  Petitioner was deprived of her due process right to cross-examine adverse state witnesses serving on the AGC by the continued withholding of the files including those inserted ex parte by Supple related to his ex parte communications with Magistrate Pitman. Orders that adversely implicate the constitutional rights of litigants

EXHIBIT 47
Page 678 of 808

especially pro se litigants can never be entered sua sponte. *Link v. Wabash R. R. Co.,* 370 US 626 (1962). Another document inserted by Supple purportedly prepared signed and dated in 2008 has the photocopied signature of 2002 AGC Chief counsel Paul Curran embossed when Curran was dead in 2007.

In addition, the USPTO never granted Cowan defendants unilateral withdrawal in response to defendants' two unsuccessful attempts in 2003 and 2007 for defying preempting federal mandates and withholding the patent files that are federally mandated. 37 CFR 2.10, 2.19, 10.66, 11.116. To date, Petitioner had been deprived of due process and all relevant files in the state and both essential patent discovery before the SDNY and a post-patent issuance amended complaint in contumacious defiance of Federal Circuit law. The issued patents were anticipated and delayed based on the Cowan defendants' intentional torts, conflicts of interest and fraudulent breach of fiduciary duty before the USPTO. *Anza Technology v. Mushkin*, 934 F. 3d 1359 (Fed. Cir. 2019); *NeuroRepair v. Nath Law Group*, 781 F. 3d 1340 (Fed. Cir. 2015).

The Second Circuit had the power and duty to grant injunctive relief to disqualify Magistrate and vacate Magistrate's orders at an earlier time in aide of its appellate jurisdiction. In 2017, the Court found it had jurisdiction and denied transfer to the Federal Circuit. The court then had the additional duty to vacate the orders of Judge Schofield denying disqualification of Supple, and Petitioner's amended complaint. NY's Judiciary Law ("JL") Section 90; JL Part 240. 6d; *In re Princo*, 478 F. 3d 1345 (2007); Metzler Investments GMBH v. Chipotle Mexican Grill, 970 F. 3d 133 (2d Cir. 2020)(citing *Grant Williams v. Citicorp.*, 659 F. 3d 208 (2d Cir 2011) The Second Circuit's failure to act immediately, issue essential mandamus orders in aide of its assumed jurisdiction, and follow its own precedents and precedent of the Federal Circuit to prevent manifest injustice via unlawful dissemination of confidential and privileged communications against Petitioner's patent interests, is contended repugnant. *Von Bulow v. Von Bulow*, 811 F. 2d 136 (2d Cir 1987); *Spalding Sports Worldwide v.*

EXHIBIT 47
Page 679 of 808

Case 2:23-cv-04381-MEMF-E   Document 22-6   Filed 09/08/23   Page 175 of 303   Page
Case 22-725, Document 31, 04/10/2022, 3293143, Page8 of 87
ID #:1078

8

*Wilson*, 203 F. 3d800 (Fed. Cir. 2000). The Second Circuit must vacate its orders under Rule 60(b)(1)-(6) based on Magistrate's clearly improper judicial activities. *Metzler Investments GMBH v. Chipotle Mexican Grill*, 970 F. 3d 133 (2d Cir 2020)(citing *Grant Williams v. Citicorp.*, 659 F. 3d 208 (2d Cir 2011).

Petitioner had no notice until March 2022 that her name was removed sua sponte from the roster of SDNY attorneys by the Circuit Executive. Petitioner was afforded no opportunity to be heard. Petitioner was not notified by the NY Legal Assistance Group where Petitioner sought counsel that knew and knew that Petitioner did not. Instead, NYLAG attorneys told Petitioner that from what she was doing with her patents, she did not want to be a practicing attorney in NYS. That statement is not the NY LAG's business; but it does demonstrate that SDNY officers are being instructed by the powers that be to breach administrative duties owed to PRO SE litigants and discriminate against Pro se litigants in favor of clients with lawyers. Per this US Supreme Court, these acts are not permitted. *Erickson v. Pardus,* 551 US 89 (2007). [1]

That the SDNY executive's office has been involved since 2013, and possibly since 2010 when Petitioner's essential motions to vacate the 2009 Rule 12(b) dismissal orders and replead an amended complaint post judgment based on her delayed and now issued US patents, makes the Magistrate and Judge Schofield's collusive acts of judicial misconduct particularly disturbing, frivolous, malicious, and

------

[1] In this case, the SDNY also granted unilateral withdrawal in 2010 to Petitioner's previous lawyers, Squitieri & Fearon, LLP. An attorney at Franzblau and Dratch tried to file a replacement notice of appearance in 2015 before Magistrate Pitman and was railroaded out. The attorneys told Petitioner the retainer would be futile because the case was rigged. Petitioner heard the same thing from Squitieri & Fearon in 2009 when Rule 12(b) motions to dismiss were granted based on clear jurisdictional fraud by the Live Nation defendants.

EXHIBIT 47
Page 680 of 808

proper ground for serious investigation. *Metzler Investments GMBH v. Chipotle Mexican Grill*, 970 F. 3d 133 (2d Cir 2020)(citing *Grant Williams v. Citicorp.*, 659 F. 3d 208 (2d Cir 2011).

Emails discovered in 2010 after the first appeal was pending before the Second Circuit, say that Cowan lawyers were *"following the clients' instructions"*. Petitioner's proprietary technology was copied into the firm's database using night staff when the Cowan defendants offered Petitioner an illegal retainer to invest in her patent applications. *Buechel v. Rhodes*, 285 AD 2s5 274 (1st Dept. 1999). When Petitioner rejected the offer, her patentable trade secrets, then copied without authorization, were inserted into a PCT application filed for Legend Films to create a patentable disclosure not subject to a §101 rejection, with the associated unlawful omission of Petitioner's name as a co-inventor. This lost Petitioner $3mil of Legend stock when the company was sold.

These facts demonstrate fraudulent declarations of inventorship were filed by Cowan defendants related to Petitioner's retainer that were per se discoverable. 37 CFR 1.36. FRCP Rule 37. Magistrate's 2013 hearings while ex parte communications with Supple were at their zenith, were not recorded according to the SDNY transcript office.

The Second Circuit did not hear strict liability infringement claims in the first appeal because these claims accrued only after the first anticipated US patents issued during the stay of appeal. Gurvey US Patent Nos. 7603321; D647910S (October 13, 2009, November 1, 2011). These claims were required to be heard on remand via the amended complaint and Rule 60(b) motions filed. *Metzler Investments GMBH v. Chipotle Mexican Grill*, 970 F. 3d 133 (2d Cir 2020) (*citing Grant Williams v. Citicorp.*, 659 F. 3d 208 (2d. Cir. 2011). Once the motions were discovered as removed from the docket and were confirmed to have an April 22, 2010 date stamp, replacement motions were required to be granted for service. They were not in defiance of preempting Federal Circuit law.

EXHIBIT 47
Page 681 of 808

What has been created is a situation where the case was in fact an arising under patent case since 2010, but the SDNY did its best through corruption and scandal to transform the case into a non-patent case that could be dismissed by the Second Circuit, with Second Circuit having jurisdiction to decide if it had mandamus powers to grant Petitioner the injunctive relief and infringement damages she was unconditionally owed. That injunctive relief can now be granted retroactively because violations of Petitioner's constitutional rights in defiance of federal patent law continue both in the SDNY, in the EDNY and in the state. Ex Parte Young, 209 US 123 (1908); 19cv4739 (EDNY).

The fraudulent breach of fiduciary duty and USPTO conflict of interest claims against Cowan defendants were remanded by the Second Circuit in 2012 (462 Fed. Appx.26). Each has a six-year statute of limitation. As to nonjoinder, claims accrued when a US patent issued to Legend Films in 2007 with Petitioner's ideas inserted into the specification; and endured for 6 years minimum unless tolled. The amended complaints were therefore timely filed. The other damage claims for infringement and aiding and abetting infringement have a six-year relate back statute of limitations from the date the first US amended complaint post patent issuance is filed which in this case was April 22, 2010. *SCA Hygiene Products Aktiebolag v. First Quality Baby Products*, 137 S. Ct. 954 (2017); *Anza Technology v. Mushkin*, 934 F. 3d 1359 (Fed. Cir. 2019). While Petitioner can file a new action seeking six years of relate back damages, Petitioner will forfeit the most valuable damages when the technology was evolving since 2003, when Petitioner's patents were first being used by defendant Live Nation. [2]

---

[2] Defendant Live Nation was found by the Dept. of Justice to have imported an infringing system from ETS Eventim of Germany in January 2008 to service its owned and operated venues in NYC – House of Blues, Irving Plaza and Roseland Ballroom - but was somehow dismissed in 2009 under Rule 12(b) based on fraudulent jurisdictional papers that it had no NY contacts.

EXHIBIT 47
Page 682 of 808

It is now established that the SDNY administrative officers with
whom Supple was communicating ex parte removed the date-stamped
amended complaint and Rule 60(b)(1)-(6) motions from the docket
sometime on remand from the Second Circuit in 2012, and thereafter
Supple engaged in other ex parte communications at the AGC with
Justice Gonzalez in 2012 to mar Petitioner's stellar record. The 2010
docketed motions had already been printed in stellar fashion in the
appendix to the first appeal, establishing ex parte removal. Vol., III,
pps. 671 et seq., 09-2185;10-4111. Allegedly the SDNY Grievance Panel
then removed Petitioner's name from the roster of attorneys sua sponte
allegedly in 2013-2015 based on Magistrate's ex parte instructions that
were known by Judge Schofield and never disclosed to Petitioner.

Petitioner had the absolute right under Second Circuit law to file
a repleaded amended complaint and vacate the 2009 Rule 12(b)
judgments under all six subsections of Rule 60b. *Metzler Investments
Gmbh v. Chipotle Mexican Grill*, 970 US 133 (2d Cir 2020)(*citing Grant
Williams v. Citicorp*, 659 F. 3d 208 (2d Cir 2011). See minute order
entered January 30, 2008.

On remand, Magistrate with the next judge Schofield continued to
improperly deny Petitioner patent discovery post patent issuance,
signed subpoenas against the USPTO to compel the withheld complete
patent files related to Petitioner's inventions, and Rule 60(b) relief and
an amended complaint post patent issuance to recover infringement
damages against all named defendants. 35 USC §271, 284, 285, 286.
That no patent discovery was ever granted means that there existed a
significant number of genuine issues of fact open precluding any
summary judgment orders from being entered in 2017.

Unbeknownst to Petitioner until March 2022 and without due
process, notice, or hearing, Magistrate and Judge Schofield relayed
defamatory information about Petitioner received from Supple to
legitimize judicial misconduct and disqualifying bias. At the same time,

EXHIBIT 47
Page 683 of 808

Supple was engaging in ex parte communications with a First Dept. former AGC justice, Luis Gonzalez and without making mandatory disclosures was dually serving as an undisclosed executive aide to the justice. This position that Supple had before Petitioner filed ethics complaints before the state in 2004-5, precluded Supple and H&C from ever accepting the Cowan firm's defense retainer in 2006 or continuing in that retainer beyond the date the JL Part 1240 amended statutes became effective (October 1, 2016).

An order of the AD entered April 21, 2016 admits that Supple entered and corrupted Petitioner's state files by inserting unserved documents and the documents were considered by the First Dept. The documents include certain notes from Magistrate in Supple's attempt to get illegal and fraudulent reciprocal sanctions entered without due process or production of the files. Supple and H&C's continuation of the Cowan defendants' retainer was per se proscribed by JL Parts 1240.6d, 1240.18, and explains why Supple and H&C did not show up at oral argument in the 2017 appeal before the Second Circuit.

Severe sanctions must be awarded under Judiciary Law 487 and *Amalfitano v. Rosenberg*, 12 NY 3d 8 (2009); 533 F. 3d 117 (2d Cir 2007) against Supple, H&C and the Cowan defendants for attorney in-court fraud, deceit and breach of attorney client privilege. The infringement damages losses are strict liability damages.

Petitioner also never got due process in the State. The cause includes contended unconstitutional statutes in conflict with one another - NY's Judiciary Law and NY's Executive Law, subd. 63-1 – that make compliance with a respondent attorney's s right to due process impossible. . *In re Gouiran*, 58 F. 3d 43 (1995)(*Selling v. Radford*, 243 US 46 (1917).

Under NY's Executive Law subd. 63-1, the NYS Attorney General has a duty to defend both AGC attorneys and AGC presiding justices, who have conflicting duties to a respondent attorney sued in a disciplinary proceeding. During these proceedings, the justice will necessarily be engaging in ex parte communications with the AGC staff

EXHIBIT 47
Page 684 of 808

Case 2:23-cv-04381-MEMF-E    Document 22-6    Filed 09/08/23    Page 180 of 303    Page
ID #:7083
Case 22-725, Document 3, 04/07/2022, 3293143, Page13 of 87

13

attorneys' attorney, AG. Ergo, the communications become privileged
because AG is also the justice's attorney. The communications required
produced by Judiciary Law Part 1240l.7 and the Fifth Amendment of
the Constitution are never produced because of AG's claim of privilege.
This organization structure in NY's attorney grievance committees.
precludes the right of the respondent to get the files necessary to cross-
examine adverse state witness. IN Petitioner's case, forged and
unserved documents were inserted them into Petitioner's files admitted
by Supple. However, Justice Gonzalez was also engaging in ex parte
communications with Supple, attorney for adverse parties in the SDNY
lawsuit (the Cowan defendants), creating a double whammy. The result
were reciprocal forged sanction orders entered ex parte into the state
files and the SDNY files by Supple; that made their way to the SDNY
Executive's Office via Magistrate.

The false information relayed about Petitioner to the SDNY circuit
executive had zero to the patent case, was blatantly false, was gotten
from the Cowan defendants and Supple breaching attorney client
privilege and lying to the judges during ongoing ex parte sessions, and
must be sanctioned. The facts here presented adequate grounds for this
court to disqualify the judges and vacate their orders by mandamus at
an earlier time.

The order removing Petitioner's name from the roster of attorneys
permanently railroaded Petitioner out of the district court, prevented
Petitioner from retaining a new attorney to replace the attorney in
granted sua sponte withdrawal by Judge Jones in 2010, and
prospectively getting paid protecting her ticketing patents against
infringers and willful infringers residing in this circuit in violation of
the Fifth Amendment.

This Court's finding it had appellate jurisdiction in 2017 means it
had a duty to issue mandamus orders retroactively in aide of that
jurisdiction. *In re Princo*, 478 F. 3d 1349 (Fed. Cir 2007). Mandamus
orders were essential to disqualify the judges and prevent ongoing
breach of Petitioner's attorney client privilege. *Von Bulow v. Von*

EXHIBIT 47
Page 685 of 808

Case 2:23-cv-04381-MEMF-E    Document 22-6    Filed 09/08/23    Page 181 of 303    Page
ID #:10842
Case 22-725, Document 3, 04/04/2022, 3293143, Page14 of 87

14

*Bulow*, 811 F. 2d 136 (2d Cir 1987); *Spalding Sports Worldwide v. Wilso*n, 203 F. 3d 800 (Fed. Cir. 2000).

This court, however, held in response to Petitioner's previous mandamus petition that "*mandamus will not suffice for an appeal*". This Court was required to act when it has a duty to act; and breached that duty. *In re Princo*, 478 F. 3d 1349 (Fed. Cir. 2007); *Sprint v. Jacobs*, 571 US 69 (2013)(Ginsburg, J.); *Virginia Office of Protection and Advocacy v. Stewart*, 563 US 247 (2011)(Scalia, J.)

Wherefore, mandamus must be granted against the SDNY executive administrators and orders to vacate previous Second Circuit mandates must issue under Rule 60(b).

Dated: April 5, 2022/          /amygurvey/
ECF

                              /AMY R. GURVEY
                              US Patentee Pro Se

EXHIBIT 47
Page 686 of 808

# EXHIBIT 1

EXHIBIT 47
Page 687 of 808

# MANDATE

S.D.N.Y.–N.Y.C.
06-cv-1202
Schofield, J.

## United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second
Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square,
in the City of New York, on the 8th day of January, two thousand twenty-one.

Present:

Guido Calabresi,
Reena Raggi,
Denny Chin,
*Circuit Judges.*

---

Amy R. Gurvey,

*Plaintiff-Appellant,*

v.                                                            20-1986

Cowan, Liebowitz and Lathman, P.C., et al.,

*Defendants-Appellees,*

Does, 1-X Inclusive, Michael Gordon,

*Defendants.*

---

Appellees move to dismiss the appeal and for sanctions. Upon due consideration, it is hereby
ORDERED that Appellees' motion is DENIED. It is further ORDERED that the appeal is
DISMISSED because it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*,
490 U.S. 319, 325 (1989); *see also Pillay v. INS*, 45 F.3d 14, 17 (2d Cir. 1995) (holding Court has
inherent authority to dismiss an appeal that lacks an arguable basis in law or fact). Appellant's
mandamus petition, which was transferred to this Court as part of this appeal from the United
States Court of Appeals for the Federal Circuit, is DENIED because mandamus may not be used
as a substitute for an appeal. *See Linde v. Arab Bank, PLC*, 706 F.3d 92, 117–18 (2d Cir. 2013).

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

*Catherine O'Hagan Wolfe* [signature]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

*Catherine O'Hagan Wolfe* [signature]

# MANDATE ISSUED ON 04/01/2021

EXHIBIT 47
Page 688 of 808

# EXHIBIT 2

EXHIBIT 47
Page 689 of 808

**AMY R. GURVEY**
**USPTO Inventor Pro se**
**315 Highland Avenue**
**Upper Montclair, NJ 07043**
amygurvey@gmail.com
PH 973-655-0991

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

——————————————————————X

Amy R. Gurvey, US Patentee,

    *Pro Se* Plaintiff/Petitioner,

                CASE No. 06-CV-1202 (LGS)

                Motion to Hold Hearing, Correct
                Docket, Vacate Orders of Judge
                Pitman based on Ex Parte
                Communications with Plaintiff's
                adversary Richard Supple, Esq.
                while Plaintiff was a Pro Se Patentee
                before the Court

                    and-

                Motion to Reconsider SDNY Orders
                entered March 2022

    -against-

Cowan Liebowitz & Latman, PC,
Live Nation, Inc., Instant Live Concerts,
LLC, Mike Gordon, et al.

    *Defendants.*

——————————————————————X

EXHIBIT 47
Page 690 of 808

Case 2:23-cv-04381-MEMF-E   Document 22-6   Filed 09/08/23   Page 186 of 303   Page
Case 22-725, Document 3, 04/07/2022, 3293143, Page19 of 87
ID #:1089

2

Plaintiff Amy R. Gurvey, a US patentee, entrepreneur and
inventor of apparatus and standard essential utility patents in the field
of live event ticketing (Gurvey US Patent Nos. 7603321; D647910S),
declares to the truth of the following statements as an attorney on
inactive status in good standing in the State of California, in moving
this court to vacate all orders of Magistrate Henry Pitman entered since
2012 when the 2d Circuit remanded Plaintiff's lawsuit to the SDNY
(462 Fed. Appx. 26) and Magistrate began improper ex parte
communications with an adverse parties' attorney Richard Supple, Esq.

Plaintiff also moves for reconsideration under Local Rule 6.3 for
reconsideration of the orders of Judge Schofield following Magistrate
Pitman's order after Magistrate was required to be disqualified.
Plaintiff received no notice, hearing or due process when she discovered
that her name had been removed sua sponte from the roster of SDNY
attorneys; and Plaintiff received no notice, hearing or due process to
allow reciprocal sanctions. This is because Plaintiff got no due process
when a sua sponte sanction order was entered by former Justice Luis
Gonzalez of the attorney grievance committee ("AGC") in the AD First
Dept. on December 4, 2012.

A subsequent order admits that Justice Gonzalez's First Dept.
AGC aide, attorney Richard Supple, Esq., was unlawfully representing
the Cowan defendants in this lawsuit, and entered and corrupted
Plaintiff's confidential state files.  There was no NY license in existence
to suspend for six months in 2012 and no collateral estoppel order

EXHIBIT 47
Page 691 of 808

legally or factually possible. The First Dept. having disciplinary
jurisdiction over the Cowan defendants had no jurisdiction over
Plaintiff and never did. JL Part 1240.2. The inevitable conclusion is
that Plaintiff had process abused against her for filing patent
practitioner ethics complaints against the Cowan defendants before the
State.   Until Plaintiff had issued US patents to enforce, it was the
state's job to compel Plaintiff's complete USPTO files from the Cowan
defendants that were being unlawfully withheld so that Plaintiff could
cross-examine adverse witnesses and investigate retaliatory and
reciprocal harassment in two courts caused by Supple.  Gunn v. Minton,
133 S. Ct. 1059 (2013)


## FACTS IN SUPPORT OF MOTION

1.     Magistrate Henry Pitman began presiding without a
supervising judge in the instant lawsuit in 2012 without the parties'
mutual consent upon the retirement of Judge Barbara S. Jones in 2012
when this lawsuit was remanded from the 2d Circuit and claims for
patent practitioner conflicts of interest and fraudulent breaches of
fiduciary duty before the USPTO were upheld against the Cowan
Liebowitz & Latman law firm defendants (462 Fed. Appx. 26)
Magistrate then engaged in ex parte communications with defense
attorney Richard Supple, Esq. who was never legally allowed per NY
statutes to defend the Cowan Liebowitz & Latman law firm defendants
in this lawsuit. JL Part 1240.6d This is because Supple was serving on
the First Dept. attorney grievance committee ("AGC") when Plaintiff's

EXHIBIT 47
Page 692 of 808

state ethics complaints against the same Cowan patent practitioners
and managing partners were filed since 2004-5 seeking return of
withheld USPTO patent files.  Several motions were made to compel
Supple and Hinshaw & Culbertson's withdrawal including in 2014
when Plaintiff was asked to be a presenter by John Caher at the State
Attorney Disciplinary Hearings on matters of patent practitioner ethics
violations.  Plaintiff's motions to disqualify Supple were ignored by
Magistrate Pitman and denied on the record on 11-29-16 by the next
Judge Lorna Schofield.

2.      Based on ex parte communications with Supple, however,
Magistrate denied Plaintiff an amended complaint post patent issuance
and patent discovery in defiance of Federal Circuit law. Plaintiff first
US patent, anticipated in the previous complaint, issued on October 13,
2009 during the 3-year stay of appeal.

3.      Plaintiff's motion to disqualify was duly filed was argued on
January 3, 2013 and the hearings were not recorded.  Magistrate
warned Plaintiff in a threatening tone *"to leave the Cowan lawyers
alone"*.

4.      Then Plaintiff shockingly discovered that her strict liability
infringement amended complaint, also seeing aiding and abetting
infringement and non-joinder USPTO patent damages against the
Cowan defendants, and Rule 60(b) motion to reinstate defendant Live
Nation to answer for infringement, were already removed sua sponte
from the SDNY docket.  Subsequently, Plaintiff's motions seeking
signed subpoenas against the USPTO were ripped out of the SD file

EXHIBIT 47
Page 693 of 808

room and never signed by Magistrate. Also removed from the file room
were the SDNY arbitration files. Other sua sponte orders staying
patent discovery had been signed ex parte by Judge Jones in 2008.

5.     Very recently, Plaintiff was noticed by the SDNY Grievance
Panel that Judges Pitman, Schofield and McMahon removed Plaintiff's
name from the roster of SDNY attorneys. There was no due process
without notice or hearing. In re Gouiran, 58 F. 3d 54 (1995)(citing
Selling v. Radford, 243 US 46 (1917). Apparently the removal of
Plaintiff's name was based on a December 4, 2012 order entered by
Supple's immediate supervisor at the First Dept. AGC, former Justice
Luis Gonzalez, before whom Plaintiff never appeared.

6.     Supple who was involved in getting Plaintiffs' ethics
complaints against the Cowan defendants ignored by Justice Gonzalez,
could not defend the Cowan defendants in this lawsuit. nor could the
law firm where Supple previously worked, Hinshaw & Culbertson, LLP.
JL Part 124.06d. Plaintiff got no hearing or notice of this sua sponte
removal compliant with due process. Supple engaged in ex parte
communications with his state supervisor Justice Gonzalez to get unfair
advantages for the Cowan defendants in this lawsuit.

7.     Plaintiff is entitled to a hearing and to vacate orders on the
SDNY docket entered by Judges Pitman and those entered by Judge
Schofield that followed Judge Pitman after disqualification was
mandatory.

EXHIBIT 47
Page 694 of 808

8.     The arguments are detailed on **Exhibit 1**, appended hereto and incorporated by reference as if fully set forth hereat.  A copy is being sent to the SDNY Grievance Panel, cc: Hon. P. Kevin Castel and to Julie Allsman, Esq. counsel to the panel.

9.     The law in NY is clear, i.e., neither Supple nor his firm Hinshaw & Culbertson (H&C) could ever accept the Cowan defendants' retainer in this lawsuit or continue in that retainer.  JL Part 1240.6d. Both Judges Pitman and Schofield were required to order disqualification and not wait until the end of the case.  Magistrate was required to stop issuing orders and disqualify himself immediately from the action after engaging in ex parte communications with Supple based on the following facts:

(a)     AD First Dept. found in the next order entered April 21, 2016 (**Exhibit 2**) that Supple entered and corrupted Plaintiff's confidential state bar files without a warrant by inserting unserved documents (which are crimes JL Part 1240.18);

(b)     The inserted papers and notes that were admittedly considered by the AD also ex parte in defiance of due process.

(c)     Judge Schofield was given this order and ignored it; and allowed Supple to file frivolous summary judgment motions in 2017 without patent discovery or an amended complaint;

EXHIBIT 47
Page 695 of 808

(d)     The inserted documents were since discovered to have been
        signed by Judge Pitman and were never compelled by the
        state in further defiance of due process.

(e)     AD's April 21, 2016 order was issued 3 ½ years after
        Plaintiff moved to vacate the six month sanction entered sua
        sponte that was the ground to remove her name from the
        roster of SDNY attorneys without notice or hearing.
        However, the order of Justice Gonzalez was entered without
        jurisdiction over Plaintiff and without notice or any
        opportunity to be heard while Supple was an undisclosed
        executive aide to Justice Gonzalez at the AGC, concealing
        conflicts of interest with his state post;

(f)     The 2012 order says it is based on "collateral estoppel " when
        Plaintiff never appeared in any NYS court on behalf of a
        client in the capacity of an attorney in NYS. Ergo, a
        collateral estoppel order was factually and legally
        impossible.

(g)     Magistrate and Judge Schofield did not disqualify Supple
        from further representing the Cowan Liebowitz & Latman
        defendants in violation of NY statutes.  JL Part 1240.6d;
        In other words, Judge Schofield followed the orders of Judge
        Pitman after Judge Pitman's disqualification was
        mandatory;

(h)     Judges Pitman and Schofield did not reinstate Plaintiff's
        (removed) amended complaint and Rule 60(b) motion to the
        docket for adjudication;

EXHIBIT 47
Page 696 of 808

(i)    Judge Schofield abused discretion and breached administrative duties by following Judge Pitman's orders after disqualification was mandatory and not disqualifying Supple from further representing the Cowan defendants;

(j)    Judge Schofield told Plaintiff during hearing on 11-29-16 to file another lawsuit against Supple and Hinshaw & Culbertson, LLP for damages (which Plaintiff did, 19cv4739 (EDNY) but that she was denying Plaintiff's motion to disqualify Supple.

(k)    A pro se litigant cannot wait until the end of the case to disqualify a judge and adverse party's attorney engaging in ex prate communications because the damage to the pro se litigant will be too great and likely, irreparable;

(l)    In her mandamus lawsuits that remain pending before the state and EDNY, Plaintiff is challenging the constitutionality of NY's Judiciary Law that permits a trial judge to enter orders after disqualification is mandatory, that permits a trial judge not to disqualify an adverse party's attorney required to be disqualified by statute; and NY's Judiciary Law and Executive Law subd. 63-1 that require the NYS AG to defend both AGC staff attorneys and supervising justices are unconstitutional. This is because under the statues AG will necessarily be engaging in ex parte communications on behalf of the respondent's adversaries (AGC staff attorneys) with the judge, who also becomes AG's client. Ergo, documents required to be

EXHIBIT 47
Page 697 of 808

produced for a respondent's due process become privileged and there is no exception or proviso iterated in state statutes to protect the due process rights and cross-examination rights of the respondent;

(m)    Plaintiff was entitled to patent discovery and production of her complete state files including ethics complaints duly filed against the Cowan lawyers to investigate whether she had process abused against her by a state court and the SDNY for filing ethics complaints against Supple's clients;

(n)    Plaintiff has since been denied constitutional access to the SDNY to protect her patents and file infringement motions including against willful infringers and aiders and abettors of infringement;

(o)    Magistrate threatened Plaintiff in open court during an unrecorded hearing on January 3, 2013 and told Plaintiff "to leave the Cowan lawyers alone" or Plaintiff would be sanctioned;

(p)    Magistrate issued an order requiring Plaintiff to set forth every alleged act of the Cowan defendants at the USPTO in breach of fiduciary duty and conflicts of interest, and then held in a subsequent order in 2013 that he never issued the order;

(q)    As confirmed by the SDNY transcript office, Magistrate did not record these hearings in violation of due process;

EXHIBIT 47
Page 698 of 808

(r)     Magistrate did not sign subpoenas to compel the Cowan
         firm's withheld USPTO patent filings on behalf of Plaintiff
         and against competing clients;

(s)     Magistrate did not sanction Supple for ripping Plaintiff's
         motions for signed subpoenas out of the SNDY file room;

(t)     Magistrate also did not grant Plaintiff patent discovery
         ordered by the 2d Circuit in its 2012 remand order and
         denied an amended complaint post patent issuance for four
         additional years in defiance of Federal Circuit law. 462 Fed.
         Appx. 26. Those orders were followed by Judge Schofield;

(u)     Magistrate recommended Rule 37 sanctions against Plaintiff
         when it was Supple and Cowan lawyers who failed to comply
         with discovery and engaged in frivolous litigation after
         Plaintiff's motions were ignored;

(v)     Magistrate's documents and memoranda somehow made
         their way into Plaintiff's confidential state files via Supple's
         illegal entry and insertions, that were found by the AD on
         April 21, 2016 and no action was taken by the SDNY;

(w)     In 2015, Judge Schofield ordered Plaintiff to pay $10,000
         into the SDNY for a special patent master, never hired the
         master and did not refund Plaintiff's money for 2 ½ years;

(x)     Judge Schofield continued to defy the law of the Second
         Circuit and deny Plaintiff an amended complaint post
         judgment when motions to vacate the judgment were
         properly granted.  Metzler Investments Gmbh v. Chipotle
         Mexican Grill, 970 F. 3d 133 (2d Cir 2020)

EXHIBIT 47
Page 699 of 808

(y)    Christine Anderson, a former First Dept. AGC triage
attorney was terminated by the First Dept. and the chief
clerk Catherine O'Hagan Wolfe, in retaliation for assisting
aggrieved clients file attorney ethics complaints and get
relief from the state.  Anderson v. First Dept. Disciplinary
Committee, 614 F. Supp. 2d 404 (SDNY 2009)(Scheindlin,
J.)(Headnotes 15, 16):

10.    In 2005, as soon as Plaintiff filed patent practitioner ethics
complaints against the Cowan lawyers at the First Dept. AGC,  Plaintiff
shockingly started having process abused against her by AGC staff
attorneys. This was shortly after Christine Anderson was terminated by
the AGC and left her job. Plaintiff's abuse of process by AGC staff
attorneys, however, was without jurisdiction.  JL Part 1240.2.

11.    Plaintiff was then denied her complete state files. Plaintiff
moved by original Article 78 petition filed in Supreme NY in 2011
(110774) to compel the files including the ethics complaints duly filed
against the Cowan lawyers.  Plaintiff properly sought  production of her
complete USPTO patent and inventorship files being withheld. The
Article 78 proceeding was transferred sua sponte to the First Dept. and
dismissed without notice or opportunity to be heard.

12.    Orders that adversely implicate the constitutional rights of
litigants can never be entered sua sponte.  Link v. Wabash R. R. Co.,
370 US 626 (1962).  AD's sua sponte orders defy the Due Process Clause
of the US Constitution and the court's duties to pro se litigants.
*Erickson v. Pardus*, 551 US 89 (2007).

EXHIBIT 47
Page 700 of 808

13.  On December 4, 2012 Justice Gonzalez sua sponte entered an order while Supple was his executive aide at AGC. The order was entered without notice to Plaintiff or any opportunity to be heard and is based on collateral estoppel that is legally and factually impossible. No notice or hearing was ever afforded in defiance of due process. It is not known whether Justice Gonzalez knew that Supple was already unlawfully defending the Cowan lawyers before SDNY since 2006 and that claims against the Cowan firm were remanded by the Second Circuit in 2012.

14.  Plaintiff's complete state files including the patent practitioner ethics complaint file were required be produced pursuant to equal protection and due process so that Plaintiff could cross-examine all adverse witnesses and investigate whether the state officers' abuse of process was retaliatory.

15.  When Plaintiff moved immediately in 2013 to vacate the sanction order based on Justice Gonzalez mandatory disqualification based on ex parte communications with Supple and lack of jurisdiction, and also based on the orders entered but not recorded by Magistrate Pitman, the First Dept. did not enter an order in response for almost four years.

16.  The next order entered April 21, 2016 admits that Supple entered and corrupted Plaintiff's confidential bar files without a warrant by inserting unserved documents and that Plaintiff's early attorney in the SDNY lawsuit, O. Lee Squitieri, helped Supple. The

EXHIBIT 47
Page 701 of 808

Case 2:23-cv-04381-MEMF-E   Document 22-6   Filed 09/08/23   Page 197 of 303   Page ID #:1100
Case 22-725, Document 3, 04/07/2022, 3293145, Page308 of 67

13

documents recently discovered include papers signed by Magistrate Pitman.

17.    Although Plaintiff has still not seen all the documents inserted, Plaintiff has filed two mandamus petitions before the state and in the EDNY pursuant to Judge Schofield's instructions during hearing on November 29, 2016. (132-17; 19-cv-4739 (EDNY).

18.    If Supple wanted to get Plaintiff disciplined in the capacity of attorney based on collateral estoppel, Supple was required by law to file his petition in the Third Dept. that admitted and retired Plaintiff. JL Part 1240.2. Plaintiff never heard a peep from the Third Dept. in 30 years and her license in NYS was retired in 1998. Ergo in 2012, there was no license for Justice Gonzalez to suspend.

19.    Justice Gonzalez somehow cited to an "attorney sanction" entered against Plaintiff. None was ever entered. There was an attorney sanction entered against Plaintiff's HUD tenant attorney Jay Stuart Dankberg, Esq. in 2001. That sanction was in fact unjustified under HUD mandates. This is because Plaintiff, an ADA approved HUD tenant was entitled to HUD's expanded definition of due process and a jury trial when her landlord filed a holdover proceeding in defiance of HUD mandates. Plaintiff's HUD tenancy was a federally protected property right and Plaintiff never got HUD"s expanded definition of due process or a jury trial in defiance of preempting HUD mandates and the Supremacy Clause. 24 CFR 966.4, 966.51(a)(2), 966.66

EXHIBIT 47
Page 702 of 808

20.    A NYC housing judge is a hearing officer and cannot preside over a jury trial. Met Council v. Crosson, 84 NY 2d 674 (1993). When Mr. Dankberg moved to transfer the frivolous holder to a NYC Civil Court Judge, he was sanctioned as an attorney. However, it is true that Mr. Dankberg did not move for mandamus relief to recuse the housing judge, which he was required to do, to get the motion granted. However, there was no attorney sanction issued against Plaintiff because Plaintiff was not an attorney in the case.

21.    At all times relevant since 2001, Supple was an undisclosed executive committee member at the first Dept. AGC and aide to former justice Luis Gonzalez. Supple could never legally accept the Cowan firm's retainer when Plaintiff filed suit before SDNY in 2006. JL Part 1240. 6d This is because of the high risk that sua sponte reciprocal sanctions in defiance of due process can be entered by the officer who harbors conflicts of interest and the risk is exacerbated when the respondent is a pro se litigant.

22.    Plaintiff was retired from the Third Dept. in 1998 after she attended medical school in NYS and never appeared on behalf of a client in any NYS Court. Only the Third Dept. had jurisdiction over Plaintiff for the time she was admitted in NYS 1985-1998 and retired in good standing. JL Part 1240.2.

23.    Moreover, after the 2005 admonition mailed to Plaintiff when her first ethics complaints were filed at the First Dept. was conceded as a "mistake". However. in 2008, a followup petition was mailed to Plaintiff in NJ in defiance of 22 NCYRR 603.4, 603.9 without

EXHIBIT 47
Page 703 of 808

any additional matter cited and containing the photocopied signature of
Paul Curran, Esq. <u>Curran was 2002 AGC chief counsel</u> **who was
already dead in 2007**. No current member or staff attorney of the
AGC signed the document. Curran was also a 1995 partner with
Cowan defendant William Borchard, Esq. at Kaye Scholer.

24.    Supple's plan was to get reciprocal sanctions entered against
Plaintiff in two courts by engaging in ex parte communications with
judges in each court and entering her state files without a warrant.
These acts are crimes. JL Part 1240.18

25.    As a result, Plaintiff's amended complaint post patent
issuance and Rules 15, 60(b) were removed after docketing and date
stamping on April 22, 2010 and never reinstated by the SDNY.

26.    The corrupted files are the subject of a continuing
mandamus petitions before the State. M 5775 (1st Dept), 132-17. There
is a separate action in the EDNY, 19-cv-4739 suggested by Judge
Schofield on the record on November 29, 2016. There is no final order
yet per the NY Court of Appeals and the cases continue.

27.    Named SDNY defendants Live Nation, Inc., Instant Live
Concerts, Phish, and the Cowan lawyers remain liable for infringement
and aiding and infringement damages. 35 USC 271, 284, 285, 286.
There has still been no decision on the merits on an infringement claim
in 11 years since the first anticipated US patent issued to Plaintiff
during the lawsuit.

EXHIBIT 47
Page 704 of 808

28.    It was easy to take advantage of Plaintiff because she was never admitted to the First Dept. never appeared on behalf of a client in any court in NYS,  and did not have incentive to have her license in NYS reinstated.  That does not mean that she does not need her stellar record reinstated; because without that she cannot recover infringement damages in any court in this circuit.

29.    The Cowan firm offered Plaintiff an illegal retainer to invest in her patent applications, proscribed in NYS. *Buechel v. Rhodes*, 285 A. 2d 274 (1st Dept. 1999)

30.    The previous SDNY Judge Barbara Jones also signed ex parte orders submitted by Supple including to stay patent discovery in 2006-2008 when discovery on tort and infringement claims was never legally stayed. Cowan defendants delayed issuance of Petitioner's patents through USPTO fraud, conceding to practitioner conflict of interest violations, abandonment torts, withholding her USPTO files and inserting her patentable technology into other client's applications. Emails discovered admit that Cowan was *"following the client's instructions"*.

31.    Attorney malpractice cases involving missed patent deadlines have resulted in million dollars of damages, for far less crimes than what the Cowan firm is alleged to have done in this action.  35 USC 271, 284, 285, 296, 37 CFR 2.10, 2.19, 10.66, 11.116, 1.324, 1.36; *NeuroRepair v. Nath Law Group*, 781 F. 3d 1340 (Fed. Cir. 2015); *Protostorm v. Antonelli*, 834 F. Supp. 2d 141 (EDNY 2011), *Cold Spring Harbor Laboratories v. Ropes & Gray*, 762 F. Supp. 2d 543 (EDNY

EXHIBIT 47
Page 705 of 808

2011). This court clearly does not follow Federal Circuit law on law firm damages and non-joinder torts. *Carter v. ALK Holdings*, 605 F. 3d 1319 (2009).

32.    Petitioner's additional action seeking constitutional damages against NYS for promulgation of unconstitutional protocols and patent taking damages before the NY Court of Claims is also being unduly prejudiced.


**WHEREFORE**, based on the foregoing, Plaintiff seeks that this SDNY order a hearing to vacate certain orders and correct the dockets, order a hearing to determine if Plaintiff's name was improperly removed sua sponte from the roster of attorneys, and grant Petitioner leave to challenge the unconstitutional protocols of this Court based on constitutionally deficient practices promulgated against patent inventors in violation of the US Constitution and NY's Constitution


March 22, 2022
Upper Montclair, NJ

AMY R. GURVEY

EXHIBIT 47
Page 706 of 808

# EXHIBIT 3

EXHIBIT 47
Page 707 of 808

**amygurvey@gmail.com**

| | |
|---|---|
| **To:** | Julie Allsman; Robyn Tarnofsky |
| **Subject:** | FW: REQUEST FOR SDNY HEARING NY Legal Assistance Group; SDNY Attorney Grievance Panel 06cv1202 (SDNY Patent Litigation) |

cc: Hon. P. Kevin Castel

**From:** amygurvey@gmail.com <amygurvey@gmail.com>
**Sent:** Wednesday, March 23, 2022 9:32 AM
**To:** 'Robyn Tarnofsky' <RTarnofsky@nylag.org>; 'Julie Allsman' <Julie_Allsman@nysd.uscourts.gov>
**Subject:** REQUEST FOR SDNY HEARING NY Legal Assistance Group; SDNY Attorney Grievance Panel 06cv1202 (SDNY Patent Litigation)

March 22, 2022 NY LAG: Ms. Tarnofsky: This note is being emailed to the SDNY Grievance Panel out of necessity.

Your office made a mistake in giving legal advice in 2017 after Judge Schofield (06cv1202) entered summary judgment orders admitting that the court never granted Plaintiff an amended complaint post patent issuance during the lawsuit or patent discovery ordered by the 2d Circuit in 2012 (462 Fed. Appx. 26). Also the court had failed to disqualify Richard Supple, Esq., from further defending the Cowan law firm defendants and filing summary judgment papers. The 2017 SJ orders had to be appealed to the Fed Cir, and not the 2d Cir. Plaintiff would have won the appeal in 2018 and gotten another judge assigned. Now the case is before the Fed Circuit, but five years too late.

Mag Pitman's ex parte communications with the Cowan law firm defendants' atty, Richard Supple, Esq. began in 2012. The conversations were unlawful and required that Mag be disqualified and his orders vacated, not followed by Judge Schofield when she began presiding. Supple was an undisclosed executive aide to former justice Luis Gonzalez on the First Dept. attorney grievance committee ("AGC"). The Cowan defendants were subject to the disciplinary jurisdiction of the First dept., but Plaintiff is not and never was.

Plaintiff moved for disqualification of Judge Pitman, and of Supple pursuant to JL Part 1240.6d Judge Pitman never adjudicated the motions. Instead, he wrote to the SDNY Grievance Panel. A pro se litigant cannot wait until the end of a case when ex parte communications are ongoing between a judge and the adverse party's attorney, especially not when the opposing party is pro se before the Court, and the adverse party's attorney is double dealing on the state grievance board. The prejudice to the a pro se inventor's right to recover infringement and aiding and abetting strict liability infringement damages will be irreparable. Erickson v. Pardus, 551 US 89 (2007) As found by the Fed Circuit in 2020, the 2d Cir improperly denied Plaintiff's motion to transfer the appeal because the Fed Circuit has exclusive jx over matters arising under the patent statutes. 35 US 271; 37 CFR 2.10. 2.19, 10.66, 11.116, 1.36, 1.324.

Now, Plaintiff recently discovered that Mag Pitman (no longer serving) and Judge Schofield contacted former Adm. Judge Colleen McMahon to remove her name from the roster of SDNY attys without notice or opp to be heard. The notes were sent after Mag's disqualification was mandatory and his right to enter orders had expired. There is no service confirmation on the order.

The First Dept. order entered December 4, 2012 relied on by Magistrate was entered wt jx over Plaintiff and written by Justice Gonzalez, who was the immediate AGC supervisor of Supple for many years. Supple was unlawfully dually serving as Judge Gonzalez's aide and as the Cowan defendants' attorney in the SDNY lawsuit without disclosure. JL Part 1240.6d. Supple can be assumed to have been involved with getting Plaintiff's state ethics complaints ag the Cowan lawyers ignored and was subsequently found by the AD First Dept. by order entered April 21, 2016 to have entered and corrupted Plaintiff's confidential state files wt a warrant by inserting unserved documents. JL Part 1240.18. Those documents have been discovered to include proof of ex parte interactions with Judge Pitman. Action M-5775 has now

EXHIBIT 47
Page 708 of 808

been reopened. Judges Pitman and Schofield were required to disqualify themselves for engaging in ex parte communications with Supple and were required vacating the relevant orders after disqualification was mandatory.

Evidence Mag's ex parte communications with Supple "somehow" got into Plaintiff's confidential state files, some 15 years after Plaintiff was retired by the Third Dept. in 1998. Plaintiff remains in good standing in CA. Plaintiff was admitted to the SDNY in 1985 based on admission to two bars, California and NY, and had the absolute right to notice and opportunity to be heard before her name was removed from the roster of attorneys.

The result has been severe prejudice to Plaintiff's business, career, stellar reputation, and constitutional right to protect her intellectual property from willful infringers residing or doing business in this circuit including defendant Live Nation, a named defendant since 2006, and a client of the Cowan defendants. Live Nation was found to have significant NY contacts during its merger proceedings with Ticketmaster in 2010 and was severely sanctioned by the DC District Court and the Dept. of Justice. 2010 WL 973407, 975408 in 2020 for lying to the court, continuing antitrust violations and defiance of the competitive impact statement and consent decree entered in 2010. However, Live Nation was dismissed based on fraudulent Rule 12(b) papers that it had no NY contacts, and Plaintiff's Rule 60(b) motion and amended complaint post patent issuance were deleted ex parte from the docket. Supple then got Judges Jones and Pitman to stay patent discovery ex parte, that could never legally be stayed.

Also discovered in Plaintiff's state files is a 2005 admonition notice based on collateral estoppel that is legally and factually impossible. Plaintiff was never sanctioned as an attorney in NYS in connection with representing a client in any court, because Plaintiff never did so. Then in 2008, this admonition, previously noticed as a "mistake" was followed up in defiance of 22 NYCRR 603.4, 603.9 with nothing further cited, suspiciously only after Plaintiff sued the Cowan attorneys in this lawsuit. A photocopied affirmation in support of the 2008 filing was purportedly signed by 2002 AGC chief counsel Paul Curran, Esq. who left the AGC in 2002 *and was dead of cancer in 2007*. Mysterious is that Curran was a former partner of Cowan defendant William Borchard at Kaye Scholer in the 1990s.

While Mag Pitman is no longer on the court, his orders denying patent discovery, an amended complaint and recommending sanctions against Plaintiff without any legal justification, must be vacated from the docket. Plaintiff's first US patents, 760331; D627910S, were tragically delayed based on the Cowan defendants' intentional torts before the USPTO. The first patent claims issued on October 13, 2009 during the 3-year stay of appeal, were docketed, date stamped and filed on April 22, 2010 and then removed ex parte from the docket without notice to Plaintiff or her attorney, O. Lee Squitieri, Esq. Squitieri suspiciously was also granted unilateral withdrawal at the same time.

What Plaintiff just discovered in her confidential state files by mandamus petitions were documents inserted by Supple and signed by Magistrate Pitman. First Dept., Judge Luis Gonzalez, has not been presiding for several years. The AD panel waited 3 1./2 years to adjudicate the motion to vacate and on April 21, 2016 admitted to consideration of the files inserted ex parte by Supple in further defiance of due process. This is addition hard evidence of ex parte communications between Supple and state judges; and requires this court to discipline Supple and the Cowan attorneys.

The state proceeding M 5775 has been reopened based on renewal. There are two additional mandamus proceedings pending to compel production of Plaintiff's complete state files including Plaintiff's patent ethics complaints against the Cowan defendants. It is necessary to determine if Plaintiff had process abused against her in retaliation for filing otherwise proper ethics complaints. During the delay before patent issuance the state had exclusive jx over USPTO practitioner breach of fiduciary duty, conflicts of interest and malpractice claims against the Cowan defendants. Gunn v. Minton, 133 S. Ct. 1059 (2013). An original Article 78 proceeding to compel Plaintiff's complete state files including the ethics complaint files was filed in Supreme NY in 2011 (110774), transferred sua sponte to the First Dept. and dismissed sua sponte without notice or any opportunity to be heard in defiance of due process. Upon belief, this is when Magistrate's papers were inserted into the files by Supple.

In addition, Plaintiff never received answers to her state ethics complaints from the AGC duly filed since 2004-5 in violation of equal protection, the Cowan defendants' responses, or her complete files that include her federally

EXHIBIT 47
Page 709 of 808

mandated patent files. 132-17 (1ˢᵗ Dept.), 19-cv-4739 (EDNY). Eight agencies of the State and City of NY are unlawfully using Plaintiff's issued patents without payment of just compensation including the Port Authority and NYS Thruway. There is a separate Court of Claims lawsuit pending for 4 years, 135611.

In this court, a hearing must be granted for Plaintiff to demonstrate that the 2012 state order entered by Justice Gonzalez was improperly considered ex parte when the order was entered First Dept. without jx and without notice or opportunity to be heard; and the right to cross-examined adverse state witnesses if necessary. Supple unlawfully engaged in ex parte communications with judges in two courts and entered and corrupted Plaintiff's state files without a warrant. JL Part 1240.18; In re Gouiran, 58 F.3d 54 (2d Cir) citing Selling v. Radford, 243 US 46 (1917). Plaintiff's state ethics complaints against Supple have been ignored. Plaintiff has gotten no confirmation of processing in defiance of equal protection.

The AGC triage attorney who was assisting Plaintiff get her complete USPTO patent files compelled against the Cowan defendants was the victim of retaliatory termination and the subject of a civil rights lawsuit before SDNY. Anderson v. First Dept. Disciplinary Committee v. State of NY, 614 F. Supp. 2d 404 (SDNY 2009)(Scheindlin, J.) (Headnotes 15, 16). Plaintiff has challenged the constitutionality of the NYS statutes that enabled this atrocity and scandalous manifest injustice in the pending renewal, and mandamus lawsuits. Plaintiff continues to have her patent business, professional reputation and career damaged by these orders. They must be removed. Thank you.

Respectfully submitted, Amy R. Gurvey

3

EXHIBIT 47
Page 710 of 808

# EXHIBIT 4

EXHIBIT 47
Page 711 of 808

                    At a Term of the Appellate Division of the Supreme
                Court held in and for the First Judicial Department in
                the County of New York on April 21, 2016.

Present - Hon. Peter Tom,              Justice Presiding,
                David Friedman
                David B. Saxe
                Rosalyn H. Richter
                Sallie Manzanet-Daniels,    Justices.

------------------------------------------x
In the Matter of Amy R. Gurvey
(admitted as Amy Rebecca Weissbrod),
a suspended attorney:

    Departmental Disciplinary Committee
    for the First Judicial Department,              M-5775
                    Petitioner,

    Amy R. Gurvey,
    (OCA Atty. Reg. No. 1994516),
                    Respondent.
------------------------------------------x

**FILED**

**APR 2 1 2016**

SUP COURT, APP. DIV.
FIRST DEPT.

        An order of this Court having been entered on
December 4, 2012 (M-667/M-1340), inter alia, suspending
respondent (who, as Amy Rebecca Weissbrod, was admitted to
practice as an attorney and counselor-at-law in the State of New
York at a Term of the Appellate Division of the Supreme Court for
the Third Judicial Department on June 4, 1985) from the practice
of law in the State of New York for a period of six months,
effective January 3, 2013, and until further order of this Court,

        And respondent pro se having moved this Court on
December 17, 2015 (M-5775), for an order vacating the order of
suspension entered December 4, 2012, directing that a retraction
order be published in relevant legal publications, compelling the
Committee to make certain files available to her, and for other
relief,

        And the Departmental Disciplinary Committee for the First
Judicial Department, by Jorge Dopico, its Chief Counsel (Orlando
Reyes, of counsel), having submitted an affirmation in opposition
to the motion, and requesting that this Court grant further
relief as it deems just and proper,

        And Hinshaw & Culbertson, LLP (Richard Supple, of counsel),
having submitted an affirmation in opposition to the motion,

EXHIBIT 47
Page 712 of 808

(M-5775)                    -2-                    April 21, 2016


        And Squitieri & Fearon, LLP (Olimpio Lee Squitieri, of
counsel), having submitted an affirmation in opposition to the
motion,

        And respondent having submitted a reply affirmation,

        Now, upon reading and filing the papers with respect to the
motion, and due deliberation having been had thereon, it is
unanimously,

        Ordered that the motion is denied.  It is further directed,
sua sponte, that the Clerk of the Court not accept further
filings from respondent without prior leave of this Court.

                        ENTER:



                                                _____
                                                       CLERK




APPELLATE DIVISION SUPREME COURT FIRST DEPARTMENT
                STATE OF NEW YORK

I, SUSANNA ROJAS, Clerk of the Appellate Division of the Supreme
Court First Judicial Department, do hereby certify that I have compared this copy with
the original thereof filed in said office on  4/21/16  and that the same is
a correct transcript thereof, and of the whole of said original.
IN WITNESS WHEREOF I have hereunto set my hand and affixed the seal of this Court
on  4/21/16

                                        _____
                                                CLERK

EXHIBIT 47
Page 713 of 808

| | | |
|---|---|---|
| | | LETTER addressed to Judge Loran Schofield from Amy Gurvey, dated 3/6/22 re: MOTION TO VACATE OR RECONSIDER ORDER ENTERED 12/2/21 DENYING A REPLEADED AMENDED COMPLAINT POST JUDGMENT AND PATENT ISSUANCE, TO RECUSE JUDGE & VACATE ORDERS RETROACTIVE TO 2016. Document filed by Amy R. Gurvey.(sc) Modified on 3/10/2022 (tg). (Entered: 03/09/2022) |
| 03/09/2022 | 443 | *** STRICKEN DOCUMENT. Document number 443 has been stricken from the case record. The document was stricken from this case pursuant to 444 Order. LETTER addressed to Judge P. Kevin Castel from A. Gurvey, dated 3/7/22 re: I have just discovered that without notice to me or any opportunity to be heard, my name was removed from the roster of SDNY attorneys sometime during the pendency of this 13-year patent and anti-trust litigation to prejudice my strict liability infringement rights and my absolute right to amend my Complaint post patent issuance during the lawsuit. 06cv1202 etc. I am sending a copy of this letter to the new Chief Judge of the SDNY, Hon. Laura Taylor Swain, to the 2nd Circuit Disciplinary Board, to the U.S. Attorney for the SDNY, and appending it with relevant documents to Judge Loran Schofield with a motion to replead etc. Document filed by Amy R. Gurvey.(sc) Modified on 3/10/2022 (tg). (Entered: 03/09/2022) |
| 03/09/2022 | | Supplemental ROA Sent to USCA (Electronic File). Certified Supplemental Indexed record on Appeal Electronic Files for 443 Letter, filed by Amy R. Gurvey, 442 Letter, filed by Amy R. Gurvey, 440 Notice (Other) filed by Amy R. Gurvey, 441 Order, USCA Case Number 2022-1331, were transmitted to the U.S. Court of Appeals. (tp) (Entered: 03/09/2022) |
| 03/10/2022 | 444 | ORDER: It is hereby ORDERED that the letter is stricken from the docket because it pertains to an attorney disciplinary matter handled by the Grievance Committee. The Clerk of Court is respectfully directed to (1) strike the entries and letters at Dkt. Nos. 442 and 443 from the record and (2) ensure the letter reaches the Grievance Committee, if it has not already. (Signed by Judge Lorna G. Schofield on 3/10/2022) (tg) Transmission to Attorney Services/Help Desk. Transmission to Office of the Clerk of Court for processing. (Entered: 03/10/2022) |
| 03/15/2022 | 445 | LETTER addressed to Judge Lorna G. Schofield from A. Gurvey, dated 3/6/22 re: "MOTION TO VACATE OR RECONSIDER ORDER ENTERED 12/2/21 DENYING A REPLEADED AMENDED COMPLAINT POST JUDGMENT & PATENT ISSUANCE, TO RECUSE JUDGE AND VACATE ORDERS RETROACTIVE TO 2016." Document filed by Amy R. Gurvey.(sc) (Entered: 03/16/2022) |
| 03/17/2022 | 446 | MEMO ENDORSEMENT on re: 445 Letter, filed by Amy R. Gurvey ENDORSEMENT: Plaintiff's application for reconsideration of the Court's December 2, 2021, Order denying Plaintiff's prior motion for reconsideration is denied for the reasons stated in the December 29, 2021, Order. Plaintiff was advised that there is no basis for requesting reconsideration ad infinitum. The remainder of Plaintiff's arguments in this application are without merit. The December 29, 2021, Order advised Plaintiff for the second time that if Plaintiff files baseless materials, an injunction may be imposed, requiring Plaintiff to seek permission first before filing anything further on the docket. The Second Circuit has identified five factors relevant to the decision to impose a filing injunction: "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation," including whether the litigant has "an objective good faith expectation of prevailing[]; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties." Vassel v. Firststorm Props. 2 LLC, 750 F. App'x 50, 52 (2d Cir. 2018) |

EXHIBIT 47
Page 714 of 808

(summary order) (quoting Safir v. Dole, 792 F.2d 19, 24 (2d Cir. 1986) (internal quotation marks omitted)). Though the Court is reluctant to impose an injunction, each factor counsels in favor of imposing a filing bar. Plaintiff has a history of meritless litigation, in this case and others. See Gurvey v. DiFiore, No. 19 Civ. 4739, 2021 WL 4480553, at *6 (E.D.N.Y. Sept. 30, 2021). Second, Plaintiff has already been instructed not to file motions for reconsideration of orders denying a motion for reconsideration. Third, Plaintiff, an attorney, is not entitled to any special solicitude as a pro se litigant. See id. Fourth, Plaintiff's repeated meritless lawsuits are a needless imposition on defendants and burden on the courts. Fifth, other sanctions cannot adequately protect the courts and the other parties. Plaintiff is barred from filing without prior leave of the Court (1) any further documents in this case except for those captioned for the Second Circuit and (2) any further actions in the Southern District of New York against the Defendants arising out of the events alleged in the Third Amended Complaint. (Signed by Judge Lorna G. Schofield on 3/17/2022) (ks) (Entered: 03/17/2022)

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 03/23/2022 12:38:11 | | | |
| PACER Login: | amygurvey. | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:06-cv-01202-LGS-HBP |
| Billable Pages: | 30 | Cost: | 3.00 |

EXHIBIT 47
Page 715 of 808

# EXHIBIT 5

EXHIBIT 47
Page 716 of 808

315 Highland Avenue
Upper Montclair, NJ  07043
March 29, 2022

SDNY Attorney Grievance Panel      EDNY PRO SE 225 Cadman Plaza East
500 Pearl Street      Brooklyn, NY 11201 **19-cv-4739** (LDH)
Circuit Executive's Office Room 820      NYS Attorney General
New York, NY  10007      L'Abbate Balkan Colavita & Contini,LLP
Hon. P. Kevin Castel
Julie Allsman, Esq., outside counsel

cc: Appellate Division First Dept.
Hon. Rolando Acosta, Presiding Justice
cc: Susanna Rojas, Clerk of the Court
27 Madison Avenue
New York, NY  10010

In re Amy R. Gurvey, US Patentee

Petitioner Pro Se Amy R. Gurvey, a US patentee and inventor of ticketing and ticketing management apparatus and utility patents with multiple corporate and NYS agency infringers, declares to the truth of the following statements in filing this letter seeking permission to vacate orders of the Appellate Division First Dept. entered December 4, 2012 and April 21, 2016 entered without jurisdiction over Petitioner in the capacity of an attorney and based on confirmed ex parte communications between judges of the First Dept. and each of the NYS Attorney General and Richard Supple, Esq. These ex parte communications that were ongoing between 2012 and 2016 conflicted out the entire court and preventing entry of further orders against Petitioner's interests.  AG and Supple are Petitioner's respective adversaries in this matter and in the SDNY patent infringement lawsuit. 06cv01202.

Supple was never permitted by law to defend the Cowan Liebowitz & Latman NYC patent practitioners and managing partners before SDNY because he was serving on the AGC when Petitioner's ethics complaints filed against the Cowan firm before the First Dept. attorney grievance committee ("AGC") Judiciary

EXHIBIT 47
Page 717 of 808

Law ("JL") Part 1240.6d. Petitioner properly sought orders to compel federally-mandated USPTO patent files being unlawfully withheld that is the state's duty to compel pre patent issuance. *Gunn v. Minton*, 133 S. Ct. 1059 (2013); *Virginia Office of Protection and Advocacy v. Stewart*, 563 US 247 (2011)(Scalia J.)  Supple was also serving as a personal aide to former presiding justice Luis Gonzalez on the First Dept. AGC when Petitioner's ethics complaints were duly filed. Based on the documents since discovered, it was Supple's plan as a fraudulently undisclosed AGC officer as to Petitioner to engage in unlawful ex parte communications with the justices to get ex parte orders entered adverse to Petitioner's interests without due process.  To comply with due process, the complete state files including the ethics files against Supple's clients, NY lawyers Cowan Liebowitz & Latman, were required to be compelled by the state.  JL Part 1240.7.  The First Dept. has disciplinary jurisdiction over the Cowan lawyers and Supple but not over Petitioner. If any lawyer or client wanted to file an ethics complaint against Petitioner, they had to do so before the Third Dept. The Third Dept. confirms no ethics complaints ever filed against her.

Supple harbored conflicts of interest between his duty to the public and his defense retainer for the Cowan lawyers.  Supple and his former firm, Hinshaw & Culbertson, unlawfully accepted the SDNY defense retainer for the same Cowan lawyers Petitioner reported for serious USPTO patent ethics violations and admitted conflicts of interest since 2002. The damage claims are before SDNY since 2006 (06cv01202) but the patent strict liability aiding and abetting infringement and non-joinder claims have still never been adjudicated.  Petitioner continues to be denied all patent discovery and an amended complaint post patent issuance in defiance of Second Circuit and Federal Circuit law based on Supple's illegally ex parte communications with justices in the AD between 2012-2016 and with the SDNY magistrate, Henry Pitman.  Magistrate Pitman has since left the court but magistrate and judge continued defiance of the law in failing to immediately disqualify Supple from the Cowan lawyers' defense. JL Part 1240.6d. <u>A pro se</u>

EXHIBIT 47
Page 718 of 808

<u>litigant cannot wait until the end of the case to disqualify a judge engaging in ex parte communications with an attorney breaching attorney client privilege owed by his defendant law firm clients to the pro se litigant.</u>

To comply with due process, Petitioner was entitled to complete production of her state files (JL Part 1240.7) that have still not been produced by the First Dept., and the Cowan firm's responses to the USPTO ethics complaints. Petitioner got neither in further violation of Petitioner's right to equal protection of NY laws.

Petitioner now seeks to (i) to vacate the orders of the AD First Dept. entered December 4, 2012 and April 21, 2021 entered without jurisdiction over Petitioner; (ii) because justices were engaging in ex parte communications with Supple and AG requiring their disqualification and vacatur of all orders after disqualification was mandatory; (iii) because a collateral estoppel order entered by Justice Gonzalez, was legally and factual impossible based on Justice Gonzalez's concession that Petitioner was never an attorney representing a client in a previous matter in NYS and could never be sanctioned as an attorney (JL Parts 1240.1, .2); (iv) because Supple was Justice Gonzalez's aide engaging in ex parte communications with justice at the AGC and at the same time was unlawfully defending the Cowan lawyers in Petitioner's SDNY lawsuit since 2006; and (v) because Petitioner has the right to challenge the constitutionality of Judiciary Law Section 90 and certain of the JL Part 1240 statutes including Part 1240.6d, Part 1240.7, Part 1240.18 that when read in conjunction with NY's Executive Law subd. 63-1 make due process in favor of a targeted respondent impossible because the respondent will never be allowed to compel the complete files and investigate whether abuse of process is related in retaliation for filing otherwise proper ethics complaints against NYC attorneys. AG is required to defend both the AGC staff attorneys but has a separate duty to defend the presiding justice of the AGC who is adjudicating the disciplinary action making improper ex parte communications with the judge by AG on behalf of the AGC staff attorneys likely, privileged and undiscoverable. *DC Court of Appeals v. Feldman*, 460 US 462, 470 (1983)(Brennan, J.).

EXHIBIT 47
Page 719 of 808

4

There is no dispute from the Court's April 21, 2016 order that AGC officers,
clerks and/or justices in this Dept. allowed Supple, an AGC executive aide, ex parte
access into Petitioner's confidential state files to insert unserved and forged
documents without a warrant. The order says Supple's unlawful ex parte insertions
were considered by this Court. JL Part 1240.18. The consideration of the ex parte
documents required court to disqualify itself from the proceeding and restrain from
issuing any further orders. The entire court became corrupted. The court cannot
engage in ex parte communications with the attorney for an adverse party that is
breaching the attorney client privilege of the client, particularly not when the
litigant is pro se before the Court in a faux disciplinary proceeding and in a US
patent litigation. *Link v. Wabash R. R. Co.*, 370 US 626 (1962). The result in this
case has been ex parte corruption of the SDNY files and Petitioner's state files
without due process and now also at the NYS Office of Court Administration.


This is an unusual case. Petitioner is not a practicing attorney in NYS and
was retired by the Third Dept. in 1998. Petitioner has another career, but needs to
enter district court to protect and get paid for unauthorize use of her US ticketing
patents. Gurvey US Patent Nos. 7603321; D647910S. There was no license to
suspend for six months by Judge Gonzalez ex parte in 2012 when Supple got an
order signed. Petitioner is in excellent standing in the State of CA. Petitioner has
no motive to be reinstated in NYS unless the court will agree that Petitioner is not
subjecting herself to the jurisdiction of the court that does not exist. JL Part
1240.2. Petitioner is owed considerable strict liability patent infringement damages
from the SDNY defendants including Supple's clients at law firm Cowan Liebowitz
& Latman and Live Nation under 35 USC 271.

The justices of this court also engaged in ex parte communications with AG,
defense attorney for its AGC staff attorneys who engaged in fraud and drafted a
disciplinary petition with forged documents in 2008 and embossed the photocopied
signature of 2002 chief counsel Paul Curran who was dead of cancer in 2007. The

EXHIBIT 47
Page 720 of 808

AGC staff attorneys are believed to have conspired with Supple who was serving on
the AGC as an executive aide.  The staff attorneys and clerks gave (or Supple got)
ex parte access into Petitioner's confidential files to corrupt the files further and
inserted the documents admittedly considered ex parte by this Court. The inserted
documents include evidence of Supple's ex parte communications with the SDNY
magistrate commencing in 2012.

    Petitioner was admitted to the Third Dept. in NYS in 1985 and retired from
the Third Dept. in 1998 when she organized a patent and production company with
offices in California and New Jersey. All of Petitioner's Third Dept. data has since
been removed from the NYS Office of Court Administration. The Third Dept. has
been petitioned to produce its files by mandamus (Case No. 529146). The Third
Dept. admits no ethics complaints were ever filed against Petitioner.  Supple and
this Court had to file ethics complaints with Third Dept. against Petitioner, which
was not done, and the Third Dept. never sent Petitioner a notice of an ethics
complaint filed.

    In addition, Supple was serving as a personal executive aide to former First
Dept. Justice Gonzalez when Petitioner's serious US patent ethics complaints
against the Cowan SDNY law firm defendants were filed.  The complaints related to
admitted conflicts of US patent interest, filing defective patent applications at the
USPTO, abandoning Petitioner's patent applications, withholding the files from
Petitioner, and offering Petitioner an illegal retainer to invest in her patent
applications in defiance of *Buechel v. Rhodes*, 285 AD 2d 274 (1st Dept. 1999).

    Supple could never file a notice or appearance for the Cowan lawyers before
SDNY in 2006 or continue in that retainer.  JL 1240.6d. Supple and his firm,
Hinshaw & Culbertson, LLP refused to withdraw from the Cowan firm's SDNY
representation, resulting in an ethics complaint filed against Supple, that was
ignored.  Petitioner's ongoing ethics complaints against the Cowan lawyers were

EXHIBIT 47
Page 721 of 808

also ignored and Petitioner received no orders to compel her USPTO patent files in response to those complaints or Cowan's answers to her complaints in defiance of due process of law. See *Anderson v. First Dept. Disciplinary Committee, State of NY et al.*, 614 F. Supp. 2d 404 (SDNY 2009)(Headnotes, 15, 16)

Suspiciously, in 2005 after Petitioner filed the first ethics complaints, an admonition notice was sent to Petitioner without jurisdiction when her license in in NYS was already retired by the Third Dept. seven years earlier. The AGC acknowledged Petitioner's claim of lack of jurisdiction and that the First Dept. had no legal power to enter any collateral estoppel notice against Petitioner because, as Justice Gonzalez conceded in 2012, Petitioner never appeared as an attorney in a representative capacity in any previous case in NYS. This means that by factual impossibility no attorney sanction could have been entered against Petitioner. That a previous attorney sanction was entered is the minimum requirement for jurisdiction in favor of the AGC First Dept. which the court never had.

In 2008, the follow up disciplinary petition was manufactured by AGC staff attorneys with Supple's help. The documents concocted and mailed had forged signatures. Nothing further was cited by AGC attorneys in violation of First Dept. regulations. 22 NYCRR 603, 4, 603.9  The petition had the photocopied signature of 2002 AGC chief counsel Paul Curran, who left the First Dept..AGC in 2002 and was dead of cancer in 2007. No current AGC member signed the petition.

Petitioner was then absolutely entitled to production her complete state and files from the state in response to the petition including the ethics files related to the Cowan complaints. She never got the files. She never got the ethics files against Cowan or Supple. These files were critical to determine whether Petitioner was retaliated against in violation of the United States Constitution for filing otherwise proper ethics complaints.

. Petitioner, a pro se litigant, had and retains the constitutional right to investigate whether she was being targeted and having process abused against her.

EXHIBIT 47
Page 722 of 808

Case 2:23-cv-04381-MEMF-E   Document 22-6   Filed 09/08/23   Page 218 of 303   Page
Case 22-725, Document 3, 04/07/2022, 3293143, Page5 of 87
ID #:1121

7

*Erickson v. Pardus*, 551 US 89 (2007). Petitioner responded to the First Dept. AGC
in 2008 that they had no jurisdiction over her and had to produce the complete state
files and ethics complaint files. They were never produced, meaning Petitioner was
denied due process of law and deprived of her constitutional right to cross-examine
adverse witnesses.

In 2011, Petitioner filed an original Article 78 mandamus proceeding and
still did not get the files compelled by Supreme NY, NY County (100774). Petitioner
challenged the constitutionality of the Judiciary Law statutes that functioned to
deprive her of her complete state files while process was being abused against her
without jurisdiction. The case was transferred sua sponte and dismissed sua sponte
by this Court, now with justices being defended by AG. Because AG was already
defending the AGC staff attorneys who whipped up the frivolous petition
documents, the judge was necessarily engaging in ex parte communications with
the attorney for adverse parties; and the whole court became corrupted.

On December 4, 2012, without Justice Gonzalez disclosing his ex parte
communications with Supple, an order was entered suspending Plaintiff's already
retired license for 6 months. The sanction was over July 2013. It was not removed.
However, there was no license in existence to suspend. In addition, in the order
Justice admitted that Petitioner never previously appeared as an attorney in a case
before any NYS court, as is required for any admonition notice or petition based on
collateral estoppel. JL Part 1240.2. No collateral estoppel petition was factually or
legally possible. It appears the court wanted to deny Petitioner's retirement and
restrain her illegally.

The Third Dept. reported that no ethics complaint had ever been filed against
Petitioner. The First Dept. AGC officers and Supple were required to contact the
Third Dept. to file complaints against Petitioner in the capacity of attorney which
they never did. Petitioner never appeared in the capacity of attorney explaining
why the Third Dept. was never contacted. Acts of abuse of process by attorney
grievance panel officers without jurisdiction are not protected by immunity.

EXHIBIT 47
Page 723 of 808

# CONSTITUTIONAL VIOLATIONS

First Dept. justices who were presiding over the transferred 2011 Article 78 proceeding (110774), then had a conflict. AG was representing both the AGC staff attorneys and their justice supervisors at the same time. AGC attorneys had no legal right to send either an admonition notice in 2005 or a disciplinary petition to Petitioner in 2008 based on collateral estoppel..

The justices defied the law and engaged ex parte communications with attorneys for adverse parties – the AGC staff attorneys and then with Supple.

Petitioner moved to vacate Justice Gonzalez's 2012 order in 2013 as without jurisdiction. *Wilcox v. Supreme Council of Royal Arcanum*, 210 NY 370 (1914). This court waited 3 ½ years until April 21, 2016 to denying vacatur, clearly to avoid the statute of limitation on wrongful state action, 42 USC § 1983. In its order, the court admits that Supple entered Plaintiff's confidential state files and inserted unserved documents ex parte and the inserted documents were considered by the court in denying vacatur of Justice Gonzalez's order.

This means that now for the second time, the court had to be disqualified based on ex parte consideration of Supple. This time it was Supple's ex parte submissions as an attorney for adverse parties in the SDNY lawsuit (the Cowan law firm defendants).

In 2017, Petitioner sent a follow up letter and filed a new original mandamus petition based on enactment of the JL Part 1240 amended statutes, to respondent Hon. Respondent Rolando Acosta. **Petitioner was not asked to file for permission**. In response, the Court sua sponte transferred Petitioner's petition (132-17) to the Second Dept. where the petition remains.

EXHIBIT 47
Page 724 of 808

A judge must disqualify himself for engaging in ex parte communications
with an adverse party's attorney, here each of the AG and Supple at different times.

Now Petitioner's state files in the NYS Office of Court Administration
Attorney Membership Office have been unilaterally altered ex parte.  All
Petitioner's Third Dept. data has been deleted.  The only order that remains is
Justice Gonzalez's December 4, 2012 order that was required to be immediately
vacated but was not.. *Wilcox v. Supreme Council of Royal Arcanum*, 210 NY 370
(1914).  The April 21, 2016 order of this court is not even posted.

Petitioner's state files were discovered in March 2020 to now suspiciously
contain documents signed by SDNY Magistrate Henry Pitman with whom Supple
engaged in additional ex parte communications before SDNY starting in 2012. This
was the same time, Supple was engaging in ex parte communications with Judge
Gonzalez before the six month sanction was entered ex parte without jurisdiction.
No due process was afforded Petitioner in either court, Supple's plan was to engage
in ex parte communications by using his concealed state AGC post to get and insert
ex parte orders adverse to Petitioner's interests in multiple courts.

Judge Pitman's orders must be vacated and a mandamus petition is pending
in the Federal Circuit.  Judge Pitman did not timely disqualify himself and the new
Judge Schofield improperly did not vacate the orders, disqualify Judge Pitman, or
disqualify Supple from further representing the Cowan defendants based on JL
Part 1240.6d. Then Judge Schofield entertained further frivolous motions from
Supple while denying Petitioner strict liability infringement damages against all
SDNY defendants that made the case an arising under patent case until the
exclusive appellate jurisdiction of the Federal Circuit.

## MEMORANDUM OF LAW

No reciprocal sanction can be entered against an individual or a respondent
attorney without notice or opportunity to be heard, when the individual was

EXHIBIT 47
Page 725 of 808

Case 2:23-cv-04381-MEMF-E    Document 23-6    Filed 09/08/23    Page 221 of 303   Page
Case 22-725, Document 3, 14/01/2022, 3293143, Page54 of 87
ID #:1124

10

deprived of due process of law in the previous matter and/or denied a full and fair opportunity to litigate a sanction in the capacity of attorney. *In re Gouiran* 58 F. 3d 54 (1995)(Citing *Selling v. Radford*, 243 US 46 (1917). A pro se litigant is not the legal victim of abuse of process by the state. Petitioner got no due process from the state AGC, never got the complete files compelled or the Cowan ethics compelled in defiance of JL Part 1240.7, not by the State and not by the SDNY Magistrate. The complete files are relevant to the issue of whether processed was illegally abused against Petitioner to gain litigation advantages for the Cowan lawyers in the SDNY strict liability patent lawsuit and at the same time to avoid liability for wrongful state action by state officers.

An order that adversely implicates the constitutional rights of a litigant especially a pro se litigant can never be entered *sua sponte*. *Link v. Wabash R. R. Co.*, 370 US 626 (1962). The order of Justice Gonzalez was entered sua sponte, the order of this Court dismissing the Article 78 petition (110774) without notice or opportunity to be heard was entered sua sponte in 2013, and an order was entered sua sponte by this Court in 2016 conceding consideration of additional ex parte illegal submissions by Supple inserted into Petitioner's confidential state files without a warrant. JL Part 1240.18.

Those documents have now been discovered to include documents signed by Judge Pitman based on illegal ex parte sessions with Supple commencing in 2012 and during which Supple was breaching Petitioner's attorney client privilege as attorney for the Cowan defendants. Petitioner's motions seeking discovery and signed subpoenas against the USPTO were ripped out of the SDNY file room by Supple also sua sponte. Then Supple was still not disqualified from the Cowan defendants' representation by the SDNY that allowed him to continue his illegal ex parte corruption both of the SDNY and the state files. JL Part 1240.6d.

Petitioner challenges the 2017 sua sponte transfer of the mandamus petition out of the First Dept. to the Second Dept. without notation of the reason on the docket. (132-17).

EXHIBIT 47
Page 726 of 808

Petitioner challenges the constitutionality of NJ's Judiciary Law when read in conjunction with NY's Executive Law subd. 63-1 that makes due process compliance in favor of an attorney respondent, impossible.

Because AG has a duty to defend both AGC staff attorneys who manufacture and file disciplinary proceedings, and the justices who have a purely administrative non-judicial duty to supervise the AGC staff attorneys, the justices are necessarily engaging in ex parte communications with AG for their own defense and all communications become privileged. The communications with AGC staff attorneys become privileged. The Judges are then required to disqualify themselves, creating a Catch 22 and the respondent will never get the files compelled.

**The same theory applies to the order entered April 21, 2016 requiring Petitioner get the prior permission of the court when the court can't issue any further orders after engaging in ex parte communications with adverse parties' attorneys. This is a Catch 22.**

Judge Pitman's notes entered without due process were discovered in Petitioner's retirement state files. The Office of Court Administration files are likewise corrupted. Now the SDNY Grievance Panel admitted entered reciprocal orders without notice or any opportunity to be heard to determine removing Petitioner from the roster of SDNY attorney. Petitioner did not receive due process in any prior matter.

Judges Pitman and Schofield were and remain required by law to disqualify themselves and Supple from the SDNY lawsuit and failed to do so. They were petitioned to vacate orders after ex parte communications with Supple.

Based on conceded ex parte communications with adverse party's attorneys while Petitioner was pro se in this court, Petitioner prays that the court vacate its

EXHIBIT 47

Page 727 of 808

orders entered December 4, 2021 and April 21, 2016, explain why the court transferred Petitioner's 2017 mandamus petition sua sponte to the Second Dept.; and order that the matters before this court, the Second Dept. and Third Dept. be consolidated before the Third Dept. to prevent inconsistent judgments.

Seven agencies of the State of NY are using Petitioner's ticketing and management patents without payment of just compensation in violation of the Fifth Amendment. Petitioner is entitled to have the ex parte orders entered without jurisdiction and due process vacated immediately from her record. *Wilcox v. Supreme Council of Royal Arcanum*, 210 NY 370 (1914). Petitioner's complete state files and the ethics complaint files against the Cowan lawyers and Supple must also be compelled to comply with due process and because they are mandated by NY statutes and are evidence of abuse of process and Supple's ex parte communications with state officers. JL Part 1240.7

The files in the Office of Court Administration show delinquency notices for dues not owing only since 2013, mysteriously after Justice Gonzalez's order was entered. For the time 1998 – 2013 when Petitioner was already retired by the Third Dept. and she paid no dues, there is no delinquency notice.

March 28, 2022

Upper Montclair, NJ 07043                    /amygurvey/

_____

AMY R. GURVEY

EXHIBIT 47
Page 728 of 808

# EXHIBIT 6

EXHIBIT 47
Page 729 of 808

RECEIVED

2021 DEC 22 PM 2:33

U S DISTRICT COURT SDNY

315 Highland Avenue
Upper Montclair, NJ 07043
amygurvey@gmail.com
December 21, 2021

Pro Se Window, Room 200
cc: Chambers, Hon. Lorna G. Schofield

United States District Court
Southern District of NY
500 Pearl Street
New York, NY 10007

U S DISTRICT COURT SDNY    2021 DEC 22 PM 2:33    RECEIVED

Re: *AR Gurvey v. Cowan Liebowitz & Latman, PC, Live Nation, Inc., Instant Live Concerts, LLC, NexTicketing, Mike Gordon of Phish, et al.*

Dear Judge Schofield:

Plaintiff has been hospitalized since early December 2020 (please see doctor's note attached) and respectfully requests that the Court accept this motion for reconsideration of the Court's order entered 12-2-21 as within time.

Plaintiff moves for reconsideration under FRCP Rules 59(e), 60 (b) and Local Rule 6.3. *Metzler Investments Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F. 3d 133 (2d Cir. 2020) settled the law on Plaintiffs' right to vacate and replead an amended complaint post judgment (which in this case was also post issuance of an anticipated US patent). Contrary to the court's order, Plaintiff previously moved for the same relief at least four times under the 2d Circuit's previous 2011 decision in *Grant Williams v. Citicorp* decision, 659 F. 3d 208 (2d Cir. 2011) cited in *Metzler*. Plaintiff meets all criteria iterated in both cases to have been granted Rule 60(b) relief and a repleaded amended complaint post judgment.

More important, however, is the court's seemingly contumacious defiance of US Supreme Court mandates in patent cases. There is no such thing as "laches" or late papers as a viable defense in a patent infringement matter. This is the law since 2017. *SCA Hygiene Products Aktiebolag v. First Quality Baby Products*, 137 S. Ct. 954 (2017).

EXHIBIT 47
Page 730 of 808

An inventor can file for infringement damages - strict liability or statutory damages against any infringer - for the full duration of patent protection and in every instance is entitled to recover six years of damages retroactive to the date the lawsuit is filed. Ergo, the court's order flies in the face of the law. An issue in this motion, however, will be when the effective date accrued.

Plaintiffs' first motion to vacate under Rule 60(b) and replead an amended complaint post judgment was date stamped, filed and docketed on April 22, 2010. It was printed in stellar fashion in Plaintiff's then pending appeal to the 2d Circuit, 09-2185;10-4111, Vol. III, pages 671 et seq. that was filed pre-patent issuance. On remand to the SDNY, the anticipated patent had issued. However, the essential docket entry had vanished into thin air. Plaintiff was then denied the right to replead four times to get infringement damages for eight of the following years, including by Your Honor.

The other orders of the court demonstrate factual inconsistencies with the court's current order. During hearing on November 29, 2016, the court ordered it would entertain summary judgment motions without the repleaded amended complaint. Plaintiff cited to many Federal Circuit cases and the 2d Circuit's 2011 decision and order in *Grant Williams v. Citicorp*, 659 F. 3d 208 (2d Cir. 2011), cited in *Metzler*. This is when the NY Legal Assistance Group had to request that the court separate Plaintiff and the Cowan defendant firm's lawyer, Richard Supple, Esq. in the courtroom. Previously, the court notified it was hiring a special patent master, improperly charged Plaintiff's account $10,000 to pay for the master, and then never hired the master. It took over two years to get the money refunded on application of the NYLAG. Plus, this case is anything but a simple malpractice case, but instead a conflicts of interest and fraudulent breach of duty case, with prevailing six year statutes against the Cowan firm. The claim that Cowan inserted Plaintiff's proprietary technology into a PCT patent application for Legend Films, Inc., 02 US 14192, when Cowan admitted Legend's draft did not disclose patentable subject matter and then inserted Plaintiff's stolen content editing technology to create a patentable invention, does not accrue until the US patent issued to Legend on February 20, 2007. Emails said that Cowan was *"following the client's instructions"*.

Most respectfully, the court should have spent more time figuring out from the volumes of dockets in this case, the totality of what the Cowan firm

EXHIBIT 47
Page 731 of 808

did wrong in defiance of USPTO practitioner mandates via its associates, patent of counsels and managing partners. The court should have allowed Plaintiff discovery, and considered how much jurisdictional fraud was contained its client, Live Nation's 2008 Rule 12(b) papers that it had "no NY contacts", all fraudulently filed. Cowan also represents Major League Baseball also infringing Plaintiff's patents but not a party to this case. Mike Gordon and Phish have been using Plaintiffs' patents since Mr. Gordon's wife, Susan Schick, Esq., a former associate at Cowan, touted the virtues of Plaintiff's inventions to the firm's partners.

Plaintiff also won binding arbitration against the Cowan firm on August 4, 2009 after the case was prematurely closed and when arbitration was suspiciously never ordered on the docket; but patent, patent malpractice and conflict of interest discovery had been improperly stayed based on Cowan's untruthful papers filed since 2006; and was never granted whatsoever.

In the interests of justice and Plaintiff's property rights under the Fifth Amendment, this Court must allow Plaintiff to protect her valuable US ticketing patents from infringers residing in this district. It has failed to do so for 12 years, since the first anticipated US ticketing patents issued on October 13, 2009 and November 1, 2011.

Plaintiff's company, LIVE-Fi® Technologies' comments regarding the very unpopular merger of Live Nation and Ticketmaster was posted on the DOJ's Media and Entertainment website as entry "E" in 2010 and severe sanctions for defiance of the consent decree and competitive impact statement ordered in 2010 were issued against the merged entity on January 8, 2020. Plaintiff's letter in opposition remains on the site to this day, while this Court has somehow denied Plaintiff constitutional access to protect and get paid for willful and contributory infringement. In the merger proceedings in 2009 and 2010, defendant Live Nation admitted it was distributing an infringing ticketing system imported from CTS Eventim of Germany for its owned and operated venues in NYC – House of Blues, Irving Plaza and Roseland Ballroom- since 2008, but in this case seven attorneys at Baker Botts and Hinshaw & Culbertson swore under oath that Live Nation had no "NY contacts" to answer Plaintiff's claims.

If the district court denies this motion, which in good conscience it should not, Plaintiff will certainly appeal to the Federal Circuit.

EXHIBIT 47
Page 732 of 808

Please be advised that Plaintiff was represented by counsel early in the litigation and is not pro se by choice. Based on the now established liaison between Cowan's attorney Mr. Supple and Plaintiff's attorney Lee Squitieri, Esq., Plaintiff was forced to continue the case pro se after Mr. Squitieri was somehow granted unilateral withdrawal in 2010 suspiciously within six months after the first US patent issued.

There can be no prejudice to defendants if Plaintiff's motion is granted.

Respectfully submitted,

/amygurvey/

Amy R. Gurvey
US Patentee Pro se

EXHIBIT 47
Page 733 of 808



**Mount Sinai**

**The Mount Sinai School of Medicine
Division of General Internal Medicine
Center for Advanced Medicine**

**Internal Medicine
Associates (IMA)**

Located at:
17 East 102⁰ Street
7ᵗʰ Floor
New York, NY 10029

**Mailing Address:**
Mount Sinai Medical Center
Box 1087
One Gustave L. Levy Place
New York, NY 10029

Phone: 212-659-8551
Fax  212-831-8116

Amy R Weissbrod-Gurvey
315 Highland Avenue
Pvt
Montclair NJ 07043-1026

December 14, 2021

To Whom It May Concern,

Amy Weissbrod-Gurvey has been admitted to Mount Sinai Hospital from
12/09/2021 to 12/14/2021 for medical treatment. Please excuse her absence.

If further information is requested, please obtain written permission.

Sincerely,

Nicholas Scalzo, MD

EXHIBIT 47
Page 734 of 808

AMY R. GURVEY
US Patentee/Plaintiff PRO SE
315 Highland Avenue
Upper Montclair, NJ 07043
PH 917-733-9981
amygurvey@gmail.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Application DENIED as untimely. Plaintiff seeks to vacate the judgment entered on July 7, 2017, under Rule 60(b). Plaintiff's motion is based largely on new evidence, the evidence of a patent. Rule 60(c)(1) provides that a motion under Rule 60(b) for reasons of newly discovered evidence must be filed "no more than a year after the entry of the judgment." Here, Plaintiff filed the motion more than four years after the entry of judgment. To the extent Plaintiff's motion is based on other reasons under Rule 60(b)(6)'s catch-all provision, it still must be "made within a reasonable time." Fed. Rule. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time . . . ."). Plaintiff's motion is devoid of facts or argument to support finding that it was made within a reasonable time. Because Plaintiff's Rule 60(b) motion to vacate is denied as untimely, Plaintiff's motion for leave to amend is also denied. "It is well established that a party seeking to file an amended complaint post-judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (internal quotation marks omitted).

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 435 and to mail a copy of this Order to Plaintiff.

Dated: December 2, 2021
New York, New York

**Gurvey v. Cowan, Liebowitz & Lathman, PC et al.**

Case No. 06 Civ. 1202 (LGS)

**Motion under FRCP Rules 60(b)(6) and 15 to Vacate Judgment and Replead an Amended Complaint Post Judgment**

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

EXHIBIT 47
Page 735 of 808

This motion seeks relief under Rule 60(b)(6) to vacate the 2017 summary
judgment orders of this Court and to replead an amended complaint post
judgment under Rule 15. This motion is fully supported by the 2d Circuit's
decision and order in *Metzler Investment Gmbh v. Chipotle Mexican Grill, Inc.*, 970
F. 3d 133 (2d Cir. 2020) with no exception. Amy R. Gurvey, a US Patentee
and the Plaintiff PRO SE herein declares to the truth of the following
statements in support of this motion.

    1. *FRCP Rules 60(b), and 15(a)(2)*

    "A district court abuses its discretion when it 'bases its ruling on an
incorrect legal standard or a clearly erroneous assessment of the facts.' " *City of
New York v. Group Health Inc.*, 649 F.3d 151, 156 (2d Cir. 2011) (quoting *Bronx
Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 348 (2d Cir. 2003)). This is
exactly what transpired in this lawsuit since remand from the Second Circuit in
2012. 462 Fed. Appx. 26 (Feb. 10, 2012)

    2.    Plaintiff's Rule 60(b) motion with amended complaint post patent
issuance was duly docketed, date-stamped, served and filed on April 22, 2010
during the first appeal to the sua sponte dismissal orders of the district court
entered April 27, 2009. However, somehow Plaintiff's motions were deleted
*sua sponte* from the SDNY docket while the first appeal was pending (09-2185-;
10-4111). The Second Circuit did not hear Plaintiff's claims for strict liability
patent infringement damages in the first appeal because Plaintiff's first US
ticketing patent – anticipated in paras. 16-18 of the Third Amended Complaint
- issued five months *after* the notice of appeal was filed by Plaintiff's attorney,
O. Lee Squitieri. Squitieri then moved to withdraw contending the case was
rigged because Live Nation had been dismissed under Rule 12(b) based on

2

EXHIBIT 47
Page 736 of 808

Case 2:23-cv-04381-MEMF-E    Document 22-6    Filed 09/08/23    Page 232 of 303    Page
Case 1:20-cv-01723-GS-HBP Document 436-2    Filed 04/07/21 Page 66 of 19
Case 22-723, Document 94, 01/30/22, 3eg3240/21 Page 66 of 19

blatantly fraudulent jurisdictional papers. The Second Circuit in fact denied
Plaintiff's motion under FRAP Rule 10(e) to add the patent into the appeal
considering the motions had been date stamped and filed by the district court.
Plaintiff's essential motions were also printed in the Second Circuit Vol. III
Appendix at pp. 671 et seq. with the date stamp of April 22, 2010 and the
motions vanished by the time the appeal was remanded on February 10, 2012.

3.    On remand, and in the face of the DC District Court parallel
orders in *US v. Ticketmaster and Live Nation,* jurisdictional fraud by defendant
Live Nation in this lawsuit was established.[1]  The Dept. of Justice found that at
least sine February 2008, defendant live Nation was importing a ticket system
from ETV Eventim of Germany to manage defendants owned and operated
venues in NYC – House of Blues, Irving Plaza and Roseland Ballroom.

4.    However, since 2012 Plaintiff never got her date stamped motions
reinstated to the docket or adjudicated.  Nor did Plaintiff get patent discovery
on the remanded claims, or an amended complaint granted post patent

---

[1] In *US v. Ticketmaster and Live Nation,* 2010 WL 975407, 975408 (DDC 2010) the
competitive impact statement and consent decree signed and entered on January 25, 2010,
found that since at least February 2008, defendant Live Nation was importing a ticketing
and content management system from ETS Eventim in Germany to services its owned and
operated venues in NYC – House of Blues, Irving Plaza and Roseland Ballroom. In this
lawsuit, eight Baker Botts and Hinshaw & Culbertson defense attorney swore under oath in
Rule 12(b) moving papers filed in April 2008 that defendant Live Nation had no contacts
with NYS to answer for Plaintiff's claims. Based thereon, defendant was dismissed from this
lawsuit on April 27, 2009; and Plaintiff's Rule 60(b) motion based on fraud and Plaintiff's
issued patent that defendant was willfully infringing, was docketed and date stamped timely
on April 22, 2010 and then deleted sua sponte from the docket by the time the first appeal
was remanded from the Second Circuit. On January 8, 2020, defendant was sanctioned
$80mil for contumacious defiance of the consent decree and competitive impact statement
and the proscriptions were extended until 2026.

EXHIBIT 47
Page 737 of 808

issuance. By this time, the case was then an "arising under" patent case based on the US patent claims that had thus far issued to Plaintiff. Nonetheless, the claims that did issued in that patent had been prejudiced by the Cowan defendants and certain priority dates had been forfeited requiring additional continuation applications to be filed. Plaintiff was never allowed to prosecute these claims and delay damages in this court in violation of the Fifth Amendment. *NeuroRepair v. Nath Law Group*, 781 F. 3d 1340 (Fed. Cir. 2015)

5. In addition, the court never ordered the mandatory disqualification of defense counsel Richard Supple of Hinshaw & Culbertson, LLP from the Cowan law defendants' representation. Judiciary Law Section 90 and Judiciary Law Part 1240.6d both required withdrawal or disqualification.

6. At all times relevant, Supple was a concealed executive member of the Appellate Division First Dept. attorney grievance committee ("AGC") dually serving as a state officer when Plaintiff's ethics complaints against the Cowan defendants were filed seeking state orders to compel mandatory return of Plaintiff's complete patent files. Cowan defendants had twice moved unilaterally to withdraw from Plaintiff's applications at the USPTO admitting to a conflict of interest while defying practitioner mandates. 37 CFR 2.10. 2.19.10.66; 11.116.

7. Unbeknownst to Plaintiff, Supple was abusing his concealed state post to enter and corrupt Plaintiff's Third Dept. retirement bar files as Cowan defendants' agent to gain unfair litigation advantages. An order of the Appellate Division entered April 21, 2016 so found. In addition, Cowan defendants and Supple called lawyers and patent lawyers all over the tri-state area to boycott Plaintiff from her field of invention and prevent Plaintiff from retaining another patent attorney to take over prosecution at the USPTO.

4

EXHIBIT 47
Page 738 of 808

Case 2:23-cv-04381-MEMF-E   Document 22-6   Filed 09/08/23   Page 234 of 303   Page
Case 1:06-cv-22925   Document 3   Entered on FLSD Docket 11/22/21   Page 60 of 19
ID #:1137

Certain of these attorneys include Allan Chan and Charles Ruggiero
abandoned Plaintiff's applications after receiving phone calls from Supple as
Cowan defendants' agent. Supple defamed Plaintiff and did not disclosing the
fraudulent breaches of duty by the Cowan defendants. Fourteen of Plaintiff's
continuation and divisional applications mysteriously went abandoned by
Chan and an investigation ensued at the USPTO Office of the Commissioner
against Chan and Ruggiero.

8.     There is no dispute that in 2002 the Cowan defendants tried to
employ Plaintiff as a California consultant under false pretenses to achieve an
interest in Plaintiff's patents. This type of retainer is per se unlawful. *Buechel v.
Rhodes*, 285 AD 2d 2854 (1st Dept. 1999). The Cowan defendants told Plaintiff
they "missed out on the Internet bubble". Two rainmaking partners William
Dippert and Michael Wolfson who were supposed work with Plaintiff for
California patent clients, exited the firm. Dippert told Plaintiff that the firm
was in poor financial condition. The Cowan defendants then delayed sending
Plaintiff a consulting agreement after they paid a headhunter to recruit Plaintiff
By this time Plaintiff had already introduced California patent client into the
firm, Legend Films of San Diego. Legend's founder's owed Plaintiff 3% of the
stock at founder's level for work performed in California since 1999.

9.     Cowan defendants repudiated the offered consulting contract on
May 7, 2002 two weeks after it was signed, and then tried to get out of paying
the headhunter her commission.

10.    Nonetheless, the firm's registration codes were contained on the
cover sheets of two defective patent applications filed for Plaintiff on May 22,

5

EXHIBIT 47
Page 739 of 808

24 and 2002. The application filed by two different Cowan attorneys – Mark
Montague and R. Lewis Gable - that were insufficient to protect Plaintiff's
priority dates. Two provisional applications expired and two formal
application went abandoned. All were forfeited in 2003. In the interim,
Plaintiff caught night staff and a secretary, Jacqueline Revander, copying
Plaintiff's inventorship files and client lists into the firm directories without
authorization.

11.   Thereafter defendants Midge Hyman and William Borchard sent
Plaintiff to California to work with Legend Films. Legend offered Cowan
defendants what they asked for, i.e., a hybrid agreement for patent legal work
inclusive of a stock interest in the company. Cowan defendants told Plaintiff
no stock had been offered, which was a lie. When Plaintiff returned to New
York, she was locked out of defendants' office by defendant Hyman and could
not get her patent files and client lists returned.

12.   Within a year, Plaintiff's applications filed by Cowan defendants
expired and were ultimately forfeited.

13.   As a matter of law, Cowan defendants were serving as Plaintiff's
patent attorneys in spite of what they falsely argued to this court. Cowan's
patent of counsel, R. Lewis Gable, was terminated. Discovery of an email
containing the names of defendant Christopher Jensen and Mark Montague
says that "Cowan was following the client's instructions". Based on Cowan
defendants' tortious interference. Plaintiff lost her 3% stock interest in Legend
Films for work performed in California since 1999. Then Plaintiff discovered
that her content editing algorithms had been inserted into Legend's PCT

EXHIBIT 47
Page 740 of 808

application to achieve a patentable discovery. This application was filed by
Gable without notice to Plaintiff on May 6, 2002 (PCT 02US 14192) and
Plaintiff's name was fraudulent omitted as a co-inventor of the application.
Ultimately, the application as filed achieved a patent on February 20, 2007, the
second date that Cowan defendants attempted unilateral withdrawal from
Plaintiff's representation at the USPTO.  Cowan defendants were never
granted withdrawal by the USPTO for defiance of practitioner conflict of
interest mandates.

14.  Cowan defendants then extended their scheme to the attorney
grievance committee via Supple.  Cowan defendants unlawfully hired Supple
after Plaintiff filed an ethics complaint.  No attorney serving on the AGC when
an ethics complaint is filed against a client can accept the retainer of the
reported firm if the client files an ethics complaint or sues.  JL Part 1204.6d.

15.  Plaintiff who was retired by the Third Dept. in 1998 was never
under the jurisdiction over the First Dept. That Cowan defendants  knew this
is proven by defendants' payment of a fee to the State Bar of California in
March 2002 to reinstate Plaintiff to active from inactive status so that Plaintiff
could consult on patent work for California clients.

16.  Another plaintiff who had a coincident in this court, Linda Grant
Williams, alleged she was boycotted by several law firms that were
representing clients harboring conflicting interests with her business method
for financing airport terminals.  Grant Williams did not get a patent and her
case was remanded to the state to adjudicate state Donnelly Act damage
claims.  Grant Williams, however, was granted the right to replead her

7

EXHIBIT 47
Page 741 of 808

complaint post judgment on appeal to the Second Circuit. _Grant Williams v. Citicorp_, 659 F. 3d 208 (2d Cir. 2011).

17.    Plaintiff's case if far more compelling against both the Cowan defendant lawyers and clients defendant Live Nation and by Mike Gordon of Phish. Gordon is married to a former Cowan senior associate, Susan Schick. In 2002, Schick who lauded the significance and value of Plaintiff's inventions to the live music industry, enticing the firm partners to offer Plaintiff the illegal retainer to invest in her patent applications. Schick pleaded that she be allowed to work on Plaintiff's patents. The firm realized there was an irreconcilable conflict of interest when defendant Live Nation organized a subsidiary, defendant Instant Live Concerts, to distribute live CDs to ticketholders as local clubs in Boston, and then began negotiations to acquire a recording patent to expedite CD handouts.

18.    However, Cowan defendants went too far and began organized corruption in Plaintiff's bar files. As Cowan defendants' agent, Supple, was never allowed to be retained. Supple was unlawfully dually serving as a state AGC officer. Cowan defendants and Supple conspired to commit crimes in Plaintiff's retirement Third Dept. bar files, defame Plaintiff to attorneys and patent lawyers, and engage in wrongful state action with other AGC staff attorneys and officers in Plaintiff's confidential state files. The plan which was successful was to have Supple's AGC supervisor, Judge Luis Gonzalez, enter a sanction order sua sponte without notice or jurisdiction. Plaintiff was already 14 years retired in NYS and there was no license to sanction.

19.    Orders that adversely implicate the constitutional rights of litigants can never be entered sua sponte. _Link v. Wabash R. R. Co.,_ 370 US 626 (1962).

8

EXHIBIT 47
Page 742 of 808

Case 2:23-cv-04381-MEMF-E   Document 22-6   Filed 09/08/23   Page 238 of 303   Page
Case 1:06-cv-01204-GS    Other Document 486-2    Filed 12/02/21    Page 9 of 19
ID #:1141

This applies to Judge Gonzalez's order that was given to Magistrate Pitman
and orders entered by this Court based on that order.

20.     Judge Gonzalez's order entered without jurisdiction or an
opportunity to be heard has been the subject of a motion to vacate for lack of
jurisdiction before the State that technically, must be granted as part of the
judge's administrative duties. Unfortunately, Judge Gonzalez is no longer on
the bench. This required Plaintiff to move for mandamus relief against the new
presiding justices of the First and Third Dept. to get the order vacated and to
compel production of the complete files corrupted by Supple as Cowan
defendants' agent. *Wilcox v. Supreme Council of Royal Arcanum*, 270 NY 370
(1914). Those motions remain pending.

21.     Ultimately, and separate from defendants Live Nation, Instant
Live Concerts, LLP and Gordon for Phish, five NYS agencies took Plaintiff's
ticketing patents without payment of just compensation in violation of the
Fifth Amendment.

22.     Cowan defendants who with Supple, instructed and orchestrated
the scheme, are each jointly and severally liable for wrongful state action
pursuant to 42 USC §1983, 1985, 1988, attorney's fees and costs, and
violations of the Donnelly Act, NY's General Business Law, Section 340.  The
diabolical *mens rea* and malice exhibited by Cowan defendants and Supple
including engaging in criminal acts in further of an illegal enterprise with AGC
officers must be punished and assessed for damages by this Court.  Manifest
injustice is clearly established.

9

EXHIBIT 47
Page 743 of 808

23.     In its summary judgment order entered July 6, 2017, the court admitted it never granted Plaintiff an amended complaint post patent issuance when Plaintiff was owed that complaint pursuant to prevailing patent and Federal Circuit law. The court admitted it never granted discovery ordered by the Second Circuit in the 2012 remand order. The court further held sua sponte it was holding Plaintiff to standard of a NY attorney and referred to the sua sponte order entered by Justice Gonzalez without giving Plaintiff an opportunity to be heard.  The court conceded it never granted an amended complaint and did not disqualify Supple as it was required to do. Moreover, the Court never heard Cowan defendants' boycotting torts and defamation of Plaintiff to numerous attorneys and to the AGC via Supple as its agent which are acts aiding and abetting wrongful state action. *Zebrowski v. Wells Fargo Bank*, 657 F. Supp. 2d 511 (2009)

24.     Previously, in 2015 the court improperly ordered Plaintiff to pay $10,000 into the SDNY Cashier in 2015 for a special patent master, Plaintiff paid the fee and no patent master was ever hired.  It took 2 ½ years for Plaintiff to secure a refund.

25.     This court must now comply with the law of the circuit and offer Plaintiff the right to replead her operative 2008 complaint post judgment.

## MEMORANDUM OF LAW

26.     It is well established that "[a] party seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Ruotolo v. City of New York*, 514

EXHIBIT 47
Page 744 of 808

F.3d 184, 191 (2d Cir. 2008). "[I]t would be contradictory to entertain a motion to amend the complaint" without "a valid basis to vacate the previously entered judgment." *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991). "To hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." *Grant Williams v. Citicorp.*, 659 F. 3d 208 at 213 (brackets and internal quotation marks omitted) (quoting *Nat'l Petrochemical*, 930 F.2d at 245).

27. Rule 60(b) provides that a court may relieve a party from a final judgment for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

28. The Second Circuit has described Rule 60(b)(6) as a catch-all provision with no outside statutory limitation that "is properly invoked when

11

EXHIBIT 47
Page 745 of 808

Case 2:23-cv-04381-MEMF-E   Document 22-6   Filed 09/08/23   Page 241 of 303   Page
Case 1:06-cv-13248-HB   Document 99   Filed 02/22/21   Page 12 of 19
Case 22-725, Document 3, ID #:1144 22, 3293745, Page74 of 87

there are extraordinary circumstances justifying relief, when the judgment may
work an extreme and undue hardship, and when the asserted grounds for relief
are not recognized in clauses (1)–(5) of the Rule." *Nemaizer v. Baker*, 793 F.2d
58, 63 (2d Cir. 1986) (internal citations omitted). Subdivisoin (6) has no statute
of limitations.

29.    Notwithstanding the foregoing, the Second Circuit has held that it
may be appropriate in a proper case to take into account the nature of the
proposed amendment in deciding whether to vacate the previously entered
judgment. *Nat'l Petrochemical*, 930 F.2d at 245 (internal citation omitted;
brackets in original). The Court considered this *dicta* in two decisions that
warrant discussion: *Williams v. Citigroup Inc.*, 659 F.3d 208 (2d Cir. 2011) and
*Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016).

30.    In *Williams*, the district court granted the defendants' motion to
dismiss with prejudice and entered judgment without ever providing the
plaintiff with an opportunity to replead. *See* 659 F.3d at 211-12. The facts of
the instant case are similar but far more compelling. In *Williams*, the plaintiff
moved pursuant to Rules 59(e) and 60(b) to reopen the judgment and obtain
leave to amend her complaint. *Id.* The district court denied the motion on the
grounds that the plaintiff failed to "demonstrate any basis" for relief from the
judgment and to "explain why she should be granted leave to replead at this
stage when she failed to request an opportunity to replead" at an earlier stage
in the litigation. *Id.* at 212.

31.    Conversely, in the instant case, Plaintiff has been attempting to
amend her complaint since her first US ticketing patent issued on October 13,

12

EXHIBIT 47
Page 746 of 808

Case 2:23-cv-04381-MEMF-E    Document 22-6    Filed 09/08/23    Page 242 of 303   Page
Case 1:06-cv-01202-LGS-HBP   Document 426   Filed 12/02/21   Page 13 of 19
Case 22-723, Document 3, 04/04/2022, 3293143, Page 9 of 87

2009. Plaintiff duly filed a Rule 60(b) motion with amended complaint
pursuant to 35 USC §271, 284, 285, 286 that was docketed and date stamped
on April 22, 2010. The motion with amended complaint were both printed in
Plaintiff's first appeal to the Second Circuit (09-2185;10-4111); however
because notice of appeal was filed pre-patent issuance. the Second Circuit
denied Plaintiff's applications under FRAP Rule 10(e) to bring the patent
claims into that appeal.

32.  Thereafter since remand in 2012, Plaintiff has been completely
railroaded out of this court both from conducting discovery on the remanded
claims and to get an amended complaint granted post patent issuance.

33.  In *Williams*, the Second Circuit reversed the district court's denial
of the motion to replead. The Court began by recognizing the well-established
rule that a plaintiff seeking to amend a complaint post-judgment must first
have the judgment vacated pursuant to Rules 59(e) or 60(b). *Id.* at 213.  It then
observed that "it might be appropriate in a proper case to take into account the
nature of the proposed amendment in deciding whether to vacate the
previously entered judgment." *Id.* (quoting *Ruotolo*, 514 F.3d at 191). From
these formulations, the Court reasoned that "post-judgment motions for leave
to replead must be evaluated with due regard to both the value of finality and
the policies embodied in Rule 15." *Id.*  An issued US patent anticipated by the
previous complaint is considered new evidence under unanimous decisions of
the Federal Circuit.

34.  Then in *Williams*, the Second Circuit then went on to analyze
*Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) for further
authority. There, the Supreme Court addressed a post-judgment motion to

EXHIBIT 47
Page 747 of 808

amend the complaint. *See* 371 U.S. at 179-81, 83 S.Ct. 227. The plaintiff had asserted a claim seeking to enforce an alleged oral agreement regarding the amount she stood to inherit from her father's estate. *See id.* at 179, 83 S.Ct. 227. The district court dismissed the complaint for failure to state a claim on the grounds that the alleged agreement was unenforceable under the statute of frauds. *Id.* Judgment was entered. *Id.* The next day, the plaintiff moved to vacate the judgment and to amend her complaint to seek recovery in quantum meruit. *Id.* The district court denied the motion without explanation. *See id.* The Supreme Court reversed. It construed the motion as one properly filed pursuant to Rule 59(e). *Id.* at 181, 83 S.Ct. 227; and, against the backdrop of a plaintiff who was never afforded an opportunity to replead, the Court stated:

" Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given" …

Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. *Id.* at 182, 83 S.Ct. 227. It follows that it is an abuse of discretion to deny a motion — to prevent a "manifest injustice," although the Court did not say so explicitly — when the plaintiff was never given an opportunity to replead in the first place."

14

EXHIBIT 47
Page 748 of 808

Case 2:23-cv-04381-MEMF-E    Document 22-6    Filed 09/08/23    Page 244 of 303    Page
Case 1:06-cv-01227-GSE-HBP    Document 043802    Filed 12/02/21    Page 15 of 19
ID #: 1447

35.  Based on the principles of *Foman*, the Second Circuit reversed the district court's denial of the post-judgment motion to amend in *Williams*. In doing so, the Court explained that *Foman* "makes unmistakably clear" that a plaintiff need not "seek leave to replead either together with her response to the motion to dismiss, or indeed prior to the district court's entry of judgment." *Williams*, 659 F.3d at 214.

36.  In *Indiana Public Retirement System v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016), the district court granted in part and denied in part a motion to dismiss a first amended complaint. 818 F.3d at 91. In its decision, the court granted the plaintiffs leave to amend the claims that it dismissed without prejudice. *See Id.* The plaintiffs did not file an amendment within the time allotted, however, and proceeded with their claims that had survived the motion to dismiss instead. *Id.* The defendants, meanwhile, moved for reconsideration. *Id.* The court granted the motion for reconsideration and reversed course. *See Id.* On reconsideration, the court granted the motion to dismiss in full and dismissed all the plaintiffs' claims with prejudice. *Id.* It then entered judgment for the defendant. *See Id.* The plaintiffs moved to amend or vacate the judgment and to file a proposed second amended complaint. *Id.* The district court denied the motions on the grounds that the plaintiffs had failed to demonstrate any grounds for relief under Rule 60(b) and the proposed amendment would be futile. *Id.* at 92.

37.  Again, the Second Circuit reversed. As in *Williams*, the court stated first that a party seeking to file an amended complaint post-judgment must first have the judgment vacated pursuant to Rules 59(e) or 60(b). *Id.* The

15

EXHIBIT 47
Page 749 of 808

Court noted that Rule 60(b) "authorizes a court to grant relief from a final judgment for 'any ... reason that justifies relief.' " *Id.* at 92 (ellipsis in original) (quoting Fed. R. Civ. P. 60(b)(6)). Then the court articulated the formulation from *National Petrochemical*: that "it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." *Id.* (quoting *Williams*, 659 F.3d at 213).

38. The *SAIC* Court noted that the district court "denied leave to amend under Rule 60(b)(6) solely on the ground that amendment ... would be futile, a determination that the Second Circuit must review *de novo*." *Id.* (citation and footnote omitted).

39. There, however, the court concluded that the amendment would not be futile and reversed without "reach[ing] th[e] issue" of whether the district court abused its discretion in rejecting the plaintiff's argument that the judgment should be set aside because of newly discovered evidence. *Id.* at 92 n.4.

40. In the instant case, there is not only in-court fraud and deceit and newly discovered evidence in the form of the first US patent issued to Plaintiff that was prejudiced, delayed and irreparably damaged by the Cowan defendants' fraudulent breaches of fiduciary duty, but Plaintiff's earlier motions were deleted sua sponte from the docket. Thereafter there were additional crimes and wrongful state action in Plaintiff's confidential state files by Cowan defendants and their agent Richard Supple, and defamation of Plaintiff. The sum total of the illegal enterprise resulted in unserved and forged documents being inserted into Plaintiff's confidential state files and sua sponte state order being entered into Plaintiff's file without jurisdiction.

16

EXHIBIT 47
Page 750 of 808

Case 1:06-cv-01202-LGS-HBP   Document 436   Filed 12/02/21   Page 17 of 19
Case 2:23-cv-04381-MEMF  Document 20-6202Filed 09/08/23 age Page 246 of 303   Page
ID #:1149

41.   On April 21, 2016, the Appellate Division found that Supple and
Plaintiff's original attorney, Squitieri, both entered and corrupted Plaintiff's
Third Dept. retirement bar files without a warrant in defiance of JL Part
1240.18  and inserted unserved and forged documents. Thereafter, Supple still
did not withdraw from the Cowan defendants' representation as he was
required to do. The not only did not  mandate that withdrawal (JL Part
1240.6d) but allowed Supple to file premature and frivolous summary
judgment motions without any discovery conducted in favor of Plaintiff.  A
numerous number of genuine issues of material fact existed at that time.

42.   During hearing on November 29, 2016 the court set a summary
judgment schedule, seating the parties apart in the courtroom, and denied
Plaintiff's cross motion on conceded ground that no amended complaint post
patent issuance had been granted.

43.   Plaintiff has never seen the documents illegally entered by Supple
into her state files as Cowan defendants' agent, and has not been served with
Cowan defendants' answer to her ethics complaint.  Upon belief, the
complaints were removed by Supple.  See *Anderson v. First Dept. Disciplinary*
*Committee and State of NY*, 614 F. Supp. 2d 404 (SDNY 2009)(Headnotes 15,
16) finding Christine Anderson's claim that when a reported attorney is being
represented by an AGC committee member of chief counsel, the client's ethics
complaints are "whitewashed" 100% of the time)

44.   No disciplinary action may be taken by the state AGC offices
except against an attorney in a representative capacity for a client.  The draft
petition prepared in 2008 discovered by Plaintiff, suspiciously had the
embossed signature of Paul Curran, Esq., a 2002 AGC chief counsel who was

17

EXHIBIT 47
Page 751 of 808

Case 2:23-cv-04381-MEMF-E   Document 22-6   Filed 09/08/23   Page 247 of 303   Page
Case 1:06-cv-13565-LBS   Document 436-2   Filed 02/02/24   Page 18 of 19
Case 22-725, Document 91, 02/14/2022, 3253748, Page148 of 307
ID #:1150

dead of cancer in 2007. Curran was also a former partner with Cowan partner
William Borchard and left the AGC in 2002.

45.    Moreover, only the Third Dept. had jurisdiction over Plaintiff in
the capacity of an attorney for the time she was admitted in NYS (1985-1998).
Ergo, the orders of this court entered in 2015 and 2017 sua sponte finding facts
not in the record were improper in that they failed to give Plaintiff an
opportunity to be heard. *Link v. Wabash R. R. Co.,* 370 US 626 (1962).

46.    It should be noted that (1) the district court in *SAIC* had permitted
amendment after its first decision on the motion to dismiss; (2) the plaintiffs
had not availed themselves of it, but were able to proceed with their surviving
claims; (3) on reconsideration, the district court dismissed all the plaintiffs
claims including the theretofore surviving claims with prejudice, prohibiting
amendment without providing a justification; and (4) the plaintiffs then were
unable to proceed except by motion for relief from the judgment. *See SAIC,* 818
F.3d at 91-92. This history parallels the procedural pattern in *Foman* and
*Williams*; the only key distinction in *SAIC* being that the plaintiffs had — and
availed themselves of — one opportunity to amend while the plaintiffs in
*Foman* and *Williams* had none. Notwithstanding this distinction, the cases —
*SAIC, Foman,* and *Williams* — are consistent.

47.    In the case at bar, by contrast, Plaintiff had no opportunity to
amend her complaint post US patent issuance whatsoever, the essential
motions were unlawfully deleted from the record, and Plaintiff's essential
motion to disqualify defense counsel that were required to be granted, were
improperly denied.

18

EXHIBIT 47
Page 752 of 808

Case 2:23-cv-04381-MEMF-E Document 22-6 Filed 09/08/23 Page 248 of 303 Page
Case 1:08-cv-12026-GBD Document 136-2 Filed 12/02/21 Page 19 of 19
ID #:1151

48.   The Second Circuit will "review the district court's denial of a
post-judgment motion for leave to replead for abuse of discretion." *Williams*,
659 F.3d at 212.

49.   In this case, Plaintiff asks this court to "vacate the judgment and
grant leave to replead to correct clear errors of law, unilateral corruption of
case dockets and records, and to prevent manifest injustice."

50.   Under the catchall provision of Rule 60(b)(6) that encompasses
any "reason that justifies relief," Plaintiff argues that the Second Circuit's
'strong preference for resolving disputes on the merits' " is properly followed in
this case (quoting *Williams*, 659 F.3d at 212-213).

WHEREFORE, Plaintiff prays that her motion to vacate the summary
judgment orders of the court and to replead her complaint post judgment be
granted in all respects.

Dated:  November 19, 2021                 AMY R. GURVEY
Montclair, NJ                             /amygurvey/
                                          _____
                                          Plaintiff/US Patentee Pro se

19

EXHIBIT 47
Page 753 of 808

## CERTIFICATION OF SERVICE

Plaintiff pro se Amy R. Gurvey declares under penalty of perjury that on December 21, 2021 she served a true and accurate copy of the within Motion for Reconsideration upon attorneys for defendants in this lawsuit by depositing a true and accurate copy of same in mailbox duly maintained by the US Postal Service. The envelopes were addressed as follows:

A. Michael Furman, Esq.
Furman, Kornfeld and Brennan, LLP
61 Broadway
New York. NY 10006

Hinshaw & Culbertson, LLP
800 Third Avenue 13th FL
New York, NY 10022

Greenberg & Traurig, LLP
54 State Street 6th Fl
Albany, NY 12207

AMY R. GURVEY

EXHIBIT 47
Page 754 of 808

# CERTIFICATION OF SERVICE

Plaintiff pro se Amy R. Gurvey declares under penalty of perjury that on
December 21, 2021 she served a true and accurate copy of the within Motion
for Reconsideration upon attorneys for defendants in this lawsuit by depositing
a true and accurate copy of same in mailbox duly maintained by the US Postal
Service. The envelopes were addressed as follows:

> A. Michael Furman, Esq.
> Furman, Kornfeld and Brennan, LLP
> 61 Broadway
> New York, NY 10006

> Hinshaw & Culbertson, LLP
> 800 Third Avenue 13th FL
> New York, NY 10022

> Greenberg & Traurig, LLP
> 54 State Street 6th Fl
> Albany, NY 12207

AMY R. GURVEY

EXHIBIT 47
Page 755 of 808

CERTIFICATION OF SERVICE

      Plaintiff pro se Amy R. Gurvey declares under penalty of perjury that on
December 21, 2021 she served a true and accurate copy of the within Motion
for Reconsideration upon attorneys for defendants in this lawsuit by depositing
a true and accurate copy of same in mailbox duly maintained by the US Postal
Service. The envelopes were addressed as follows:

A. Michael Furman, Esq.
Furman, Kornfeld and Brennan, LLP
61 Broadway
New York, NY 10006

Hinshaw & Culbertson, LLP
800 Third Avenue 13th FL
New York, NY 10022

Greenberg & Traurig, LLP
54 State Street 6th Fl
Albany, NY 12207

AMY R. GURVEY

EXHIBIT 47
Page 756 of 808

# CERTIFICATION OF SERVICE

Amy R. Gurvey, a US patentee appearing pro se, declares under penalty of perjury that on April 5, 2022 she served a true and accurate copy of the within motion to vacate mandates of the Second Circuit in 17-2760, 20-1986 and issue mandamus orders against the SDNY.

The envelopes were addressed as follows:


Furman, Kornfeld and Brennan
    61 Broadway, 26th Floor
    New York, NY 10006

Greenberg & Traurig
    54 State Street
    Albany, New York 12207

SDNY Grievance Panel
    Circuit Executive's Office
    500 Pearl Street Room 820
    New York, NY 10007
    Attn: Hon. P. Kevin Castel, Chambers
    Julie Allsman, Esq., Outside Counsel


/amygurvey/

_____

AMY R. GURVEY

RECEIVED 2022 APR -6 PM 4:34 CLERK'S OFFICE U.S. COURT OF APPEALS

EXHIBIT 47
Page 757 of 808

# CERTIFICATION OF SERVICE

Amy R. Gurvey, a US patentee appearing pro se, declares under penalty of perjury that on April 5, 2022 she served a true and accurate copy of the within motion to vacate mandates of the Second Circuit in 17-2760, 20-1986 and issue mandamus orders against the SDNY.

The envelopes were addressed as follows:

Furman, Kornfeld and Brennan
    61 Broadway, 26th Floor
    New York, NY 10006

Greenberg & Traurig
    54 State Street
    Albany, New York 12207

SDNY Grievance Panel
    Circuit Executive's Office
    500 Pearl Street Room 820
    New York, NY 10007
    Attn: Hon. P. Kevin Castel, Chambers
    Julie Allsman, Esq., Outside Counsel

Hon. Lorna Schofield, SDNY Added Service 4-6-22

/amygurvey/

AMY R. GURVEY

RECEIVED 2022 APR -6 PM 4:33 CLERK'S OFFICE U.S. COURT OF APPEALS

EXHIBIT 47
Page 758 of 808

USM1 40C
SDNY

USM1 40C
SDNY

EXHIBIT 47
Page 759 of 808

EXHIBIT 48

EXHIBIT 48

**General Docket**
**Court of Appeals, 2nd Circuit**

| | |
|---|---|
| **Court of Appeals Docket #:** 22-725 | **Docketed:** 04/06/2022 |
| In Re: Amy R. Gurvey | **Termed:** 05/04/2022 |
| **Appeal From:** SDNY (NEW YORK CITY) | |
| **Fee Status:** Paid | |

**Case Type Information:**
  **1)** Original Proceeding
  **2)** Mandamus
  **3)** none

**Originating Court Information:**
  **District:** 0208-1 : 06-cv-1202
  **Trial Judge:** Lorna G. Schofield, U.S. District Judge
  **Trial Judge:** Henry B. Pitman, U.S. Magistrate Judge
  **Date Rec'd COA:**
  04/06/2022

**Prior Cases:**

| | | | | |
|---|---|---|---|---|
| 09-2185 | **Date Filed:** 05/22/2009 | **Date Disposed:** 02/10/2012 | **Disposition:** FRAP procedural without judici | |
| 10-3698 | **Date Filed:** 09/15/2010 | **Date Disposed:** 12/28/2010 | **Disposition:** Original Proceedings denied | |
| 10-4111 | **Date Filed:** 10/08/2010 | **Date Disposed:** 02/10/2012 | **Disposition:** Affirmed In Part and Rev Vac In Part | |
| 14-960 | **Date Filed:** 03/27/2014 | **Date Disposed:** 04/15/2015 | **Disposition:** Dismissed/frivolous | |
| 15-285 | **Date Filed:** 02/02/2015 | **Date Disposed:** 04/15/2015 | **Disposition:** Dismissed/frivolous | |
| 15-2703 | **Date Filed:** 08/24/2015 | **Date Disposed:** 10/05/2015 | **Disposition:** FRAP 42 P Stipulation with prejudice | |
| 15-2724 | **Date Filed:** 08/25/2015 | **Date Disposed:** 11/30/2015 | **Disposition:** Original Proceedings denied | |
| 15-3049 | **Date Filed:** 09/29/2015 | **Date Disposed:** 11/30/2015 | **Disposition:** Dismissed/frivolous | |
| 17-2760 | **Date Filed:** 09/05/2017 | **Date Disposed:** 10/06/2017 | **Disposition:** C.D default | |
| 17-2760 | **Date Filed:** 10/06/2017 | **Date Disposed:** 12/04/2018 | **Disposition:** Affirmed | |
| 20-1986 | **Date Filed:** 06/23/2020 | **Date Disposed:** 01/08/2021 | **Disposition:** Dismissed/frivolous | |

**Current Cases:**
  None

| **Panel Assignment:** | Not available |
|---|---|

| | |
|---|---|
| Amy Rebecca Gurvey<br>       Petitioner | Amy Rebecca Gurvey, -<br>Direct: 917-733-9981<br>[NTC Pro Se]<br>315 Highland Avenue<br>Upper Montclair, NJ 07043 |
| -------------------------- | |
| Cowan, Liebowitz and Lathman, P.C.<br>       Respondent | Ariel Michael Furman, Esq., -<br>[COR NTC Retained]<br>Furman Kornfeld & Brennan LLP<br>61 Broadway<br>New York, NY 10006 |
| William Borchard<br>       Respondent | Ariel Michael Furman, Esq., -<br>[COR NTC Retained]<br>(see above) |
| Midge Hyman<br>       Respondent | Ariel Michael Furman, Esq., -<br>[COR NTC Retained]<br>(see above) |
| Baila Celedonia<br>       Respondent | Ariel Michael Furman, Esq., -<br>[COR NTC Retained]<br>(see above) |
| Christopher Jensen<br>       Respondent | Ariel Michael Furman, Esq., -<br>[COR NTC Retained]<br>(see above) |

EXHIBIT 48
Page 761 of 808

Clear Channel Communications, Inc.
          Respondent

Live Nation, Inc.
          Respondent

Does, 1-X Inclusive
          Respondent

Nexticketing, Incorporated
          Respondent

Dale Head
          Respondent

Steve Simon
          Respondent

Susan Schick
          Respondent

Michael Gordon
          Respondent

Instant Live Concerts, LLC
          Respondent

In Re: Amy R. Garvey,
                    Petitioner.
*********************************
Amy R. Gurvey,

                Petitioner,

v.

Cowan, Liebowitz and Lathman, P.C., William Borchard, Midge Hyman, Baila Celedonia, Christopher Jensen, Clear Channel Communications, Inc., Live Nation, Inc., Instant Live Concerts, LLC, Does, 1-X Inclusive, Nexticketing, Incorporated, Dale Head, Steve Simon, Susan Schick, Michael Gordon,

                Respondents.

EXHIBIT 48
Page 763 of 808        3/6

| 04/06/2022 | ☐ 1<br>89 pg, 8.31 MB | ORIGINAL PROCEEDING, PETITION FOR WRIT OF MANDAMUS, on behalf of Petitioner Amy R. Gurvey, FILED.[3293123] [22-725] [Entered: 04/07/2022 12:13 PM] |
| 04/07/2022 | ☐ 3<br>87 pg, 8.19 MB | PETITION FOR WRIT, SERVED. Service date 04/06/2022 by US mail.[3293143] [22-725] [Entered: 04/07/2022 12:21 PM] |
| 04/07/2022 | ☐ 4<br>1 pg, 164.92 KB | ORDER, dated 04/07/2022, dismissing appeal by 04/28/2022, unless Petitioner Amy R. Gurvey, submits fee or moves to proceed in forma pauperis, copy to pro se petitioner, FILED.[3293148] [22-725] [Entered: 04/07/2022 12:22 PM] |
| 04/07/2022 | ☐ 5<br>1 pg, 87.98 KB | INSTRUCTIONAL FORMS, to Pro Se litigant, SENT.[3293158] [22-725] [Entered: 04/07/2022 12:26 PM] |
| 04/26/2022 | ☐ 8<br>1 pg, 92.21 KB | NOTICE, to Respondents William Borchard, Baila Celedonia, Cowan, Liebowitz and Lathman, P.C., Midge Hyman and Christopher Jensen, for failure to file an appearance, SENT.[3303633] [22-725] [Entered: 04/26/2022 12:22 PM] |
| 04/26/2022 | ☐ 9<br>3 pg, 140.19 KB | ACKNOWLEDGMENT AND NOTICE OF APPEARANCE, on behalf of Respondent Cowan, Liebowitz and Lathman, P.C., Christopher Jensen, Midge Hyman, Baila Celedonia and William Borchard, FILED. Service date 04/26/2022 by US mail.[3303979] [22-725] [Entered: 04/26/2022 04:07 PM] |
| 05/04/2022 | ☐ 13<br>1 pg, 89.39 KB | NEW CASE MANAGER, Yana Segal, ASSIGNED.[3309325] [22-725] [Entered: 05/04/2022 04:47 PM] |
| 05/04/2022 | ☐ 14 | ORDER, [4] appeal dismissed for Petitioner Amy R. Gurvey failure to pay fee, EFFECTIVE.[3309329] [22-725] [Entered: 05/04/2022 04:50 PM] |
| 05/09/2022 | ☐ 16<br>2 pg, 572.62 KB | MOTION, to reinstate appeal, on behalf of Petitioner Amy R. Gurvey, FILED. Service date 05/09/2022 by CM/ECF.[3311139] [22-725] [Entered: 05/09/2022 10:52 AM] |
| 05/16/2022 | ☐ 22<br>1 pg, 31.59 KB | PAYMENT OF DOCKETING FEE, on behalf of Petitioner Amy R. Gurvey, district court receipt # CA2002964, FILED.[3315809] [22-725] [Entered: 05/16/2022 03:36 PM] |
| 07/18/2022 | ☐ 25 | MOTION, to supplement record on appeal, on behalf of Petitioner Amy Rebecca Gurvey, FILED. Service date 07/18/2022 by CM/ECF. [3349710] [22-725] [Entered: 07/18/2022 10:38 AM] |
| 07/19/2022 | ☐ 26 | SUPPLEMENTARY PAPERS TO WRIT [25], on behalf of Petitioner Amy Rebecca Gurvey, FILED. Service date 07/18/2022 by CM/ECF.[3349728][26] [22-725] [Entered: 07/19/2022 06:44 AM] |
| 07/19/2022 | ☐ 27<br>2 pg, 127.83 KB | DEFECTIVE DOCUMENT, motion to supplement record, [26], [25], on behalf of Petitioner Amy Rebecca Gurvey, FILED.[3349799] [22-725] [Entered: 07/19/2022 09:14 AM] |
| 08/11/2022 | ☐ 31<br>2 pg, 142.84 KB | MOTION ORDER, denying motion to reinstate appeal [16] filed by Amy R. Gurvey, by ECL, BR, MP, FILED. [3363933][31] [22-725] [Entered: 08/11/2022 03:40 PM] |
| 08/15/2022 | ☐ 33 | MOTION, for rehearing en banc, on behalf of Petitioner Amy Rebecca Gurvey, FILED. Service date 08/14/2022 by CM/ECF. [3364911] [22-725] [Entered: 08/15/2022 12:14 AM] |
| 08/15/2022 | ☐ 34<br>2 pg, 128.87 KB | DEFECTIVE DOCUMENT, motion for reconsideration and reconsideration en banc, [33], on behalf of Petitioner Amy Rebecca Gurvey, FILED.[3365076] [22-725] [Entered: 08/15/2022 10:39 AM] |
| 08/19/2022 | ☐ 35<br>83 pg, 4.06 MB | MOTION, for hearing en banc, on behalf of Petitioner Amy Rebecca Gurvey, FILED. Service date 08/14/2022 by CM/ECF. [3367822] [22-725] [Entered: 08/19/2022 01:18 AM] |
| 08/19/2022 | ☐ 36<br>7 pg, 161.95 KB | SUPPLEMENTAL BRIEF, on behalf of Petitioner Amy Rebecca Gurvey, FILED. Service date 08/14/2022 by CM/ECF.[3367827] [22-725] [Entered: 08/19/2022 07:25 AM] |
| 08/19/2022 | ☐ 37 | CURED DEFECTIVE motion for permission to file motion for reconsideration en banc with exhibits[35], on behalf of Petitioner Amy Rebecca Gurvey, FILED.[3367887] [22-725] [Entered: 08/19/2022 09:14 AM] |
| 08/25/2022 | ☐ 39<br>5 pg, 148.57 KB | ADDENDUM, on behalf of Petitioner Amy Rebecca Gurvey, FILED. Service date 08/25/2022 by CM/ECF. [3371969] [22-725] [Entered: 08/25/2022 11:59 PM] |
| 08/29/2022 | ☐ 42<br>6 pg, 83.31 KB | LETTER, dated 08/18/2022, on behalf of Petitioner Amy Rebecca Gurvey, to Hon. Laura Taylor Swain (courtesy copy), RECEIVED. Service date 08/25/2022 by US mail.[3373952] [22-725] [Entered: 08/30/2022 01:30 PM] |
| 08/31/2022 | ☐ 44<br>1 pg, 153.79 KB | MOTION ORDER, denying motion for permission to file motion for reconsideration en banc with exhibits [35] filed by Petitioner Amy Rebecca Gurvey, by MP, FILED. [3374912][44] [22-725] [Entered: 08/31/2022 03:54 PM] |
| 08/31/2022 | ☐ 45<br>1 pg, 788.04 KB | CERTIFIED COPY OF ORDER, dated 04/07/2022, determining the appeal to SDNY, ISSUED.[Mandate] [3374928] [22-725]--[Edited 08/31/2022 by YL] [Entered: 08/31/2022 04:02 PM] |
| 09/06/2022 | ☐ 46<br>48 pg, 1.7 MB | PAPERS, copy of various letters to district court judges and copy of patent, from Appellant, RECEIVED. [3377653] [22-725] [Entered: 09/07/2022 12:05 PM] |

EXHIBIT 48
Page 764 of 808

| 09/06/2022 | ☐ 47<br>11 pg, 825.38 KB | PAPERS, dated 03/06/2022, on behalf of Appellant Amy Rebecca Gurvey, RECEIVED.[3377704] [22-725] [Entered: 09/07/2022 12:31 PM] |
| 10/03/2022 | ☐ 48<br>55 pg, 1.66 MB | PAPERS, from pro se Appellant dated 09/30/2022 to the EDNY, RECEIVED.[3392925] [22-725] [Entered: 10/04/2022 09:18 AM] |
| 10/04/2022 | ☐ 49<br>21 pg, 201.4 KB | ADDENDUM, on behalf of Petitioner Amy Rebecca Gurvey, FILED. Service date 09/30/2022 by CM/ECF, US mail.[3392953] [22-725] [Entered: 10/04/2022 09:40 AM] |
| 10/24/2022 | ☐ 50<br>72 pg, 3.51 MB | MOTION, for judicial notice, on behalf of Petitioner Amy Rebecca Gurvey, FILED. Service date 10/24/2022 by CM/ECF, US mail. [3406613] [22-725] [Entered: 10/24/2022 04:11 PM] |
| 10/24/2022 | ☐ 51<br>1 pg, 91.96 KB | MOTION for judicial notice received in a closed case, RETURNED.[3406622] [22-725] [Entered: 10/24/2022 04:23 PM] |
| 10/26/2022 | ☐ 52<br>112 pg, 6.04 MB | MOTION, for rehearing, on behalf of Petitioner Amy Rebecca Gurvey, FILED. Service date 10/25/2022 by CM/ECF, US mail. [3407742] [22-725] [Entered: 10/26/2022 06:07 AM] |
| 10/26/2022 | ☐ 53<br>1 pg, 91.72 KB | MOTION for rehearing received in a closed case, RETURNED.[3407774] [22-725] [Entered: 10/26/2022 08:56 AM] |
| 11/10/2022 | ☐ 54<br>20 pg, 231.92 KB | STAY STATUS UPDATE LETTER, dated 11/07/2022, on behalf of Petitioner Amy Rebecca Gurvey, alerting court that <EDIT by Clerk's Office >, RECEIVED. Service date 11/09/2022 by CM/ECF, US mail.[3417685] [22-725] [Entered: 11/10/2022 02:23 AM] |
| 11/10/2022 | ☐ 55<br>4 pg, 127.93 KB | ADDENDUM, on behalf of Petitioner Amy Rebecca Gurvey, FILED. Service date 11/10/2022 by CM/ECF, US mail.[3417921] [22-725] [Entered: 11/10/2022 10:58 AM] |
| 11/10/2022 | ☐ 56<br>1 pg, 91.9 KB | STAY STATUS UPDATE LETTER, dated 11/07/2022, ADDENDUM, on behalf of Petitioner Amy Rebecca Gurvey received in a closed case, RETURNED.[3418414] [22-725] [Entered: 11/10/2022 04:19 PM] |
| 11/13/2022 | ☐ 57<br>2 pg, 76.14 KB | LETTER, on behalf of Petitioner Amy Rebecca Gurvey, <EDIT by Clerk's Office> RECEIVED. Service date 11/12/2022 by CM/ECF, US mail.[3418581] [22-725] [Entered: 11/13/2022 08:51 AM] |
| 11/14/2022 | ☐ 58<br>1 pg, 91.89 KB | LETTER, on behalf of Petitioner Amy Rebecca Gurvey received in a closed case, RETURNED.[3419221] [22-725] [Entered: 11/14/2022 01:55 PM] |
| 11/16/2022 | ☐ 59<br>85 pg, 2.51 MB | PAPERS, petition for emergency stay and writ of mandamus, on behalf of Appellant Amy R. Gurvey, RECEIVED.[3420847] [22-725] [Entered: 11/16/2022 02:03 PM] |
| 12/28/2022 | ☐ 60<br>128 pg, 4.14 MB | STAY STATUS UPDATE LETTER, dated 12/28/2022, on behalf of Petitioner Amy Rebecca Gurvey, alerting court that a petition for an emergency stay was filed in the Supreme Court of the United States, RECEIVED. Service date 12/28/2022 by CM/ECF.[3444100] [22-725]--[Edited 12/29/2022 by YS] [Entered: 12/28/2022 07:04 PM] |
| 08/18/2023 | ☐ 62 | LETTER, on behalf of Petitioner Amy Rebecca Gurvey, requesting to reopen appeal and to file a wrti of mandamus agains the EDNY in a related action (19-cv-4739) (LDH), RECEIVED. Service date 08/18/2023 by CM/ECF.[3558438] [22-725]--[Edited 08/18/2023 by YS] [Entered: 08/18/2023 12:18 PM] |
| 08/18/2023 | ☐ 63<br>2 pg, 131.84 KB | DEFECTIVE DOCUMENT, letter requesting to reopen appeal, [62], on behalf of Petitioner Amy Rebecca Gurvey, FILED.[3558448] [22-725] [Entered: 08/18/2023 12:37 PM] |
| 08/19/2023 | ☐ 64 | MOTION, to recall mandate, on behalf of Petitioner Amy Rebecca Gurvey, FILED. Service date 08/18/2023 by CM/ECF. [3558770] [22-725] [Entered: 08/19/2023 11:23 AM] |
| 08/21/2023 | ☐ 65<br>2 pg, 153.89 KB | DEFECTIVE DOCUMENT, motion to recall mandate and to reinstate appeal, [64], on behalf of Petitioner Amy Rebecca Gurvey, FILED.[3559113] [22-725] [Entered: 08/21/2023 01:20 PM] |
| 08/21/2023 | ☐ 66<br>28 pg, 996.21 KB | MOTION, to recall mandate, to reinstate appeal, on behalf of Petitioner Amy Rebecca Gurvey, FILED. Service date 08/18/2023 by CM/ECF. [3559240] [22-725] [Entered: 08/21/2023 03:25 PM] |
| 08/22/2023 | ☐ 67 | CURED DEFECTIVE, letter requesting to reopen appeal, motion to recall mandate and to reinstate appeal [63], [65], [66],[66], on behalf of Petitioner Amy Rebecca Gurvey, FILED.[3559468] [22-725] [Entered: 08/22/2023 08:32 AM] |
| 08/22/2023 | ☐ 70<br>38 pg, 949.87 KB | ADDENDUM, on behalf of Petitioner Amy Rebecca Gurvey, FILED. Service date 08/22/2023 by CM/ECF. [3559542] [22-725] [Entered: 08/22/2023 09:54 AM] |

EXHIBIT 48
Page 765 of 808

Clear All

◉ **Documents and Docket Summary**
◯ **Documents Only**

☑ **Include Page Numbers**

**Selected Pages:** 0    **Selected Size:** 0 KB

View Selected

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/28/2023 12:56:54 | | | |
| **PACER Login:** | rslittle | **Client Code:** | |
| **Description:** | Docket Report (full) | **Search Criteria:** | 22-725 |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

EXHIBIT 49

EXHIBIT 49

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMY R. GURVEY,

                Plaintiff-Inventor *Pro se*,

v.

COWAN, LIEBOWITZ & LATMAN,
PC, WILLIAM BORCHARD, MIDGE
HYMAN, CHRISTOPHER JENSEN,
SIMON GERSON, R. LEWIS
GABLE, MARK MONTAGUE, AND
BAILA CELEDONIA, ET AL.,
(Collectively "Cowan defendants").

                Defendants.

Case No. 06 Civ. 1202
(LGS)(HBP)

**PLAINTIFF PRO SE'S
NOTICE OF CROSS-MOTION
MOTION TO DISQUALIFY
HINSHAW & CULBERTSON,
LLP; FOR A STAY PENDING
ADJUDICATION OF
PLAINTIFF'S PARALLEL
SECOND CIRUCIT APPEAL;
TO COMPEL DISCOVERY;
AWARD DAMAGESAND
SANCTIONS UNDER NY'S
JUDICIARY LAW§ 487,
RULES 11 & 37; AND
PUNITIVE DAMAGES FOR
BAD FAITH**

**PLEASE TAKE NOTICE** that based upon the proceedings heretofore

had herein since 2006, Plaintiff's parallel civil rights and diversity damages

1

EXHIBIT 49
Page 768 of 808

lawsuit before the Second Circuit against DDC members[1], and Richard
Supple, Esq.'s April 2014 docketed notice that Cowan defendants will not
comply with discovery after engaging in 8 years of in-court fraud and frivolous
litigation, Plaintiff pro se Amy R. Weissbrod Gurvey opposes Supple's
motion-in-chief seeking Rule 11 sanctions and cross-moves this Court for an
order:

    (1)  Disqualifying Hinshaw & Culbertson, LLP ("H&C") pursuant to
New York Rules of Professional Conduct, Rule 3.7(b)(1) because Supple and
at least one other Hinshaw partner, Hal Lieberman, Esq., were committee
member and chairman, respectively of the Appellate Division First Dept.
Disciplinary Committee ("DDC")  when Plaintiff's DR patent grievances
against Cowan defendants were unlawfully whitewashed along with the
grievances filed by other USPTO inventors in violation of equal protection,
H&C partners are liable to Plaintiff for damages, and at least one other H&C
partner (Lieberman) will be forced to bear witness against Cowan defendants.
[*Schatzki and BPP Wealth Inc., v. Weiser Capital Management*, 2014 WL 630650;
2014 WL 464477; 2013 WL 628447, 2013 WL 6189208; 2013 WL 6189465,
2012 WL 169779, *citing Murray v. Metro. Life Ins. Co.*, 583 F. 3d 173 (2d Cir.
2009)];

    (2)    Disqualifying H&C since there can be no prejudice to defendants
as a matter of law because discovery has just begun;

    (3)    Disqualifying H&C because its partners, having breached fiduciary
duties to Plaintiff in whitewashing Plaintiff's grievances, harbored their own
innate conflicts of interest when assuming Cowan's defense in 2006 and

---

[1] 2d Cir. Case No. 13-2211-cv; orders from which were raised *ad infinitum* by
defendants and Hinshaw & Culberson's Richard Supple, Esq. since the
inception of this lawsuit are believed to have been wrongly influenced by
Supple and Lieberman who without disclosure, double as DDC members.

EXHIBIT 49
Page 769 of 808

improperly failed to disclose the conflicts to Plaintiff and this Court;

     (4)    Disqualifying H&C because in 2007, after H&C partners were sued before this Court by other inventors for whitewashing their DR grievances and violating equal protection, H&C partners - in the absence of all jurisdiction and statutory authority - staged or conspired with other DDC committee members to stage Plaintiff's unjustified abuse and harassment to protect themselves from a further lawsuit and to gain unfair litigation advantages herein, acts for which no immunity of any kind exists and punitive damages must awarded. [*Campbell v. State Farm Insurance*, 98 P. 3d 409 (Supreme Court of Utah, April 23, 2004)(On remand from USSC, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (Kennedy, J.)]; *Forrester v. White*, 484 US 219 (1989)(O'Connor J.); *Bernstein v. AD FDDC*, 07-cv-11196 (SDNY); *Anderson v. AD FDDC*, 07-cv-9599 (SDNY) (See authorities cited in Plaintiff's submitted opening and reply briefs to the Second Circuit, 13-2211-cv)]

     (5)    Awarding damages under NY's Judiciary Law §487 against H&C, Supple and Cowan attorney defendants for engaging in common law fraud and conspiracy to commit fraud before this Court, USPTO and DDC committee members [2] and that already caused erroneous sua sponte dismissal of Cowan defendants in 2009 [*Schatzki and BPP Wealth Inc., v. Weiser Capital Management*, 2014 WL 630650; 2014 WL 464477; 2013 WL 628447, 2013 WL 6189208; 2013 WL 6189465, 2012 WL 169779, *citing Murray v. Metro. Life Ins. Co.*, 583 F. 3d 173 (2d Cir. 2009)];

     (6)    Ordering a stay of Supple's Rule 11 sanction motion-in-chief pending adjudication of Plaintiff's parallel appeal to the Second Circuit (2d Cir. Case No. 13-2211-cv];

     (7)    Ordering Rule 11 sanctions in Plaintiff's favor for Supple and Cowan's engaging in fraud and frivolous litigation since 2006 that induced the

---

[2] In *Seldon v. Bernstein*, 503 Fed. Appx. 32, 2012 WL 5860509 (2d Cir. 2012) the Second Circuit held that a plaintiff must state fraud and bad faith damage claims in the exist lawsuit under NY Judiciary Law §487 and not wait until after the lawsuit is adjudicated.

EXHIBIT 49
Page 770 of 808

Court to deny Plaintiff discovery for 7 years, delayed arbitration for three years, caused sua sponte dismissal of Plaintiff's lawsuit in 2009 prior to arbitration being entered in Plaintiff's favor on all counts; denied Plaintiff a motion to compel return of her files from her previous attorneys, Squitieri & Fearon, LLP; and induced Magistrate Pitman to place improper qualifications on Plaintiff's discovery rights post remand from Second Circuit and issue an unjustified Rule 37 sanction order against Plaintiff;

(8)     Ordering Rule 11 sanctions in Plaintiff's favor based on Supple's added frivolous motions before Magistrate Pitman reframing the same sanctions motions in 2013 and 2014 that were already denied by SDNY Arbitrator and Second Circuit;

(9)     Ordering Rule 37 discovery sanctions against defendants and Supple for contumaciously noticing refusal to produce otherwise discoverable documents without proper justification in April 2014 (Docket # 221) and previously submitting incomplete Rule 26(a) disclosures in December, 2012; and

(10)    Ordering  production of outstanding discovery in hard and electronic format from Cowan defendants and from H&C partners; ordering defendants to pay Plaintiff's outstanding fees ordered by the Second Circuit; ordering  Plaintiff's costs and attorneys' fees to bring this motion, and granting such other and further relief as the Court deems just and proper.

Dated:  May 11, 2014
Upper Montclair, NJ  07043

AMY R. WEISSBROD GURVEY
Plaintiff/inventor pro se
315 Highland Avenue
Upper Montclair, NJ 07043
amyweissbrod@verizon.net

4

EXHIBIT 49
Page 771 of 808

To: SDNY ECF

Richard Supple, Esq.
Hinshaw & Culbertson, LLP
800 Third Avenue  13th Fl
New York, NY  10022

EXHIBIT 49
Page 772 of 808

# EXHIBIT 50

# EXHIBIT 50

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                       :

AMY R. GURVEY,                       :
                    Plaintiff,    :
                         :
          -against-        :
                         :

COWAN, LEIBOWITZ & LATMAN, P.C., et al.,:
                      Defendants. :
----------------------------------------------------------X

06 Civ. 1202 (LGS) (HBP)

**OPINION AND ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/17/15

LORNA G. SCHOFIELD, District Judge:

      Magistrate Judge Henry B. Pitman, to whom this matter has been referred for supervision

of pretrial proceedings, issued a Report and Recommendation (the "Report"), dated July 24,

2015, recommending that:  (1) Defendants Cowan Liebowitz & Latman, P.C., William Borchard,

Midge Hyman, Baila Celedonia and J. Christopher Jensen's (collectively, "Defendants") motions

for sanctions against Plaintiff Amy Gurvey under Federal Rule of Civil Procedure 11 be granted;

(2) Plaintiff be sanctioned $20,000, payable to the Clerk of Court; and (3) this action be stayed

until Plaintiff pays the sanction, and that, if Plaintiff fails to pay the sanction within one year, the

action be dismissed with prejudice.  For the reasons stated below, the Report is adopted in part

and rejected in part.

I.     **BACKGROUND**

      The facts and procedural history relevant to the motions are set out in the Report and

summarized here.

     **A.     Relevant Factual and Procedural History**

      Plaintiff Amy Gurvey brought this action against her attorneys, Defendant Cowan

Liebowitz & Latman, P.C. ("Cowan"), several partners of, and one associate employed by,

Cowan (together with Cowan, the "Cowan Defendants") and various other defendants, alleging

claims for, inter alia, misappropriation of trade secrets, unfair competition, breach of fiduciary

EXHIBIT 50
Page 774 of 808

duty, attorney malpractice and violations of the Lanham Act.  In April 2009, the Third Amended Complaint was dismissed.  In February 2012, the Second Circuit affirmed the dismissal of most of Plaintiff's claims, but found that the Third Amended Complaint stated plausible claims for attorney malpractice and breach of fiduciary duty against the Cowan Defendants and remanded the case for further proceedings.  *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, 462 F. App'x 26, 30 (2d Cir. 2012).  The mandate issued on March 12, 2012.

Plaintiff is a lawyer suspended from the practice of law in the State of New York.  In the three-and-a-half years since the Second Circuit mandate, Plaintiff has acted pro se except for a five-month period from April 7, 2015, to September 14, 2015.  During those years, she has done little to bring her claims to resolution.  Plaintiff has failed to comply with discovery orders, has resisted the taking of her own deposition and has filed a multitude of meritless motions and applications.

For instance, by Order dated July 15, 2013, Judge Pitman found that Plaintiff had violated:  (1) an Order dated October 10, 2012, by seeking discovery that far exceeded the scope of her malpractice and breach of fiduciary claims; and (2) an Order dated January 14, 2013, by failing to provide Judge Pitman with written explanations of how each of her discovery requests served on Defendants were relevant to her two claims for attorney malpractice and breach of fiduciary duty by the court-order deadline of January 17, 2013.  The July 15, 2013, Order denied Plaintiff's request for an extension of time, stating that Plaintiff's excuse that she was hospitalized for a couple months for health reasons were baseless as she continued to make numerous filings during that period.

Rather than pursuing her claims, Plaintiff has made the following applications, among others:  (1) permission to file a proposed fourth amended complaint, fifth amended complaint and

2

EXHIBIT 50
Page 775 of 808

sixth amended complaint; (2) disqualification of Defendants' counsel; (3) an extension of time to effect service even though Plaintiff commenced the action in 2006; (4) reconsideration of orders and opinions; (5) remand to state court; (6) purported interlocutory review of Judge Pitman's decisions directly by the Second Circuit; (7) sanctions against Defendants; and (8) judicial recusal.

As a result, the docket sheet has grown by over 200 entries since this case was remanded by the Second Circuit over three years ago.  Despite the size of the docket sheet, and a fact discovery deadline of September 19, 2014, this case has not proceeded to the summary judgment stage or trial.

### B.    The Report and Subsequent Events

Defendants have moved for Rule 11 sanctions against Plaintiff, asserting that she filed (1) a frivolous motion for reconsideration of an order imposing Rule 37 sanctions on Plaintiff for failure to comply with her discovery obligations and two court orders; (2) a frivolous motion to file a proposed sixth amended complaint; and (3) a frivolous motion for disqualification of Judge Pitman.  The Report found that each of these three submissions by Plaintiff violated Rule 11. The Report recommended sanctions of $20,000 payable to the Clerk of Court, a stay pending payment and dismissal of this case if the sanction was not paid within one year.  The Report reasoned that such sanctions were appropriate because, inter alia, Plaintiff's conduct was willful; Plaintiff had engaged in a pattern of frivolous motion practice both in this case and in other unrelated cases; and sanctions of $8,783 and $5,700 imposed in unrelated proceedings had not dissuaded Plaintiff from continuing to engage in sanctionable conduct.

On August 7, 2015, Plaintiff -- briefly represented by counsel -- timely filed objections to the Report (the "Objections").  The Objections do not specifically address why the three

EXHIBIT 50
Page 776 of 808

submissions do not violate Rule 11.  Rather, the Objections assert that the procedural history of this case shows that Plaintiff's conduct has not been frivolous and was not intended to harm, harass or delay the proceedings.

On August 20, 2015, Defendants timely filed responses to the Objections (the "Responses"), stating the Objections should not be sustained and that the Report should be affirmed.

Proceeding pro se, on August 24, 2015, Plaintiff filed an interlocutory appeal with the Second Circuit challenging, among other things, two of the matters at issue on this sanctions motion -- Judge Pitman's decision denying Plaintiff's motion for recusal and her motion for leave to file a proposed sixth amended complaint.[1]

## II.    LEGAL STANDARD

### A.    Standard of Review

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Typically, the district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law."  *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 72(b), *Thomas v. Arn*, 474 U.S. 140, 149 (1985)).  But in the context of Rule 11, the Second Circuit has left open whether de novo review is required for a magistrate judge's recommendation of sanctions under Rule 11.

---

[1]    Where, as here, a party files a frivolous interlocutory appeal, a district court is not divested of jurisdiction.  *See United States v. Rodgers*, 101 F.3d 247, 251-52 (2d Cir. 1996) ("We fail to see any efficiency in allowing a party to halt district court proceedings arbitrarily by filing a plainly unauthorized notice of appeal which confers on [the appeals court] the power to do nothing but dismiss the appeal.").

4

EXHIBIT 50
Page 777 of 808

*Kiobel v. Millson*, 592 F.3d 78, 79-80 (2d Cir. 2010) (declining to decide "whether the District Judge applied the correct standard of review to the Magistrate Judge's determination that Rule 11 sanctions were warranted"). In an exercise of caution, the review below is de novo.

### B. Rule 11 Standard

Rule 11 states that an attorney or pro se party who presents "a pleading, written motion, or other paper" to a court thereby "certifies" that to "the best of the person's knowledge, information, and belief," formed after a reasonable inquiry, the filing is: (1) not presented for any improper purpose, such as to "harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) supported in facts known or likely to be discovered on further investigation. Fed. R. Civ. P. 11(b). "[A] court may impose an appropriate sanction on . . . a party that violated [Rule 11(b)] or is responsible for the violation." Fed. R. Civ. P. 11(c).

"[T]he main purpose of Rule 11 is to deter improper behavior, not to compensate the victims of it or punish the offender." *Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99, 103 (2d Cir. 2015) (quoting 5A Charles Alan Wright et al., *Federal Practice and Procedure* § 1336.3 (3d ed. 2004)). For sanctions issued pursuant to a motion by opposing counsel, courts have held that an attorney or litigant "could be sanctioned for conduct that was objectively unreasonable." *Muhammad v. Walmart Stores East, L.P.,* 732 F.3d 104, 108 (2d Cir. 2013). "[D]istrict courts are given 'broad discretion' in creating Rule 11 sanctions," so long as the sanctions "fit within the confines of the rule." *Universitas Educ.*, 784 F.3d at 103 (quoting *O'Malley v. N.Y.C. Transit Auth.,* 896 F.2d 704, 709 (2d Cir.1990)).

5

EXHIBIT 50
Page 778 of 808

## III.   DISCUSSION

Upon a de novo review of the record in this litigation, including the pleadings, the docket sheet, the parties' respective submissions filed in connection with the motions described in the Report, applicable legal authorities, the Report, the Objections and the Responses, the Court adopts the Report's findings, reasoning and legal support for concluding that Plaintiff violated Rule 11.  The Report's recommendations about the sanctions to be imposed are modified as discussed below.

### A.   Plaintiff Violated Rule 11

The Report correctly found that the following frivolous filings violated Rule 11: (1) Plaintiff's motion for reconsideration dated March 24, 2014 (the "Motion for Reconsideration"); (2) Plaintiff's motion for leave to file a proposed sixth amended complaint ("Motion to Amend"); and (3) Plaintiff's motion to disqualify Judge Pitman (the "Disqualification Motion").

#### 1.   Plaintiff's Motion for Reconsideration

The Motion for Reconsideration violated Rule 11 as it lacked any factual or legal basis. "Rule 11 permits sanctions against a litigant who submits a pleading or motion that, evaluated 'under an objective standard of reasonableness, . . . [has] no chance of success and [makes] no reasonable argument to extend, modify or reverse the law as it stands.'"  *Smith v. Westchester Cnty. Dep't of Corr.*, 577 F. App'x 17, 18 (2d Cir. 2014) (quoting *Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994)) (affirming imposition of Rule 11 sanction for a frivolous motion for reconsideration); *accord Maisonville v. F2 America, Inc.*, 902 F.2d 746, 748-49 (9th Cir. 1990) (affirming imposition of Rule 11 sanctions for frivolous motion for reconsideration); *Miller v. Norfolk S. Ry. Co.*, 208 F. Supp. 2d

6

EXHIBIT 50
Page 779 of 808

851, 853-54 (N.D. Ohio 2002) (imposing Rule 11 sanctions for frivolous motion for reconsideration that "presented no basis on which it could, or should[,] have been granted"); *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626-27 (S.D. Miss. 1990) (imposing Rule 11 sanction for frivolous motion for reconsideration that merely repeated arguments made in original motion). Applying an objective standard, a reasonable person in Plaintiff's circumstances would have known that the motion was baseless.

The Motion for Reconsideration lacked any chance of success. The motion asserted that Judge Pitman did not consider the evidence before him and found facts not supported by the evidence. In support, however, it relied on numerous factual misrepresentations, including that: (1) Judge Pitman admitted at a conference that he "only considered [Defendants'] papers but did not consider all [of] Plaintiff's relevant papers" in connection with a motion for sanctions, which is contradicted by the extensive discussion of Plaintiff's submissions in the relevant order; and (2) Defendants had been permitted to "reframe sanction arguments already rejected . . . [by] the Second Circuit," when the Second Circuit's decision did not discuss sanctions and the conduct being sanctioned occurred after the Second Circuit's decision. The motion also relied on numerous alleged instances of misconduct by defense counsel that were unrelated to the relief requested -- reconsideration of an order imposing Rule 37 sanctions on *Plaintiff* for failing to comply with court orders or with her discovery obligations. Accordingly, the Motion for Reconsideration violated Rule 11 as the legal arguments were frivolous, and the factual contentions were unsupported by any evidence.

Bringing the Motion for Reconsideration was objectively unreasonable because Plaintiff knew the standard for a motion for reconsideration. First, in April 2013, Plaintiff had been sanctioned for filing "repeated, unsupported requests for reconsideration" in an unrelated case.

7

EXHIBIT 50
Page 780 of 808

*Gurvey v. Legend Films, Inc.*, No. 09 Civ. 942, 2013 WL 1883229, at *1 (S.D. Cal. May 3, 2013). Second, on August 1, 2013, Plaintiff -- acting pro se -- filed a motion for reconsideration that included the legal standard for such a motion. Finally, about one month before Plaintiff brought the Motion for Reconsideration, Judge Pitman's February 25, 2014, Order again stated the relevant legal standard in denying Plaintiff's motion for reconsideration not at issue here. The February 25, 2014, Order also warned Plaintiff that further noncompliance with the Federal Rules of Civil Procedure could result in sanctions, including dismissal of the action. By failing to heed Judge Pitman's warning and filing the frivolous Motion for Reconsideration, Plaintiff violated Rule 11.

### 2.    Plaintiff's Motion to Amend

Plaintiff's Motion to Amend also violated Rule 11 because the proposed sixth amended complaint was duplicative of her proposed fifth amended complaint. Rule 11 sanctions may be imposed when a proposed amended complaint "not only failed to correct legal deficiencies in plaintiffs' earlier amended complaints, but reasserted, without sufficient new factual allegations, numerous claims that [had been] dismissed, and asserted certain other claims without any substantive legal basis." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (imposing Rule 11 sanctions for proposed complaint that "merely retreaded claims previously dismissed"), *aff'd sub nom. Hochstadt v. N.Y. State Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013).

By Decision and Order dated July 15, 2013, Judge Pitman denied Plaintiff's motion to file the proposed fifth amended complaint based on futility, failure to state a claim, undue delay and prejudice to defendants. That order provided a detailed recitation of the relevant pleading standards and discussed the substantive law. Judge Pitman then denied Plaintiff's motion to

8

EXHIBIT 50
Page 781 of 808

reconsider that order.  Plaintiff subsequently sought leave to file a proposed sixth amended complaint, asserting that it made new allegations based on facts disclosed by Defendants in their document production after the proposed fifth amended complaint had been rejected.  But, as detailed in the Report and in Judge Pitman's Opinion and Order dated July 21, 2015, denying leave to file a sixth amended complaint, there is no material difference between the two proposed complaints.

Among other things, both proposed complaints allege:  (1) Defendants failed to act competently in prosecuting Plaintiff's patent applications, causing her damages; (2) Defendants disclosed Plaintiff's confidential information to its clients; and (3) Defendants breached its obligations to Plaintiff by providing services to Legends Film to Plaintiff's detriment.  The proposed sixth amended complaint was merely a restated and reorganized iteration of the proposed fifth amended complaint.  Accordingly, the motion to file yet another amended complaint violated Rule 11.

### 3.    Plaintiff's Disqualification Motion

The Disqualification Motion also violated Rule 11 because it contained numerous factual misrepresentations.  As discussed in the Report and in Judge Pitman's Opinion and Order dated July 21, 2015, denying the Disqualification Motion, this motion incorrectly asserted, inter alia, that:  (1) Judge Pitman denied Plaintiff discovery by failing to schedule a discovery conference until March 19, 2014, but conferences were held on October 9, 2012, and January 3, 2013, and, in any event, Judge Pitman decided various discovery motions on the papers; (2) Judge Pitman improperly considered information from outside this case; (3) Defendants' counsel supervised attorneys on the Departmental Disciplinary Committee in 2007 to obtain an unfair advantage in

EXHIBIT 50
Page 782 of 808

this litigation; and (4) Defendants' counsel submitted "altered" evidence and "tamper[ed] with files in the public room." These frivolous allegations violate Rule 11.

### 4. The Objections

In arguing for a contrary result, the Objections make three arguments. First, the Objections assert that Plaintiff acted in good faith. Specifically, the Objections argue that Plaintiff "was 'over her head' in attempting to litigate this case herself" and had filed numerous motions in an effort to obtain discovery and move this case to a decision on the merits. This argument is unpersuasive. Rule 11 applies to pro se litigants. Fed. R. Civ. P. 11(b)-(c) ("[T]he court may impose an appropriate sanction on any attorney, law firm, *or party* that violated [Rule 11(b)] . . . .") (emphasis added); *see also Patterson v. Aiken,* 841 F.2d 386, 387 (11 Cir. 1988) (per curiam) ("[O]ne acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." (quoting *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986)).

Moreover, "[Plaintiff] is a lawyer and, therefore, [s]he cannot claim the special consideration which the courts customarily grant to *pro se* parties." *Harbulak v. Suffolk Cnty.,* 654 F.2d 194, 198 (2d Cir. 1981); *accord Fox v. Boucher*, 794 F.2d 34, 38 (2d Cir. 1986) ("When the litigant is an attorney sanctions are particularly appropriate."). Finally, Plaintiff had been warned that further noncompliance with the Federal Rules of Civil Procedure would result in sanctions, but failed to heed this warning. Accordingly, this argument fails.

Second, the Objections assert that this Court's March 19, 2013, Order divested Judge Pitman of any further jurisdiction. This is incorrect. This case was reassigned from the Honorable Barbara S. Jones, upon her retirement, to this Court on March 11, 2013, in effect advising that a new judge would be replacing Judge Jones on the case. The March 19, 2013,

10

EXHIBIT 50
Page 783 of 808

Order did not withdraw the referral to Judge Pitman for general pretrial supervision, and Judge Pitman has continued to supervise general pretrial matters since that Order was entered over two years ago. Accordingly, this argument is meritless.

Finally, the Objections allege that "Judge Pitman may not have the power to decide a motion to amend the complaint due to its dispositive nature." This is incorrect. The Second Circuit has considered and rejected a similar argument, finding that a "magistrate judge acted within his authority in denying [a] motion to amend the complaint." *Marsh v. Sheriff of Cayuga Cnty.*, 36 F. App'x 10, 1 (2d Cir. 2002) (citing 28 U.S.C. § 636(b)(1)(A)). Accordingly, this argument fails and the Report's finding that Plaintiff's Disqualification Motion violated Rule 11 is adopted.

### B. Nature of Sanctions Imposed

"Once a court determines that Rule 11(b) has been violated, it may . . . impose sanctions limited to what is 'sufficient to deter repetition of such conduct.'" *Margo v. Weiss,* 213 F.3d 55, 64 (2d Cir. 2000) (quoting Fed. R. Civ. P. 11(c). "District courts are given broad discretion in tailoring appropriate and reasonable sanctions." *O'Malley,* 896 F.2d at 709; *accord* 5A Charles Alan Wright et al., *Federal Practice and Procedures* § 1336.3 (3d ed.) ("[F]ederal courts retain broad discretionary power to fashion novel and unique sanctions to fit the particular case."). "[D]ismissal remains available directly under Rule 11 although it is reserved for the rare case involving extreme misbehavior by the offending party, such as fraud, contempt, and willful bad faith." *Id*.

The Report recommended -- and this Court agrees -- that significant monetary and non-monetary sanctions should be imposed because, inter alia, (1) Plaintiff's conduct has been willful; (2) prior sanctions of $5,700 and $8,783 in unrelated actions had not dissuaded Plaintiff from

11

EXHIBIT 50
Page 784 of 808

engaging in frivolous motion practice; and (3) Plaintiff's actions in this litigation have unnecessarily delayed resolution of this case.

The Report's recommendation of a $20,000 sanction, however, is reduced to $10,000 to pay for a special master, as detailed below. The amount of $10,000 is reasonable and likely sufficient to pay a special master as discovery has closed and all that remains are dispositive motions, if any, followed by a potential trial. Review by the special master at Plaintiff's expense is necessary to deter Plaintiff from repeating the sanctionable conduct as Plaintiff has continued to file meritless applications and motions notwithstanding the close of discovery approximately one year ago. *See* Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."). To the extent that Plaintiff continues to make court submissions as she has in the past, review by a special master appears necessary to address pretrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge. *See* Fed. R. Civ. P. 53(a). Barring Plaintiff from filing further papers in this case, except as specified below, is necessary to deter repetition of Rule 11 violations, prevent further delay and bring this nine-year-old case to a resolution on the merits. Accordingly, the Report's recommendation is modified, and the following sanctions are imposed on Plaintiff:

(1)     This case is stayed, unless and until $10,000 is deposited with the Clerk of Court.

(2)     Plaintiff may deposit $10,000 with the Clerk of Court, and the Clerk of Court shall maintain the funds in an interest bearing account until further order of the Court.

(3)     The funds shall be used to pay a special master appointed by the Court to (a) familiarize himself or herself with this case and (b) review Plaintiff's proposed filings to determine whether they are frivolous or otherwise patently improper.

12

EXHIBIT 50
Page 785 of 808

(4)     Plaintiff will receive the balance of the funds she deposited, if any, after this case

is closed and all appeals have been exhausted.

(5)     Plaintiff will be required to deposit additional funds on terms to be specified, if the

original $10,000 is exhausted before the conclusion of the case.

(6)     If the initial $10,000 deposit is not made within one year of the date of this

Opinion and Order, then the case will be dismissed.

(7)     Plaintiff shall submit all proposed filings to the special master and obtain a written

statement from the special master as to whether the proposed filing is frivolous or

otherwise patently improper ("Approval for Filing").

(8)     Plaintiff's ECF filing privileges are revoked and she must make all filings through

the Pro Se Office.

(9)     Plaintiff may submit a proposed submission to the Pro Se Office for filing only if

the submission is accompanied by an Approval for Filing.

(10)    The Pro Se Office shall reject any proposed submission by or on behalf of Plaintiff

that is not accompanied by an Approval for Filing.  The Pro Se Office shall file on

ECF any proposed submission by or on behalf of Plaintiff that is accompanied by

an Approval for Filing.

## IV.    CONCLUSION

For the foregoing reasons, the Report's recommendation that Plaintiff be sanctioned by

requiring her to pay $20,000 to the Clerk of Court is REJECTED, and the sanctions outlined in

13

EXHIBIT 50
Page 786 of 808

numbered paragraphs 1 through 10 above are imposed.  The remainder of the Report is

ADOPTED.

      The Clerk of Court is respectfully directed to close Docket Numbers 223, 224 and 294.

SO ORDERED.

Dated: September 17, 2015
      New York, New York

                            **LORNA G. SCHOFIELD**
                          **UNITED STATES DISTRICT JUDGE**

14

EXHIBIT 50
Page 787 of 808

# EXHIBIT 51

# EXHIBIT 51

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMY R. GURVEY, | No.06 cv 1202 (LGS)(HBP) |
| Plaintiff, | **DECLARATION OF J. RICHARD SUPPLE, JR. IN FURTHER SUPPORT OF DEFENDANTS' RULE 11 MOTIONS AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTIONS TO DISQUALIFY, IMPOSE SANCTIONS, COMPEL DISCOVERY AND FOR A STAY** |
| v. | |
| COWAN LIEBOWITZ & LATMAN, P.C., WILLIAM BORCHARD, MIDGE HYMAN, BAILA CELEDONIA and CHRISTOPHER JENSEN, | |
| Defendants. | |

J. RICHARD SUPPLE, JR., an attorney duly admitted to the bar of this Court, declares under penalty of perjury that the following statements are true and correct:

1.      I am a partner in Hinshaw & Culbertson LLP, attorneys for the defendants.  I submit this Declaration in further support of defendants' motions for Rule 11 sanctions, and in opposition to plaintiff Amy R. Gurvey's cross-motions to disqualify, for sanctions, to compel discovery, and to stay this case pending resolution of her appeal to the United States Court of Appeals for the Second Circuit in a different matter.

2.      Defendants' Rule 11 motions show that Gurvey's litigation misconduct consists of, *inter alia*, (a) filing a motion for leave to serve a Sixth Amended Complaint that is identical in all material respects to her previous unsuccessful motions for leave to file Fourth and Fifth Amended Complaints, which this Court rejected as futile, prejudicial, inordinately delayed, conceived in bad faith, and made to harass defendants, and (b) filing a motion to reconsider this Court's recently-imposed Rule 37 sanctions, which contains numerous false and scurrilous

130811662 0867998
EXHIBIT 51
Page 789 of 808

statements.  As this Court well knows, Gurvey has a long history of litigation misconduct in this and many other cases.

3.      To the extent it is coherent, Gurvey's opposing declaration ("Dec."), filed on May 12, 2014, and her memorandum of law fail to challenge any of defendants' arguments and allegations of misconduct.  Instead, Gurvey compounds her original misconduct by making new false, scurrilous and absurd assertions in support of meritless cross-motions interposed only to harass defendants and distract the Court from her own improper behavior.  The following is a sampling of Gurvey's new false and sanctionable assertions of fact:

a.      *"Partners of [Hinshaw & Culbertson] including Supple and Hal Lieberman, Esq. doubled as committee members at the DDC at times relevant and failed to disclose their innate conflicts of interest to Plaintiff or the Court."*  Dec. at 4.

This is false.  Neither my partner, Mr. Lieberman, nor I worked at the Departmental Disciplinary Committee after 1998 and 1999, respectively -- a fact we have previously explained to Gurvey -- nor has either of us ever been "committee members."  There is no conflict of interest.  All supposedly "relevant" actions regarding Gurvey's disciplinary activities occurred years after Mr. Lieberman and I left the Disciplinary Committee.  Her fabricated claim is irrelevant in any event since Gurvey's dismissed disciplinary complaints have nothing to do with the merits of her remaining claims in this case.

b.      *"H&C partners were sued in 2007 before this Court by other inventors for whitewashing grievances submitted against patent attorneys at Proskauer and Ropes & Gray."*  Dec. at 4.

This is false.  My firm has never been sued in this Court for "whitewashing" disciplinary grievances or otherwise.  Gurvey simply made this claim up.

2

130811662 0867998
EXHIBIT 51
Page 790 of 808

      c.      *"Plaintiff's D[isciplinary] R[ule] claims against Cowan defendants were filed at the DDC in 2004 and whitewashed by several committee members ... and their supervisors who include H&C partner Hal Lieberman."* Dec. at 9.

This is false. I know from personal knowledge that Mr. Lieberman left his employment at the Disciplinary Committee in 1998. He never "supervised" the disposition of any complaints in 2004, when he was in private practice at my firm.

      d.      *"H&C partners in their capacities at DDC, get access to the aggrieved inventor's confidential information, and then they use that information to benefit the sued attorneys when assuming their defense."* Dec. at 10.

This scurrilous allegation of public corruption is false. "H&C partners" have no "capacities" at the Disciplinary Committee or "access" to confidential complaints.

      e.      *"Supple has filed a slew of frivolous ex parte motion[s] ..."* Dec. at 13.

Gurvey's oft-repeated allegation that I regularly file "ex parte" motions is false. Defendants have filed no "ex parte" motions in this case.

      f.      *"H&C partner Lieberman who was a DDC chair at the times Plaintiff's grievances were whitewashed, will be forced to bear witness against Cowan defendants ..."* Dec. at 16.

Again, Mr. Lieberman was not a "DDC chair" and was not affiliated with the Disciplinary Committee in any way when Gurvey filed her complaints or when her complaints were evaluated and dismissed. He therefore cannot "bear witness against Cowan defendants."

      g.      *"Supple had spies check on Plaintiff in the hospital and ordered the records."* Dec. at 21.

This rash and paranoid allegation is false. I did not know when, or even if, Gurvey was in the hospital, and had no authority to "order[]" her records. The allegation of spying is absurd.

3

h.   *"Supple acting in conspiracy with Cowan defendants materially altered the emails and files that Cowan defendants previous[ly] purged ..."* Dec. at 21.

This, too, is false. It is physically impossible that either I or any of the defendants "materially altered" and then "purged" emails and files, and thereafter produced the same emails and files to Gurvey. Tellingly, Gurvey does not identify any supposedly "altered" document or describe any alleged "alterations."

i.   *"Supple defamed plaintiff to other attorneys so that she could not retain a lawyer in the NY area ..."* Dec. at 22.

This false and ridiculous allegation does not identify any "other attorney" I allegedly spoke with or the nature of my purportedly defamatory statements. I do not know what attorneys Gurvey is consulting. If Gurvey is having trouble finding an attorney, it may be because of the numerous reported decisions sanctioning her and/or because she has a history of suing lawyers she hires, including her only lawyer in this case.

j.   *"Plaintiff duly served notice of an intent to file for Rule 11 sanctions upon Supple, Cowan's attorney of record, more than twenty one days ago, if [the] Cowan defendant[s] did not withdraw their Rule 37 and Rule 11 motions."* Memorandum of Law ("Mem.") at 2.

This is false. Gurvey never served me with any Rule 11 notice. Indeed, Gurvey could not possibly have served me with a notice more than twenty-one days before making her Rule 11 cross-motion. Defendants' Rule 11 motions were made on April 28, 2014, which is less than twenty-one days before May 11, 2014, when Gurvey signed her memorandum of law. The absurdity of Gurvey's allegation that she recently served me with a Rule 11 notice to withdraw defendants' already-granted motion for Rule 37 sanctions speaks for itself.

4.   On April 30, 2014, Gurvey refused to appear for her deposition. On May 13, 2014, she filed a letter with this Court denying that she did so. (Exhibit A) Gurvey's letter asserts, without support, that she "notified Supple that she could not sit for deposition until June"

4

because she is planning to move out of her home in New Jersey. That is false. Gurvey never gave advance notice of any kind that she would not appear for her deposition until the day before it was scheduled to occur, when I emailed her to confirm her appearance. She then sent three emails containing excuses having nothing to do with moving from her home (which should not, in any event, impede her ability to sit for a deposition). (Exhibit B)

5.     Gurvey's letter also states that I am somehow "engaging in insurance bad faith" (whatever that means), have made "5 sanctions motions" that were "already denied," that Mr. Lieberman's and my purported "secret" double identities as defense counsel and disciplinary prosecutor is "now before 2d Cir.," and that my "Rule 26(a) disclosures … were late" and not accompanied by "proof of service." Every one of these statements is false and intended to mislead the Court.

6.     Gurvey continues improperly to list Simon Gerson, Mark Montague and R. Lewis Gable as defendants in her caption for this case even though none of those individuals was named in the Third Amended Complaint or served with process. (Exhibit C) (operative Third Amended Complaint caption). The Court should order Gurvey to stop this malicious misconduct.

130811662 0867998
EXHIBIT 51
Page 793 of 808

WHEREFORE, for the reasons set forth in the accompanying memorandum of law, defendants' Rule 11 motions should be granted and plaintiff's cross-motions should be denied.

Dated: New York, New York
      May 21, 2014

                              J. Richard Supple Jr. (JS 3549)

                              HINSHAW & CULBERTSON LLP
                              800 Third Avenue
                              New York, New York 10022
                              212-471-6200 (telephone)
                              212-935-1166 (facsimile)
                              rsupple@hinshawlaw.com (email)

                              *Attorneys for the Defendants*

6

# Exhibit A

EXHIBIT 51
Page 795 of 808

315 Highland Avenue
Upper Montclair, NJ 07043
amyweissbrod@verizon.net
May 13, 2014

FAX  (212) 805-6111
Magistrate Henry Pitman
US District Court Southern District of NY
500 Pearl Street  Chambers Suite 18A
New York, NY  10007

Re: *Weissbrod Gurvey pro se v. Cowan Liebowitz & Latman* 06-cv-1202 (LGS)(HBP)

Dear Magistrate Pitman:

Plaintiff *pro se* has received a copy of Richard Supple's letter to Your Honor that Plaintiff refused to sit for deposition.  This is a lie.  Plaintiff, who is relocating, notified Supple that she could not sit for deposition until June; and that because Plaintiff's NJ home is still not remediated from asbestos contamination and that nodules were discovered in Plaintiff's left lung, Plaintiff has to move.

However, Plaintiff also told Supple that his firm, Hinshaw & Culbertson's disqualification is contended mandatory; that H&C and Cowan are in contumacious defiance of discovery after noticing in April 2014 they will not comply after engaging in 8 years of in-court fraud and frivolous litigation before this Court (Docket #221); and Plaintiff is already entitled to §487 damages under NY Judiciary Law.  Plaintiff's cross-motion to Supple's Rule 11 motion-in-chief seeking this and other relief is docketed (Doc. #s 233-236).

In addition, Plaintiff reads that Supple is requesting expedited rush adjudication of his Rule 11 motion in chief.  Plaintiff contends this is Supple's subtle way of seeking to avoid adjudication the serious issues in Plaintiff's cross-motion for engaging in insurance bad faith.  Plaintiff, in fact, seeks a stay of Supple's motion because after diabolically lying for 8 years to this Court and having 5 sanction motions already denied in the first half of the lawsuit (as Plaintiff learned from Squitieri's compelled files), it became necessary for

1

EXHIBIT 51
Page 796 of 808

Plaintiff to complete adjudication of the full set of state orders that Supple had
lied about. Unfortunately, with Judge Jones' retirement, Supple got an unfair
opportunity to reframe the same issues in the second half of the case.

Upon belief, H&C partners including Supple and Hal Lieberman, Esq.
who were DDC chief counsel and committee member respectively, never
disclosed their dual posts as insurance company defense lawyers. They
whitewashed or failed to supervise other DDC members who whitewashed
Plaintiff's and other inventors' DR grievances filed against Cowan defendants,
Proskauer and Ropes & Gray lawyers. In addition, they were secretly involved
in staging or failing to supervise other DDC members who staged Plaintiff's
harassment in the total absence of jurisdiction and statutory authority to gain
unfair litigation advantages in this lawsuit. These issues are now before 2d Cir.

In addition, it is Supple and Cowan defendants' Rule 26(a) disclosures
that were late, incomplete and untruthful, not Plaintiff's (Enclosed)[1]. Supple's
Rule 37 sanction motion was frivolous because he has no case.

Supple's other contention in his Rule 11 motion that Plaintiff's 5AC is a
duplicate of the 6AC is legally impossible. The 5AC is a duplicate of the
"4AC" that Supple already opposed in 2010 but was not docketed by SDNY
during the stay of appeal as explained in Plaintiff's cross-motion. That motion
based on issuance of Plaintiff's first patent claims 8 years after Cowan was
retained, was re-served with a new title on remand.

Moreover, Plaintiff's discovery of Cowan' defendants' conspiracy to
steal Plaintiff's patent claims with other clients and withholding/purging the
files "at the clients' instructions" was not discovered until Cowan's first
document production in December, 2012, three months after the 5AC was
served and after Supple Rule 26(a) disclosures. Supple having previously billed
in 2010 to oppose the 4AC is again lying in his Rule 37 motion because he
double –billed the insurance carrier for the same services.

---

[1] Supple's Rule 26(a) disclosures served on behalf of Cowan defendants were
received on or about December 10 2012. There is a discrepancy between when
they were allegedly drafted on November 8th . There is no proof of service
appended to the disclosures that Plaintiff received.

2

EXHIBIT 51
Page 797 of 808

Respectfully submitted,

Amy R. Weissbrod Gurvey
Plaintiff-inventor prose se

cc: Hon. Lorna Schofield

Richard Supple, Esq.
Hinshaw & Culbertson, LLP
800 Third Avenue  13th Fl
New York, NY  10022

3

EXHIBIT 51
Page 798 of 808

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMY R. GURVEY,

                                   Plaintiff,

         v.

COWAN LIEBOWITZ & LATMAN, P.C., WILLIAM
BORCHARD, MIDGE HYMAN, BAILA CELEDONIA,
CHRISTOPHER JENSEN, MICHAEL GORDON and
SUSAN SCHICK,

                                   Defendants.

No.06 cv 1202 (BSJ)(HBP)

**DEFENDANTS' INITIAL
DISCLOSURES PURSUANT
TO RULE 28(a)(1)(A)**

Defendants hereby make their initial disclosures pursuant to Fed.R.Civ.P. 28(a)(1)(A).

1.      Persons likely to have discoverable information regarding Defendants' defenses
to the non-dismissed claims in the Third Amended Complaint, excepting those who have only
impeaching evidence, are:

      a.      Plaintiff.

      b.      Each individual defendant c/o their attorneys, Hinshaw & Culbertson LLP.

      c.      Simon Gerson, Mark Montague and R. Lewis Gable c/o Hinshaw &
Culbertson LLP.

      d.      Hamlet Newson, Clear Channel Communications, Inc., 200 East Basse
Road, San Antonio, Texas 78209.

      e.      Susan Schick and Michael Gordon, c/o Michael Berlin, Esq., Greenberg
Traurig, MetLife Building, 200 Park Avenue, New York, New York 10166.

EXHIBIT 51
Page 799 of 808

2.      Copies of documents defendants may use to support their defenses are provided herewith.  Defendants reserve the right to supplement this production if and as other responsive documents are discovered or otherwise come into their possession, custody or control.

3.      As of the date of this disclosure, defendants have not asserted counterclaims for damages.

4.      A policy of insurance that may be applied to satisfy some or all of a possible judgment in this action is produced with the documents referenced in ¶ 2 *supra*.

Dated: New York, New York
       November 8, 2012

J. Richard Supple (JS 3549)

HINSHAW & CULBERTSON LLP
*Attorneys for Defendants*
780 Third Avenue, 4th Floor
New York, New York 10017
Tel: (212) 471-6200
Fax: (212) 935-1166
Email: rsupple@hinshawlaw.com

TO:

AMY R. GURVEY
*Plaintiff pro se*
315 Highland Avenue
Upper Montclair, New Jersey 07043

2

# Exhibit B

EXHIBIT 51
Page 801 of 808



**RE: Deposition scheduled for Wednesday, April 30, 2014 at 10 am**
Amy Weissbrod  to: rsupple                                      04/28/2014 11:51 AM

The case is stayed per order of the Court.

**From:** rsupple@hinshawlaw.com [mailto:rsupple@hinshawlaw.com]
**Sent:** Monday, April 28, 2014 10:39 AM
**To:** Amy Weissbrod
**Subject:** Deposition scheduled for Wednesday, April 30, 2014 at 10 am

Ms. Gurvey,

This is to remind you that your deposition is scheduled to be taken this Wednesday, starting at 10 am, at my office, which is located in Manhattan at 800 Third Avenue, 13th floor, between East 49th and East 50th Streets.

Kindly confirm that you plan to appear for your deposition.  When you arrive, please ask for me at reception.

Very truly yours,

**Richard Supple**
Hinshaw & Culbertson LLP
800 Third Avenue 13th Floor, New York, NY 10022
Tel: 212-471-6210 | Fax: 212-935-1166
E-mail: rsupple@hinshawlaw.com



Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

EXHIBIT 51
Page 802 of 808



**RE: Deposition scheduled for Wednesday, April 30, 2014 at 10 am**
Amy Weissbrod  to: rsupple                                    04/28/2014 11:51 AM

I told you previously I am not attending the deposition on April 30.

**From:** rsupple@hinshawlaw.com [mailto:rsupple@hinshawlaw.com]
**Sent:** Monday, April 28, 2014 10:39 AM
**To:** Amy Weissbrod
**Subject:** Deposition scheduled for Wednesday, April 30, 2014 at 10 am

Ms. Gurvey,

This is to remind you that your deposition is scheduled to be taken this Wednesday, starting at 10 am, at my office, which is located in Manhattan at 800 Third Avenue, 13th floor, between East 49th and East 50th Streets.

Kindly confirm that you plan to appear for your deposition.  When you arrive, please ask for me at reception.

Very truly yours,

**Richard Supple**
Hinshaw & Culbertson LLP
800 Third Avenue 13th Floor, New York, NY 10022
Tel: 212-471-6210 | Fax: 212-935-1166
E-mail: rsupple@hinshawlaw.com

**HINSHAW**
& CULBERTSON LLP

Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

EXHIBIT 51
Page 803 of 808



**RE: Deposition scheduled for Wednesday, April 30, 2014 at 10 am**
Amy Weissbrod  to: rsupple                                    04/28/2014 11:53 AM

| History: | This message has been replied to. |
|---|---|

Your Rule 26 disclosures are fraudulent.

**From:** rsupple@hinshawlaw.com [mailto:rsupple@hinshawlaw.com]
**Sent:** Monday, April 28, 2014 10:39 AM
**To:** Amy Weissbrod
**Subject:** Deposition scheduled for Wednesday, April 30, 2014 at 10 am

Ms. Gurvey,

This is to remind you that your deposition is scheduled to be taken this Wednesday, starting at 10 am, at my office, which is located in Manhattan at 800 Third Avenue, 13th floor, between East 49th and East 50th Streets.

Kindly confirm that you plan to appear for your deposition. When you arrive, please ask for me at reception.

Very truly yours,

Richard Supple
Hinshaw & Culbertson LLP
800 Third Avenue 13th Floor, New York, NY 10022
Tel: 212-471-6210 | Fax: 212-935-1166
E-mail: rsupple@hinshawlaw.com

# HINSHAW
& CULBERTSON LLP

Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

EXHIBIT 51
Page 804 of 808



**RE: Deposition scheduled for Wednesday, April 30, 2014 at 10 am**
Amy Weissbrod  to: rsupple                                          04/28/2014 05:00 PM

I did tell you previously that I would not attend on the 30th; and I left a message.

**From:** rsupple@hinshawlaw.com [mailto:rsupple@hinshawlaw.com]
**Sent:** Monday, April 28, 2014 12:26 PM
**To:** Amy Weissbrod
**Subject:** RE: Deposition scheduled for Wednesday, April 30, 2014 at 10 am

Ms. Gurvey,

The case is not stayed (only your appeal is stayed) and you did not tell me previously that you would not attend your deposition.  I reject your baseless allegation that my clients' Rule 26 disclosures are "fraudulent" and do not believe your opinion provides you with a basis to refuse to attend your deposition.

I will assume that, despite the above, you do not plan to attend your deposition.  Please let me know before 5 pm today if you change your mind.  I will cancel the Court reporter at that time if I do not hear from you.


Very truly yours,

**Richard Supple**
Hinshaw & Culbertson LLP
800 Third Avenue 13th Floor, New York, NY 10022
Tel: 212-471-6210 | Fax: 212-935-1166
E-mail: rsupple@hinshawlaw.com

# HINSHAW
& CULBERTSON LLP



From:      "Amy Weissbrod" <amyweissbrod@verizon.net>
To:        <rsupple@hinshawlaw.com>,
Date:      04/28/2014 11:53 AM
Subject:   RE: Deposition scheduled for Wednesday, April 30, 2014 at 10 am



Your Rule 26 disclosures are fraudulent.

**From:** rsupple@hinshawlaw.com [mailto:rsupple@hinshawlaw.com]
**Sent:** Monday, April 28, 2014 10:39 AM
**To:** Amy Weissbrod
**Subject:** Deposition scheduled for Wednesday, April 30, 2014 at 10 am

EXHIBIT 51
Page 805 of 808

Ms. Gurvey,

This is to remind you that your deposition is scheduled to be taken this Wednesday, starting at 10 am, at my office, which is located in Manhattan at 800 Third Avenue, 13th floor, between East 49th and East 50th Streets.

Kindly confirm that you plan to appear for your deposition.  When you arrive, please ask for me at reception.

Very truly yours,

**Richard Supple**
Hinshaw & Culbertson LLP
800 Third Avenue 13th Floor, New York, NY 10022
Tel: 212-471-6210  |  Fax: 212-935-1166
E-mail: rsupple@hinshawlaw.com

# HINSHAW
& CULBERTSON LLP

Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

EXHIBIT 51
Page 806 of 808

# Exhibit C

EXHIBIT 51
Page 807 of 808

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

AMY R. GURVEY,                              CIVIL ACTION NO.:
                                            06-CV-1202 (BSJ)
                    Plaintiff,

        -against-                           JURY TRIAL REQUESTED

WILLIAM BORCHARD, MIDGE HYMAN,              THIRD AMENDED
BAILA CELEDONIA, CHRISTOPHER                COMPLAINT
JENSEN, COWAN, LIEBOWITZ & LATMAN,
PC, CLEAR CHANNEL COMMUNICATIONS,
INC., INSTANTLIVE CONCERTS, LLC, LIVE
NATION, INC., NEXTICKETING, LLC, DALE
HEAD, STEVE SIMON, MICHAEL GORDON
and SUSAN SCHICK,

                    Defendants.
-----------------------------------------------------------x



        The Plaintiff, Amy R. Gurney, for her Third Amended Complaint against defendants

alleges as follows:

## I. PARTIES

        1.      Plaintiff Amy R. Gurney since before 1999 has devoted virtually all her time,

effort and money towards the development of processes, systems and methods for the editing,

packaging and distribution of live recordings emanating from live events and associated

electronic ticketing methods. Her attorneys, defendant Cowan, Liebowitz and Latman, PC

("CLL"), filed Provisional Patent Applications ("PPA") Nos. 60,382,710 and 60,382,949 on May

22, 2002 and May 24, 2002, respectively, on behalf of plaintiff, naming plaintiff as sole inventor

and themselves as attorneys of record of certain inventions including those related to the

packaging, editing, management and distribution of live recordings emanating from events at

concert, sports, conferencing and gaming venues including associated electronic ticketing

EXHIBIT 51
Page 808 of 808