

*Live-Fi™ Technology Holdings*

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

LIVE-Fi® Technologies, LLC
Amy R. Weissbrod-Gurvey
Co-Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

_____X

LIVE-Fi® TECHNOLOGIES LLC,  Plaintiff,

Patent Holding Company for Co-Plaintiff, Amy R. Weissbrod
(a/k/a Gurvey) US Patentee, CEO LIVE-Fi® Technologies, LLC,

**RULE 11 SAFE HAVEN MOTION SEEKING THAT DEFENDANTS WITHDRAW THEIR FRIVOLOUS MOTIONS SEEKING DISMISSAL OF PLAINTIFF'S COMPLAINT WITHIN 21 DAYS OR RISK SANCTIONS**

**CASE NO.  2:23-cv-04381-MEMF-E**

**JURY TRIAL REQUESTED**

v.

**35 USC§ 271, 284, 285, 286;**
**17 USC §1; 15 USC §12-17, 1125;**
**42 USC §1983, 18 USC §1962, 1964**

LIVE NATION ENTERTAINMENT INC.,
TICKETMASTER, INC., LIVE NATION, INC.,
INSTANT LIVE CONCERTS, LLC, MLB, INC.
MLB ADVANCED MEDIA, INC., PHISH, INC., LIVE PHISH,
COWAN LIEBOWITZ & LATMAN, PC,
HINSHAW & CULBERTSON, LLP,
BAKER BOTTS, LLP , Does I-X,  Defendants.
_____X

1

I.    <u>**NOTICE TO DEFENDANTS:**</u>  **A MOTION FOR RULE 11 SANCTIONS WILL BE
FILED IF DEFENDANTS DO NOT WITHDRAW WIHTIN 21 DAYS THEIR
RESPECTIVE FRIVOLOUS MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT
SEEKING TREBLE DAMAGES FOR WILLFUL INFRINGEMENT AND RICO 18
USC §1964 DAMAGES TO PROPERTY AND BUSINESS**

FRCP Rule 11 governs the Signing of Pleadings, Motions, and Other Papers;
Representations to the Court; Sanctions and provides as follows:

**(a) Signature.** Every pleading, written motion, and other paper must be signed by at least one
attorney of record in the attorney's name--or by a party personally if the party is unrepresented. The
paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute
specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The
court must strike an unsigned paper unless the omission is promptly corrected after being called to
the attorney's or party's attention.

**(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other
paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented
party certifies that to the best of the person's knowledge, information, and belief, formed after an
inquiry reasonable under the circumstances:

**(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay,
or needlessly increase the cost of litigation;

**(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a
nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new
law;

**(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or discovery; and

**(4)** The denials of factual contentions are warranted on the evidence or, if specifically so
identified, are reasonably based on belief or a lack of information.

 **(c) Sanctions.**

**(1)** *In General.* If, after notice and a reasonable opportunity to respond, the court determines that
Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law
firm, or party that violated the rule or is responsible for the violation. Absent exceptional
circumstances, a law firm must be held jointly responsible for a violation committed by its
partner, associate, or employee.

*(2) Motion for Sanctions.* A motion for sanctions must be made separately from any other
motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion
must be served under Rule 5, but it must not be filed or be presented to the court if the challenged
paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21
days after service or within another time the court sets. If warranted, the court may award to the
prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

*(3) On the Court's Initiative.* On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

*(4) Nature of a Sanction.* A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

*(5) Limitations on Monetary Sanctions.* The court must not impose a monetary sanction:

(A) against a represented party for violating Rule 11(b)(2); or

(B) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

*(6) Requirements for an Order.* An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.

**(d) Inapplicability to Discovery.** This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rule 26 through 37.

## I. LITIGATION HISTORY IN SUPPORT OF PLAINTIFF'S SAVE HAVEN MOTION SEEKING THAT DEFENDANTS WITHDRAW THEIR MOTIONS TO DIMSISS PLAINTIFFS' COMPLAINT WITHIN 21 DAYS OR RISK RULE 11 SANCTIONS

1. This motion seeks that defendants and their lawyers withdraw their frivolous motions to dismiss Plaintiff's complaint within 21 days or risk Rule 11 sanctions. Defendants' moving papers are frivolous per se.  Contrary to the mudslinging, Plaintiff has not gotten one infringement hearing on her US patents against defendants or hearings on her RICO conspiracy damage claims under 18 USC §1964 for defendants acts in furtherance of an elaborate conspiratorial fraud and defamation enterprise undertaken before three courts in New York and the USPTO intended to ruin Plaintiff's business, professional reputation and cause forfeiture of her intellectual property. *Sullivan v. Hunt,* 330 F. 3d 664 (Seventh Cir. 2003); *Hunt v. Weatherbee*, 626 F. Supp. 1097 (D. Mass. 1986); *Wang Laboratories Inv c. Burts*, 612 F. Supp. 441 (D. Md. 1984);  *Graham v. Slaughter*, 624 F. Supp. 222 (ND Ill. 1985); *Heritage Ins. Co. v. America v. First National Bank of Cicero*, 629 F. Supp. 1412 (ND Ill. 1986).

2. Plaintiff's 11403566 patent issued on August 2, 2022 long after the SDNY lawsuit, 06cv1202 closed in 2017, a fact conceded by defendants. Defendants ludicrously argue that based on collateral estoppel infringement hearings cannot be convened in the CD Cal when there

was no hearing on Plaintiff's patents and defendant Hinshaw &Culbertson's attorney Richard
Supple is being investigation for bribery of a SDNY clerk who was convicted of deleting docket
entries over 18 years. Unanimous US Supreme Court and Federal Circuit law governs this
litigation.  Each issued US patent is entitled to its own hearing.  *Bytemark v. Xerox*, 342 F. Supp.
3d 496 (SDNY 2018); 2022 WL 94859 (SDNY 2022). An infringement complaint can be filed
on each new patent for the full term of patent. *SCA Hygiene Products Aktiebolag v. First Quality
Baby Products*, 137 S. Ct. 954 (2017). To exemplify, another inventor litigating patent
infringement and unfair competition claims in multi-district litigation, had two previous patents
invalidated by the ED Texas. However, the inventor was still granted hearing on a third patent
and unfair competition claims before the SDNY.  *Bytemark v. Xerox*, 342 F. Supp. 3d 496
(SDNY 2018); 2022 WL 94859 (SDNY 2022)/ Conversely, Plaintiff never had a hearing granted
on her first 7603321 patent because the infringement motion docketed on April 22, 2010 was
deleted ex parte from the docket ex parte under mysterious circumstances in 2012.  Also deleted
was Plaintiff's motion to vacate the fraud induced dismissal of defendant Live Nation on March
9, 2009 based on moving papers and false averments under oath by defendant "had no NY
contacts" to answer Plaintiff's claims in the SDNY.  Ergo, defendant Live Nation was already
dismissed based on fraud before any of the three patents-in-suit issued.  In 2023, SDNY clerk
Dionisio Figueroa was convicted by the US Attorney for SDNY for taking bribes from attorneys
and state attorney for 18 years to corrupt and delete entries from SDNY dockets including pro se
cases.

    3.  In 2006, defendant Live Nation's divisional president Stephen Prendergast in charge of
operations at subsidiary defendant Instant Live Concerts, LLC (now dissolved) asked to meet
with Plaintiff in response to Plaintiff's letter and supporting documents that Plaintiff's formal US
patent drafts disclosing apparatuses and methods for ticketing management and authenticated
concert editing and distribution filed by the parties' common IP attorneys at defendant Cowan
Liebowitz & Latman of NYC, were leaked to Live Nation by Mike Gordon bass guitarist of
Phish/PhishLIVE. Gordon, a non-lawyer is married to a Cowan associate Susan Schick. Within
one year of the Cowan defendants accepting Plaintiff's patent retainer and never advising
Plaintiff that Gordon was unlawfully attending firm conferences where Plaintiff's marked
confidential formal patent applications were being reviewed, the press reported that Live Nation
and Instant Live were distributing live concert recordings and edited recordings to ticket holders

using ticket data to authenticate sales using methods contained in Plaintiff's unpublished patent
filings.  In addition, defendants Phish/PhishLIVE were using the same systems. The Cowan
lawyers were found to have breached Plaintiff's attorney client privilege by reckless acts because
Gordon had a criminal record, was arrested for sexual assault of minors and had motive to see
that he was insulated from misappropriating Plaintiff's trade secrets.  However, no US  patent
claims issued to Plaintiff until 2009 until after defendant Live Nation was improperly dismissed
from the lawsuit in March 2009. This means that defendant Live Nation was not a party to the
action when the first 7603321 patent issued on October 13 2009 and can be sued for willful
infringement of all three patents-in-suit in California for the full term where defendant Live
Nation has its principal place of business (California) and is infringing the patents (also
California). .

    4.   At this seminal meeting in 2006, Prendergast expressly told Plaintiff "anyone could use
her patents", that Live Nation would "continue to use them", and that Plaintiff should "get lost".
He then said that Plaintiff is an attorney, and his lawyers "would take care of it".  Plaintiff said
she is not an attorney in New York but a former senior vice president production at MGM in
California and a concert producer for Michael Jackson and The Three Tenors. Plaintiff suggested
a joint venture but never heard again from Prendergast. Plaintiff also mentioned that the Cowan
lawyers had in fact offered Plaintiff an investment for patent service retainer that is unlawful in
NY (*Buechel v. Rhodes*, 285 AD 2d 274 (1st Dept. 1999) and had a plan to broker Plaintiff's
patents to other clients (identified) who had expressed profound interest in Plaintiff's
confidential formal patent drafts. The clause used was "Plaintiff's patents created quite a buzz"
implying that Cowan defendants had already been unlawfully marketing Plaintiff's marked
confidential trade secrets in violation of Plaintiff's attorney client privilege by sending out
feelers. Gordon, a non-lawyer got first access through his wife Susan Schick and because he was
improperly invited to sit in on conferences at the firm without Plaintiff's knowledge or consent.
Gordon is then believed to have leaked the proprietary trade secrets to defendant Live Nation.

    5.   Defendant Live Nation then organized an elaborate RICO conspiratorial enterprise with a
three-point plan of attack aimed at (i) delaying Plaintiff's patents before the USPTO to give
defendant lead time to penetrate the market with her inventions by having Cowan defendants
abandon the application filed, not withdraw the holdings of abandonment to cut into patent term

and give defendant Live Nation lead time with its venture partners including Apple's iTunes; (ii) having their lawyers at defendants Hinshaw & Culbertson (H&C) and Baker Botts engage in multi-court attorney-in court fraud and deceit in the SDNY lawsuit (Amalfitano v. Rosenberg, 12 NY 3d 8 (2009), 533 F. 3d 117 (2d Cir 2007); and (iii) having defendant H&C 's lawyers dually serving on the NYS attorney grievance committee (AGC) including Richard Supple and Hal Lieberman aid and abet engage in  criminal unprotected defamation of Plaintiff before the State of NY, aid and abet the crafting of forged documents containing the signature of dead counsels and retired judges of the AGC and then shuffle the crafted state documents to the SDNY clerks, circuit executive officers and judges to falsely discredit Plaintiff *who is not admitted in NYS* and never under the jurisdiction of the First Dept. AGC.  Abuse of process and targeting by crafting forged documents with state AGC attorney are acts perpetrated in furtherance of the conspiracy not protected by immunity, and warrant the maximum award of punitive damages allowable by law plus RICO treble damages for acts aimed at ruining Plaintiff's business, stellar reputation and property.

6.    The death knell for defendants Live Nation and H&C is that the State of NY First Dept. AGC where Supple was a concealed state officer never had jurisdiction over Plaintiff in the capacity of an attorney.  But defendants Live Nation and Baker Botts conspired with defendant H&C who planted AGC attorney Richard Supple to conspire with AGC counsel Jorge Dopico to craft forged documents into Plaintiff's confidential state files. Plaintiff's 1998 voluntary resignation in good standing was accepted by the at the Third Dept. officers Dan Brennan and Denise Rajpal, no dues were thereafter charged and Plaintiff never requested reinstatement. Plaintiff remains in good standing in California.  The forged documents were never given hearing, never served on Plaintiff, and shuffled ex parte to SDNY clerks, judges and circuit officers to prevent Plaintiff from getting any hearings on her motions and patents. Supple is no longer employed by H&C.

7.    The greatest injury to Plaintiff came from defendant Live Nation's superior knowledge that defendant H&C national malpractice insurance defense firm, had several lawyers in its NY office dually serving on the First Dept. AGC and inducing so called cascading orders. The H&C lawyers were planted since the tragic events of 9-11-01 to comb ethics complaints against lawyers filed by aggrieved clients, and to remove complaints from state consideration where

documents could be incriminating to a reported lawyer, and craft forged documents for use against any individual who dared to sue his attorney. Supple was serving when Plaintiff filed an ethics complaint against the Cowan defendants at the instruction of the USPTO to get her withheld patent files compelled by AGC state officers. Therefore defendant H&C could never legally accept the Cowan firms' defense retainer and that the SDNY did not order disqualification was clear abuse of discretion, and never heard because the 2017 order of the SDNY that denied Plaintiff any hearing on her patent after the 2d Circuit unlawfully reversed the stay of patent discovery, was not heard because the 2018 appeal was under the exclusive jurisdiction of the Federal Circuit in what had become an "arising under "patent case when the first anticipated US patent issued to Plaintiff during the lawsuit. That patent was delayed in prosecution at the USPTO based on the parallel conflict of interest investigation against the Cowan defendants.

8.    There was never jurisdiction over Plaintiff in favor of the First Dept. AGC.  NY's Judiciary Law Part 1240 and clearly none after Plaintiff unilaterally and voluntarily resigned a vested commission to practice law in NYS granted by the Third Dept. in 1998. _Marbury v. Madison_, 5 US 137 (1803). Defendant Live Nation, however, instructed Supple use whatever means necessary even crimes to make sure Plaintiff could not sue for injunctive relief or infringement damages in the SDNY action.  This goes along with its notorious reputation for defrauding the public and artists. By 2006, Plaintiff's inventions were already being infringed by defendant Live Nation alone and with venture partner Apple's iTunes by the doctrine of equivalents but no patents had yet issued because of the practitioner conflict of interest violations taken by the Cowan defendants before the USPTO in favor of defendants Live Nation and MLB. 37 CFR 2.10, 2.19, 10.66.11.108, 11.116. The Commissioner's internal investigation endured for 9 years delaying issuance of Plaintiff's patents-in-suit and enforcement rights against defendants and cutting into her patent term. See _Wyeth v. Kappos_, 591 F. 3d 1364 (Fed Cir. 2010)

9.    The Cowan IP lawyers were also acutely aware that Plaintiff was not admitted to practice law in NYS since 1998 and had been granted voluntary resignation by the Third Dept. in good standing.  Plaintiff was attending medical school at that time after being awarded a masters in biotechnology and genome editing.  Defendants put their foot in their mouth when 2002-3, the Cowan defendants paid Plaintiff's bar dues to California when the firm sought a one-year

of counsel arrangement for Plaintiff to refer patent clients from California. The Cowan lawyers also asked for an "investment for patent service" retainer that is unlawful in NYS. _Buechel v. Rhodes_, 285 AD 2d 274 (1st Dept. 1999). Plaintiff rejected the offer and paid the firm, which may explain why defective USPTO applications insufficient to maintain priority dates were filed and abandoned ex parte without statutory notice. The Cowan defendants then sent Plaintiff on a business trip to California to work with her patent clients and on return Plaintiff was locked out of the office. Plaintiff's patent files, clients and contact lists were withheld and her of counsel arrangement was breached after only four months demonstrating the offers were under false pretenses or part of the conspiracy with defendant Live Nation, a client broadcasting in the same building.

10. The Cowan defendants were never granted unilateral withdrawal from Plaintiff's retainer by the USPTO in 2003 or in 2007. The Cowan defendants never withdrew the holdings of abandonment and unlawfully withheld Plaintiff's files. 37 CFR 2.10, 2.19, 10.66, 11.108, 11.116. That Plaintiff was only admitted in California was both public record and imputed to defendant H&C lawyers including Supple and its clients with whom the conflicts of interest existed before Plaintiff's faux retainer was offered, defendants Live Nation, Gordon and MLB.

11. In 2006, Supple began perpetrating heinous, malicious and predatory crimes in furtherance of the conspiracy instructed by defendant Live Nation including crafting forged and unserved documents and shuffling these documents ex parte to the SDNY clerks, judges and circuit executive officers knowing that clerks were involved with taking bribes. The plan was to achieve unearned advantages in the SDNY lawsuit and because Plaintiff's claims were potentially strict liability infringement claims, to prevent any infringement hearings. The first order from the judge based on Supple's ex parte shenanigans stayed patent discovery in 2006. There was no justification to stay patent discovery against any defendant. Plaintiff moved to vacate the order on October 10, 2007 and it was never adjudicated. Plaintiff lost her attorney who claimed the case was "rigged" when defendant Live Nation was dismissed based on clearly fraudulent jurisdictional papers filed by defendant Baker Botts and employees Hamlet Newsom and Richard Munieri that defendant had no NY contacts. 2d Circuit lifted the discovery stay in 2012 but on remand the patent discovery was never ordered and Plaintiff's April 22, 2010 infringement complaint and the motion under Rule 60(b) to vacate the fraud induced dismissal of

8

defendant Live Nation vanished from the docket.  462 Fed. Appx. 26.

12. The original 2006 operative complaint sought damages for unfair competition, Lanham Act false advertising, tortious interference, misappropriation of trade secrets, passing off and false marking and fraudulent breach of fiduciary duty by the Cowan defendants. No patent claims could be claimed because an issued patent is a condition precedent to a claim for infringement. Because the operative complaint stipulated that the complaint would be amended once the delayed first patent issued, there was motive for defendants to see that the complaint docketed and date stamped on April 22, 2010 was deleted from the docket by the time 2d Circuit remanded the lawsuit for patent discovery.  462 Fed. Appx. 26. Defendant Baker Botts left the case during the 3-year stay of appeal, the first judge recused herself, and defendant H&C was substituted in as attorney for defendant Live Nation.  Because no US patent claims had yet issued by the time defendant Live Nation was dismissed on March 17, 2009 based on fraudulent jurisdictional papers, no hearings on infringement or injunctive relief against defendant Live Nation were legally yet possible. The D647910S and 566 patents that issued on November 1, 2011 and on August 2, 2022 were being infringed by defendant Live Nation since at least 2007 The 566 comprehensive patent issued in 2022, five years after the SDNY action was closed in 2017 by defendants' own admission.  Ergo, of course there was no hearing on that patent in the SDNY lawsuit and no preclusion legally possible, rendering defendants papers per se frivolous with Rule 11 sanctions properly awarded against defendants and their lawyers.

13. Defendant H&C is a national malpractice insurance defense law firm. Defendant H&C knows the proscriptions against conflicts of interest. Defendant H&C could never accept representation of the Cowan lawyers before SDNY because H&C had several attorneys including Supple dually serving on the First Dept. AGC when Plaintiff's ethics complaint against the Cowan practitioners were filed. NY's Judiciary Law Part 1240.6d. Attorneys serving on the AGC have a fiduciary duty to aggrieved clients, not to attorneys.  An order of the Appellate Division entered April 21, 20216 found that Supple had been engaging in crimes in his concealed AGC post by inserting unserved crafted documents into Plaintiff's confidential voluntary resignation files without a warrant in violation of JL Part 1240.18 and shuffling his crafted unserved ex parte to SDNY clerks, judges and circuit officers since remand from the 2d Circuit in 2012.  A purported "order" crafted by Supple that he got signed by his former supervisor, a

9

retired judge in 2012 is based on "collateral estoppel". No previous order was ever entered against Plaintiff in the capacity of an attorney that could legally allow a collateral estoppel order to be entered by the AGC. Per the US Supreme Court, a state attorney grievance panel only has disciplinary jurisdiction over lawyers serving in a representative capacity for clients, and Plaintiff never practiced law in NYS. Plaintiff was admitted to the Third Dept. in NYS between 1985and 1998 when the Third Dept. accepted voluntary resignation in good standing and never thereafter charged bar dues and Plaintiff never requested reinstatement.

14. However, in contumacious violation of all her constitutional rights, Plaintiff was never given a hearing or access to the crafted documents whipped up by Supple before the "collateral estoppel" order was entered to get cascading orders in the SDNY. JL Part 1240.7. The limited documents that Plaintiff has been able to discover thus far contain the underlined forged signature of 2002 AGC chief counsel Paul Curran, who left the AGC in 2002 and was dead of cancer in 2007. No current member of the AGC signed the documents or gave Plaintiff a hearing. Ex parte insertion of crafted and forged documents into an individual's confidential state files is a crime in NYS. NY's Judiciary Law Part 1240. 18. The First Dept. and its AGC never had disciplinary jurisdiction over Plaintiff. Ergo part of the charade was to insert document purporting to demonstrate that Plaintiff practices law at a PO Box in lower Manhattan. No such office ever existed. Plaintiff also never got administrative orders from the AGC for the Cowan defendants to produce her withheld patent files, proving that with respect to the conspiracy, Plaintiff was an aggrieved client-patentee and not an attorney. The PO Box cited by defendants was a 6-month temporary mailbox while Plaintiff's Battery Park City HUD apartment was quarantined after the tragic events of 9-11-01 and Plaintiff was moving to NJ. USPTO files withheld by patent attorneys are federally protected documents required to be compelled by state AGC officers. *Virginia Office of Protection and Advocacy v. Stewart*, 563 US 247 (2011)(Scalia, J.); 37 CFR 2.10, 2.19, 10.66 11.108. 11.116.

15. All named defendants herein had clear motive to frame Plaintiff and the means used are crimes. The acts perpetrated over 13 years shock the conscience. They damaged Plaintiff's business, intellectual property and stellar professional reputation. Infringement is a strict liability claim that could not have been defended. Willful infringement is a treble damage claim. 35 USC 284. Live Nation defendants had no alternative but to have H&C and Supple craft forged

unserved documents in the state, get a faux order signed when the 2d Circuit remanded the
SDNY lawsuit, and shuffle the crafted documents ex parte to SDNY circuit officers and judges
ex parte to get cascading orders in the district court. The acts of abuse of process and elevate to
malicious prosecution when Plaintiff's constitutional appeal to the NY Court of Appeals to
compel the crafted documents in Plaintiff's favor has now been granted. SSD8. Defendants act in
conspiracy with state AGC staff attorneys were undertaken in the known total absence of
jurisdiction over Plaintiff.  The order from the Appellate Division entered April 21, 2016 in
M5775 found that Supple did engaged in these crimes, that he got the help of another attorney,
that the crafted documents proffered ex parte were considered by the court, but Plaintiff would
continued to be denied access to see them. The order is a per se sham entered in defiance of
Plaintiff's most basic constitutional rights and conflicted out the entire court. Ergo the Appellate
Division could not adjudicate further motions, the NY Court of Appeals found the order non-
final including the preclusion order because the court was conflicted out. The order is properly
heard on constitution grounds by the NY Court of Claims denying Plaintiff access to recover
strict liability infringement damages against seven NYS agencies. That is a final blanket
judgment in defiance of US Supreme Court decisions that cited to a prior non-final order of the
Appellate Division warranting an appeal to the NY Court of Appeals on constitutional grounds.
CPLR §5601d

16. In 2007, Live Nation imported a ticketing system from CTS Eventim of Germany to
service its owned and operated venues in NYC – House of Blues, Irving Plaza and Roseland
Ballroom. Also in 2007, the USPTO invalidated the recording patent, Griner, 6614729 that
defendant Live Nation had acquired in 2004-5 to expedite live CD handouts to ticketholders at
smaller clubs. This left Plaintiff with the priority authentication content distribution technology
that had  priority over the systems already being infringed by defendants.

17. For ten years after invalidation of the Griner patent, defendant Live Nation continued to
issue false and misleading international and domestic press releases in violation of 15 USC
§1125 that it owned a monopoly on distributing live concerts recordings when such releases were
factually and legally impossible and fraudulent.  However, the releases duped the public and
artists including Plaintiff's clients allowing defendant Live Nation to become a live recording
label while boycotting Plaintiff's proprietary platforms from its dominant share of event venues.

Plaintiff and other companies DiscLive and Hyburn were precluded from accompanying featured artists into venues to record and distribute live concert recordings and performances including benefit concerts, when a venture with Plaintiff would have benefitted all parties in the concerts and sports distribution cycle.

18.  In 2010, defendant Live Nation merged with its long-time competitor Ticketmaster before the DC District Court, *US v. Ticketmaster and Live Nation*, 2010 W 975407, 975408 (DDC January 25, 2010). and admitted in the signed consent decree and competitive impact statement that since 2005-7 it owned and serviced several concerts and event venues in NYC including House of Blues, Irving Plaza and Roseland Ballroom. Live Nation's insignia was captured in a still embossed on Iriving Plaza in the 2005 theatrical film "Austin Rush" . Yet in 2008, defendant Baker Botts on behalf of defendant Live Nation filed fraudulent jurisdictional papers before the SDNY that defendant Live Nation  "*had no NY contacts*" to answer Plaintiff's claims damages for unfair competition, Lanham Act violations and misappropriation of Plaintiff's trade secrets in any NY court. These papers lost Plaintiff her attorney, leaving her to enforce her patents pro se. The arbitration files from 2009 that Plaintiff won on all contract counts had also mysteriously vanished by the time of remand in 2012 and Plaintiff's motion seeking signed subpoenas against the USPTO were ripped out of its binders proving continued acts in furtherance of RICO conspiracy with additional court officers. 18 USC§ 1964.

19. It is unclear how Judge Barbara S. Jones encouraged continuing ex parte proffers and sessions with Supple between 2006 and 2010.  The Judge stayed patent discovery without any legal justification, granted defendant Live Nation's motion to dismiss, and then recused herself. In August 2009, Plaintiff won binding arbitration against the Cowan defendants on certain contract counts. An order ordering Arbitration was never entered by Judge Jones on the docket, Plaintiff therefore was denied subpoenas to compel production of the USPTO Commissioner's continuing conflicts of interest investigation against the Cowan defendants. It became clearer and clearer that Plaintiff was being denied constitutional access to the SDNY to pursue patent litigation against all the named defendants. Because Plaintiff was also denied constitutional access to the state courts of NY to recover infringement damages, Plaintiff case falls within the purview of *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, 527 US 627 (1999).

20.  The SDNY arbitrator in 2009, Charlotte Moses Fischmann, was then appointed chief counsel of the First Dept. AGC after the clerk working with Supple, Catherine O'Hagan Wolfe was cited and admonished by the SDNY in an order entered 2009 for retaliatory abuse and termination of the AGC triage attorney, Christine Anderson. Anderson was assisting aggrieved clients file ethics complaints against their lawyers that sabotaged defendant H&C's unlawful practices of having its lawyers comb the complaints being filed. *Anderson v. First Dept., State of NY*, 614 F. Supp. 2d 404 (SDNY 2009) (Headnotes, 15, 16) (Scheindlin, J.). After entry of the *Anderson* order, O'Hagan left the employ of the state and was somehow hired by the 2d Circuit, where as a circuit officer she also accepted ex parte proffers direct from Supple. Dionisio Figueroa the SDNY clerk complicit in the conspiracy was convicted for taking bribes by the US Attorney for the SDNY, Damian Williams.

21. On April 22, 2010, Plaintiff's first amended infringement complaint based on issuance of the delayed 7603321 apparatus claims on October 13, 2009 and Plaintiff's Rule 60(b) motion seeking to vacate defendant Live Nation's fraud-induced dismissal order, were date-stamped and filed, and printed in the appeal appendix before the 2d Circuit.  Vol. III, pp. 671 et seq., (09-2185;10-4111).  In 2012, however, when the Second Circuit when the case was remanded for patent discovery, the court did not mention the fraud induced dismissal of defendant Live Nation both motions had disappeared from the docket. Ergo, there was no opportunity to sue defendant Live Nation for willful infringement and organizing the RICO conspiracy, and defendant can now be sued in California, where it would be hard pressed to fraudulent try denial of jurisdiction with a principal place of business at 9348 Civic Center Drive Beverly Hills.

22. In 2016, Supple was also cited by the Appellate Division for conflicts of interest violations and accepting Cowan defendants' defense retainer while dually serving on the NYS attorney grievance committee (AGC). NY's Judiciary Law Part 1240.6d.  Under law, Supple and H&C were required to withdraw. The SDNY closed the case instead with 50 genuine issues of fact open. The Appellate Division order conceded that Supple had in fact entered crafted and unserved documents into Plaintiff's Third Dept. 1998 resignation bar files without a warrant and when that court had no jurisdiction over Plaintiff  in the capacity of an attorney.

23. Defendants in their moving papers refer to the crafted 2012 "purported order" based collateral estoppel when there was no previously order against Plaintiff in the capacity of an

attorney ever entered on which collateral estoppel could have been applied. [1]

23.  The continuing state litigation was the added order that <u>Plaintiff would continue to be</u>
<u>denied access to crafted documents and to cross-examine adverse witnesses including Supple</u>
constitutional rights that were denied prior to entry of the faux 2012 order. That the AD
considered Supple's ex parte documents and denied Plaintiff access to see them  conflicted out
the entire court from entering further orders. This is why a preclusion order was entered
preventing Plaintiff from coming back to that court. It could render no further adjudications.
Plaintiff then filed a mandamus petition to compel production of Supple's crafted documents
before the Second Dept. in 01366-2018 and that motions remains dormant and unadjudicated
after five years. Part of Plaintiff's petition to the NY Court of Appeals seeks mandamus relief
against the Second Dept. to unseal the documents.

24. To this day, Plaintiff has never gotten access to the crafted documents that were
considered ex parte by the Appellate Division and then caused cascading ex parte orders in the
district court. Some since discovered contained the forged signature of 2002 AGC Chief Counsel
Paul Curran who left the AGC in 2002 and was dead of cancer in 2007.  Others falsely say that
Plaintiff maintains a law practice in lower Manhattan that never existed.  Others demonstrate that

---

[1] However, a crafted purported order drafted by Supple in 1998 says that Plaintiff engaged in
frivolous litigation in a 1997 HUD housing litigation. Plaintiff was the HUD tenant attending
medical school and had an attorney retained, Jay Stuart Dankberg, who was improperly
sanctioned for moving for a jury trial, the absolute right of a HUD protected tenant.  24 CFR
966.66. The NYC Housing judge presiding was a hearing officer and not a constitutional judge in
NY and lost 9 audiotapes necessary for appeal. The audiotapes that existed were ordered covertly
destroyed in 2001 by an Office of Court Administration (OCA) clerk Jane Chin and a Civil Court
Clerk Ernesto Belzaguy.  Plaintiff received a formal apology from the chief judge of housing,
Ernest Cavallo.  However, investigation confirmed that Supple conspired with the NYS Attorney
General and put Mr. Dankberg's attorney sanction from the housing case into Plaintiff
confidential state file when Plaintiff was not the attorney in that case. Plaintiff was already
resigned in NY since 1998. Plaintiff was not sanctioned as an attorney, and only an attorney
sanction can be used collaterally by the First Dept. AGC. Ergo, there were more than 9 forged
documents crafted and inserted into Plaintiff's file by Supple that constitute proving unprotected
criminal defamation and acts in furtherance of defendant Live Nation's conspiracy by its
lawyers.

Supple got his collateral estoppel draft signed by a retired judge in 2012 with proof that Plaintiff never got hearing prior to execution.  JL Part 1240.7.  No order can be entered by the AGC without production of all relevant state documents.  JL Part 1240.7. The order is a fraud and a sham warranting criminal sanctions and the maximum punitive damages allowable by law against each member of the conspiracy.

25. Most damaging to Plaintiff's business, property rights and reputation were the illegal cascading orders entered by the SDNY and circuit officers.

26. In August 2022, when Plaintiff's third US ticketing patent, 11403566 issued after an unprecedented 17-year delay (Docket #55) and 10 years post remand from the 2d Circuit, Plaintiff was advised for the first time that Supple's crafted documents had also been shuffled to circuit executive officers in 2012 by the clerk.  Likely that "clerk" was O'Hagan Wolfe or Figueroa.  Circuit officer Julie Allsman admitted that she and others under the supervision of the clerk and an administrative judge were instructed to delete Plaintiff's good name ex parte from the roster of SDNY attorney in 2013. This order was a cascading order also entered without notice, hearing, or due process of law and never served on Plaintiff.  _Bradley v. Fisher_, 80 US 335 (1871)  Plaintiff's attorney having left the case claiming it was "rigged" left Plaintiff as a pro se litigant to deal with rampant corruption.

27. The law of the 2d Circuit is unanimous that only one bar is required for SDNY roster listing that need not be NYS.  _In re Gouiran_, 58 F. 3d 54 (2d Cir 1995) Plaintiff remains admitted in California in good standing.  Plaintiff's license to practice law before the Third Dept. that was voluntarily resigned in 1998 and her SDNY roster listing were vested commissions that only Plaintiff could reject or revoke unilaterally unless Plaintiff was given all her due process rights, notice, hearing and the right to cross-examine adverse witnesses. _Marbury v. Madison_, 5 Us 137 (1803).  Plaintiff got none of the above.  This is absolutely clear and undisputed. The order vacating Plaintiff's name from the roster  is void and a nullity and is being investigated by the Pro Se office in another district court in NY clearly because the SDNY is conflicted out and cannot not hear that motion.

28. The deletion of Plaintiff's good name when the state had no jurisdiction over Plaintiff in the capacity of an attorney is a collusive crime also not protected by immunity. Each cascading

order in the SDNY or circuit executive office or the state starts the statutes running anew against each of the defendants who participated in the conspiracy.

29. While defendant Live Nation and its lawyers continue to pound the payment groping at straws none of the corrupted and fraud-induced SDNY orders, can legally preclude Plaintiff's infringement and willful infringement claims in this lawsuit in California, with the proviso that all acts perpetrated by defendants in furtherance of the malicious conspiratorial fraud and unprivileged defamation enterprise are not properly pursued to award treble damages and punitive damages to Plaintiff for irreparable and devastating injuries to her business and property rights.  18 USC §1964.

30. To date, Plaintiff has still never been given constitutional access to documents crafted in the AGC by Supple and his state camp. The clear aim of the scandal was to attempt to confer faux disciplinary jurisdiction over Plaintiff in favor of the First Dept AGC that never existed.

31. Then in 2023, another cascading order was entered.  Plaintiff was advised that her Internet on-line profile that in 1998 listed Plaintiff as voluntarily resigned in NYS from the Third Dept. in good standing was similarly unilaterally altered ex parte by a NYS  attorney membership officer Sam Younger, based on Supple's crafted documents.  The online profile now reads suspended.  It is defamatory per se and unprotected because jurisdiction over Plaintiff is lacking in favor of the NYS Attorney Membership Office. This cascading order being seen by others including the defamatory press releases that Supple and defendant H&C placed were calculated to cause permanent harm and injury to Plaintiff, an adverse party, without any justification in law or fact. Defendant Live Nation, conductor, continued to boycott Plaintiff's proprietary platforms in added defiance of the merger mandates since 2010.

32. Plaintiff's right to sue defendants for treble damages for willful infringement and RICO 18 USC 1964 conspiratorial fraud and unprivileged defemination defamation is absolute and independent of whether Plaintiff achieves success getting the crafted documents compelled against Supple's conspirators in the State of NY.

### III. DEFENDANTS PAPERS ARE FRIVOLOUS

33. This lawsuit seeks Plaintiff's **first** hearings in 13 years on strict liability patent infringement, willful infringement and aiding and abetting infringement damages pursuant to 35 USC §§271, 284, 285, 286 for defendants' use, manufacture, outsourcing, distribution and sale of Plaintiff's patents in-suit alone and with venture partners (Gurvey US Patents 111403566, D647910S, 7603321). Plaintiff also seeks treble damages under RICO statute 18 USC §1964 for defendants' quasi-criminal acts undertaken in furtherance of an elaborate conspiratorial fraud and unprivileged defamation and libel enterprise aimed at ruining Plaintiff's patent business, stellar reputation, and forfeiture of intellectual property rights.  See, e.g., _Sullivan v. Hunt,_ 330 F. 3d 664 (Seventh Cir. 2003); _Hunt v. Weatherbee_, 626 F. Supp. 1097 (D. Mass. 1986); _Wang Laboratories Inv c. Burts_, 612 F. Supp. 441 (D. Md. 1984);  _Graham v. Slaughter_, 624 F. Supp. 222 (ND Ill. 1985); _Heritage Ins. Co. v. America v. First National Bank of Cicero_, 629 F. Supp. 1412 (ND Ill. 1986).  Plaintiff also seeks damages for defendant Live Nation Entertainment's continued boycotting of Plaintiff's patents and platforms and withholding ticketing data in defiance of the merger consent decree and competitive impact statements defendants Live Nation and Ticketmaster signed in 2010 before the DC District Court that remain in full force and effect. The antitrust proscriptions signed are clear that ticketing data cannot be withheld from companies including Plaintiff 's company, co-Plaintiff LIVE-Fi ®Technologies seeking to enter defendants' dominant share of owned and serviced event venues to conduct non-ticketing businesses.

34. Plaintiff's amended complaint is based on defendants continued acts of unprivileged defamation in furtherance of the conspiracy, issuing false and misleading press releases over the Internet, that continue to cause devastating cascading orders that were intended and wholly foreseeable including to prevent Plaintiff from retaining an attorney after her first attorney claimed the case was "rigged" and he could no longer be involved.

35. Whether Plaintiff is successful in getting to the forged and crafted unserved documents created by defendant H&C and Supple at the bidding of defendant Live Nation, is irrelevant to Plaintiff's constitutional right under the Fifth Amendment to get infringement hearings and recover RICO 18 USC§ 1964 damages hearings for the first time against each of the members of

the conspiracy.  *US v. Local 560 of International Brotherhood of Teamsters, Chauffers,*
*Warehousemen and Helpers of America*, 780 F. 2d 67 (1985).  The documents crafted are
forgeries clearly incriminating to the defendants, and remain unlawfully withheld from Plaintiff
in violation of all her constitutional rights.  None of the relevant claims were ever filed in the
SDNY and there was no full and fair opportunity to litigate them previously because they
accrued after the SDNY lawsuit was closed. Plaintiff's patents-in-suit all issued after defendant
Live Nation was dismissed based on its own fraud and collusion and cannot be permitted to
benefit from its heinous crimes and instructed abuse of process against Plaintiff when no
jurisdiction existed in the capacity of attorney in favor of NYS.

36. Defendants' **allegations that Plaintiff is forum shopping is ludicrous.**  Plaintiff has the
constitutional right to sue for infringement and injunctive relief against any infringer for the full
term of each issued patent in any state that an infringer is incorporated, has its principal place of
business or is infringing the patents-in-suit.  *SCA Hygiene Products Aktiebolag v. First Quality*
*Baby Products*, 137 S. Ct,. 954 (2017).  **Otherwise, if the court accepts defendants' frivolous**
**papers at face value, there would be a preclusion against Plaintiff being able to sue any**
**other infringer not connected with the SDNY lawsuit, which is preposterous**.

37. Contrary to defendants' moving papers, Plaintiff's first 7603321 US patent issued with
the first ten apparatus claims on October 13 2009 after a delay of 8 years at the USPTO.  The
patent was never given hearing because the corresponding infringement complaint filed and date
stamped on April 22, 2010 was deleted ex parte from the docket by SDNY clerks convicted of
crimes and bribery.  The other two patents-in-suit, D647910S and11403566 issued after the
SDNY lawsuit closed.  The third 11403566 patent was not even mentioned in the SDNY lawsuit
and could not have been mentioned because the underlying continuation application was still in
USPTO prosecution.  Thes facts makes this case unique from any other in the national repertoire
and renders defendants' motions to dismiss wholly frivolous.

38.  If Plaintiff had gotten adverse or invalidation orders after hearing on her patents in a
previous court and then continued to pursue the same claims in another lawsuit, the second
action could be objectionable.  **But here, Plaintiff is seeking infringement and RICO**
**hearings for the first time.**  No case in the long chain of defendants' citations disputes this

fact proving that defendants' papers are per se frivolous and warrant Rule 11 sanctions if not withdrawn in 21 days. The authorities run off from defendants attorneys' computers are red herrings and don't stand for any legal proposition relevant to this lawsuit.

39. Moreover, there is something inherently wrong about defendant Live Nation boycotting Plaintiff's technology from its venues in defiance of merger mandates defendant signed while defendant gave instructions to its attorneys to "shut Plaintiff up". One firm concentrated on delaying Plaintiff's prosecution rights before the USPTO while another inserted unserved crafted and forged documents into Plaintiff's confidential state files, engaging in criminal, unprotected defamation without jurisdiction over Plaintiff in the capacity of an attorney.

40. Unanimous US Supreme Court and Federal Circuit law governs this litigation. Each issued US patent is entitled to its own hearing. *Bytemark v. Xerox*, 342 F. Supp. 3d 496 (SDNY 2018); 2022 WL 94859 (SDNY 2022).

41. The death knell for the conspiracy, are the criminal acts of targeting, abuse of process, malicious prosecution relentlessly perpetrated knowingly without jurisdiction over Plaintiff. No state officer is entitled to immunity, and do not protect any member of the conspiracy for continuing torts that constitute wrongful state action in violation of 42 USC 1983. *Forrester v. White*, 484 US 219 (1989); *Stump v. Sparkman*, 435 US 349 (1978); Accord, *Alvarez v. Snyder*, 264 AD 2d 27 (1st Dept. 2000).

42. Most important is that defendants' do not deny their respective willful infringements of the claims in each of the patents-in-suit and that the 566 patent that issued on August 2, 2022 after a 17-year delay caused by Cowan defendants' misconduct before the USPTO. The comprehensive 566 patent was before no court to date. It issued after the SDNY lawsuit closed. It is in term. It is entitled to its first hearing in this court under the standard of infringement in effect in 2009, when all claims should have issued but for the split prosecution of the 11253912 application filed October 18, 2005 caused by the Cowan defendants' conflict of interest violations that forced a Commissioner's investigation. See Docket #55; *SCA Hygiene Products Aktiebolag v. First Quality Baby Products*, 137 S. Ct. 954 (2017).

43. Plaintiff is also per se entitled to recover RICO 18 USC §1964 treble damages for defendants' conspiratorial acts that were malicious, predatory and intended to ruin Plaintiff's

business, reputation and cause forfeiture of her intellectual property including permanent injury from cascading orders. Plaintiff is therefore entitled to injunctive relief against each of the defendants in the conspiracy. *Sullivan v. Hunt,* 330 F. 3d 664 (Seventh Cir. 2003); *Hunt v. Weatherbee*, 626 F. Supp. 1097 (D. Mass. 1986); *Wang Laboratories Inv c. Burts*, 612 F. Supp. 441 (D. Md. 1984); *Graham v. Slaughter*, 624 F. Supp. 222 (ND Ill. 1985); *Heritage Ins. Co. v. America v. First National Bank of Cicero*, 629 F. supp.2 1412 (ND Ill. 1986); *US v. Local 560 of International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America*, 780 F. 2d 67 (1985).

44. Conversely, no RICO damages can be recovered by defendants, however, who were not damaged in their business or property. *Sullivan v. Hunt,* 330 F. 3d 664 (Seventh Cir. 2003).

## PLAINTIFF'S OPPOSTION TO THE STRING OF RED HERRING ORDERS IN DEFENDANTS' MOVING PAPERS.

45. Defendants' mudslinging is nothing new. The papers are frivolous per se because they have no relevance to the issue of infringement and willful infringement treble damages recoverable against each of the defendants jointly and severally. There was no attempt to relitigate decided orders because there was no previous infringement hearing on the patents in suit. Live Nation was dismissed based on its own fraud in 2009, and none of the patent-in-suit had yet issued.

46. Defendants say that on July 6, 2017, more than ten years after the start of the litigation the district court granted Cowan's motion for summary judgment on all remaining 20 claims and denied Weissbrod's cross-motion. The case was not an infringement case when it was filed because no patent had issued and Cowan defendants' liability for aiding and abetting infringement by its clients Live Nation, MLB and Phish's Gordon with whom conflicts of interest were known to exist before Plaintiff's retainer was offered were also not allowed adjudication. An issued patent is a prerequisite for a claim of aiding and abetting infringement. The April 22, 2010 infringement complaint seeking strict liability damages based on the 7603321 first issued patent was deleted ex parte from the docket. . But the D647910S and 11403566 comprehensive patent both issued after the case was closed.

47. The First Dept. issued a preclusion order in 2016 after the court was conflicted out having considered defendant Supple's crafted documents proffered ex parte, and it could not enter further orders. Having defied Plaintiff's constitutional right of access to see the documents since 2011 (110774-2011), no order could be entered, and the court was conflicted out. Plaintiff then had to file a mandamus petition at the Second Dept. in 2018 that was never adjudicated and remains dormant in the court.  01366-2018. Each of the orders determined nonfinal by the NY Court of Appeals and may now get hearing in the constitutional appeal pending before that court. SSD8.

48. Moreover, the patent discovery ordered by the 2d Circuit in 2012 was never allowed, H&C and Supple were never disqualified and the Court had no power to allow defendant H&C to continue to file a summary judgment in 2017 to dismiss the Cowan defendants.  JL Part 1240.6d. But the judge's denial of an order to reinstate the infringement complaint that was deleted from the docket, put the 2017 appeal within the purview of the Federal Circuit's exclusive "arising under" appellate jurisdiction. The Federal Circuit found in 20-1620 that the 2d Circuit abused discretion in not transferring the 2018 appeal to its court because the Second Circuit had no jurisdiction to hear the appeal.  Ergo the Second Circuit had no power to  enter mandamus orders in aid of appellate jurisdiction it did not have against the SDNY to hear an infringement complaint.

49  RE:  Supple's 2012 crafted 2012 "collateral estoppel" order.  As mentioned supra, there was no previous order on which collateral estoppel court be applied.  Plaintiff's HUD housing attorney in a 2000 litigation was sanctioned and unjustifiably so for petitioning the NYC Housing Court to apply preempting federal mandates in a HUD holdover proceeding where federal law preempts that of the state. The HUD subsidized landlords, who were managing the Gateway Plaza building project as purely private complex and defying the tenants' federally protected expanded due process rights prosecuted in a 1985 qui tam class action filed by the Gateway Plaza tenants that was put under seal and can be accessed from the National Archives. _Sultzer v. Pierce_, 85 CV 0519 (CEB)(SDNY). The Government recovered $7mil in a settlement from the landlords. Plaintiff in medical school since 1995 was issued a lease in that project ten years after the documents were put under seal and there was no reported decision.

50. The New York Court of Appeals is now hearing Plaintiff's constitutional appeal as of right because seven agencies of NYS are also infringing the patents-in-suit and no just compensation was paid to Plaintiff in violation of the Fifth Amendment.  The 2016 Appellate division order was determined to be a nonfinal by the Court of Appeals but was cited in a final judgment denying Plaintiff access to the NY Court of Claims to get infringement hearings that are constitutionally mandated. Therefore, the Court of Appeals is now hearing the nonfinal Appellate Division that were cited in a final judgment in a separate patent litigation in the state. SSD8.  That the State of NY has deprived Plaintiff of constitutional access to its district courts and state courts to get infringement hearings defies the mandates of the US Supreme Court. Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank, 527 Us 627 (1999)(See Dissent of four justices, Kennedy, Breyer, Ginsburg and Souter)

51.  The claims for misappropriation of trade secrets iterated in Plaintiffs' 2006 SDNY complaint are moot.  The claims for unfair competition and tortious interference are not because defendant Live Nation Entertainment continues to defy the 2010 merger mandates that are still in effect by withholding ticketing data from Plaintiff to conduct non-ticketing businesses at its dominant share of event venues while boycotting her patents from defendants' venues requiring overhaul four times of Plaintiff's software and cancellation of production contracts. Contracts with software developers had to be revoked, revised and renegotiated. In addition, there are more than $130,000 of extra patent fees necessarily caused from the delay of prosecution at the USPTO and the splitting of the 2005 11253912 application into distinct prosecution 13 years apart. Defendants' acts interfered with contracts with Plaintiff's SDNY attorneys and patent attorneys and caused forfeiture of retainer fees paid.

52. Most injurious are defendant's continuing defamation torts in the state files and in press releases that are causing permanent and devastating injuries through entry of cascading orders to Plaintiff's professional reputation, business, property, career, personal life and ability to retain both patent and litigation attorneys.  Each cascading order citing to one of the conspiracy's wrongfully induced orders in the AGC or SDNY starts the statutes running anew.

//

//

**WHEREFORE**, Plaintiff seeks that defendants withdraw their respective motions to dismiss Plaintiff's complaint within 21 days of the date hereof by January 16, 2024 or risk Rule 11 sanctions from the Court.  Plaintiff will also seek attorney's fees, costs and punitive damages in the discretion of the court and such other and further relief as the court deems just, proper and equitable.

Dated December 26, 2023
Princeton, New Jersey

Yours etc.,
Amy R. Weissbrod
7302 Woodstone Circle
Princeton, NJ  08540
amyweissbrod@gmail.com
amyg@live-fi.com
MOBILE 917-733-9981
FAX 609-917-2663